# EXHIBIT A

Electronically Filed
Marie Zaiz
Circuit Clerk
Nora Sternau
22LA0663
St. Clair County
8/2/2022 6:54 PM
18923936

**IN THE CIRCUIT COURT**
**TWENTIETH JUDICIAL CIRCUIT**
**ST. CLAIR COUNTY, ILLINOIS**

B.W.E & T.M.E., Inc.                          :
d/b/a Millstadt Pharmacy                      :
120 W. Washington Street                      :
Millstadt, IL  62260                          :
                                              :
Axline's, Inc.                                :
d/b/a Axline Pharmacy                         :
220 North Main Street                         :
Monmouth, IL 61462                            :
                                              :
C.V. Kasiar, LTD                              :          22LA0663
d/b/a Beck's Drugs                            :
1409 Locust Street                            :
Eldorado, IL  62930                           :
                                              :
Rx Stores, LLC                                :
d/b/a Family Drug                             :
1601 West Main Street                         :
Shelbyville, IL  62565                        :
                                              :
Howell Pharmacy LLC                           :
d/b/a Medicine Shoppe #2119                   :
122 W. State Street                           :
O'Fallon, IL  62269                           :
                                              :
Acjk, Inc.                                    :
d/b/a Medicap Pharmacy                        :
2770 Madison Avenue                           :
Granite City, IL 62040                        :
                                              :
Byrd-Watson Times Square Drug                 :
d/b/a Byrd-Watson Pharmacy                    :
3401 Broadway Street                          :
Mt. Vernon, IL 62864                          :
                                              :
Letitride, Inc.                               :
Chenoa Rx                                     :
209 S. Green Street                           :
Chenoa IL 61726                               :

TJD Enterprises LLC                                                      :

:

**TJD Enterprises LLC**  :
**d/b/a Doehrings Pharmacy and** :
**York Pharmacy** :
**143 South Washington Street** :
**Nashville, IL  62263** :
 :
**J.D. Pharmacy, Inc.** :
**d/b/a John's Medical Pharmacy** :
**300 S. Main Street** :
**Hillsboro, IL 62049** :
 :
**Michelle's Pharmacy** :
**d/b/a Michelle's Pharmacy Bunker Hill** :
**Michelle's Pharmacy Carlinville and** :
**Michelle's Pharmacy Gillespie** :
**809 S. Franklin Street** :
**Bunker Hill, IL 62014** :
 :
**Sullivan Drugs, Inc.** :
**d/b/a Sullivan Drugs – Mt. Olive and** :
**Sullivan Drugs – Gillespie** :
**105 W. Main Street** :
**Mt. Olive, IL  62069** :
 :
**Maurice E. Sullivan** :
**d/b/a Sullivan Drugs – Raymond** :
**801 N. O'Bannon** :
**Raymond, IL  62560** :
 :
**Sullivan Drugs of Staunton, Inc.** :
**d/b/a Sullivan Drugs – Staunton** :
**101 E. Main Street** :
**Staunton, Il  62088** :
 :
**Wear Drug, Inc.** :
**d/b/a Wear Drug** :
**408 Walnut** :
**Carthage, IL  62321** :
**Woodward CJS Pharmacy, Inc.** :

2

**d/b/a the Medicine Shoppe #62**                    :
**901 East Edwardsville Road**                       :
**Wood River, IL**                                   :
                                                     :
**Moore Family Stores**                              :
**d/b/a Sav-Mor Pharmacy – Neoga**                   :
**The Pharmacie Shoppe**                             :
**Toldeo Pharmacy**                                  :
**Brown's Drug Store – Effingham**                   :
**596 Oak**                                          :
**Neoga, IL**                                        :
                                                     :
**H&S Pharmacies, LLC**                              :
**d/b/a Victors Medicenter Pharmacy**                :
**2323 Old Plank Road**                              :
**Chester, IL**                                      :
                                                     :
**Dr. Ike, Inc. d/b/a Dr. Ike's Pharmacare**         :
**111 N. Brand Blvd., Unit C**                       :
**Glendale CA 91202**                                :
                                                     :
**Clinton Butler LLC, d/b/a Clinton Drug**           :
**2526 Hwy 65 S**                                    :
**Clinton, AR  72031**                               :
                                                     :
**Coleman Butler, LLC,**                             :
**d/b/a Coleman Pharmacy**                           :
**3610 Grand Avenue**                                :
**Ft. Smith, AR  72904**                             :
                                                     :
**Medi Shop Pharmacy, LLC**                          :
**d/b/a Medi Shop Pharmacy**                         :
**204 Hyw 715**                                      :
**Mena, AR  71953**                                  :
                                                     :
**Orrell Enterprises, Inc.**                         :
**d/b/a The Medicine Chest Pharmacy**                :
**209 Carter Street**                                :
**Berryville, AR  72616**                            :
                                                     :
**Village Apothecary, Inc.**                         :

3

**d/b/a Village Healthmart #1,**                    :
**Village Healthmart #2**                           :
**College Hill Drug and**                           :
**4440 Hwy 7 North**                                :
**Hot Springs, AR  71909**                          :
                                                    :
**Beattie's Community Pharmacy, Inc.**              :
**d/b/a Beattie's Health Mart Pharmacy**            :
**3140 Vista Drive Ste 100**                        :
**Erie, CO  80515**                                 :
                                                    :
**JB Pharmacy, Inc.**                               :
**d/b/a JB Pharmacy**                               :
**915 W. Northern Avenue**                          :
**Pueblo, CO  81004**                               :
                                                    :
**SSV Pharmacy LLC**                                :
**d/b/a Rainbow Pharmacy (f/k/a The**               :
**Medicine Shoppe #1404)**                          :
**1625 Medical Center Pt. Ste 140**                 :
**Colorado Springs, CO  80907**                     :
                                                    :
**Pharmacy Services, Inc.**                         :
**d/b/a Val-u-Med Pharmacy**                        :
**159 Bent Avenue**                                 :
**Las Animas, CO  81054**                           :
                                                    :
**Carroll Apothecary, LTC**                         :
**425 HWY 30 W. Ste 140,  PO Box 157**              :
**Carroll, IA  51401**                              :
                                                    :
**Forbes Pharmacy Corp.**                           :
**d/b/a Medicap Pharmacy – Urbandale**              :
**8170 Douglas Avenue**                             :
**Urbandale, IA  50322**                            :
                                                    :
**GRX Holding, LLC**                                :
**d/b/a Wright Pharmacy and**                       :
**Medicap Pharmacy**                                :
**(#8003, 8011, 8015, 8023, 8036, 8043,**           :

4

**8051, 8052, 8095, 8207, 8211,8240**                    :
**8247, 8256, 8269, 8318, 8405)**                        :
**105 Lincoln Way**                                      :
**Ames, IA  50010**                                      :
                                                         :
**GRX II, LTD**                                          :
**d/b/a Medicap Pharmacy #8057**                         :
**904 North John Wayne Drive**                           :
**Winterset, IA  50273**                                 :
                                                         :
**GRX Norwalk, Inc.**                                    :
**d/b/a Medicap Pharmacy #8230**                         :
**2521 Sunset Drive Suite 1**                            :
**Norwalk, IA  50211**                                   :
                                                         :
**DRMANAE, Inc.**                                        :
**d/b/a One to One Pharmacy (f/k/a**                     :
**Millers Medicine Cabinet)**                            :
**P.O. Box 337**                                         :
**Kalona, IA  52247**                                    :
                                                         :
**Weirick & Patterson Pharmacy, Inc.**                   :
**d/b/a Weirick & Patterson Pharmacy**                   :
**101 N. Walnut Street**                                 :
**Colfax, IA  50054**                                    :
                                                         :
**Auburn Pharmacy, Inc.**                                :
**d/b/a Auburn Pharmacy**                                :
**13351 Mission Road**                                   :
**Leawood, KS**                                          :
                                                         :
**Auburn Pharmacy Abilene, LLC**                         :
**d/b/a Auburn Pharmacy – Abilene**                      :
**1518 N. Buckeye Avenue**                               :
**Abilene, KS**                                          :
                                                         :
**Auburn Pharmacy Osage, LLC**                           :
**d/b/a Auburn Pharmacy – Osage**                        :
**890 Larkin Street**                                    :
**Osage City, KS**                                       :

5

                                   :

**West County Pharmacy LLC**      :
**d/b/a Goldsmith Medicenter Pharmacy**  :
**777 S. New Ballas Road**        :
**St. Louis, MO  63141**         :
                                     :

**Freeze Pharmacy LLC**        :
**d/b/a Greenfield Pharmacy**     :
**105 N. Grand Street Ste 1**      :
**Greenfield, MO  65661**        :
                                     :

**STE GEN Pharmacy, Inc.**      :
**d/b/a Kleins Medicenter Pharmacy**  :
**601 Center Drive**           :
**Ste. Genevieve, MO 63670**     :
                                     :

**Ladue Pharmacy LLC**        :
**d/b/a Ladue Pharmacy**        :
**9832 Clayton Road**          :
**St. Louis, MO 63124**        :
                                     :

**Jackson Pharmacy, Inc.**       :
**d/b/a Medicenter Pharmacy – Jackson** :
**200 W. Washington**         :
**Jackson, MO  63755**        :
                                     :

**Medley Pharmacy, Inc.**       :
**d/b/a Medley Pharmacy, Sinks Pharmacy** :
**Sinks Pharmacy Select, and**    :
**Steelville Drug**           :
**601 Highway 28 E**         :
**Owensville, MO  65066**      :
                                     :

**Millbrook Pharmacy, Inc.**     :
**d/b/a Millbrook Pharmacy**     :
**7010 Pershing Avenue**      :
**St. Louis, MO  63130**       :
                                     :

**Semo Drugs of Kennett, Inc.**    :
**d/b/a Semo Drugs of Kennett**    :

**1300 1st Street**                                                    :
**Kennett, MO  63857**                                                :
                                                                      :
**Sikeston Pharmacy LLC**                                             :
**d/b/a Sikeston Medicenter Pharmacy**                                :
**507 N. Main Street**                                                :
**Sikeston, MO  63801**                                               :
                                                                      :
**Cape Pharmacy LLC**                                                 :
**d/b/a Medicenter Pharmacy – Cape**                                  :
**465 S. Mount Auburn Road Ste 101**                                  :
**Cape Girardeau, MO  63703**                                  :
                                                                      :
**Midwest Heath Innovations, LLC**                                    :
**d/b/a Scribner Drugstore**                                          :
**416 Main Street, PO BOX 439**                                       :
**Scribner, NE 68057**                                                :
                                                                      :
**USPRX, Inc.**                                                       :
**d/b/a U-Save Ogallala**                                             :
**23 N. Spruce Street**                                               :
**Ogallala, NE 69513**                                                :
                                                                      :
**Mytillini Enterprises**                                             :
**d/b/a Bedford Pharmacy**                                            :
**209 Route 101**                                                     :
**Bedford, NH 03110**                                                 :
                                                                      :
**Northeast Pharmacy Services LLC**                                   :
**d/b/a Northeast Pharmacy**                                          :
**1 Granite Place Ste 200N**                                          :
**Concord, NH  03301**                                                :
                                                                      :
**Apothecary Central LLC**                                            :
**d/b/a Pharmacy Express**                                            :
**43 Allenstown Road**                                                :
**Allenstown, NH**                                                    :
                                                                      :
**Richard L. Berry Pharmacy, Inc.**                                   :
**d/b/a The Medicine Shoppe #1759**                                   :

7

**10606 New Buffalo Road**                                     :
**North Lima, OH**                                             :
                                                               :
**Marshall W. Davis Drugs, Inc.**                              :
**d/b/a Davis Drugs**                                          :
**250 Lone Oak Road**                                          :
**Paducah, KY 42001**                                          :
                                                               :
**Davis Drugs Lone Oak, Inc.**                                 :
**d/b/a Davis Drugs Lone Oak**                                 :
**2855 Lone Oak Road, P.O. Box 10**                            :
**Paducah, KY 42002**                                          :
                                                               :
**Ely Extended Care**                                          :
**d/b/a Ely Extended Care**                                    :
**109 Myrtle Street**                                          :
**Glasgow, KY 42141**                                          :
                                                               :
**Ely Drugs, Inc.**                                            :
**d/b/a Ely Drugs**                                            :
**415 Happy Valley Road**                                      :
**Glasgow, KY 42141**                                          :
                                                               :
**Ely Drugs**                                                  :
**d/b/a Ely Drugs of Bowling**                                 :
**4863 Scottsville Road**                                      :
**Bowling Green, KY 42104**                                    :
                                                               :
**Ely Home Infusion, Inc.**                                    :
**d/b/a Ely Home Infusion**                                    :
**413 Happy Valley Road, Suite D**                             :
**Glasgow KY  42141**                                          :
                                                               :
**McNamee, Inc.**                                              :
**d/b/a Family Pharmacy**                                      :
**412 Central Avenue**                                         :
**South Williamson, KY  41503**                                :
                                                               :
**Highland Pharmacy Corp.**                                    :
**d/b/a Highland Pharmacy**                                    :

8

**301 Rogers Road**                                    :
**Glasgow, KY  42141**                                 :
                                                        :
**J Mills Enterprises**                                :
**Owensboro Family Pharmacy**                          :
**720 W. Beyers Avenue**                               :
**Owensboro, KY  42303**                               :
                                                        :
**Paducah Pharmacy, Inc.**                             :
**d/b/a Paducah Pharmacy**                             :
**225 Medical Center Drive**                           :
**Paducah, KY  42003**                                 :
                                                        :
**Reidland Pharmacy, Inc.**                            :
**d/b/a Reidland Pharmacy**                            :
**5433 Reidland Road**                                 :
**Paducah, KY  42003**                                 :
                                                        :
**Rice Drugs, Inc.**                                   :
**d/b/a Rice's Pharamacy – Beaver Dam**                :
**1209 N. Main Street**                                :
**Beaver Dam, KY 42320**                               :
                                                        :
**Smithland Pharmacy, Inc.**                           :
**d/b/a Smithland Pharmacy**                           :
**203 E. Adair Street, P.O. Box 10**                   :
**Smithland, KY 42081**                                :
                                                        :
**Van's Evergreen, Inc.**                              :
**d/b/a First Pharmacy**                               :
**1540 13th Street W**                                 :
**Billings, MT 59102**                                 :
                                                        :
**Seeley Swan Pharmacy**                               :
**3027 Mt. Hwy 3 N. P.O. Box 930**                     :
**Seeley Lake, MT 59868**                              :
                                                        :
**Devine's Pharmacy, Inc.**                            :
**d/b/a Devine's Pharmacy**                            :
**1949 Oak Tree Road**                                 :

9

**Edison, NJ 08820**                                     :
                                                         :
**Freehold Boro Pharmacy**                               :
**31 East Main Street**                                  :
**Freehold, NJ 07728**                                   :
                                                         :
**Hazlet Pharmacy, Inc.**                                :
**d/b/a Hazlet Pharmacy**                                :
**2874 Highway 35**                                      :
**Hazlet, NJ  07730**                                    :
                                                         :
**HB Drugs Inc.**                                        :
**d/b/a HB Pharmacy**                                    :
**98 Ridge Road**                                        :
**North Arlington, NJ  07031**                           :
                                                         :
**BMRR Corporation**                                     :
**d/b/a Heller Pharmacy**                                :
**664 Mt. Prospect Avenue**                              :
**Newark, NJ  07104**                                    :
                                                         :
**Levy's Pharmacy of Lyndhurst**                         :
**d/b/a Levy's Pharmacy**                                :
**299 Stayvesant Avenue**                                :
**Lyndhurst, NJ 07071**                                  :
                                                         :
**Mt. Prospect Pharmaceutical SVCS, Inc.**               :
**d/b/a Liss Pharmacy**                                  :
**794 Mt. Prospect Avenue**                              :
**Newark, NJ  07104**                                    :
                                                         :
**Little Silver Pharmacy, LLC**                          :
**d/b/a Little Silver Pharmacy**                         :
**10 Church Street**                                     :
**Little Silver, NJ 07739**                              :
                                                         :
**Pascack Pharmacy, Inc.**                               :
**d/b/a Pascack Pharmacy**                               :
**124 Broadway**                                         :
**Hillsdale, NJ 07642**                                  :

10

**Pennington Apothecary LLC**                        :
**d/b/a Pennington Apothecary**                      :
**6 North Main Street**                              :
**Pennington, NJ  08534**                            :
                                                     :
**C&S Pharmacy Ventures, LLC**                       :
**d/b/a Quakerbridge Pharmacy**                      :
**94 Flock Road**                                    :
**Mercerville, NJ  08619**                           :
                                                     :
**Conger Drug, Inc.**                                :
**d/b/a Reed's Pharmacy**                            :
**790 East Main**                                    :
**Hyrum, UT 84319**                                  :
                                                     :
**Hibbitts Enterprises, LLC**                        :
**d/b/a Hibbitts Drug Company**                      :
**735 N. Man Street**                                :
**New Ellenton, SC 29809**                           :
                                                     :
**M Holdings LLC**                                   :
**d/b/a My Pharmacy**                                :
**808 Hwy 378 Ste B**                                :
**Lexington, SC 29072**                              :
                                                     :
**Southside Pharmacy LLC**                           :
**d/b/a Southside Pharmacy**                         :
**3320 4th Avenue, Ste F**                           :
**Conway, SC 29527**                                 :
                                                     :
**Daville HC, Inc.**                                 :
**d/b/a Conway's Danville Pharmacy**                 :
**14 East Main Street**                              :
**Danville, OH  43014**                              :
                                                     :
**HHC Enterprises, Inc.**                            :
**d/b/a Conway's Eastside Pharmacy**                 :
**1451 Vauger Road, Suite 1H**                       :
**Mt. Vernon, OH 43050**                             :

11

**East Kentucky Drug, Inc.**                    :
**d/b/a East Kentucky Drug**                    :
**160 Conn Street, Ste 2**                      :
**Ivel, KY 41642**                              :
                                                :
**Kiowa County Pharmacy, LLC**                  :
**d/b/a Kiowa County Pharmacy**                 :
**721 W. Karisas Avenue, Ste 101**             :
**Greensburg, KS 67054**                        :
                                                :
**The Downtown Drugstore, LLC**                 :
**d/b/a The Downtown Drugstore**                :
**516 E. 4th Street**                           :
**Tonganoxie, KS  66086**                       :
                                                :
**Gripka Pharmacy, LLC**                        :
**d/b/a The Medicine Store – Basehor**          :
**15415 Pinehurst Drive**                       :
**Basehor, KS  66007**                          :
                                                :
**J3A, Inc.**                                   :
**d/b/a U-Save Kearney**                        :
**3611 2nd Avenue**                             :
**Kearney, NE  68847**                          :
                                                :
**KAPS, Inc.**                                  :
**d/b/a U-Save Pharmacy**                       :
**1317 Hill Street**                            :
**Holdrege, NE  68949**                         :
                                                :
**Hays Pharmacy, Inc.**                         :
**d/b/a Hays Pharmacy**                         :
**706 W. Main Street**                          :
**Alma, NE 68920**                              :
                                                :
**Gotherburg Discount Pharmacy**                :
**902 Avenue D**                                :
**Gothenburg, NE 69138**                        :
                                                :

12

U-Save Pharmacy of Auburn, LLC :
d/b/a CodyUsave Pharmacy :
2220 J Street :
Auburn, NE  68305 :
 :
   Plaintiffs, :
  v. :
 :
OPTUMRX, INC., :
as successor by merger to Catamaran :
Corporation, and OPTUMRX, INC. :
in its own right, :
 :
   Defendant. :

## COMPLAINT

Plaintiffs, as listed above, by and through their attorneys Keith Short & Associates and the Jacobs Law Group, PC, and against Defendant OptumRx, a pharmacy benefit manager ("PBM") successor by merger to Catamaran Corporation ("Catamaran"), and OptumRx in its own right ("Optum", collectively "Defendant") and state as follows:

## PARTIES

1. Plaintiff B.W.E & T.M.E., Inc., d/b/a Millstadt Pharmacy is a corporation with a place of business at 120 W. Washington Street, Millstadt, IL 62260.

2. Plaintiff Axline's Inc., d/b/a Axline Pharmacy, is a corporation with a  place of business at 220 North Main Street, Monmouth, IL 61462.

3. Plaintiff C.V. Kasiar, LTD, d/b/a Beck's Drugs, is a limited company with a place of business at 1409 Locust Street, Eldorado, IL 62930.

4. Plaintiff Rx Stores, LLC, d/b/a Family Drug, is a limited liability company with a place of business at 1601 West Main Street, Shelbyville, IL 62565.

13

5.      Plaintiff Howell Pharmacy LLC, d/b/a Medicine Shoppe #2119 is a limited liability company with a place of business located at 122 W. State Street, O'Fallon, IL 62269.

6.      Plaintiff Acjk, Inc. d/b/a Medicap Pharmacy is a corporation with a place of business at 2770 Madison Avenue, Granite City, IL 62040.

7.      Plaintiff Byrd-Watson Times Square Drug, d/b/a Byrd-Watson Pharmacy is an entity with a  place of business located at 3401 Broadway Street, Mt. Vernon, IL 62862.

8.      Plaintiff Letitride, Inc., d/b/a Chenoa Rx, is a corporation with a place of business at 209 S. Green Street, Chenoa, IL 61726.

9.      TJD Enterprises, LLC, d/b/a Doehrings Pharmacy and York Pharmacy is a limited liability company with a place of business located at 143 South Washington Street, Nashville, IL 62263.

10.     Plaintiff JD Pharmacy, Inc., d/b/a John's Medical Pharmacy is corporation with a place of business located at 300 S. Main Street, Hillsboro, IL 62049.

11.     Plaintiff Michelle's Pharmacy, d/b/a Michelle's Pharmacy Bunker Hill, Michelle's Pharmacy Carlinville and Michelle's Pharmacy Gillespie, is  an entity, located at 809 S. Franklin Street, Bunker Hill, IL 62014.

12.     Plaintiff Sullivan Drugs Inc., d/b/a Sullivan Drugs – Mt. Olive and Sullivan Drugs – Gillespie, is a corporation with a place of business at 105 W. Main Street, Mt. Olive, IL 62069.

14

13.     Plaintiff Maurice E. Sullivan, d/b/a Sullivan Drugs – Raymond, is a sole proprietor, with a place of business located at 801 N. O'Bannon, Raymond, IL 62560.

14.     Plaintiff Sullivan Drugs of Staunton, Inc., d/b/a Sullivan Drugs – Staunton, is a corporation with a place of business located at 101 E. Main Street, Staunton, IL 62088.

15.     Plaintiff Wear Drug, Inc., d/b/a Wear Drug, is a corporation with a  place of business located at 408 Walnut, Carthage, IL 62321.

16.     Plaintiff Woodward CJS Pharmacy, Inc., d/b/a The Medicine Shoppe #62 is a corporation with its principal place of business at 901 East Edwardsville Road, Wood River, IL.

17.     Plaintiff Moore Family Stores, d/b/a Sav-Mor Pharmacy – Neoga, The Pharmacie Shoppe, Brown's Drug Store – Effingham and Toledo Pharmacy, is a corporation with a principal place of business at 596 Oak, Neoga, IL.

18.     Plaintiff H & S Pharmacies LLC, d/b/a Victors Medicenter Pharmacy, is a Limited Liability Company with a principal place of business at 2323 Old Plank Road, Chester, IL.

19.     Plaintiff Dr. Ike, Inc., d/b/a Dr. Ike's Pharmacare, is a corporation with a place of business located at 111 N. Brand Blvd, Unit C., Glendale, CA 91202.

20.     Plaintiff Clinton Butler LLC, d/b/a Clinton Drug, is a limited liability company with a place of business at 2526 Highway 65 S, Clinton, AR 72031.

21.     Plaintiff Coleman Butler, LLC, d/b/a Coleman Pharmacy, is a limited liability company with a place of business at 36190 Grand Avenue, Ft. Smith, AR 72904.

15

22.     Plaintiff Village Apothecary, Inc., d/b/a College Hill Drug, is a corporation with a place of business at 100 East Street, Texarkana, AR 71854.

23.     Plaintiff Medi Shop Pharmacy, LLC, d/b/a Medi Shop Pharmacy is a limited liability company located at 204 Highway 715, Mena, AR 71953.

24.     Plaintiff Orrell Enterprises, Inc., d/b/a The Medicine Chest Pharmacy is a corporation with a place of business at 209 Carter Street, Berryville, AR 72616.

25.     Village Apothecary, Inc., d/b/a Village Healthmart #1 and Village Healthmart #2, is a corporation with a place of business located at 4440 Highway 7 North, Hot Springs, AR 71909.

26.     Plaintiff Beattie's Community Pharmacy, Inc., d/b/a Beattie's Health Mart Pharmacy is a corporation with a place of business located at 3140 Vista Drive, Suite 100, Erie, CO 80515.

27.     Plaintiff JB Pharmacy, Inc., d/b/a JB Pharmacy, is a corporation with a place of business at 915 W. Northern Avenue, Peublo, CO 81004.

28.     Plaintiff SSV Pharmacy LLC, d/b/a Rainbow Pharmacy (f/k/a The Medicine Shoppe #1404) is a limited liability company with a place of business at 1625 Medical Center Pt. Suite 140, Colorado Springs, CO 80907.

29.     Plaintiff Pharmacy Services, Inc., d/b/a Valu-u-Med Pharmacy is a corporation with a place of business at 159 Bent Avenue, Las Animas, CO 81054.

30.     Plaintiff Carroll Apothecary, LTC is an entity with a  place of business at 425 Highway 30 W, Suite 140, P.O. Box 157, Carroll, IA 51401.

16

31.     Plaintiff Forbes Pharmacy Corp., d/b/a Medicap Pharmacy – Urbandale, is a corporation with a place of business at 8170 Douglas Avenue, Urbandale, IA 50322.

32.     Plaintiff GRX Holding, LLC, d/b/a Wright Pharmacy and Medicap Pharmacy, with a place of business at 105 Lincoln Way, Ames, IA 50010.

33.     Plaintiff GRX II, LTD, d/b/a Medicap Pharmacy #8057, is a limited company with a place of business at 904 North John Wayne Drive, Winterset, IA 50273.

34.     Plaintiff GRX Norwalk, Inc., d/b/a Medicap Pharmacy #8230, is a corporation with a place of business 2521 Sunset Drive, Suite 1, Norwalk, IA 50211.

35.     Plaintiff DRMANAE, Inc., d/b/a One to One Pharmacy (f/k/a Millers Medicine Cabinet) is a corporation with a place of business located at Kalona, IA 52247.

36.     Plaintiff Weirick & Patterson Pharmacy, Inc., d/b/a Weirick & Patterson Pharmacy is a corporation with a place of business located at 101 N. Walnut Street Colfax, IA 50054.

37.     Plaintiff Auburn Pharmacy, Inc., d/b/a Auburn Pharmacy, is a corporation with a place of business at 13351 Mission Road, Leawood, KS.

38.     Plaintiff Auburn Pharmacy Abilene, LLC, d/b/a Auburn Pharmacy – Abilene, is a limited liability company with a place of business at 1518 N. Buckeye Avenue, Abilene, KS.

39.     Plaintiff Auburn Pharmacy Osage, LLC, d/b/a Auburn Pharmacy – Osage, is a limited liability company with a place of business at 890 Larkin Street, Osage City, KS.

40.     Plaintiff West County Pharmacy LLC, d/b/a Goldsmith Medicenter Pharmacy, is a limited liability company with a place of business at 777 S. New Ballas Road, St. Louis, MO 63141.

41.     Plaintiff Freeze Pharmacy, LLC, d/b/a Greenfield Pharmacy is a limited liability company with a place of business at 105 N. Grand Street, Suite 1, Grceenfield, MO 65661.

42.     STE GEN Pharmacy, Inc., d/b/a Kleins Medicenter Pharmacy, is a corporation with a place of business at 601 Center Drive, Ste. Genevieve, MO 63670.

43.     Plaintiff Ladue Pharmacy LLC, d/b/a Ladue Pharmacy, is a limited liability company with a place of business at 9832 Clayton Road, St. Louis, MO 63124.

44.     Plaintiff Jackson Pharmacy, Inc., d/b/a Medicenter Pharmacy – Jackson, is a corporation with a place of business at 200 W. Washington, Jackson, MO 63755.

45.     Plaintiff Medley Pharmacy, Inc., d/b/a Medley Pharmacy, Sinks Pharmacy, Sinks Pharmacy Select and Steelville Drug, is a corporation with a place of business at 601 Highway 28E, Owensville, MO 65066.

46.     Plaintiff Millbrook Pharmacy, Inc., d/b/a Millbrook Pharmacy is a corporation with a place of business at 7010 Pershing Avenue, St. Louis, MO 63130.

47.     Plaintiff Semo Drugs of Kennett, Inc., d/b/a Semo Drugs of Kennett, is a corporation with a place of business located at 1300 1st Street, Kennett, MO 63857.

48.     Plaintiff Sikeston Pharmacy, LLC, d/b/a Sikeston Medicenter Pharmacy is a limited liability company with a place of business at 507 N. Main Street, Sikeston, MO 63801.

18

49.     Plaintiff Cape Pharmacy LLC, d/b/a Medicenter Pharmacy – Cape, is a limited liability company with a place of business at 465 S. Mount Auburn Road, Ste 101, Cape Girardeau, MO 63703.

50.     Plaintiff Midwest Health Innovations, LLC, d/b/a Scribner Drugstore, is a limited liability company with a place of business at 416 Main Street, P.O. Box 439, Scribner, NE 68057.

51.     Plaintiff USPRX, Inc., d/b/a U-Save Ogallala is a corporation with a  place of business at 23 N. Spruce Street, Ogallala, NE 69513.

52.     Plaintiff Mytillini Enterprises, d/b/a Bedford Pharmacy is a company with a place of business at 209 Route 101, Bedford, NH 03110.

53.     Plaintiff Northeast Pharmacy Services, LLC, d/b/a Northeast Pharmacy, is a limited liability company with a place of business at 1 Granite Place, Suite 200N., Concord, NH 03301.

54.     Plaintiff Richard L. Berry Pharmacy, Inc., d/b/a The Medicine Shoppe #1759 is a corporation with a place of business at 10606 New Buffalo Road, North Lima, OH.

55.     Plaintiff Marshall W. Davis Drugs, Inc., d/b/a Davis Drugs, is a corporation with a place of business at 250 Lone Oak Road, Paducah, KY 42001.

56.     Plaintiff Davis Drugs Lone Oak, Inc., d/b/a Davis Drugs Lone Oak is a corporation with a place of business at 2855 Lone Oak Road, P.O. Box 10, Paducah, KY 42002.

57.     Plaintiff Ely Extended Care is an entity with a place of business at 109 Myrtle Street, Glasgow, KY 42141.

58.     Ely Drugs, Inc., d/b/a Ely Drugs is a corporation with a place of business located at 415 Happy Valley Road, Glasgow, KY 42141.

59.     Plaintiff Ely Drugs d/b/a Ely Drugs of Bowling is an entity with a place of business located at 4863 Scottsville Road, Bowling Green KY 42104.

60.     Plaintiff Ely Home Infusion, Inc., d/b/a Ely Home Infusion, is a corporation with a place of business located at 413 Happy Valley Road, Suite D, Glasgow, KY 42141.

61.     Plaintiff McNamee, Inc., d/b/a Family Pharmacy is a corporation with a place of business at 412 Central Avenue, South Williamson, KY 41503.

62.     Plaintiff Highland Pharmacy Corp., d/b/a Highland Pharmacy, is a corporation with a place of business located at 301 Rogers Road, Glasgow, KY 42141.

63.     Plaintiff J. Mills Enterprises, d/b/a Owensboro Family Pharmacy, is an entity with a place of business at 720 W. Beyers Avenue, Owensboro, KY 42303.

64.     Plaintiff Paducah Pharmacy, Inc., d/b/a Paducah Pharmacy, is a corporation with a place of business at 225 Medical Center Drive, Paducah, KY 42003.

65.     Plaintiff Reidland Pharmacy Inc., d/b/a Reidland Pharmacy is a corporation with a place of business at 5433 Reidland Road Paducah, Ky 42003.

66.     Plaintiff Rice Drugs, Inc., d/b/a Rice's Pharmacy – Beaver Dam is a corporation with a place of business at 1209 N. Main Street Beaver Dam, KY 42320.

20

67.     Plaintiff Smithland Pharmacy, Inc., d/b/a Smithland Pharmacy is a corporation with a place of business at 203 E. Adair Street P.O. Box 10, Smithland, KY 42081.

68.     Plaintiff Van's Evergreen, Inc., d/b/a First Pharmacy, is a corporation with a place of business at 1540 13th Street W, Billings, MT 59102.

69.     Plaintiff Seeley Swan Pharmacy is an entity with a place of business at 3027 Mt. Hwy 3 N. P.O. Box 930, Seeley Lake, MT 59868.

70.     Plaintiff Devine's Pharmacy, Inc. d/b/a Devine's Pharmacy is a corporation with a place of business at 1949 Oak Tree Road, Edison, NJ 08820.

71.     Plaintiff Freehold Boro Pharmacy is an entity with a place of business at 31 East Main Street, Freehold, NJ 07728.

72.     Plaintiff Hazlet Pharmacy, Inc., d/b/a Hazlet Pharmacy, is a corporation with a  place of business located 2874 Highway 35, Hazlet, NJ 07730.

73.     Plaintiff HB Drugs, Inc., d/b/a HB Pharmacy is a corporation with a place of business at 98 Ridge Road, North Arlington, NJ 07031.

74.     Plaintiff BMRR Corporation, d/b/a Heller Pharmacy, is a corporation with a place of business at 664 Mt. Prospect Avenue, Newark, NJ  07104.

75.     Plaintiff Levy's Pharmacy of Lyndhurst, d/b/a Levy's Pharmacy is an entity with a place of business at 299 Stayvesant Avenue, Lyndhurst, NJ 07071.

76.     Plaintiff Mt. Prospect Pharmaceutical SVCS, Inc., d/b/a Liss Pharmacy, is a corporation with a place of business at 794 Mt. Prospect Avenue, Newark, NJ 07104.

21

77.     Plaintiff Little Silver Pharmacy, LLC, d/b/a Little Silver Pharmacy, is a limited liability company with a place of business at 10 Church Street, Little Silver, NJ 07739.

78.     Plaintiff Pascack Pharmacy, Inc., d/b/a Pascack Pharmacy is a corporation with a place of business at 124 Broadway Hillsdale, NJ 07642.

79.     Plaintiff Pennington Apothecary LLC, d/b/a Pennington Apothecary is a limited liability company with a place of business at 6 North Main Street, Pennington, NJ 08534.

80.     Plaintiff C & S Pharmacy Ventures, LLC, d/b/a Quakerbridge Pharmacy is a limited liability company with a place of business at 94 Flock Road, Mercerville, NJ 08619.

81.     Plaintiff Conger Drugs, Inc., d/b/a Reed's Pharmacy, is a corporation with a place of business at 790 East Main, Hyrum, UT.

82.     Plaintiff Hibbitts Enterprises, LLC, d/b/a Hibbitts Drug Company is a limited liability company with a place of business at 735 N. Man Street, New Ellenton, SC 29809.

83.     Plaintiff M Holdings, LLC, d/b/a My Pharmacy is a limited liability company with a place of business at 808 Hwy 378 Ste B, Lexington, SC 29072.

84.     Plaintiff Southside Pharmacy LLC, d/b/a Southside Pharmacy is a limited liability company with a place of business at 3320 4th Avenue, Ste F, Conway, SC 29527.

85.     Plaintiff Danville HC, Inc., d/b/a Conway's Danville Pharmacy, is a corporation with a place of business at 14 East Main Street, Danville, OH 43014

86.     Plaintiff HHC Enterprises, Inc., d/b/a Conway's Eastside Pharmacy, is a corporation with a place of business at 1451 Vauger Road, Suite 1H, Mt. Vernon, OH 43050.

87.     Plaintiff East Kentucky Drug, Inc., d/b/a East Kentucky Drug, is a corporation with a place of business located at 160 Conn Street, Ste 2, Ivel, KY 41642.

88.     Plaintiff Kiowa County Pharmacy, LLC, d/b/a Kiowa County Pharmacy, is a Limited Liability Company with a place of business at 721 W. Karisas Avenue, Suite 101, Greensburg, KS 67054.

89.     Plaintiff Downtown Drugstore, LLC, d/b/a The Downton Drugstore, is a Limited Liability Company with a place of business at 516 E. 4th Street Tonganoixie, KS 66086.

90.     Plaintiff Gripka Pharmacy, LLC, d/b/a The Medicine Store – Basehor, is a Limited Liability Company with a place of business at 15415 Pinehurst Drive Basehor, KS 66007.

91.     Plaintiff J3A, Inc., d/b/a U-Save Kearney, is a corporation with a place of business at 3611 2nd Avenue, Kearney, NE 68847.

92.     Plaintiff KAPS, Inc., d/b/a U-Save Pharmacy is a corporation with a place of business at 1317 Hill Street, Holdrege, NE 68949.

93.     Plaintiff Hays Pharmacy, Inc., d/b/a Hays Pharmacy, is a corporation with a place of business at 706 W. Main Street, Alma, NE 68920.

23

94.    Plaintiff Gotherburg Discount Pharmacy is an entity with a place of business at 902 Avenue D, Gothenburg, NE 69138.

95.    Plaintiff U-Save Pharmacy of Auburn, LLC, d/b/a CodyUsave Pharmacy, is a Limited Liability Company with a place of business at 2220 J Street, Auburn, NE 68305.

## NATURE OF THE CASE

96.    This action arises from the breach of contract, bad faith, and statutory violations committed by Catamaran, and its corporate successor, Optum, each a pharmacy benefit manager ("PBM") that unilaterally determines how much Plaintiffs are paid for the generic drug prescriptions they provide to customers.

## FACTUAL AND LEGAL BACKGROUND

97.    Plaintiffs are among an estimated 22,000 independently owned pharmacies in the United States. Independent pharmacies, like Plaintiffs, are small-business entrepreneurs, rooted in their communities, who play an essential role in the prescription drug market by offering their customers uniquely personalized service and counseling not provided by large chain pharmacies or mail order pharmacies.

98.    Defendant OptumRx is a California corporation with its principal place of business located at 2300 Main St, Irvine, CA 92614. It is a wholly owned subsidiary of United Health Corporation, which is the nation's fifth largest corporation.

99.    OptumRx acquired and merged with Catamaran Corporation, another large PBM, in July 2015. Catamaran was headquartered in Schaumburg IL, where all the major operations and decisions described in this complaint.

24

100.    For years after the merger, OptumRx paid claims using two sets of systems. For health plans which had been contracted with Catamaran (which could be identified by Catamaran BINs [Bank Identification Number] and PCNs [Prescriber Control Number]) claims were processed and paid in Illinois using the legacy Catamaran systems and personnel in Illinois. For the Optum line of business, claims were processed through Optum's pre-existing facilities in California and Minnesota.

101.    Even after its merger with OptumRx, the processing and payment of claims to plaintiffs for Catamaran's legacy book of business was controlled and determined by personnel in Illinois until at least 2020, when the systems were eventually unified.

102.    Defendant earns exorbitant—and ill gotten—fees by inserting itself between the patients who need prescription drugs, the health plans that pay for the drugs, and the pharmacies (both retail chain, mail order, and independent, such as Plaintiffs) who dispense those drugs.

103.    Crucially, only a handful of PBMs dictate the rates used to reimburse Plaintiffs for dispensing prescription drugs to patients. Three PBMs comprise about 80-85% of the national market and cover approximately 180 million patients. Optum, one of these three PBMs, controls approximately 25% of the national PBM market alone.

104.    Defendant abuses its unbridled price-setting power to drive independent pharmacies out of business. In so doing, Defendant has breached its own contracts and promises, its obligation of good faith and fair dealing and violated the laws of the States of Illinois, California,  Arkansas, Colorado, Iowa, Kansas, , Missouri, Nebraska, New

25

Hampshire and Ohio. Defendant has done so, in part, to divert business from local, independent pharmacies such as Plaintiffs, to its own affiliated "mail order," and specialty pharmacies.

105. Defendant's bad faith is manifested in how it sets the Maximum Allowable Cost ("MAC") price it sets for generic drugs.

106. Defendant's entire business model is grounded in a web of confidential agreements, that Plaintiffs are never allowed to see, let alone negotiate.

107. Under this veil of secrecy, Defendant routinely pays Plaintiffs MAC prices that are substantially below the MAC prices Defendant pays to Defendant's affiliated mail-order pharmacies and large retail chain pharmacies (together, "Favored Pharmacies") — for the same drugs dispensed to patients in the same health plan, and at the same time.

108. Since January 1, 2013, and continuing through the present, Defendant has routinely breached its own contracts and promises by:

   a. Paying Plaintiffs below market prices for prescription drugs based on irrelevant, inapplicable, and/or outdated pricing data; or in some cases, no pricing data at all;

   b. Paying Plaintiffs MAC prices for prescription drugs that are below the market prices evidenced by nationally recognized pricing services, national drug wholesalers, and/or publicly available results of surveys of retail prices performed by the Centers for Medicare and Medicaid Services;

26

c.      Failing to use drug pricing information from nationally recognized pricing services, national drug wholesalers, and/or national drug manufacturers in setting MAC pricing;

d.      Consistently reimbursing Plaintiffs for prescription drugs at rates that are below reasonable market acquisition costs;

e.      Requiring Plaintiffs who appealed Defendant's MAC prices to submit their invoice costs, while not considering this information in deciding and, in practically all cases, rejecting Plaintiffs' MAC appeals;

f.      Classifying and charging for prescription drugs as "brand" when dealing with health insurance plans, while simultaneously classifying and paying for the same prescription drugs as "generic" when reimbursing Plaintiffs;

g.      Manipulating the timing of its updating of MAC prices to maximize profits on each drug transaction through the difference between the amount billed to the plan and the amount reimbursed to Plaintiff pharmacies. When the prices for generic drugs increase dramatically, Defendant bills the health plan the increased price while still reimbursing Plaintiffs the outdated lower MAC price, thereby making a greater spread on the transaction. Conversely, when the prices for

27

generic drugs drop dramatically, Defendant immediately reduces its MAC price payment to Plaintiff pharmacies while still billing the health plan the outdated higher price, again making a spread on the transaction;

h.     Maintaining multiple different MAC price lists for different pharmacy providers, even within the same health plan;

i.     Paying Plaintiffs at MAC prices substantially lower than the MAC prices paid to other pharmacy providers within the same health plan;

j.     Retroactively recouping funds from Plaintiffs after Defendant had accepted and paid Plaintiffs' prescription drug claims as "Clean Claims" taking in millions of dollars of damages from the Plaintiffs;

k.     Violating numerous state laws related to prescription drug pricing and pharmacy reimbursement in the states in which Plaintiffs operate (Illinois, California,  Arkansas, Colorado,  Iowa, Kansas, Kentucky, Missouri, Montana, Nebraska, New Hampshire, New Jersey, and Ohio);

l.     Violating federal law by retroactively adjusting Plaintiffs' reimbursements more than 14 days after Defendant approved and authorized the claim to be paid and/or more

28

than 30 days of receiving any other claim. 42 U.S.C. §1395w-112;

m.      Engaging in patient steering — whereby Defendant manipulates its benefit offerings and requires patients to use their own pharmacies exclusively and/or otherwise uses Plaintiffs' confidential information (among other practices) to poach Plaintiffs' customers.

109.   Defendant's conduct violates the terms of the contract between the parties and the requirements of mutuality of obligation, good faith, and fair dealing inherent in the contract.

110.   Defendant conduct violates its promise to reimburse Plaintiffs in accordance with the express terms of its Provider Manual and the applicable laws and regulations governing the relationship between pharmacies and PBMs.

111.   Defendant's Provider Manual specifically requires it to comply with federal and state law, and thus the above violations of the laws of the states of Illinois, California, Arkansas, Colorado, Iowa, Kansas, Kentucky, Missouri, Montana, Nebraska, New Hampshire, New Jersey, and Ohio are also breaches of contract.

112.   Defendant further converted Plaintiffs' funds by engaging in the practice of "clawing back" funds Defendant had paid to Plaintiffs for past prescriptions determined to be "clean claims" under the terms of Defendant's own contract.

113.   Defendant's practices caused and continue to cause many independent pharmacies in Illinois (and across the nation), including Plaintiffs, to lose substantial

profits and go out of business, deprives patients of adequate choice and access to a diverse group of pharmacy providers, and destroys competition in the pharmacy market.

## **GENERAL ALLEGATIONS**

### A. PBMs, PSAOs, & the Contractual Relationship Between Defendant and Plaintiffs

114.    Defendant is a "pharmacy benefit manager" as defined by 215 ILCS 5/513b1(a).

115.    As a PBM, Defendant contracts with various health insurance companies (plan sponsors) across Illinois, and the nation, to administer and manage their prescription drug benefit programs. On behalf of its health plan sponsor clients, Defendant is primarily responsible for developing and maintaining prescription drug formularies, negotiating rebates and discounts with prescription drug manufacturers, and establishing a network of pharmacies to dispense prescription drugs to members enrolled with the plan sponsor ("plan members").

116.    Defendant is therefore solely responsible for processing and paying Plaintiffs for prescription drugs dispensed to plan members.

117.    Virtually all plan sponsors use PBMs, such as Defendant, as intermediaries between themselves and the pharmacy providers.

118.    As a practical matter, Plaintiffs and other independent pharmacies have no choice but to enroll with PBMs such as Defendant to serve their customers, almost all of whom are plan members.

30

119.   Defendant deliberately makes the terms governing the business relationship between Plaintiffs and Defendant convoluted, opaque and confusing.

120.   There are over 20,000 independent pharmacies in the Unites states. Defendant typically does not deal directly with independent pharmacies such as Plaintiffs. Instead, it saves the time and effort required to contract directly with many independent pharmacies by contracting with pharmacy services administrative organizations ("PSAOs") to recruit independent pharmacies to join Optum's network of providers

121.   The PSAOs contract directly with the PBM and in turn, recruit the pharmacies that participate in the PBM's network.

122.   The resulting terms and conditions of the contract between Defendant and the PSAOs are not disclosed to the pharmacies, nor are the pharmacies allowed to participate in the contracting process.

123.   Each of the Plaintiffs accessed Defendant's network of payors through a PSAO. Plaintiffs have never seen any contract between Defendant and the PSAOs.

124.   In fact, Defendant precludes PSAOs from disclosing any aspect of the Defendant/PSAO contract to Plaintiffs.

125.   Once Plaintiffs are enrolled with the Defendant through their PSAO, on-line access to Defendant's Provider Manual, which governs the terms of the business relationship between Defendant and Plaintiffs thereafter.

126.   Defendant's Provider Manual sets forth the terms of the business relationship between Plaintiffs and Defendant. Defendant unilaterally creates the Provider Manual and modifies it without the input or agreement of the Plaintiffs. Plaintiffs have no

31

role in negotiating the terms of the Provider Manual nor do they sign it.   Except when there is a state-specific law governing a transaction, the Manual is governed by California law.

127.   Defendant unilaterally modifies and revises the Provider Manual multiple times per year. The relevant portions of the Provider Manual have not materially changed during the period in question.   True and correct copies of representative samples of Defendant's Provider Manuals from 2015 and 2020 are attached hereto as Exhibits A and B respectively.  A representative sample of relevant excerpts of the Catamaran Provider Manual from 2013 is attached as Exhibit C.

## B.  Defendant Keeps its Contractual Relationships Secret

128.   Defendant's entire business model relies on a wall of secrecy, employing a series of confidentiality agreements to conceal the truth about its operations

129.   Specifically, Defendant hides from Plaintiffs:

a.  How much it is paid by plan sponsors for the prescriptions which Plaintiffs dispense to plan members.

b.  The spread it collects between what it receives from plan sponsors and what it pays to Plaintiffs;

c.  How much more it pays large pharmacy chains for the same prescriptions that Plaintiffs fill for the same plan members; and

d.  How much more it pays its own mail order pharmacy for the same prescriptions that Plaintiffs fill for the same plan members.

e.  The brand/generic classification it uses to bill health plans

32

130.    At the same time, Defendant hides from Plans the amounts it pays pharmacies.

131.    Moreover, Defendant inserts draconian provisions into its Provider Manuals, to deter pharmacies from pursuing grievances. As an example, Defendant's current Provider Manual provides that any pharmacy that complains about its reimbursements from Defendant to the health insurance plan sponsor is subject to penalties at a *minimum* of $5,000 per incident/per day, "including and up to termination from participation, and withdrawal and/or the holding of funds as deemed necessary by [Defendant]." *See Exhibit A, pg. 41, Exhibit B at 45.*

132.    Defendant's current Provider Manual also provides that any breach of its confidentiality provisions will subject the pharmacy to suit for injunctive relief and damages in California, plus liability to reimburse Defendant "for all of its costs and expenses (including, without limitation, reasonable attorneys' fees) incurred by [Defendant] in connection with an actual or threatened violation of [the confidentiality provisions]." *See Exhibit A, pg. 115, Exhibit B at 121.*

### C. For Plaintiffs, Doing Business with Defendant is Not Optional

133.    Practically speaking, if an independent pharmacy wants to remain in business, it must "accept" the prescription drug coverage plans offered to the pharmacy's local customer base. Since Defendant has become a dominant force in the market, controlling about 25% of the national market, independent pharmacies such as Plaintiffs must join Defendant's network or they will lose much of their customer base.

### D. Defendant's Prescription Drug Reimbursement, MAC Pricing, and "MAC Lists"

134.   Defendant unilaterally establishes Plaintiffs' reimbursement rates for prescription drugs dispensed to plan members.

135.   Defendant's Provider Manuals from 2012 to the present describe the method by which Defendant determines the amounts it will pay Plaintiffs, and other pharmacy providers for dispensing prescription drug products:

> Claims submitted by Network Pharmacy Provider for Members using an Administrator network or Client network via the POS System for retail prescription benefit management or Claim processing are reimbursed at the lesser of the following: the Benefit Plan or network AWP discount or other referenced based pricing plus applicable dispensing fee; MAC (when applicable for Covered Prescription Services); Network Pharmacy Provider's Submitted Cost Amount; Network Pharmacy Provider's U&C which would be given under the same circumstances if the Member did not possess prescription benefit coverage; or the submitted ingredient cost.

*Exhibit C at 3-4*

136.   For brand-name drugs, Defendant typically reimburses a pharmacy at a percentage of the average wholesale price ("AWP") of the drug (e.g., AWP minus 20%, plus a dispensing fee) for each prescription filled.

137.   For virtually all generic drugs, however, Defendant regularly sets its MAC prices lower than each of the three other metrics available under the "lesser of" methodology described above. Thus, for virtually all generic drugs under the "lesser of" methodology, Defendant promises to reimburse Plaintiffs based on maximum allowable cost ("MAC") pricing.

34

138.   As a result, for generic drugs the MAC price is the lowest, and therefore the prevailing reimbursement rate for most generic prescriptions dispensed by Plaintiffs.

139.   Defendant develops and maintains MAC Lists which contain the MAC prices for generic drugs.

140.   Defendant has one set of MAC lists for pharmacy providers and another set for health insurance plans.

141.   The "cost" in the "maximum allowable cost" is meant to at least cover the pharmacy's cost incurred to acquire the drug. As a result, state Medicaid/Medi-Cal MAC lists consist of a single price for each drug,  based on a pharmacy's reasonable acquisition cost for the drug.

142.   Defendant's Provider Manuals preclude Defendant from reimbursing pharmacies serving the same plan members using different MAC lists and therefore different MAC prices.

### E.  Defendant's Secrecy and Manipulation of MAC Pricing

143.   Defendant unilaterally determines the price it pays for prescription drugs sold by Plaintiffs to plan members.

144.   Defendant aggressively maintains the secrecy of its reimbursement terms and MAC prices as "proprietary" business information.

145.   Defendant's MAC lists state the maximum amount that Defendant will pay Plaintiffs for a generic drug.

146.   MAC prices should be set so that the pharmacy's reasonable acquisition costs are not higher than the MAC, otherwise the pharmacy will lose money on every prescription, even if its overhead costs were at zero.

147.   Defendant's MAC pricing is not transparent and is based on a methodology that is both fluid and hidden from Plaintiffs.

148.   Defendant does not employ any standard methodology for deriving its MAC pricing or MAC list(s). Defendant does not inform either plan sponsors or pharmacies how particular drug products are added or removed from its MAC list(s), or how Defendant calculates or adjusts its MAC prices for drugs identified on its MAC list(s).

149.   The "MAC" price set by Defendant is the price paid for goods dispensed by the pharmacy (i.e., the ingredient cost of drugs). The payment for the pharmacy's services for dispensing the drugs is made by a separate dispensing fee, which is usually no greater than $1.

150.   Plaintiffs do not learn of the MAC prices Defendant will pay until the "claim adjudicates" at the point of sale.  Plaintiffs are not immediately paid by Defendant, but are reimbursed twice monthly, with each Plaintiff pharmacy remitted payment for hundreds of claims at one time by Defendant.

151.   Defendant does not disclose to anyone how it sets its MAC prices creates its MAC lists.

152.   Defendant's MAC prices for generic prescription drugs are not rooted in the Provider Manual criteria and/or actual market prices but are driven by Defendant's desire to maximize its profits by paying Plaintiffs as little as possible.

153.   This critically impacts Plaintiffs because generics typically make up at least 80% of an independent pharmacy's prescription drug business. Defendant's continued use of below cost MAC pricing threatens the very existence of independent pharmacies such as Plaintiffs.

154.   Defendant issues cut-rate MAC payments to Plaintiffs and other independent pharmacies and sets different and higher prices when charging to the plan sponsors on the same drug transaction.

155.   In short, Defendant reimburses pharmacies low, charges plan sponsors high, and pockets the difference as profit ("spread").

156.   Industry studies show that a pharmacy's labor and overhead costs of filling a prescription—not including cost of ingredients—average between $10-14 per prescription. The federal government, and many states, have accepted this as a reasonable cost estimate for supplying this service.

157.   Because Defendant usually limits the dispensing fee it pays to retail pharmacies to $1.00 or less, a pharmacy can only cover the cost of filling a prescription if the ingredient cost payment (i.e., the MAC price), provides a sufficient margin (at least $10) above the pharmacy's cost of acquiring the drug.

158.   Yet, Defendant's reimbursements regularly fail to produce margins that would allow independent pharmacies, including Plaintiffs, to sustain their business.

159.   For instance, in 2021, Optum paid Plaintiff Medicine Shoppe #62 pharmacies over $100 **below** its acquisition costs on prescriptions for the following drugs:

| TELMISA/HCTZ TAB 80-25MG ALEMBIC |
| --- |

| |
|---|
| CLOZAPINE 100MG TAB ACCORD |
| METAXALONE   TAB 800MG |
| ATOMOXETINE  CAP 60MG |
| QUETIAPINE   TAB 400MG |
| MAGIC MOUTHWASH MYLANTA/LIDOCAINE/BENADRYL |
| TESTOSTERONE CYPIONATE 200 MG/ML INJ PERR |
| TELMISA/HCTZ TAB 80-25MG ALEMBIC |
| METAXALONE 800 MG TAB AMNE |
| DEXTROAMPHET CAP 10MG ER ACTAVIS |
| FENTANYL 100MCG/HR DIS MYLA |

160.    Also in 2019, Optum paid Plaintiff Medicine Shoppe #62 pharmacies over

$40 **below** its acquisition costs on prescriptions for the following drugs:

| |
|---|
| PROGESTERONE CAP 200MG |
| ATOMOXETINE  CAP 60MG |
| RIVASTIGMINE TRANSDERMAL SYSTEM 24HR 9.5 MG/24HR D |
| RALOXIFENE   TAB 60MG |
| METHYLPHENIDATE HCL 20MG TAB KVK TECH |
| RALOXIFENE   TAB 60MG |
| TESTOST CYP  INJ 200MG/ML |
| AMPHET/DEXTR CAP 20MG ER |
| TESTOST CYP  INJ 200MG/ML |
| KETOROLAC    SOL 0.5% |
| PROGESTERONE 200 MG CAP AKOR |
| FENTANYL 100MCG/HR DIS MYLA |
| ZAFEMY      DIS 150/35 |
| ALBUTEROL   TAB 4MG |
| AMPHET/DEXTR CAP 20MG ER |
| BUPRENORPHIN SUB 8MG RHODES |
| TESTOST CYP  INJ 200MG/ML |
| LEFLUNOMIDE 20 MG TAB HERI |
| TESTOST CYP  INJ 200MG/ML |
| ALBUTEROL   TAB 4MG |
| GENTAMICIN   OIN 0.1% TELIGENT |
| BUPRENORPHIN SUB 8MG HI-TECH |
| BUPRENORPHIN SUB 8MG RHODES |
| TESTOSTERONE CYPIONATE 200 MG/ML INJ PERR |

| |
|---|
| FENTANYL 50MCG/HR DIS MYLA |
| CLOTRIMAZOLE 10 MG TRO WEST |
| QUETIAPINE   TAB 400MG |
| PROGESTERONE 100 MG CAP AKOR |
| AMOXICILLIN/CLAVULANATE POTASSIUM 875-125 TAB SAND |
| TESTOSTERONE CYPIONATE 200 MG/ML INJ PERR |
| ALBUTEROL   TAB 4MG |
| NYSTATIN   POW 100000 |
| DILTIAZEM HCL ER 24HR 240 MG CAP OCEA |
| PROGESTERONE 200 MG CAP AKOR |
| TESTOSTERONE CYPIONATE 200 MG/ML INJ PERR |
| AMOXICILLIN/CLAVULANATE POTASSIUM 875-125 TAB SAND |
| DULOXETINE   CAP 60MG |

161.    Plaintiffs have all suffered economic losses as a result of Defendant's bad-faith manipulation of reimbursement rates.

162.    A below-cost reimbursement is effectively no reimbursement at all, violates the Provider Manuals and is evidence of Defendant's bad faith.

163.    Plaintiffs all belong to sizeable prescription-drug buying groups that pool the collective bargaining power of participating independent pharmacies; and establish relationships with major generic wholesalers, as well as with smaller, specialty wholesalers; and Plaintiffs constantly shop around for the best prices available to them in the national market and obtain those prices.

164.    If Defendant's MAC price is less than a Plaintiff's acquisition cost, it is not because Plaintiffs did not purchase wisely, but because Defendant improperly manipulates the MAC price without regard to actual market prices and conditions.

39

**F. Defendant has Consistently Failed to Abide by the Terms of its own Provider Manuals when setting MAC prices used to Reimburse Plaintiffs.**

165.    Defendant's Provider Manuals from 2016 through present explain MAC pricing as follows:

> To assure the MAC list accurately reflects market pricing and the availability of Generic Drugs, [Defendant] utilizes multiple sources to determine MAC pricing. The sources include de-identified market pricing benchmark data such as AWP and WAC, wholesaler information on market availability and pharmacy information from inquiries. A synthesis of these and other sources helps create a market based MAC price for Generic Drugs on the MAC list. These sources are also monitored and updated at least every seven (7) calendar days to timely help manage market pricing fluctuations on the MAC lists. [Defendant's] MAC lists are also regularly reviewed and updated accordingly.

166.    *See Exhibit B*, pg. 54; *Exhibit A*, pg. 51 (adding that "MAC lists are regularly reviewed at least every seven (7) calendar days and updated accordingly"). This represents no real change from the prior practice under Catamaran, which also purported to use actual wholesale market data to set MAC prices.

167.    Yet, Defendant does not inform either plan sponsors or pharmacies how particular drug products are added or removed from its MAC list(s).

168.    Defendant does not disclose to Plaintiffs either the formulas it uses to calculate and adjust its MAC prices, or the methodology used to generate its MAC list(s).

169.    Despite Defendant's obligation to set a market-based MAC price, Defendant's MAC prices disregard market conditions, and follow only Defendant's own profit targets.

170.    As a result, Defendant's MAC price is often significantly below industry standard prices.

171.    Furthermore, Defendant's MAC prices are consistently below Plaintiffs' cost to acquire the drug. On these prescriptions, Plaintiffs lose money, even before considering their overhead costs to dispense the drug.

172.    Defendant's promise to pay Plaintiffs a market-based MAC price requires it to pay Plaintiffs at least the reasonable cost of acquiring those drugs.

173.    Defendant's manipulation of its MAC prices is designed solely to increase its profits at the expense of independent pharmacies like Plaintiffs.

174.    In short, MAC prices "create[d]" by Defendant have no basis in the national retail prescription drug market and underpay Plaintiffs by millions of dollars.

175.    Moreover, the plain meaning of the word "maximum" in the Provider Manual means that there can be only one MAC price for a particular drug in a health plan, at the same time. Contrary to this requirement, Defendant routinely pays Plaintiffs at "MAC prices" far lower than those of Favored Pharmacies.

176.    In other words, the Provider Manuals require that Defendant employ a single universal MAC list for each provider participating in that particular health plan.

177.    Another example of Defendant's bad faith is its failure to timely update prices following an increase in the wholesale cost of a generic drug.

178.    Competition among generic drug manufacturers is often limited. When manufacturing of a generic becomes concentrated among two or three suppliers, the price can increase astronomically in a short period of time.  For instance:

41

- When the number of manufacturers of Colchiecene decreased, the pharmacists' acquisition cost went from $25 to $729 a bottle.

- When Doxycycline became concentrated in two or three suppliers, the pharmacists' acquisition cost for a bottle of 500 pills went from $20 to $1,400.

- When the number of Digoxin manufacturers dropped to two, the pharmacists' acquisition cost increased from $9.00 to $90.00 per 100 pills.

179.   Based on modern technology—which Defendant possessed at all times relevant to this claim—Defendant is able to make MAC price adjustments within 30 hours ("the lag time") of a price change.  During the lag time, a PBM will typically: (1) receive electronic files containing AWP pricing information from a source like Medi-Span or First DataBank; (2) unzip the files and resolve any attendant errors with the pricing sources; and (3) load the new prices into its computer system.

180.   When a generic manufacturer announces a price decrease, Defendant reduces the MAC price. As a result, if a pharmacy had purchased 30 capsules of a generic drug at a cost of $10 and had been receiving a MAC payment of $11, a subsequent wholesale price decrease and immediate drop in the MAC price to $5 would turn what had been a $1 gain into a $5 loss because the pharmacy would be still dispensing the $10 drug until it exhausted its supplies on hand.

181.   When wholesale prices increased, however, Defendant willfully delays increasing its MAC prices for several weeks, if not months. For instance, when the wholesale price of Digoxin increased from $9.00 to $90.00 during the period 2012-2015,

42

Defendant continued to pay the Plaintiffs and other pharmacists based on an obsolete acquisition cost of $9.00 for months.

182.   The only way to explain Defendant's inconsistent and one-sided updating of its MAC pricing is that it seeks to use price volatility to line its pockets at the expense of independent pharmacies.

### G. Defendant Consistently Denies MAC Appeals in Bad Faith

183.   Defendant's Provider Manual identifies a process for Plaintiffs who want to challenge Defendant's MAC rate for a particular drug: "MAC pricing appeals". Regarding MAC pricing appeals, Defendant's Provider Manual states:

> To comply with applicable state laws, Administrator has implemented an appeals process to allow a participating network pharmacy to dispute applicable and particular MAC pricing of a Covered Prescription Service Drug Product (i.e. MAC Appeal). This process also includes a timely review and investigation to resolve MAC disputes. For a MAC Appeal, pharmacy must obtain, fully complete and submit the MAC Appeal form ("MAC Form") to Administrator within thirty (30) calendar days from the date of service submitted on the Claim, as well as adhere to state-specific requirements. For pharmacies contracted with a PSAO, MAC appeals may be submitted to the PSAO for processing.
>
> Administrator shall investigate and resolve the appeal within thirty (30) business days after the fully completed form is received. All MAC appeal review determinations on any individual claim from a pharmacy are final and will not be reviewed again. This section shall be considered a part of the Agreement by and between Administrator and Network Pharmacy Provider (including all amendments, addenda or Compensation Exhibits) to the extent the Network Pharmacy Provider provides Covered Prescription Services to Members in applicable states. The terms of this section shall be considered general information regarding MAC. Network Pharmacy Provider agrees and understands to the extent any

43

state-specific law, rule or regulation differs or contradicts the terms set forth herein, Administrator shall follow the state-specific law, rule or regulation. Network Pharmacy Provider is subject to any MAC list(s) associated with the network(s) in which Network Pharmacy Provider participates.

MAC appeal requests will be reviewed to determine the appropriateness of pricing utilized by Administrator for reimbursement. Administrator will utilize all available information to deduce the appropriateness of reimbursement.

Participating pharmacies may be required to submit their actual acquisition cost (including any rebates) for each item being reviewed. Unless specifically required, failure to submit the actual acquisition cost (including rebates) will not result in Administrator rejecting Claims for review, but could diminish the accuracy of review and therefore the likelihood of a successful and complete review.

*Exhibit B,* at pgs. 554-55.

184.   Because Plaintiffs are enrolled with PSAOs, Plaintiffs are required to submit their MAC appeals to Defendant through the PSAOs.

185.   Defendant must act reasonably and in good faith in deciding MAC appeals. Nonetheless Defendant ignores the requisite wholesale data and denies at least 95% of MAC appeals.

186.   Defendant has outrightly rejected the overwhelming majority of Plaintiffs MAC appeals, even when the MAC price was below wholesale benchmarks, in breach of its own Provider Manual.

187.   Furthermore, Defendant has failed to adjust its MAC prices "for the appealing pharmacy and all similarly situated pharmacies within one calendar day of the date of determination" where another independent pharmacy's appeal was upheld.

188.    Defendant's knowing and willful mishandling of the MAC appeal process violates its obligations under the Provider Manual.

189.    The Optum Provider Manual specifically incorporates the state MAC laws by reference, stating that "administration shall follow the state specific law, rule, or regulation" and appending a summary of each state's MAC laws. *Exhibit A at 51-55, Exhibit B at 54, 146-154.*

190.    Defendant also is statutorily required by MAC laws in the States of Illinois, California, , Arkansas, Colorado, Iowa, Kansas, Kentucky, Missouri, Montana, Nebraska, New Hampshire, New Jersey and Ohio

- to have a published and clear process for pharmacies to contest the MAC reimbursements they receive,

- to update its MAC prices within a reasonable time frame, usually 7 days

-  to adjust MAC prices for all similarly situated pharmacies when a pharmacy successfully appeals a MAC price,

- and/or when denying a MAC appeal, to provide specific information identifying a national or regional wholesaler where a pharmacy could purchase a drug at or below the MAC price Defendant has upheld.

191.    The MAC laws of the states of Illinois, California, Arkansas, Colorado, Iowa, Kansas, Kentucky, Ohio, Missouri, Montana, Nebraska, New Hampshire, and New Jersey are identified in counts VII through XIX below.

**Defendant's Discriminatory MAC Pricing**

45

192.    Defendant pays Favored Pharmacies at MAC prices substantially greater than Plaintiffs for identical drugs dispensed to plan members in identical health plans.

193.    Defendant utilizes more than one MAC price for the same prescription drug in the same health insurance plan at any given time.

194.    Defendant hides its discriminatory reimbursement practices from Plaintiffs, other independent pharmacies, and the public.

195.    The primary reason Defendant employs discriminatory practices against independent pharmacies such as Plaintiffs is to injure their businesses and destroy competition, such that the Favored Pharmacies (and Defendant) can monopolize the prescription drug industry.

196.    As a result of Defendant's discriminatory reimbursement practices, hundreds of independent pharmacies have either closed their businesses or sold their pharmacies to the same large retail chain pharmacies receiving the favorable MAC prices from Defendant.

197.    Defendant's discriminatory MAC pricing practices constitute a violation of California law and the laws of other states as set forth below:

> The secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition, is unlawful.

*See Cal. Bus. & Prof. Code* § 17045.

**Retroactive Deductions**

198.   Defendant has retroactively deducted money from payments made to Plaintiffs months after the point of sale (i.e., "claw-backs").

199.   Defendant claws back tens of thousands of dollars per year per store from Plaintiffs by way of retroactive deductions to approved claims.

200.   Defendant's retroactive claw-backs serve no purpose other than to satisfy Defendant's greed for additional revenue

201.   Retroactive claw-backs violate both its Provider Manual and many state statues as set forth in detail below.

202.   Retroactive claw backs are especially pernicious because Defendant imposes them after the fact and the large, arbitrary deductions from expected cash payments, create havoc with the Plaintiffs' cash flow and ability to run their businesses, meet their payrolls and pay their bills.

203.   Defendant retained as profits for itself all, or substantially all, of the funds it improperly "clawed-back" from Plaintiffs.

204.   None of the claw-back amounts misappropriated by Defendant are the property of Defendant.

205.   The methodologies and calculations Defendant uses to determine retroactive deductions adjustment are not actuarially based or statistically sound. Instead, they are arbitrary, capricious, and unrelated to patient care or wellbeing.

206.   Defendant retroactive deductions are arbitrary, capricious and violate the covenant of good faith and fair dealing inherent in the Provider Manuals.

207. Defendant's retroactive deductions are unconscionable, because they penalize pharmacies for metrics beyond their control.

### 1. "Clean Claims"

208. Defendant's retroactive deductions violate both its own Provider Manuals and the laws of many states as set forth below.

209. Defendant's Provider Manual specifically defines a "Clean Claim" and a "Non-Clean" claim.

210. A 'Clean Claim' means a prescription drug claim "prepared in accordance with the standard formats promulgated by the National Council for Prescription Drug Programs, electronic, batch, and on paper which contains all of the information necessary for processing." *Exhibit A at 13, Exhibit B at 15.*

211. A "Non-Clean Claim" exists when "at [Defendant's] sole discretion it determines that such Claim is (i) discrepant, false and/or fraudulent, (ii) by an individual not authorized under applicable law or regulation to write or direct the related Prescription, or (iii) with respect to any Benefit Plan that is a "Federal Benefit care program" as defined in 42 U.S.C. 1320a-7b, relates to a Prescription written or directed by an individual who is excluded from participation in any Federal health care program pursuant to federal/state law.  In addition, and as determined by [Defendant's] sole discretion, a Non-Clean Claim includes a Claim for a Drug Product that was Mailed, shipped or delivered by a Pharmacy that does not participate in [Defendant's] Mail Order Pharmacy Network". *Id.*

212.   Defendant's Provider Manual imposes a thirty (30) day time limitation to determine whether a claim is a "Clean" or "Non-Clean" and to reimburse Plaintiffs. *Id*.

213.   Furthermore, federal law imposes a 14-to-30-day time limitation on Defendant to make its "clean claim" determination. *See* 42. C.F.R. § 423.520.

214.   Defendant is only permitted to retroactively deduct and claw-back amounts from Plaintiffs on "Non-Clean Claims." Specifically, the Provider Manuals state: "Any amounts paid by any Member, [Defendant], or Client for such Non-Clean claim shall be subject to recoupment from Pharmacy by [Defendant]." *Exhibit A at 13, Exhibit B at 15*.

215.   Plaintiffs submitted hundreds of thousands of "Clean Claims" to Defendant, and Defendant paid Plaintiffs' "Clean Claims".

216.   According to Defendant, only "Non-Clean" claims can be subject to retroactive adjustment.

217.   None of the claims which were the subject of Defendant's retroactive deductions are "Non-Clean Claims".

218.   Defendant has breached its Provider Manuals retroactively deducting millions of dollars that Defendant previously accepted and paid as "Clean Claims".

219.   The Provider Manuals further provide that "Determination of payment accuracy will occur by Administrator within fourteen (14) days."

220.   Thus, Defendant's Manuals impose a 14-day limitation on any retroactive adjustment of Plaintiffs reimbursement due to an inaccuracy in the initial payment issued by Defendant.

49

221.    Defendant has breached the terms of the Provider Manuals by retroactively adjusting its reimbursements to Plaintiffs on claims submitted months, even years after Defendant initially approved and paid the claim.

## CLAIMS

### COUNT I
### Breach of Contract – Provider Manual

222.    Plaintiffs hereby incorporate the above paragraphs as if fully set forth at length.

223.    Pursuant to its Provider Manuals, Defendant is: (1) required to base its MAC prices on national wholesale pricing sources; (2) required to adhere to federal and state law setting prescription drug prices, adjudicating prescription drug claims and deciding MAC appeals; (3) required to reimburse Plaintiffs in a timely fashion and according to a determinable formula; (4) prohibited from utilizing multiple MAC lists (and therefore paying different  MAC prices to different providers) within a particular health insurance plan at any given time; (5) prohibited from classifying drugs as "brand name"  when charging health insurance plans while classifying the same drug as "generic" when paying pharmacy providers such as Plaintiffs; (6) prohibited from adjusting and reducing Plaintiffs reimbursement retroactively, sometimes months or years after the claim was originally approved; and (7) prohibited from adjusting and reducing Plaintiffs' reimbursement on "Clean Claims".

224.    Since January 1, 2013, Plaintiffs have dispensed, and continue to dispense, prescription drugs to members of health insurance plans managed by Defendant pursuant to the terms set forth in the Provider Manuals.

225.    Plaintiffs have performed all acts, conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the Provider Manuals.

226.    In contrast, Defendant has regularly breached its obligations and duties under the contract since 2012 and continues to do so to this day.

**A. Breach of Provider Manual – MAC Pricing**

227.    Since January 1, 2013, Plaintiffs have received payments for dispensing prescription drugs from Defendant.

228.    Many MAC prices paid by Defendant to Plaintiffs for generic drugs are well below the market-based prices Defendant is required to utilize. Optum's Provider Manuals require that each and every one of Defendant's MAC prices be based on independent pricing sources.

229.    Despite Defendant's obligations to set its MAC prices in accordance with "pricing information from a nationally recognized pricing service, one or more national drug wholesalers and/or manufacturers, and the publicly available results of CMS's survey of retail prices", Defendant's MAC prices are not based on these market benchmarks.

51

230.   Despite Defendant's obligations to set its MAC pricing in accordance with "client or plan parameters, Medi-Span or other national source, and internal processes", Defendant's MAC prices are not based on these market indicators.

231.   Good faith and the Provider Manuals require that Defendant, (1) consistently and timely review its MAC prices, updating them at least every seven days and no more than seven days after relevant increases in drug prices; (2) refrain from reimbursing Plaintiffs below their reasonable acquisition costs; and (3) use actual wholesale prices available to retail pharmacies.

232.   Defendant routinely and consistently breached the Provider Manual and its duty of good faith in failing to set MAC prices in this manner.

**B.  Breach of Provider Manuals -- Single MAC Pricing**

233.   In addition, the Provider Manuals specify that Defendant set a single MAC price for the same drug filled at the same time in the same health plan, as the term "Maximum Allowable Cost" (singular) implies.

234.   Indeed, by its very definition, there can be only one "maximum" cost or price. "Maximum" is universally defined to mean "greatest," "highest," or "most," meaning there can be only one MAC price for each drug in each plan at any one time.

235.   Notwithstanding the unambiguous meaning of the word "maximum", Defendant manipulates its MAC prices as it sees fit to maximize its profits. Defendant accomplishes this by having multiple MAC lists with different MAC prices for the same drugs in the same health insurance plan at the same time, regardless of whether the MAC prices have any basis in the national wholesale marketplace.

52

236.   Defendant pays its network pharmacies different MAC prices for the same prescription drug, in the same quantity, in the same health plan, depending on whether the pharmacy is a Favored Pharmacies (including large retail chains, small chains, Defendant's own captive mail order pharmacy) or an independent pharmacy, thus breaching the Provider Manuals.

237.   Defendants routinely and consistently breached the Provider Manual and its duty of good faith and fair dealing by failing to reimburse Plaintiffs based on a single and uniform MAC price.

C. **Breach of Provider Manuals – Reimbursement Below Acquisition Cost**

238.   Furthermore, the Provider Manuals require that Defendant "reimburse" Plaintiffs.

239.   Defendant's agreement to use "Maximum Allowable Cost" lists to "reimburse" Plaintiffs logically requires that, at a minimum, it repay or "reimburse" providers (i.e., pharmacies) for their costs. However, when Defendant pays Plaintiffs less than their costs for generic drugs it is not "reimbursing" Plaintiffs.

240.   Defendant has routinely paid Plaintiffs less than their acquisition costs for prescription drugs in thousands of transactions during the time period in question.

241.   Defendant's reimbursement rates are unconscionable to the extent they force Plaintiffs to accept payment for prescription drugs that are well below Plaintiffs' reasonable acquisition costs.

53

242.    Defendants routinely and consistently breached the Provider Manual and its duty of good faith and fair dealing by failing to reimburse Plaintiffs for their reasonable acquisition costs.

**C. Breach of Provider Manuals –-- Willful Misclassification of Brand Name Drugs as Generic to generate Unconscionable Spreads**

243.    Defendant typically pays Plaintiffs according to a schedule which varies depending upon whether a drug is "generic" or "brand." Generic drug prices are set as MAC or a percentage discount off AWP; and MAC is almost always the lower of the two. Brand drug prices are set as a much smaller percentage discount off AWP. Consequently, payments for brand drugs are generally much higher than for generic drugs.

244.    Defendant's Provider Manuals state:

> AWP and brand or generic medication classification is determined by [Defendant] in all cases and updated at least weekly. [Defendant] shall use Client or plan parameters, Medi-Span or other national resource, and internal processes as a reference, but not as the sole determinant.

*See Exhibit A*, at pg. 13; *Exhibit B*, at pg. 12.

245.    The same principle applies to the "plan parameters" which Defendant has with its plan sponsors. Typically, the payment Defendant receives from plan sponsors for brand drugs is much higher than for generic drugs.   For instance, brand payments are typically around AWP-15%, while generic payments are typically around AWP-80%.

246.    Often, Defendant pays Plaintiffs at a MAC or generic drug price but bills the plan sponsor on a brand name drug price. This results in enormous spreads for

Defendant, as the plan sponsor is pays Defendant multiples of the amount Defendant pays Plaintiffs, for the same drug.

247.   Defendant creates these spreads by manipulating the different MAC lists that it uses for the Plan and the pharmacies.  Defendant adds or removes drugs from the MAC list for each plan or adjusts/manipulates MAC pricing at any time and for any reason; and maintains MAC lists for the Plan which do not include all the drugs on the MAC lists used for the pharmacy. Thus, the same drug can be billed as brand to the Plan and generic to the pharmacy, resulting in the spread.

248.   Although Defendant has some discretion in whether to classify a given drug as "brand" or "generic" it does not have discretion to pay a pharmacy at the generic rate when it bills the plan at the brand rate for the same prescription. If Defendant bills the Plan for the drug as "brand", it means that the "plan parameter" is brand, and Defendant is contractually required to pay the pharmacies at their brand rates as well.

249.   Indeed, were the pharmacy to do the converse — fill a prescription with a generic drug and bill Defendant for a brand drug — the pharmacy would be subject to termination from Defendant's network for violating the Fraud Waste and Abuse provisions of the law and the contracts.

250.   By reimbursing its pharmacy providers on a "MAC" basis when it is paid by the plan sponsor on a "brand" basis, Defendant continuously and repeatedly breached its contract and its duty of good faith and fair dealing.

**D.  Breach of Provider Manuals – Retroactive deductions**

55

251.    Defendant has retroactively deducted (i.e., "clawed back") large amounts of money from Plaintiffs' point of sale revenue without providing any meaningful accounting or explanation.

252.    Defendant's retroactive deductions serve no legitimate purpose other than to satisfy Defendant's desire to extract additional revenues out of these transactions; None of the claw-back amounts appropriated by Defendant are the property of Defendant.

253.    Defendant's retroactive deductions to Plaintiffs' reimbursements, after Defendant itself approved and paid Plaintiffs, is a clear violation of both its own Provider Manuals, numerous state laws and is unconscionable.

254.    Defendant has repeatedly and continuously breached its Provider Manual by recouping sums of money from Plaintiffs on purported "Clean Claims" and by demanding said sums of money from Plaintiff without fully complying with its contractual obligations and without providing the required notice or its basis.

255.    Defendant's Provider Manual has a provision which defines a "Clean Claim" and a "Non-Clean Claim". *See Exhibit A*, at pgs. 13; *Exhibit B*, at pg. 15.

256.    According to Defendant's Provider Manual, Plaintiffs must submit a Clean Claim to Defendant.

257.    Plaintiffs have submitted hundreds of thousands of "Clean Claims" to Optum and received payments on those claims.

258.    Pursuant to Defendant's Provider Manual, only "Non-Clean Claims" shall be subject to adjustment or recoupment from the Plaintiffs. *See Exhibit A*, at pgs. 13; *Exhibit B*, at pg. 15.

56

259.    None of the claims where Defendant recouped sums of money from Plaintiffs after claim adjudication fit Defendant's definition of "Non-Clean Claims."

260.    Defendant has breached the Provider Manual by appropriating millions of dollars from the Plaintiffs by seizing payments for the prescription drugs claims submitted to Defendant after Defendant initially accepted those claims as "Clean Claims" and paid Plaintiffs.

261.    Defendant has further breached its Provider Manuals by reducing Plaintiffs reimbursement after the requisite fourteen (14) day period it had to determine accuracy of payments.

262.    Defendant's Provider Manual states that "Determination of payment accuracy will occur by Administrator within fourteen (14) days." *Exhibit A* at 40; *Exhibit B* at 45..

263.    Thus, Defendant's Manuals impose a 14-day limitation on any retroactive adjustment of Plaintiffs reimbursement due to an inaccuracy in the initial payment issued by Defendant.

264.    Defendant's Performance Fee Scheme serves no purpose other than to upend and frustrate the payment of "Clean Claims", and the adjudication of claims for which there is not dispute regarding payment accuracy, in contravention of Defendant's own Provider Manuals and federal/state law.

WHEREFORE, Plaintiffs seek to recover all available damages and other relief from Defendant based on its breaches of the Provider Manuals.

**COUNT II**

57

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
## MAC APPEALS

265.    Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth at length herein.

266.    In the event that Plaintiffs want to challenge Defendant's MAC rate for a particular drug and quantity, there is an appeal procedure set forth in the Provider Manuals quoted above ("MAC appeal" or "MAC pricing appeal").

267.    Plaintiffs enrolled by PSAOs are required to submit MAC pricing appeals through their PSAO.

268.    Defendant is contractually obligated to investigate MAC appeals and respond to Plaintiffs within thirty (30) days upon receipt of the appeal, or shorter period as required by state law.

269.    Throughout the relevant time period, Defendant has handled the MAC appeals in bad faith.

270.    Defendant almost always rejects Plaintiffs' appeals on grounds that the MAC price is obtainable in the marketplace, which is rarely, if ever, true. This cavalier attitude toward MAC appeals further demonstrates bad faith.

271.    Defendant actually lowered its MAC price in response to numerous MAC appeals.

272.    When an appeal is taken, Defendant has required the pharmacy supply its acquisition cost for the drug(s) which are the subject of the appeal. Defendant also usually

58

required the pharmacy to provide a copy of its invoice to document its claimed acquisition cost.

273.   Despite these requirements, Defendant never considered the pharmacies' acquisition costs in setting its MAC prices or deciding any MAC appeal.

274.   By requiring appealing pharmacies to submit acquisition cost information, accompanied by documentation thereof, Defendant caused the pharmacies to reasonably believe this information would be considered in deciding MAC appeals.

275.   Defendant's refusal to consider this information is inconsistent with the reasonable expectations of the Plaintiffs, an abuse of discretion and a breach of its duties of good faith and fair dealing.

276.   Instead of relying on actual retail pharmacy acquisition costs, Defendant claims to use a wholesale price as its benchmark for setting MAC prices and deciding whether to grant or deny MAC appeals. Retail pharmacies, however, cannot obtain the drug at the "benchmark" prices Defendant uses to deny MAC appeals.

277.   Defendant also claimed to use other national references as a "check" against this benchmark.  Defendant purported to compare the benchmark to the national reference and claims to have disregarded the benchmark if it was more than a certain percentage below the national reference.

278.   In fact, however, Defendant routinely applied the benchmark even when it was substantially below the reference, in direct violation of the policy it claimed to employ.

279.   Defendant also claimed to use wholesale pricing information from major national wholesalers. However, Defendant maintains no record of receiving and retaining

this information, and the major national wholesalers have no record of ever supplying it to Defendant.

280.    Defendant's bad faith denials of MAC appeals hurts not only the appealing party, but all pharmacies who are paid the appealed MAC price. This is because when Defendant increases the MAC price in response to an appeal, it is required to increase that price not only to the appealing pharmacy, but all similarly situated pharmacies. Thus, Defendant's wrongful denial of MAC appeals filed by non-Plaintiff pharmacies resulted in continued underpayments to Plaintiffs as well.

281.    However, when a MAC appeal is successful in prompting a price adjustment, Defendant prospectively increases its MAC pricing for all similarly situated pharmacies.

282.    As a result of Defendant's bad faith adjudication of MAC appeals, many Plaintiffs gave up on filing MAC appeals because they found the process to be futile. Their MAC appeals were denied bad faith, despite documented below cost payments.

283.    Defendant's repeated bad faith denials of Plaintiffs' MAC appeals materially breached the Provider Manuals.

284.    On the rare occasion where Defendant granted a MAC pricing appeal, the price change is uniformly incremental and delayed, and Defendant does not pay the increased price retroactively.  Notably, it does not pay the increased price on the very transaction or transactions prompting the MAC pricing appeal in the first place.

285.    During the relevant time period, Plaintiffs all submitted MAC pricing appeals to Defendant.

286.   During the relevant time period, Plaintiffs all had one or more MAC pricing appeals that were not timely resolved by Defendant.

287.   During the relevant time period, Plaintiffs all had one or more MAC pricing appeals denied in bad faith and with abuse of discretion by Defendant.

288.   During the relevant time period, Plaintiffs all were successful with one or more MAC pricing appeals, but Plaintiffs did not receive retroactive compensation from Defendant, nor did they receive compensation related to the specific pricing claims that were challenged in their appeals.

289.   Rather, when the Plaintiffs were successful with a MAC pricing appeal, they would at best receive prospective relief from Defendant at an unknown time for future claims concerning the particular generic drug(s) at issue.

290.   The economic damage done by Defendant's failure to retroactively reimburse Plaintiffs following a successful MAC pricing appeal is exacerbated because it sometimes takes weeks to decide the appeal, during which time the drug price is likely to have experienced substantial fluctuation detrimental to Plaintiffs.

291.   Because a successful MAC pricing appeal is an acknowledgement by Defendant as an error in the payment rate for claims concerning a particular generic, the duty of good faith and fair dealing requires that Defendant correct that error retroactively in all states. Defendant failed to do so, thus breaching its duty of good faith and fair dealing.

292.   Plaintiffs have suffered economic losses as a result of Defendant's breaches of the MAC pricing appeal terms in the Provider Manuals.

WHEREFORE, Plaintiffs seek to recover all available damages and other relief from Defendant based on its breaches of the duty of good faith and fair dealing based on its improper handling of MAC appeals.

## COUNT III
## CONVERSION

293.   Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth at length herein.

294.   On numerous occasions during the relevant time period, Plaintiffs were in possession of definite sums of money, capable of identification, paid to them by Defendant to satisfy transactions where Plaintiffs dispensed prescription drug products to plan members.

295.   While Plaintiffs were in possession of these sums, Defendant interfered with Plaintiffs possession of said funds by knowingly and willfully usurping possession in the form of retroactive deductions.

296.   Each time that Defendant unilaterally took possession of the previously paid funds, Defendant applied and converted those funds to its own use, and without explanation.

297.   Plaintiffs never consented to these claw-backs of reimbursements and sustained harm because of Defendant's unauthorized withdrawals.

298.   Defendant's intentional interference with Plaintiffs' rightful possession of their reimbursements was a substantial factor in causing Plaintiffs' harm.

299.   As a direct and proximate result of Defendant's unlawful conversion of Plaintiffs' reimbursements for "Clean Claims", Plaintiffs suffered financial harm.

300.   Defendant's unlawful conversion of Plaintiffs' reimbursements were made and performed fraudulently and intentionally so as to cause Plaintiffs' injury and constitute a willful and conscious disregard of Plaintiffs' rights, thereby subjecting Plaintiffs to unjust hardship.

301.   Said unlawful conversion was done with the intent to deprive Plaintiffs for their rightful possession and use of Plaintiffs' funds and to cause them injury, all of which entitles Plaintiffs to recover punitive or exemplary damages from Defendant.

WHEREFORE, Plaintiffs seek to recover all available damages and other relief from Defendant based on unauthorized retention of Plaintiffs' property.

## COUNT IV
## VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 *et seq*.
## UNFAIR COMPETITION

302.    Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth at length herein.

303.   At all times relevant herein, Defendant repeatedly reimbursed Plaintiffs at a MAC rate well below Plaintiffs' acquisition costs for thousands of prescription drug claims.

304.   Plaintiffs initiated timely MAC appeals wherein they asserted that (a) the maximum allowable cost of the prescription drug in question was below the cost at which the drug was available for purchase by similarly situated pharmacies in the State of

California, or from national or regional wholesalers; or (b) the subject drugs did not meet the requirements of California Business & Professions Code §4440(d).

305.    On many occasions during the relevant time period, Defendant violated its statutory obligations to Plaintiffs with respect to its MAC pricing and appeal process.

306.    Specifically, Defendant engaged in unlawful business acts and practices in violation of the express provisions of Cal. Bus. & Prof. Code § 4440 by:

a.  Failing to maintain a single MAC price for a drug dispensed at the same quantity and at the same time period within the same health plan, irrespective of whether the dispensing pharmacy was an independent pharmacy, a small chain or a large chain.

b.  Failing to ensure that the MAC prices paid were related to "information provided by Medi-Span or any other nationally recognized pricing source," "one or more national drug wholesalers and/or manufacturers, and the publicly available results of [the Centers for Medicare and Medicaid Services'] survey of retail prices";

c.  Failing to update their sources to determine the MAC list "at least every seven (7) calendar days to help manage market pricing fluctuations on the MAC list";

d.  Failing to regularly review the MAC lists at least every seven (7) calendar days and update those MAC lists accordingly;

e.  Failing to reimburse Plaintiffs at a rate above their drug acquisition costs or at the cost at which Plaintiffs could reasonably acquire their drugs;

f.  Failing to resolve Plaintiffs' MAC pricing appeals in good faith or in accordance with the terms set forth in Defendant OptumRx's applicable Provider Manual;

g.  Failing to timely process and respond to Plaintiffs' MAC appeals in compliance with the terms set forth in Defendant OptumRx's applicable Provider Manual and as required by California law; and

h.  Failing to adjust the MAC of an appealed drug where an independent pharmacy's appeal was successful for all similarly situated independent pharmacies within one calendar day of the date of determination.

307.  Defendant engaged in the forgoing unlawful, unfair, and fraudulent business practices in order to unjustly enrich itself at the Plaintiffs expense.

308.  The above-mentioned unlawful conduct by Defendant caused substantially harm, loss, and damages to each of the Plaintiffs.

309.  It would be inequitable and result in a miscarriage of justice should Defendant be permitted to retain the property of Plaintiffs.

310.  As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent business acts or practices, Plaintiffs are entitled to restitution, disgorgement and other appropriate injunctive  relief available  under California Business and Professions Code §§ 17200, *et seq*., including but not limited to the disgorgement of all transaction fees charged by Defendant as relating to prescriptions that were the subject of MAC appeals processed by the Defendant in violation of B&P Code §4440, as well as

disgorgement of all amounts improperly "clawed back" by the Defendant since it became the PBM  handling Plaintiffs' claims.

**COUNT V**
**VIOLATION OF CAL. BUS. & PROF. CODE § 17045**
**UNFAIR TRADE PRACTICES**

311.    Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth at length herein.

312.    California Business & Professions Code § 17045, which covers Unfair Trade Practices, provides in relevant part:

> "The secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition, is unlawful."

313.    Defendant has routinely engaged in discriminatory reimbursement practices with the intent to injure Plaintiffs and their respective businesses, and destroy competition amongst pharmacies, to benefit the Favored Pharmacies.

314.    Defendant and has routinely paid or allowed rebates, refunds, commissions or unearned discounts to the Favored Pharmacies.

315.    Defendant has secretly extended to the Favored Pharmacies special services and privileges that Defendant does not extend to providers of pharmacy benefits such as Plaintiffs, who are supplying identical prescription drugs upon like terms and conditions.

66

316.    Defendant operates its own captive mail-order pharmacy that competes with retail pharmacies, including Plaintiffs. The amounts which Defendant pays Plaintiffs —for particular quantities of particular drugs on particular days — are in general significantly lower than the rates Defendant pays to its mail-order pharmacy for the same drugs. Plaintiffs cannot compete with Defendant's mail order pharmacy on price because Plaintiffs are not permitted to set their own price or disclose the price, they are paid to the plan sponsors.

317.    Not only does Defendant harm Plaintiffs by underpaying them for drugs. It also steers Plaintiffs' customers to its mail-order affiliate, with the long-term goal of driving independent pharmacies out of business.

318.    Defendant's discriminatory pricing practices have been injurious to Plaintiffs and/or destroy competition by causing independent pharmacies like Plaintiffs, to close up shop or sell their business to retail chain pharmacies, thus further consolidating market power over the pharmacy industry in the hands of giant corporations.

319.    The foregoing conduct by Defendant has, and continues to, cause substantial harm and injury to Plaintiffs.

320.    It would be inequitable and result in a miscarriage of justice for Defendant to continue to retain the property of Plaintiffs, and Plaintiffs are therefore entitled to restitution of the unfair benefits obtained by the Defendant and to the disgorgement of Defendant's ill-gotten gains.

321.    As a direct and proximate result of Defendant's unlawful and unfair business practices, Plaintiff are entitled to restitution and disgorgement and appropriate injunctive

and other equitable relief available under California Business and Professions Code §§ 17200, *et seq.*

## COUNT VI
## VIOLATION OF ILLINOIS LAW
### (Illinois Pharmacies v. Defendant)

322.    All plaintiffs who have their principal place of business in Illinois are "Illinois Pharmacies."  The Illinois Pharmacies incorporate the preceding allegations by reference as if fully set forth herein.

323.    The 2015 Catamaran Provider Manual states: "Catamaran will comply with applicable laws for resolving disputes over maximum allowable cost pricing." *See Exhibit C*, pg. 15.

324.    After the Catamaran-Optum merger, the Optum Provider Manuals from 2016 to present state: "to the extent any state-specific law, rule or regulation differs or contradicts the terms set forth herein, [Defendant] shall follow the state-specific law, rule or regulation. . . . [Defendant] follows the state requirement where your pharmacy is located." *See Exhibit D*, pg. 51; *Exhibit E*, pg. 52-53.

325.    Illinois' MAC law appears at 215 ILCS 5/513b1 requires a PBM such as Defendant to require a PBM to disclose the sources of its MAC pricing and make available applicable MAC lists to pharmacies.

326.    Defendant violated 215 ILCS 5/513b1 by, among other things, denying MAC appeals when it could not legitimately provide the reason for the denial and the national drug code number from national or regional wholesalers who will sell the drug for an amount at or below Defendant's MAC price.

327.    215 ILCS 5/513b1 also precludes a PBM from requiring an insured to make a payment for a prescription drug at the point of sale in an amount that exceeds the lesser of:

> (1) the applicable cost-sharing amount; or
>
> (2) the retail price of the drug in the absence of prescription drug coverage.

This is designed to prevent the PBM from clawing back money out of the customer's co-payment or deductible payment.

328.    Illinois' Any Willing Provider Law, 215 ILCS 134/72 generally requires that health insurance carriers to allow providers to be accepted into networks if the provider is willing at accept the conditions of network membership set by the carrier.

329.    In Illinois, the health insurance plan must pay each participating pharmacy the same amount, since all providers are participating in the network under the same terms and conditions.

330.    Defendant has violated 215 ILCS 134/72 by routinely refusing to pay each participating pharmacy the same amount it pays to large chains and its own mail order pharmacy.

331.    Defendant has consistently and continuously violated these laws, causing Illinois pharmacies substantial damages.

WHEREFORE, judgment should be entered in favor of the Illinois Pharmacies and against Defendant on Count VI of the Complaint entitling the Illinois Pharmacies to damages, attorney's fees and costs.

**COUNT VII**

**VIOLATION OF ARKANSAS LAW**
**(ARKANSAS Pharmacies v. Defendant)**

332.   All plaintiffs who have their principal place of business in are "Arkansas Pharmacies." The Arkansas Pharmacies incorporate the preceding allegations by reference as if fully set forth herein.

333.   The 2015 Catamaran Provider Manual states: "Catamaran will comply with applicable laws for resolving disputes over maximum allowable cost pricing." *See Exhibit C*, pg. 15.

334.   After the Catamaran-Optum merger, the Optum Provider Manuals from 2016 to present state: "to the extent any state-specific law, rule or regulation differs or contradicts the terms set forth herein, [Defendant] shall follow the state-specific law, rule or regulation. . . . [Defendant] follows the state requirement where your pharmacy is located." *See Exhibit D*, pg. 51; *Exhibit E*, pg. 52-53.

335.   Arkansas' MAC law appears at A.C.A. § 17-92-507

336.   Arkansas also prohibits mandatory mail order use of an affiliated pharmacy (A.C.A. § 17-92-119) and Prohibits mail order steering A.C.A. § 17-92-120 and A.C.A. § 17-92-413 and § 23-92-603.

337.   Arkansas also prohibits spread pricing. A.C.A. § 23-92-505(c)

338.   Arkansas also bans

- transaction or processing fees
- Reimbursement for less than what's paid to an affiliated pharmacy
- Paying an ingredient cost less than NADAC, or, if NADAC is unavailable, the actual wholesale acquisition cost (applies to brands)
- retroactive deductions

A.C.A. § 23-92-506

339.    Defendant has consistently and continuously violated these laws, causing Arkansas Pharmacies substantial damages.

WHEREFORE, judgment should be entered in favor of the Arkansas Pharmacies and against Defendant on Count VII of the Complaint entitling the Arkansas Pharmacies to damages, attorney's fees and costs.

**COUNT VIII**
**VIOLATION OF COLORADO LAW**
**(Colorado Pharmacies v. Defendant)**

340.    All plaintiffs who have their principal place of business in Colorado are "Colorado Pharmacies."  The Colorado Pharmacies incorporate the preceding allegations by reference as if fully set forth herein.

341.    The 2015 Catamaran Provider Manual states: "Catamaran will comply with applicable laws for resolving disputes over maximum allowable cost pricing." *See Exhibit C*, pg. 15.

342.    After the Catamaran-Optum merger, the Optum Provider Manuals from 2016 to present state: "to the extent any state-specific law, rule or regulation differs or contradicts the terms set forth herein, [Defendant] shall follow the state-specific law, rule or regulation. . . . [Defendant] follows the state requirement where your pharmacy is located." *See Exhibit D*, pg. 51; *Exhibit E*, pg. 52-53.

343.    CO ST § 25-37-103.5 is Colorado's MAC law.

344.    CO ST § 10-16-122.3 forbids a PBM from paying an independent pharmacy less than affiliated pharmacy and also bans retroactive deductions on clean claims.

71

345.    Defendant has consistently and continuously violated these laws, causing Colorado Pharmacies substantial damages.

WHEREFORE, judgment should be entered in favor of the Colorado Pharmacies and against Defendant on Count VIII of the Complaint entitling the Colorado Pharmacies to damages, attorney's fees and costs.

**COUNT IX**
**VIOLATION OF IOWA LAW**
**(Iowa Pharmacies v. Defendant)**

346.    All plaintiffs who have their principal place of business in Maryland are "Iowa Pharmacies." The Iowa Pharmacies incorporate the preceding allegations by reference as if fully set forth herein.

347.    The 2015 Catamaran Provider Manual states: "Catamaran will comply with applicable laws for resolving disputes over maximum allowable cost pricing." *See Exhibit C*, pg. 15.

348.    After the Catamaran-Optum merger, the Optum Provider Manuals from 2016 to present state: "to the extent any state-specific law, rule or regulation differs or contradicts the terms set forth herein, [Defendant] shall follow the state-specific law, rule or regulation. . . . [Defendant] follows the state requirement where your pharmacy is located." *See Exhibit D*, pg. 51; *Exhibit E*, pg. 52-53.

349.    Iowa's MAC law appears at I.C.A. § 510B.8.

350.    Iowa also bans retroactive deductions and any other post-adjudication fees I.C.A. § 510.B.7 as well as claw backs from customer co-pays or deductibles I.C.A. §§ 510B8, 510.B10.

72

351.    Iowa makes it illegal for PBMs to pay more to affiliates than it pays independent pharmacies, to require patients to use mail order pharmacies, and to induce patients to use mail order.  I.C.A. § § 510.B.8, 514C.5

352.    Defendant has consistently and continuously violated these laws, causing Iowa Pharmacies substantial damages.

WHEREFORE, judgment should be entered in favor of the Iowa Pharmacies and against Defendant on Count IX of the Complaint entitling the Iowa Pharmacies to damages, attorney's fees and costs.

## COUNT X
## VIOLATION OF OHIO LAW
### (Ohio Pharmacies v. Defendant)

353.    All plaintiffs who have their principal place of business in Ohio are "Missouri Pharmacies." The Ohio Pharmacies incorporate the preceding allegations by reference as if fully set forth herein.

354.    The 2015 Catamaran Provider Manual states: "Catamaran will comply with applicable laws for resolving disputes over maximum allowable cost pricing." *See Exhibit C*, pg. 15.

355.    After the Catamaran-Optum merger, the Optum Provider Manuals from 2016 to present state: "to the extent any state-specific law, rule or regulation differs or contradicts the terms set forth herein, [Defendant] shall follow the state-specific law, rule or regulation. . . . [Defendant] follows the state requirement where your pharmacy is located." *See Exhibit D*, pg. 51; *Exhibit E*, pg. 52-53.

356.    Ohio Rev. Stat. § 3959.111 requires a PBM such as Defendant to require a

73

PBM to disclose the sources of its MAC pricing, to retroactively reimburse a pharmacy where it successfully appeals a MAC price, to identify a wholesaler where a pharmacy can acquire a generic drug at or below the MAC where the PBM denies the pharmacy's appeal, to make available applicable MAC lists to pharmacies, and to update its MAC prices every 7 days.

357.   Defendant violated Ohio Rev. Stat. § 3959.111 by, among other things: failing to disclose the sources of its MAC prices, failing to retroactively reimburse pharmacies such as Ohio Plaintiffs where they successfully appeal a MAC price, failing and/or refusing to identify a wholesaler where a pharmacy can acquire a generic drug at or below Defendant's MAC price when denying a MAC appeal, failing and/or refusing to make its MAC lists available, and failing to update its MAC pricing every 7 days.

358.   Ohio also bans retroactive deductions and claw backs from any customer cost sharing, including deductibles. Ohio Rev. Stat. § 3959.20

359.   Defendant has consistently and continuously violated these laws, causing Ohio Pharmacies substantial damages.

WHEREFORE, judgment should be entered in favor of the Ohio Pharmacies and against Defendant on Count X of the Complaint entitling the Ohio Pharmacies to damages, attorney's fees and costs.

**COUNT XI**
**VIOLATION OF NEBRASKA LAW**
**(Nebraska Pharmacies v. Defendant)**

360.   All plaintiffs who have their principal place of business in Nebraska are "Nebraska Pharmacies." The Nebraska Pharmacies incorporate the preceding

74

allegations by reference as if fully set forth herein.

361.   The 2015 Catamaran Provider Manual states: "Catamaran will comply with applicable laws for resolving disputes over maximum allowable cost pricing." *See Exhibit C*, pg. 15.

362.   After the Catamaran-Optum merger, the Optum Provider Manuals from 2016 to present state: "to the extent any state-specific law, rule or regulation differs or contradicts the terms set forth herein, [Defendant] shall follow the state-specific law, rule or regulation. . . . [Defendant] follows the state requirement where your pharmacy is located." *See Exhibit D*, pg. 51; *Exhibit E*, pg. 52-53.

363.   Nebraska's MAC law appears at 2022 Nebraska Laws L.B. 767.

364.   Nebraska also bans mandatory mail order or financial incentives for mail order except for 180-day prescriptions NE ST § 44-513.02.

365.   Nebraska also bans claw backs from customer payments. NE ST § 71-2484.

366.   Defendant has consistently and continuously violated these laws, causing Nebraska Pharmacies substantial damages.

WHEREFORE, judgment should be entered in favor of the Nebraska Pharmacies and against Defendant on Count XI of the Complaint entitling the Nebraska Pharmacies to damages, attorney's fees and costs.

**COUNT XII**
**VIOLATION OF NEW HAMPSHIRE LAW**
**(New Hampshire Pharmacies v. Defendant)**

367.   All plaintiffs who have their principal place of business in New Hampshire

75

are "New Hampshire Pharmacies." The New Hampshire Pharmacies incorporate the preceding allegations by reference as if fully set forth herein.

368.    The 2015 Catamaran Provider Manual states: "Catamaran will comply with applicable laws for resolving disputes over maximum allowable cost pricing." *See Exhibit C*, pg. 15.

369.    After the Catamaran-Optum merger, the Optum Provider Manuals from 2016 to present state: "to the extent any state-specific law, rule or regulation differs or contradicts the terms set forth herein, [Defendant] shall follow the state-specific law, rule or regulation. . . . [Defendant] follows the state requirement where your pharmacy is located." *See Exhibit D*, pg. 51; *Exhibit E*, pg. 52-53.

370.    N.H. Rev. Stat. § 402-N:3 requires a PBM such as Defendant to require a PBM to disclose the sources of its MAC pricing, to identify a wholesaler where a pharmacy can acquire a generic drug at or below the MAC where the PBM denies the pharmacy's appeal, and to update its MAC pricing every 14 days.

371.    Defendant violated N.H. Rev. Stat. § 402-N:3 by, among other things: failing to disclose the sources of its MAC pricing to participating pharmacies such as Plaintiffs, failing and/or refusing to identify a wholesaler where a pharmacy can acquire a drug at or below the MAC where the PBM denies the pharmacy's MAC appeal, and failing to update its MAC pricing every 14 days.

372.    N.H. Rev. Stat. § 402-N:4 and § 318:47-h bans claw backs from customer payments

373.    New Hampshire's Any Willing Provider Law, N.H. Rev. Stat. § 420-B:12,

generally requires that health insurance carriers to allow providers to be accepted into networks if the provider is willing at accept the conditions of network membership set by the carrier.

374.    In New Hampshire, the health insurance plan must pay each participating pharmacy the same amount, since all providers are participating in the network under the same terms and conditions.

375.    Defendant has violated N.H. Rev. Stat. § 420-B:12 by routinely refusing to pay each participating pharmacy the same amount it pays to large chains and its own mail order pharmacy.

376.    Defendant has consistently and continuously violated these laws, causing New Hampshire Pharmacies substantial damages.

WHEREFORE, judgment should be entered in favor of the New Hampshire Pharmacies and against Defendant on Count XII of the Complaint entitling the New Hampshire Pharmacies to damages, attorney's fees and costs.

**COUNT XIII**
**VIOLATION OF MISSOURI LAW**
**(Missouri Pharmacies v. Defendant)**

377.    All plaintiffs who have their principal place of business in Missouri are "Missouri Pharmacies." The Missouri Pharmacies incorporate the preceding allegations by reference as if fully set forth herein.

378.    The 2015 Catamaran Provider Manual states: "Catamaran will comply with applicable laws for resolving disputes over maximum allowable cost pricing." *See Exhibit C*, pg. 15.

77

379.   After the Catamaran-Optum merger, the Optum Provider Manuals from 2016 to present state: "to the extent any state-specific law, rule or regulation differs or contradicts the terms set forth herein, [Defendant] shall follow the state-specific law, rule or regulation. . . . [Defendant] follows the state requirement where your pharmacy is located." *See Exhibit D*, pg. 51; *Exhibit E*, pg. 52-53.

380.   MO ST § 376.388 is Missouri's MAC law

381.   Defendant has consistently and continuously violated this law, causing Missouri Pharmacies substantial damages.

WHEREFORE, judgment should be entered in favor of the Missouri Pharmacies and against Defendant on Count XIII of the Complaint entitling the Missouri Pharmacies to damages, attorney's fees and costs.

## COUNT XIV
## VIOLATION OF KANSAS LAW
### (Kansas Pharmacies v. Defendant)

382.   All plaintiffs who have their principal place of business in Kansas are "Kansas Pharmacies."  The Kansas Pharmacies incorporate the preceding allegations by reference as if fully set forth herein.

383.   The 2015 Catamaran Provider Manual states: "Catamaran will comply with applicable laws for resolving disputes over maximum allowable cost pricing." *See Exhibit C*, pg. 15.

384.   After the Catamaran-Optum merger, the Optum Provider Manuals from 2016 to present state: "to the extent any state-specific law, rule or regulation differs or contradicts the terms set forth herein, [Defendant] shall follow the state-specific law, rule

or regulation. . . . [Defendant] follows the state requirement where your pharmacy is located." *See Exhibit D*, pg. 51; *Exhibit E*, pg. 52-53.

385.   KS ST § 40-3830 is Kansas' MAC law.

386.   Defendant has consistently and continuously violated these laws, causing Kansas Pharmacies substantial damages.

**COUNT XV**
**VIOLATION OF KENTUCKY LAW**
**(Kentucky Pharmacies v. Defendant)**

387.   All plaintiffs who have their principal place of business in Kentucky are "Kentucky Pharmacies." The Kentucky Pharmacies incorporate the preceding allegations by reference as if fully set forth herein.

388.   The 2015 Catamaran Provider Manual states: "Catamaran will comply with applicable laws for resolving disputes over maximum allowable cost pricing." *See Exhibit C*, pg. 15.

389.   After the Catamaran-Optum merger, the Optum Provider Manuals from 2016 to present state: "to the extent any state-specific law, rule or regulation differs or contradicts the terms set forth herein, [Defendant] shall follow the state-specific law, rule or regulation. . . . [Defendant] follows the state requirement where your pharmacy is located." *See Exhibit D*, pg. 51; *Exhibit E*, pg. 52-53.

390.   KY ST 304.17A-162 is Kentucky's MAC law.

391.   KY ST 304.17A-270 is Kentucky's Any Willing Provider law.

392.   Defendant has violated KY ST 304.17A-270 by routinely refusing to pay each participating pharmacy the same amount it pays to large chains and its own mail

order pharmacy.

393.   Defendant has consistently and continuously violated these laws, causing Kentucky Pharmacies substantial damages.

WHEREFORE, judgment should be entered in favor of the Kentucky Pharmacies and against Defendant on Count XV of the Complaint entitling the Kentucky Pharmacies to damages, attorney's fees and costs.

**COUNT XVI**
**VIOLATION OF MONTANA LAW**
**(Montana Pharmacies v. Defendant)**

394.   All plaintiffs who have their principal place of business in Montana are "Montana Pharmacies."  The Montana Pharmacies incorporate the preceding allegations by reference as if fully set forth herein.

395.   The 2015 Catamaran Provider Manual states: "Catamaran will comply with applicable laws for resolving disputes over maximum allowable cost pricing." *See Exhibit C*, pg. 15.

396.   After the Catamaran-Optum merger, the Optum Provider Manuals from 2016 to present state: "to the extent any state-specific law, rule or regulation differs or contradicts the terms set forth herein, [Defendant] shall follow the state-specific law, rule or regulation. . . . [Defendant] follows the state requirement where your pharmacy is located." *See Exhibit D*, pg. 51; *Exhibit E*, pg. 52-53.

397.   Montana's state MAC law appears at MT ST § 33-22-171 to 173

398.   MT ST 33-22-176 precludes claw backs from customer co-payments

399.   MT ST  33-22-175 precludes retroactive deductions

80

400.    Defendant has consistently and continuously violated these laws, causing Montana Pharmacies substantial damages.

WHEREFORE, judgment should be entered in favor of the Montana Pharmacies and against Defendant on Count XVI of the Complaint entitling the Montana Pharmacies to damages, attorney's fees and costs.

**COUNT XVII**
**VIOLATION OF NEW JERSEY LAW**
**(New Jersey Pharmacies v. Defendant)**

401.    All plaintiffs who have their principal place of business in New Jersey are "New Jersey Pharmacies." The New Jersey Pharmacies incorporate the preceding allegations by reference as if fully set forth herein.

402.    The 2015 Catamaran Provider Manual states: "Catamaran will comply with applicable laws for resolving disputes over maximum allowable cost pricing." *See Exhibit C*, pg. 15.

403.    After the Catamaran-Optum merger, the Optum Provider Manuals from 2016 to present state: "to the extent any state-specific law, rule or regulation differs or contradicts the terms set forth herein, [Defendant] shall follow the state-specific law, rule or regulation. . . . [Defendant] follows the state requirement where your pharmacy is located." *See Exhibit D*, pg. 51; *Exhibit E*, pg. 52-53.

404.    New Jersey's MAC law appears at N.J.A.C. 11:4-62.3 and 11:4-62.4.

405.    New Jersey's Any Willing Provider Law, N.J.S.A. 17:48-6j, generally requires that health insurance carriers to allow providers to be accepted into networks if the provider is willing at accept the conditions of network membership set by the carrier.

81

406.   In New Jersey, the health insurance plan must pay each participating pharmacy the same amount, since all providers are participating in the network under the same terms and conditions.

407.   Defendant has violated N.J.S.A. 17:48-6j by routinely refusing to pay each participating pharmacy the same amount it pays to large chains and its own mail order pharmacy.

408.   New Jersey has passed a law banning "retroactive adjustments" and/or reductions in payments to pharmacies except in case of problems found on audit, mistake or technical error. N.J.S.A. § 17B:27F-7.

409.   Defendant routinely makes retroactive reductions in amounts paid to pharmacies in violation of this law.

410.   Defendant has consistently and continuously violated these laws, causing New Jersey Pharmacies substantial damages.

WHEREFORE, judgment should be entered in favor of the New Jersey Pharmacies and against Defendant on Count XVII of the Complaint entitling the New Jersey Pharmacies to damages, attorney's fees and costs.

By:     */s/Keith Short*_____
Keith Short          #6210044
KEITH SHORT & ASSOCIATES
325 Market Street
Alton, IL 62002
618-254-0055
618-254-1272 (fax)
keith@siltrial.com

*/s/ Mark R. Cuker*_____
Mark R. Cuker

82

Jacobs Law Group
One Logan Square Suite 1200
Philadelphia, PA  19103
(215) 531-8512
mcuker@jacobslawpc.com
*Pro Hac Vice*

# EXHIBIT A

EXHIBIT A



# OptumRx

## 2015 provider manual (PM)



Click here to get started.



# Introduction



The information contained in this document is proprietary and confidential to OptumRx.



## A. About this provider manual (PM)

The Administrator Provider Manual (PM), also known as "Provider Manual", includes the policies and procedures for pharmacies, pharmacists, as well as pharmacy staff *(collectively, Network Pharmacy Providers)* which serve Members pursuant to the Prescription Drug Services Agreement, the Pharmacy Network Agreement, the Specialty Pharmacy Network Agreement, Mail Order Pharmacy Agreement and/or pharmacy benefit manager affiliates' agreements, as amended *(collectively, Agreement)* with Administrator.

Administrator appreciates your participation in its pharmacy network and your role in delivering quality Covered Prescription Services to our Members. The PM is incorporated into and is a part of your Agreement. As a Network Pharmacy Provider, you are responsible for monitoring and complying with all changes to the PM. Failure to adhere to any of the provisions and terms of the Agreement, which includes this PM, as well as all other applicable documents, will be viewed as a breach of the Agreement.

**Please Note**:
Network Pharmacy Providers' participation in an Administrator or Client network shall not guarantee participation in all networks. Administrator reserves the right to limit Network Pharmacy Providers (and any of its pharmacies') participation in a network in its sole discretion.

Any Agreement entered into by-and-between Administrator and Network Pharmacy Provider will have an effective date executed by Administrator ("Effective Date"); shall continue uninterrupted until terminated by either party according to the terms and conditions of the Agreement.

Network Pharmacy Provider understands Administrator is relying on its participation in applicable networks and as such shall not be allowed to opt-out of any networks without the written consent of Administrator.

- Information in this PM is current at the time of publication.

    — While efforts are made to keep the information current, this PM is subject to change without notice.

- This PM is not designed to cover all circumstances or issues, nor is it a replacement for sound clinical judgment.

- Online Claim adjudication via the Point-of-Sale (POS) System will reflect the most current benefit and takes precedence over printed information.

- For your convenience, all capitalized terms contained in this PM will have the meanings as set forth in the Agreement or are listed and defined in this PM.

- In the event this PM and the Agreement have conflicting language, the PM will supersede the Agreement.

- For specific details regarding the particular terms and conditions of the contract between Administrator and its participating pharmacies, please refer to the Agreement.

    — While we hope that most of your day-to-day questions concerning the Administrator pharmacy program are adequately addressed in this PM, please contact us if you have any questions.

- Administrator Faxblast Communications that have been previously sent and sent after the date of receipt of this PM to Network Pharmacy Providers are hereby incorporated by reference into this PM, which is incorporated into the Agreement.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



## B. What's new and conventions used in the PM

- Incorporates Catamaran Provider Manual (PM) requirements
- More User-Friendly (Interactive)
  — Table of Contents
  — Definitions
  — Readability
  — Hyperlinks
- Updated Information and Requirements
- Key New Section VIII

## C. Images used in the PM

 Friendly FYI for our valued Network Pharmacy Providers

 Looking out for our valued Network Pharmacy Providers

 Helpful examples & encouragement to reach out for additional assistance (please see Section II)

 Pearls of wisdom for important information for our valued Network Pharmacy Providers

Contents

Back

Next

Previous

Exit



# Table of contents

Click on any section or page below to go directly to that portion of the document.

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

   A. About this provider manual (PM). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   B. What's new and conventions used in the PM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   C. Images used in the PM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Table of contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

I. Definitions   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

II. Contact information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

   A. Pharmacy help desk service contact information . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

   B. Prior authorization (PA) service contact information . . . . . . . . . . . . . . . . . . . . . . . . . 21

   C. Pharmacy network contracting department contact information . . . . . . . . . . . . . . . . . 21

   D. MAC review requests contact information. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

   E. Pharmacy network credentialing department contact information . . . . . . . . . . . . . . . . 22

   F. Provider forms and documents contact information . . . . . . . . . . . . . . . . . . . . . . . . . 22

   G. MAC appeals contact information. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

   H. Faxblast communications  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III. Member identification (ID) cards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

   A. Sample Member ID Cards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

   B. Sample Catamaran Member ID Card . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

   C. Troubleshoot Member ID Cards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

IV. Processing claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

   A. General process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      Complete claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      Federal regulations for schedule II drugs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      Online processing window to submit electronic claims . . . . . . . . . . . . . . . . . . . . . 29

      National drug code (NDC) number . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

      National provider identification (NPI) number . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

      Taxonomy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

      Required claim information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

      Patient residence code (PRC) and pharmacy service type (PST) requirements . . . . . . . . . 32

      Prescription origin code claim submission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

      Pharmacy processing information and notices  . . . . . . . . . . . . . . . . . . . . . . . . . . 33

      Dispense as written (DAW) codes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Contents

Back

Next

Previous

Exit

OptumRx Provider Manual: 11th edition       5

The information contained in this document is proprietary and confidential to OptumRx.

# Table of contents

Claims that require a diagnosis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Subrogation and coordination of benefits (COB). . . . . . . . . . . . . . . . . . . . . . . . . . . 35
Retroactive eligibility changes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
Payer sheets. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
B. Formulary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
C. Submitting compounded drug claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
Raw or bulk chemical powders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Submitting multi-ingredient compounded Prescriptions under version D.0 . . . . . . . . . . . 37
Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
Compounded drug claims general exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Re-packaged/Re-imported ingredients . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Compensation for compounded drug claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
D. Pharmacy payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
Processing and pricing; successful adjudication of a claim. . . . . . . . . . . . . . . . . . . . 40
Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
Payment rules under medicare and medicaid programs . . . . . . . . . . . . . . . . . . . . . 41
Payment of interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
Electronic remittance advice (ERA) 835 program enrollment requirements . . . . . . . . . . 42
ERA enrollment steps . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
Electronic funds transfer (EFT) program enrollment requirements . . . . . . . . . . . . . . . . 43
EFT enrollment steps . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
E. Member/Insured appeals and grievances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
F. Utilization management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
Utilization management requirements for select drugs . . . . . . . . . . . . . . . . . . . . . . . 45
Prior authorization (PA) process key steps . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
Additional information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
Maximum dollar edits (Max) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
G. Concurrent drug utilization review (cDUR). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
Override codes for pharmacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
H. Retrospective drug utilization review (rDUR)/clinical program . . . . . . . . . . . . . . . . . 48
Drug-drug interaction alert program (DDIAP) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
Drug-age RxMonitor program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
Narcotic drug utilization review (DUR) program . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
Opioid overutilization drug utilization review (DUR) program . . . . . . . . . . . . . . . . . . . 49
Polypharmacy program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
Refill reminder and adherence program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
Generic strategy program (GSP) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

The information contained in this document is proprietary and confidential to OptumRx.



# Table of contents

I. Maximum allowable cost (MAC) pricing, review and appeals . . . . . . . . . . . . . . . . . . . . . . . . 51

    MAC state-specific . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

J. Resubmitting a claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

K. Transmission fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

L. Pharmaceutical manufacturers copayment coupons . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

M. Tax . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

N. Disputed claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

O. Days supply and quantity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

    Days' supply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

    Dispensing limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

    Quantity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

P. Collection of members cost-sharing amount. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Q. Claim reversals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

R. Non-solicitation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

S. Prohibition on repackaging and reimportation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

T. Use of third parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

U. 340(B) program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

V. Hospice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

**V. BIN information** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **60**

A. OptumRx prescription bank identification numbers (RxBINs) . . . . . . . . . . . . . . . . . . . . . 61

    OptumRx payer sheets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

    The Administrator D.0 Payer sheets Related to Medicare Part D, Commercial
    and Medicaid are available on the health care professional's portal via the following: . . . . 61

B. Catamaran prescription bank identification numbers (RxBINs) . . . . . . . . . . . . . . . . . . . . 61

    Non-Medicare . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

**VI. Medicare product information and guidelines** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **62**

A. Excluded drugs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

B. Medicare Part A/B/D coordination of benefits (COB) . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

C. Medicare Part D clean claim determination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

D. Medicare Part D coverage determination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

E. Permissible prescriber identifiers for Medicare Part D claims . . . . . . . . . . . . . . . . . . . . . 65

F. Coverage determination timeframes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

    Standard coverage determination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

    Expedited coverage determination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

G. Claim adjustments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

H. Coverage limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

OPTUMRx®

# Table of contents

I. Medication therapy management program (MTMP) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

    MTMP eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

    Scope of MTMP services. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

    MTMP enrollment process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

    MTMP reimbursement for network pharmacy providers . . . . . . . . . . . . . . . . . . . . . . . . 68

J. Medicare Part D transition policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

K. Medicare Part D transitioning long-term-care (LTC) facility residents. . . . . . . . . . . . . . . . . 69

L. LTC facility information to be provided upon termination . . . . . . . . . . . . . . . . . . . . . . . . . 69

M. Short-cycle-dispensing (SCD) processing for LTC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

    Valid submission clarification code and special packaging indicator combinations. . . . . . . . 70

N. Daily cost share (DCS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

O. Medicare Part D sixty (60) day negative formulary change notice. . . . . . . . . . . . . . . . . . . 72

P. Medicare Part D annual notice of change for continuing members . . . . . . . . . . . . . . . . . . . 73

Q. Best available evidence (BAE) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

    All pharmacy types EXCLUDING LTC providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

    LTC providers ONLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

R. Part D mail order, home delivery or other automatic delivery program . . . . . . . . . . . . . . . . 74

    Initial/New Prescriptions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

    Refill Prescriptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

S. Qualified medicare beneficiary coverage — coordination of benefits (COB) for Part B drugs . 75

T. Medicare supplier number . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

U. Medicare notice of patients rights  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

V. Compliance CTMS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

    CMS complaints tracking module (CTM)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

W. DUR medicare Part D therapeutic dose limits edits . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

    DUR/PPS codes (reason, professional, and result codes): . . . . . . . . . . . . . . . . . . . . . . . 79

## VII. Compliance; fraud, waste and abuse (FWA); audits  . . . . . . . . . . . . . . . . . . . . . .81

A. Network pharmacy provider FWA and general compliance training . . . . . . . . . . . . . . . . . . 82

    Common FWA schemes to avoid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

    Network pharmacy provider FWA attestation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

B. Pharmacy audits (Audits) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

    Audit policy statement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

    Audit purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

    Procedures for audit compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

    On-site audits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

    Documentation and submission expectations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

Contents

Back

Next

Previous

Exit

**OptumRx Provider Manual:** 11th edition

The information contained in this document is proprietary and confidential to OptumRx.

8



# Table of contents

Prescription records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91
Wholesaler, manufacturer, and distributor invoices . . . . . . . . . . . . . . . . . . . . . . . . . . . 91
Signature log — hard copy or electronic. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92
Insulin and diabetic supplies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92
Inhalers and inhalation products. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93
Ophthalmic products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93
Desktop and telephone audits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93
Investigative reviews. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94
Post-audit reporting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94
Miscellaneous audit information. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94
Prescription origin code claim submission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96
Audit dispute resolution procedure and audit collections/final audit remedies. . . . . . . . . 96
Long term care (LTC) providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97
C. Data accuracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97
D. OIG/GSA validations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98

## VIII. Pharmacy network participation requirements. . . . . . . . . . . . . . . . . . . . . . . . . . .99

A. Network Pharmacy Provider Participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100
B. Prohibited activities by Network Pharmacy Provider and associated penalties . . . . . . . . . . 100
Non-solicitation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100
Noncompliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101
C. Credentialing and quality management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101
Independent pharmacy credentialing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102
Mail order pharmacy additional credentialing requirements . . . . . . . . . . . . . . . . . . . . . . 103
Specialty credentialing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 103
Compound credentialing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 103
PSAO credentialing requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
Minimum credentialing requirements for pharmacies participating through a PSAO . . . . 105
Additional credentialing requirements for HI pharmacies participating through a PSAO . 105
Chain pharmacies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106
Additional state and plan requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106
Enhanced credentialing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106
On-site pharmacy facility reviews . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107
Quality related events. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107
Recall notices/expired medications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107
D. Pharmacies contracted through PSAOs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107
E. Confidentiality and proprietary rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

F. Medicaid; federal/state Medicare-Medicaid enrollee (MME) regulatory requirements . . . . . . 108

    Texas Medicaid manual applicable to manage Medicaid plans . . . . . . . . . . . . . . . . . . . . 109

    State-specific Medicaid program participation required. . . . . . . . . . . . . . . . . . . . . . . . . . 109

    Submission of clean claims via the POS system for 340B drug products . . . . . . . . . . . . 109

G. Retail and Mail Network Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109

H. Compounding pharmacy participation in retail networks . . . . . . . . . . . . . . . . . . . . . . . 110

    Prohibited activities by retail pharmacies and compounding pharmacies . . . . . . . . . . . . 110

I. Provide timely notice of demographic changes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 111

J. Involuntary disenrollment by benefit plan sponsor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 111

K. National Plan and Provider Enrollment System (NPPES) Updates . . . . . . . . . . . . . . . . . . . . 112

L. Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112

M. Alternative dispute resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113

N. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 115

O. Information management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116

P. CatamaranRx specialty pharmacy network addendum . . . . . . . . . . . . . . . . . . . . . . . . . 116

Q. Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116

IX. Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117

    Appendix A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117

        Independent Pharmacy Credentialing Application . . . . . . . . . . . . . . . . . . . . . . . . . . . 117

    Appendix B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118

        Independent Pharmacy Credentialing and Re-credentialing Application Fee . . . . . . . . . . 118

    Appendix C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119

        Affiliation Credentialing Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119

    Appendix D . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120

        National council for the prescription drug programs (NCPDP)
Submission clarification code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120

    Appendix E . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 121

        Audit violations and discrepancy descriptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 121

    Appendix F . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125

        Client-specific manual addenda . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125

    Appendix G . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125

        Medicaid; federal/state Medicare-Medicaid enrollees (MME) regulatory requirements . . . 125

    Appendix H . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 129

        Client-specific information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 129

    Appendix I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 135

        Catamaran state-specific provider manual addenda . . . . . . . . . . . . . . . . . . . . . . . . . 135

Contents

Back

Next

Previous

Exit

**OptumRx Provider Manual:** 11th edition                                       10

The information contained in this document is proprietary and confidential to OptumRx.



# I. Definitions



The information contained in this document is proprietary and confidential to OptumRx.



The following terms are used throughout this document and are derived from the Agreement, CMS regulations and other program documents:

**Administrator**:
OptumRx, Inc., OptumRx NY IPA, Inc., OptumRx, LLC and any subsidiaries or affiliates which provide pharmacy benefit services, including, but not limited to, Catamaran, LLC.

**Agreement**:
Prescription Drug Services Agreement, the Pharmacy Network Agreement, the Specialty Pharmacy Network Agreement, Mail Order Pharmacy Agreement and/or pharmacy benefit manager affiliates' agreements, as amended *(collectively, Agreement)* with Administrator.

**Average Wholesale Price (AWP)**:
AWP and brand or generic Prescription classification is determined by Administrator in all cases and updated at least weekly. Administrator shall use Client or Benefit Plan, Medi-Span or other national resource and internal processes as a reference, but not as the sole determinant. WAC-referenced based pricing may be implemented should AWP become obsolete or if Benefit Plan or market conditions warrant such pricing methodology. Other nationally recognized referenced based price sources may also be implemented as market conditions warrant or under the circumstances where AWP becomes obsolete.

**Benefit Plan**:
Benefit or Plan provided to Clients' Members, including but not limited to under any Commercial, Medicaid, Medicare, MA-PD Plan or Prescription Drug Plan. Benefit Plan coverage shall include, without limitation, any deductible or coverage gap provided for under such coverage, without regard to any subsidy by any third party of a Member's Cost-Sharing obligations under the applicable Benefit Plan. Benefit Plan may also include coverage for workers compensation, hospice and discount card programs.

**Benefit Plan Sponsor**:
Any person, Client or entity, including government agencies, which has entered into, or in the future enters into, a written Agreement with Administrator or a Client pursuant to which Administrator provides certain consultative, administrative, and/or Claims processing services in connection with the operation of one or more Benefit Plans sponsored, issued or administered by such person, Client or entity and/or that person's, Client's or entity's customer.

**Brand Name Drug**:
Drug Product marketed under a proprietary and trademark-protected name.

**Centers for Medicare and Medicaid Services (CMS)**:
CMS is a federal agency within the United States Department of Health and Human Services (HHS) that administers the Medicare program and works in partnership with state governments to administer Medicaid, the State Children's Health Insurance Program (SCHIP), and health insurance portability standards. In addition to these programs, CMS has other responsibilities, including the administrative simplification standards from the Health Insurance Portability and Accountability Act of 1996 (HIPAA), quality standards in LTC facilities (more commonly referred to as nursing homes) through its survey and certification process.

**Claim**:
Network Pharmacy Provider's billing or invoice for a single Prescription for Covered Prescription Services dispensed to a Member submitted by Network Pharmacy Provider to Administrator or claims processor in accordance with the Agreement. If a Claim is not processed in accordance with the Medicaid or Medicare Part D Addendum, Amendment, Exhibit, such Claim is considered a commercial Claim.

**OptumRx Provider Manual:** 11th edition                                                                                          12

The information contained in this document is proprietary and confidential to OptumRx.



**Clean Claim**:
Prepared in accordance with the standard formats promulgated by the National Council for Prescription Drug Programs, electronic, batch, and on paper, which contains all of the information necessary for processing (including, without limitation, the Member identification number, the Member's name and date of birth, Drug Product NDC number, drug quantity, days' supply, health care provider Drug Enforcement Administration (DEA)/National Provider Identification (NPI) number, National Council for the Prescription Drug Programs (NCPDP)/NPI number, date of service, Submitted Cost Amount and the U&C). Claims submitted in non-NCPDP standard format will not be considered a Clean Claim and will be subject to an additional Claim processing charge. A Claim shall not be considered a "Clean Claim" if at Administrator's sole discretion it determines that such Claim is (i) discrepant, false and/or fraudulent, (ii) by an individual not authorized under applicable law or regulation to write or direct the related Prescription, or (iii) with respect to any Benefit Plan that is a "Federal health care program" as defined in 42 U.S.C. 1320a-7b, relates to a Prescription written or directed by an individual who is excluded from participation in any Federal health care program pursuant to applicable federal or state law *(individually and collectively, a Non-Clean Claim)*. In addition and as determined by Administrator's sole discretion, a Non-Clean Claim includes a Claim for a Drug Product that was Mailed, shipped or delivered by a Pharmacy that does not participate in Administrator's Mail Order Pharmacy Network pursuant to a mutually signed Mail Order Pharmacy Network Agreement. An Administrator's Non-Clean Claim determination shall be applicable regardless of whether Administrator, Client, Member, and/or Pharmacy were aware of the same at the time such Prescription was processed by Pharmacy. Any amounts paid by any Member, Administrator or Client for such Non-Clean Claim shall be subject to recoupment from Pharmacy by Administrator.

**Client**:
Any person or entity which has entered into, or in the future enters into, a written Agreement with Administrator pursuant to which Administrator provides certain consultative, administrative and/or Claims processing services in connection with the operation of one or more Benefit Plan Sponsored, issued or administered by such person or entity and/or that person's or entity's customer.

**Compounded Drug**:
A combination mixture or alteration of a Federal Legend Drug in which a Network Pharmacy Provider combines, mixes, alters solid, semisolid or liquid ingredients, at least one of which is a Covered Prescription Service weighed or measured and prepared according to the Prescriber's order and the Pharmacist's art to create a medication tailored to the needs of a Member which is not a commercially available Drug Product. This excludes any flavoring, dilution and reconstitution of a Drug Product (e.g. an oral antibiotic) according to manufacturer guidelines.

**Coordination of Benefits (COB)**:
Provision in a contract that applies when a person is covered under more than one group medical program. It requires that payment of benefits will be coordinated by all programs to eliminate over-insurance or duplication of benefits.

**Cost-Sharing or Cost-Sharing Amounts**:
Administrator shall communicate to Network Pharmacy Provider (via the POS System) the Cost-Sharing Amounts (e.g. Co-payment and Deductible) applicable to Covered Prescription Services. Unless otherwise required under the Agreement, Pharmacy shall collect the full Cost-Sharing Amounts (if any) from the Member that are applicable to Covered Prescription Services being dispensed to Members. Pharmacy shall not at any time seek reimbursement for Cost-Sharing Amounts from Administrator or any Client. "Co-payment" or "Deductible" means a fixed dollar or a percentage portion of the charge for the Drug Product being dispensed by Network Pharmacy Provider to Member which is to be paid by Member.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



Contents

Back

Next

Previous

Exit

**Covered Prescription Service or Services:**
Prescriptions and other pharmaceutical products, services and supplies dispensed by a Pharmacy to a Member for which coverage is provided pursuant to the terms and conditions of the Benefit Plan.

**Drug Product:**
Brand Name Drug or Generic Drug which is (i) required under applicable laws and regulations to be dispensed only pursuant to a Prescription and (ii) is approved by the FDA.

**Faxblast Communications:**
Sent electronically to the contracted network entity (i.e. independent pharmacy, retail chain, PSAO corporate representative) via facsimile (i.e. fax) process or email, which include from time to time general announcements, Provider Manual updates and Pharmacy Plan Specifications.

**First-tier, Down-stream or Related Entity (FDR):**
CMS reference to the various contractual relationships that an entity may have with a MA, MAPD, MMP or PDP Sponsor for delegated sponsor services.

**Formulary:**
Entire list of Drug Products, devices, products and/or supplies covered by the applicable Benefit Plan.

**Formulary and Generic Drug:**
In the provision of Covered Prescription Services, all Network Pharmacy Providers shall use its best efforts, in accordance with all applicable state/federal laws, to adhere to and promote the Formulary, except to the extent the Network Pharmacy Provider is: (i) prohibited by state law or (ii) otherwise directed by Administrator through the POS System. If (i) neither the Prescription nor applicable state/federal laws prohibit substitution of a generic drug equivalent for the Drug Product and (ii) Network Pharmacy Provider obtains consent from the Member, as well as the Member's physician, when and if required by applicable state/federal laws, then Network Pharmacy Provider shall dispense a generic drug equivalent for the Drug Product to the Member.

**Fraud, Waste and Abuse (FWA):**
*Fraud*
Knowingly and willfully executing, or attempting to execute, a scheme or artifice to defraud any health care benefit program; or to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program. (18 United States Code §1347).

*Waste*
Overutilization of services, or other practices that, directly or indirectly, result in unnecessary costs to the Medicare Program. Waste is generally not considered to be caused by criminally negligent actions but rather the misuse of resources.

*Abuse*
Actions that may, directly or indirectly, result in: unnecessary costs to the Medicare and Medicaid Programs, improper payment, payment for services that fail to meet professionally recognized standards of care, or services that are medically unnecessary. Abuse involves payment for items or services when there is no legal entitlement to that payment and the provider has not knowingly and/or intentionally misrepresented facts to obtain payment. Abuse cannot be differentiated categorically from fraud, because the distinction between "fraud" and "abuse" depends on specific facts and circumstances, intent and prior knowledge, and available evidence, among other factors.

**Generic Drug:**
Identified by its chemical, proprietary or nonproprietary name, which is accepted by the FDA as therapeutically equivalent to an originator Brand Name Drug.

OptumRx Provider Manual: 11th edition                                                                                      14

The information contained in this document is proprietary and confidential to OptumRx.



**Gramm-Leach-Bliley (GLB)**:
The Financial Modernization Act of 1999 also known as the Gramm-Leach-Bliley Act (codified at 15 USC § 6801 et seq.); together with any rules and regulations from time to time promulgated thereunder, as may be amended, modified, revised, replaced, interpreted by any Governmental Authority or court.

**Government Authority**:
Including, but not limited to the federal government, any state, county, municipal, local government, any governmental department, political subdivision, agency, bureau, commission, authority, body, instrumentality or court, which might regulate the activities/operations of either party, parties' Affiliate or Client.

**Health and Human Services (HHS)**:
The United States (U.S.) Department of Health and Human Services or any successor Government Authority.

**Health Insurance Portability and Accountability Act (HIPAA)**:
The Health Insurance Portability and Accountability Act of 1996; the rules and regulations adopted by HHS pursuant to HIPAA, including the Standards for Privacy of Individually Identifiable Health Information, as well as the Security Standards for the Protection of Electronic Protected Health Information, 45 CFR parts 160 and 164 (subparts A, C, and E) as each may be amended, modified, revised, replaced, interpreted by any Government Authority or court.

**Home Infusion (HI) Pharmacy**:
Pharmacy-based, decentralized patient care organization with expertise in USP 797-compliant sterile compounding that provides care to patients with acute or chronic conditions generally pertaining to parenteral administration of drugs, biologics and nutritional Prescriptions administered through catheters and/or needles in home and alternate sites. Pharmacies must have a 'clean room' and 'hood' in order to provide sterile compounding of Infusion Therapy Covered Prescription Services.

**Infusion Therapy**:
Involves the administration of medication through a needle or catheter and it is prescribed when a Member's condition is so severe that it cannot be treated effectively by oral medications. Typically, "infusion therapy" means a drug is administered intravenously, but the term also may refer to situations where drugs are provided through other non-oral routes (e.g. intramuscular injections and epidural routes; into the membranes surrounding the spinal cord). "Traditional" Prescription drug therapies commonly administered via infusion include antibiotic, anti-fungal, antiviral, chemotherapy, hydration, pain management and parenteral nutrition.

**Long-term-care (LTC) Pharmacy**:
Pharmacy provides Drug Products to LTC facilities for institutionalized level of care settings, such as a Skilled Nursing Facility (SNF) setting and participates in the Medicare Part D LTC network.

**Mailing/Mail**:
Action or process of sending Covered Prescription Services through the US mail, shipping via any common carrier (e.g. FedEx, UPS, DHL) or via delivery by any type of courier to Members.

**Mail Order Pharmacy**:
Pharmacies where Drug Products are prepared, dispensed and sold, including Covered Prescription Services, to Members and delivered via Mailing. These pharmacies typically do not offer walk-in services to our Members. Mail Order Pharmacies are not Retail Pharmacies for the purposes of the retail Agreement.

**Marks**:
Name(s), logo(s) and other proprietary symbols/phrases belonging to an entity.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

**Maximum Allowable Cost (MAC)**:
MAC for pharmaceutical products is developed by Administrator based upon information provided by Medi-Span or any other nationally recognized pricing source selected by Administrator and may be amended from time-to-time at its sole discretion in accordance with applicable law.

- Administrator determines MAC pricing based on a review of the following: pricing information from a nationally recognized pricing service, one or more national drug wholesalers and/or manufacturers, and the publicly available results of CMS' survey of retail prices. Administrator reserves the right to update its MAC pricing methodology and to use alternative, reputable sources at its discretion. Upon written request and to the extent required by law, Administrator will make available the current and applicable MAC price information to Network Pharmacy Provider. Such MAC price lists constitute confidential information.

**Medicare Advantage Prescription Drug Plan (MA-PD)**:
CMS-approved MA-PD plans sponsored, issued or administered by Clients as defined in 42 Code of Federal Regulations (CFR) §423.4, and includes, but is not limited to, private fee-for-service plans as defined in the Medicare Advantage rules and any CMS demonstration programs that provide Prescription Drug Product benefits. For purposes of this Agreement, "MAPD Plan" also includes any employer-sponsored MA-PD plan referenced in 42 CFR §422.106.

**Medicare-Medicaid Enrollees (MME)**:
Members are dually eligible in both Medicare and Medicaid.

**Medicare-Medicaid Plans (MMPs)**:
A new product developed by the Centers for Medicare and Medicaid Services (CMS) and the states for managing the health benefits of Medicare – Medicaid Enrollees (MMEs). It is a system of managed care plans selected to coordinate the physical, behavioral and LTC services for individuals over the age of 18 years who are eligible for both Medicare and Medicaid benefits. This includes people with disabilities, older adults and individuals who receive behavioral health services. Rather than have benefits covered under two different products, MMPs provide a combined benefit package, in which all benefits available through Medicare and Medicaid are integrated. The MMPs may vary slightly from state to state, depending on how the state defines their portion of the benefit package. From a pharmacy benefit perspective, the Medicare and Medicaid benefits are integrated and managed as a single Benefit Plan.

**Medicare Part D Sponsor**:
Any person, Benefit Plan Sponsor, Client or entity which has entered into, or in the future enters into, a written Agreement with CMS to offer PDP and/or MA-PD Plans pursuant to which Administrator provides certain consultative, administrative, and/or Claims processing services in connection with the operation of one or more PDP and/or MA-PD Plans sponsored, issued or administered by such person, Benefit Plan Sponsor, Client, or entity and/or that person's, Client's, Benefit Plan Sponsor's or entity's customer.

**Member**:
Individual including a dependent or pet who is eligible and enrolled to receive coverage through a Benefit Plan from a Client for Covered Prescription Services.

**National Average Drug Acquisition Cost (NADAC)**:
NADAC of Drug Products or ancillary supplies, as applicable, as dispensed and as set forth in the latest edition of the Medi-Span® Prescription Pricing Guide (with supplements) or any other nationally recognized pricing source selected by Administrator (the "Pricing Source"), as updated at least monthly.

**National Council of Prescription Drug Programs (NCPDP)**:
The National Council of Prescription Drug Programs.

**OptumRx Provider Manual:** 11th edition                                                                 16

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



**National Provider Identification (NPI) number**:
Unique ten (10) digit identifier assigned to health care providers to use when submitting a HIPAA standard transaction.

**Original Document of Record**:
An original Prescription order from a Prescriber, or duly authorized health care professional, executed as required under State and Federal laws, a fully compliant fax order, or fully compliant phone-in order slip reduced to writing and noting the date and time of the phone order and the name of the individual authorizing the Drug Product, or a fully compliant e-Prescription.

**Pharmacist**:
An individual appropriately licensed in their respective States to dispense Drug Products to Members.

**Pharmacy/Network Pharmacy Provider**:
Entity that is contracted directly as a chain pharmacy or independent pharmacy with Administrator or indirectly contracted through a Pharmacy Services Administration Organization (PSAO) or *Group Purchasing Organization (collectively, 'PSAO')* to provide Covered Prescription Services to Administrator Clients' Members, in accordance with the Agreement, addenda, exhibits, Plan Specifications, subsequent amendments, etc., and as specified in the Agreement.

**Pharmacy Plan Specifications**:
Information made available by Administrator to assist Network Pharmacy Provider in submitting a Claim for Covered Prescription Services.

**Pharmacy Services Administration Organization (PSAO)**:
An organization that represents and serves as the agent of Pharmacies and contracts with Administrator on behalf of their own network of pharmacies. A PSAO may also be a *Group Purchasing Organization.*

**Point-of-Sale (POS) System**:
The online or real-time POS telecommunication system used to communicate information including, but not limited to Claims for Covered Prescription Services to Administrator, claims processor or Catamaran system.

**Prescriber**:
An individual appropriately licensed in their respective States to write Prescriptions for Members.

**Prescribing Physician**:
An individual appropriately licensed in their respective States as a physician.

**Prescription**:
A written or oral order to dispense a Drug Product directed by an appropriately licensed, as well as qualified health care professional in accordance with federal and/or state law.

**Prescription Drug Compensation**:
POS System transaction response reimbursement per Claim prevails, unless overpayment is made to Network Pharmacy Provider. Administrator may modify Prescription Drug Compensation of any Compensation Exhibit upon notice to Network Pharmacy Provider.

**Prescription Drug Contracted Rate**:
The meaning set forth in the applicable Compensation Exhibit(s), attached to the Agreement.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

**Prescription Drug Plan (PDP)**:

CMS approved Medicare Part D Prescription Drug Product coverage offered under a policy, contract or plan that is sponsored, issued or administered by Clients pursuant to a contract with CMS, as defined in 42 CFR §423.4, and includes, but is not limited to, any CMS demonstration programs that provide Prescription Drug Product benefits. For purposes of the Agreement, PDP also includes any employer-sponsored group Prescription drug plans, as defined in 42 CFR §423.454.

**Prior Authorization (PA)**:

Request initiated via fax, phone or online submission by the Member, Prescribing Physician, or Member's appointed representative to review non-formulary Drug Products utilizing clinical guidelines. Member information, diagnosis, justification for using Drug Product not covered under the individual's Benefit Plan and other pertinent information are reviewed to determine exception.

**Records:**

All books, records, documentation, data files, accounts, drug purchase invoices, signature logs of all Transactions including but not limited to the Prescription information or Original Document of Record required to validate the accuracy, completeness of the purchase of the Drug Product, dispensing of the Prescription for a Covered Prescription Service to the Member, submission of the Claim, verification of the pharmacy, pharmacist, pharmacy technician licenses and credentials.

**Retail Pharmacy**:

Any facility licensed by and pursuant to laws and regulations of the State of residence and by any other state in which the pharmacy provides services and drugs. The facility may be a store, clinic, or part of a store, clinic or hospital in which Drug Products are prepared, dispensed and sold, including Covered Prescription Services provided to Members as walk-in customers or a pharmacy providing services to skilled nursing facilities licensed by the state of residence as a retail pharmacy. A pharmacy may be considered for retail participation even if closed-door (e.g. a clinic/hospital pharmacy or government institution).

• A retail pharmacy does not i) deliver Drug Products via Mailing, ii) advertise itself as a Mail Order Pharmacy for obtaining Prescriptions delivered through Mailing, nor iii) self identifies with NCPDP as any of the following: Mail Order Pharmacy (dispenser type code "5") or Specialty Pharmacy (dispenser type code of "15")

**Safety Net Pharmacy**

A 340B Participating Pharmacy by mandate or mission organizes and delivers a significant level of Covered Prescription Services, including but not limited to the uninsured, Medicare, Medicaid and other vulnerable populations.

**Specialty Drugs**:

Includes biotechnology products, orphan Drug Products used to treat rare diseases, typically high-cost Drug Products, oral or injectable Drug Products, including infusions in any outpatient setting, Drug Products requiring ongoing frequent management/monitoring of the patient by clinician or Drug Products used to treat chronic and potentially life-threatening diseases.

**Specialty Pharmacy**:

A specialty pharmacy is a specific type of pharmaceutical delivery system which coordinates delivery and offers comprehensive support in the distribution of Specialty Drugs.

OptumRx Provider Manual: 11th edition                                    18

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



**Submitted Cost Amount**:
Submitted ingredient costs, dispensing fees and all other submitted costs incurred by a Pharmacy for dispensing of a Drug Product, device, product and/or supply.

**Transaction:**
Any transaction or Claim submitted by Network Pharmacy Provider to the claims processor whether it is incomplete, rejected, paid, a reversal, reversal reject, reversal due to Claim adjustment or duplicate transaction.

**Usual and Customary (U&C)**:
Price charged by Network Pharmacy Provider to the general public at the time of dispensing for the same Drug Product including all applicable customer discounts, such as advertised or sale prices, special customer, senior citizen, frequent shopper, coupons or other discounts, a cash paying customer pays Network Pharmacy Provider for Drug Products, devices, products and/or supplies. Network Pharmacy Provider must supply proof of a cash Prescription (i.e. without any disclosure of PHI) when necessary to evaluate the appropriate adjudication of the Transaction. Alteration of the U&C price to attempt to increase Claim payment without a true change to the cash price being offered to the general public will be considered non-compliance and a violation of the Agreement. The Network Pharmacy Provider must be able to communicate the U&C price to Administrator upon inquiry, failure to disclose this information will be considered non-compliance.

**Universal Claim Form (UCF)**:
NCPDP standardized Claim form used by Network Pharmacy Provider for manual billing.

**Wholesale Acquisition Cost (WAC)**:
Shall mean the average wholesaler acquisition cost of a Covered Prescription Service based on the Medi-Span® Prescription Pricing Guide (with supplements) or any other nationally recognized pricing source selected by Administrator (the "Pricing Source"), as updated at least weekly.

**340B Drug Pricing Program**:
Federal drug discount program established under Section 340B of the Public Health Service Act.

**340B Participating Entity**:
Healthcare organization eligible to access the 340B Drug Pricing Program to purchase Drug Products for itself or contracted pharmacies.

The information contained in this document is proprietary and confidential to OptumRx.



# II. Contact information



The information contained in this document is proprietary and confidential to OptumRx.



Administrator strives to ensure that pharmacies receive prompt and courteous attention when questions arise. For assistance in processing a Claim or questions concerning Administrator pharmacy programs, **please contact us at the telephone number identified on the Member's identification (ID) card** or contact us as indicated below. Hours of operation may change during holidays.

## A. Pharmacy help desk service contact information

   Hours of operation: 24 hours a day, 7 days a week, 365 days a year

For Member information regarding Benefit Plan **exclusions, disease therapy management (DTM) programs or other customer service issues,** please contact us using one of the following:

**For Plans not listed under Appendix J:**
• For all other plans, use the Pharmacist number on the Member's ID card.
• Telephone Device for the Hearing Impaired (TDHI): **1-866-498-5428**

**Catamaran pharmacy help desk:**
• Telephone: **1-800-880-1188**

**Website for health care professionals:**
• **Optumrx.com**
• **Catamaranrx.com/Pharmacies**

## B. Prior authorization (PA) service contact information

   OptumRx — Hours of operation: Monday–Friday, 5 a.m. to 10 p.m. (Pacific Time);
                        Saturday, 6 a.m. to 3 p.m. (Pacific Time)

Catamaran — Hours of operation: 24 hours per day, 7 days a week, 365 days per year

For Member information regarding **utilization management requirement, Medicare Part D decisions, coverage limitations and PAs,** please contact us using one of the following:

**OptumRx**
• Telephone: **1-800-711-4555**
• Fax (Oral): 1-800-527-0531
• Fax (Specialty): 1-800-853-3844

**Catamaran**
• Telephone: **1-800-626-0072**
• Fax (Oral): 1-866-511-2202

## C. Pharmacy network contracting department contact information:

   Hours of operation: Monday–Friday, 8 a.m. to 5 p.m. (Pacific Time)

To request a contract or questions related to contracting, please contact us using one of the following:

Pharmacy Network Contracting Department
17900 Von Karman            • Telephone: **1-800-613-3591**
(MS: CA016-0200)            • Fax: 1-866-811-4224
Irvine, CA 92614            • Email address: **pharmacynetwork@optum.com**

---

OptumRx Provider Manual: 11th edition                                                      21

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



To enroll as a Network Pharmacy Provider to participate in a Catamaran or Catamaran plan-sponsored network, call the Catamaran Pharmacy Network Contracting Department and request the enrollment forms or follow the directions under Agreement via the link below:

Catamaran Pharmacy Network Contracting Department
• Telephone: **1-877-633-4701**
• Web address: **catamaranrx.com/Pharmacies**
• Email: **provider.relations@optum.com**

### D. MAC review requests contact information:

 OptumRx — Hours of operation: Monday–Friday, 8 a.m. to 5 p.m. (Pacific Time)
Catamaran — Hours of operation: Monday–Friday, 8 a.m. to 5 p.m. (Central Time)

**OptumRx**
• Telephone: **1-800-613-3591 Ext. 9**
• Email address: **rxreimbursement@optum.com**

**Catamaran**
• Web address: **catamaranrx.com/Pharmacies**

### E. Pharmacy network credentialing department contact information:

 Hours of operation: Monday–Friday, 8 a.m. to 5 p.m. (Pacific Time)

For initial independent retail pharmacy credentialing application, credentialing application status and questions related to credentialing, please contact us using one of the following:

Pharmacy Network Credentialing Department
17900 Von Karman
(MS: CA016-0200)
Irvine, CA 92614
• Telephone: **1-800-613-3591**
• Fax: 1-877-593-5368
• Email address: **pharmacycredentialing@optum.com**

### F. Provider forms and documents contact information

To submit forms online, mail or fax requests regarding the *PA Guidelines and/or Formulary change request form(s)*, please contact us using one of the following:

**Provider forms and documents available online:**

• https://optumrx.com/RxsolHcpWeb/cmsContent.do?pageUrl=/HCP/HealthcareProviderTools/FormsAndDocuments

 Administrator is unable to accept incomplete Provider forms and documents. In order to avoid a delay in processing your request, please complete these forms in their entirety.

• https://catamaranrx.com/Pharmacies (access to the portal will require proper credentials).

 It is important to refer to this web-portal for current documents, forms, manuals, payer sheets and other communications.

The information contained in this document is proprietary and confidential to OptumRx.



**Prior authorization (PA) guideline change request form via mail or fax:**

| **OptumRx** | **Catamaran** |
|---|---|
| Clinical Programs | Catamaran |
| 2300 Main Street, CA 134-0404 | P.O. Box 5252 |
| Irvine, CA 92614 | Lisle, IL 60532 |
| • Fax: 1-949-474-4237 | • Fax: 1-866-511-2202 |

**Formulary change request form via mail or fax:**

| **OptumRx** | **Catamaran** |
|---|---|
| Clinical Formulary Operations | Catamaran |
| 2300 Main Street, CA 134-0404 | P.O. Box 5252 |
| Irvine, CA 92614 | Lisle, IL 60532 |
| • Fax: 1-949-474-4237 | • Fax: 1-866-511-2202 |

## G. MAC appeals contact information

To review the summary and guidelines for appealing MAC prices/pharmacy reimbursement, as well as downloading the form for submitting appeals, please follow the applicable link:

**OptumRx**
• https://www.optumrx.com/RxsolHcpWeb/cmsContent.do?pageUrl=/HCP/HealthcareProviderTools/FormsAndDocuments

**Catamaran**
• https://www.catamaranrx.com/Pharmacies

## H. Faxblast communications

Periodically, Administrator communicates updates to procedures, formularies, PM updates, etc., via Faxblast Communications. They are sent electronically to the contracted entity (Independent pharmacy, Chain, Group Purchasing Organization <GPO> or Pharmacy Services Administrative Organization <PSAO>) corporate office via facsimile (i.e. fax) process.

All faxblasts will be made available quarterly and provided in addition to the PM. To request copies of previously sent Faxblast Communications, please contact us using one of the following:

Provider Relations
1600 McConnor Parkway
Schaumburg, IL
60173-6801

• Telephone: **1-877-633-4701**
• Fax: 1-877-339-0784
• Email address: **provider.relations@optum.com**

The information contained in this document is proprietary and confidential to OptumRx.



# III. Member identification (ID) cards



**OptumRx Provider Manual:** 11th edition                                                                   24

The information contained in this document is proprietary and confidential to OptumRx.

Eligible Members receive an identification (ID) card containing information that helps our Network Pharmacy Providers submit Claims accurately and completely. In accordance with CMS requirements, a Network Pharmacy Provider must submit Claims to the Medicare Part D Sponsor or its intermediary whenever the ID card is presented or on file at the pharmacy, unless the Member expressly requests that a particular Claim not be submitted to the Medicare Part D Sponsor or its intermediary. Information may vary in appearance or location on the card due to employer, Benefit Plan Sponsors or Administrator requirements, however, ID cards display essentially the same information (e.g., Member Name, Subscriber Identification (ID), RxGroup Number (GROUP), Processor Control Number (PCN), Bank Identification Number (BIN), and contact telephone numbers).

**Be sure to check the Member's ID card at each visit — especially the first visit of each new benefit year when information is most likely to change.**

Below are samples of Member ID cards representing a couple of our Benefit Plan Sponsors. This is a sampling only and is not an all-inclusive list. Member ID cards may be added, deleted or amended at any time.

## A. Sample Member ID Cards





## B. Sample Catamaran Member ID Card





This card does not guarantee coverage. If you have any questions regarding Member's pharmacy Benefit Plan, please visit the web address or call the number located on the back of the Member's ID card. We are open 7 days a week/ 24 hours a day.

The information contained in this document is proprietary and confidential to OptumRx.



## C. Troubleshoot Member ID Cards

For instances when a Member does not have an ID card, please see the following:

| Situation: Member does not have an ID card | Step 1 | Step 2 | Step 3 | Step 4 |
|---|---|---|---|---|
| Person is at the pharmacy and has no proof of coverage but states they are currently enrolled.<br><br>Member may present generic marketing materials that were provided with the inquiry kits. | 1) E1 transaction initiated to determine eligibility; this is done by the Pharmacist<br><br>(a) Eligibility validated; Pharmacist processes Prescription<br><br>(b) Eligibility not validated or Pharmacist unable to access E1, move to step 2<br><br>Note: An E1 transaction can be initiated with the Member's Social Security Number (SSN) or Member's ID. | Pharmacist contacts the Pharmacy Help Desk using the contact information provided in Section II of this PM.<br><br>(a) Pharmacy Help Desk validates eligibility and Claim is processed<br><br>(b) Unable to validate eligibility, move to step 3 | Pharmacy Help Desk directs pharmacy to refer Member to applicable call center number located on Member ID card. | 1) Call center confirms eligibility; Member eligibility entered real-time into system; Member advises Pharmacist to fill Prescription.<br><br>2) Unable to confirm eligibility or eligibility has been denied; person pays retail for Drug Product; fourteen (14) day window to allow for online processing at pharmacy when eligibility issue resolved or person to submit a paper Claim for reimbursement.<br><br>3) Person unwilling to pay retail, Prescription not filled. |
| Person is at the pharmacy and has an acknowledgement or confirmation letter with an enrollee number and states that they are enrolled. | 1) E1 transaction initiated to determine eligibility or Pharmacist attempts to process Claim online; this is done by the Pharmacist.<br><br>(a) Eligibility validated; Pharmacist processes Prescription online<br><br>(b) Eligibility not validated or Pharmacist unable to access E1, move to step 2 | Pharmacist contacts the Pharmacy Help Desk using the contact information provided in Section II of this PM.<br><br>(a) Pharmacy Help Desk validates eligibility and Claim is processed<br><br>(b) Unable to validate eligibility, move to step 3 | Pharmacy Help Desk directs pharmacy to refer Member to applicable call center number located on Member ID card. | 1) Call center confirms eligibility; Member eligibility entered real-time into system; Pharmacist fills Prescription.<br><br>2) Unable to confirm eligibility, eligibility pending, eligibility has been denied, or a disenrollment was processed; person pays retail for Drug Product; fourteen (14) day window to allow for online processing at pharmacy when eligibility issue resolved or person to submit a paper Claim for reimbursement.<br><br>3) Person unwilling to pay retail, Prescription not filled. |

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



# IV. Processing claims



The information contained in this document is proprietary and confidential to OptumRx.

**OPTUMRx®**

# A. General process

The following describes the Administrator processes and procedures for processing Claims.

## Complete claims

Administrator requires the submission of a Clean Claim, as described in pharmacy contract Section: *Recitals/Defined Terms*. A Member's level of coverage under his or her Benefit Plan may vary for different services, it is particularly important to correctly code, according to the National Council for Prescription Drug Programs (NCPDP) standards, in order to submit pharmacy Claims for proper payment and application of Cost-Sharing Amounts, COB and other related pharmacy services.

Pharmacies should use best efforts to submit complete and accurate Claims in the POS System, but must reverse and resubmit Claims electronically within thirty (30) days of the original submission.

**Please Note**:
Federal programs we support:

- Federal regulations prohibit us from paying Claims for Drug Products written by Prescribers which have been excluded from federal program participation as evidenced by listing of the Prescriber within the Office of Inspector General's (OIG) — U.S. Department of Health and Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE) or General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS) listings.

- These OIG or GSA lists are checked monthly and Claims for Drug Products by excluded Prescriber will be rejected. The Claim will reject with the NCPDP Rejection Code 71 — "MD NOT COVERED — SANCTIONED PRESCRIBER".

- Claims may only be paid for Prescriptions properly prescribed in accordance with Federal and State prescribing laws and regulations. Please ensure that Network Pharmacy Providers maintain up-to-date knowledge of Federal and State prescribing rules and that pharmacy will not submit a Claim for a Prescription not fully compliant with applicable Federal and State prescribing laws and regulations.

## Federal regulations for schedule II drugs

Pursuant to Federal regulations in Title 21 of the CFR § 1306.12(a), Schedule II Drug Products may not be refilled. A separate Prescription is required if a Prescribing Physician wishes to authorize continuation of a patient's use of a Schedule II Drug Products beyond the amount specified on the first Prescription. The regulations at 21 CFR § 1306.13(b) allow for a Prescription for a Schedule II Drug Product written for a patient in a LTC facility or for a patient with a medical diagnosis documenting a terminal illness to be filled in partial quantities to include individual dosage units. Under this provision, a Schedule II Drug Products may be partially filled as long as the total quantity dispensed does not exceed the total quantity prescribed. The regulations at 21 CFR §1306.13(a) also permit the partial filling of a Prescription for a Schedule II Drug Products if the Pharmacist is unable to supply the full quantity prescribed. The remaining portion of the Prescription may be filled within seventy-two (72) hours of the first partial filling; however, if the remaining portion is not or cannot be filled within the seventy-two (72) hour period, the Pharmacist may not dispense any further quantity without a new Prescription. According to 21 CFR § 1306.11, except in emergency situations or when dispensed directly by a Prescribing Physician other than a Pharmacist to the ultimate user, Schedule II Prescription Drug Products may not be dispensed without a Prescribing Physicians written Prescription. In the case of an emergency situation, a Pharmacist may dispense Schedule II Drug Products upon receiving an oral authorization

**OptumRx Provider Manual:** 11th edition

The information contained in this document is proprietary and confidential to OptumRx.

28

Contents

Back

Next

Previous

Exit



from a Prescriber, provided that, among other things, the Prescription is immediately reduced to writing by the Pharmacists and contains all information required in 21 CFR §1306.5, except for the signature of the Prescribing Physician.

## Online processing window to submit electronic claims

Network Pharmacy Providers are encouraged to submit all Claims at time of dispensing of the Covered Prescription Service or within thirty (30) days.

**Commercial Claims:**
- Thirty (30) days or such longer period allowed by the Benefit Plan or as required by law or Government Authority. If a Claim is not processed in accordance with the Medicaid or Medicare Part D Addendum Amendment, Exhibit or Schedule, such Claim is considered a commercial Claim.

**Medicare Part D Claims:**
- Ninety (90) days or such longer period as required by law or Government Authority

**Medicaid Claims:**
- Thirty (30) days or such longer period allowed by the Benefit Plan or as required by law or Government Authority

**Please Note**:
- Administrator is unable to extend these time frames.
- Pharmacies that need to process Claim(s) outside the Online Processing Window time frame for submission of Claim(s) via the POS System will be required to submit a Universal Claim Form (UCF) and an explanation for the late submission.
- Submission of the UCF is not a guarantee Claim(s) will be paid.
- Payment is determined on a case-per-case basis upon review of explanation of late submission and Client or Benefit Plan approvals.

 In the event a Claim or Transaction rejects at POS, reasonable attempts must be made to retransmit the Claim. In the event the retransmission fails, Network Pharmacy Provider may call the applicable Help Desk contact number for assistance or alternative arrangements to submit the Claim.

Please mail completed UCF and explanation for late submission request to:

**OptumRx**
P.O. Box 29044
Hot Springs, AR 71903

**Catamaran**
1600 McConnor Parkway
Schaumburg, IL
60173-6801

## National drug code (NDC) number

Network Pharmacy Providers should always submit the eleven (11) or twelve (12) digit NDC number of the actual package size of the Drug Product dispensed in accordance with the applicable payer sheets. Only the NDC of the actual Drug Product dispensed shall be submitted on the Claim transaction. Use of a similar NDC or NDC of a bottle size not dispensed is not permissible.

 Do not submit claims for Covered Prescriptions Services using an NDC for a repackaged Drug Product by a repackager. Claims submitted using the repackager's NDC are subject to rejection and/or review and possible reversal.

**OptumRx Provider Manual:** 11th edition                                    29

The information contained in this document is proprietary and confidential to OptumRx.



## National provider identification (NPI) number

In compliance with Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the NPI is the required Network Pharmacy Provider and Prescriber ID. The NPI is a unique ten (10) digit identifier assigned to health care providers to use when submitting a HIPAA standard transaction.

Pharmacy ID: Administrator only accepts NPI as the pharmacy identifier for Claims. Any Claims transmitted with a NCPDP or other ID number will be rejected. Although NPI numbers are required for Claims processing, Network Pharmacy Providers are required to maintain a NCPDP ID and regularly update their information with NCPDP.

Prescriber ID: The NPI of the Prescriber is required to be submitted for all Claims. Claims may be rejected without the Prescriber ID; therefore, Network Pharmacy Providers should transmit the Prescriber's NPI whenever it is available. If the Network Pharmacy Providers does not have the Prescriber's NPI on file, the Network Pharmacy Providers should make a reasonable attempt to obtain the NPI number. A Clean Claim requires the submission of the correct Prescriber's ID on all Claims.

In the event that a Claim rejects because the NPI is rejected via the POS System, Network Pharmacy Providers must confirm that the Prescriber NPI is active and correct prior to resubmitting the Claim again via the POS System. Network Pharmacy Providers are expected to resolve NPI issues within 24 hours of initially submitting the Claim to Administrator.

To resolve NPI issues, Network Pharmacy Providers should verify with the Prescriber of the Prescription or check the NPI registry at https://nppes.cms.hhs.gov/NPPESRegistry/NPIRegistryHome.do

 It is up to each Network Pharmacy Providers to ensure that the Prescriber is authorized under applicable law to prescribe the Drug Product prior to submitting the Claim to Administrator. It is not the responsibility of Administrator via the POS System to validate that the Prescriber is authorized under applicable law to write Prescriptions for any particular Drug Product. Claims submitted for Prescriptions written by unauthorized Prescriber are not Clean Claims and may be reversed upon audit by Administrator or a Government Authority in accordance with law.

 In order to avoid Claims rejections, please ensure you carefully enter the correct Prescriber DEA and NPI numbers. Additionally, it is critical that you enter the correct Prescriber Drug Enforcement Administration (DEA) and NPI numbers because Administrator sends correspondence to the Prescriber based on pharmacy Claims. Providing incorrect Prescriber's information can lead to privacy incidents and endanger Member safety.

Identification of the Prescriber requires a National Provider Identifier (NPI). For all Claims, including controlled substance Prescriptions, Network Pharmacy Provider must submit the Prescriber's NPI. If the Prescriber does not have an NPI or Network Pharmacy Provider cannot obtain the Prescriber's NPI after making reasonable efforts to do so, an alternative identifier may be submitted in certain circumstances, as permitted by state and federal guidelines. For example, with respect to commercial Claims, if the Network Pharmacy Provider submits a Submission Clarification Code (SCC) value to temporarily override a rejection for a non-Type 1 NPI Prescriber ID, it is the Network Pharmacy Provider's responsibility to resubmit the Claim when the Prescriber's Type 1 NPI is found. With respect to Medicare Part D Claims, the Network Pharmacy Provider must submit the Prescriber's valid Type 1 NPI. If the Prescriber does not have a Type 1 NPI, or Provider cannot obtain the Prescriber's NPI after making reasonable efforts to do so, Network Pharmacy Provider can resubmit the Claim with the appropriate SCC to override the reject. In these instances, Network Pharmacy Provider is responsible for obtaining the Prescriber's valid Type 1 NPI and resubmitting the Claim with the updated NPI. Additionally, Network Pharmacy Provider must maintain the Prescriber's DEA number on the original hard copy Prescription for all controlled substances in accordance with state and federal laws.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



Contents

Back

Next

Previous

Exit

## Taxonomy

Individuals prescribing must have prescriptive authority (i.e. the Drug Products being dispensed must be within the Prescriber's scope of practice and they must possess the legal ability to prescribe the Drug Product). To determine prescriptive authority one component of the review should include the Prescriber has a valid taxonomy (i.e. description of the individual's type/class/specialization, such as a nurse practitioner or family medicine physician) appropriately designates prescriptive authority for the Drug Product dispensed. While the Network Pharmacy Provider should maintain records and complete internal validations, Administrator may also review the Claim for potential concerns for prescriptive authority based on taxonomy. Administrator may determine the Prescriber NPI has a taxonomy which does not have prescriptive authority and the Claim will be rejected with the following NCPDP reject code:

| Reject Code | NCPDP Description |
|---|---|
| 56 | Non-matched prescriber ID |

**Catamaran Only**

If the Network Pharmacy Provider believes the Prescriber is valid and has the appropriate prescriptive authority, the Network Pharmacy Provider may override the rejection by submitting Submission Clarification Code 42 (i.e. Prescriber ID submitted is valid and prescribing requirements have been validated). The Pharmacy should then alert the Prescriber if the taxonomy as documented in NPPES https://nppes.cms.hhs.gov/ is not accurate and should be updated to prevent future rejections.

## Required claim information

For each Claim for a Covered Prescription Service filled and dispensed by a Network Pharmacy Provider for a Member, all related Network Pharmacy Providers are required to transmit the following information to Administrator:

• NCPDP D.0 format billing transaction.

• The payer/billing specification sheet which details all of the requirements for submitting a Claim using the NCPDP D.0 format is referred to as the payer sheet.

Several fields are marked as situational and they will require data as needed under the defined situation in the comment section. Claims submitted that are missing data in mandatory or required fields, or where data is required under situational conditions, will be rejected and will not be a Clean Claim.

With the NCPDP D.0 format change being able to handle the exact metric decimal quantity correctly, you will no longer need to adjust the quantity by rounding prior to submitting Claims. All Claims submitted in D.0 format **MUST** use the PCN of 9999 or 8888 — refer to ID card and a submitted group.

 We have not provided specifications for the American National Standards Institute (ANSI) 837 format, as we believe that the NCPDP D.0 is the correct format to use for Network Pharmacy Provider dispensed non-Drug Product items. Other non-Prescription products and pharmacy-related supply items should also be billed using the NCPDP D.0 format.

The information contained in this document is proprietary and confidential to OptumRx.



## Patient residence code (PRC) and pharmacy service type (PST) requirements

Below is a table of the PRC that Administrator will accept based on the patient residence applicable to each circumstance:

| Patient residence | Patient residence code |
|---|---|
| Not Specified | • PRC of 00 |
| Home | • PRC of 01<br>— For home and retail |
| Home Infusion (HI) | • PRC of 01 and place of service (POS System) of 12 |
| Nursing Facility/LTC | • PRC of 03<br>— Submission clarification code (SCC) required if for short-cycle dispensing |
| Assisted Living Facility | • PRC of 04 |
| Group Home | • PRC of 06 |
| Intermediate Care Facility/Mentally Retarded | • PRC of 09 |
| Hospice | • PRC of 11 |

Below is a table of the PST that Administrator will accept based on the pharmacy type applicable to each circumstance:

| Pharmacy | Pharmacy service type code |
|---|---|
| Community/Retail | • PST of 01 |
| Compounding | • PST of 02 |
| HI | • PST of 03 |
| Institutional | • PST of 04 |
| LTC | • PST of 05 |
| Mail Order | • PST of 06 |
| Managed Care Organization | • PST of 07 |
| Specialty Care | • PST of 08 |
| Other | • PST of 99 |

The pharmacy is required to use the appropriate PRC and PST code for each Claim submitted via the POS System Claim in accordance with NCPDP standards and CMS requirements. Failure to submit the correct PRC or PST code on a Claim (i.e. not in accordance with CMS requirements and NCPDP standards) may result in audit, recoupment of Claim or termination of Agreement.

**Please Note:**
Claims submitted without an appropriate PRC or PST code may be rejected with U7, 4X, 4Y or 4Z.

## Prescription origin code claim submission

Network Pharmacy Providers must correctly submit the Prescription Origin Code in conformance with the NCPDP and Administrator requirements.

Please submit one of the following data elements within Prescription Origin Code (419-DJ):

1 = Written          2 = Telephone          3 = Electronic          4 = Facsimile (Fax)

Claims submitted for a Prescription missing one (1) of these values will reject with the following NCPDP Rejection Code 33 — "RX ORIGIN CODE CANNOT BE "0" ON NEW CLM".

**OptumRx Provider Manual:** 11th edition                                                                 32

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

![OPTUMRx®]

If rejection occurs, please resubmit the Claim with the appropriate value.

 To reduce processing errors, please confirm the information on Member's ID card prior to submitting Claims via the POS System.

## Pharmacy processing information and notices

As a reminder, all Claims, including Medicare Part D must be submitted using the Bank Identification Number (BIN), Processor Control Number (PCN) and Submitted Group (Group) that appears on the Member's ID card.

## Dispense as written (DAW) codes

Administrator supports the NCPDP standard DAW codes. To ensure accurate reimbursement, always include the correct DAW code when you submit a Claim.

Claims submitted to Administrator with DAW codes of three through six (3 thru 6) or eight through nine (8 thru 9) will be adjudicated similarly to a DAW 0. If necessary, contact your software vendor for needed alterations to your pharmacy system.

**DAW 0 — NO DISPENSE AS WRITTEN (substitution allowed) (or no product selection indicated)**
- Use the DAW 0 code when dispensing a Generic Drug; that is, when no party (i.e., neither Prescribing Physician, nor Pharmacist, nor Member) requests the Brand Name Drug of a multi-source Drug Product.
- Use the DAW 0 code when dispensing a multi-source Generic Drug, even if the Prescribing Physician indicates the DAW code for the Generic Drug and does not specify a manufacturer.
- Use the DAW 0 code when dispensing single-source Brand Name Drugs (e.g., Crestor®), because Generic Drug substitution is not possible.

**DAW 1 — PHYSICIAN writes DISPENSE AS WRITTEN**
- Use when the Prescribing Physician specifies the Brand Name Drug on the hard copy Prescription or in the orally communicated instructions.

**DAW 2 — PATIENT REQUESTED**
- Use this code when the Member requests the Brand Name Drug even though the original Prescription did not indicate "DISPENSE AS WRITTEN".

**DAW 3 — PHARMACIST SELECTED BRAND**

**DAW 4 — GENERIC NOT IN STOCK**

**DAW 5 — BRAND DISPENSED, PRICED AS GENERIC**
- Use when dispensing a Brand Name Drug as a Generic Drug.
- Claims submitted with DAW 5 will be reimbursed at the Generic Drug price.

**DAW 6 — OVERRIDE**

**DAW 7 — SUBSTITUTION NOT ALLOWED; BRAND MANDATED BY LAW**

**DAW 8 — GENERIC NOT AVAILABLE**

**DAW 9 — OTHER**

The information contained in this document is proprietary and confidential to OptumRx.

Contents
Back
Next
Previous
Exit



 Most Members have a choice between a Brand Name Drug and Generic Drugs. However, in some programs the Member will pay the difference between the cost of the Brand Name Drug and the available Generic Drug. Accordingly, correct DAW submissions indicate if a penalty is applicable.

### Claims that require a diagnosis

For Claims that requires a dx submission you will receive a prompt in the POS System requiring you to verify diagnosis information. This requirement is to make sure the diagnosis matches the FDA-approved use or a use supported by the current published evidence. Here's how to verify diagnosis information:

1. Check for a diagnosis on the Prescription or contact the Prescriber if no diagnosis is listed.

   a. We have notified Prescribers of this diagnosis match requirement.

2. Then verify all diagnosis information submitted via the POS System and document verification in your system.

   a. This information is subject to audit.

3. Enter the ICD-10 code by including the clinical segment (NCPDP segment 13) on the submitted Claim.

   a. If necessary, please contact your software vendor to make sure the fields indicated are transmitted on the Claims, then populate the fields within this segment as follows:

| Field | Field name | OptumRx values supported |
|-------|-----------|--------------------------|
| 111-AM | Segment identification | 13= clinical segment |
| 491-VE | Diagnosis code count | Required when diagnosis code is used |
| 492-WE | Diagnosis code qualifier | Required when diagnosis used; 01=ICD10 |
| 424-DO | Diagnosis code | Required when diagnosis is needed for designated Drug Product coverage |



1. If a diagnosis is missing on the submitted Claim, you will receive the response message: NCPDP reject code 39 — Missing Invalid Diagnosis code.

2. If a valid diagnosis is not available, please ask the Prescriber and/or Member to request prior authorization per their usual process.

3. We will approve emergency supplies of these Drug Products according to the following rules when Drug Product therapy needs to begin immediately and prior authorization or diagnosis information is not available.

   a. Issue up to a 30 day supply or less

   b. Only fill one Prescription per generic product identifier for diagnosis overrides

   c. When submitting an emergency supply, please submit the following:

      i. "Prior Authorization Type code" (Field 461-EU) = '8'

      ii. "Prior Authorization Number Submitted" (Field 462-EV) = 'DX'

      iii. "Day Supply" in the Claim segment of the billing transaction (Field 405-D5) = 'N' ; N ≤ 30

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



## Subrogation and coordination of benefits (COB)

Benefit Plans are subject to subrogation and COB rules:

1. Subrogation — To the extent permitted under applicable law and the applicable Benefit Plan, we reserve the right to recover benefits paid for a Member's Covered Prescription Services when a third (3rd) party causes the Member's injury or illness.

2. COB — is administered according to the Member's Benefit Plan and in accordance with applicable statutes and regulations. Administrator is able to process secondary Claims electronically.

 It is prudent for the Network Pharmacy Provider to verify with Members to ensure they do not have alternative primary or secondary insurers. Please be sure to refer to the online transaction response, when applicable, to facilitate COB processing.

## Retroactive eligibility changes

Eligibility under a Benefit Plan may change retroactively if:

• Benefit Plan Sponsor or Administrator receives information that an individual is no longer a Member;

• Member's policy/benefit contract has been terminated;

• Member decides not to purchase continuation coverage;

• Eligibility information received by Administrator is later updated; or

• As determined by CMS, with respect to Medicaid, MA-PD or PDP.

If a Network Pharmacy Provider has submitted Claim (s) that are affected by a retroactive eligibility change, a Claim adjustment may be necessary.

## Payer sheets

The Administrator D.0 Payer sheets Related to Medicare Part D, Commercial and Medicaid are available on the health care professional's portal via the following:

https://optumrx.com/RxsolHcpWeb/cmsContent.do?pageUrl=/HCP/HealthcareProviderTools/FormsAndDocuments

 Catamaran payer sheets are available on Catamaran's Pharmacy Resources web-portal: https://www.catamaranrx.com/Pharmacies (access to the portal will require proper credentials).

## B. Formulary

In some programs, Members have a choice between brand and generic Drug Products, however the Member pays the difference between the cost of the brand and the available generic drug. Formularies vary by Benefit Plan and change regularly; we suggest the use of the Benefit Plan's website or any of the commercially available tools to facilitate formulary management when speaking with Prescribers and Members.

OptumRx Provider Manual: 11th edition                                                                                    35

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



# C. Submitting compounded drug claims

Administrator may require Network Pharmacy Providers to complete additional credentialing to be allowed to process Claims for Compounded Drugs. Administrator may solicit a third party vendor, such as United Compounding Management LLC, to assist in the credentialing process. Network Pharmacy Providers will be required to meet all of the credentialing standards established by Administrator and/or the third party vendor to include, but not limited to: PCAB accreditation, continuous quality improvement process inclusive of validation testing for stability and sterility, an ethics management compliance review to include business operations, compliance with Anti-Kickback and Stark law, state/federal pharmacy law, defined allowable sales and marketing conduct, a defined compounding code of conduct and provider manual, and an onsite credentialing review. Network Pharmacy Providers must maintain compliance with credentialing requirements and standards of practice set forth by Administrator or the third party vendor. Failure to maintain compliance with the requirements and standards may result in administrative action up to and including the termination of the Agreement.

**Compounded drug claim guidelines**:

- Network Pharmacy Provider shall not engage in practices deemed as price rolling. Price rolling is defined as the practice of submitting Claims such that the Network Pharmacy Provider obtains the highest reimbursement possible by circumventing the standard Prior Authorization (PA) process. For example, the Network Pharmacy Provider submits a Compounded Drug Claim and receives a rejection, the Network Pharmacy Provider shall proceed with obtaining a PA. The acts of resubmitting a Claim multiple times with the same quantity and different U&C until a paid Claim is received or upon multiple submissions the quantity is changed to receive a paid Claim, shall be deemed as price rolling.

- During the course of submission of a Compounded Drug Claim, Network Pharmacy Provider may not attempt to obtain higher reimbursement than what was originally submitted as the Network Pharmacy Provider's AWP cost of the ingredients and the U&C. Submission should be for the correct prescribed amount with corresponding accurate quantities and days' supply calculations. In the event a Network Pharmacy Provider receives a paid Claim, it should not attempt to reverse the Claim and obtain higher reimbursements by replacing ingredients (unless Prescriber authorization or new Prescription with different ingredient(s) has been obtained), increasing ingredient costs or dispensing fees or increasing quantities and days' supply calculations.

- Network Pharmacy Provider shall not attempt to circumvent the PA process by either (i) altering the days supply and maintaining the same quantity or (ii) reducing the quantity and the day supply to receive a paid Claim (i.e. such practices are deemed as fee-splitting and is not permitted). For the latter, reducing the quantity of the Prescription and the day supply is permitted if such such change does not cause the Member to incur an increased copayment amount over the life of the Prescription.

- Network Pharmacy Provider shall not submit a Compounded Drug Claim that is an equivalent alternative to a commercially available Drug Product.

**Please Note**:
Reconstituted preparations (e.g. powdered antibiotics mixed with water prior to dispensing) are not considered Compounded Drug.

- Network Pharmacy Provider shall not submit a Claim for a Compounded Drug for a single NDC pre-made compound or compound kit. These Drug Products should not be submitted with a compound code.

The information contained in this document is proprietary and confidential to OptumRx.

Contents
Back
Next
Previous
Exit

All Claims for Compounded Drugs must be submitted via the POS System using the compounding code indicator of "2" in field NCPDPD.0 406-D6 with each ingredient cost submitted by the particular quantity of the NDC and with the applicable Level of Effort (LOE) code in field 474-8E of the NCPDP D.0 format describing the amount of time/work required to produce the Compounded Drug.

 Compounded Drug Claims may be subject to quantity limits, dollar thresholds or Prior Authorization (PA) restrictions as defined in the applicable Benefit Plan or Plan Specifications. In addition, Administrator may require Network Pharmacy Providers to complete additional credentialing to be allowed to process Compounded Drug Claims. Administer may contract with a third-party vendor, such as United Compounding Management LLC, to assist in the Compounded Drug credentialing process. Network Pharmacy Provider will be required to meet all of the credentialing standards established by Administrator and/or the third- party vendor to include, but not limited to the requirements set forth in Section 'Pharmacy network participation requirements' in this PM. When required by the Client or Benefit Plan Sponsor, Network Pharmacy Providers must maintain compliance with compound credentialing requirements and standards of practice set forth by Administrator or the third-party vendor. Failure to maintain compliance with the requirements and standards may result in administrative action up to and including the termination of the Agreement.

The Network Pharmacy Provider is responsible for Compounded Drugs with approved ingredients only. Ingredients need to be within accepted standards strength, quantity and purity. In addition, it must have the appropriate labeling, as well as packaging in accordance with good compounding practices, official standards and scientific information.

All federal legend Drug Products and raw or bulk chemicals submitted in the Compounded Drug Claim fields must be:

- Approved by the Food and Drug Administration (FDA) for safety and effectiveness;

- Purchased from a FDA-registered wholesaler with distribution locations within the United States and point of origin from a FDA-registered manufacturer facility;

- Available only by Prescription;

- Used and sold in the United States; and

- Used for a medically accepted indication to treat a covered condition, illness or injury.

### Raw or bulk chemical powders

Many Benefit Plan Sponsors exclude raw or bulk chemicals from their Benefit Plans, including Medicare Part D Benefit Plan. Do not substitute raw or bulk chemical powders in Compounded Drug Claims for manufactured Drug Products when not covered by the Benefit Plan. Always submit the NDC of the Drug Product or raw or bulk chemical component actually dispensed in the Compounded Drug.

### Submitting multi-ingredient compounded Prescriptions under version D.0

- Select to all BIN numbers

- Single-ingredient compound billing will not be accepted as a Compounded Drug (submit a compounding code indicator of "1" in NCPDP D.0 field 406-D6)

OptumRx Provider Manual: 11th edition    37

The information contained in this document is proprietary and confidential to OptumRx.

- Each individual ingredient should be represented by the NDC of the product(s) used and dispensed, including:

  — The total quantity of each specific ingredient

  — The cost of each individual ingredient with basis of cost determination

  — Up to twenty-five (25) ingredients may be entered for each Compounded Drug Claim

- Appropriate fields in the compound segment (see applicable payer sheet for additional information) must be completed.

- Submit the NDC number in the Claim segment as "0" (zero) and the Product/Service Identification qualifier should be submitted as "00" (two zero's).

  — Use the correct NCPDP compound segment to identify each individual ingredient.

- Submit a compound code of 2 (two) in field 406-D6 in accordance with National Council for Prescription Drug Programs (NCPDP) standards as defined in the Administrator payer sheets for Version D.0.

- Submit the quantity dispensed as the total metric quantity of the finished Compounded Drug, including:

  — Sum of all individual ingredient costs as the Network Pharmacy Provider's "Ingredient Cost Submitted" for the Compounded Drug Claim

  — Submit the Network Pharmacy Provider's U&C for the Compounded Drug Claim

- The final cost (calculated total cost/ingredient cost submitted) should be no greater than the combined AWP cost of all ingredients and the Usual and Customary (U&C).

- Compounded Drugs that are Covered Prescription Services shall be reimbursed in accordance with a Network Pharmacy Provider 's submitted Claim information subject to any contractual, Benefit Plan or Plan Specifications. The submitted Claim information that may be included in the determination of the Prescription Drug Compensation may include, but are not limited to: the final calculated allowable ingredient cost based on the combined price of the individual Compounded Drug ingredients and quantities in the Compounded Drug, subject to any contractual, Benefit Plan or Plan Specification provisions, in addition to the total ingredient cost or U&C pricing submitted by the Network Pharmacy Provider.

## Compliance

Members should be charged the applicable Cost Sharing Amount indicated only. The following actions, including but not limited to, may result in termination from the network:

- Waiving the applicable Member Cost Sharing Amount

- Charging the Member more in Cost Sharing Amount than provided by the POS System, including charging for non-covered ingredients

- Refusing to dispense the Compounded Drug, because of dispute over the reimbursement

- Claim splitting or price rolling by submitting Compounded Drug Claims multiple times by changing the day supply/quantity/U&C in order to circumvent PAs, or quantity limits, or dollar amount thresholds, or Benefit Plan limits, to obtain multiple dispensing fees or higher reimbursement

OptumRx Provider Manual: 11th edition                                                                                              38

The information contained in this document is proprietary and confidential to OptumRx.

## Compounded drug claims general exclusions

- Reconstitution of an oral antibiotic or similar product
- Raw bulk chemicals from a non-FDA registered manufacturer facility and wholesaler with locations within the US.
- Charges for ancillary supplies, flavoring/sweeteners, equipment depreciation and/or labor are not eligible for reimbursement
- Ingredients with missing or invalid NDC numbers are not eligible for reimbursement
- Mixing of water or saline solution to another Federal Legend Drug

## Re-packaged/Re-imported ingredients

Compounded Drug Claims are subject to audit and to full recovery, including but not limited, for the following reasons:

1. Include as a component of the Compounded Drug a NDC for a repackaged Drug Product, or

2. Drug Product imported or reimported into the United States, including bulk powders utilized in Compounded Drugs where part of the final Compounded Drug dispensed is composed of an imported component

## Compensation for compounded drug claims

When covered by the Benefit Plan Sponsor, Compounded Drugs containing raw ingredients packaged as bulk chemicals where an equivalent federal-legend Drug Product is available in the marketplace, the maximum reimbursement for the bulk chemical powders will be the lesser of the Network Pharmacy Provider's Prescription Drug Compensation for each approved ingredient for the NDC utilized or that of the Network Pharmacy Provider's Prescription Drug Contracted Rate for each approved ingredient based on the pricing of the equivalent federal-legend Drug Product. All raw or bulk chemicals must be from FDA-registered chemical manufacturer facilities and wholesalers with distribution locations in the United States.

 Although required at this time, submitting the LOE code may not result in any change in reimbursement on the Compounded Drug Claim.

**The following apply to legacy OptumRx BINS:**

| 610084 | 610094 | 610097 | 610127 | 610279 | 610494 | 610613 |
|--------|--------|--------|--------|--------|--------|--------|

## Commercial claims

Prescription Drug Compensation for Compounded Drugs dispensed to Members that are Covered Prescription Services will be at the pharmacy's contracted Prescription Drug Contracted rate for each approved ingredient submitted for the applicable network associated with the Claim submission, plus a Compounded Drug dispensing fee not less than $7.50. This fee is subject to change by Administrator and may differ by Benefit Plan.

## Medicaid claims

Unless otherwise specified below, Prescription Drug Compensation for Compounded Drugs dispensed to Medicaid Members that are Medicaid Covered Prescription Services will be at the Network Pharmacy Provider's agreed upon Prescription Drug Contracted rate for each approved ingredient submitted for the applicable network associated with the Claim submission, plus a Compounded Drug dispensing fee not be less than $20.23. This dispensing fee is subject to change by Administrator and may differ by Benefit Plan.

OptumRx Provider Manual: 11th edition                                                                39

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



**Medicare Part D claims**

The Prescription Drug Compensation for Compounded Drugs dispensed to Medicare Part D Members that are Medicare Part D Covered Prescription Services will be at the Network Pharmacy Provider's agreed upon Prescription Drug Contracted rate for each approved ingredient submitted for the applicable network associated with the Claim submission, plus a Compounded Drug dispensing fee not less than $19.72. This fee is subject to change by Administrator.

**Processing a compounded drug claims with non-covered ingredients**

In the event a non-covered ingredient is submitted in the Compounded Drug Claim, the Claim will reject and the POS System response will inform the Network Pharmacy Provider which ingredients were rejected and the Compounded Drug Claim may be resubmitted with a Submission Clarification code of "08" (i.e. zero-eight). The resubmitted Compounded Drug Claim will adjudicate and reimbursement will exclude the non-covered ingredients. Network Pharmacy Providers may not charge the Member more than the Cost Sharing Amount provided by the POS System, including for non-covered ingredients.

## D. Pharmacy payment

Administrator, acting on behalf of applicable Client or Benefit Plan Sponsor will process the Clean Claim for each Covered Prescription Service dispensed to applicable Members. Administrator will reimburse pharmacy for each Clean Claim no later than thirty (30) calendar days after Administrator's receipt of the Clean Claim, or a lesser time if required by applicable law or regulation, and contingent upon Client or Benefit Plan Sponsor funding.

### Processing and pricing; successful adjudication of a claim

The acceptance of a successfully adjudicated Claim constitutes (i) Network Pharmacy Provider's acknowledgment of its participation in the applicable network and (ii) Network Pharmacy Provider's acceptance of all corresponding terms and conditions, including the rates and reimbursements of Claims, for such network. In the event of a conflict between the PM, Agreement, addendum, Compensation Exhibit, fee schedule, online adjudicated price or any other pricing arrangement, the online adjudicated price via the POS System shall govern, unless an error in overpayment occurs.

Network Pharmacy Provider payments must be reconciled by Network Pharmacy Provider (e.g. if Network Pharmacy Provider receives a payment from Administrator with incorrect NPI, NCPDP number, name, address, Prescriptions processed by Network Pharmacy Provider or other key identifiers, Network Pharmacy Provider must report the discrepancy via telephone and in writing, such as electronic or otherwise), to Administrator within fourteen (14) days upon receipt.

Determination of payment accuracy will occur by Administrator within fourteen (14) days. In the event any payment has been sent to a Network Pharmacy Provider in error, Network Pharmacy Provider is subject to immediate offsets from future payments or is required to immediately reimburse Administrator via a bank-drawn check or electronic fund transfer as directed by Administrator. Knowledge or lack thereof, of overpayment provides no rights to the receiver (i.e. Network Pharmacy Provider), all payments must be returned immediately as described above and interest at the greater rate of 1.5% per month of the total balance or required by law. Knowledge by Network Pharmacy Provider of extended (greater than 30 days) overpayment may be subject to network termination, penalties, including, but not limited to court costs, collection agents, travel and attorney's fees as required to recover the funds.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

**OPTUMRx®**

## Payments

Administrator typically administers up to six (6) billing cycles per month. For Medicare Part D Claims or for any other state program that requires prompt payment, Administrator administers four (4) billing cycles per month or applicable state required payment schedule.

Network Pharmacy Provider shall not pursue payment for services or other additional fees from any other source. Network Pharmacy Provider agrees it is prohibited from contacting Administrator Clients and Members for disputed issues between Network Pharmacy Provider and Client or Administrator. Network Pharmacy Provider agrees it is prohibited from directing the Member or a Member's Claims to a plan or Client other than the Administrator plan presented by the Member. Violation of such prohibitions is considered a breach of Agreement and subsequently subject to penalties or sanctions as determined by Administrator.

Network Pharmacy Provider is subject to penalties or sanctions in the event it is determined by Administrator during communications between Network Pharmacy Provider and an existing Client or a potential Client: (i) Network Pharmacy Provider disclosed confidential information to a Client or a potential Client or (ii) disrupted an Administrator relationship with its existing Client or with a potential client. Penalties shall be invoked in amounts at a minimum of $5,000 per incident/per day; may be subject to additional actions taken by Administrator, including and up to termination from participation, as well as withdrawal and/or the holding of funds as deemed necessary by Administrator.

If Network Pharmacy Provider is affiliated with a third party contracting or purchasing group, the Network Pharmacy Provider is subject to all terms/conditions of the written Agreement between Administrator and the entity. Communication should also be directed through the third party contracting entity or purchasing group.

## Payment rules under medicare and medicaid programs

In accordance with requirements as set forth in 42 C.F.R §423.520(a)-§423.520(h) Network Pharmacy Provider Claims will be paid as follows:

**Clean claims**

- For Medicare Part D Plan Sponsor Clean Claims will be paid within fourteen (14) days of the date of receipt for electronic Claims and within thirty (30) days of receipt for paper Claims.

- For managed Medicaid, Clean Claims will be paid within thirty (30) days of the date of receipt for electronic Claims and within thirty (30) days of receipt for paper Claims, except where a state requires a shorter timeframe, in which case, state requirements prevail.

**Claims**

- If the Claim is determined not to be a Clean Claim, Administrator will notify the submitting Network Pharmacy Provider. This notification will specify all defects or improprieties in the Claim and will list all additional information necessary for the proper processing, as well as payment of the Claim, if applicable.

- Administrator will not provide notice of a new deficiency that could have been identified in the original Claim submission.

- Medicare Supplier Number. Administrator encourages Network Pharmacy Provider to obtain and maintain for each Network Pharmacy Provider location a Medicare Part B supplier number pursuant to 42 CFR § 424.57. Network

OptumRx Provider Manual: 11th edition                                        41

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



Pharmacy Provider agrees to inform Administrator of the Medicare Part B supplier number assigned to those Network Pharmacy Providers which have obtained such supplier numbers from CMS for record-keeping purposes and to identify those Network Pharmacy Providers as having Medicare Part B supplier numbers in the pharmacy network directories maintained by or on behalf of Clients.

Effective January 1, 2016 and to the extent required by 42 C.F.R. § 423.505(i)(3)(vii), Administrator will disclose all individual updated Drug Product prices to the applicable Network Pharmacy Provider in advance of the use of such prices for reimbursement of applicable Claims if the source for any Prescription Drug Product pricing standard is not publicly available.

## Payment of interest

A Claim submitted to Administrator for payment not paid within the established timeframe (i.e. fourteen (14) days for electronic Claims or thirty (30) days for paper Claims) will receive interest payments where required by law, except: (i) where a state requires a shorter timeframe, in which case, state requirements prevail or (ii) is contested by Administrator and determined to be a Clean Claim.

The rate of interest is calculated as the rate equal to the weighted average of interest on three (3) month marketable treasury securities determined for such period, increased by 0.1 percentage point for the period beginning on the day after the required payment date and ending on the date on which the payment is made.

Any interest amount associated with a Claim is included within the Claim cost as deemed appropriate for reporting-purposes by CMS or our Clients. As CMS determines, interest is not charged under exigent circumstances preventing the timely processing of Claims, including natural disasters, as well as other unique and unexpected events.

## Electronic remittance advice (ERA) 835 program enrollment requirements

Administrator Network Pharmacy Providers have the option to participate in the ERA 835 program. This service provides improved analysis, reporting, and a cost-effective alternative to the traditional "hard copy" or paper copy remittance advice.

To use the Administrator ERA program, you must meet the following requirements:

• Be a current Administrator Network Pharmacy Provider.
• Have the ability to receive and read the ERA 835 file. Check with your Information Technology support staff or pharmacy software provider to confirm that you have the ability to receive the encrypted Claims information via File Transfer Protocol (FTP).
   — CMS also offers free software to view and print the ERA 835 file for professional providers and suppliers. For more information on this software, Medicare Remit Easy Print (MREP).
   — Please access the CMS website at: http://cms.hhs.gov/
   — When converting from a paper remittance advice to an ERA, the paper remittance advice can be mailed to you upon your request. This can be done for up to thirty one (31) days once you are enrolled in the EFT payment process.
• Complete the Pharmacy ERA paper enrollment form containing your contact and banking information. Please allow four weeks for your enrollment to be processed. Claims received after your Pharmacy EFT enrollment has been processed will be paid electronically.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



- Complete the server information section on the enrollment form. To complete the server information you will need to provide your "PGP Key". This ensures the delivery of secure data. PGP (Pretty Good Privacy) Encryption is a computer program that provides cryptographic privacy and authentication. PGP and similar products follow the Open PGP standard for encrypting and decrypting data. You will need to get this information from your software vendor.

## ERA enrollment steps

**OptumRx**

Follow one of these steps to enroll in the ERA program:

- Click on the online link to complete the form online
  — https://optumrx.com/RxsolHcpWeb/cmsContent.do?pageUrl=/HCP/HealthcareProviderTools/PharmacyERA
  — This form will be used to set up the ERA 835 file transfer

OptumRx ERA Department
17900 Von Karman
(MS: CA016-0200)
Irvine, CA 92614

- Print, complete and return the enrollment form via fax or U.S. Mail to OptumRx.
- Telephone: **1-800-613-3591**

To Make Changes to or Cancel Your ERA information, please use one of the following contact methods:

- Print and complete the enrollment form
  — Be sure to circle *Change* or *Cancel* on the form.
  — Return the form via fax or U.S. Mail to OptumRx.

Once you are enrolled in the ERA program, you can call the Network Contracting Department at **1-800-613-3591** if you have questions about a late or missing ERA.

**Catamaran**

To enroll in Administrator ERA Program, for Catamaran payments, please go to www.catamaranrx.com/pharmacies (access to the portal will require proper credentials).

## Electronic funds transfer (EFT) program enrollment requirements

Administrator Network Pharmacy Providers have the option to participate in the electronic funds transfer (EFT) program. This service provides improved analysis, reporting, and a cost-effective alternative to the traditional "hard copy" process.

**OptumRx**

To use the Administrator EFT Program for OptumRx payments, you must meet the following requirements:

- Be a current Administrator Network Pharmacy Provider.
- Be a current recipient of the ERA 835.
- Complete the Pharmacy EFT enrollment form containing contract and banking information.
- Please allow four (4) weeks for your enrollment to be processed.
- Claims received after your EFT enrollment has been processed will be paid electronically.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



Contents

Back

Next

Previous

Exit

**EFT enrollment steps**

Follow one of these steps to enroll in the EFT program:

• Click on the online link to complete the form online
   — https://optumrx.com/RxsolHcpWeb/cmsContent.do?pageUrl=/HCP/HealthcareProviderTools/PharmacyEFT
   — This form will be used to set up the EFT file transfer.

OptumRx EFT Department
17900 Von Karman
(MS: CA016-0200)
Irvine, CA 92614

• Print, complete and return the enrollment form via fax or U.S. Mail to OptumRx.
• Telephone: **1-800-613-3591**

To Make Changes to or Cancel Your EFT information, please use one of the following contact methods:

• Print and complete the enrollment form

   — Be sure to circle Change or Cancel on the form.
   — Return the form via fax or U.S. Mail to OptumRx.

Once you are enrolled in the EFT program, you can call the Network Contracting Department at **1-800-613-3591** if you have questions about a late or missing EFT.



• Once you are enrolled in the Administrator EFT program, a paper remittance can be mailed for 31 days after your conversion, but you must request it.
• ERA 835s will be delivered to Network Pharmacy Provider or payee via Administrator external Client "Gateway".
   — File can either be sent via Secure FTP or they can be retrieved from the Gateway.
   — Files cannot be delivered in any other method (e.g., compact disk (CD), email, etc.).
• The link above also contains instructions to cancel or make changes once enrolled in the Administrator EFT Program.

**Catamaran**

To enroll in Administrator EFT Program for Catamaran payments, please go to www.catamaranrx.com/pharmacies (access to the portal will require proper credentials).

## E. Member/Insured appeals and grievances

Administrator has established mechanisms to ensure all Members and Prescribing Physicians have equal access to, and can fully participate in, the Appeals process. Either the Member or the Member's appointed representative and/or Prescribing Physician can initiate an appeal. Members should refer to the denial letter for information regarding their appeal and grievances.

Member complaints or grievances are a means of continually improving the quality of our services. Grievances requested as directed above will be handled in a timely manner.

The information contained in this document is proprietary and confidential to OptumRx.

# F. Utilization management

## Utilization management requirements for select drugs

Some Covered Prescription Services may have additional requirements or limits that help ensure safe and effective use. Requirements and limits may include:

**Prior authorization (PA)** Select Drug Products may have potential for inappropriate or unsafe use. Therefore, Benefit Plan Sponsor approval is required to ensure that the Drug Product will be used for indications for which it has been shown to be safe and effective. Drug Products subject to PA may require confirmation of diagnosis or submission of laboratory and other supporting information.

**Step therapy (ST)** Step therapy promotes the use of one or more alternatives which are safe and cost-effective prior to receiving approval for the requested Drug Product. The recommended alternatives are considered preferred or first-line Drug Products that are consistent with standard medical care and evidence-based literature. Once Members have tried the alternatives without success, the requested Drug Product requiring ST will be approved for coverage.

**Quantity limits (QL)** QL ensure safe Drug Product use by preventing excessive dosage amounts or extended periods of therapy without clinical justification. They limit the amount of Drug Product a Member can receive by identifying a maximum quantity that can be dispensed over a specific period of time or per Prescription. They may also be used to promote dose optimization which encourages Members to use the most appropriate strength based on their dosing regimen. Certain Drug Products may be approved for quantities above the limited amount, if medical necessity can be substantiated.

**PA review.** A Member, Member's appointed representative and/or a Prescribing Physician may submit a request to initiate the PA review process. Coverage determinations made through the PA review process will be based on Benefit Plan's approved criteria, clinical guidelines approved by the UnitedHealth Group National Pharmacy & Therapeutics Committee (NP &TC) or other professionally recognized standards of practice. If a Member's Drug Product has a PA, ST or QL restriction, the Member or his/her appointed representative should contact Administrator customer service number located on the back of the Member's ID card. In addition, the Prescribing Physician may contact our PA Department to start the prior authorization process by providing relevant, patient-specific clinical information to be reviewed by a licensed Pharmacist or medical director.

Prescribers can also submit a PA request via fax, mail, or online at:

https://optumrx.com/RxsolHcpWeb/cmsContent.do?pageUrl=/HCP/PAForms/ProviderPAForms

## Prior authorization (PA) process key steps

• The Member's Prescriber or Member's appointed representative can submit a PA request (see exceptions above).

• A pharmacy technician enters the information into our PA system and performs the initial request review.

• If the request falls outside the established guidelines, a Pharmacist reviews the request and contacts the Prescriber if additional information is required.



- If required by state law, the request will be reviewed by a medical director before issuing the final decision.

- Additionally, where required by law, the Prescriber is offered the opportunity for a peer-to-peer consultation prior to the issuance of an adverse medical necessity determination.

Once the request is approved or denied, our PA system will automatically generate a written correspondence to both the Member and Prescriber.

We comply with all State and Federal regulations for PA turnaround time. Our typical turnaround times are as follows:

- Non-urgent cases have a turnaround time of fifteen (15) days for commercial Benefit Plans, or seventy-two (72) hours for Medicare Benefit Plans from receipt of all information required to review the case.

- Urgent cases have a turnaround time of seventy-two (72) hours for commercial Benefit Plans, or twenty-four (24) hours for Medicare Benefit Plans from receipt of all information needed to review the case.

### Additional information

Our PA department is staffed with licensed pharmacists and pharmacy technicians. They also have access to a contracted physician reviewer when required. After PA requests are reviewed, determinations are rendered in accordance with State and Federal regulations, independent body accreditation standards, such as National Committee for Quality Assurance (NCQA), or Employee Retirement Income Security Act (ERISA), and the clinical guidelines developed by our National Pharmacy and Therapeutic (NP&T) guideline subcommittee. The Prescriber and Member or authorized representative will be notified of the final decision within the required time frame according to State and Federal regulations.

### Maximum dollar edits (Max)

Some Benefit Plans may elect to implement a high cost dollar limit (i.e. amounts vary by Benefit Plan). The ceiling amount for high cost dollar limits may vary by Benefit Plan. If the Claim rejects (reject code 78) for this reason, please contact the Pharmacy Help Desk to determine if the Member's Benefit Plan will allow for an override.

 Do not 'split' the Prescription into multiple Claims.

## G. Concurrent drug utilization review (cDUR)

In order to detect and address clinical quality and safety issues, certain Concurrent Drug Utilization Reviews (cDURs), or clinical edits, are applied at the time the Prescription is dispensed. Concurrent screenings are for such things as duplicate therapies, age or gender-related contraindications, overutilization or underutilization, drug-drug interactions, incorrect drug dosage or duration of drug therapy, drug-allergy contraindications, and clinical Abuse or misuse. System thresholds/criteria and accompanying pharmacy messaging are developed and set by Medi-Span® and are validated and implemented by Administrator. Certain clinical edits are set up as messages or rejects depending on the Clients' cDUR program setup. Dispensing Pharmacists should exercise their clinical knowledge and expertise in reviewing and overriding warning messages if deemed medically appropriate.

### Override codes for pharmacy

Certain Benefit Plans allows overrides for clinical edits. Administrator also utilizes NCPDP defined DUR/Pharmacy Payment Service (PPS) Coding (Conflict, Intervention and Outcomes Codes) and Submission Clarification Codes.

**OptumRx Provider Manual:** 11th edition                                    46

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



The following reject edits allow Network Pharmacy Providers to be able to review and override certain DUR rejections/interactions by identifying and entering the appropriate conflict, intervention and outcome codes for each component.

 The use of each submission clarification code for the purpose of overriding the rejection is based on benefit design. Therefore if the benefit does not allow Vacation override, for example, submission clarification code 03 (corresponding to vacation supply) will not override the rejection. Likewise, if the benefit does not cover lost Prescription, submission clarification code 04 (corresponding to lost Prescription) will not override the rejection.

| Edit name; reject code | Description of edits | Action; DUR/PPS coding and submission clarification codes |
|---|---|---|
| Drug-Drug Interaction (DDI); Drug Therapy Monitoring System (DTMS) Screening: Reject 88 | Checks Member's Prescription history to detect possible adverse interactions between submitted drug and others being taken by the Member. | Pharmacists review the patient profile to identify why the reject has occurred, consult with the prescriber, determine if the drug should be dispensed and if appropriate, override the rejection with the following DUR/PPS coding:<br><br>Drug Conflict Code —<br>• Reason for service code ("conflict code")<br>  = DD for drug-drug Interaction<br><br>DUR Intervention Code —<br>• Professional service code ("intervention code")<br>  = M0 for prescriber consulted<br>  = R0 for pharmacist consulted (commercial only) or<br>  = P0 for patient consulted (commercial only)<br><br>DUR Outcome Code —<br>• Result of service code ("outcome code")<br>  = 1G for filled, with prescriber approval<br>  = 1B for filled Prescription as is |

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

| Dosing Screening (DOSECHEK): Reject 88 | Compares dosage of submitted drug with the maximum recommended dosage for Member's age to detect possible conflict. | Pharmacists review the patient profile to identify why the reject has occurred, consult with the prescriber, determine if the drug should be dispensed and if appropriate, override the rejection with the following DUR/PPS coding:<br><br>Drug Conflict Code —<br>• Reason for service code ("conflict code")<br>  = HD for high dose alert<br><br>DUR Intervention Code —<br>• Professional service code ("intervention code")<br>  = M0 for prescriber consulted<br>  = R0 for pharmacist consulted (commercial only) or<br>  = P0 for patient consulted (commercial only)<br><br>DUR Outcome Code —<br>• Result of service code ("outcome code")<br>  = 1G for filled, with prescriber approval<br>  = 1B for filled Prescription as is |
| Too Soon: Reject 79 | Checks Member's Prescription history to detect possible duplicate Prescriptions. | Pharmacists review the patient profile to identify why the reject has occurred, consult with the prescriber, determine if the drug should be dispensed and if appropriate, override the rejection with the following submission clarification codes (420-DK)**:<br><br>• 03 Vacation supply — The pharmacist is indicating that the cardholder has requested a vacation supply of medicine.<br><br>• 04 Lost Prescription — The pharmacist is indicating that the cardholder has requested a replacement of medication that has been lost<br><br>• 05 Therapy change — The pharmacist is indicating that the physician has determined that a change in therapy was required: either that the medication was used faster than expected, or a different dosage form is needed, etc. |

## H. Retrospective drug utilization review (rDUR)/clinical program

The Retrospective Drug Utilization Review (rDUR)/Clinical Program use detailed data review and analysis to identify potential problems, implement appropriate interventions, and evaluate the impact of the interventions. Clinical programs can yield measurable results, including reduction in emergency room visits, unnecessary and inappropriate Drug Product use, and overall costs. The programs focus on pre-catastrophic populations with high-cost and high-impact conditions that have the greatest potential for improvement via Member and/or Prescriber interventions. Specific program objectives include optimizing the use of certain therapeutic agents to improve health outcomes, reducing the risk for Drug Product-related adverse events, and promoting the use of the most cost-effective Drug Products.

The information contained in this document is proprietary and confidential to OptumRx.

 Clinical program examples include, but are not limited to, the following:

## Drug-drug interaction alert program (DDIAP)

Some Drug Products can have harmful effects when used in conjunction with others. These potentially dangerous drug-drug interactions (DDIs) can negatively impact Members' health and increase both Prescription and medical plan costs. DDIAP helps to protect Members from potential Drug Product-related adverse events by notifying Prescribers when a clinically significant DDI has been identified. Claims are reviewed daily to detect clinically significant DDIs which are categorized as a combination of Drug Products that should always be avoided or a combination that should usually be avoided. When Members who filled Drug Products with potentially serious DDIs are identified, their Prescribers receive a faxed letter and report within twenty-four (24) to seventy-two (72) hours.

Each report provides details on the clinically significant DDIs found for Members under the specific Prescriber's care.

## Drug-age RxMonitor program

Certain Drug Products are not recommended in the elderly age sixty-five (65) years and older, as well as pediatric ages less than nineteen (19) years, because of potential side effects or lack of effectiveness. The Drug-age RxMonitor program can reduce the use of these potentially inappropriate Drug Products among elderly and pediatric Members while improving quality of care. Using Claims data, we identify Members that meet the program's age thresholds and have filled one or more high-risk Drug Products that should be avoided in that age group. High-risk Drug Products in the elderly are determined based on applicable Health Plan Employer Data and Information Set (HEDIS® criteria). Prescribers receive a fax or Mailing containing an introductory letter, a Prescriber-specific report of identified Members, information about Drug Product therapy management options and educational materials.

## Narcotic drug utilization review (DUR) program

While opioid analgesics, benzodiazepines, muscle relaxants, and acetaminophen (APAP)-containing Drug Products are an important part in managing pain and other medical conditions for many patients, these Drug Products are often associated with Abuse, diversion and inappropriate use. The Narcotic DUR program identifies Members that may benefit from having their Drug Product regimens re-evaluated by their Prescriber. This program improves the quality of patient care by reducing potentially inappropriate usage of opioids, benzodiazepines, muscle relaxants, and APAP-containing Drug Products. We retrospectively review and analyze Claims data to identify Members who meet at least one (1) criteria: overlapping use of different long-acting opioid Drug Products; multiple Prescribers prescribing opioids, benzodiazepines, or muscle relaxants; multiple Network Pharmacy Providers dispensing opioids, benzodiazepines, or muscle relaxants; high doses of opioids; chronic early refills of oxycodone-containing products; excessive days' supply of opioids; and total average daily APAP dose exceeding four (4) grams. Prescribers receive a fax or Mailing containing an introductory letter and a Prescriber-specific report of identified Members.

## Opioid overutilization drug utilization review (DUR) program

CMS requires all Medicare Part D Sponsors to implement a drug utilization management program to help prevent overutilization of prescribed opioid Drug Products. The Opioid Overutilization DUR program addresses potential overutilization of opioids in Prescription drug Benefit Plans through improved drug utilization controls and Member-level case management. The goal of this program is to identify and case-manage Members with excessive use of opioid Drug Products considered to be potentially unsafe, and to reduce FWA. Members identified as receiving a relatively high dose of opioid Drug Products for a long period of time and receiving these opioid Drug Products from multiple Prescribers and Network Pharmacy Providers will have a case manager assigned to conduct Prescribing Physician outreach to confirm if

**OptumRx Provider Manual:** 11th edition

49

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

the current dosage of opioids is medically necessary and safe for each Member. Based on the results of this retrospective review, a Member-level POS System edit may be implemented limiting the use of opioids for Member safety. Not all Members will have a POS System edit implemented. Members receiving an opioid restriction will be notified thirty (30) days in advance of the effective date of the restriction to provide time for a coverage determination to be processed.

## Polypharmacy program

The use of an excessive number of Drug Products to treat one or more medical conditions, also known as polypharmacy, can lead to serious health complications for Members, as well as increased pharmacy and medical costs. To lower the health risks associated with polypharmacy, we offer two actionable, Prescriber-based interventions designed to reduce polypharmacy issues. Our Polypharmacy Duplicate Therapy Program uses Claims data to identify Members taking two (2) or more duplicate Drug Products (i.e., Drug Products with duplicate therapeutic effects and intended to treat the same condition) while our Polypharmacy Drug-Disease Interaction Program uses pharmacy and/ or medical Claims data to identify Members taking Drug Products that may adversely interact with their existing conditions. Prescribers receive a fax or Mailing containing an introductory letter, a Prescriber-specific report of identified Members and information they can use to assess their patients' polypharmacy issues.

## Refill reminder and adherence program

Adherence is defined as taking a Drug Product as prescribed by a healthcare professional. As compared to non-adherent Members, adherent Members have a lower likelihood of hospitalization, emergency room visits and condition-specific healthcare costs. To promote adherence, the Refill Reminder and Adherence Program provides refill reminder interventions for non-adherent Members and engages their providers with the goal of increasing adherence to chronic Drug Products and decreasing healthcare costs. These programs use pharmacy and medical Claims data to identify Members that are non-adherent to any Drug Product within certain Drug Product classes. Examples of targeted Drug Product classes include, but are not limited to, the following: antidepressants, antiretroviral HIV/AIDS Drug Products, diabetes Drug Products, and statins. Members are reminded to refill their Drug Products via HIPAA-compliant, outbound calls from an automated message delivery system. Prescribers receive a Mailing containing an introductory letter and a Prescriber-specific report detailing Members who may be non-adherent to Drug Product(s) within the targeted Drug Product class(es).

## Generic strategy program (GSP)

The GSP is designed to promote the use of clinically appropriate lower-cost Generic Drugs. The program targets newly available and existing Generic Drugs in select therapeutic classes.

Examples of targeted Drug Product classes include, but are not limited to, the following: angiotensin receptor blockers (ARBs), bisphosphonates, nasal steroids, and proton pump inhibitors. Members and their Prescribers, identified through Claims data, receive letters regarding the availability of Generic Drugs, the safety and efficacy of Generic Drugs and cost savings associated with the use of Generic Drugs. In addition, Prescribers also receive a report of their identified patients who could benefit from switching from a Brand Name Drug to Generic Drug.

The information contained in this document is proprietary and confidential to OptumRx.



# I. Maximum allowable cost (MAC) pricing, review and appeals

To assure the MAC list accurately reflects market pricing and the availability of Generic Drugs, Administrator utilizes multiple sources to determine MAC pricing. The sources include de-identified market pricing benchmark data such as AWP and WAC, wholesaler information on market availability and pharmacy information from inquiries. A synthesis of these and other sources helps create a market based MAC price for Generic Drugs on the MAC list. These sources are also monitored and updated at least every seven (7) calendar days to timely help manage market pricing fluctuations on the MAC list. Administrator's MAC lists are also regularly reviewed and updated accordingly. Administrator reserves the right to update its MAC pricing methodology and to use alternative, reputable sources at its discretion. Upon written request, as well as to the extent required by law, Administrator will make available the current and applicable MAC price information to Network Pharmacy Provider. Such MAC price lists constitute confidential information.

To comply with applicable state laws, Administrator has implemented an appeals process to allow a participating network pharmacy to dispute applicable and particular MAC pricing of a Covered Prescription Service Drug Product (i.e. MAC Appeal). This process also includes a timely review and investigation to resolve MAC disputes. For a MAC Appeal, pharmacy must obtain, fully complete and submit the MAC Appeal form to Administrator within thirty (30) calendar days from the date of the initial Claim submission, as defined in the Agreement, as well as adhering to state-specific requirements. For pharmacies contracted with a PSAO, all appeals must be submitted through your PSAO for submission to Administrator. Administrator shall investigate and resolve the appeal within thirty (30) business days after the fully completed form is received. This section shall be considered a part of the Agreement by and between Administrator and Network Pharmacy Provider (including all amendments, addenda or Compensation Exhibits) to the extent the Network Pharmacy Provider provides Covered Prescription Services to Members in applicable states. The terms of this section shall be considered general information regarding MAC. Network Pharmacy Provider agrees and understands to the extent any state-specific law, rule or regulation differs or contradicts the terms set forth herein, Administrator shall follow the state-specific law, rule or regulation. Network Pharmacy Provider is subject to any MAC list(s) associated with the network(s) in which Network Pharmacy Provider participates

Review requests will be reviewed to determine the appropriateness of pricing utilized by Administrator for reimbursement. Administrator will utilize all available information to deduce the appropriateness of reimbursement. Participating pharmacies must submit their actual acquisition cost (including any rebates) for each item being reviewed. Failure to submit the actual acquisition cost (including rebates) will not result in Administrator rejecting Claims for review, but could diminish the accuracy of review and therefore the likelihood of a successful and complete review.

## MAC state-specific

To the extent your pharmacy is located in a state that requires different time periods to submit or resolve MAC Appeals than noted above,

 Administrator follows the state requirement where your pharmacy is located. In addition, if your pharmacy is located in one of the following states, the respective below provision supplements or replaces that aspect of the MAC Appeal process. Not all state requirements apply to all Claims or all lines of business (e.g. Commercial, Medicare, Medicaid and ERISA exempt Benefit Plans).

**Arkansas —** Administrator will investigate and resolve the MAC Appeal within seven (7) business days after the completed Form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC and will permit the challenging pharmacy to reverse and rebill the Claim in question, and will

**OptumRx Provider Manual:** 11th edition                                                                 51

The information contained in this document is proprietary and confidential to OptumRx.



make the MAC change applicable to all similarly situated Network Pharmacy Providers. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product that may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Colorado —** For a MAC Appeal, pharmacy must obtain, fully complete and submit the MAC Appeal form ("Form") to Administrator within twenty-one (21) days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within twenty-one (21) days after the completed Form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC no later than one (1) day after the date of determination of the MAC Appeal. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product that may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Florida —** PBM must update the MAC pricing information at least every seven (7) calendar days.

**Hawaii —** Administrator will investigate and resolve the MAC Appeal within fourteen (14) business days after the completed form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC and will permit the challenging pharmacy to reverse/rebill the Claim in question, as well as make the MAC change effective for all similarly situated Network Pharmacy Providers. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Iowa —** If the MAC Appeal is resolved in favor of the pharmacy, Administrator will allow for retroactive payment.

**Kentucky —** For a MAC Appeal, pharmacy must obtain, fully complete and submit the MAC Appeal form ("Form") to Administrator within sixty (60) days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within ten (10) days after the completed Form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will allow pharmacy to reverse and rebill the particular Claim on appeal for retroactive adjusted reimbursement. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product that may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Louisiana —** For a MAC Appeal, pharmacy must obtain, fully complete and submit the MAC Appeal form ("Form") to Administrator within seven (7) business days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within seven (7) business days after the completed Form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC and will permit the challenging pharmacy to reverse and rebill the Claim in question, and will make the MAC change effective for all similarly situated Network Pharmacy Providers. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product that may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

Contents

Back

Next

Previous

Exit

**Maryland —** For a MAC Appeal, pharmacy must obtain, fully complete and submit the MAC Appeal form ("Form") to Administrator within twenty-one (21) days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within twenty-one (21) days after the completed Form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC no later than one (1) business day after the date of determination of the MAC Appeal and will allow pharmacy to reverse and rebill the particular Claim on appeal and any subsequent similar Claims. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product that may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Michigan —** Administrator will investigate and resolve the MAC Appeal within ten (10) business days after the completed form is received by Administrator.

**Minnesota —** For a MAC Appeal, pharmacy must obtain, fully complete and submit the MAC Appeal form ("Form") to Administrator within fifteen (15) business days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within seven (7) business days after the completed Form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC no later than one (1) business day after the date of determination of the MAC Appeal. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product that may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Montana —** Administrator will investigate and resolve the MAC Appeal within ten (10) days after the completed form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC and will permit the challenging pharmacy to reverse/rebill the Claim in question, as well as make the MAC change effective for all similarly situated Network Pharmacy Providers.  If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product that may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**New Mexico —** Administrator will investigate and resolve the MAC Appeal within fifteen (15) days after the completed Form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC no later than one (1) business day after the date of determination of the MAC Appeal and will make the adjustment applicable to all similarly situated Network Pharmacy Providers.

**New York —** Administrator will investigate and resolve the MAC Appeal within seven (7) business days after the completed Form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC effective on the day of resolution of the MAC Appeal and will make the adjustment applicable to all similarly situated pharmacies in this state that are within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**North Carolina —** PBM must update the MAC pricing information at least every seven (7) calendar days.

**North Dakota —** Administrator will investigate and resolve the MAC Appeal within seven (7) business days after the completed Form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC effective on the day of resolution of the MAC Appeal and will make the adjustment effective for all similarly situated pharmacy providers in this state within the network.

**Ohio —** Administrator will investigate and resolve the MAC Appeal within twenty-one (21) days after the completed form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC effective on the day of resolution of the MAC Appeal, as well as make the adjustment applicable to all similarly situated pharmacies in this state that are within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product that may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Oklahoma —** For a MAC Appeal, pharmacy must obtain, fully complete and submit the MAC Appeal form ("Form") to Administrator within ten (10) business days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within ten (10) business days after the completed Form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will make the change in the MAC and will permit the challenging pharmacy to reverse and rebill the Claim in question, and make the MAC change effective for each similarly contracted Oklahoma provider. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product that may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Oregon —** Administrator will investigate and resolve the MAC Appeal within seven (7) business days after the completed Form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC effective on the day of resolution of the MAC Appeal and will make the adjustment applicable to all similarly situated pharmacies in this state that are within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product that may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Tennessee —** For a MAC Appeal, pharmacy must obtain, fully complete and submit the MAC Appeal form ("Form") to Administrator within seven (7) business days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within seven (7) business days after the completed Form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC and will permit the challenging pharmacy to reverse and rebill the Claim in question, and will make the MAC change applicable to all similarly situated Network Pharmacy Providers. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product that may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Texas —** Administrator will investigate and resolve the MAC Appeal within ten (10) days after the completed form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC and will permit the challenging pharmacy to reverse/rebill the Claim in question, as well as make the MAC change effective for all similarly situated Network Pharmacy Providers. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

The information contained in this document is proprietary and confidential to OptumRx.

Contents | Back | Next | Previous | Exit

**OPTUMRx**®

Contents

Back

Next

Previous

Exit

**Utah —** For a MAC Appeal, pharmacy must obtain, fully complete and submit the MAC Appeal form ("Form") to Administrator within twenty-one (21) days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within fourteen (14) business days after the completed Form is received by Administrator. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product that may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Vermont —** Administrator will investigate and resolve the MAC Appeal within ten (10) days after the completed form is received by Administrator.

**Washington —** Administrator will investigate and resolve the MAC Appeal within seven (7) business days after the completed Form is received by Administrator. If the MAC Appeal is resolved in favor of the pharmacy, Administrator will change the MAC no later than one (1) business day after the date of determination of the MAC Appeal and will make the adjustment effective for all similarly situated pharmacies in this state that are within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason and identify the NDC of a Drug Product that may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

## J. Resubmitting a claim

All Claims submitted via the POS System will result in a response Transaction message (e.g. Paid or Rejected). In the event that Network Pharmacy Provider has submitted a Claim via the POS System and Network Pharmacy Provider does not receive any Claim response Transaction message via the POS System within a reasonable amount of time, Network Pharmacy Provider should verify the accuracy of the submitted Claim and resubmit the Claim to Administrator via the POS System.

## K. Transmission fees

Variant transmission fees will be incurred by the Network Pharmacy Provider per online Transaction. Fees are assessed to support Network Pharmacy Provider payment, as well as reconciliation, Help Desk service, education regarding network compliance, transactional and billing processes, among other initiatives. However, excessive or disruptive process inquiries, including, but not limited to non-contracted pharmacy status, duplicate payment and remittance requests, excessive Member/Network Pharmacy Provider grievances, third-party biller intervention, incomplete or inaccurate credentialing submissions, contract noncompliance and/or failure of the Network Pharmacy Provider to submit Claims through the Administrator designated claim processor POS System, are subject to higher transmission fees. Should a Claim be submitted by a third-party or other means separate from the Network Pharmacy Provider itself, the Claim may be subject to non-payment. Administrator reserves the right to make payment directly to Network Pharmacy Provider at its sole discretion.

## L. Pharmaceutical manufacturers copayment coupons

Network Pharmacy Provider is responsible for ensuring pharmaceutical manufacturer copayment coupons are not utilized for Medicare Part D Claims and other payments for federal health programs. Network Pharmacy Providers must include operational practices that require the validation of each customer that presents a copayment card which is not covered by a government health plan.

OptumRx Provider Manual: 11th edition                                                                                        55

The information contained in this document is proprietary and confidential to OptumRx.



Copayment coupons may be presented in several different forms, including printed/electronic coupons, debit cards or direct payments from the manufacturer to the Member. Copayment coupons will typically bear a statement indicating beneficiaries of federal health care programs may not use the coupon.

Network Pharmacy Providers accepting manufacturer coupons for copayments owed by federal health program beneficiaries may be subject to sanctions under the anti-kickback statute, the beneficiary anti-inducement provision of the Civil Monetary Penalties Law (CMPL) and the False Claims Act. In addition, non-compliance with this provision may result in remedies, including, but not limited to a corrective action, probation, termination of the Agreement and any other available recourse.

## M. Tax

Tax is calculated based on the applicable state or local law governing tax on Prescription Drug Products. In order to be reimbursed for payment of tax, Network Pharmacy Provider must enter the tax amount in the appropriate field on the Claim submission.

## N. Disputed claims

In the event a Network Pharmacy Provider seeks to dispute a Claim due to alleged error, miscalculation, discrepancy or noncompliance to terms specified in the Agreement or otherwise questions the accuracy of any Claim, the Network Pharmacy Provider must notify Administrator within one-hundred and twenty (120) days of the date of fill in writing. Written outreach must include Pharmacy NCPCP number, Eligible Person ID number, Prescription number, date of fill and details such as why an adjustment is needed (e.g. wrong NDC submitted, wrong quantity submitted, etc.) Should the Network Pharmacy Provider fail to contact Administrator within the required response time, Network Pharmacy Provider deems the accuracy of processing and payment of Claims, as set forth in that cycle. Overpayments made to the Network Pharmacy Provider are not applicable.

 Notifications may be emailed to: **pharmacycontracts@optum.com** (OptumRx) or **provider.relations@catamaranrx.com** (Catamaran)

## O. Days supply and quantity

Network Pharmacy Provider may only submit Claims to Administrator for Drug Products properly labeled and dispensed in accordance with the Prescription order for the Drug Product.

### Days' supply

Network Pharmacy Provider is responsible for entering the correct days' supply of Prescriptions for all Claim submissions. The supply should accurately reflect the documented directions and quantity dispensed. Audits routinely identify discrepancies in days' supply errors. Treatment therapy should be included in determination of days' supply. The following are examples of appropriate days' supply submission:

a. One (1) patch weekly is four (4) patches for a twenty-eight (28) day supply.

b. Two (2) tablets twice weekly is eight (8) tablets for a twenty-eight (28) day supply.

c. A thirty (30) day supply is no longer standard; some programs permit extended days' supplies. Always transmit the accurate days' supply and allow the on-line system to communicate the allowable days' supply.

The information contained in this document is proprietary and confidential to OptumRx.

Contents
Back
Next
Previous
Exit

## Dispensing limitations

Any Claim submitted to Administrator exceeding Benefit Plan limitation for the days supply or quantity dispensed will reject with messaging indicative of actual plan limits such as: MAXIMUM DAYS SUPPLY- thirty-four (34) or QUANTITY LIMIT -100. Resubmitted Claims must include the accurate days supply and quantity. If a Claim submitted has a quantity representative of the smallest commercially available package size or represents a single course of therapy (e.g. Seasonique® as a ninety-one (91) day supply) and rejects as stated, the Network Pharmacy Provider must request an override through the Pharmacy Help Desk and resubmit the Claim utilizing the quantity and the accurate days supply.

Network Pharmacy Provider must clarify ambiguous dosage instructions regarding use prior to dispensing a Prescription. If a prescription contains ambiguous directions (e.g. no directions — Use as Directed,‖or - prn‖), Network Pharmacy Provider must obtain more detailed directions so the days' supply can be calculated and the dosing scheduled submitted correctly. The directions may be obtained by direct communication with the Member or Prescriber. Documentation of such directions must be on the original Prescription.

## Quantity

Network Pharmacy Providers must enter the quantity dispensed exactly as prescribed or if less than prescribed, as documented on the Prescription. The quantity dispensed must reflect the exact metric decimal quantity, without rounding. If the quantity to be dispensed is uncertain, Network Pharmacy Provider must contact the Prescriber to determine the appropriate amount to dispense and document said amount on the original, hard-copy Prescription. Network Pharmacy Provider should review Claim submission to be sure the quantity is accurate based on the specificity of the Drug Product and Prescriber instructions.

Additionally, Network Pharmacy Provider should adhere to the following:

- Network Pharmacy Provider shall not owe the Member a portion of the Prescription to be picked up at a later date and must only submit Claims what was actually dispensed (unless product expiration – such as reconstituted antibiotics used in prophylaxis);
- Network Pharmacy Provider shall use commercially reasonable efforts to ensure (i): the in-person fill time (ready for pickup) be no longer than forty (40) minutes, and (ii) a Prescription phoned in by a Prescriber is filled within ninety (90) minutes.
- If the minimum quantity as represented by the manufacturer's smallest available unit-of-use causes a rejection, with notation of a maximum days' supply, it is allowable to resubmit with the communicated days' supply which represents the plan maximum; and
- Claims submitted to Administrator in accordance with a Client Benefit Plan to allow limited dispensing of a non-covered Drug Product (e.g. three (3) day supply approved for a drug requiring a PA) may be dispensed with the smallest commercially available package size and submitted using the allowable days' supply.
- Network Pharmacy Provider shall, in accordance with 42 C.F.R. § 423.132, when dispensing a covered Medicare Part D Drug Product, inform the Medicare Part D beneficiary at the POS of the lowest-priced, generically equivalent version of that covered Medicare Part D Drug Product, if one exists for the beneficiary's Prescription.

Any subsequent changes in the original dispensing limitations (e.g. increase in quantity) or refill authorizations approved by the Prescriber must be documented on the original hard copy Prescription or in a readily retrievable electronic format acceptable by the State Board of Pharmacy in which Network Pharmacy Provider is located.

**Refer to Section FWA for detailed information regarding standards and requirements for all Prescription records.**

The information contained in this document is proprietary and confidential to OptumRx.



## P. Collection of members cost-sharing amount

Network Pharmacy Provider must charge the Member the Cost-Sharing Amount indicated in the online response and only this amount. Waiving the amount associated with the Member Cost-Sharing is strictly prohibited, unless required by law and is considered a material breach of the Agreement.

Network Pharmacy Provider reimbursement pricing information, as well as prices paid to Network Pharmacy Provider for individual Claims under this Agreement are confidential and proprietary Administrator information and may not be disclosed on Member receipts or insurance profiles. The Network Pharmacy Provider may print U&C price and Member pay amount on the receipts, as well as the insurance profiles.

Network Pharmacy Provider agrees with the exception of (i) Cost-Sharing Amounts (ii) reasonable returned check costs and (iii) reasonable collection costs directly related to subparts (i) or (ii). Network Pharmacy Provider shall not in any event, including, without limitation, non-funding by Administrator or non-payment by a Client, insolvency of Administrator or a Client, or breach of this Agreement, bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, hold responsible, or otherwise have any recourse against any Member, or any other person (other than the applicable Client) acting on behalf of any Member, or attempt to do any of the foregoing for any Prescription provided to any Member pursuant to the Agreement. This section shall survive expiration or termination of the Agreement.

## Q. Claim reversals

Claims can be reversed up to thirty (30) calendar days after the submission date (or as specified by the plan); however when necessary, Claims should be reversed within fourteen (14) calendar days, as soon as reasonably practical or as specified by a particular governing requirement to assure Prescriptions with inaccurate information or those not dispensed to Members are credited in a timely fashion. All Prescriptions not received by a Member must be reversed within fourteen (14) calendar days from original submission.

## R. Non-solicitation

Network Pharmacy Provider will refrain from advising, counseling or soliciting any Members with plans utilizing Administrator for any reason, including but not limited to improving Network Provider Pharmacy compensation.

Network Pharmacy Provider will refrain from advising, counseling or soliciting any plans to terminate its relationship with Administrator for any reason, including but not limited to improving Network Provider Pharmacy compensation level or the termination of the Agreement.

Network Pharmacy Provider may not obtain its Members via cold calling or unsolicited methods of obtaining a Member's billing information or to make offers of contacting the Member's Prescriber. All submission of Claims for a fill or refill of a Prescription by Network Pharmacy Provider must be initiated in accordance with a Member's knowledge and authorization.

Network Pharmacy Provider shall not solicit, as a matter of routine business practice, a Member for mail delivery or deliver any Covered Prescription Services to a Member by mail (e.g. UPS, USPS, Fed-Ex) except upon the advance written approval of Administrator, which approval may be refused in Administrator's sole discretion.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



Contents

Back

Next

Previous

Exit

## S. Prohibition on repackaging and reimportation

Network Pharmacy Provider shall not submit and Administrator is not responsible for payment for (i) Claims for Covered Prescription Services using a National Drug Code (NDC) for a repackaged drug or (ii) Claims for Covered Prescription Services filled using drugs imported or reimported into the United States (U.S.).

## T. Use of third parties

Administrator may contract with third parties for Claims processing, eligibility, other duties or obligations Administrator is required to perform under the Agreement.

## U. 340(B) program

To the extent Network Pharmacy Provider, during the term or any renewal term of the Agreement, is owned, operated or contracted with an eligible 340B Participating Entity to purchase outpatient Drug Products from drug manufacturers or wholesalers at reduced prices for use by eligible Members under the Public Health Service Act, Section 340(B) program, Network Pharmacy Provider shall immediately provide Administrator with written notice of such eligibility. The parties acknowledge/agree Administrator shall be entitled to modify the rates, fees, as well as other reimbursements offered to Network Pharmacy Provider hereunder in accordance with the PM and/or Agreement to the extent Network Pharmacy Provider becomes eligible to purchase Drug Products under the Public Health Service Act, Section 340(B) program. Failure of Network Pharmacy Provider to notify Administrator of its 340(B) eligibility as stated above shall constitute a material breach of the Agreement.

## V. Hospice

Beneficiaries in hospice may receive a PA rejection for analgesics, antianxiety, antiemetics and laxatives to determine if the Claim should be covered under the hospice benefit, Medicare Part D benefit or fall under the beneficiary's liability. Rejected Claims return codes A3, 75, 569 and include a custom message with the phone number to begin the A3 Rejection Override review process.

Network Pharmacy Providers should work with hospice providers or Prescribers to obtain written documentation of Drug Products medically necessary, but unrelated to the terminal illness or related conditions. This written documentation should then be sent to the Benefit Plan Sponsor (or Administrator, if review has been delegated) for A3 Rejection Override review. If the Prescriber determines the Drug Product is covered under the hospice benefit, the Network Pharmacy Provider should submit the Claim to the hospice provider identified by the Prescriber. If the Prescriber is unable to make the determination, the Network Pharmacy Provider should provide the standardized pharmacy notice and advise the beneficiary or Prescriber to contact the Medicare Part D Sponsor at the telephone number in the secondary message to initiate the coverage determination request. Network Pharmacy Providers may also initiate an A3 Rejection override for Members who are no longer in hospice by submitting written documentation to the Benefit Plan Sponsor (or Administrator, if review has been delegated).

**OptumRx Provider Manual:** 11th edition                                                                 59

The information contained in this document is proprietary and confidential to OptumRx.



# V. BIN information



The information contained in this document is proprietary and confidential to OptumRx.

## A. OptumRx prescription bank identification numbers (RxBINs)

As of the date of publication of this PM, the following is a list of BIN numbers administered by Administrator. It is an all-inclusive list as of 10/9/2015 and is subject to change at any time. Please contact the Pharmacy Help Desk using the contact information provided in section II of this PM for more information.

| 610084 | 610094 | 610097 | 610127 | 610279 | 610494 | 610613 |
|--------|--------|--------|--------|--------|--------|--------|

**OptumRx payer sheets**

The Administrator D.0 Payer sheets Related to Medicare Part D, Commercial and Medicaid are available on the health care professional's portal via the following:

https://optumrx.com/RxsolHcpWeb/cmsContent.do?pageUrl=/HCP/HealthcareProviderTools/FormsAndDocuments

## B. Catamaran prescription bank identification numbers (RxBINs)

**Non-Medicare**

| 015558 | 003452 | 003650 | 003858 | 004469 | 004919 | 005757 | 005947 | 006524 | 007887 |
|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| 008878 | 008985 | 009117 | 010553 | 010876 | 011198 | 011297 | 011321 | 011677 | 011792 |
| 011867 | 012295 | 012502 | 012882 | 012924 | 012957 | 013907 | 014189 | 014211 | 014582 |
| 014681 | 014872 | 015383 | 015566 | 015756 | 015814 | 015921 | 016093 | 017933 | 060646 |
| 600471 | 601577 | 601683 | 603017 | 603286 | 606464 | 610011 | 610118 | 610140 | 610171 |
| 610182 | 610527 | 610560 | 610593 | 610619 | 610621 | 610652 | 610679 | 610704 | 610709 |
| 017010 | | | | | | | | | |

**Medicare**

| 610593 | 010868 | 610623 | 610011 | 015789 | 603286 | 016390 | 015764 | 013170 | 017010 |
|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|

**Catamaran payer sheets**

The following elements from the Member ID card must be submitted for successful Claims adjudication:

- Member identification number
- Person Code (when printed on card)
- RxGRP (when printed on card)
- BIN/Processor Control Number

*For additional payer-specific required data elements for the above RxBINs, please refer to the applicable legacy Catamaran Payer Specifications or **catamaranrx.com/Pharmacies** (access to the portal will require proper credentials).*

**OptumRx Provider Manual:** 11th edition                                                                 61

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



# VI. Medicare product information and guidelines



The information contained in this document is proprietary and confidential to OptumRx.



## A. Excluded drugs

As of the date of the printing of this PM, certain types of Drug Products or categories of Drug Products are not normally covered by MA-PD Benefit Plans. These Drug Products are not considered Medicare Part D (Part D) Drug Products and may be referred to as "exclusions" or "non-Part D Drug Products."

 The following are Drug Product classes or categories of Drug Products excluded from Part D coverage with examples of Drug Products within each class.

- Prescription vitamins and mineral products, with the exception of Formulary prenatal vitamins and fluoride preparations.
  — Examples: Ascorbic Acid, Folic Acid, Vitamin B

- Agents when used for anorexia, weight loss, or weight gain.
  — Examples: Ionamin, Meridia, Phentermine

- Agents when used to promote fertility.
  — Examples: Clomiphene Citrate, Fertinex, Follistim, Gonal-F, Serophene

- Agents when used for cosmetic purposes or hair growth.
  — Examples: Botox Cosmetic, Eldoquin, Hydroquinone, Lustra, Propecia, Renova

- Agents when used for the symptomatic relief of cough and colds.
  — Examples: Benzonatate, Tessalon

- Nonprescription or over-the-counter (OTC) drugs (with the exception of Insulin and associated medical supplies).
  — Examples: Aspirin, Sudafed, Tylenol

- Less-Than-Effective Medicaid Drug Efficacy Study Implementation (DESI) Drug Products.
  — Examples: Anucort HC, Tigan Suppositories

- Agents when used for the treatment of sexual or erectile dysfunction.
  — Examples: Viagra, Cialis, Levitra and Caverject

- Outpatient Drug Products for which the manufacturer seeks to require that associated tests or monitoring services be purchased exclusively from the manufacturer as a condition of sale.

- End-Stage Renal Disease (ESRD) agents furnished to ESRD patients on dialysis.
  — Examples: Iron, Vancomycin, Daptomycin

- Agents without New Drug Application (NDA) or Abbreviated New Drug Application (ANDA) with the FDA.

- Any brand agent for which the manufacturer has not agreed to participate in the 50% gap discount program (i.e. labeler code agreement).

- Drug Products related to terminal illness furnished to Hospice patients.
  — Examples: analgesics, anti-anxiety drugs (anxiolytics), antiemetics) and laxatives

- Compounded Drugs that contain at least one ingredient covered under Medicare Part B.

- Bulk ingredients/powders used in Compounded Drugs.

**OptumRx Provider Manual:** 11th edition                                                                63

The information contained in this document is proprietary and confidential to OptumRx.



- Self-administered oral anti-cancer agents with the same active ingredients and indications as chemotherapy agents administered as incident to a Prescribing Physician's professional service.

  — Examples: Temodar, Xeloda

 Many of the Benefit Plans we support may cover Medicare Part D-excluded Drug Products through additional separate coverage.

For more information, please contact customer service at the phone number provided on the back of the Member's ID card.

## B. Medicare Part A/B/D coordination of benefits (COB)

Some Drug Products may be billed to either the Medicare Part A (if a Member is an inpatient), Part B or Part D benefit, depending on the intended use and other factors. Drug Products may be covered in one (1) of three (3) ways:

- Under Medicare Part A if Member is an inpatient or has elected Hospice; or

- Under Medicare Part B; or

- The MA-PD in conjunction with Medicare Part D.

Drug Products will never be covered through Medicare Parts A, B and the Medicare Part D PDP at the same time. Online messaging, e.g., "COVERED UNDER PART B, BILL MEDICARE," is provided at the point of service. When it is not clear which coverage applies, the prior authorization process should be initiated in order to determine the appropriate coverage.

MA-PD Plan Claim responses will have benefit stage qualifier values that have been approved through the NCPDP External Code List (ECL) process. These qualifier values will allow pharmacies to identify Medicare MA-PD Plans that offer additional benefits besides Part D covered Drug Products:

- The Medicare Advantage (MA) portion of the MA-PD Plan = Benefit Stage Qualifier (393-MV) value of "50" (Not paid under Part D, paid under Part C benefit (for MA-PD Plan).

- Employer Group Waiver Plans (EGWPs) and supplement plans where Part D and non-Part D supplemental benefits are co-administered = Benefit Stage Qualifier (393-MV) value of "60" (Not paid under Part D, paid as or under a supplemental benefit only).

- Part D Drug Product not paid by Part D Benefit Plan, paid as or under a co-administered benefit only = BSQ (393-MV) value of "61".

- Non-Part D / Non-qualified Drug Product not paid by Part D Benefit Plan, paid as or under a co-administered benefit only = BSQ (393-MV) value of "62"

- Negotiated Price Non-Formulary Part D Drug Product = Benefit Stage Qualifier (393-MV) value of "70" (Part D Drug Product not paid by Part D Benefit Plan, paid by the beneficiary under Benefit Plan negotiated pricing).

- Negotiated Price Non-Part D Drug Product = Benefit Stage Qualifier (393-MV) value of "80" (Non-Part D Drug Product not paid by Part D Benefit Plan, paid by the beneficiary under Benefit Plan negotiated pricing).

- Enhanced or OTC drug not applicable to the Part D Drug Product spend, but is covered by the Part D Benefit Plan = BSQ (393-MV) value of "90".

These benefit stage qualifiers are not applicable to standalone MA Benefit Plans and PDP Benefit Plans, these plans will have separate 4Rx since they may be sold independently (a beneficiary can choose to use a MA product from one Medicare sponsor and a PDP product from another Medicare sponsor.

The information contained in this document is proprietary and confidential to OptumRx.



## C. Medicare Part D clean claim determination

All Claims submitted by Pharmacies for Medicare Part D Drug Products are submitted by Medicare Part D Sponsor to CMS as Prescription Drug Events (PDE). In the event that CMS rejects or retro-actively denies a PDE because the PDE is not consistent with CMS instructions, guidance, regulations or applicable law, the underlying Claim may be deemed not a Clean Claim and such Claim may be reversed by Administrator on behalf of Medicare Part D Sponsor.

 For example, including the following but not limited to, per section 1927(k)(2) of the Social Security Act and 21 USC 535, to be covered under Medicare Part D, Drug Products must be dispensed only upon a Prescription of a health care provider who has the authority to prescribe Drug Products. Accordingly, PDE records submitted to CMS by a Medicare Part D Sponsor that were derived from Prescriptions by an unauthorized individual are not Clean Claims for payment and may be rejected or reversed by Administrator on behalf of Medicare Part D Sponsor in accordance with CMS instructions, guidance, regulations, or applicable law.

## D. Medicare Part D coverage determination

Coverage determinations allow requests to waive coverage restrictions or limits applied through prior authorization, step-therapy, quantity limits, and Medicare Part A/B/Part D COB. The Member, Member's authorized representative, Prescribing Physician or other Authorized Prescriber may request an exception.

If the Medicare Part D Sponsor approves a coverage determination exception request, the approval is valid for the remainder of the plan year, unless clinically inappropriate or unnecessary, so long as the Prescribing Physician continues to prescribe the Drug Product and it continues to be clinically appropriate and necessary, safe and effective for treating the Member's condition. If the exception request results in an adverse coverage determination, a Member may appeal the decision by calling the Customer Service number listed on his or her Member ID card.

## E. Permissible prescriber identifiers for Medicare Part D claims

For Medicare Part D and Medicaid Claims:

- Network Pharmacy Providers should submit a Prescriber NPI on all Part D and Medicaid Claim submissions. Claim submissions without a Prescriber ID will result in a Claim rejection with code 'EZ — Missing/Invalid Prescriber ID.

- Organizational NPIs should not be submitted.

- NPI should be submitted using an individual NPI that is valid on the Date of Service (DOS) for the Claim. Claims submitted without a valid individual Prescriber NPI will reject with NCPDP Rejection Code 619 — Prescriber Type 1 NPI Required, or 56 — "NPI EXISTS. PRESCRIBER ID INVALID/NOT ALLOWED" and the corresponding NPI number will be provided for use when resubmitting the Claim.

- Prescribers with a current exclusion list sanction (i.e. Office of Inspector General's (OIG) — U.S. Department of Health and Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE), as well as General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS)) will be rejected.

- Prescriptions written for controlled substances: Administrator will reject Claims where the Prescriber being submitted on the Claim does not have the authority to write for the schedule Drug Product being prescribed.

OptumRx Provider Manual: 11th edition                                                                    65

The information contained in this document is proprietary and confidential to OptumRx.



 Additionally, it is critical that you enter the correct Prescriber DEA and NPI numbers because Administrator sends correspondence (such as the Clinical Programs described in Section I below) to providers based on pharmacy Claims. Providing incorrect provider information can lead to privacy incidents and endanger Member safety.

## F. Coverage determination timeframes

### Standard coverage determination

Provided within seventy-two (72) hours of receipt of the request or for an exceptions request 72 hours after receipt of the Prescriber supporting statement. If the Medicare Part D Sponsor has not provided an answer within 72 hours after receiving a request, or, for an exceptions request, 72 hours after receipt of the Prescriber's supporting statement, the request will be automatically forwarded to an independent organization called an Independent Review Entity (IRE) for review.

### Expedited coverage determination

Provided no later than twenty-four (24) hours of receipt of the request, or, for an exceptions request, 24 hours after receipt of the Prescriber's supporting statement. If the Medicare Part D Sponsor has not provided an answer within 24 hours after receiving a request, or, for an exceptions request, 24 hours after receipt of the Prescriber's supporting statement, the request will be automatically forwarded to an independent organization called an Independent Review Entity (IRE) for review.

## G. Claim adjustments

Members are responsible for applicable Cost Sharing Amounts associated with their Benefit Plans. Medicare Part D Claim adjustments:

- Network Pharmacy Providers will be unable to reverse Medicare Part D Claims that have been reprocessed internally by Administrator. This is necessary because Claim adjustments have been made and if a financial adjustment was owed to the Member or LTC pharmacy, then a reimbursement process has already been initiated. Pharmacies attempting to submit reversal requests on Claims that have been reprocessed by Administrator will receive a NCPDP Rejection stating — "CLAIM NOT ELIGIBLE FOR REVERSAL. CONTACT HELP DESK FOR ASSISTANCE".

- If there is a need to resubmit Claims due to incorrect Medicare Part D Low Income Subsidy (LIS) level, please contact customer service.

## H. Coverage limitations

A Drug Product is part of Medicare Part D only if it is for a medically accepted indication as defined in the Medicare regulations and implementing guidance. This definition includes prescribed uses supported by a citation included, or approved for inclusion, in one (1) of the following four (4) compendia:

- American Hospital Formulary Service Drug Information
- United States Pharmacopeia Drug Information or its successor publication
- DRUGDEX Information System
- National Comprehensive Cancer Network (NCCN)

Contents

Back

Next

Previous

Exit

The information contained in this document is proprietary and confidential to OptumRx.



Based on this regulatory definition, indications supported in peer reviewed medical literature are not "medically accepted" if they are not yet included, or approved for inclusion, in one of the compendia. Therefore, the use of a Drug Product for such indications would not meet the definition of a Medicare Part D Drug Product and the Drug Product would not be a Covered Prescription Service under the Benefit Plan, even if the Member's Prescribing Physician states that the Drug Product is medically necessary.

The following additional coverage limitations may apply:

- Early refills for lost, stolen or destroyed Drug Products are not covered except during a declared "National Emergency."

- Early refills for vacation supplies may be limited to a one (1) time fill of up to thirty-one (31) days per calendar year according to Benefit Plan.

- Drug Products will not be covered if prescribed by Prescribers that are excluded from Medicare program participation (unless they have an approved waiver on file with the OIG. These occurrences are very rare).

- A Member may refill most Prescriptions when a minimum of seventy-five percent (75%) of the quantity is consumed based on the number of days supplied. This minimum quantity consumed amount is seventy percent (70%) for eye drops.

## I. Medication therapy management program (MTMP)

Consistent with the Medicare Modernization Act (MMA) requirements for MTMP, the Benefit Plan provides an MTMP for eligible plan Members at no additional cost to the Members. This program is designed to ensure that Members get the most medically appropriate, safe and cost effective Drug Products. It focuses on improving Drug Product use and reducing adverse Drug Product events.

### MTMP eligibility

CMS requires that MTMP be offered to Members who have multiple chronic diseases, take multiple chronic/maintenance Medicare Part D covered Drug Products, and are likely to incur annual costs of $3,138 for covered Medicare Part D Drug Products. Each plan is to define the number and type of chronic diseases and number of Medicare Part D Drug Products to include in the MTMP.

The criteria selected for the Administrator MTMP are as follows:

1. Member must have at least three (3) of the following target chronic diseases:

   a. Hypertension
   b. Chronic heart failure
   c. Diabetes
   d. Dyslipidemia
   e. Osteoporosis or Rheumatoid arthritis (targeted disease is plan specific)

2. Member must have filled Prescriptions for at least eight (8) distinct Medicare Part D covered chronic/maintenance Drug Products during the identification period.

3. Member must be identified as likely to incur annual costs of $3,138 for Medicare Part D covered Drug Products.

The Benefit Plan identifies and invites Medicare Part D Members who meet the criteria to take part in the MTMP.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



## Scope of MTMP services

The scope of the MTMP services is determined by each Medicare Part D Benefit Plan. In selecting MTMP services, Administrator complies with all CMS regulations and also considers the potential impact of each service on maximizing therapeutic outcomes. Therefore, the selected services exemplify the best practices stated in the MMA and can potentially impact clinical outcomes. The MTMP includes, but is not limited to:

- Providing patient and Prescriber education.
- Performing an annual comprehensive medication review (CMR) which consists of an interactive, person-to-person consultation with a pharmacist.
- Providing an individualized written summary with action plan and recommendations.
- Performing quarterly targeted Drug Product reviews on an ongoing basis.

## MTMP enrollment process

The MTM Program is offered at no cost to qualifying Medicare Part D Members. Members who do not want to participate may opt out of the entire MTMP or any of its components. Administrator reviews the available medical and pharmacy Claims data to determine MTMP eligibility. In the absence of medical Claims data, a Drug Product proxy tool may be used for verification of diagnosis.

## MTMP reimbursement for network pharmacy providers

As of the date of the printing of this PM, Administrator is solely responsible for designing, developing and implementing MTMP-related clinical services on behalf of its Clients and Benefit Plan Sponsors. Therefore, there are no plans for reimbursement to Network Pharmacy Providers at this time.

## J. Medicare Part D transition policy

At the time an individual joins a Medicare Part D plan, a new Member may be taking a Drug Product that is either not on the Benefit Plan's Formulary or is subject to Benefit Plan requirements or restrictions.

The Member may be eligible to receive a temporary transition supply of the Drug Product. The maximum days' supply allowed is a thirty-one (31) day supply (unless the Prescription was written for fewer days) at any time during the first ninety (90) days of Membership in the Member's Medicare Part D Plan.

The Medicare Part D Sponsor provides notice to its Members and their Prescriber who receive a transitional supply of a Drug Product. This notice is sent by U.S. mail within three (3) business days of the temporary fill. It includes:

- An explanation of the temporary nature of the transitional supply.
- Instructions for working with the Benefit Plan Sponsor and the Prescriber to identify appropriate Formulary alternatives.
- An explanation of the Member's right to request an exception.
- A description of the procedures for requesting an exception.

Network Pharmacy Providers receives an electronic notice of a temporary transition fill via the POS System. If the exception is approved, the Member will be able to obtain the Drug Product for a specified period of time.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

After the initial temporary transition supply of up to thirty-one (31) days, the Benefit Plan Sponsor may not continue to pay for these Drug Products under the transition policy. The Member should discuss appropriate alternative therapies on the Formulary with the Prescribing Physician. If there are no alternatives, the Member and Prescriber may request a PA.

There may be unplanned transitions such as hospital discharges or level-of-care changes. If the Member is prescribed a Drug Product that is not on the Formulary or the ability to get a Drug Product is limited, the Member may request a level-of care transition supply of up to thirty-one (31) days (unless the Prescription is written for fewer days) for each level of care change to allow time to discuss alternative treatments with his or her Prescriber or to pursue a PA.

## K. Medicare Part D transitioning long-term-care (LTC) facility residents

If the Member is a resident of a LTC facility, the Medicare Part D Sponsor will also cover a temporary transition supply. The maximum days' supply allowed is a thirty-one (31) day supply (unless the Prescription was written for fewer days) with refills provided; and up to a ninety-eight (98) day supply (unless the Prescription is written for fewer days) during the first ninety (90) days the individual is a Member of the Plan.

If the Member needs a Drug Product that is not on the Formulary or the Member's ability to get the Drug Product is limited, but the individual has been a Member of the Plan for more than ninety (90) days, the Plan may cover a one (1) time, thirty-one (31) day supply of that Drug Product (unless the Prescription was written for fewer days) or an extension of the transition period while the Member pursues a PA.

There may be unplanned transitions such as hospital discharges or level-of-care changes. If the Member is prescribed a Drug Product that is not on the Formulary or the ability to get a Drug Product is limited, the Member may request a level-of care transition supply of up to thirty-one (31) days (unless the Prescription is written for fewer days) for each level of care change to allow time to discuss alternative treatments with his or her Prescriber or to pursue a PA.

## L. LTC facility information to be provided upon termination

When a Network Pharmacy Provider no longer participates in the Administrator Pharmacy Network, including, but not limited to, a voluntary or involuntary termination, Network Pharmacy Provider shall comply with the Benefit Plan Sponsors transition of care policies and procedures. Within five (5) business days of the termination notice and upon request thereafter, Network Pharmacy Provider shall provide to Administrator a list of LTC facilities with Members receiving Part D benefits through the Medicare Part D Sponsor. The list shall contain i) Pharmacy Information, including Pharmacy Name, Pharmacy NCPDP #, Pharmacy Address, LTC Facility Name, LTC Facility Address and LTC Facility Phone Number and ii) a Member list by Facility, including each Member's Name, ID# and DOB.

## M. Short-cycle-dispensing (SCD) processing for LTC

CMS issued a final rule that calls for the dispensing of Brand Name Drugs in fourteen (14) days or less increments to Medicare Part D Members residing in LTC facilities.

The ruling seeks to reduce Waste by minimizing unused Drug Products for the Medicare Part D program. Solid oral dosage Brand Name Drug is the only formulations affected by this ruling. Antibiotics in all forms, prepackaged Drug Products and liquid Drug Product formulations are exempt.

Member Cost-Sharing Amounts will be prorated based on the day supply.

**OptumRx Provider Manual:** 11th edition                                                                 69

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



 For example, if the Member has a $30 copay for a 30-day supply, the Member will pay $14 for a fourteen (14) day supply.

 When submitting Claims that are subject to the short-cycle regulations, providers must ensure that all of the following fields are submitted:

| NCPDP field name | NCPDP field ID | Appropriate value for SCD claims |
|---|---|---|
| Patient residence | 384-4X | 03 |
| Submission clarification code | 354-NX | See below |
| Pharmacy service type | 147-U7 | 01,03,05 |
| CMS qualified facility | 997-G2 | Y |
| Special packaging indicator | 429-DT | See below |

**Valid submission clarification code and special packaging indicator combinations**

| NCPDP field name | NCPDP field ID | Appropriate value for SCD claims | Outcome |
|---|---|---|---|
| 14 | 22-29 | 1-8 | Processed |
| 14 | 33-35 | 1-8 | Processed |
| 15 | 22-29 | 1-8 | Processed |
| 15 | 33-35 | 1-8 | Processed |
| 16 | | 1-8 | Processed |
| 16 | 18 | 1-8 | Processed |
| 16 | 22-29 | 1-8 | Processed |
| 16 | 32 | 2-8 | Processed |
| 16 | 33-35 | 1-8 | Processed |
| 17 | 22-29 | 1-8 | Processed |
| 17 | 32 | 2-8 | Processed |
| 17 | 33-35 | 1-8 | Processed |
| 18 | 16 | 1 | Processed |
| 18 | 22 | 1-8 | Processed |
| 18 | 23-35 | 1-8 | Processed |
| 22 | | 1-8 | Processed |
| 22 | 18 | 1-8 | Processed |
| 23 | | 1-8 | Processed |
| 23 | 18 | 1-8 | Processed |
| 24 | | 1-8 | Processed |
| 24 | 18 | 1-8 | Processed |
| 25 | | 1-8 | Processed |

Contents

Back

Next

Previous

Exit

The information contained in this document is proprietary and confidential to OptumRx.



| | | | |
|---|---|---|---|
| 25 | 18 | 1-8 | Processed |
| 26 | | 1-8 | Processed |
| 26 | 18 | 1-8 | Processed |
| 27 | | 1-8 | Processed |
| 27 | 18 | 1-8 | Processed |
| 28 | | 1-8 | Processed |
| 28 | 18 | 1-8 | Processed |
| 29 | | 1-8 | Processed |
| 29 | 18 | 1-8 | Processed |
| 30 | | 6-8 | Processed |
| 30 | 18 | 6-8 | Processed |
| 31 | | 6-8 | Processed |
| 31 | 18 | 6-8 | Processed |
| 32 | | 2-8 | Processed |
| 32 | 18 | 2-8 | Processed |
| 33 | | 1-8 | Processed |
| 33 | 18 | 1-8 | Processed |
| 34 | | 1-8 | Processed |
| 34 | 18 | 1-8 | Processed |
| 35 | | 1-8 | Processed |
| 35 | 18 | 1-8 | Processed |

Claims submitted with an invalid clarification code and special package indicator combination will be rejected with one of the following codes:

- 597 — LTC dispensing type does not support packaging type
- 613 — The packaging methodology or dispensing frequency is missing or inappropriate for LTC short-cycle

The following fields must be completed on the Claim submission form:

- Patient qualification — **patient residence, place of service**
- Provider qualification — **pharmacy service type, CMS defined facility flag**
- Claim qualification — **submission clarification code, special packaging type**

The combination of values for these Claim qualifications are defined by CMS and the National Council for Prescription Drug Programs (NCPDP) and are not user-definable. If an NCPDP defined combination is not submitted correctly by the pharmacy, the Claim will be rejected with the 613 code.

If the LTC has submitted the Claim according to the above guidelines and receives a 597 code, then the LTC may resubmit the Claim with Submission Clarification Code 21 and SPI 1 or 3 to bypass the edit.

**OptumRx Provider Manual:** 11th edition                                                                 71

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



## N. Daily cost share (DCS)

 Network Pharmacy Providers will be responsible for costs associated with erroneously submitted Claims. Incorrect and erroneously submitted Claims are not Clean Claims.

Please be sure to submit accurate Claims with correct codes. The submission clarification codes for DCS for this year are 47 and 48.

- 47: Overrides Refill Too Soon for prorated Claims.
- 48: Overrides the next Claim after the prorated Claim that has a shortened supply to less days because of the prior Claim.

This change is in response to CMS requirement pursuant to 42 CFR section 423.153(b)(4)(i) that Medicare Part D Sponsors apply a daily Cost-Sharing rate when certain Prescriptions are dispensed by a network pharmacy for less than a 30-day supply.

As a result, Medicare Part D Sponsors will be able to apply a lower, prorated Cost-Sharing amount when the Prescription is dispensed, which may:

- Lower costs to patients for trial fills for less than 30 days.
- Facilitate synchronization of Prescriptions through reduced cost sharing.
- Reduce instances of unused Covered Prescription Services.

DCS requirement applies to the first fills/refill synch and any fill of less than one month, unless the Drug Product is one of the following exempt Drug Products:

- Antibiotics and Drug Products dispensed in their original container as indicated in the FDA prescribing information.
- Drug Products dispensed in their original packaging to help patients with compliance.

## O. Medicare Part D sixty (60) day negative formulary change notice

Notice of Negative Formulary changes will be available online and disseminated periodically through Faxblast Communication to Network Pharmacy Providers sixty (60) days prior to the removal or adverse change in the preferred or tiered Cost-Sharing status of a Medicare Part D drug. In certain cases for FDA market withdrawals, the notice may or may not be retrospective. The posting will include:

- The name of the affected covered Medicare Part D Drug Product.
- Information on whether the covered Medicare Part D Drug Product is being removed from the Formulary, or adversely changing its preferred or tiered Cost-Sharing status.
- The reason why the covered Medicare Part D Drug Product is being removed from the Formulary, or changing its preferred or tiered Cost-Sharing status.
- Alternative Drug Product in the same therapeutic category, class or Cost-Sharing tier, and the expected cost sharing for that Drug Product. The means by which Members may obtain an updated coverage determination or an exception to a coverage determination.

Affected Members will also be notified in the Explanation of Benefits (EOB) about a Formulary change sixty (60) days before it takes effect.

**OptumRx Provider Manual:** 11th edition                                                                 72

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



# P. Medicare Part D annual notice of change for continuing members

Each fall, Members receive an Annual Notice of Change (ANOC) packet from their Medicare Part D Sponsor. Packet materials identify changes in the benefit for the coming year. Changes explained in the packet become effective January 1 and will apply through December 31 of the upcoming plan year.

A Member may notice that a Formulary Drug Product he or she is currently taking is either not on the upcoming year's Formulary, Cost-Sharing has changed, or coverage is limited in the upcoming year. In this case, the Medicare Part D Sponsor will work to prospectively transition current Members that are affected by negative Formulary changes in the new contract year.

If the Member is unable to transition to another product prior to the new benefit year, the Member will be entitled to a one (1) time transition fill during the first ninety (90) days of the new benefit year.

# Q. Best available evidence (BAE)

## All pharmacy types EXCLUDING LTC providers

If a Member questions their Cost-Sharing Amount, or states they qualify for federal subsidy or "extra help," they must have valid supporting documentation in order to receive the lower Cost-Sharing Amount. Any of the following documents are acceptable and meet the criteria as Best Available Evidence (BAE) to support a Member's qualification for federal subsidy:

- A copy of the beneficiary's Medicaid card that includes the beneficiary's name and eligibility date status during a month which occurred after June 30 of the previous calendar year;
- A copy of a State document that confirms active Medicaid status during a month which occurred after June 30 of the previous calendar year;
- A printed document from the State electronic enrollment file showing Medicaid status during a month which occurred after June 30 of the previous calendar year;
- A screen print from the State's Medicaid systems showing Medicaid status during a month which occurred after June 30 of the previous calendar year;
- Other documentation provided by the State or CMS showing Medicaid status during a month which occurred after June 30 of the previous calendar year;
- A copy of the Social Security Administration (SSA) award letter for those individuals who are not deemed eligible, but who apply for and are found to be Low Income Subsidy ("LIS") eligible.

To correct a Member's subsidy level utilizing BAE, please secure one (1) of the above documents from the Member and contact Customer Service at the phone number provided on the back of the Member's ID card.



- Provided the documentation received meets the BAE criteria, the Member's copayment will be adjusted within forty-eight (48) to seventy-two (72) hours of receipt of BAE documentation.
- Reprocess the Prescription(s) to capture the lower copayment amount.
- If you have any questions on BAE, please contact Customer Service at the phone number provided on the back of the Member's ID card.

**OptumRx Provider Manual:** 11th edition                                                73

The information contained in this document is proprietary and confidential to OptumRx.



**LTC providers ONLY**

If a Member questions their Cost-Sharing Amount, or states that they qualify for the institutional status zero (0) cost sharing, they must have valid documentation supporting this position in order to receive the zero (0) copayment amount. Any of the following documents are acceptable and meet the criteria as Best Available Evidence (BAE) supporting a Member's institutional status and qualification for zero (0) cost sharing:

- A remittance from the facility showing Medicaid payment for a full calendar month for the beneficiary during a month after June 30 of the previous calendar year;

- A copy of the state document that confirms Medicaid payment for a full calendar month for the beneficiary during a month after June 30 of the previous calendar year;

- A screen print from the State's Medicaid systems showing the beneficiary's institutional status for at least a full calendar month stay for Medicaid payment purposes during a month after June 30 of the previous calendar year.

To correct a Member's subsidy level utilizing BAE, please secure one (1) of the above documents from the Member and contact Customer Service at the phone number provided on the back of the Member's ID card.



- Provided that the documentation received meets the BAE criteria, the Member's copayment will be adjusted within forty-eight (48) to seventy-two (72) hours of receipt of BAE documentation.

- Reprocess the Prescription(s) to capture the lower copayment amount.

- If you have any questions on BAE, please contact Customer Service at the phone number provided on the back of the ID card.

## R. Part D mail order, home delivery or other automatic delivery program

### Initial/New Prescriptions

CMS guidance states that Network Pharmacy Providers who are contracted to offer Mail order, home delivery or other automatic delivery programs are required to obtain Member or authorized representative consent prior to delivery if the Prescription was electronically transmitted (i.e. by fax or electronic Prescription) directly to the Pharmacy and if the Member has not had previous Mail order, home delivery or automatic shipment experience with that Pharmacy. If the Member has experience using Mail order or other automatic delivery programs at the Pharmacy, they do not need to establish additional consent.

Any paper Prescription submitted by the Member or authorized representative to the Pharmacy means the Member is electing to have the Prescription order(s) filled at the Pharmacy, so separate consent is not required. In other words, the act of submitting or Mailing a Prescription by the Member or authorized representative demonstrates consent.

Network Pharmacy Providers are required to maintain documentation showing the Member or authorized representative consent to fill the Prescription or a history of previous Mail order, home delivery or automatic shipment experience with the Pharmacy. This documentation should be made available to the Administrator or Medicare Part D Sponsor upon request.

**OptumRx Provider Manual:** 11th edition                                                                                          74

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

**OPTUMRx®**

**Refill Prescriptions**

CMS guidance states that Network Pharmacy Providers who are contracted to offer Mail order, home delivery or other automatic delivery programs need to obtain Member consent prior to shipping Prescriptions when the Member or their authorized representative did not initiate the request (e.g. Prescriptions faxed by the Prescribing Physician, electronic Prescriptions or refills prompted by auto-fill systems) unless the Member has previous Mail order home delivery or automatic shipment experience with that Pharmacy. The Pharmacy doesn't need to obtain consent to deliver a Prescription or refill that was prompted by the Member.

Network Pharmacy Providers are required to maintain documentation showing the Member or authorized representative consent to fill the Prescription or a history of previous Mail order, home delivery or automatic shipment experience with the Pharmacy. This documentation should be made available to the Administrator or Medicare Part D Sponsor upon request.

## S. Qualified medicare beneficiary coverage — coordination of benefits (COB) for Part B drugs

Network Pharmacy Providers are required by CMS regulations to coordinate benefits with any secondary plan for dual-eligible Qualified Medicare Beneficiaries (QMB). QMB Members with Medicare Advantage-Prescription Drug programs are eligible to have any coinsurance for Part B Drug Products and supplies coordinated with their secondary plan (e.g. a state Medicaid plan) when secondary benefit information is presented to the Network Pharmacy Provider by the QMB Member. Upon knowledge, Network Pharmacy Providers are required by CMS to coordinate benefits with any secondary coverage even if such secondary coverage does not allow processing via a POS System. The Network Pharmacy Provider should be billing the balance due to Medicaid as a secondary payer, as Medicaid should cover all Part B cost sharing for QMB Members. If the Network Pharmacy Provider cannot successfully bill Medicaid or is getting a rejection from Medicaid for any reason, the Network Pharmacy Provider is required by CMS guidelines to dispense the Part B Drug Product/supply and not collect any cost sharing from the QMB Member. Network Pharmacy Providers may be allowed to submit claims to the applicable Medicaid program via paper if electronic submission is not applicable.

CMS language on this issue: http://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNMattersArticles/downloads/se1128.pdf

Excerpt: "All Medicare physicians, providers, and suppliers who offer services and supplies to QMBs must be aware that they may not bill QMBs for Medicare Cost-Sharing. This includes deductible, coinsurance, and copayments, known as "balance billing." Section 1902(n)(3)(B) of the Social Security Act, as modified by Section 4714 of the Balanced Budget Act of 1997, prohibits Medicare providers from balance billing QMBs for Medicare cost sharing. QMBs have no legal obligation to make further payment to a provider or Medicare managed care plan for Part A or Part B cost sharing. Providers who inappropriately bill QMBs for Medicare Cost-Sharing are subject to sanctions."

## T. Medicare supplier number

Administrator encourages Network Pharmacy Provider to obtain and maintain for each Pharmacy a Medicare Part B supplier number pursuant to 42 CFR § 424.57. Network Pharmacy Provider agrees to inform Administrator of the Medicare Part B supplier number assigned to those Pharmacies which have obtained such supplier numbers from CMS for record-keeping-purposes and to identify those Pharmacies as having Medicare Part B supplier numbers in the pharmacy network directories maintained by or on behalf of Administrator's Clients.

Contents

Back

Next

Previous

Exit

OptumRx Provider Manual: 11th edition                                                                 75

The information contained in this document is proprietary and confidential to OptumRx.

OPTUMRx®

## U. Medicare notice of patients rights

Network Pharmacy Provider must comply with all CMS regulations regarding the provision of written notices to Medicare Members. To demonstrate compliance, Network Pharmacy Provider must:

Demonstrate and provide documentation to detail the process by which each Member receives the communication entitled Notice of Patient Rights (CMS document 10147) during each rejection (rejection type 569); Display the sign in the Network Pharmacy Provider waiting area or distributing to a new Member does NOT meet the requirement; If a Member is not physically present at the time the rejection has occurred, the Member must be notified of the Claim rejection and the Medicare Notice of Rights is available to them at the Pharmacy or can be mailed to the Member; Active work on a rejection, such as working with the Prescriber for Drug Product change or coverage such as a PA, does NOT remove the requirement to provide the notice. The Member should still be supplied the notice with information on any actions the Network Pharmacy Provider is taking.

## V. Compliance CTMS

All Medicare Advantage Organizations, Medicare Part D Sponsors, MMP and Medicaid Managed Care Organizations are required to have developed a compliance plan which meets regulatory requirements (Chapter 42 of the CRF, Parts 422 and 423) are reasonably designed, implemented, enforced so that it generally will be effective in preventing and detecting noncompliance with regulatory requirements, including program-specific (for example Medicare Part D) requirements, as well as preventing, detecting potential criminal or fraudulent conduct. Administrator has a compliance plan in place which is in alignment with Federal Sentencing Guidelines among other things, supports the monitoring and detection of FWA within federal programs.

Administrator, our Client Medicare Advantage Organizations, Medicare Part D Sponsors, MMP and Medicaid Managed Care Organization Compliance Plans include the following recommended elements around which our program has been built:

1. **Written policies and procedures:** Standards of conduct to assist employees, independent contractors, as well as agents to comply with applicable laws, including Medicare and Medicaid.

2. **Compliance officer/compliance committee:** Designation of a compliance officer and compliance committee.

3. **Education and training:** Education and training programs for appropriate Network Pharmacy Providers employees which include among other things, the Network Pharmacy Provider's standards of conduct, as well as ethical and compliance expectations.

4. **Effective lines of communication:** A process to report violations of the standard of conduct.

5. **Monitoring and auditing:** A system to monitor and audit activities within the Network Pharmacy Provider for compliance with applicable laws.

6. **Enforcement and discipline:** A system to respond to allegations of violations of the standard of conduct and procedures to enforce appropriate disciplinary action against employees, independent contractors and agents who have violated the standards of conduct. In addition, the Network Pharmacy Provider must have a system to monitor whether employees, independent contractors and agents have been sanctioned by the Medicare or Medicaid Programs upon hire (at least monthly). Network Pharmacy Providers should be aware Administrator and/or Benefit Plan Sponsors shall not pay for drugs provided by a Network Pharmacy Provider excluded by either the Office of Inspector General's (OIG) — U.S. Department of Health and Human Services (HHS) ~ List of Excluded Individuals/ Entities (LEIE) or General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS) pursuant to 42 CRF § 1001.1901.

Contents

Back

Next

Previous

Exit

Contents

Back

Next

Previous

Exit

a. Pharmacies must check these lists upon hire and at least monthly to ensure employees working with Medicare business have not been excluded from Federal program participation. Pharmacy staff can check these lists by using the following links:
   i. OIG: http://oig.hhs.gov/exclusions/index.asp
   ii. GSA: https://sam.gov/index.html/

7. **Responding to detected offenses and developing corrective action initiatives:** A system to investigate allegations of noncompliant behavior by employees, independent contractors, or agents. Benefit Plan Sponsors, FDR entities (including Network Pharmacy Providers) should initiate an investigation immediately, but not later than two (2) weeks from the date that a potential fraud matter is identified. If, upon investigation, the Network Pharmacy Provider believes that potential misconduct has occurred, the Network Pharmacy Provider should report the alleged activity to the Administrator Pharmacy Help Desk using the contact information provided in Section II of this PM. In addition, the Network Pharmacy Provider may report this information to any of the following:

a. Customer services number identified on the back of a Member's ID card.
b. Medicare Integrity Contractor (MEDIC) at 1-877-7SAFERX or **(1-877-772-3379).**

In addition, Administrator and Benefit Plan Sponsors monitor Network Pharmacy Providers who have been the subject of complaints, investigations, violations and prosecutions. Upon notification of potential issues, Administrator may request information regarding the corrective action initiatives implemented by the Network Pharmacy Provider to identify or prevent the identified misconduct from recurring.

8. **FWA:** Administrator has a zero-tolerance policy for FWA; will administer corrective action up to and including reclaim of the overpayments associated with FWA, and/or termination of the Agreement as warranted.

a. Network Pharmacy Providers must comply with all applicable laws and rules concerning compliance with federal requirements.
b. To obtain a copy of the CMS FWA and General Compliance Training Module (i.e. *Medicare Parts C and D* FWA *Training; Medicare Parts C and D General Compliance Training*) click the following: http://cms.hhs.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/ProviderCompliance.html

9. **Pharmacy provider marketing activity:** CMS has issued instruction, included in the Medicare Marketing Guidelines Manual, on provider marketing activities. CMS is concerned with a Network Pharmacy Provider marketing activities, because a Network Pharmacy Provider may not be fully aware of all Benefit Plans and Cost Sharing Amounts. This may confuse the Member if the Network Pharmacy Provider is perceived as acting as an agent of the Benefit Plan Sponsor versus acting as the Member's Network Pharmacy Provider as the Network Pharmacy Provider may face conflicting incentives when acting as a Benefit Plan Sponsor representative. Therefore, Network Pharmacy Providers are not permitted to specifically market any Benefit Plan.

To the extent that a Network Pharmacy Provider can assist a beneficiary in an objective assessment of his/her needs and potential options to meet those needs, they may do so. Therefore, a pharmacy may engage in discussions with beneficiaries, should a beneficiary seek advice. However, a pharmacy must remain neutral when assisting with enrollment decisions and may **NOT**:

• Offer sales/appointment forms.

• Prepare, accept or submit Medicare enrollment applications.

• Make phone calls or direct, urge or attempt to persuade beneficiaries to enroll in a specific plan based on financial or any other interests of the provider.



- Mail marketing materials on behalf of Benefit Plan Sponsors.

- Offer anything of value to induce plan enrollees to select them as their provider.

- Offer inducements to persuade beneficiaries to enroll in a particular plan or organization.

- Conduct health screening as a marketing activity.

- Accept compensation directly or indirectly from the plan for beneficiary enrollment activities.

- Distribute materials/applications within an consultation area.

Network Pharmacy Providers **MAY:**

- Provide the names of Benefit Plan Sponsors with which they contract and/or participate.
- Provide information and assistance in applying for the Low Income Subsidy (LIS).
- Make available and/or distribute plan marketing materials when made available to pharmacy.
- Refer their patients to other sources of information, such as:
  — State-Health Insurance Assistance Programs (SHIPs) plan marketing representatives
  — State Medicaid Office
  — Local Social Security Office
  — CMS website at http://cms.hhs.gov/ or 1-800-MEDICARE **(1-800-633-42273)**
    – Share information with patients from CMS website, including the
      • Medicare and You Handbook or Medicare Options Compare (from medicare.gov); or
      • Other documents that were written by or previously approved by CMS

### CMS complaints tracking module (CTM)

Centers for Medicare & Medicaid Services (CMS) communicates complaints from beneficiaries and providers via CTM to the Medicare Part D Sponsor; CMS expects these to be promptly acknowledged, investigated and resolved in accordance with applicable regulations/guidelines.

If a CTM regarding Network Pharmacy Provider is received, the Administrator will notify the individual Network Pharmacy Provider identified in the complaint. Network Pharmacy Providers are expected to provide an initial response to the complaint within twenty-four (24) hours and work to resolve completely within seven (7) calendar days. Failure to be compliant could result in corrective action and/or termination of the Agreement as warranted.

## W. DUR medicare Part D therapeutic dose limits edits

The Administrator Therapeutic Dose Limits (THERDOSE) screening within the concurrent DUR program applies safety edits which minimize the risk of medication overutilization. The rules monitor for total daily medication use above the FDA approved maximum dosing across multiple claims at the ingredient level. Currently the Administrator standard includes Soft Rejects when a Member exceeds the acetaminophen maximum daily dose and returns messaging only for several other therapeutic categories. Administrator will also reject oral diabetes products (i.e. single ingredient and multiple ingredients) which exceeds the FDA approved maximum dosing in order to align with CMS' Patient Safety Monitoring program for these Drug Products. Pharmacies can override the soft reject to expedite successful adjudication of THERDOSE rejections (DUR Reject 88) at POS (point-of-sale).

**OptumRx Provider Manual:** 11th edition                                                                                              78

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



## DUR/PPS codes (reason, professional, and result codes):

Pharmacists should use their professional judgment to review and override a THERDOSE Soft Reject. The Pharmacist will need to identify and enter the appropriate DUR/PPS Reason, Professional, as well as the Result codes for each component. This information is then collected and used to respond to CMS' Acetaminophen Overutilization Monitoring Program cases and will also be used to review CMS Diabetes Medication Dosage Patient Safety Reports. If a Pharmacist receives this specific type of error (DUR Reject 88), the following steps should be followed.

1. Review the Member profile to identify why the Member is filling greater than the FDA approved maximum dose.

2. Consult with the appropriate clinicians and/or the Member as needed

3. Based on your clinical judgment, determine if the Drug Product should be dispensed

4. Determined appropriate, override the rejection by identifying and entering the appropriate Reason, Professional, and Result code for each component.

   a. Reason code below should auto-populate; if not, then use the Reason Code below of HD (High Dose Alert).

   b. Select the appropriate Professional and Result codes from the list provided below.

5. Each component is only allowed to have one code.

> The pharmacist will need to identify and enter the appropriate DUR/PPS Reason, Professional, and Result codes for each component. Appropriate code options are provided in the following lists 1 and 2.

1. Reason for Service Code: HD High Dose Alert

2. Professional Code Values and Result Code Values:

| Professional Codes | Description | Result Codes | Description |
|---|---|---|---|
| M0 | Prescriber Consulted | 1A | Filled As Is,False Positv |
| M0 | Prescriber Consulted | 1B | Filled Prescription As Is |
| M0 | Prescriber Consulted | 1C | Filled,Different Dose |
| M0 | Prescriber Consulted | 1D | Filled,Different Directns |
| M0 | Prescriber Consulted | 1F | Filled,Different Quantity |
| M0 | Prescriber Consulted | 2A | Prescription Not Filled |
| M0 | Prescriber Consulted | 3C | Discontinued Drug |
| M0 | Prescriber Consulted | 3D | Regimen Changed |
| M0 | Prescriber Consulted | 3E | Therapy Changed |
| P0 | Patient Consulted | 1A | Filled As Is,False Positv |
| P0 | Patient Consulted | 3K | Instructions Understood |
| R0 | Pharmacist Consulted Othr | 1A | Filled As Is,False Positv |
| R0 | Pharmacist Consulted Othr | 1B | Filled Prescription As Is |
| R0 | Pharmacist Consulted Othr | 1C | Filled,Different Dose |
| R0 | Pharmacist Consulted Othr | 1D | Filled,Different Directns |

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



| R0 | Pharmacist Consulted Othr | 1F | Filled,Different Quantity |
|----|---------------------------|-----|---------------------------|
| R0 | Pharmacist Consulted Othr | 2A | Prescription Not Filled |
| R0 | Pharmacist Consulted Othr | 3C | Discontinued Drug |
| R0 | Pharmacist Consulted Othr | 3D | Regimen Changed |
| R0 | Pharmacist Consulted Othr | 3E | Therapy Changed |

The following example illustrates the use of the DUR/PPS codes related to a THERDOSE edit reject:

- A Member presents a Prescription for hydrocodone/APAP (10/325mg) with a quantity = 100 and day supply = 10.
- The pharmacist attempts to process the claim and receives a 'DUR Reject 88' (THERDOSE).
- The pharmacist reviews the patient profile and discovers the member recently filled an oxycodone/APAP (5/325mg) Prescription with quantity = 60 and day supply = 15.
- The overlap of the 2 Prescriptions caused the THERDOSE edit to be triggered.
- The pharmacist consults with the prescriber and determines that the oxycodone/APAP product is being discontinued.
- The pharmacist then enters the appropriate Reason, Professional, and Result codes and then re-submits the claim.
- In this scenario, an appropriate combination would be as follows:
  — HD (High Dose Alert)
  — M0 (Prescriber Consulted)
  — 3C (Discontinued Drug)
- The entering of the above codes resolves the DUR Reject 88 for THERDOSE.

The information contained in this document is proprietary and confidential to OptumRx.



# VII. Compliance; fraud, waste and abuse (FWA); audits



Contents

Back

Next

Previous

Exit

The information contained in this document is proprietary and confidential to OptumRx.



# A. Network pharmacy provider FWA and general compliance training

You are required to report any suspected or potential FWA.

**Network Pharmacy Providers with a legacy OptumRx Agreement:**

 Report an incident, please contact the Pharmacy Network Relations Department at **1-800-613-3591** or via email to **pharmacyprograms@optum.com**.

**Network Pharmacy Providers with a legacy CatamaranRx Agreement:**

 Report an incident, please contact the FWA hotline toll-free number at **1-888-625-5685**, available any time, 24 hours a day, seven days a week.

Network Pharmacy Provider must notify Administrator if Network Pharmacy Provider has reason to believe potentially fraudulent Prescription or inappropriate Claims activity is occurring. Client(s) or Benefit Plan Sponsors, FDR entities (including Network Pharmacy Providers) should initiate an inquiry immediately, but no less than two (2) weeks from the date a potential fraud matter has been identified. If, upon investigation, the Network Pharmacy Provider believes a potential misconduct has occurred, the Network Pharmacy Provider may also report the alleged activity to any of the following:

- Customer service number identified on the back of a Member's ID card

- National Benefits Integrity Medicare Drug Integrity Contractor (NBI MEDIC)

 1-877-7SAFERX (1-877-772-3379)

Administrator actively investigates and refers fraudulent/abusive activity of any kind by any of its contracted Network Pharmacy Providers, associates, Members, vendors, contractors and/or other business entities. Administrator contracts with Clients and Benefit Plan Sponsors, some of which provide service to Medicare or Medicaid beneficiaries. These Clients are required by CMS to have a comprehensive plan to detect, correct and prevent FWA. Specifically, a Network Pharmacy Provider involved in providing services for Medicare Part D Members is responsible for implementing a program to control FWA and to facilitate compliance in the delivery of Covered Prescription Services through the Medicare benefit. Network Pharmacy Providers must cooperate and assist any state or federal agency charged with the duty of identifying, investigating, sanctioning or prosecuting suspected FWA.

Network Pharmacy Providers must provide original and/or copies of any and all information as requested by any such state or federal agency, allow access to premises, as well as provide records to any state or federal government unit or investigating agency, upon request (i.e. free-of-charge).

If Network Pharmacy Providers suspect any fraud and abuse by a member or Managed Care Organization (MCO), the Network Pharmacy Provider must report this to the applicable state or federal agency.

Please see the link below to review instructions for completing the training and complying with other compliance requirements.

https://optumrx.com/RxsolHcpWeb/cmsContent.do?pageUrl=/HCP/HealthcareProviderTools/FraudWasteAndAbuse

 Completing the annual CMS FWA and general compliance training is required by your Administrator network contract and is your obligation as a recipient of Medicare Part D or any other government funds.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



## Common FWA schemes to avoid

Network Pharmacy Providers should be aware there are schemes perpetrated by Prescribers and Members.

 The following is a list of types of FWA which could be perpetrated by Prescribers. This is included for educational purposes only and is not an all-inclusive list:

- **Illegal remuneration schemes:** Prescriber or Member is offered, paid, solicited or receives unlawful remuneration to induce or reward them for inappropriate behavior. An example of an illegal remuneration scheme would be when a Prescriber receives something of value for writing Prescriptions for medically inappropriate or unnecessary drugs or products or to induce the Prescriber to prescribe certain Drug Products rather than others. Another example would be when a Network Pharmacy Provider waives a Member's Cost Sharing Amount to encourage their patronage.

- **Script mills:** Provider writes Prescriptions for Drug Products or Compounded Drugs that are not medically necessary, often in mass quantities, and often for patients that are not his or hers.

  — Member presenting a Prescription not written by the Prescriber identified;

  — Member presenting a forged or altered Prescription, calling in their own Prescriptions, over-utilizing Prescriptions, selling their Prescriptions or Membership information;

  — Drug Products inconsistent with the practice or specialty of a Prescriber;

  — Illegal remuneration schemes;

  — Prescriptions not medically necessary

  — Cash or other benefits to switch Drug Products to prescribe certain Drug Products.

- **Inappropriate relationships with health care provider:** Potentially inappropriate relationships between pharmaceutical manufacturers and Prescribers, such as "switching" arrangements to induce a Prescriber to switch the prescribed drug from a competing product; incentives offered to Prescriber to prescribe medically unnecessary drugs; consulting and advisory payments, payments for detailing, business courtesies and other gratuities, educational and research funding; improper entertainment or incentives offered by sales agents.

- **Illegal usage of free samples:** Providing free samples to Prescribers knowing and expecting those Prescribers to bill the federal health care programs for the samples.

- **Phantom claims billing:** Network Pharmacy Provider submits Claims for services or products not provided.

 The following is a list of types of FWA which could be perpetrated by Members, including beneficiaries enrolled in the Medicare Part D Program. This is included for educational purposes only and is not an all-inclusive list:

- **Overutilization and drug-seeking members:** The number of persons admitting to Abuse of controlled substances has increased in the past decade. Abuse has risen dramatically in Prescription drugs.

- **Altered and forged Prescriptions:** Member alters the quantity and/or strength on a valid Prescription or illegally creates Prescriptions using stolen or forged Prescription pads or by other methods of FWA.

- **Pharmacy hopping and doctor shopping:** Persons that visit numerous doctors to obtain Prescriptions for Prescription drugs and/or controlled substances and visit numerous pharmacies to facilitate the filling of excessive quantities of Prescription drugs.

- **Prescription diversion and inappropriate use:** Members obtain Covered Prescription Services from a Network Pharmacy Provider and give or sell these Covered Prescription Services to someone else. This can also include the inappropriate consumption or distribution of a Member's Covered Prescription Services by a caregiver or anyone else.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



- **Resale of drugs on black market:** Member falsely reports loss or theft of drugs or feigns illness to obtain drugs for resale on the black market.

- **Misrepresentation of status:** A Medicare Member misrepresents personal information, such as identity, eligibility or medical condition in order to illegally receive Medicare benefits.

- **Theft of prescriber identifiers:** Drug Enforcement Administration (DEA) number, Prescription pad, or e-prescriber authentication (login) information for creating fabricated Prescriptions.

 The following is a list of types of FWA that could be perpetrated by a Network Pharmacy Provider and result in audits, as well as sanctions including termination of your participation in Administrator networks. This is included for educational purposes only and is not an all-inclusive list:

- **Billing for a Brand Name Drug and a dispensing a Generic Drug**

- **Billing of an NDC for other than what was dispensed**

- **Overbilling of quantity prescribed**

- **Billing multiple payers for the same Prescriptions**

- **Inappropriate billing of Compounded Drugs**

- **Submitting a dummy DEA/NPI or Invalid DEA/NPI numbers to obtain a paid response**

- **Billing for a Brand Name Drug with Dispense as Written per the Prescriber (DAW 1) when a Prescriber has not specified "Do Not Substitute" on the Prescription or other inappropriate use of DAW codes**

- **Billing for larger pack sizes when one smaller pack size will meet the directions of the Prescriber and remain within the Benefit Plan's maximum days' supply**

- **Billing for more fills or refills than were authorized**

- **Splitting Prescriptions into multiple Claims to obtain multiple dispensing fees or undermine a PA or quantity limits, etc.**

- **Billing for invalid Prescriptions due to lack of a legal Prescriber, forgery, or false or fictitious documents**

- **Dilution of Drug Product provided to Member/consumer**

- **Acquisitions of Prescription drugs on black market and black market sales**

- **Collusion with Prescribing Physician, wholesaler or others and kickback schemes**

- **Pill shorting to Members/consumer**

- **Dispensing less than quantity billed**

- **Selling the same Drug Product twice**
  — Recycling pills

- **LTC Network Pharmacy Provider billing for unused Covered Prescription Services and not applying credit to Member**

- **Inappropriate, inaccurate or incomplete record-keeping practices related to billed Prescriptions**

- **Prospective billing**

- **Prescription drug switching involves the billing for one drug but dispensing a different drug**

**OptumRx Provider Manual:** 11th edition 84

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



- **Phantom Claims billing where provider submits Claims for services or products not provided**

- **Dispensing expired or adulterated Prescription Drug Products**

  — Forging or altering Prescriptions

- **Refilling Prescriptions erroneously**

- **Billing for non-existent Prescriptions**

- **TrOOP manipulation**

- **Manipulation of quantity limits**

## Network pharmacy provider FWA attestation

Network Pharmacy Providers are required to maintain proper policies and procedures related to training on Compliance, as well as FWA. Compliance and FWA training is an important component of Network Pharmacy Provider operations and is required to be completed upon initial hire, as well as annually for all local, state and federally funded pharmacy benefit programs. An important part of the Medicare, Medicaid and Medicare-Medicare Enrollees (MME) programs are controlling FWA. For this reason, the CMS has required all Medicare Advantage Organizations (MAOs), Medicare-Medicaid Plans (MMPs), Medicare Part D (PDP), as well as Part D Benefit Sponsors require FWA and general compliance training with their FDR contracted entities. In addition, FDRs are required to monitor federal exclusions lists on a monthly basis, as well as annually distribute code or standards of conduct information. State Medicaid agencies have made similar requirements of their Medicaid plans. CMS and State Medicaid agencies have made such requirements of MME Plans, as well. On behalf of our Medicare Advantage Organizations, Medicare Part D Sponsors, Medicaid Plans and MME Plans, we are providing this training to all of our Network Pharmacy Providers.

Each year by December 31, Network Pharmacy Providers are required to electronically sign the CMS FWA Attestation to satisfy mandatory compliance requirements related to guidance from CMS. CMS has set forth expressed guidance within the Federal Register at Title 42 of the CFR, Parts 422 and 423 and other agency guidance requiring Medicare Advantage and Prescription Drug Medicare Part D Sponsor or their delegates, FDR entities to demonstrate compliance with the following:

1. Network Provider Pharmacy hereby verifies and certifies it has reviewed and conducted satisfactory annual FWA and general compliance training programs or has utilized the training program provided by CMS and also has provided staff with links to our Client(s) or Benefit Plan Sponsors Code of Conduct policies, which is located online at the following:

- **Network Pharmacy Providers participating in any of Administrator's Medicare Part D networks**
  https://optumrx.com/RxsolHcpWeb/cmsContent.do?pageUrl=/HCP/HealthcareProviderTools/FraudWasteAndAbuse

In addition, Network Pharmacy Provider hereby attests to no exclusion from participation in federal health care programs by checking their status in the exclusion lists maintained by the Office of Inspector General (OIG) U.S. Department of Health and Human Services (HHS) and U.S. General Services Administration (GSA) System for Award Management (SAM). Network Pharmacy Provider has reviewed the OIG-HHS and GSA-SAM lists prior to hire/contracting and monthly thereafter for its current employees/contractors, health professionals or subcontracted delegates, working with Plan Sponsor programs to ensure none are excluded from participating in these programs.

The information contained in this document is proprietary and confidential to OptumRx.



This information is available at the following sites:

- Office of Inspector General's (OIG) — U.S. Department of Health and Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE) — http://oig.hhs.gov/exclusions/index.asp
- General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS) — https://www.sam.gov/portal/SAM/#1

 Completing the annual CMS FWA and general compliance training is required by — Administrator's Agreement(s) and is your obligation as a recipient of Medicare Part D or any other government funds. CMS does not require that FDR entities adopt Client(s) or Benefit Plan Sponsors Code of Conduct policies, but that these sponsors distribute Code of Conduct policies to FDR contracting entities for the purposes of supporting CMS FWA and general compliance requirements.

As noted in the training materials, Network Pharmacy Provider must complete the CMS provided or other industry accepted FWA & General Compliance training module. This training must be completed by all employees within ninety (90) days of hire/contract and annually thereafter.

**Please Note:**
As per June 17, 2015 CMS memo, beginning in 2016 only CMS training materials located on the Medicare Learning Network (MLN) will be allowed and the content of these materials cannot be modified in order to ensure the integrity and completeness of the training.

A record of completion (i.e. training log) of the required CMS compliant FWA training for participating Network Pharmacy Providers should be maintained. Type of training, method, vendor, date, time should be noted and signoffs from the staff when required by Administrator, Clients or Benefit Plan Sponsors obtained. These logs must be maintained for a period of ten (10) years and made available immediately upon request to Administrator or Auditor in case of an audit, regulator request, etc.

It is not necessary to submit a copy of your training materials, training log, etc. to OptumRx Pharmacy Programs or Catamaran Provider Relations. You are only required to attest to the completion of annual training requirements, provide specific proof down to the employee/contractor level validating training was completed as per the provisions notated above and provide these documents annually, as well as upon request.

Non-compliance with this provision may result in remedies such as corrective actions or termination of the Network Pharmacy Provider from Administrator's networks. Unless agreed to by Administrator, a PSAO, must comply by providing a single attestation on behalf of its entire membership of Network Pharmacy Providers.

Should Network Pharmacy Providers not have access to the Internet, please feel free to contact OptumRx Pharmacy Programs or Catamaran Provider Relations to obtain additional information on how to maintain compliance.

You are required to report any suspected or potential FWA.

**OptumRx Provider Manual:** 11th edition

86

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



# B. Pharmacy audits (Audits)

## Audit policy statement

All Claims submitted to Administrator are subject to audit. The Administrator Pharmacy Audit Program helps to ensure Claims are submitted, dispensed in accordance with Administrator guidelines and the Network Pharmacy Provider complies with those guidelines, as well as the terms/conditions for participation in the applicable network.

The audit program also helps to protect against FWA.

Administrator or its authorized agent, governmental agencies or their representatives, (hereafter referred to as "Auditor"), shall have the right to audit Network Pharmacy Provider during normal business hours, typically with reasonable notice, fourteen (14) days to examine/audit the books, records, signature logs, files, equipment and their respective facilities of all Network Pharmacy Provider transactions which relate to any aspect of the performance of the Agreement including the transactions contemplated under the PM or Plan Specifications, as well as requirements set forth by Law. If Auditors are denied access to requested audit documents, 100% of the amount previously paid for the Claim(s) in issue becomes due immediately. Audits will be conducted in accordance with applicable laws and state regulatory guidelines.

Network Pharmacy Provider shall cooperate with Auditors and promptly provide access to all information or documents deemed necessary by Auditors. Auditors may reproduce any record at its own expense; however, no original copy may be removed from Network Pharmacy Provider's facilities. Auditor may report audit findings to Administrator's Clients, appropriate governmental entities, regulatory agencies and professional review and audit organizations.

The parties agree all audits will be conducted in accordance with applicable laws and any additional required language to be included in the Agreement or PM by such applicable laws shall be deemed included. During the term of the Agreement and for a period of five (5) years thereafter or in accordance with applicable law,

## Audit purpose

The purpose of the Administrator policy is:

1. To *validate* any and/or all of the following:
   a. Accuracy of paid Claims, contractual compliance, regulatory compliance, various aspects of Drug Product inventories, presence of required signage and/or documentation; and/or

2. To *observe* and photograph if necessary any and/or all of the following:
   a. Overall facility operations and conditions; and/or

3. To *monitor* for, *detect/prevent* FWA activities and/or transaction submission errors in the billing of Covered Prescription Services.

In-depth audits generally contain a larger number of transactions, include a comprehensive review of Prescriptions, as well as their supporting documentation, proofs of delivery, credentialing, licensure review, confirmation work and facility/ compliance reviews.

Audits may take the form of a phone call, on-site visit, or internal Claims review (desktop audit) and on-site facility reviews, client-directed or regulatory audits, investigational audits and or compliance reviews. The Network Pharmacy Provider will provide Administrator, Auditors, or its designee, during normal business hours, access to examine,

Contents

Back

Next

Previous

Exit

audit, scan and copy any and all records deemed by Administrator or Auditor as necessary to determine compliance with the terms of the Agreement and the PM. These audits are necessary for Clients or Benefit Plan Sponsors to comply with State and Federal requirements and Plan Specifications. Any discrepant Claims found during an audit will require reimbursement to Administrator. Audit recoveries will be deducted from future remittances to Network Pharmacy Provider. Should insufficient funds be available to offset such recoveries, Network Pharmacy Provider will be responsible to submit payment within fifteen (15) days of demand for payment.

Administrator routinely monitors online POS System Claims data and conducts audits on a continuous basis. In order to conduct these audits, Network Pharmacy Providers may be contacted by telephone, mail, fax, and/or email and are required to provide such records by the due date in a manner mutually agreeable by the parties, while at all times ensuring safe transmission of sensitive documentation.

## Procedures for audit compliance

Administrator will use best efforts to notify the Network Pharmacy Provider no less than two (2) weeks advance written notification of a pending in-depth audit involving Claims review. However, if Administrator suspects that the Network Pharmacy Provider has engaged in fraudulent activity, Administrator or Auditor may conduct an on-site audit without advance notice. Should the Network Pharmacy Provider refuse to allow Administrator or Auditor access to the pharmacy facilities, Administrator reserves the right to recover the full amount paid or due to the Network Pharmacy Provider for any Claims subject to the audit and may terminate the Network Pharmacy Provider for cause.

As a Network Pharmacy Provider you are required to maintain Prescription records (including copies of Prescriptions and signature logs) in accordance with the Agreement, including the PM, and with applicable state and federal regulations. Administrator may request such records from the Network Pharmacy Provider pursuant to a Client, Benefit Plan Sponsor, Government Authority or regulatory audit or inquiry. Network Pharmacy Provider is required to assist Administrator with the retrieval of such records in a timely manner to allow Administrator to meet the deadlines as set forth by the Client, Benefit Plan Sponsor, Government Authority or regulatory agency.

## On-site audits

- Network Pharmacy Provider will be contacted within seven (7) days prior to on-site audit with written or oral confirmation of date and an approximate time

- Network Pharmacy Provider must be adequately staffed to assist in the audit and answer any questions, retrieve information required and facilitate an effective on-site audit.

- Network Pharmacy Provider will provide Auditors a clutter-free work area, located away from the busiest areas of the dispensing department, with easy access to the required documents outlined in the audit notice

- Network Pharmacy Provider may not refuse a prescheduled on-site audit at the time of Auditor arrival. A denial of this request will be determined to be denial of access.

- Auditor must be given a safe work space with a sufficient work surface that has adequate lighting and access to an electrical outlet within the confines of the Network Pharmacy Provider.

- Auditors will attempt to minimize any disruption of business processes while on-site.

- Auditors must be given full access to the books, records, files, lists, signature logs and documentation associated with any and all transactions related to Administrator Claims submitted by the Network Pharmacy Provider. Auditor reserves the right to request copies or take digital images (i.e. scanned/photo) of aforementioned documents. A denial of this request will be determined to be denial of access.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

Contents

Back

Next

Previous

Exit

- Auditors must witness the physical extraction of original records from the Network Pharmacy Provider Archives (e.g., Network Pharmacy Provider records need to be pulled by Network Pharmacy Provider in view of the auditor). A denial of this request will be determined to be a denial of access.

- Auditor reserves the right to request copies/scanned images of original purchase invoices for Drug Products associated with the submitted Claims. Alternatively, a summary statement of purchases by NDC for the date range requested may be required to be requested of distributors by the Network Pharmacy Provider and be provided directly to Administrator by the distributor. Upon request, Auditor must be provided copies of drug pedigree documentation where applicable and copies of the front and back of all cancelled checks to support purchases. Also upon request, Auditor must be provided a comprehensive drug utilization report which includes all payers for NDCs requested (PHI redacted). A denial of this request will be determined to be denial of access.

- Auditor reserves the right for an extension of the original desk audit or on-site audit. A denial of this request will be determined to be denial of access.

- A denial of access is determined to be a breach of the audit provisions of the Agreement. The Network Pharmacy Provider may be subject to immediate suspension or termination for noncompliance.

- Access to Records and Audits. During the term of the Agreement and for a period of five (5) years thereafter, unless specifically restricted to a period of time less than five (5) years under state law Administrator or its designee shall have the right, upon reasonable notice and at reasonable times, to access, inspect, review, audit (including on-site and desktop audits) and make copies of the Records ("Administrator Audit"). In addition to the foregoing, Network Pharmacy Provider shall honor and accommodate all audit requests by Government Authority ("Governmental Audit"). Network Pharmacy Provider shall pay all costs incurred by Network Pharmacy Provider in connection with its provision of information for purposes of a Governmental Audit. The audit period shall, however, be ten (10) years in the case of Medicare Part D records.

- Network Pharmacy Provider must retain an Original Document of Record in its archives as required under State and Federal Law and for a period of no less than five (5) years from the date of the applicable transaction, and ten (10) years in the case of Medicare Part D records.

- Network Pharmacy Provider must provide a copy of any compound recipe worksheets identifying ingredients used in a Compounded Drug. Provider must submit all ingredients included in each compound and may only submit the NDC associated with the actual ingredients filled/dispensed.

- Each document as listed above is to be filed as an original document in the archives of the Network Pharmacy Provider, to be retrieved for inspection at the request for audit by Auditor.

- An original or digital image of the signature log will be accepted as audit evidence for receipt of goods.

- Network Pharmacy Provider will receive written disclosure of initial/preliminary audit findings subsequent to the field work for any in-depth audit.

- The Network Pharmacy Provider (or their pharmacy locations) will be given the opportunity to dispute any audit findings by filing an appeal within thirty (30) days, or as indicated by state law, from the receipt date of the initial/ preliminary audit results letter. Such documentation must be sent via certified mail or other method that evidences tracking such as FedEx, etc., to the attention of the Administrator Network Audit Manager, or as otherwise instructed in the initial/ preliminary audit results letter. Upon extenuating circumstances, a request for an extension may be granted at the sole discretion of Administrator. Receipt of such an extension request must be received in writing within the required thirty (30) days appeal time frame or as otherwise instructed in the initial/preliminary audit results letter. Failure to submit appeals by the time frame allowed will subject any applicable discrepancy to recoupment as indicated in the initial/preliminary audit results letter.

**OptumRx Provider Manual:** 11th edition                                                                 89

The information contained in this document is proprietary and confidential to OptumRx.

- Post-audit documentation must consist of original hard copies of Prescriptions (no verbal orders) or other original documentation as approved by Administrator.

- Final audit findings will be provided after the dispute period has lapsed, in accordance with any applicable state law, and with consideration of any dispute that was filed timely. Audit findings will indicate where a full or partial recoupment is necessary, or indicate that a finding is educational only. The Network Pharmacy Provider will receive a chargeback against future remittances until paid-in-full for any discrepancies found during the audit. Payments to Administrator are only necessary if the Network Pharmacy Provider is no longer operating, if there is no current Agreement in effect, or if insufficient payment activity is available to offset the chargebacks within a reasonable time period.

- Administrator at its sole discretion may elect to notify a PSAO of any significant audit findings, if the pharmacy in question is affiliated with a PSAO.

- Administrator shall have the right, with or without notice, at reasonable times, to perform a facility review to inspect the Pharmacy location for compliance. Request for copies or digital images (i.e. scanned/photo) of documents pertaining to the review may be requested. Pharmacy agrees to cooperate with Administrator during the on-site pharmacy facility review and acknowledges non-cooperation with such on-site pharmacy facility review may result in denial or termination of network participation.

- Facility reviews may include review, as well as documentation of all applicable licensures, proof of identification of employees, compliance with all state/federal regulatory requirements, proof of compliance with return to stock policy, which must be fourteen (14) days or fewer from the date Claims are submitted to Administrator, various other reviews and inquiries to assure that overall quality assurance measures are implemented.

- Facility reviews may require proof of compliance in providing the Medicare Prescription Drug Coverage and Your Rights notice to all Medicare Members when a Prescription cannot be covered ("filled") under Medicare Part D ("Part D") benefit in the POS System and the coverage determination results in a 569 reject response.

- Purchases for any Claims submitted to Administrator must be made from a licensed wholesaler as regulated by state and federal entities. This requirement includes the purchase of non-legend items (e.g. OTC, supplies). Network Pharmacy Provider must be able to document the source is authorized to include state or federal licensure, oversight by regulatory agencies to include the Food and Drug Administration (FDA), Drug Enforcement Administration (DEA) and ability to obtain pedigree information for Drug Products. Network Pharmacy Provider must promptly comply with any requests to produce such documentation. Any inter-pharmacy transfers must be accurately and completely documented in a manner consistent with state/federal laws, as well as industry standards.

## Documentation and submission expectations

- Network Pharmacy Provider shall maintain adequate Prescription, as well as financial records relating to the provision of Covered Prescription Services to our Members, including but not limited to: Network Pharmacy Provider books/databases, daily Prescription logs, patient profiles, Prescription hardcopies, Prescriber information, signature/delivery logs, refill information, wholesaler/manufacturer/distributor/all other purchase invoices, business records such as FWA training logs LEIE/EPLS verifications, availability of notices such as the CMS10147 and other state or federal required documents, policies, including other such documentation necessary for all Covered Prescription Services provided. Network Pharmacy Provider shall also maintain all policies and procedures related to maintenance of such records. Network Pharmacy Provider shall maintain/retain all records described herein for a no less than five (5) years from the date of the applicable transaction or as required by law and ten (10) years in the case of Medicare Part D records.

The information provided below is intended to clarify documentation expectations related to particular items to help Network Pharmacy Providers avoid problems and be prepared for an audit.

OptumRx Provider Manual: 11th edition                                                                 90

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



## Prescription records

All Prescription documentation, regardless of the way it has been created, generated, or transmitted shall contain the following:

- Full name of the Member for whom the Prescription was written, and the address of the Member along with a date of birth,
- Full name and address, telephone number and any other required identifiers of the Prescriber,
- Name, strength, and quantity of the medication prescribed,
- Specific dosing directions, if a Prescription contains ambiguous directions the Provider must clarify these directions and note the conversation to clarify,
- Substitution instructions where applicable, or substitution requested by Member clearly noted,
- Refill instructions,
- Miscellaneous or other informational notes as required by applicable laws or regulations, and
- Complete documentation of items, quantities to be dispensed, and directions for use for diabetic supplies and insulin.

Prescription records must be updated yearly, or such shorter period required by applicable law. If applicable law does not specify a time period, Administrator requires that Prescription hard copies be updated yearly.

Administrator recommends that Network Pharmacy Provider document as much information as possible on the Prescription itself, outlining any unusual circumstances that occurred while dispensing the Covered Prescription Service. Such notes may eliminate a question from the Auditor or help resolve a discrepancy.

The hard copy (original and any updates) of the Prescription, including telephone Prescriptions, must contain all data elements required by state pharmacy laws in which Network Pharmacy Provider is located and all Prescriber instructions — including Product Selection Code instructions — that support the Network Pharmacy Provider's Claim transmission.

Prescriptions in which the dosage/quantity is changed require either written documentation on the Prescription or a new hard copy Prescription to be issued. When the Prescriber writes as directed, a  documentation as to the exact directions or, at a minimum, the maximum (up to) dose of medication taken per day must be documented on the hard copy or electronically and be viewable upon request. Only Prescriptions generated by the Prescriber are accepted as post audit documentation for as directed Prescriptions.

If less or more medication (if permitted) is given than ordered by the Prescriber, the reason for this must be documented. Any increase in the amount of Drug Product over the original prescribing order must be documented for Prescriber authorization.

## Wholesaler, manufacturer, and distributor invoices

Wholesaler, manufacturer, and distributor invoices and other purchase invoices and documents must be accessible, maintained for a minimum of five (5) years or as required by law or regulation and ten (10) years in the case of Medicare Part D records to substantiate that the Drug Products dispensed were purchased from an authorized source regulated by the federal/state entities, to include valid licensure in the state the Drug Product is dispensed. Purchases for any Clean Claims submitted to Administrator must be made from a licensed wholesaler as regulated by state and federal entities. This requirement includes the purchase of non-legend items (e.g. over-the-counter supplies). Network Pharmacy Provider must be able to document that the source is authorized to include state or federal licensure, oversight by regulatory agencies to include the Food and Drug Administration (FDA) and Drug Enforcement

**OptumRx Provider Manual:** 11th edition                                                                                                      91

The information contained in this document is proprietary and confidential to OptumRx.



Administration (DEA), and ability to obtain pedigree information for Drug Products. Network Pharmacy Provider must promptly comply with any requests to produce such documentation. If Network Pharmacy Provider fails to promptly provide such requested documents, Network Pharmacy Provider may immediately offset 100% of the amount for any of the paid claims in question and impose additional fines or penalties. Network Pharmacy Provider shall remain responsible for the validation a wholesaler, from which they are provided Drug Products, has valid pedigree. Network Pharmacy Provider shall maintain adequate records to further validate purchases from wholesalers to include canceled check information available for audit.

Network Pharmacy Provider may not enter into a captive pharmacy arrangement, whereby the pharmacy enters into agreement for the marketing and dispensing of Drug Products specifically for a manufacturer without disclosure to Administrator, as well as written permission by Administrator.

## Signature log — hard copy or electronic

Network Pharmacy Provider shall require the signature of the Member or the Member's representative on a permanent record before dispensing any Prescription. All logs must be maintained for all Claims submitted on-line via the POS System to Administrator.

At each Network Pharmacy Provider location, Network Pharmacy Provider shall maintain a hard copy or, if pre-approved by Administrator, an electronic or manual signature log which contains the following: the Prescription number; the date the Drug Product is received by the Member; and the signature of each Member who receives a Drug Product or the signature of his/her designee, and the authorization to release information to a third party program.

Network Pharmacy Provider must obtain a legible written signature or electronic capture that corresponds to a matched printed name or another authorized person to confirm receipt of the Prescription product. Capture of non-signature data elements to document receipt of the Covered Prescription Service (e.g. electronic delivery notice or point of sale information) must be only upon express permission of Administrator. Proper verification of the person picking up the Covered Prescription Service is essential to ensure the deterrence of potential fraud and abuse.

- If delivered to a home or business address, Network Pharmacy Provider must obtain the signature of the Member or his/her designee at the time of delivery.
- If patient is sent monthly billing statements, Network Pharmacy Provider may insert a form listing the dates of fill and Prescription numbers; the eligible Member or authorized representative should be instructed to sign and return the form with his/her payment.
- Provider using mail services must include information to document tracking of shipment, confirmation of delivery, or other proof of delivery.

These Prescription signature logs must be in date order where appropriate and readily accessible.

## Insulin and diabetic supplies

Provider may only submit the NDC associated with the actual insulin or diabetic supply filled and dispensed. Diabetic insulin and supply must be calculated to accurately submit the days' supply. Directions notated as needed or as directed require a documented interaction with the Prescriber or Member on the Prescription.

If Prescriber indicates as directed or as directed as per sliding scale, Network Pharmacy Provider must obtain the dosage range, note it on the Prescription hard copy, and calculate the days' supply by using the maximum (up to) daily dosage. The directions may be obtained by direct communications with either the Member or Prescriber.

OptumRx Provider Manual: 11th edition                                                                    92

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



Contents

Back

Next

Previous

Exit

## Inhalers and inhalation products

When submitting a Claim, enter the quantity to be dispensed exactly as written by the Prescriber on the Prescription form. Dispensing limitations vary widely among Benefit Plans. Depending on the Member's medical condition, it may be necessary to dispense more than one inhaler. If Benefit Plan design allows and the Prescriber writes accordingly, the Member may obtain more than one inhaler per Prescription.

## Ophthalmic products

Eye drops should be calculated using 15 drops per mL, unless a more specific drop per mL or uses/package exists. Prescriptions with defined length of therapy may use that period for days' supply when smallest package size available in the market for therapy is used (e.g. 5ml ophthalmic with acute therapy of 5 days).

| 15 GTTS/ | 2.5ml | 5ml | 10ml | 20ml |
|----------|-------|-----|------|------|
| One | 37 | 75 | 150 | 225 |
| Two | 18 | 37 | 75 | 112 |
| Three | 12 | 25 | 50 | 75 |
| Four | 9 | 18 | 37 | 56 |

\* If the minimum quantity as represented by the manufacturer's smallest available unit-of-use causes a rejection, with notation of a maximum days' supply, it is allowable to resubmit with the communicated days' supply which represents the plan maximum.

## Desktop and telephone audits

Administrator conducts desktop audits and investigational audits to verify the accuracy and validity of Claim submissions. Network Pharmacy Providers are typically contacted via telephone, fax, or mail and asked to provide photocopies of specific documents and records related to Claims paid to Network Pharmacy Provider by Administrator during a specified period. Requested documentation may include, but is not limited to, original Prescriptions, signature logs, computer records, and invoices showing purchase or receipt of dispensed medications. Administrator will identify any discrepancies found in the documentation and will advise Provider of such via post audit reports. Provider is required to correct the claims through resubmission if requested by Auditor.

Administrator monitors claims data for potential billing errors and reasonable claim submissions on a daily basis. If a potential discrepancy is found, an Auditor will contact the Network Pharmacy Provider, typically via telephone, to inquire about, validate, and help resolve any discrepancy. Unless supporting documentation is required, most of these discrepancies can be validated with minimal correspondence and resolved through Claim reversal and resubmission by Network Pharmacy Provider.

- Network Pharmacy Provider is required to answer reasonable telephone inquiries by an Auditor, as determined solely by Administrator, to validate a Member being billed, Prescription directions, Compounded Drug ingredients, quantities being dispensed, etc.

- All in-depth desktop audits will be directed by written correspondence.

- Where billing agents are utilized by a Network Pharmacy Provider, Administrator may coordinate audits with the billing agent, but Network Pharmacy Provider remains responsible for all billing outcomes, verification and validation.

- Network audits may be performed by Administrator staff, or by an agent authorized solely by Administrator.

OptumRx Provider Manual: 11th edition                                                                         93

The information contained in this document is proprietary and confidential to OptumRx.



Contents

Back

Next

Previous

Exit

## Investigative reviews

Administrator conducts investigational reviews to verify the accuracy and validity of Claim submissions and verification of Drug Product and supply purchases. Requested documentation may include, but is not limited to, original Prescriptions, signature logs, computer records, and wholesaler invoices showing purchase or receipt of dispensed Covered Prescription Services. Network Pharmacy Provider will receive thirty (30) calendar days, unless another time is dictated by state/federal guidelines or law, to provide the necessary documentation needed to satisfy the review. Administrator will identify any discrepancies found in the documentation and will advise Network Pharmacy Provider of such via a post-review report. Network Pharmacy Provider will receive a ten (10) business day appeal time frame to submit any additional documentation needed to refute the findings.

**Please Note**:
All invoice purchase history must come directly from the wholesaler, purchase history received from the Network Pharmacy Provider will not be accepted.

## Post-audit reporting

Network Pharmacy Provider may receive a post-audit report if specific Claims require additional documentation. Additional documentation is typically required within a thirty (30) calendar-day period to contest any findings identified, unless another time is dictated by state or federal guidelines or Law. At the completion of the audit, Network Pharmacy Provider may also receive a final audit report with the Claims identified as discrepant and due for recovery. All documentation must be received no later than thirty (30) calendar days from the date of the discrepancy report. Beyond that date, the audit will be considered final

## Miscellaneous audit information

In situations where cumulative errors rise to the level of negligence, fraud or Abuse, as determined solely by Administrator, Administrator reserves the right to extrapolate audit sample exceptions against the entire population under audit, subject to applicable law or Government Authority.

The following is a partial list of audit violations that could be perpetrated by a Network Pharmacy Provider resulting in Claims being recovered in total and no reimbursement will be forthcoming for what was actually dispensed. In addition, legal or other action may be taken against the Network Pharmacy Provider, including immediate termination of the Agreement:

- Billing for a Brand Name Drugs and dispensing Generic Drugs
- Billing of an NDC for other than what was dispensed
- Overbilling of quantity prescribed
- Inappropriate billing of Compound Drugs
- Claims for Covered Prescription Services that include as a component of the Compound Drug a National Drug Code ("NDC") for a repackaged drug; or
- Drugs imported or reimported into the United States, including bulk powders utilized in Compound Drugs where part of the final Compound Drug dispensed is composed of an imported component are subject to full recovery
- Undocumented substitution
- Non-covered item billed as covered
- Duplicate Claim billed
- Billing for more Drug Products than dispensed (pill shorting)
- Submitting Claims for Drug Products not rendered and/or prescribed

The information contained in this document is proprietary and confidential to OptumRx.



- Submission of dummy DEA/NPI or Invalid DEA/NPI numbers to obtain a paid response
- Billing for Brand Name Drug with DAW 1 when a Prescriber has not specified "Do Not Substitute" on the Prescription, or other inappropriate use of DAW codes
- Billing Claims for more fills or refills than were authorized or illegal refill of a schedule II narcotic Prescription
- Covered Prescription Services filled after their legal time limit
- Billing for invalid Prescriptions due to lack of a legal Prescriber, forgery, or false or fictitious documents
- Covered Prescription Services filled incorrectly based on original order
- Refills too soon that were paid due to a prior days' supply violation
- Inability to locate the original Prescription (missing)
- Covered Prescription Services lacking sufficient proof of delivery to Member
- Covered Prescription Services where a Member denies receiving Drug Products billed
- Covered Prescription Services where Prescriber denies prescribing Drug Products billed
- Covered Prescription Services returned to stock but not reversed
- Prescriptions missing date written, or filled before date authorized
- Prescriptions missing Prescriber signature
- Prescription missing any other required information by state or federal government or is otherwise not a legal Prescription
- LTC Network Pharmacy Provider billing for unused Drug Products and not applying credit to Member
- Drug Product to be billed under Medicare Part A or Part B versus under Part D
- Inappropriate, inaccurate or incomplete record-keeping practices related to billed Prescriptions
- As-Directed/UD SIGS: Network Pharmacy Provider must submit an accurate day's supply based on Prescriber's directions for use. In cases where directions are not specific, such as "Use as Directed", "UD", etc., Network Pharmacy Provider must obtain clarification from the Prescriber or patient as to the specific directions on which to base the correct days' supply submitted for the quantity billed. Specific directions must be noted on the Prescription hard copy or in Network Pharmacy Provider's electronic records system
- Use of coupons when prohibited by Benefit Plan including, but is not necessarily limited to, programs funded by the federal government (e.g. Medicare, Retiree Drug Subsidy (RDS) plans and Medicare Part D)

The following is a partial list of audit violations that could be perpetrated by a Network Pharmacy Provider where Claims will be recovered for a partial reclaim of the Covered Prescription Services or recovered in total if pattern of Abuse is evident. In addition, legal or other action may be taken against the Network Pharmacy Provider, including termination of the Agreement:
- Overbilling of quantity in relation to days' supply that exceeds plan maximums, or not in conformance with that prescribed.
- Billing for larger pack sizes when one smaller pack size will meet the directions of the Prescriber and remain within the Benefit Plan's maximum days' supply
- Prescription splitting to obtain multiple dispensing fees or undermine prior authorization or quantity limits, etc.
- Billing multiple lower strengths when one higher strength Drug Product prescribed.

Again, the above is only a partial listing of sample audit violations. A more complete list with expanded descriptions can be found in the Appendix.

Administrator reserves the right to assess a penalty equal to the entire amount of the Claim (including copayment) for each violation, in addition to the Covered Prescription Services value or difference in billing being recovered.

Material repetition or pattern of practice of any given category of audit violation or the material combination of different categories of violations discovered during an audit may subject Network Pharmacy Provider to further disciplinary action potentially including termination from Administrator Network(s).

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



Instances of alleged FWA discovered during audit shall subject Network Pharmacy Provider to immediate termination.

Any Network Pharmacy Provider terminated from Administrator network(s) for reason(s) other than suspected fraud and Abuse must wait a minimum of five (5) years from date of effective termination before applying for reconsideration regarding Agreement participation. Network Pharmacy Provider terminations for suspected Fraud and Abuse are considered permanent.

Withheld amounts due to audit findings that are not documented within three (3) months are subject to refunding to Clients without further appeal.

Subject to applicable Law, Administrator at its sole discretion may suspend Claims payments to Network Pharmacy Provider for an indefinite period of time on behalf of any or all Benefit Plan Sponsors, including but not limited to when at the request of any Government Authority, direction by subpoena, non-response to an audit request, pending the outcome of an Audit and/or reasonable belief Network Pharmacy Provider is engaged in fraudulent or illegal activity.

## Prescription origin code claim submission

Administrator routinely performs audits of Claims for Covered Prescription Services submitted by Network Pharmacy Providers. Discrepancies found during an audit may be subject to recoupments depending on the nature of the findings. This information is intended to educate Administrator Network Pharmacy Providers on how to correctly submit Prescription Origin Code in conformance with the NCPDP and Administrator requirements.

Please submit one of the following data elements within Prescription Origin Code (419-DJ):

1 = Written
2 = Telephone
3 = Electronic
4 = Facsimile (Fax)

Claims submitted for a Prescription missing one (1) of these values will reject with the following NCPDP Rejection Code 33 — "RX ORIGIN CODE CANNOT BE "0" ON NEW CLM".

If rejection occurs, please resubmit the Claim with the appropriate value.

## Audit dispute resolution procedure and audit collections/final audit remedies

Administrator maintains an ongoing Pharmacy Audit Program to ensure Network Pharmacy Providers are in compliance of their Agreement. Notwithstanding rights included in the Agreement or the PM, dispute resolution, Administrator has established the Pharmacy Audit Review Committee (PARC); an internal hearing process that is independent of the particular individual Auditor who conducted the audit, allowing an audited Network Pharmacy Provider to submit a request for reconsideration of an unfavorable audit determination. Please refer to the audit communications as provided by Auditors for discrepancies identified and the actions a Network Pharmacy Provider may take to remedy such discrepancies. Please be aware the PARC process is not a vehicle for submission of new materials for inclusion in the audit review, but is designed to provide a re-determination of previously submitted post-audit documentation. The PARC process is not available to pharmacies terminated or disciplined for reasons associated with suspected fraud or abuse.

Requests for reconsideration are submitted to, and reviewed by, the PARC, which is comprised of pharmacists and other professionals from within Administrator, but otherwise not associated with the Administrator's Auditor or Network Audit Department.

Contents

Back

Next

Previous

Exit

In cases where pharmacies disagree with the Administrator's decisions or policies relating to final audit findings they are given a one-time opportunity to respond to final audit findings by filing a written request for reconsideration within thirty (30) days from the date of the final audit report. Documentation related to the request for reconsideration must be received by Administrator within thirty (30) days of the Final Findings Letter.

Administrator may begin offset of audit finding amounts against any future payments due to Network Pharmacy Provider and impose certain fines or penalties prior to the outcome of the PARC process. Administrator has the right to assess reasonable fines, penalties and fees to cover unexpected costs. These actions may include the imposition of fines or penalties due to repeated audits, probation, termination from the network and corrective action plans.

If a Network Pharmacy Provider is not in agreement with Administrator's final findings and would like to file a request for review by the PARC, please contact Administrator at PARC@optum.com to request a copy of the PARC Audit Review Request Form, as well as instructions.

## Long term care (LTC) providers

Administrator reserves the right to audit a LTC Network Pharmacy Provider's books, records, Prescription files, and signature logs for the purpose of verifying Claims submission information. LTC Network Pharmacy Providers are required to have a signed Prescriber's order available for audit. These orders may be in the form of a standard Prescription or copies of signed Prescriber's orders from a medical chart. Record retention is important, and time to retrieve these documents is considered in complying with audit requirements. LTC Network Pharmacy Providers are not required to have a signature from the member as proof of receipt. However, LTC Network Pharmacy Providers must have delivery logs, manifests or other Administrator approved proof of delivery of Covered Prescription Services to facilities readily available during an audit.

Abuse of the Short Cycle Dispensing regulations as defined by CMS and implemented on 1/1/2013, will be subject to audit and recovery of overpayments resulting from abuse and any attempt to achieve multiple dispensing fees based on days' supply manipulation. Administrator may also audit to find attempts to gain more than two (2) dispensing fees in a one (1) month period.

LTC Network Providers must dispense drugs and report information as required by 42 CFR §423.154. Administrator shall reimburse LTC Network Pharmacy Providers in accordance with 42 CFR §423.154.

# C. Data accuracy

Entry of the Prescriber and Member information is paramount in being able to identify true occurrences of fraudulent and abusive practices, as well as reduction in waste associated with payment of Claims for excluded Prescribers. For additional information regarding data accuracy, see Processing Claims section. Network Pharmacy Provider agrees to follow all federal and state requirements, including Medicare and Medicaid rules, accurate submissions and temporary supply rules which are mandated by many of these programs. In addition, Network Pharmacy Provider will facilitate when professionally capable or provide a valid reason for their inability to participate in a state Medicaid Benefit Plan's Lock–In program for its membership.

The information contained in this document is proprietary and confidential to OptumRx.



# D. OIG/GSA validations

Network Pharmacy Provider must have a policy and procedure for checking the Office of Inspector General's (OIG) — U.S. Department of Health and Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE) or General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS) to confirm Network Pharmacy Provider does not employ or contract with any individual or entity which is excluded from participation in federal programs. LEIE and EPLS verifications must be conducted at least monthly and upon initial hire or contracting. If Network Pharmacy Provider discovers an individual or entity responsible for the provision of pharmacy services is on the LEIE or EPLS as excluded, Network Pharmacy Provider must report this issue and all the Claims associated with the excluded individual or entity to Administrator Provider Relations at: provider.relations@optum.com.

In addition, Network Pharmacy Provider hereby verifies and certifies the Network Pharmacy Provider has not been excluded from participation in federal health care programs by checking its status in Federal programs exclusion lists maintained by the Office of Inspector General's (OIG) — U.S. Department of Health and Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE) or General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS).

This information is available at the following sites:

- Office of Inspector General's (OIG) — U.S. Department of Health and Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE) — http://oig.hhs.gov/exclusions/index.asp

- General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EP LS) — https://www.sam.gov/portal/SAM/#1

You are required to report any suspected or potential FWA.

To report an incident, please contact the Pharmacy Network Relations Department at **1-800-613-3591** or via email to pharmacyprograms@optum.com.

Client(s) or Benefit Plan Sponsors, FDR entities (including Network Pharmacy Providers) should initiate an inquiry immediately, but no less than two (2) weeks from the date a potential fraud matter is identified. If, upon investigation, the Network Pharmacy Provider believes potential misconduct has occurred, the Network Pharmacy Provider may also report the alleged activity to any of the following:

- Customer service number identified on the back of a Member's ID card
- National Benefits Integrity Medicare Drug Integrity Contractor (NBI MEDIC)
  — 1-877-7SAFERX **(1-877-772-3379)**

**OptumRx Provider Manual:** 11th edition                                                                 98

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



# VIII. Pharmacy network participation requirements



**OptumRx Provider Manual:** 11th edition                                                     99

The information contained in this document is proprietary and confidential to OptumRx.

# A. Network Pharmacy Provider Participation

Administrator appreciates your participation in its pharmacy network and your role in delivering quality pharmacy Covered Prescription Services to our Members. As a Network Pharmacy Provider, you are responsible for monitoring and complying with all changes to the PM. Failure to adhere to any of the provisions, as well as the terms of the Agreement, which includes this PM and all other applicable documents, will be viewed as a breach of the Agreement.

Network Pharmacy Provider agrees to abide by the terms of the PM, comply, participate with Administrator and/or its Client's to research, as well as resolve network related issues (i.e. Claim reversal/resubmission requests, Member's complaints, grievances and/or appeals).

In the event of any request pertaining to network participation, service inquiries or any additional concerns which may relate to Covered Prescription Services for our Members, Network Pharmacy Provider must respond to expedited requests within three (3) business days and routine requests within ten (10) business days of receipt or as required by law/regulation. An expedited request is defined as any inquiry impacting the Member's ability to obtain their Covered Prescription Services and/or inquires involved in assessing quality of care, investigating a Members' grievances or complaints.

**Please Note**:
Network Pharmacy Provider's participation in an Administrator or Client network shall not guarantee participation in all networks. Administrator reserves the right to limit Network Pharmacy Provider's (and any of its pharmacies') participation in a network in its sole discretion.

Network Pharmacy Provider understands Administrator is relying on its participation in applicable networks and as such shall not be allowed to opt-out of any networks without the written consent of Administrator.

A Network Pharmacy Provider shall be required to adhere to all requirements set forth in Risk Evaluation and Mitigation Strategies (REMS) programs defined by the Food and Drug Administration (FDA). Network Pharmacy Provider shall maintain appropriate documentation as to provide evidence the requirements of a REMS program were satisfied during the dispensing of any Drug Products associated with program.

# B. Prohibited activities by Network Pharmacy Provider and associated penalties

Network Pharmacy Provider is subject to penalties or sanctions in the event it is determined by Administrator during communications between Network Pharmacy Provider and an existing Client or a potential Client: (i) Network Pharmacy Provider disclosed confidential information to a Client or a potential Client or (ii) disrupted an Administrator relationship with its existing Client or with a potential client. Penalties shall be invoked in amounts at a minimum of $5,000 per incident/per day, may be subject to additional actions taken by Administrator, including, as well as up to termination from participation, withdrawal and/or the holding of funds as deemed necessary by Administrator.

## Non-solicitation

Network Pharmacy Provider will refrain from advising, counseling or soliciting any Members with plans utilizing Administrator for any reason, including, but not limited to improving compensation.

Network Pharmacy Provider will refrain from advising, counseling or soliciting any plans to terminate its relationship with Administrator for any reason, including, but not limited to improving compensation level or the termination of this Agreement.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

Network Pharmacy Provider may not obtain its patients via cold-calling or unsolicited methods of obtaining a Member's billing information or to make offers of contacting the Member's Prescriber. All submission of Claims for a fill or refill of a Drug Product by Network Pharmacy Provider must be initiated in accordance with a Member's knowledge and authorization.

### Noncompliance

Network Pharmacy Provider must provide Covered Prescription Services related to a covered item to all Members of all Benefit Plan Sponsors in compliance with the PM and as set forth within the Agreement. Noncompliance may include, but is not limited to, the disclosure of confidential information or data, submitting incorrect DAW code, submitting an inaccurate U&C price, submitting incorrect Claim submission data, the collection of a patient pay amount that differs from the amount specified in the Claims response, failure to dispense an emergency supply of a covered item to a Member as required by law, failure to dispense covered Drug Product based on reimbursement received and the refusal to accept an identification card for a Member.

Should the Network Pharmacy Provider be deemed noncompliant, certain remediation actions may apply, including, but not limited to a corrective action, probation, termination of the Agreement and any other available recourse.

Should the Network Pharmacy Provider's actions or inactions result in any fees, interest penalties, damages, withholds, judgments, financial obligations or other charges imposed upon Administrator, such shall be paid in full by Network Pharmacy Provider within the time period specified by Administrator.

For each submitted Claim deemed noncompliant, Administrator in its sole discretion may assess against Network Pharmacy Provider up to a $100 administration fee per occurrence. Administrator reserves the right to offset against any amounts owed to Network Pharmacy Provider and any such amounts owing to Administrator for discrepant Claims or other charges for noncompliance or audit-related costs.

## C. Credentialing and quality management

All Network Pharmacy Providers must comply with credentialing and quality management initiatives required by Administrator. Network Pharmacy Provider agrees to provide Administrator with documentation and other information which may be needed in connection with such initiatives.

Administrator has the right to reasonably determine, in its sole discretion, whether or not Network Pharmacy Provider meets/maintains the appropriate credentialing, as well as quality management standards to serve as a Network Pharmacy Provider for Administrator, its Clients and Benefit Plan Sponsors.

Administrator may request copies of all documents required for the credentialing of a Network Pharmacy Provider at any time. Appropriate documents must be provided within forty-eight (48) hours of request.

- Network Pharmacy Provider and each pharmacy location covered under the Agreement, as well as this PM must meet all standards of operation as described in federal/state law.

- Network Pharmacy Provider must at all times maintain in good standing with all federal, state, as well as local licenses and/or permits as required by applicable law. Network Pharmacy Provider must furnish copies of said licenses and/or permits upon initial enrollment as a Network Pharmacy Provider with Administrator and subsequent requests by Administrator. Network Pharmacy Provider may be required to maintain an unrestricted Drug Enforcement Agency (DEA) registration for all controlled substances as determined by Administrator. Failure to maintain the appropriate licenses and/or permits will result in immediate termination as a Network Pharmacy Provider.

OptumRx Provider Manual: 11th edition                                                                                            101

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

- Network Pharmacy Provider must notify Administrator in writing if:

  1. Network Pharmacy Provider's license/permit is in jeopardy of being suspended or revoked.

  2. Network Pharmacy Provider receives notice of any proceedings which may lead to disciplinary action.

  3. Any disciplinary action is taken against Network Pharmacy Provider or any of its personnel, including but not limited to, action taken by a Board of Pharmacy, OIG, GSA, law enforcement or other regulatory body;

  4. There is a subpoena of records related to Covered Prescription Services or Network Pharmacy Provider's business conduct; or

  5. There is a seizure by law enforcement of Network Pharmacy Provider's Prescription records, computer systems, financial records, accounts or real property.

**Please Note**:

Network Pharmacy Provider must provide notice to Administrator within seven (7) days of the occurrence or earlier per the Agreement and include information regarding the agency conducting the investigation, if applicable. Failure to timely and properly notify Administrator may result in immediate termination of the Agreement or suspension as a participating Network Pharmacy Provider pharmacy location. Administrator may, in its sole discretion immediately suspend, pending further investigation, the participation status (which may include temporary payment withholding or Claims adjudication suspension) of Network Pharmacy Provider if Administrator has reason to believe Network Pharmacy Provider has engaged in or is engaging in, any behavior which (1) appears to pose a significant risk to the health, welfare, or safety of Members or the general public; (2) implies a failure to maintain proper licensure and related requirements for licensure; or (3) otherwise reflects negatively upon the Network Pharmacy Provider's ability to fulfill the requirements of the Agreement.

## Independent pharmacy credentialing

In order to become an independent Network Pharmacy Provider, Pharmacy must submit a credentialing application, complete a Disclosure of Ownership and Control Interest Statement form, complete a Credentialing and Re-Credentialing Application Fee form, meet the Administrator credentialing requirements and be able to comply with the requirements of the Agreement and PM. All Network Pharmacy Providers shall be credentialed pursuant to the Administrator credentialing policy prior to submitting any Claims for Covered Prescription Services.

Network Pharmacy Provider shall be responsible for paying the Credentialing and Re-Credentialing Fee upon initial application to contract with Administrator and upon full re-credentialing, when applicable. Each of the Credentialing/Re-Credentialing Fees are subject to change by Administrator. Network Pharmacy Provider agrees any applicable Credentialing/Re-Credentialing Fee may be deducted and recouped from any Prescription Drug Compensation due to Network Pharmacy Provider hereunder.

To reach the Credentialing department, please contact us at:

Pharmacy Network Credentialing Department
17900 Von Karman
(MS: CA016-0200)
Irvine, CA 92614
Telephone: **1-800-613-3591**
Fax: 1-866-811-4224
Email address: pharmacycredentialing@optum.com

The information contained in this document is proprietary and confidential to OptumRx.



## Mail order pharmacy additional credentialing requirements

Any pharmacy requesting mail order pharmacy network access must be certified with Verified Internet Pharmacy Practice Sites (VIPPS) and accredited by URAC, formerly known as Utilization Review Accreditation Commission, for the applicable accreditation.

Additional information regarding these organizations and criteria for certification may be found at the following websites:

VIPPS: http://vipps.nabp.net/
URAC: https://urac.org/

## Specialty credentialing

Some Client's and Benefit Plan Sponsors may adopt a Specialty Credentialing Program for Network Pharmacy Providers participating in a Retail Pharmacy network. Network Pharmacy Provider must supply acceptable reference documentation to meet Administrator's Specialty Pharmacy Network requirements. If Network Pharmacy Provider wishes to participate in the routine dispensing of Specialty Drug Products, Network Pharmacy Provider should request credentialing materials from Administrator. Administrator may prohibit Network Pharmacy Providers who have not satisfied all of the requirements of the Specialty Credentialing process and have not executed a separate Specialty Addendum from submitting claims for Specialty Drug Products. Obtaining Specialty Credentialing may not grant access by Network Pharmacy Provider to dispense Specialty Drug Products for all Clients or Benefit Plan Sponsors.

 To obtain information on Specialty Credentialing, please reach out to: **specialty.credentialing@optum.com**.

## Compound credentialing

Administrator may require pharmacies to meet additional credentialing requirements to be allowed to process Compounded Drug Claims. Administrator may delegate responsibility to a third-party vendor, such as United Compounding Management LLC, to assist in the credentialing process of Network Pharmacy Providers to process Compounded Drug Claims. Network Pharmacy Providers will be required to meet all of the credentialing standards established by Administrator and/or the third party vendor to include, but not limited to: PCAB accreditation, continuous quality improvement process inclusive of validation testing for stability/sterility, an ethics management compliance review to include business operations, compliance with Anti-Kickback, as well as Stark law, state/federal pharmacy law, defined allowable sales/marketing conduct, a defined compounding code of conduct, including provider manual and an on-site credentialing review. Network Pharmacy Providers must maintain compliance with all credentialing requirements and standards of practice set forth by Administrator or the third party vendor. Failure to maintain compliance with the requirements and standards may result in administrative action up to and including the termination of the Agreement. All Network Pharmacy Providers, including those credentialed, must meet abide by Section Compounding pharmacy participation in retail networks.

 To obtain information on Compound Credentialing, please reach out to: **credentialing.contracting@optum.com.**

The information contained in this document is proprietary and confidential to OptumRx.



## PSAO credentialing requirements

If you are a PSAO or a pharmacy contracted with a PSAO for participation in Administrator's networks: A PSAO must certify pharmacies are affiliated with the PSAO meet the Administrator requirements, including the presence of an ongoing policy to ensure the pharmacies meet these requirements and abide by the Agreement, as well as the PM.

 Failure to meet these duties and obligations may result in termination of such PSAO Agreement or a Network Pharmacy Provider.

- PSAO maintains a credentialing program for itself and each of the member pharmacies.

- PSAO and Network Pharmacy Provider agree Administrator, as well as Administrator's Clients have the right to monitor and oversee PSAO's credentialing program.

- Accordingly, upon reasonable advance notice, PSAO and Network Pharmacy Provider will provide Administrator, as well as Administrator's Clients with on-site access to all records maintained by PSAO relating to the credentialing of each Network Pharmacy Provider, including all Pharmacists which provide Covered Prescription Services to Members or, at Administrator's election, PSAO shall provide Administrator with copies of such records (e.g. then-current credentialing policies and procedures) and/or certifications of PSAO's compliance with these requirements.

- PSAO and Pharmacy acknowledges Administrator or Administrator's Clients may independently verify licenses, insurance coverage, any debarment or disciplinary action related to all Network Pharmacy Providers and Pharmacists who provide Covered Prescription Services to Members.

- Upon request, PSAO shall submit credentialing information specified in the credentialing requirements document or the Agreement, to Administrator within five (5) days following the execution of the Agreement so Administrator, as well as Administrator's s Clients may determine whether Administrator and Network Pharmacy Provider have met Administrator's credentialing requirements.

- PSAO shall maintain a compliance monitoring program pursuant to which the PSAO, on no less frequently than an annual basis, verifies the Network Pharmacy Provider DEA licenses, insurance coverage, government program exclusions, debarment, including any disciplinary action related to all Network Pharmacy Providers, pharmacy owners, as well as personnel utilized by PSAO and Network Pharmacy Provider to provide Covered Prescription Services to Members. PSAO agrees to provide updated information relating to such matters to Administrator upon change.

- PSAO shall ensure to the best of PSAO's knowledge, any PSAO Pharmacy (including PSAO Pharmacies currently in the network and new PSAO Pharmacies included in the network) location, pharmacy, pharmacist, subcontractor, or other personnel furnishing (or which will furnish) Covered Prescription Services to Members have been or will be (i) listed as debarred, excluded, or otherwise ineligible for participation in federal health care programs or (ii) convicted of a criminal felony. If at any time PSAO becomes aware of any violation of this representation and warranty, PSAO shall notify Administrator immediately in writing and shall prevent such personnel or pharmacy location from providing Covered Prescription Services to Members by requesting an immediate termination of such pharmacy location by Administrator.

- If PSAO or Network Pharmacy Provider itself becomes debarred, excluded or otherwise ineligible or if PSAO or Pharmacy has not taken the actions required of it in the preceding sentence, the Administrator may immediately terminate the Agreement upon written notice to PSAO without liability to Administrator or Administrator's Clients or take such other corrective or remedial actions as Administrator reasonably believes is appropriate.

**OptumRx Provider Manual:** 11th edition                                                                                         104

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

## Minimum credentialing requirements for pharmacies participating through a PSAO

- Network Pharmacy Provider is duly licensed in the applicable state of residence
- Network Pharmacy Provider has a DEA License (unless exception granted by Administrator)
- Network Pharmacy Provider maintains minimum liability insurance of $1,000,000 per occurrence /$3,000,000 aggregate (self-insurance not allowed for Pharmacies contracted through a PSAO)
- Owners of Network Pharmacy Provider or Network Pharmacy Provider are prohibited from participating in state and federal programs when found on either the Office of Inspector General's (OIG) — U.S. Department of Health and Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE), as well as the General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS)
- Network Pharmacy Provider has not sanctions or limitations that would prohibit Network Pharmacy Provider from performing in accordance with the terms and conditions of the Agreement
- Network Pharmacy Provider meets the terms and conditions for participation in the applicable Agreement
- Pharmacist-in-Charge has all appropriate state and federal licenses
- Pharmacist-in-Charge and any Pharmacist or other personnel are prohibited from participating in state and federal programs when found on either the Office of Inspector General's (OIG) — U.S. Department of Health and Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE), as well as the General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS)
- Pharmacist-in-Charge maintains minimum insurance levels specified by state
- Pharmacist-in-Charge has no restrictions, limitations or sanctions within the most recent three-years

## Additional credentialing requirements for HI pharmacies participating through a PSAO

PSAOs contracted with Administrator for the Medicare Part D Home Infusion (MPD HI) Pharmacy Network are required to ensure each Network Pharmacy Provider associated with the MPD HI Pharmacy Network provides Infusion Therapy services and meet the definition of HI Pharmacy defined in this PM, as well as applicable CMS regulations.

CMS requires Medicare Part D Sponsors to validate the HI Pharmacy provides most Infusion Therapy Covered Prescription Services including the following requirements:

- Deliver Infusion Therapy Drug Products in a form which can be easily administered in a clinically appropriate fashion;
- Provide Infusion Therapy Part D Drug Products for both short-term acute care and long-term chronic care therapies;
- Ensure the professional services and ancillary supplies necessary for the provision of Infusion Therapy are in place before dispensing Infusion Therapy Drug Products, consistent with the quality assurance requirement for Medicare Part D Sponsors described in 42 CFR 423.153(c);
- Provide Infusion Therapy Covered Prescription Services within twenty-four (24) hours of discharge from an acute setting, unless the next required dose, as prescribed, is required to be administered later than twenty-four (24) hours after discharge; and
- HI Pharmacy has a "clean room" and "hood" capable of compounding sterile Drug Products.

In addition, Administrator encourages PSAOs to require each HI Pharmacy to:

- Ensure NCPDP dispenser type code indicates HI Pharmacy

**OptumRx Provider Manual:** 11th edition                                                                                     105

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

OPTUMRx®

- Update National Plan and Provider Enrollment System (NPPES) taxonomy code indicating HI Pharmacy https://nppes.cms.hhs.gov/NPPES/Welcome.do
- Obtain accreditation for providing Infusion Therapy services by an applicable accreditation organization

## Chain pharmacies

In order for Chain Network Pharmacy Providers to participate, the Chain headquarters must submit a credentialing application, meet the Administrator credentialing requirements as specified in the credentialing application and be able to comply with the requirements of the Agreement, as well as Administrator PM. All Network Pharmacy Providers shall be licensed pursuant to the Administrator credentialing policy prior to submitting any Claims.

Administrator maintains the right to independently verify the credentials of any Network Pharmacy Provider, Network Pharmacy Provider Owner or Pharmacist, including requesting credentialing documentation directly from individual Network Pharmacy Providers, as well as performing on-site visits to establish the credentials of any Network Pharmacy Provider, Pharmacist or Owner of a Network Pharmacy Provider.

## Additional state and plan requirements

All Network Pharmacy Providers contracting to participate may be subject to additional credentialing requirements to participate in particular plans or networks, including Medicaid and Medicare Benefit Plans. Administrator reserves the right to require additional credentialing information from a pharmacy, as applicable, in order for pharmacy to participate in such Benefit Plan.

In addition to credentialing, federal regulations apply to Network Pharmacy Providers, individuals or entities which have been excluded from federal program participation as evidenced by listing in the Office of Inspector General's (OIG) — U.S. Department of Health and Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE) or General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS).

Network Pharmacy Providers must check these lists upon hire and at least monthly to ensure employees working with Medicare and Medicaid Benefit Plans have not been excluded from federal program participation.

Network Pharmacy Provider staff can check these lists by using the following links:

- Office of Inspector General's (OIG) — U.S. Department of Health and Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE) — http://oig.hhs.gov/exclusions/index.asp
- General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS) — https://www.sam.gov/portal/SAM/#1

## Enhanced credentialing

CMS expects Medicare Part D Sponsors to perform an in-depth level of credentialing of pharmacies (i.e. enhanced credentialing) located in select geographic areas identified by CMS. Select pharmacy locations may be required to provide additional information, go through on-site pharmacy facility reviews/inspections prior to contracting and participation in some or all of Administrator's networks, including Medicare Part D, as well as Medicaid networks. enhanced credentialing applies to both directly and in-directly contracted pharmacy locations. Pharmacy, their PSAO, if applicable, agree to cooperate with Administrator or its designee with the enhanced credentialing process and acknowledge non-cooperation with such enhanced credentialing process may result in denial, exclusion or termination of network participation.

Contents

Back

Next

Previous

Exit

OptumRx Provider Manual: 11th edition                                                                                          106

The information contained in this document is proprietary and confidential to OptumRx.

### On-site pharmacy facility reviews

Administrator or its designee shall have the right, with or without notice, at reasonable times, to access, inspect, and review on-site the facilities, licenses and credentialing documents/records of Network Pharmacy Providers and pharmacy locations applying to participate in any of Administrator's Benefit Plans, as well as make copies of the licenses credentialing documents/records etc. maintained by pharmacy. Pharmacy agrees to cooperate with Administrator or its designee with the on-site pharmacy facility inspection and review and acknowledges non-cooperation with an on-site pharmacy facility review may result in denial or termination of network participation.

### Quality related events

If as a result of a Member complaint, Prescriber response, audit or call center discussion, Administrator identifies a potential quality related event (e.g. medication misfill) and confirms with Network Pharmacy Provider the occurrence of such dispensing error. Network Pharmacy Provider will (i) review the information with the Member (ii) document the event based on Network Pharmacy Provider's internal policies and (iii) report the error to any appropriate regulatory agency (e.g. Institute of Safe Medical Practices (ISMP)/FDA Medwatch). For paid Claims determined to have a quality related event, Administrator reserves the right to reverse the Claim or retract Claim payment.

### Recall notices/expired medications

In response to all recall notices, the Network Pharmacy Provider maintains the responsibility to monitor recall releases, remove any impacted Drug Product stock from the shelves in a timely manner, notify any Members whom have received Drug Product and document actions taken. Additionally, Network Pharmacy Provider must maintain and document a process to ensure all expired Drug Products are removed from shelf stock routinely.

## D. Pharmacies contracted through PSAOs

PSAOs are required to perform routine updates of the information regarding their Pharmacy locations in the NCPDP database. This ensures all pharmacies attached to the PSAO are credentialed, contracted and NCPDP maintains complete/accurate information. Administrator relies on the information in the NCPDP database and PSAO attests the information in the NCPDP database is accurate. Actively removing an association of a non-contracted pharmacy from your PSAO does not meet the credentialing requirements set forth by Administrator. PSAOs must remove such non-contracted pharmacy from affiliation in the NCPDP database. PSAO is also responsible for ensuring the integrity of any data and reconciling such information with NCPDP as required. Upon request, Network Pharmacy Provider is required to respond to Administrator within ten (10) business days of a request for documentation necessary to support claims processing or audits by Administrator or Benefit Plan Sponsor (or on behalf of Client or plan) and within thirty (30) days of receipt of Pharmacy Contact Verification forms or the Pharmacy Credentialing Request Form. Network Pharmacy Provider must submit accurate and complete documentation to Administrator within these time periods. PSAOs are further required to share all relevant information upon request from Administrator.

PSAOs shall provide Administrator with up to thirty (30) days prior Notice to adding new Pharmacy locations to their Agreement as Network Pharmacy Providers to provide Covered Prescription Services to Members, which any such new credentialed Pharmacy location shall satisfy and comply with all terms and conditions of this Agreement and subject to Administrator's sole and absolute discretion on approval.

PSAOs may email Pharmacy location adds and deletes to pharmacynetwork@optum.com.

Administrator and Benefit Plan Sponsor, at the sole and absolute discretion of each, may immediately limit or exclude any pharmacy location's participation as a Network Pharmacy Provider for applicable Benefit Plans, including from participation as a Network Pharmacy Provider under the terms and conditions of the Agreement.

Generally across all Benefit Plans, pharmacy locations may be excluded from participation as a Network Pharmacy Provider contracted indirectly with Administrator through a PSAO for the following, including but not limited to, reasons:

- Pharmacy location is a Mail Order Pharmacy or provides Covered Prescription Services to Members by Mailing
- Pharmacy location has been contracted independently with Administrator as a 340B provider
- Pharmacy Provider or has been identified as distributing 340B Drug Products on behalf of a 340B Participating Entity through either a contract or ownership
- Pharmacy locations does not maintain a valid DEA License or had its DEA license revoked
- Pharmacy network is state-specific
- Pharmacy network requires Medicaid ID number for participation
- Pharmacy is a compounding pharmacy or a qualified compounding pharmacy

The above Pharmacy locations may contract directly with Administrator as an independent Network Pharmacy Provider. Such Pharmacy locations may email pharmacycontracts@optum.com to request contract.

Administrator shall notify PSAO as soon as reasonably practicable of Benefit Plan Sponsor's or Administrator's decision to disapprove a Pharmacy location for inclusion as a Network Pharmacy Provider in the Agreement or any Benefit Plan or a decision to suspend, revoke or terminate a Pharmacy location from participation in Administrator's or any Benefit Plan or network.

## E. Confidentiality and proprietary rights

Network Pharmacy Providers agree to keep confidential and proprietary the following:

- Terms of the Agreement and documentation related to the performance of the Agreement, including, and without limitation, the Drug Product Formulary and MAC list;
- Methods of doing business, including the operations of the National Pharmacy & Therapeutics Committee and Administrator utilization review and quality assurance procedures and programs; and
- Any and all symbols, logos, trademarks, trade names, Marks, patents, inventions, copyrights, copyrightable material, trade secrets, personnel information, operating manuals, memoranda, work marketing programs, plans and strategies, operating Agreements, financial information and strategies, and computer software and other computer-related materials developed or used in Administrator business.

## F. Medicaid; federal/state Medicare-Medicaid enrollee (MME) regulatory requirements

Particular states have certain Medicaid regulatory requirements, including specific provisions to be included in all Client and Benefit Plan Sponsor subcontractor Agreements (found in the Appendix). Particular states and CMS also have certain MME regulatory requirements, including specific provisions to be included in all Client and Benefit Plan Sponsor subcontractor Agreements (found in the Appendix). Pursuant to the terms of the Agreement, Network Pharmacy Provider shall comply with all applicable requirements in each applicable state, as determined solely by Administrator.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

**OPTUMRx®**

**Texas Medicaid manual applicable to manage Medicaid plans**

See Appendix

**State-specific Medicaid program participation required**

Certain state Medicaid plans may require participation in the state fee-for-service Medicaid program as well as a state Medicaid identification number. Medicare Part D Sponsors are required to follow applicable state Medicaid requirements.

**Submission of clean claims via the POS system for 340B drug products**

For all applicable 340B Drug Products, Network Pharmacy Providers must identify claims as follows: In field '420-DK' (Submission Clarification Code), a value of '20' indicating that the Network Pharmacy Provider has determined the Drug Products submitted to Administrator was purchased pursuant to rights available under Section 340B of the Public Health Act of 1992 including sub-ceiling purchases authorized by Section 340B (a) (10) and those made through the Prime Vendor Program (Section 340B (a) (8)).

The 340B Drug Pricing Program requires drug manufacturers to provide covered out-patient Drug Products to certain eligible health care entities, known as covered entities, at or below statutorily defined discount prices (i.e. 340B Ceiling Prices). The purpose of the 340B Program is to lower the cost of acquiring covered outpatient Drug Products for selected health care providers, so they can stretch their resources to serve more Members or improve services. As a condition of continued participation in the Medicaid program, drug manufacturers must sign an agreement with the Secretary of HHS stating their product sales to the covered entities will be at or below the Ceiling Prices mandated by Section 340B. Failure to sell covered drugs at these prices could result in a manufacturer being prohibited from receiving payments for its products from the Medicaid program.

## G. Retail and Mail Network Agreements

Pharmacies in the retail network, without specific other arrangements (e.g. Specialty Credentialing and Compound Credentialing) shall maintain a breadth of retail medications as to service routine retail pharmacy customers. This requires retail Network Pharmacy Providers maintain a variety of Drug Products as to service customers with a broad scope of therapeutic needs. Pharmacies in the retail network or on a retail Agreement shall not solicit Members for mail delivery or deliver any Covered Prescription Services to Members by Mailing, except upon the advance written approval of Administrator or for limited single events (e.g. Member traveling), which approval may be refused in Administrator's sole discretion. Network Pharmacy Providers Mailing Covered Prescription Services must comply with all applicable state licensing laws for the states that the pharmacy is Mailing Covered Prescription Services into and participate in Administrator's Mail Order Pharmacy Network pursuant to a Mail Order Pharmacy Agreement.

Mail Order Pharmacies do not qualify for participation in the Administrator Retail Pharmacy networks as a Retail Pharmacy. Pharmacy locations that deliver Drug Products via Mailing, advertise Mailing or home delivery, must apply for a separate independent Mail Order Pharmacy Agreement. Mail Order Pharmacies must meet the following minimum qualifications for consideration in the network:

- Agree to the terms and conditions of the Mail Order Pharmacy Agreement

- Meet all credentialing requirements

- Maintain in good standing VIPPS Certification

**OptumRx Provider Manual:** 11th edition                                                                                   109

The information contained in this document is proprietary and confidential to OptumRx.

**OPTUMRx®**

- Maintain in good standing URAC Accreditation for Mail Order Pharmacies
- Licensed in the state the Mail Order Pharmacy is domiciled as well as meets all applicable state licensing requirements for any state that the pharmacy is Mailing Prescriptions into.

Meeting the above requirements does not guarantee participation in any Benefit Plans.

# H. Compounding pharmacy participation in retail networks

## Prohibited activities by retail pharmacies and compounding pharmacies

The following actions may result in termination of your Network Pharmacy Provider's Agreement and include, but not limited to:

- Ownership or partial ownership in a pharmacy by Prescribing Physician or other Prescriber of Prescription Drug Products
- Compensation, both monetary or in-kind, either paid to or received from, any health care provider for referrals for prescribing a particular Compounded Drug or to a particular pharmacy
- Use of Form 1099 contractors to market pharmacy or particular Compounded Drug
- Submitting Compounded Drug Claims with ingredients manufactured or distributed from a non-FDA registered manufacturing facility and/or wholesaler not FDA registered or with no distribution locations within the USA
- Submitting Compounded Drug Claims with ingredients that include as a component of the a National Drug Code ("NDC") for a repackaged drug or a drug imported from another country without FDA approval
- Delivering Covered Prescription Services, including Compounded Drugs, by Mailing, unless specifically permitted to do so within the Agreement, Plan Specifications, amendment or in writing
- Advertising for obtaining Compounded Drugs delivered by Mailing, unless specifically permitted to do so within the Agreement, Plan Specifications, amendment or in writing
- Submitting a Claim for a Compounded Drug when a manufactured Drug Product with an identical or similar formulation is available on the market
- Submitting a NDC that is not the NDC for the raw, bulk chemical, or Drug Product ingredient used in the Compounded Drug
- Splitting the days' supply or quantity of the Compounded Drug Claims to less than a thirty (30) day supply to circumvent Prior Authorization, dollar amount thresholds, quantity or Benefit Plan limits
- Splitting the days' supply or quantity of the Compounded Drug Claims to less than a thirty (30) day supply in order to gain additional reimbursement or Member Cost Sharing Amounts
- Refusing to dispense the Compounded Drug Prescription because of dispute over reimbursement
- Charging the Member more than the Cost Sharing Amounts provided by the POS System, including charging for non-covered ingredients
- Waiving Member Cost Sharing Amounts provided by the POS System
- Not using the NDC of the lowest cost AWP available on the market in the Compounded Drug
- Registration solely as a §503B, unless credentialed by OptumRx (Please see Compound credentialing section)
- Violating any Federal, State, or Local law regarding compounding, marketing, or dispensing Compounded Drug Prescriptions

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



- Acting as a central fill pharmacy for a pharmacy not contracted with Administrator

- Dispensing Compounded Drugs to a Member for the first time without verifying Prescribing Physician or other Prescriber/Member relationship

- Dispensing Compounded Drugs without literature on file that supports the clinical/therapeutic value of the compound ingredients

- Dispensing or distributing Compounded Drugs which are not based on valid Prescriptions for individually-identified Members

## I. Provide timely notice of demographic changes

Network Pharmacy Provider understands Administrator relies on the information about its Network Pharmacy Providers, as well as each Pharmacy location provided by NCPDP and directly to Administrator, therefore, Network Pharmacy Provider:

- Agrees to update in a timely manner all information in the NCPDP database whenever necessary as to ensure the information in the database is accurate as Administrator updates Network Pharmacy Provider profiles and may be displayed to Members via on-line or paper directories

- Unless otherwise specified, notifies Administrator in writing within ten (10) business days of any changes in the documentation and other information (e.g, Agreement, credentialing applications) provided to Administrator in connection with enrolling as a Network Pharmacy Provider and in any credentialing or quality management initiatives

- Immediately notifies Administrator and NCPDP of any sale, transfer or ownership or closure of the Network Pharmacy Provider and information documenting the availability, as well as contact information for continued retrieval on all Prescription documentation in accordance with contractual, as well as regulatory (e.g. Medicare Part D) requirements related to records retention

- Information includes, but is not limited to, changes in name, address, telephone number, fax number, email address, services, NPI, NCPDP, licensure information (e.g. DEA, state license), tax identification (ID) changes Medicaid ID, provider affiliation, ownership information, provider dispensing type.

It is the responsibility of Chain and PSAO organizations to ensure that the affiliated pharmacies associated with any applicable NCPDP Affiliation Code are effectively maintained accurate and updated timely with NCPDP in responses to changes in affiliated pharmacies.

   Network Pharmacy Providers shall notify NCPDP of any updated information as soon as possible.

## J. Involuntary disenrollment by benefit plan sponsor

Network Pharmacy Providers shall cooperate with Administrator and its Clients in gathering and/or providing information on Members for which the Benefit Plan Sponsor is seeking involuntary disenrollment for conduct considered abusive and disruptive to the point where service is disrupted for the Member or other Members. If Network Pharmacy Providers encounter abusive and disruptive Members, they should contact Administrator Customer Service using the contact information provided in Section II of this PM.

As a Network Pharmacy Provider, Administrator encourages that you keep notes and any documentation concerning abusive and disruptive contact as you may be asked to provide this information at the time you report abusive and disruptive Members.

**OptumRx Provider Manual:** 11th edition                                                                                       111

The information contained in this document is proprietary and confidential to OptumRx.



## K. National Plan and Provider Enrollment System (NPPES) Updates

Network Pharmacy Providers are strongly encouraged to update their information, including all taxonomy codes, on the National Plan and Provider Enrollment System (NPPES) at the following location: https://nppes.cms.hhs.gov/NPPES/Welcome.do

The information on NPPES, including your pharmacy's taxonomy information, may be used for network and contract validation by Administrator, Clients and CMS.

## L. Termination

Administrator may immediately terminate the Agreement for cause, regardless of the network in which the Network Pharmacy Provider participates. In addition to the reasons for immediate termination set forth in the Agreement, Administrator may terminate participating Network Pharmacy Providers in accordance with state law notice requirements where applicable, from the network for reasons which include, but not limited to:

- Failure to meet and maintain credentialing requirements;

- Breach of any of the terms set forth in the Agreement, PM, addenda and other Administrator documents;

- Any act in violation of any federal, state or local law, regulation or rule or any attempt to circumvent any security measure part of the Administrator system;

- Fraudulent Claim submission activity detected;

- Members charged amounts greater than the plan copayment;

- Members are refused services as required by Agreement;

- Unacceptable facility conditions or practices or other grievous offenses; and

- Current or future affiliation with a pharmacy if a connection exists to a pharmacy previously terminated under any of the above-listed conditions associated with FWA. Affiliation includes, but not limited to ownership or controlling interest in any percentage, holding of the physical real estate of the pharmacy location, a consultant relationship, employment of current and/or prior employees, immediate relatives (e.g. spouses, children, parents or siblings) and/or otherwise obscuring ownership links.

In the event a Network Pharmacy Provider breaches any provision(s) of the Agreement, in addition to termination rights, Administrator shall have the right to:

- Suspend any/all obligations of Administrator under and in connection with the Agreement

- Administrator suspension may include cancellation of checks, payment suspension of future cycle checks or restriction of Claims submission. Administrator's ultimate remedies under this section include immediate termination of the Agreement.

- Impose reasonable handling, investigation, improper use fees, offset against any amounts owed to Network Pharmacy Provider under the Agreement (including amounts that are paid to Administrator on behalf of a Benefit Plan Sponsor) and/or under any other Agreement between Administrator and Network Pharmacy Provider.

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

OPTUMRx®

Contents

Back

Next

Previous

Exit

Administrator may terminate the Agreement upon prior notice with respect to any or all pharmacy locations, according to the terms of the Agreement between the applicable parties or PM, as applicable, or such longer or shorter period of time as required by applicable plan or law. For the sake of clarity, in the event a particular plan or law requires a shorter or longer notice period, the Agreement will not terminate for the particular plan or law until the conclusion of that plan's or law's notice period.

The Network Pharmacy Evaluation Committee (NPEC) will determine the extent to which a breach has occurred. NPEC will make a determination in regards to participation status or the need for further review and recommendations. Final determination will be made by the NPEC and may result in administrative action up to and including the termination of the Agreement. All such occurrences will be placed in the Network Pharmacy Provider's credential file.

## M. Alternative dispute resolution

Other than with respect to issues giving rise to immediate termination hereof or non-renewal hereof, the parties will work in good faith as set forth below to resolve any and all issues and/or disputes between them (hereinafter referred to as a "Dispute") including, but not limited to all questions of arbitrarily, the existence, validity, scope, interpretation or termination of the Agreement or PM or any term thereof prior to the inception of any litigation or arbitration.

In the event a Dispute arises, the party asserting the Dispute shall provide written notice to the other party identifying the nature and scope of the Dispute to the other party sufficient for a reasonable person to be apprised thereof. If the parties are unable to resolve the Dispute within thirty (30) days after such notice is provided, then either party may request in writing a meeting or telephone conference to resolve the Dispute. At any such meeting or telephone conference, both parties shall have present its President, Vice President, Chief Financial Officer or Chief Officer. Either party may commence a Dispute Resolution in accordance with the rest of this section (or litigation if both parties waive arbitration) only if a representative of the party seeking to commence such litigation or arbitration certifies in writing that one of the following is true: (i) the Dispute was not resolved after faithfully following the procedures set forth above in this section or (ii) the other Party to the dispute did not fully comply with the procedures set forth above in this section.

If the party asserting the Dispute has satisfied the requirements of this section thereof, it shall thereafter be submitted to binding arbitration before a panel of three (3) arbitrators in accordance with the Commercial Dispute Procedures of the American Arbitration Association, as they may be amended from time-to-time (www.adr.org). All arbitrators must have at least ten (10) years of legal experience in the area of healthcare law.

Any arbitration proceeding under this Agreement shall be conducted in Los Angeles County or Orange County, California. Unless otherwise agreed to in writing by the parties, the party wishing to pursue the Dispute must initiate the arbitration within one (1) year after the date on which notice of the Dispute was given or shall be deemed to have waived its right to pursue the Dispute in any forum.

The arbitrators may construe or interpret, but shall not vary or ignore the terms of this Agreement and shall be bound by controlling law. The arbitrator(s) will decide if any inconsistency exists between the rules of the applicable arbitral forum and the arbitration provisions contained herein. If such inconsistency exists, the arbitration provisions contained herein will control and supersede such rules.

Each party hereby consents to a documentary hearing for all arbitration Claims, by submitting the dispute to the arbitrator(s) by written briefs and affidavits, along with relevant documents; however arbitration claims will be

The information contained in this document is proprietary and confidential to OptumRx.

submitted by way of an oral hearing, if any party requests an oral hearing within forty (40) days after service of the Claim and the party remits the appropriate deposit for fees, as well as the arbitrator compensation within ten (10) days of making the request.

Discovery permitted in any arbitration proceeding commenced hereunder is limited as follows:

No later than forty (40) days after the filing and service of a Claim for arbitration, the parties will exchange detailed statements setting forth the facts supporting the Claim(s) and all defenses to be raised during the arbitration and a list of all exhibits, as well as witnesses. In the event any party requests an oral hearing, no later than twenty-one (21) days prior to the oral hearing, the parties will exchange a final list of all exhibits, as well as all witnesses, including any designation of any expert witness(es) together with a summary of their testimony; a copy of all documents to be introduced at the hearing.

Notwithstanding the foregoing, in the event of the designation of any expert witness(es), the following will occur:

(i) all information and documents relied upon by the expert witness(es) will be delivered to the opposing party; (ii) the opposing party will be permitted to depose the expert witness(es); (iii) the opposing party will be permitted to designate rebuttal expert witness(es); and (iv) the arbitration hearing will be continued to the earliest possible date that enables the foregoing limited discovery to be accomplished.

The arbitrators will have no authority to award punitive, exemplary, indirect, special damages or any other damages not measured by the prevailing party's actual damages and may not, in any event, make any ruling, finding or award that does not conform to the terms and conditions of the Agreement.

The parties expressly intend that any dispute relating to the business relationship between them be resolved on an individual basis so that no other dispute with any third party(ies) may be consolidated or joined with the Dispute. The parties agree that any arbitration ruling by an arbitrator allowing class action arbitration or requiring consolidated arbitration involving any third party(ies) would be contrary to their intent and would require immediate judicial review of such ruling.

If the Dispute pertains to a matter which is generally administered by certain Administrator procedures, such as a quality improvement plan, the policies and procedures set forth in that plan must be fully exhausted by Administrator before Administrator may invoke any right to arbitration under this section.

The decision of the arbitrator(s) on the points in Dispute will be binding and judgment on the award may be entered in any court having jurisdiction thereof. The parties acknowledge that because this Agreement affects interstate commerce the Federal Arbitration Act applies.

In the event that any portion of this section or any part of this Agreement is deemed to be unlawful, invalid or unenforceable, such unlawfulness, invalidity or unenforceability shall not serve to invalidate any other part of this section or this Agreement. In the event any court determines this arbitration proceeding is not binding or otherwise allows litigation involving a dispute to proceed, the parties hereby waive any and all right to trial by jury in or with respect to such litigation, such litigation would instead proceed with the judge as the finder of fact.

For purposes of clarity, only the arbitration provisions in this section shall apply to any Network Pharmacy Provider terminations or other determinations made as to a Network Pharmacy Provider's status as a participating Network Pharmacy Provider in the Administrator network, pursuant to the NPEC review process as stated in the PM. The laws of the State of California and the laws of the United States (U.S.) applicable therein will govern as to the interpretation, validity and effect of the Agreement, the PM and any addendums.

This section P shall survive any termination of this Agreement.

# N. Confidentiality

Network Pharmacy Provider acknowledges as a result of the Agreement, PM and POS System, Network Pharmacy Provider and its employees, as well as agents may have access to Administrator's Proprietary Information, Client's Proprietary Information and Members' Confidential Information. The parties shall comply with all Laws applicable to the confidentiality, use, disclosure and maintenance of Members' personal information ("Confidential Information"). Except as required by law, Network Pharmacy Provider, on behalf of itself and its officers, employees, contractors and other representatives ("Representative(s)"), also agrees to treat as confidential and proprietary, and to take reasonable precautions and care to prevent unauthorized use and/or disclosure of the terms of this Agreement, as well as any other information relating to Administrator's business operations/services obtained in the performance of this Agreement and not part of the public domain ("Proprietary Information"). Proprietary Information shall include Administrator's pricing, programs, services, business practices, databases, software, layouts, designs, formats, processes, applications, systems, technology, files, compilations, exhibits, publications, protocols, information pertaining to Clients, Benefit Plans and formularies. All Proprietary Information remains the exclusive property of Administrator. Network Pharmacy Provider agrees to maintain the confidential nature of such Confidential Information and Proprietary Information and not to disclose such Confidential or Proprietary Information without the express written consent of Administrator. Network Pharmacy Provider shall only use Confidential or Proprietary Information in connection with the performance of this Agreement or any related Addendum Amendment, Exhibit or Schedule and shall not use the Confidential or Proprietary Information for any other purpose. Nothing in this section shall prohibit Administrator from discussing reimbursement or payment issues with a Client of Benefit Plan Sponsor. If Network Pharmacy Provider or its Representative receives a demand or request to disclose any confidential or proprietary information pursuant to the terms of a court order, subpoena, interrogatory or other legal process, such confidential or proprietary information may be disclosed to the extent required; provided (i) Network Pharmacy Provider promptly notifies Administrator of the existence, terms and circumstances surrounding such demand or request prior to the disclosure of any confidential or proprietary information and provides Administrator with a copy thereof (ii) Network Pharmacy Provider assists Administrator's efforts to obtain, if and to the extent available, whatever protective order or other relief that Administrator desires to be obtained with respect to such demand or request and (iii) such Confidential or Proprietary Information is not disclosed more than three (3) days prior to the last date it may be disclosed without violating such court order, subpoena, interrogatory or other legal process, as such date may be modified by any order or other relief obtained. Upon termination of this Agreement, Administrator may request the return of its proprietary information in Network Pharmacy Provider's control or possession or if such return is not feasible, Network Pharmacy Provider shall destroy such proprietary information and provide certification of such destruction. Network Pharmacy Provider further agrees that it shall be responsible for any breach of this section by its Representatives. Network Pharmacy Provider agrees that monetary damages would be difficult to ascertain in the event of any breach of this Section and that monetary damages alone would not suffice to compensate Administrator or Client for such breach. Network Pharmacy Provider agrees that in the event of a violation of this Section, without limiting any other rights and remedies, an injunction may be brought against Network Pharmacy Provider for breach or threatened breach of this Section, without the requirement to post bond. Network Pharmacy Provider submits itself to the jurisdiction of and agrees venue for purposes of damages of such injunctive relief are proper, in any state or federal court located in California; Network Pharmacy Provider shall reimburse Administrator for all of its costs and expenses (including, without limitation, reasonable attorneys' fees) incurred by Administrator in connection with an actual or threatened violation of this section. This section shall survive expiration or termination of the Agreement and this PM.

The information contained in this document is proprietary and confidential to OptumRx.



## O. Information management

Network Pharmacy Provider understands Administrator relies on the information in the NCPDP database regarding its pharmacy location(s) and attests that the information in the NCPDP database is accurate. Network Pharmacy Provider further agrees to update the information in the NCPDP database as necessary so as to ensure compliance with this section. Network Pharmacy Provider further understands that Administrator updates its files through weekly file feeds received from NCPDP or other nationally recognized provider data vendor, as determined by Administrator. Administrator updates and maintains all pertinent provider information including, but not limited to, demographics, NPI, licensure, Medicaid ID, provider affiliation, ownership, and provider dispenser type via these provider data feeds. Network Pharmacy Provider is required to make any system updates, including updating any relevant Network Pharmacy Provider information, through the Administrator provider data vendor.

To the extent Network Pharmacy Provider is owned, operated or controlled by or affiliated with a pharmacy benefit management business entity, Network Pharmacy Provider represents and warrants it has a firewall in place to protect any/all information received due to the receipt of an Agreement and protects from disclosure outside of the performance of its obligations under this agreement any information received that is proprietary with only those participants who are on a need to know basis to carry out such agreement provisions. Any intentional disclosure shall result in immediate termination and legal action as necessary.

## P. Catamaran specialty pharmacy network addendum

**Specialty Performance Guarantee Requirements**
Pursuant to the Catamaran, an affiliate of OptumRx, Specialty Pharmacy Network Addendum, Network Pharmacy Providers providing specialty Covered Prescription Services in the network shall provide the required reports on a quarterly basis no later than thirty (30) days after the end of the quarter to **specialty.credentialing@optum.com**. Failure to provide the reports on a timely manner or failure to meet the performance metrics may constitute breach of Agreement and result in specialty pharmacy network termination and/or the imposition of the applicable financial penalty amounts set forth below or the maximum penalty amount of fifty thousand dollars ($50,000) per quarter at Administrator's sole discretion.

## Q. Insurance

Network Pharmacy Provider must at all times hold policies for general and professional liability insurance, including malpractice, in amounts necessary to ensure that Network Pharmacy Provider and any of its personnel are insured against any Claim(s) for damages arising from the provision of Covered Prescription Services; such policies must have coverage, at a minimum, in the amount of one million dollars ($1,000,000.00) per person and three million dollars ($3,000,000.00) in aggregate, unless otherwise agreed to by Administrator or such greater amount required by law.

Network Pharmacy Provider must furnish copies of said policies upon enrolling as a Network Pharmacy Provider with Administrator and as requested by Administrator thereafter. Failure to maintain the minimum coverage may result in immediate termination as a Network Pharmacy Provider. Network Pharmacy Provider must notify Administrator immediately in writing if its insurance is canceled, lapsed or otherwise terminated. Failure to immediately notify Administrator in writing of any such termination of insurance coverage may result in immediate termination as a Network Pharmacy Provider. The requirements in this section apply to the extent permissible under applicable law.

Contents

Back

Next

Previous

Exit

The information contained in this document is proprietary and confidential to OptumRx.



## Appendix A

**Independent Pharmacy Credentialing Application**

 Only complete documents will be accepted.

**For independent pharmacies**
For example only — Independent pharmacies (Non-PSAOs affiliation)
*Subject to change without notice at any time*

Contents
Back
Next
Previous
Exit

   

### Credentialing Information Required

**Contract <u>cannot</u> be implemented without first providing the following information and documents:**

**Copies of the following license(s) (all must not expire within 30 days):**
- Pharmacy License

- Pharmacist in Charge (PIC) License

- Full unrestricted full DEA 2-5

**Copies of the following:**
- Wholesaler Invoice
  - *Must include DEA and/or State License Number & legend drug ordered within the last 30 days*

- *Copy of most current store medication inventory*

- Insurance Coverage – minimum $1million occurrence/ $3million annual aggregate
  - *Certificate of Liability – Must not expire in the next 30 days*

- Pictures of the outside and inside of the pharmacy:
  ***Photos must be taken with either a smart phone or camera that has a location setting with the GPS option turned on***
  - Outside Front of the Pharmacy (include signage)
  - Cash Register
  - Inventory
  - Patient Consultation Area (without a patient in the photo).

- **Delays will occur if contract documents are not completed and/or required credentialing information is not supplied.**

STOP! PLEASE ATTACH THE REQUIRED DOCUMENTATION <u>BEFORE</u> PROCEEDING TO THE NEXT PAGE!

Credentialing Application – Independent Pharmacy          1                    Rev. 10/12/2015



# Appendix B

**Independent Pharmacy Credentialing and Re-credentialing Application Fee**

 Only complete documents will be accepted.

**For independent pharmacies**
For example only — Independent pharmacies (Non-PSAOs affiliation)
*Subject to change without notice at any time*



OPTUMRx CREDENTIALING APPLICATION and RE-CREDENTIALING FEE

OptumRx charges pharmacies a required initial Credentialing Application Fee and a subsequent Re-Credentialing fee to offset costs OptumRx incurs as a result of performing both the initial pharmacy credentialing and subsequent re-credentialing of pharmacy every three years ("Credentialing Fee").

**The pharmacy named below ("Pharmacy") hereby acknowledges, agrees and authorizes OptumRx to charge the Credentialing Fee by debiting Pharmacy's claims payment in the amount of $150.00 for the initial credentialing and subsequent re-credentialing, as applicable.**

_____
*[INSERT COMPANY NAME]*
Chain Code/NCPDP # _____

By: _____
     (signature)

Name: _____
         (print name)

Title: _____

Date: _____

If you have any questions, please contact the OptumRx credentialing department at (800) 613-3591, option 5, or via email at Pharmacycredentialing@optum.com. You may also fax documents to (877) 593-5368.

OptumRx Credentialing Application Fee  12.1.2013

The information contained in this document is proprietary and confidential to OptumRx.



# Appendix C

## Affiliation Credentialing Application

 Only complete documents will be accepted.

**For chain pharmacies/PSAOs**
For example only — Chain pharmacies/PSAOs (Non-independent affiliation)
*Subject to change without notice at any time*



**OptumRx Provider Manual:** 11th edition                                              119

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



## Appendix D

National council for the prescription drug programs (NCPDP)
Submission clarification code

**420-DK — Submission clarification code**

| Definition of field | Field format | Standard/version formats | Field limitations |
|---|---|---|---|
| Code indicating that the Pharmacist is clarifying the submission | 9(2) | T, P, A | |

**Values**

| Code | Description |
|---|---|
| 1 | Not specified, default |
| 2 | No override |
| 3 | Other override |
| 4 | Lost Prescription — Cardholder has requested replacement of a Drug Product that has become lost. |
| 5 | Therapy change — Prescriber has determined that a change in therapy was required; either that the Drug Product was used faster than expected, or a different dosage form is needed, etc. |
| 6 | Starter dose — Previous Drug Product was a starter dose and now an additional Drug Product is needed to continue treatment. |
| 7 | Medically necessary — Drug Product has been determined by the Prescriber to be medically necessary. |
| 8 | Process Compounded Drug for approved ingredients |
| 9 | Encounters |
| 10 | Meets plan limitations — In-compliance with the program's policies and rules that are specific to the particular product being billed. |
| 11 | Certification on file — Guarantee's a copy of the paper certification, signed and dated by the Prescriber, is on file at the supplier's office. |
| 12 | DME replacement — Certification for a DME item replacing a previously purchased DME item. |
| 13 | Payer-recognized emergency/disaster assistance request — Override is needed based on an emergency/disaster situation recognized by the payer. |
| 14 | LTC leave of absence — Cardholder requires a short-fill of a Prescription due to a leave of absence from LTC facility. |
| 15 | LTC replacement Drug Product — Drug Products have been contaminated during administration in a LTC setting. |
| 16 | LTC emergency box (kit) or automated dispensing machine — Replacement supply for doses previously dispensed to the patient after hours. |
| 17 | LTC emergency supply remainder — Remainder of the Drug Product originally begun from an Emergency Kit. |
| 18 | LTC patient admit/readmit — New dispensing of a Drug Product due to the patient's admission or readmission status. |
| 00 | Other |

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

# Appendix E

## Audit violations and discrepancy descriptions

| NCPDP DATA CODE | ORx Code Description | NCPDP Description | ORx Audit Discrepancy Computation |
|---|---|---|---|
| 1A-1 | Recalculate Compound | Corrected Billing: Incorrect Billing Adjustment | Recoupment of only over charged portion |
| 1A-2 | Recalculate Compound | Corrected Billing: Incorrect Billing Adjustment | Full recoupment if pattern of abuse evident. |
| 1A | Recalculate Compound | Corrected Billing: Incorrect Billing Adjustment | Recoupment of only overcharged portion. |
| 1B | Recalculate Compound | Compound:  Invalid use of the Compound Code. | Reverse & rebill as non-compound |
| 1C | Recalculate Compound | Compound: Excessive ingredient cost per product submitted. | Recoupment of only over charged portion. |
| 1D | Recalculate Compound | Compound: Incorrect ingredient product submitted. | Recoupment of only over charged portion. |
| 1E | Recalculate Compound | Compound: Incorrect ingredient quantity submitted on one or more ingredients. | Recoupment of only over charged portion. |
| 1F | Recalculate Compound | Compound: Ingredient quantities do not equal quantity billed. | Recoupment of only over charged portion. |
| 4R | Invalid Rx | Prescription filled before date authorized. | Full recoupment if date of service before written date. |
| 1G | Invalid Rx | Compound Prescription Work: Compounded Prescription please provide compound worksheet with pricing. | Full Recoupment. |
| 1H | Invalid Rx | Incorrect date written /issue date submitted | Educational only. |
| 1J | Invalid Rx | No Date on Rx | Charge back for initial dispensing and refills. |
| 1K | DAW | Incorrect use of DAW code | Partial Recoupment: reverse and rebill claim with manual cost override at the generic cost (for the brand NDC) |
| 1L | Mis-filled | Undocumented substitution | Full Recoupment |
| 1M | Other | Billed brand and dispensed generic | Partial Recoupment: reverse and rebill claim to generic |

**OptumRx Provider Manual:** 11th edition                                              121

The information contained in this document is proprietary and confidential to OptumRx.

OPTUMRx®

| NCPDP DATA CODE | ORx Code Description | NCPDP Description | ORx Audit Discrepancy Computation |
|---|---|---|---|
| 4U | Days Supply | Overbilled quantity | No recoupment for initial fill or refills that occur at >75% (>50% for LTC) of calculated day supply of previous fill. Full recoupment of refills that are <75% (<50% for LTC) of calculated day supply. |
| 1N | Days Supply | Incorrect Days Supply: Submitted days supply on claim is incorrect. | Educational |
| 3K | Days Supply | Exceeds drug program dispensing limits. | Partial recoupment |
| 1P | Invalid Rx | Missing / Invalid Prescriber Documentation ("PC", "CM", "P1 - P4" - Use Discrepancy Message to detail) | Full Recoupment |
| 1Q | Invalid Rx | Missing / Invalid Patient Documentation ("PP" or "LG" - Use Discrepancy Message to detail) | Full Recoupment |
| 1R | Wrong Drug | Different Drug Billed than written on order | |
| Full Recoupment | | | |
| 1S | Wrong Drug | Different drug billed than dispensed | Full Recoupment |
| 1T | Other | Incorrect Submission: Used Small Size NDC # for Larger Stock Size Dispensed | |
| 2B | No Signature Log | Missing signature for proof of delivery | Full Recoupment |
| 2C | No Signature Log | Incorrect date, Prescription or signature on proof of delivery (Signature Log) submitted | Full Recoupment |
| 2H | Other | Other - must include additional information about the discrepancy must be reported in field 526-FQ (Additional Message Information) | Description in Discrepancy Description Column |
| 2J | Wrong Member | Different Patient Name on Prescription | Full Recoupment |
| 2L | Other | Possible clinical issue with gender/age/drug - must include information about discrepancy in field 526-FQ (additional Message Field) | None. Educational for pharmacies only. |
| 2M-1 | Invalid DEA | Submitted Prescriber Identification is incorrect on Claim (Dummy DEA) | Full Recoupment if dummy DEA for CII through CV only |
| 4B | Invalid DEA | Prescriber ID not valid | Full Recoupment for dummy DEA (CII through CV only) |

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



| NCPDP DATA CODE | ORx Code Description | NCPDP Description | ORx Audit Discrepancy Computation |
|---|---|---|---|
| 2M | Wrong Doctor | Submitted Prescriber Identification is incorrect on claim. | Educational |
| 2N | Invalid Rx | Doctor signature missing on Rx. | Full Recoupment |
| 3N | Invalid Rx | No DEA # on Controlled Rx as required by Code of Federal Regulations | Full Recoupment |
| 2P | Invalid Rx | No Prescriber on Prescription order | Full Recoupment |
| 2R | Invalid Rx | Veterinary Prescriber inappropriate for Prescription | Full Recoupment |
| 2T | Quantity | Quantity dispensed inconsistent with prescriber directions (titrated therapies) | Take back only overcharged portion |
| 2U | Invalid Rx | Rx quantity is not complete, no quantity on Rx | Full Recoupment |
| 2X | Quantity | Invalid quantity billed for single package item. | Full Recoupment |
| 2V-1 | Quantity | Undocumented Quantity Altered | 1) Altered = Full Recoupment |
| 2V-2 | Quantity | Undocumented Quantity Changed | Educational Only: RPh needs to document physician approval to dispense greater quantity than originally prescribed & proportional reduction of refills. |
| 2W-1 | Quantity | Billed Quantity is different than quantity prescribed | 1) If quantity is in excess of total prescribed quantity including refills, Recoupment of over charged portion |
| 2W-2 | Quantity | Billed Quantity is different than quantity prescribed | 3) Full recoupment if pattern of abuse evident |
| 2Y | Quantity | No documentation for dispensing a quantity less than prescribed. | None; educational for pharmacy only |
| 2Z | Refill Too Soon | Refill too Soon | Full Recoupment |
| 3A | Unauthorized Refill | Unauthorized/Undocumented Refill of Prescription | Full Recoupment |
| 3D | Missing Prescription | Prescription Hardcopy Not Found | Full Recoupment |
| 3E | Return to Stock | Prescription returned to stock but not reversed. | Full Recoupment |
| 3F | Other | Rx does not meet all 3 of the CMS tamper-resistant Prescription requirements (MEDICAID) | Full Recoupment |
| 3G | Invalid Rx | Prescription expired at time of dispensing. | Full Recoupment |
| 3H | Mis-filled | Directions on Prescription different from computer record | Full Recoupment |

Contents

Back

Next

Previous

Exit

The information contained in this document is proprietary and confidential to OptumRx.

**OPTUMRx**®

| NCPDP DATA CODE | ORx Code Description | NCPDP Description | ORx Audit Discrepancy Computation |
|---|---|---|---|
| 3J | Invalid Rx | Prescription lacks specific, calculable directions (use as directed or missing directions) | Full Recoupment |
| 3P | Invalid Rx | Missing/Invalid Long Term Care (LTC) Medication Administration Record (MAR). | Full Recoupment |
| 3R | Invalid Rx | Missing/Invalid Long Term Care (LTC) Refill Request Form. | Full Recoupment |
| 3S | Invalid Rx | Missing/Invalid Long Term Care (LTC) Patient Attestation Letter (letter indicating patient received and consumed the medication) | Full Recoupment |
| 3X | Invalid Rx | Missing/Invalid Prescription Label. | Full Recoupment |
| 4J | Invalid Rx | No strength designated on Prescription with more than one strength available. | Full Recoupment |
| 4N | Invalid Rx | Prescriber does not have prescribing authority for medication dispensed. | Full Recoupment |
| 4P | Unauthorized Refill | Refills exceed number allowed for controlled substances. | Full Recoupment |
| 4T | Invalid Rx | Missing Prescription transfer information. | Full Recoupment |
| 4K | Other | Incorrect Prescription Origin Code | Educational |

**OptumRx Provider Manual:** 11th edition                                                                                     124

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



# Appendix F

## Client-specific manual addenda

Please click the applicable link(s) to access the manuals:

i Amendment to Participating Pharmacy Agreement For the State of Texas CTRx pharmacy manuals

ii. Community Partnership of Southern AZ

iii. TX pharmacy provider manual for UnitedHealthcare Community Plans STAR, STAR+PLUS and CHIP products

# Appendix G

## Medicaid; federal/state Medicare-Medicaid enrollees (MME) regulatory requirements

### OptumRx

The following state-specific appendices set forth certain regulatory requirements that Network Pharmacy Providers shall comply with, as applicable.

Click on the appropriate **bolded** link(s) to access currently active state-specific regulatory requirements:

1. Alabama (AL)
   a. Medicaid Regulatory Requirements

2. Alaska (AK)
   a. Medicaid Regulatory Requirements

**3. Arizona (AZ)**
   **a. Medicaid Program Medical Subcontractor**
   **b. Children's Rehabilitative Services Medical Subcontractor**
   **c. LTC System Program Medical Subcontractor**
   **d. Medicaid Division of Developmentally Disabled Program Medical Subcontractor**

4. Arkansas (AR)
   a. Medicaid Regulatory Requirements

5. California (CA)
   a. Medicaid Regulatory Requirements

6. Colorado (CO)
   a. Medicaid Regulatory Requirements

7. Connecticut (CT)
   a. Medicaid Regulatory Requirements

Contents

Back

Next

Previous

Exit

The information contained in this document is proprietary and confidential to OptumRx.

**OPTUMRx**®

8. Delaware (DE)

   a. Medicaid Regulatory Requirements

**9. Florida (FL)**

   **a. Healthy Kids Program Medical Subcontractor**

   **b. Medicaid Subcontractor**

10. Georgia (GA)

   a. Medicaid Regulatory Requirements

**11. Hawaii (HI)**

   **a. State Programs Medical Subcontractor**

   **b. State Programs Downstream Provider**

12. Idaho (ID)

   a. Medicaid Regulatory Requirements

13. Illinois (IL)

   a. Medicaid Regulatory Requirements

14. Indiana (IN)

   a. Medicaid Regulatory Requirements

**15. Iowa (IA)**

   **a. Hawk — i Program Medical Subcontractor**

**16. Kansas (KS)**

   **a. Medicaid and CHIP Medical Subcontractor**

17. Kentucky (KY)

   a. Medicaid Regulatory Requirements

**18. Louisiana (LA)**

   **a. Medicaid and Chip Provider**

19. Maine (ME)

   a. Medicaid Regulatory Requirements

**20. Maryland (MD)**

   **a. Medical Subcontractor**

**21. Massachusetts (MA)**

   **a. Government Programs Provider**

Contents

Back

Next

Previous

Exit

**OptumRx Provider Manual:** 11th edition     126

The information contained in this document is proprietary and confidential to OptumRx.



**22. Michigan (MI)**
   **a. Government Programs Subcontractor**

23. Minnesota (MN)
   a. Medicaid Regulatory Requirements

**24. Mississippi (MS)**
   **a. CHIP Program**
   **b. Medicaid Program Medical Subcontractor**

25. Missouri (MO)
   a. Medicaid Regulatory Requirements

26. Montana (MT)
   a. Medicaid Regulatory Requirements

**27. Nebraska (NE)**
   **a. Medical Subcontractor**

28. Nevada (NV)
   a. Medicaid Regulatory Requirements

29. New Hampshire (NH)
   a. Medicaid Regulatory Requirements

**30. New Jersey (NJ)**
   **a. Medicaid, NJ Family Care Programs and NJ Medicaid Long Term Support Services Provider/ Subcontractor**

**31. New Mexico (NM)**
   **a. Centennial Care Medical Subcontractor**

**32. New York (NY)**
   **a. Medicaid, Family Health Plus and Child Health Plus Medical Subcontractor**

33. North Carolina (NC)
   a. Medicaid Regulatory Requirements

34. North Dakota (ND)
   a. Medicaid Regulatory Requirements

**35. Ohio (OH)**
   **a. State Program Provider**
   **b. MME Rider**

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit

36. Oklahoma (OK)

   a. Medicaid Regulatory Requirements

37. Oregon (OR)

   a. Medicaid Regulatory Requirements

**38. Pennsylvania (PA)**

   **a. Government Programs Administrative Subcontractor**

**39. Rhode Island (RI)**

   **a. Medicaid Regulatory Requirements**

40. South Carolina (SC)

   a. Medicaid Regulatory Requirements

41. South Dakota (SD)

   a. Medicaid Regulatory Requirements

42. Tennessee (TN)

   a. Medicaid Regulatory Requirements

**43. Texas (TX)**

   **a. Medicaid Program Medical Subcontractor**
   **b. Medicaid and CHIP Program Medical Subcontractor**

44. Utah (UT)

   a. Medicaid Regulatory Requirements

45. Vermont (VT)

   a. Medicaid Regulatory Requirements

46. Virginia (VA)

   a. Medicaid Regulatory Requirements

**47. Washington (WA)**

   **a. State Programs Medical Subcontractor**
   **b. MME Rider**

48. West Virginia (WV)

   a. Medicaid Regulatory Requirements

49. Wisconsin (WI)

   a. Medicaid Regulatory Requirements

50. Wyoming (WY)

   a. Medicaid Regulatory Requirements

The information contained in this document is proprietary and confidential to OptumRx.



# Appendix H

## Client-specific information

**OptumRx**

### Delaware Medicaid clean claim payment

Administrator will reimburse Network Pharmacy Provider for each Clean Claim no later than thirty (30) days after Administrator's receipt of the Clean Claim, and contingent upon Benefit Plan Sponsor funding.

### Louisiana Bayou Health Medicaid Program

Requires the Network Pharmacy Provider directory on its website for public access to reflect the following data elements for all pharmacies participating in the Louisiana Bayou Health Medicaid Plan administered by Administrator:

- Telephone numbers for each pharmacy location

- Any non-English languages spoken

- Hours of operation, including pharmacy locations that are open 24-hours

- Identification of pharmacy locations that provide vaccine and/or delivery services

In order to meet this state requirement to make this information available to Louisiana Bayou Health plan Members, Administrator is requiring that these data elements be updated for each of your pharmacy locations in the NCPDP database.

NCPDP database updates and edits can be made by accessing **www.ncpdponline.org**.

All Prescriptions filled for Louisiana Bayou Health Members and submitted to Administrator that are not picked up within fourteen (14) calendar days must be reversed via the POS System, as well as returned to stock.

Federal regulations require Medicaid to verify that Members receive the services for which Medicaid has provided reimbursement. Medicaid periodically samples Members to verify that they did receive the Prescriptions that were billed by pharmacies. Louisiana Medicaid conducts random reviews of paid Claims to verify proof of services and may require documentation of Prescription receipt. These reviews are in addition to any audit performed by Administrator pursuant to the Agreement.

### Kancare Medicaid Program

Requires the disclosure of ownership of all Network Pharmacy Providers, including the disclosure of the:

- Names and addresses of all owners, Pharmacist-in-Charge/Pharmacy Managers; and

- Nine (9) digit Social Security Numbers for all owners, Pharmacist-in-Charge/Pharmacy Managers

The information contained in this document is proprietary and confidential to OptumRx.



## BIN/PCN

| Client/Plan name | BIN | PCN |
|---|---|---|
| AARP MedicareComplete insured through UnitedHealthcare; UnitedHealthcare MedicareComplete | 610097 | 9999 |
| AARP MedicareRx Plans insured through UnitedHealthcare; AARP MedicareRx Enhanced Prescription Drug Plan (PDP); AARP MedicareRx Preferred PDP; AARP MedicareRx Saver Plus PDP | 610097 | 9999 |
| AARP Welfare Plan | 610097 | 9999 |
| C&S MMP of Ohio - Medicaid | 610097 | 8500 |
| C&S MMP of Ohio - Medicare | 610494 | 9999 |
| Care Improvement Plus | 610097 | 9999 |
| Citrus Total; Citrus Plus; Note: For 2012 Claims Only | 610097 | 9999 |
| Commercial | 610494 | 2222 |
| Community Health | 610613 | 2417 |
| Erickson Advantage | 610097 | 9999; 8888 |
| FLEXSCRIPTS | 017472 | FLEXRX |
| Florida Share of Cost | 610494 | 2222 |
| Golden State Medicare | 610097 | 9999 |
| HealthESystems | 012874 | ----- |
| Hewlett Packard | 610097 | 9999 |
| John Deere Company | 610097 | 9999 |
| Legacy Innoviant Commercial | 610127 | 02330000; 01960000; |
| Maryland Medicaid | 610084 | RXSOLPRD |
| Maryland Senior Prescription Drug Assistance Program SPDAP (2013 claims; 2014 claims); | 610097 | 8888; 9999 |
| Medalist Rx | 016580 | ----- |
| Medica | 610097 | 9999 |
| Medicaid | 610494 | 9999 |
| Non-Part D Plans (MA and Retiree Drug Subsidy [RDS] only); UnitedHealthcare Medicare Complete Essential (HMO); AARP MedicareComplete Plus Essential (HMO-POS); AARP MedicareComplete Essential (HMO); AARP MedicareComplete Choice Essential (PPO); UnitedHealthcare MedicareDirect Essential (PFFS) | 610494 | 9999 |
| NYCTA | 610097 | 8888 |
| Part D WRAP Plans | 610097 | 8888 |

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



| | | |
|---|---|---|
| Partners Copay Billing Only | 015243 | PRX3000 |
| PartnersRx | 015243; 015251 | PRX1000; PRX2000 |
| PartnersRx Coupons | 610494; 015251 | 3333; PRX2000 |
| Pennsylvania Public School Employees' Retirement System PSERS | 610097 | 9999 |
| Physicians Health Choice Basic (HMO) | 610494 | 9999 |
| Physicians Health Choice Total (HMO); Physicians Health Choice Select (HMO SNP) | 610097 | 9999 |
| Preferred Care Partners/The Villages | 610097; 610494 | 9999 |
| Prescription Solutions Part-D and MAPD Plans | 610097 | 9999 |
| Raytheon COB | 610127 | 04000001; 04000002; 04000004 |
| Sierra Medical Advantage Prescription Drug MAPD – Health Plan of Nevada | 610097 | 9999 |
| State Health Plan of North Carolina (SHPNC) | 610097 | 8888 |
| Suffolk School Employer Health Plan | 610097 | 9999 |
| Symphonix | 610097 | 9999 |
| TeamStar Medicare Part D | 610097 | 9999 |
| U.S. Virgin Islands Senior Citizens Affairs Pharmaceutical Assistance Program | 610097 | 8888 |
| UnitedHealthcare Dual Complete (HMO SNP) in Wisconsin | 610097 | 9999 |
| UnitedHealthcare Dual Complete Preferred (HMO SNP) in Tennessee | 610097 | 9999 |
| UnitedHealthcare Employer and Individual | 610279 | 9999 |
| UnitedHealthcare Employer- Contraceptive Services Only | 610279 | CONTRAC |
| UnitedHealthcare Chronic Complete | 610494 | 9999 |
| UnitedHealthcare Community Plan | 610494 | 9999 |
| UnitedHealthcare Community Plan Coordination of Long-Term Services (CoLTS) | 610094 | 9999 |
| UnitedHealthcare Dual Complete (DH, DH-POS, DP, RDP) | 610097 | 9999; 8888 |
| UnitedHealthcare Dual Complete (HMO SNP) | 610097 | 9999 |
| UnitedHealthcare Dual Complete (HMO SNP) in Michigan | 610097 | 9999 |
| UnitedHealthcare Dual Complete (HMO SNP) in New York | 610097 | 9999 |
| UnitedHealthcare Group Medicare Advantage | 610097 | 9999; 8888 |
| UnitedHealthcare Medicaid Supplemental Plan | 610494 | 2222 |
| UnitedHealthcare MedicareRx for Group PDP | 610097 | 9999; 8888 |
| UnitedHealthcare Nursing Home Plan ( IH, IH-POS, IP) | 610097 | 9999 |
| UnitedHealthcare Senior Care Options in Arizona | 610097 | 9999 |

Contents

Back

Next

Previous

Exit



| | | |
|---|---|---|
| UnitedHealthcare Senior Care Options in Massachusetts | 610097 | 8500 |
| UnitedHealthcare SignatureValue Commercial | 610494 | 9999 |
| UnitedHealthcareMedicareDirect Rx (PFFS) | 610097 | 9999 |

## Unitedhealthcare

### Pharmacy help desk service contact information

 Hours of operation: 24 hours a day, 7 days a week, 365 days a year

For Member information regarding Benefit Plan **exclusions, disease therapy management (DTM) programs or other customer service issues,** please contact us using one of the following:

#### UnitedHealthcare Medicare Advantage Prescription Drug Plan (MA-PD):
• Telephone: **1-877-889-6510**
• Telephone Device for the Hearing Impaired (TDHI): **1-866-394-7218**

#### UnitedHealthcare Medicare Prescription Drug Plan (PDP):
• Telephone: **1-877-889-6481**
• Telephone Device for the Hearing Impaired (TDHI): **1-866-394-7218**

#### UnitedHealthcare Community Plan (Medicaid Programs):
• Telephone: **1-888-306-3243**
• Telephone Device for the Hearing Impaired (TDHI): **1-866-394-7218**

#### UnitedHealthcare Employer & Individual:
• Telephone: **1-800-788-7871**
• Telephone Device for the Hearing Impaired (TDHI): **1-800-498-5428**

### Unitedhealthcare direct member reimbursement contact information

| Carrier | UHCACIS01 | | UHCPRIM01 | UHCUHCI01 |
|---|---|---|---|---|
| Platform | ACIS | | PRIME | ACIS |
| Alt ID | Non-standard | Standard | Standard | Standard |
| Submitted group | UH+7 digit policy# | UHealth1 | UHC | UHealth1 |
| BIN | 610279 | 610279 | 610279 | 610279 |
| PCN | 9999 | 9999 | 9999 | 9999 |
| DMR mailing address | P.O. Box 29044 Hot Springs, AR 71903 | P.O. Box 29044 Hot Springs, AR 71903 | P.O. Box 29044 Hot Springs, AR 71903 | P.O. Box 29044 Hot Springs, AR 71903 |

The information contained in this document is proprietary and confidential to OptumRx.

Contents

Back

Next

Previous

Exit



 Changes to this year's Medicare Part D Formulary, for the following Benefit Plans, will be posted on the websites listed below.

**Please Note**:
This list is not all-inclusive, but a sample only.

| Plans | Websites |
|---|---|
| AARP MedicareComplete AARP MedicareRx Enhanced AARP MedicareRx Preferred | https://aarpmedicareplans.com/landing/medicare-advantage-plans.html?wtredirect=aarpmedicarecomplete.com&WT.mc_id=880341 |
| Erickson Advantage | http://ericksonadvantage.com/ |
| IBT (International Brotherhood of Teamsters) | http://teamstarpartd.com/ |
| Golden State Medicare Health Plan | http://goldenstatemhp.com/ |
| PSERS (Pennsylvania Public School Educators' Retirement System) | http://hopbenefits.com/ |
| Sierra MAPD Plan | http://sierrahealthandlife.com/ |
| UnitedHealthcare Community Plan | http://uhccommunityplan.com/ |
| Symphonix Health Plan | https://symphonixhealth.com/ |

**Unitedhealthcare Sample Member ID Cards**





**Vaccine and immunization administration**

**Commercial**
When your pharmacy administers vaccines listed in the annual flu season communication for eligible commercial plan Members, reimbursement is based on an all-inclusive fee which encompasses the administration fee, ingredient cost and dispensing fee.

- UnitedHealthcare contracts for select vaccines and immunizations; not all Clients participate in the Administrator Vaccine Program.



**Medicaid (UnitedHealthcare Community Plans)**
• **Processing requirements when you provide and administer the vaccine**
  When your pharmacy provides and also administers the vaccine, please populate the NCPDP field 438-E3 (Incentive amount submitted) field to submit for the $10 administration fee and populate field 439-E4 (Reason for service code) with "MA."

• **Administration fee-only claims**
  If the vaccine was obtained through special program such as Vaccines for Children, you may submit a Claim for just the administration fee by submitting the Claim as usual, including the administration fee and changing your U&C amount to $0.01. You will be reimbursed $10.01.

**Medicare Part D**
In order to be reimbursed the contracted administration fee of $20 for Part D eligible vaccine products, the Network Pharmacy Provider must (i) submit the contracted fee in the incentive fee section of the Claim and (ii) submit a DUR/PPS Code Counter of "1" and Profession Service Code of Medication Administration (MA).

To participate in Administrator Vaccine and Immunization programs, please email **pharmacycontracts@optum.com**

## Catamaran

**Local Pick-up Program**
If the Network Pharmacy Provider participates in the Catamaran local pick-up program, Network Pharmacy Provider will be responsible for Drug Product fulfillment to eligible Members under Prescription benefit plans to be identified by Catamaran. Drug Product fulfillment is the dispensing of Prescriptions to eligible Members, including, but not limited to, the following specific activities: receiving bulk shipment of Prescriptions (excluding refrigerated items) already filled, labeled and packaged by one of Catamaran's licensed Network Pharmacy Providers; signing and returning to Catamaran the packing slip confirming receipt of the order; storing the Prescription orders in a designated location; handing Prescription orders to eligible Members or their authorized representatives who pick them up at the dispensing Network Pharmacy Provider; offering to counsel eligible Members about the Prescription orders being dispensed and having a licensed Pharmacist providing counseling to those who accept the offer to counsel; and maintaining any records required by law in connection with its services. This process may not be available in all states and may vary state-by-state in accordance with applicable state laws.

Contents

Back

Next

Previous

Exit

The information contained in this document is proprietary and confidential to OptumRx.



# Appendix I

Catamaran state-specific provider manual addenda

**Medicaid: Federal/State Medicare-Medicaid enrollees (MME) regulatory requirements**
Additional state-specific appendices set forth certain regulatory requirements that Network Pharmacy Providers shall comply with, as applicable. All additional state-specific appendices are detailed on **catamaranrx.com** (access to the portal will require proper credentials).

**Commercial requirements**
Additional state-specific exhibits set forth certain requirements that Network Pharmacy Providers shall comply with, as applicable. All additional state-specific exhibits are detailed on **catamaranrx.com** (access to the portal will require proper credentials).

**Click on the appropriate link(s) to access state-specific regulatory requirements listed below:**

1. Florida Regulatory Addendum

2. Georgia Regulatory Addendum

3. Hawaii Regulatory Addendum

4. Illinois Regulatory Addendum

5. Kentucky Regulatory Addendum

6. Maryland Regulatory Addendum

7. Massachusetts Regulatory Addendum

8. New Jersey Regulatory Addendum

9. New York Regulatory Addendum

10. New York Addendum to the Participating Provider Agreement

11. North Carolina Regulatory Addendum

12. Ohio Regulatory Addendum

13. South Carolina Regulatory Addendum

14. Texas Regulatory Addendum

15. Washington Regulatory Addendum

Contents

Back

Next

Previous

Exit

1-877-309-5345 | **optumrx.com**

2300 Main Street, Irvine, CA 92614

OptumRx specializes in the delivery, clinical management and affordability of prescription medications and consumer health products. We are an Optum™ company — a leading provider of integrated health services. Learn more at **optum.com**.

All Optum™ trademarks and logos are owned by Optum, Inc. All other brand or product names are trademarks or registered marks of their respective owners.

©2015 Optum, Inc. All rights reserved.  ORX5979A_151001

Exhibit "B"



# 2020
## Pharmacy Provider Manual



# I.  Introduction



# A. About this Provider Manual (PM)

The Administrator Provider Manual (PM), also known as "Provider Manual" or "Pharmacy Manual", includes the policies and procedures for pharmacies, pharmacists, as well as pharmacy staff (collectively, Network Pharmacy Providers) which serve Members pursuant to the Administrator's participating pharmacy provider network agreements, including, but not limited to the Pharmacy Network Agreement, Specialty Pharmacy Network Agreement and Provider Agreement.

Administrator appreciates your participation in its pharmacy network and your role in delivering quality Covered Prescription Services to our Members. The PM is incorporated into and is a part of your Agreement. As a Network Pharmacy Provider, you are responsible for monitoring and complying with all changes to the PM. Failure to adhere to any of the provisions and terms of the Agreement, which includes this PM, as well as all other applicable documents, will be viewed as a breach of the Agreement.

**Note**: Network Pharmacy Providers' participation in an Administrator or Client network shall not guarantee participation in all networks. Administrator reserves the right to limit Network Pharmacy Providers (and any of its pharmacies') participation in a network in its sole discretion.

Any Agreement entered into by-and-between Administrator and Network Pharmacy Provider will have an effective date executed by Administrator ("Effective Date"); shall continue uninterrupted until terminated by either party according to the terms and conditions of the Agreement.

In the event that Administrator or any of its affiliate acquires a company, whether by merger, stock acquisition or asset acquisition (the "Acquired Company"), that has a pharmacy network agreement with Network Pharmacy Provider in effect at the time of the acquisition (the "Pre-Existing Agreement"), Administrator may, in its sole discretion, require that Network Pharmacy Provider restate the Pre-Existing Agreement to be substantially similar to this Agreement or terminate the Pre-Existing Agreement without penalty to Administrator, and provide Covered Prescription Services to the Acquired Company in accordance with the terms of this Agreement, effective as of the date of the acquisition or other mutually agreed upon date. In the event that Administrator determines, in its sole discretion, that the Pre-Existing Agreement should continue in accordance with its terms, Network Pharmacy Provider's provision of services to the Acquired Company shall remain subject to the terms and conditions of the Pre-Existing Agreement.

Network Pharmacy Provider understands Administrator is relying on its participation in applicable networks and as such shall not be allowed to opt-out of any networks without the written consent of Administrator.

- Information in this PM is current at the time of publication.
- While efforts are made to keep the information current, this PM is subject to change without notice.
- This PM is not designed to cover all circumstances or issues, nor is it a replacement for sound clinical judgment.
- Online Claim adjudication via the Point-of-Sale (POS) System will reflect the most current benefit and takes precedence over printed information.
- For your convenience, all capitalized terms contained in this PM will have the meanings as set forth in the Agreement or are listed and defined in this PM.
- In the event this PM and the Agreement have conflicting language, the PM will supersede the Agreement.
- For specific details regarding the particular terms and conditions of the contract between Administrator and its participating pharmacies, please refer to the Agreement.
- Administrator intends for this PM to provide information as to adequately address questions and concerns related to the Administrator pharmacy program. Please contact the Administrator for additional questions.
- All Administrator fax blast communications (e.g. Faxblast Communication), sent prior and after participation as a Network Pharmacy Provider are hereby incorporated by reference into both the PM and Agreement.

## B. Images Used in the PM

 Friendly FYI for our valued Network Pharmacy Providers

 Looking out for our valued Network Pharmacy Providers

 Helpful examples and encouragement to reach out for additional assistance (see Section II)

 Notable information for routine use by Network Pharmacy Providers

OPTUMRx®

# Table of Contents

Click any section or page below to go directly to that portion of the document.

I.   **Introduction** ............................................................................................................................. 2

   A.   About this Provider Manual (PM) ............................................................................. 3

   B.   Images Used in the PM ............................................................................................ 4

**Table of Contents** ......................................................................................................................... 5

II.  **Definitions** ............................................................................................................................... 13

III. **Contact Information** ............................................................................................................... 23

   A.   Pharmacy Help Desk Service ................................................................................ 24

   B.   Prior Authorization (PA) Service ........................................................................... 24

   C.   Pharmacy Network Contract Department .............................................................. 24

   D.   MAC Appeals Contact Information ......................................................................... 25

   E.   Pharmacy Network Credentialing Department ...................................................... 25

   F.   Provider Forms and Documents ............................................................................ 25

IV.  **Sample Member Identifications (ID) Cards** ......................................................................... 27

V.   **Processing Claims** ................................................................................................................ 29

   A.   General Process ..................................................................................................... 30

      Complete Claims ........................................................................................................ 30

      CMS Requirement to Submit Claims .......................................................................... 30

      Federal Regulations for Schedule II Drugs ................................................................ 31

      Online Processing Window to Submit Electronic Claims ............................................ 31

      National Drug Code (NDC) Number ........................................................................... 32

      National Provider Identification (NPI) Number ........................................................... 32

      Taxonomy .................................................................................................................... 33

      DEA Number ............................................................................................................... 33

      Required Claim Information ......................................................................................... 34

      Patient Residence Code (PRC) and Pharmacy Service Type (PST) Requirements ... 34

      Nebulizing Solutions for Medicare Members .............................................................. 36

      Prescription Origin Code Claim Submission ............................................................... 36

      Pharmacy Processing Information and Notices .......................................................... 36

      Dispense as Written (DAW) Codes ............................................................................. 36

      Claims That Require a Diagnosis ............................................................................... 38

      Subrogation and Coordination of Benefits (COB) ...................................................... 39

      Retroactive Eligibility Changes .................................................................................. 39

Payer Sheets ................................................................................................... 39

B.   Formulary .................................................................................................... 40

C.   Submitting Compounded Drug Claims ........................................................ 40

Raw or Bulk Chemical Powders ...................................................................... 42

Submitting Multi-Ingredient Compounded Prescriptions Under Version D.0 ... 42

Compliance ..................................................................................................... 42

Compounded Drug Claims General Exclusions ............................................... 43

Re-packaged/Re-imported Ingredients ........................................................... 43

Compensation for Compounded Drug Claims .................................................. 43

Commercial claims (OptumRx BINs Only) ...................................................... 43

Medicaid claims (OptumRx BINs Only) ........................................................... 43

Medicare Part D claims (OptumRx BINs Only) ............................................... 44

Processing a Compounded Drug Claims with Non-covered Ingredients .......... 44

D.   Vaccine and Immunization Administration .................................................. 44

E.   Pharmacy Payment ..................................................................................... 44

Processing and Pricing; Successful Adjudication of a Claim .......................... 44

Payments ........................................................................................................ 45

Payment Rules under Medicare and Medicaid Programs ................................ 45

Payment of Interest ........................................................................................ 46

Electronic Remittance Advice (ERA) 835 and Electronic Fund Transfer (EFT) ... 46

F.   Member/Insured Appeal Rights ................................................................... 46

G.   Utilization Management ............................................................................... 47

Utilization Management Requirements for Select Drugs .................................. 47

Prior Authorization (PA) Process Key Steps ................................................... 48

Additional Information ..................................................................................... 48

Maximum Dollar Edits (Max) ........................................................................... 48

H.   Concurrent Drug Utilization Review (cDUR) ............................................... 49

Override Codes for Pharmacy ......................................................................... 49

I.   Retrospective Drug Utilization Review (rDUR) / Clinical Programs .............. 52

rDUR- Gaps in Care ........................................................................................ 52

rDUR - Safety Management ............................................................................. 52

Opioid Risk Management Program ................................................................... 52

Medicare Part D Overutilization Program ........................................................ 52

Medicare Part D Drug Management Program .................................................. 53

Medication Adherence Program ...................................................................... 53

Diabetes Management Program ................................................................................................. 53

Orphan Drug Program ............................................................................................................... 54

Cost Management Program ....................................................................................................... 54

J.   Maximum allowable cost (MAC) pricing, review and appeals ............................................ 54

MAC State-Specific ................................................................................................................... 55

K.   Resubmitting a claim ......................................................................................................... 55

L.   Transmission fees .............................................................................................................. 55

M.   Pharmaceutical manufacturers' cost- share amount coupons .......................................... 55

N.   Tax on Covered Prescription Services .............................................................................. 56

O.   Disputed claims ................................................................................................................. 56

P.   Days Supply and Quantity ................................................................................................. 56

Dispensing Limitations .............................................................................................................. 56

Days Supply .............................................................................................................................. 56

Quantity ..................................................................................................................................... 57

Q.   Collection of Members Cost-Sharing Amount .................................................................... 57

R.   Claim Reversals ................................................................................................................ 58

S.   Prohibition on Repackaging and Reimportation ................................................................ 58

T.   Use of Third Parties .......................................................................................................... 58

U.   340(B) Program ................................................................................................................. 58

V.   Hospice ............................................................................................................................. 59

W.   Dispensing Physicians ...................................................................................................... 59

X.   Medication Synchronization ............................................................................................... 59

Y.   Submission of the Pharmacy's Cash Price as the U&C Price ........................................... 59

Z.   Contraceptive Services Only (CSO) .................................................................................. 60

VI.   BIN Information ...................................................................................................................... 61

A.   OptumRx List 1: Prescription Bank Identification Numbers (RxBINs) ............................... 62

OptumRx List 1 Payer Sheets ................................................................................................... 62

B.   OptumRx List 2: Prescription Bank Identification Numbers (RxBINs) ............................... 62

OptumRx List 2 Payer Sheets ................................................................................................... 62

C.   OptumRx List 3: Prescription Bank Identification Numbers (RxBINs) ............................... 62

D.   OptumRx Guide: Assists in Identifying the Appropriate BIN/PCN to Submit Claims ......... 63

VII.   Medicare Product Information and Guidelines ....................................................................... 69

A.   Excluded Drugs ................................................................................................................. 70

B.   Medicare Part A/B/D Coordination of Benefits (COB) ....................................................... 71

C.   Medicare Part D Clean Claim Determination ..................................................................... 72

D.   Medicare Part D Coverage Determination ................................................................72

E.   Permissible prescriber identifiers for Medicare Part D claims ...............................72

F.   Coverage Determination Timeframes ......................................................................73

   Standard Coverage Determination ..........................................................................73

   Expedited Coverage Determination .........................................................................73

G.   Submit all Claims; Claims Adjustments ...................................................................73

H.   Coverage Limitations ...............................................................................................74

I.   Medication Therapy Management (MTM) .................................................................74

   MTM Eligibility .........................................................................................................74

   Scope of MTM Services............................................................................................75

   MTM Enrollment Process .........................................................................................75

   MTM Reimbursement for Network Pharmacy Providers ..........................................75

J.   Medicare Part D Transition Policy ............................................................................75

K.   Medicare Part D Transitioning LTC Facility Residents.............................................76

L.   Unbreakable Packages ............................................................................................76

M.    LTC Facility Information to be Provided Upon Termination .....................................76

N.   Short-Cycle-Dispensing (SCD) Processing for LTC ................................................77

   Valid Submission Clarification Code and Special Packaging Indicator Combinations ................77

O.   Daily Cost Share (DCS) ...........................................................................................79

P.   Medicare Part D Sixty (60) Day Negative Formulary Change Notice.......................79

Q.   Medicare Part D Annual Notice of Change for Continuing Members ........................79

R.   Best Available Evidence (BAE) ................................................................................80

   All Pharmacy Types EXCLUDING LTC Providers....................................................80

   LTC Providers ONLY ................................................................................................80

S.   Part D Mail Order, Home Delivery or Other Automatic Delivery Program ...............80

   Initial/New Prescriptions ..........................................................................................81

   Refill Prescriptions ...................................................................................................81

T.   Medicare Part B Cost Sharing for Dual Eligibles/Prohibition of Balance Billing.......81

U.   Medicaid Dual Status Codes and Medicare Cost Share Coverage ..........................82

V.   Claim Notification – Dual Eligible Members and Part B Drugs.................................82

W.    Medicare Supplier Number ....................................................................................83

X.   Medicare Notice of Patient's Rights.........................................................................83

Y.   Compliance ..............................................................................................................83

   Pharmacy Marketing Activity ...................................................................................84

   CMS Complaints Tracking Module (CTM) ...............................................................85

Z.   DUR Medicare Part D Therapeutic Dose Limits Edits ........................................................... 85

    DUR/PPS Codes (Reason, Professional and Result Codes) ......................................................... 85

AA.   DUR Medicare Part D Morphine Milligram Equivalent (MME) Limits Edits ........................................ 86

BB.   Medicare Advantage Benefit Plans (MA) ....................................................................... 86

CC.   Medicare-D Drug Management Program Member Pharmacy Lock-In Edit.......................................... 87

**VIII.  Compliance; Fraud, Waste and Abuse (FWA); General Training; Audits .............................................. 88**

  A.   Network Pharmacy Provider FWA and General Compliance Training ............................................. 89

    Common FWA Schemes to Avoid ............................................................................. 89

    Cultural Competency with Abuse, Neglect and Exploitation Training .............................................. 90

  B.   Pharmacy audits (Audits) ................................................................................... 91

    Audit Policy Statement ..................................................................................... 91

    Audit Purpose ............................................................................................. 91

    Procedures for Audit Compliance ............................................................................ 92

    Documentation and Submission Expectations .................................................................. 94

    Prescription Records ....................................................................................... 94

    Wholesaler, Manufacturer and Distributor Invoices ............................................................ 95

    Signature Log — Hard Copy or Electronic ..................................................................... 96

    Insulin and Diabetic Supplies ................................................................................ 96

    Inhalers and Inhalation Products ............................................................................. 96

    Ophthalmic Products ....................................................................................... 97

    Desktop and Telephone Audits .............................................................................. 97

    Prescription Validation Reviews ............................................................................. 97

    Investigative Reviews ...................................................................................... 97

    Post-Audit Reporting ...................................................................................... 98

    Miscellaneous Audit Information ............................................................................. 98

    Prescription Origin Code Claim Submission ................................................................... 100

    Pharmacy Audit Review Committee (PARC) .................................................................. 100

    LTC Providers ........................................................................................... 100

  C.   Data Accuracy ............................................................................................ 101

  D.   OIG/GSA/Preclusion List Validations ........................................................................ 101

**IX.  Pharmacy Network Participation Requirements ................................................................ 103**

  A.   Network Pharmacy Provider Participation .................................................................... 104

  B.   Prohibited activities by Network Pharmacy Provider and Associated Penalties .................................. 104

    Non-Solicitation .......................................................................................... 104

    Non-Compliance .......................................................................................... 105

**OptumRx Pharmacy Provider Manual 2020 4th Edition**
The information contained in this document is proprietary and confidential to OptumRx.

9

Termination and Appeal Process .................................................................................. 105

Delegation and Off-Shoring ......................................................................................... 106

C.   Credentialing and Quality Management ................................................................... 106

Independent Pharmacy Credentialing .......................................................................... 107

Specialty Credentialing ............................................................................................... 108

Compound Credentialing ............................................................................................ 108

PSAO Credentialing Requirements ............................................................................. 108

Minimum Credentialing Requirements for Pharmacies Participating Through a PSAO ........... 109

Additional Credentialing Requirements for HI Pharmacies Participating Through a PSAO ......... 109

Chain Pharmacies ...................................................................................................... 110

Additional State and Plan Requirements ..................................................................... 110

Enhanced Credentialing .............................................................................................. 110

Onsite visit ................................................................................................................. 111

Quality Related Events ............................................................................................... 111

Recall Notices / Expired Medications .......................................................................... 111

Storage of Refrigerated Medication ............................................................................. 111

Pharmacy Temperature and Storage Conditions .......................................................... 111

Operation Standards ................................................................................................... 112

D.   Pharmacies Contracted Directly with PSAOs ........................................................ 112

E.   Confidentiality and Proprietary Rights .................................................................... 112

F.   Medicaid; Federal/State Medicare-Medicaid enrollee (MME) Regulatory Requirements .......... 113

State-specific Medicaid Program Participation Required................................................. 113

Medicaid COB ........................................................................................................... 113

State Sanctioned Providers ......................................................................................... 113

Medicaid Drug Management Program Member Pharmacy Lockin Edit ............................. 113

Terminated NDCs Due to Pharma Manufacturers Not Renewing Their Medicaid Drug Rebates Agreements .............................................................................................................. 114

G.   Retail and Mail Network Agreements ..................................................................... 114

H.   Compounding pharmacy participation in retail networks.......................................... 115

I.   Provide timely notice of demographic changes ....................................................... 116

J.   Involuntary Disenrollment by Benefit Plan Sponsor ................................................ 117

K.   National Plan and Provider Enrollment System (NPPES) Updates........................... 117

L.   Termination .......................................................................................................... 117

M.   Alternative Dispute Resolution............................................................................... 119

N.   Confidentiality ...................................................................................................... 120

O.   Information Management ....................................................................................... 121

P.   Insurance ............................................................................................................ 121

Q.   Rural Pharmacy ................................................................................................... 122

R.   Member and Client Hold Harmless ........................................................................ 122

S.   Submission of Clean Claims via the POS system for 340B Drug Products................... 122

**X.   Worker's Compensation and Auto No-Fault** .................................................................. **124**

A.   Tmesys ............................................................................................................... 125

1.   OptumRx List 3: Prescription Bank Identification Numbers (Rx BINs)................... 125

2.   Contact Information .......................................................................................... 125

4.   Processing Claims ............................................................................................ 126

a)   Billing of Claims ............................................................................................... 126

b)   Payment of Claims ........................................................................................... 126

c)   Delegation ...................................................................................................... 126

a)   Payment to Pharmacy ...................................................................................... 128

b)   Taxes ............................................................................................................. 128

B.   Healthesystems .................................................................................................. 128

1.   OptumRx List 3: Prescription Bank Identification Numbers (Rx BINs)................... 128

2.   Contact Information .......................................................................................... 128

Sample Healthesystems Member ID Card: ...................................................................... 129

4.   Processing Claims ............................................................................................ 129

**XI.   Appendix** ....................................................................................................................... **132**

Appendix A ..................................................................................................................... 133

Independent Pharmacy Credentialing Application............................................................. 133

For Independent Pharmacies ........................................................................................... 133

Appendix B ..................................................................................................................... 133

Independent Pharmacy Credentialing and Re-credentialing Application Fee ........................ 133

For Independent Pharmacies ........................................................................................... 133

Appendix C ..................................................................................................................... 134

Affiliation Credentialing Application ................................................................................. 134

Appendix D ..................................................................................................................... 135

National Council for the Prescription Drug Programs (NCPDP) Submission Clarification Code ............ 135

Values ............................................................................................................................ 135

Appendix E ..................................................................................................................... 138

Audit Violations and Discrepancy Descriptions* ................................................................ 138

Appendix F ..................................................................................................................... 143

Medicaid; CHIP; Federal/State Medicare-Medicaid (MME) enrollees Regulatory and Client-Contractual Program Requirements ........................................................................................................... 143

Appendix G ................................................................................................................................. 146

MAC State-Specific Requirements ......................................................................................... 146

Appendix H ................................................................................................................................. 155

Client-Specific Information ...................................................................................................... 155

Appendix I ................................................................................................................................... 160

Commercial Requirements ...................................................................................................... 160

## II.   Definitions



The following terms are used throughout this document and are derived from the Agreement, CMS regulations and other program documents:

**Administrator:**
OptumRx, Inc., OptumRx NY IPA, Inc., OptumRx, LLC, OptumRx Administrative Services, LLC and any subsidiaries or affiliates which provide pharmacy benefit services.

**Agreement:**
Administrator's contractual arrangements with Network Pharmacy Providers, including, but not limited to the Pharmacy Network Agreement, Specialty Pharmacy Network Agreement, Provider Agreement, or other Agreement entered into on behalf of Clients and Payers.

**Average Wholesale Price (AWP):**
AWP and brand or generic Prescription classification is determined by Administrator in all cases and updated at least weekly. Administrator shall use Client or Benefit Plan, Medi-Span□ or other national resource and internal processes as a reference, but not as the sole determinant. WAC-referenced based pricing may be implemented should AWP become obsolete or if Benefit Plan or market conditions warrant such pricing methodology. Other nationally recognized referenced based price sources may also be implemented as market conditions warrant or under the circumstances where AWP becomes obsolete.

**Benefit Plan/Plan:**
Benefit or Plan coverage provided to Payer's or Clients' Members for Covered Prescription Services which are subject to the Agreement and this Provider Manual, including without limitation any Commercial, Administrative services- only, self-insured, Medicaid, Medicare Advantage, MA-PD Plan or Medicare Prescription Drug Plan, third-party administrator, and multiple employer trusts or other government programs. Benefit Plan or Plan may also include worker's compensation plans, no-fault auto insurance plans, hospice plans and discount card programs.

**Benefit Plan Sponsor:**
Any person, Client or entity, including government agencies, which has entered into, or in the future enters into, a written Agreement with Administrator or a Client pursuant to which Administrator provides certain consultative, administrative, and/or Claims processing services in connection with the operation of one or more Benefit Plans sponsored, issued or administered by such person, Client or entity and/or that person's, Client's or entity's customer.

**Brand Name Drug:**
Drug Product marketed under a proprietary and trademark-protected name.

**Centers for Medicare & Medicaid Services (CMS):**
CMS is a federal agency within the United States Department of Health & Human Services (HHS) that administers the Medicare program and works in partnership with state governments to administer Medicaid, the State Children's Health Insurance Program (SCHIP), and health insurance portability standards. In addition to these programs, CMS has other responsibilities, including the administrative simplification standards from the Health Insurance Portability and Accountability Act of 1996 (HIPAA), quality standards in LTC facilities (more commonly referred to as nursing homes) through its survey and certification process.

**Claim:**
Network Pharmacy Provider's billing or invoice for a single Prescription for Covered Prescription Services dispensed to a Member submitted by Network Pharmacy Provider to Administrator or claims processor in accordance with the Agreement. If a Claim is not processed in accordance with the Medicaid or Medicare Part D Addendum, Amendment, Exhibit, such Claim is considered a commercial Claim.

**Claims Processor:**
Claims Processor Administrator or a third party pharmacy claims processor with which Administrator may contract.

**Clean Claim:**
Prepared in accordance with the standard formats promulgated by the National Council for Prescription Drug Programs, electronic, batch, and on paper, which contains all of the information necessary for processing (including, without

limitation, the Member identification number, the Member's name and date of birth, Drug Product NDC number, drug quantity, days' supply, health care provider Drug Enforcement Administration (DEA)/NPI number, Pharmacy National Council for the Prescription Drug Programs (NCPDP)/NPI number, date of service, Submitted Cost Amount and the U&C). Claims submitted in non-NCPDP standard format may not be considered a Clean Claim and may be subject to an additional Claim processing charge. A Claim shall not be considered a "Clean Claim" if at Administrator's sole discretion it determines that such Claim is (i) discrepant, false and/or fraudulent, (ii) by an individual not authorized under applicable law or regulation to write or direct the related Prescription, or (iii) with respect to any Benefit Plan that is a "Federal health care program" as defined in 42 U.S.C. 1320a-7b, relates to a Prescription written or directed by an individual who is excluded from participation in any Federal health care program pursuant to applicable federal/state law (individually and collectively, a Non-Clean Claim). In addition and as determined by Administrator's sole discretion, a Non-Clean Claim includes a Claim for a Drug Product that was Mailed, shipped or delivered by a Pharmacy that does not participate in Administrator's Mail Order Pharmacy Network pursuant to a mutually signed Mail Order Pharmacy Network Agreement. An Administrator's Non-Clean Claim determination shall be applicable regardless of whether Administrator, Client, Member, and/or Pharmacy were aware of the same at the time such Prescription was processed by Pharmacy. Any amounts paid by any Member, Administrator or Client for such Non-Clean Claim shall be subject to recoupment from Pharmacy by Administrator.

**Client:**
Any person or entity which has entered into, or in the future enters into, a written Agreement with Administrator pursuant to which Administrator provides certain consultative, administrative and/or Claims processing services in connection with the operation of one or more Benefit Plan Sponsored, issued or administered by such person or entity and/or that person's or entity's customer including, but not be limited to health maintenance organizations, preferred provider organizations, limited service health organizations, medical service plans, other managed care plans, third party administrators, union trusts, insurance companies/carriers, self-insured groups, workers' compensation carriers/administrators, discount plans/programs, health coalitions, health exchanges, managed Medicaid plans, other health-related entities and/or plans.

**Compounded Drug:**
A combination mixture or alteration of a Federal Legend Drug in which a Network Pharmacy Provider combines, mixes, alters solid, semisolid or liquid ingredients, at least one of which is a Covered Prescription Service weighed or measured and prepared according to the Prescriber's order and the Pharmacist's art to create a medication tailored to the needs of a Member which is not a commercially available Drug Product. This excludes any flavoring, sweetener, dilution and reconstitution of a Drug Product (e.g. an oral antibiotic) according to manufacturer guidelines.

**Coordination of Benefits (COB):**
Provision in a contract that applies when a person is covered under more than one group medical program. It requires that payment of benefits be coordinated by all programs to eliminate over-insurance or duplication of benefits.

**Cost-Sharing or Cost-Sharing Amounts:**
Administrator shall communicate to Network Pharmacy Provider (via the POS System) the Cost-Sharing Amounts (e.g. Co-payment and Deductible) applicable to Covered Prescription Services. Unless otherwise required under the Agreement, Pharmacy shall collect the full Cost-Sharing Amounts (if any) from the Member that are applicable to Covered Prescription Services being dispensed to Members. Pharmacy shall not at any time seek reimbursement for Cost-Sharing Amounts from Administrator or any Client. "Co-payment" or "Deductible" means a fixed dollar or a percentage portion of the charge for the Drug Product being dispensed by Network Pharmacy Provider to Member which is to be paid by Member.

**Covered Prescription Service or Services:**
Prescription Drug Products, services and supplies dispensed by a Pharmacy to a Member for which coverage is provided pursuant to the terms and conditions of the Benefit Plan.

**Delivery of Medication:**
Network Pharmacy Provider is authorized to utilize pharmacy employees under a W-2 status to deliver, at no additional cost to the Member, covered prescription services to Members within a 100 mile radius of the pharmacy's physical location. In unique and/or limited single events, Administrator reserves the right to grant a waiver to deliver beyond the designated limits for covered prescription services delivery.

**Dispensing Physician:**
A practitioner authorized by law to prescribe drugs may dispense such drugs to his or her patients in the regular course of his or her practice in compliance with State laws and regulations as a convenience to the patient.

**Drug Enforcement Administration (DEA):**
Federal agency that licenses Prescribers and Pharmacies to prescribe and/or dispense controlled substance Drug Products.

**Drug Product:**
Brand Name Drug or Generic Drug which is (i) required under applicable laws and regulations to be dispensed only pursuant to a Prescription and (ii) is approved by the FDA unless exempt from such approval requirements by the FD&C Act of 1962.

**ePrescription (eRx):**
Program that presents Members eligibility, formulary and Prescription history to the Prescribers in real-time at point of care to enable accurate, error-free electronic prescribing of the Prescriptions directly to the Pharmacy. Physician EMR capability is integrated with ePrescribing services by providing Member and Benefit Plan information in real-time to the Prescriber.

**ePrior Authorization (ePA):**
Electronic transmission of information between the Prescriber, and payer to determine whether or not the PA is granted. Administrator has advanced ePA capabilities which allow physicians to submit PA questions electronically and in many cases, get immediate coverage determinations.

**Faxblast / Pharmacy Communications:**
Sent electronically to the contracted network entity (i.e. independent pharmacy, retail chain, PSAO corporate representative) via facsimile (i.e. fax) process or email, which include from time to time general announcements, Provider Manual updates and Pharmacy Plan Specifications.
First-tier, Down-stream or Related Entity (FDR):
CMS reference to the various contractual relationships that an entity may have with a MA, MAPD, MMP or PDP Sponsor for delegated sponsor services.

**Formulary:**
A set of Drug Products and their associated coverage information (e.g. tiers, restrictions, limits and coverage exclusions).

**Formulary and Generic Drug:**
In the provision of Covered Prescription Services, all Network Pharmacy Providers shall use its best efforts, in accordance with all applicable federal/state laws, to adhere to and promote the Formulary, except to the extent the Network Pharmacy Provider is: (i) prohibited by state law or (ii) otherwise directed by Administrator through the POS System. If (i) neither the Prescription nor applicable federal/state laws prohibit substitution of a generic drug equivalent for the Drug Product and (ii) Network Pharmacy Provider obtains consent from the Member, as well as the Member's physician, when and if required by applicable federal/state laws, then Network Pharmacy Provider shall dispense a generic drug equivalent for the Drug Product to the Member.

**Fraud, Waste and Abuse (FWA):**
**Fraud**
Knowingly and willfully executing, or attempting to execute, a scheme or artifice to defraud any health care benefit program; or to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program. (18 United States Code §1347).

**Waste**
Overutilization of services, or other practices that, directly or indirectly, result in unnecessary costs to the Medicare Program. Waste is generally not considered to be caused by criminally negligent actions but rather the misuse of resources.

**Abuse**
Actions that may, directly or indirectly, result in: unnecessary costs to the Medicare and Medicaid Programs, improper payment, payment for services that fail to meet professionally recognized standards of care, or services that are medically unnecessary. Abuse involves payment for items or services when there is no legal entitlement to that payment and the provider has not knowingly and/or intentionally misrepresented facts to obtain payment. Abuse cannot be differentiated categorically from fraud, because the distinction between "fraud" and "abuse" depends on specific facts and circumstances, intent and prior knowledge, and available evidence, among other factors.

**Generic Drug:**
Identified by its chemical, proprietary or nonproprietary name, which is accepted by the FDA as therapeutically equivalent to an originator Brand Name Drug unless exempt from such approval requirements by the FD&C Act of 1962.

**Gramm-Leach-Bliley (GLB):**
The Financial Modernization Act of 1999 also known as the Gramm-Leach-Bliley Act (codified at 15 USC § 6801 et seq.); Federal law enacted to control the ways that financial institutions handle nonpublic information of individuals/ consumers.

**Government Authority:**
Including, but not limited to the federal government, any state, county, municipal, local government, any governmental department, political subdivision, agency, bureau, commission, authority, body, instrumentality or court, which might regulate the activities/operations of either party, parties' Affiliate or Client.

**United States of Health & Human Services (HHS):**
The United States (U.S.) Department of Health & Human Services or any successor Government Authority.

**Health Insurance Exchange (HIX):**
Segment of plans created as a result of the Affordable Care Act, as stated in Title 45 of the Code of Federal Regulations (CFR) §156. Effective in 2014, HIX offers standardized health insurance plans to individuals, families and small businesses.  These plans are referred to as "Exchanges", "Health Insurance Marketplace" or "HIX" plans.

**Health Insurance Portability and Accountability Act (HIPAA):**
The Health Insurance Portability and Accountability Act of 1996; the rules and regulations adopted by HHS pursuant to HIPAA, including the Standards for Privacy of Individually Identifiable Health Information, as well as the Security Standards for the Protection of Electronic Protected Health Information, 45 CFR parts 160 and 164 (subparts A, C, and E) as each may be amended, modified, revised, replaced, interpreted by any Government Authority or court.

**Home Infusion (HI) Pharmacy:**
Pharmacy-based, decentralized patient care organization with expertise in USP 797-compliant sterile compounding that provides care to patients with acute or chronic conditions generally pertaining to parenteral administration of drugs, biologics and nutritional Prescriptions administered through catheters and/or needles in home and alternate sites. Pharmacies must have a 'clean room' and 'hood' in order to provide sterile compounding of Infusion Therapy Covered Prescription Services.

**Indian Health Services, Tribal or Urban Indian Health or I/T/U:**
Retail pharmacy operated by the Indian Health Service, an Indian tribe or tribal organization or an urban Indian organization as defined in Section 4 of the Indian Health Care Improvement Act, 25 U.S.C. 1603. These pharmacies are identified by a National Council for Prescription Drug Program's (NCPDP) dispenser type code of 8. Program authorized through Title V of the Indian Health Care Improvement Act which provides access to hospitals, health clinics and pharmacies in IHS or tribal service delivery areas.

**Infusion Therapy:**
Involves the administration of medication through a needle or catheter and it is prescribed when a Member's condition is so severe that it cannot be treated effectively by oral medications. Typically, "infusion therapy" means a drug is administered intravenously, but the term also may refer to situations where drugs are provided through other non-oral routes (e.g. intramuscular injections and epidural routes; into the membranes surrounding the spinal cord). "Traditional" Prescription drug therapies commonly administered via infusion include antibiotic, anti-fungal, antiviral, chemotherapy, hydration, pain management and parenteral nutrition.

**Long-term-care (LTC) Facility:**
Skilled nursing facility as defined under 42 CFR § 423.100, as amended from time to time; does not include non-institutionalized living arrangements and/or facilities such as assisted living facilities or other senior housing or senior care facilities.

**Long-term-care (LTC) Pharmacy:**
A Pharmacy provides Drug Products to LTC facilities. For Medicare Part D, Network Pharmacy Provider provides Drug Products to LTC Facilities when the Claims are submitted by a Network Pharmacy Provider which meets the definition of a "long-term-care network pharmacy" under 42 CFR §423.100, as amended from time to time for a Medicare Drug Plan Member residing in a Long-Term-Care Facility.

**Mailing/Mail:**
Action or process of sending Covered Prescription Services through the US mail, shipping via any common carrier (e.g. FedEx, UPS, DHL) or shipping by any type of courier to Members.

**Mail Order Pharmacy:**
Pharmacies where Drug Products are prepared, dispensed and sold, including Covered Prescription Services, to Members and delivered via Mailing. These pharmacies typically do not offer walk-in services to our Members. Mail Order Pharmacies are responsible for ensuring proper prescription shipment/delivery in alignment with federal/state- level regulations and licenses. Mail Order Pharmacies are not Retail Pharmacies for the purposes of the retail Agreement.

**Marks:**
Name(s), logo(s) and other proprietary symbols/phrases belonging to an entity.

**Maximum Allowable Cost (MAC):**
MAC for pharmaceutical products is developed by Administrator based upon information provided by Medi- Span□ or any other nationally recognized pricing source selected by Administrator and may be amended from time-to-time at its sole discretion in accordance with applicable law.
- Administrator determines MAC pricing based on a review of the following: pricing information from a nationally recognized pricing service, one or more national drug wholesalers and/or manufacturers, and the publicly available results of CMS' survey of retail prices. Administrator reserves the right to update its MAC pricing methodology and to use alternative, reputable sources at its discretion. Upon written request and to the extent required by law, Administrator will make available the current and applicable MAC price information to Network Pharmacy Provider. Such MAC price lists constitute confidential information.

**Medicare Advantage Benefit Plans (MA):**
CMS-approved MA plans sponsored, issued or administered by Clients including, but not limited to, private fee-for-service plans as defined in the MA rules. MA plans cover Hospital and Physician services, Drug Products not covered by Medicare Part D Benefit Plans and Durable Medical Equipment (DME) (including, but not limited to, diabetic supplies such as test strips and lancets) typically covered under Medicare Parts A or B.

**Medicare Advantage Prescription Drug Plan (MA-PD):**
CMS-approved MA-PD plans sponsored, issued or administered by Clients as defined in 42 Code of Federal Regulations (CFR) §423.4, and includes, but is not limited to, private fee-for-service plans as defined in the Medicare Advantage rules and any CMS demonstration programs that provide Prescription Drug Product benefits. For purposes of this Agreement, "MAPD Plan" also includes any employer-sponsored MA-PD plan referenced in 42 CFR §422.106.

**Medicare-Medicaid Enrollees (MME):**
Members are dually eligible in both Medicare and Medicaid.

**Medicare-Medicaid Plans (MMPs):**
A new product developed by the Centers for Medicare & Medicaid Services (CMS) and the states for managing the health benefits of Medicare – Medicaid Enrollees (MMEs). It is a system of managed care plans selected to coordinate the physical, behavioral and LTC services for individuals over the age of 18 years who are eligible for both Medicare and Medicaid benefits. This includes people with disabilities, older adults and individuals who receive behavioral health

services. Rather than have benefits covered under two different products, MMPs provide a combined benefit package, in which all benefits available through Medicare and Medicaid are integrated. The MMPs may vary slightly from state to state, depending on how the state defines their portion of the benefit package. From a pharmacy benefit perspective, the Medicare and Medicaid benefits are integrated and managed as a single Benefit Plan.

**Medicare Part D Sponsor:**
Any person, Benefit Plan Sponsor, Client or entity which has entered into, or in the future enters into, a written Agreement with CMS to offer PDP and/or MA-PD Plans pursuant to which Administrator provides certain consultative, administrative, and/or Claims processing services in connection with the operation of one or more PDP and/or MA-PD Plans sponsored, issued or administered by such person, Benefit Plan Sponsor, Client, or entity and/or that person's, Client's, Benefit Plan Sponsor's or entity's customer.

**Member:**
Individual/Person, including an injured worker, dependent or pet, who is eligible and/or enrolled to receive coverage through a Benefit Plan from a Client for Covered Prescription Services.

**National Average Drug Acquisition Cost (NADAC):**
NADAC of Drug Products or ancillary supplies, as applicable, as dispensed and as set forth in the latest edition of the Medi-Span® Prescription Pricing Guide (with supplements) or any other nationally recognized pricing source selected by Administrator (the "Pricing Source"), as updated at least monthly.

**National Association of Boards of Pharmacy (NABP):**
The National Association of Boards of Pharmacy is an international association which assists member boards and jurisdictions in administrating its pharmacist license transfer and pharmacist competence assessment programs for the purpose of ensuring public health.

**NABP Digital Pharmacy Accreditation:**
The NABP Digital Pharmacy Accreditation, formerly VIPPS, accredits websites offering pharmacy services, and recognizes the need to help safe and legitimate pharmacies with an internet presence stand out against the ever-growing list of rogue websites.

**NABP Drug Distributor Accreditation:**
The NABP Drug Distributor Accreditation, formerly VAWD, is for facilities engaged in the act of wholesale drug distribution.
**National Council of Prescription Drug Programs (NCPDP):**
The National Council of Prescription Drug Programs. Organization that develops and promotes industry standards and business solutions that improve patient safety and health outcomes, while also decreasing cost.
National Provider Identification (NPI) number:
Unique ten (10) digit identifier assigned to health care providers to use when submitting a HIPAA standard transaction.

**Network Compound Credentialing Program (NCCP):**
A compound credentialing program which validates any Network Pharmacy Provider who wishes to dispense Compounded Drugs containing Active Pharmaceutical Ingredients (API) and API-like (e.g. excipients) ingredients through a credentialing process to application, documentation review and on- site Pharmacy visits.

**Original Document of Record:**
An original Prescription order from a Prescriber, or duly authorized health care professional, executed as required under State and Federal laws, a fully compliant fax order, or fully compliant phone-in order slip reduced to writing and noting the date and time of the phone order and the name of the individual authorizing the Drug Product, or a fully compliant ePrescription.

**Pharmacist:**
An individual appropriately licensed in their respective State(s) to dispense and sometimes prescribe Drug Products to Members.

**Pharmacy/Network Pharmacy Provider:**

Entity that is contracted directly as a chain or independent pharmacy with Administrator or indirectly contracted through a Pharmacy Services Administration Organization (PSAO) or Group Purchasing Organization (collectively, 'PSAO') or chain to provide Covered Prescription Services to Administrator Clients' Members, in accordance with the Agreement, addenda, exhibits, Plan Specifications, subsequent amendments, etc., and as specified in the Agreement.

**Pharmacy Plan Specifications:**
Information made available by Administrator to assist Network Pharmacy Provider in submitting a Claim for Covered Prescription Services.

**Pharmacy Services Administration Organization (PSAO):**
An organization that represents and serves as the agent of Pharmacies and contracts with Administrator on behalf of their own network of pharmacies. A PSAO may also be a Group Purchasing Organization.

**Point-of-Sale (POS) System:**
The online or real-time POS telecommunication system used to communicate information including, but not limited to Claims for Covered Prescription Services to Administrator, Claims or processor.

**Prescriber:**
An individual appropriately licensed in their respective States to write Prescriptions for Members.

**Prescription:**
A written, oral or electronic order to dispense a Drug Product directed by an appropriately licensed, as well as qualified health care professional in accordance with federal and/or state law.

**Prescription Drug Compensation:**
POS System transaction response reimbursement per Claim prevails, unless overpayment is made to Network Pharmacy Provider. Administrator may modify Prescription Drug Compensation of any Compensation Exhibit upon notice to Network Pharmacy Provider.

**Prescription Drug Contracted Rate:**
The meaning set forth in the applicable Compensation Exhibit(s), attached to the Agreement.

**Prescription Drug Plan (PDP):**
CMS approved Medicare Part D Prescription Drug Product coverage offered under a policy, contract or plan that is sponsored, issued or administered by Clients pursuant to a contract with CMS, as defined in 42 CFR §423.4, and includes, but is not limited to, any CMS demonstration programs that provide Prescription Drug Product benefits. For purposes of the Agreement, PDP also includes any employer-sponsored group Prescription drug plans, as defined in 42 CFR §423.454.

**Prior Authorization (PA):**
Request initiated via fax, phone or online submission by the Member, Prescriber, or Member's appointed/authorized representative to review non-formulary Drug Products utilizing clinical guidelines. Network Pharmacy Providers may not act in the capacity of a Prescriber without an appointment of representation. Member information, diagnosis, justification for using Drug Product not covered under the individual's Benefit Plan and other pertinent information are reviewed to determine exception.

**Records:**
All books, records, documentation, data files, accounts, drug purchase invoices and pedigrees, signature logs of all Transactions including, but not limited to the Prescription information or Original Document of Record required to validate the accuracy, completeness of the purchase of the Drug Product, dispensing of the Prescription for a Covered Prescription Service to the Member, submission of the Claim, verification of the pharmacy, pharmacist, pharmacy technician licenses and credentials.

**Retail Pharmacy:**
Any facility licensed by and pursuant to laws and regulations of the State of residence and by any other state in which the pharmacy provides services and drugs. The facility may be a store, clinic, or part of a store, clinic or hospital in which

Drug Products are prepared, dispensed and sold, including Covered Prescription Services provided to Members as walk-in customers or a pharmacy providing services to skilled nursing facilities licensed by the state of residence as a retail pharmacy. A pharmacy may be considered for retail participation even if closed-door (e.g. a clinic/hospital pharmacy or government institution).

- A retail pharmacy does not i) deliver Drug Products via Mailing, ii) advertise itself as a Mail Order Pharmacy for obtaining Prescriptions delivered through Mailing, nor iii) self-identify with NCPDP as any of the following: Mail Order Pharmacy (dispenser type code "5") or Specialty Pharmacy (dispenser type code of "15")

**Safety Net Pharmacy:**
A 340B Participating Pharmacy by mandate or mission organizes and delivers a significant level of Covered Prescription Services, including but not limited to the uninsured, Medicare, Medicaid and other vulnerable populations.

**Specialty Drugs:**
Includes biotechnology products, orphan Drug Products used to treat rare diseases, typically high-cost Drug Products, including infusions in any outpatient setting, Drug Products requiring ongoing frequent management/monitoring of the patient by Pharmacist or Drug Products used to treat chronic and potentially life-threatening diseases.

**Specialty Pharmacy:**
A specialty pharmacy is a specific type of pharmaceutical delivery system which coordinates delivery and offers comprehensive support in the distribution of Specialty Drugs. Specialty pharmacies are distinct from traditional pharmacies in coordinating many aspects of Member care and disease management. They are designed to efficiently deliver medications with special handling, storage and distribution requirements with standardized processes. Specialty pharmacies are also designed to improve clinical and economic outcomes for Members with complex, often chronic and rare conditions, with close contact and management by a Pharmacist.

**Submitted Cost Amount:**
Submitted ingredient costs, dispensing fees and all other submitted costs incurred by a Pharmacy for dispensing of a Drug Product, device, product and/or supply.

**Transaction:**
Any transaction or Claim submitted by Network Pharmacy Provider to the claims processor whether it is incomplete, rejected, paid, a reversal, reversal reject, reversal due to Claim adjustment or duplicate transaction.

**Usual and Customary (U&C):**
Price charged by Network Pharmacy Provider to the general public at the time of dispensing for the same Drug Product including all applicable customer discounts, such as advertised or sale prices, special customer, senior citizen, frequent shopper, coupons or other discounts, a cash paying customer pays Network Pharmacy Provider for Drug Products, devices, products and/or supplies. Network Pharmacy Provider must supply proof of a cash Prescription (i.e. without any disclosure of PHI) when necessary to evaluate the appropriate adjudication of the Transaction. Alteration of the U&C price to attempt to increase Claim payment without a true change to the cash price being offered to the general public will be considered non-compliance and a violation of the Agreement. The Network Pharmacy Provider must be able to communicate the U&C price to Administrator upon inquiry, failure to disclose this information may be considered non-compliance.

**Universal Claim Form (UCF):**
NCPDP standardized Claim form used by Network Pharmacy Provider for manual billing.

**Wholesale Acquisition Cost (WAC):**
Shall mean the average wholesaler acquisition cost of a Covered Prescription Service based on the Medi-Span® Prescription Pricing Guide (with supplements) or any other nationally recognized pricing source selected by Administrator (the "Pricing Source"), as updated at least weekly.

**340B Drug Pricing Program:**
Federal drug discount program established under Section 340B of the Public Health Service Act.

**340B Participating Entity:**

Healthcare organization eligible to access the 340B Drug Pricing Program to purchase Drug Products for itself or contracted pharmacies.

**340B Participating Pharmacy:**
Network Pharmacy Provider contracted to access the 340B Drug Pricing Program via a 340B Participating Entity, by Drug Products purchase or replacement, for eligible Members.

# III.   Contact Information



OPTUMRx®

Administrator strives to ensure that pharmacies receive prompt and courteous attention when questions arise. For assistance in processing a Claim or questions concerning Administrator pharmacy programs, please contact the Administrator at the telephone number identified on the Member's identification (ID) card or contact the Administrator as indicated below. Hours of operation may change during holidays.

**Note**: With the growth of OptumRx, information may be specific to a legacy BIN/PCN at this time. Please refer to the BIN/PCN information to determine which specific contact information to use.

## A. Pharmacy Help Desk Service

 Hours of operation: 24 hours a day, 7 days a week, 365 days a year

For Member information regarding Benefit Plan exclusions, Disease Therapy Management (DTM) programs or other customer service issues, please contact us using one of the following:

- **OptumRx List 1 RxBINs pharmacy helpdesk**: 1-800-788-7871
- **OptumRx List 2 RxBINs pharmacy helpdesk**: 1-800-880-1188
- **OptumRx List 3 RxBINs pharmacy help desk**: See contact information provided in the Workers' Compensation and auto no-fault section of this PM.
- **For Plans not listed under UHC in the Appendix**:
  - o Use the Pharmacist number on the Member's ID card
  - o Telephone Device for the Hearing Impaired (TDHI): 1-866-498-5428

Website for health care professionals:
- optumrx.com
- professionals.optumrx.com

## B. Prior Authorization (PA) Service

 - OptumRx List 1 RxBINs — Hours of operation: Monday–Friday, 5 a.m. to 10 p.m. (Pacific Time); Saturday, 6 a.m. to 3 p.m. (Pacific Time)
- OptumRx List 2 RxBINs — Hours of operation: 24 hours per day, 7 days a week, 365 days per year

For member information regarding utilization management requirement, Medicare Part D decisions, coverage limitations and PAs, please contact us using one of the following:

- **OptumRx List 1 RxBINs**:
  - o Telephone: 1-800-711-4555
  - o Telephone (Innoviant): 1-866-565-7723
  - o Fax: 1-844-403-1028

- **OptumRx List 2 RxBINs:**
  - o Telephone: 1-800-626-0072
  - o  Fax (Oral): 1-866-511-2202

- **OptumRx List 3 RxBINs**: See contact information provided in the Workers' Compensation and auto no-fault section of this PM.

## C. Pharmacy Network Contract Department

 Hours of Operation: Monday–Friday, 8 a.m. to 5 p.m. (Central Time)

For questions related to contracting or to request a contract, please contact us at:

Independent Contracting          Telephone: 1-877-633-4701
2300 Main Street                 Fax: 1-844-305-2623
Irvine, CA 92614                 Email: independent.contracting@optum.com
                                 Web: professionals.optumrx.com

Please see Contact information provided in the Workers' Compensation and auto no-fault section of this PM.

## D. MAC Appeals Contact Information

 Hours of Operation: Monday–Friday, 6 a.m. to 4 p.m. (Pacific Time)

To review the summary and guidelines for appealing MAC prices / pharmacy reimbursement, as well as downloading the form for submitting appeals, please visit the Pharmacist section of the OptumRx Health Care Professionals Portal or contact us using one of the following:

- **OptumRx Lists 1 & 2 RxBINs**
    - o Telephone: 1-800-613-3591 Ext. 9
    - o Fax: 1-866-285-8652
    - o Email address: MAC@optum.com

- **OptumRx List 3 RxBINs**: See contact information provided in the Workers' Compensation and auto no-fault section of this PM.

Website: professionals.optumrx.com

## E. Pharmacy Network Credentialing Department

 Hours of operation: Monday–Friday, 8 a.m. to 5 p.m. (Pacific Time)

For an initial independent retail pharmacy credentialing application, credentialing application status or questions related to credentialing, please contact us using one of the following:

Pharmacy Network Credentialing Department        Telephone: 1-800-613-3591
2300 Main Street (MS: CA134)                      Fax: 1-877-593-5368
Irvine, CA 92614                                  Email:  pharmacycredentialing@optum.com

Please see Contact information provided in the Workers' Compensation and auto no-fault section of this PM.

## F. Provider Forms and Documents

Prior Authorization (PA) Guidelines and/or Formulary change requests can be submitted online, by fax or mail. Please contact us using one of the following.

**Provider forms and documents available online:**


- professionals.optumrx.com/resources/forms
Administrator is unable to accept incomplete Provider forms and documents. In order to avoid a delay in processing your request, please complete these forms in their entirety.

- professionals.optumrx.com
It is important to refer to this web-portal for current documents, forms, manuals, payer sheets and other communications.

**Prior authorization (PA) guideline change request form via mail or fax:**

OptumRx List 1 RxBINs
Clinical Programs
2300 Main Street, CA 134-0404
Irvine, CA 92614
Fax: 1-949-474-4237

OptumRx List 2 RxBINs
OptumRx
P.O. Box 5252
Lisle, IL 60532
Fax: 1-866-511-2202

**Formulary change request form via mail or fax:**

OptumRx List 1 RxBINs
Clinical Formulary Operations
2300 Main Street, CA 134-0404
Irvine, CA 92614
Fax: 1-949-474-4237

OptumRx List 2 RxBINs
OptumRx
P.O. Box 5252
Lisle, IL 60532
Fax: 1-866-511-2202

A.   Pharmacy Communications

Periodically, administrator communicates updates on procedures, formularies, provider manual (PM), plan, etc., via Pharmacy Communication. These communications are sent electronically to the contracted entity (Independent pharmacy, Chain, Group Purchasing Organization <GPO> or Pharmacy Services Administrative Organization <PSAO>) corporate office via facsimile (i.e. fax) process or email.

All pharmacy communications will be made available quarterly and provided in addition to the PM. To view previously sent Pharmacy Communications, visit the OptumRx Provider Manual site. To request copies of previously sent Pharmacy Communications, please contact us using one of the following:

Pharmacy Communications
1600 McConnor Parkway
Schaumburg, IL 60173

Telephone: 1-877-633-4701
Fax: 1-877-339-0784
Email address: pharmacyprovidercommunications@optum.com

Please see Workers' Compensation for pharmacy communication contact information.

# IV.   Sample Member Identifications (ID) Cards



Eligible Members receive an identification (ID) card containing information that helps our Network Pharmacy Providers submit Claims accurately and completely. In accordance with CMS requirements, and/or state regulatory requirements, a Network Pharmacy Provider must submit Claims to the Medicare Part D Sponsor or its intermediary whenever the ID card is presented or on file at the pharmacy, unless the Member expressly requests that a particular Claim not be submitted to the Medicare Part D Sponsor or its intermediary. Information may vary in appearance or location on the card due to employer, Benefit Plan Sponsors or Administrator requirements, however, ID cards display essentially the same information (e.g., Member Name, Subscriber Identification (ID), RxGroup Number (GROUP), Processor Control Number (PCN), Bank Identification Number (BIN), and contact telephone numbers).

Member may also present their ID card using an electronic device such as a phone or a tablet, and may also have processing information included on an electronic prescription.

Except for discount card program, and to the extent as required by applicable law, an Administrator or a Client, Network Pharmacy Provider shall check the Member's ID card at each visit — especially the first visit of each new benefit year when information is most likely to change. In addition, the Network Pharmacy is responsible for validating the authenticity of Member's identity via government issued photo ID, in alignment with state dispensing requirements.

Below are samples of Member ID cards representing a couple of our Benefit Plan Sponsors. This is a sampling only and is not an all-inclusive list. Member ID cards may be added, deleted or amended at any time. For further information/examples, please see the Appendix H.









This card does not guarantee coverage. If you have any questions regarding Member's pharmacy Benefit Plan, please visit the web address or call the number located on the back of the Member's ID card. The Administrator is open 7 days a week / 24 hours a day.

# V.   Processing Claims



OPTUMRx®

## A. General Process

The following describes the Administrator processes and procedures for processing claims.

**Complete Claims**
Administrator requires the submission of a Clean Claim, as described in pharmacy contract Section: Recitals/Defined Terms. A Member's level of coverage under his or her Benefit Plan may vary for different services, so it is particularly important to correctly code, the pharmacy claims according to the National Council for Prescription Drug Programs (NCPDP) standards, in order to submit pharmacy Claims to ensure proper payment and application of Cost-Sharing Amounts, COB and other related pharmacy services.

Claims submitted must be supported by a valid prescription order that complies with all applicable federal, state and local laws, regulations and rules for professional practice. The pharmacy is responsible for verifying that a prescription was written based on a valid Prescriber/Member relationship.

Pharmacies should use best efforts to submit complete and accurate Claims in the POS System or such other method as determined by Administrator. Claims can be reversed up to thirty (30) days after the submission date (or as specified by the Client or Benefit Plan Sponsor). Claims should be reversed within fourteen (14) days, as soon as reasonably practical or as specified by a particular governing requirement. All prescriptions not received by a Member must be reversed within fourteen (14) days from original submission. Claims not reversed within fourteen (14) days are subject to audit and may be collected through the pharmacy audit process to ensure claims accuracy.

Federal programs the Administrator support:

- Federal regulations prohibit the Administrator from paying Claims for Drug Products written by Prescribers which have been excluded from federal program participation as evidenced by listing of the Prescriber within the Office of Inspector General's (OIG) — U.S. Department of Health & Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE) or General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS) listings – Centers for Medicare and Medicaid Services (CMS) Preclusion List.
- These OIG or GSA lists are checked monthly and Claims for Drug Products by excluded Prescriber will be rejected. The Claim will reject with the NCPDP Reject Code 71 or A1 — "MD NOT COVERED — SANCTIONED PRESCRIBER".
- Claims may only be paid for Prescriptions properly prescribed in accordance with Federal and State prescribing laws and regulations. Please ensure that Network Pharmacy Providers maintain up-to-date knowledge of Federal and State prescribing rules and that pharmacy may not submit a Claim for a Prescription not fully compliant with applicable Federal and State prescribing laws and regulations.

**CMS Requirement to Submit Claims**
In accordance with CMS requirements, and/or state regulatory requirements, a Network Pharmacy provider must submit claims to the Medicare Plan or its intermediary whenever the ID card is presented or on file at the pharmacy, unless the member expressly requests that the claim not be submitted.

Network Pharmacy providers should contact the OptumRx Pharmacy Help Desk or refer to the OptumRx Pharmacy Manual for additional claims processing assistance for the following:
- Prior Authorization, DUR or other resolvable rejections
- Pharmacy and/or member has questions about the claim copay - including Medicare Part B copays for Dual Eligible Medicare Advantage Plans
- Pharmacy has a question about reimbursement rate

Unless a Medicare member specifically requests that the claim not be submitted to their Medicare Plan, Network Pharmacy providers should refrain from collecting cash for claims that have, or could have been, adjudicated at POS and/or Medicare Part B copays that should be billed to Medicaid.

**Federal Regulations for Schedule II Drugs**

Pursuant to the Comprehensive Addiction Recovery Act 2016 (CARA), a pharmacy may partially fill a schedule II prescription under the following circumstances:

- it is not prohibited by state law;
- the prescription is written and filled in accordance with this title, regulations prescribed by the Attorney General and State law;
- the partial fill is requested by the patient or the practitioner that wrote the prescription and the total quantity dispensed in all partial fillings does not exceed the total quantity prescribed.

Remaining portions of partially filled prescription for CII may be filled and shall be filled no later than 30 days after the date which the prescription is written. For emergency situations ad described in section (a) the remaining portions may be filled and shall be filled not later than 72 hours after the prescription is issued. According to 21 CFR § 1306.11, except in emergency situations or when dispensed directly by a Prescriber other than a Pharmacist to the ultimate user, Schedule II Prescription Drug Products may not be dispensed without a Prescriber's written prescription.

Network Pharmacy Providers must also comply with federal/state laws and regulations that govern dispensing of Schedule II Drug Products and should be aware that state laws and regulations may require additional/more stringent practices relating to the partial filing of Schedule II drug prescriptions. This may include any copayment, cost-sharing, or benefit arrangements.

For LTCF pharmacies, 21 CFR § 1306.13(b) allows a pharmacist and prescribing practitioner have the corresponding responsibility to assure controlled substance is for a terminally ill patient. Pharmacist must record on the prescription the patient is "terminally ill" or an "LTCF patient." A prescription that is partially filled without these notations is deemed to be in violation of the act. Each partial fill the dispensing pharmacist will record on the back of the prescription (or on another appropriate record, uniformly maintained, and readily retrievable) the date of the partial fill, quantity dispensed, remaining quantity authorized to be dispensed, and the identification of the dispensing pharmacist.) The total quantity of the CII dispensed in the partial fillings must not exceed the total quantity prescribed. CII prescriptions for LTCF or patients with a medical diagnosis documenting terminal illness shall be valid for a period not to exceed 60 days from the issue date unless sooner terminated by the discontinuance of medication.

**Online Processing Window to Submit Electronic Claims**

Network Pharmacy Providers are encouraged to submit all Claims for Covered Prescription Service at the time of dispensing or within thirty (30) days.

**Commercial Claims**:
- Thirty (30) days or longer period allowed by the Benefit Plan or as required by law or Government Authority. If a Claim is not processed in accordance with the Medicaid or Medicare Part D Addendum Amendment, Exhibit or Schedule, such Claim is considered a commercial Claim.

**Medicare Part D Claims**:
- Retail pharmacies: One-hundred-eighty (180) days or longer period as required by law or federal regulations
- LTC pharmacies: Ninety (90) days or longer period as required by law or federal regulations

**Medicaid Claims**:
- Thirty (30) days or longer period allowed by the Benefit Plan or as required by law or Government Authority

**Note**:
- Administrator may be unable to extend these time frames.
- Pharmacies that need to process Claim(s) outside the Online Processing Window time frame for submission of Claim(s) via the POS System may be required to submit a Universal Claim Form (UCF) and an explanation for the late submission.
- Submission of the UCF is not a guarantee Claim(s) will be paid.
- Payment is determined on a case-per-case basis upon review of explanation of late submission and Client or Benefit Plan approvals.

- Prompt pay requirements for Medicaid MCO's with a contract do not differ from the standard state requirements, inclusive of HIX.

 In the event a Claim or Transaction rejects at POS, reasonable attempts must be made to retransmit the Claim. In the event the retransmission fails, Network Pharmacy Provider may call the applicable Help Desk contact number for assistance or alternative arrangements to submit the Claim.

Please mail completed UCF and explanation for late submission request to:

> OptumRx
> 1600 McConnor Parkway
> Schaumburg, IL 60173

## National Drug Code (NDC) Number

Network Pharmacy Providers should always submit the eleven (11) digit NDC number of the actual package size of the Drug Product dispensed in accordance with the applicable payer sheets. Only the NDC of the actual Drug Product dispensed shall be submitted on the Claim transaction. Use of a similar NDC or NDC of a bottle size not dispensed is not permissible. Invoices and other drug transaction records shall also maintain the exact NDC number, as well as Drug Product name. Invoices, as well as other drug transactions records submitted using incorrect NDC number/Drug Product names are subject to rejection and/or possible reversal.

 Do not submit claims for Covered Prescriptions Services using an NDC for a repackaged Drug Product by a repackager. Claims submitted using the repackager's NDC are subject to rejection and/or review and possible reversal.

## National Provider Identification (NPI) Number

In compliance with Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the NPI is the required Network Pharmacy Provider and Prescriber ID. The NPI is a unique ten (10) digit identifier assigned to health care providers to use when submitting a HIPAA standard transaction.

Pharmacy ID: Administrator only accepts NPI as the pharmacy identifier for Claims. Any Claims transmitted with a NCPDP or other ID number will be rejected. Although NPI numbers are required for Claims processing, Network Pharmacy Providers are required to maintain a NCPDP ID and regularly update their information with NCPDP.

Prescriber ID: The NPI of the Prescriber is required to be submitted for all Claims. Claims may be rejected without the Prescriber ID; therefore, Network Pharmacy Providers should transmit the Prescriber's NPI whenever it is available. If the Network Pharmacy Providers does not have the Prescriber's NPI on file, the Network Pharmacy Providers should make a reasonable attempt to obtain the NPI number. A Clean Claim requires the submission of the correct Prescriber's ID on all Claims.

In the event that a Claim rejects because the NPI is rejected via the POS System, Network Pharmacy Providers must confirm that the Prescriber NPI is active and correct prior to resubmitting the Claim again via the POS System. Network Pharmacy Providers are expected to resolve NPI issues within 24 hours of initially submitting the Claim to Administrator. To resolve NPI issues, Network Pharmacy Providers should verify with the Prescriber of the Prescription or check the NPI registry at https://npiregistry.cms.hhs.gov/

 It is up to each Network Pharmacy Providers to ensure that the Prescriber is authorized under applicable law to prescribe the Drug Product prior to submitting the Claim to Administrator. It is not the responsibility of Administrator via the POS System to validate that the Prescriber is authorized under applicable law to write Prescriptions for any particular Drug Product. Claims submitted for Prescriptions written by unauthorized Prescriber are non-Clean Claims and may be reversed upon audit by Administrator or a Government Authority in accordance with law.

 In order to avoid Claims rejections, please ensure you carefully enter the correct Prescriber Drug Enforcement DEA and NPI numbers. Additionally, it is critical that you enter the correct Prescriber DEA and NPI numbers because Administrator sends correspondence to the Prescriber based on pharmacy Claims. Providing incorrect Prescriber's information can lead to privacy incidents and endanger Member safety.

Identification of the Prescriber requires a National Provider Identifier (NPI). For all Claims, including controlled substance Prescriptions, Network Pharmacy Provider must submit the Prescriber's NPI. If the Prescriber does not have an NPI or Network Pharmacy Provider cannot obtain the Prescriber's NPI after making reasonable efforts to do so, an alternative identifier may be submitted in certain circumstances, as permitted by state and federal guidelines. For example, with respect to commercial Claims, if the Network Pharmacy Provider submits a Submission Clarification Code (SCC) value to temporarily override a rejection for a non-Type 1 NPI Prescriber ID, it is the Network Pharmacy Provider's responsibility to resubmit the Claim when the Prescriber's Type 1 NPI is found. With respect to Medicare Part D Claims, the Network Pharmacy Provider must submit the Prescriber's valid Type 1 NPI. Section 507 of the Medicare Access and CHIP Authorization Act of 2015 requires Network Pharmacy Provider submitting Claims for Covered Prescription Services include an active and valid Type 1 NPI. Therefore, Medicare Claims with an alternate form of Prescriber identification will not be considered Clean Claims. Additionally, Network Pharmacy Provider must maintain the Prescriber's DEA number on the original hard copy Prescription for all controlled substances in accordance with state and federal laws. In accordance with the aforementioned Federal regulations, select clients have opted to reject Schedule II products billed with refill codes greater than [##]. NCPDP Rejection Code 17- M/I Fill Number will be returned with messaging 'Maximum of 0 Refills Exceeded'.

**Taxonomy**

Prescribing individuals must have prescriptive authority (i.e. the drug products being dispensed must be within the Prescriber's scope of practice and they must possess the legal ability to prescribe the Drug Product). The process of determining prescriptive authority should include multiple components.

- Prescriber must have legal authority to prescribe specific Drug Products.
- All prescriptions must also be within the scope of their practice.
- Prescriber must have a valid taxonomy code which reflects their prescriptive authority for the specific Drug Products they dispense.

While the Network Pharmacy Provider should maintain records and complete internal validations, Administrator may also review the Claim for potential concerns for prescriptive authority based on taxonomy. Administrator may determine the Prescriber NPI has a taxonomy which does not have prescriptive authority and the Claim will be rejected with the following reject code:

| Reject Code | NCPDP Description |
|---|---|
| 56 | Non-matched prescriber ID |

**DEA Number**

The DEA publishes and makes available several manuals which are intended to provide guidance/information on the requirements of the Controlled Substances Act and its implementing regulations. Section IX of the Pharmacist's Manual defines who may issue a valid Prescription for a controlled substance. A Prescription for a controlled substance may only be issued by a Physician, dentist, podiatrist, veterinarian, mid-level practitioner or other registered practitioner who is:

1. Authorized to prescribe controlled substances by the jurisdiction in which the practitioner is licensed to practice; and
2. Registered with DEA or exempted from registration.

To be compliant with the federal guidance, Network Pharmacy Provider must validate the Prescriber's DEA number is authorized to prescribe controlled substances. Claims submitted without the correct prescribing authority for scheduled Drug Products will be rejected. Please see example scenarios.

| Scenarios | Claim Response | Action to Resolve |
|---|---|---|
| Claim submitted with a NPI where the associated DEA does not have authority for controlled Drug Products. | Claim will reject with Reject Code 46 | Validate if Prescriber has an active DEA number. If found, verify the drug being dispensed is included within the prescriber's drug schedule. Then override with submission clarification code 46 |

| Claim submitted with a NPI where the associated DEA is inactive or expired for controlled Drug Products. | R43: Unauthorized DEA. Submit SCC 43 | Validate if Prescriber has an active DEA number. If found, verify the drug being dispensed is included within the prescriber's drug schedule. Then override with a submission clarification code 43. |
|---|---|---|
| Claim submitted with a NPI where the prescriber does not have a DEA for controlled Drug Products. | Claim will reject with reject code 44: R44: Prescriber does not have a DEA. Submit SCC 46 | Validate if Prescriber has an active DEA number. If found, override with submission clarification code 46. |
| Claim submitted with NPI where the associate DEA not found. | Claim will reject with Reject Code: 44 | Claim submitted with NPI where the associate DEA not found. |

**Required Claim Information**

For each Claim for a Covered Prescription Service filled and dispensed by a Network Pharmacy Provider for a Member, all related Network Pharmacy Providers are required to transmit the following information to Administrator:

- NCPDP D.0 format billing transaction.
- The payer/billing specification sheet which details all of the requirements for submitting a Claim using the NCPDP
- D.0 format is referred to as the payer sheet.

Several fields are marked as situational and will require data as needed under the defined situation in the comment section. Claims submitted that are missing data in mandatory or required fields, or where data is required under situational conditions, will not be a Clean Claim and will be rejected.

With the NCPDP D.0 format change being able to handle the exact metric decimal quantity correctly, you will no longer need to adjust the quantity by rounding prior to submitting Claims.

The Administrator has not provided specifications for the American National Standards Institute (ANSI) 837 format, as the Administrator believes that the NCPDP D.0 is the correct format to use for Network Pharmacy Provider dispensed non-Drug Product items. Other non-Prescription products and pharmacy-related supply items should also be billed using the NCPDP D.0 format.

**Patient Residence Code (PRC) and Pharmacy Service Type (PST) Requirements**

Below are charts that provide valid codes for claims submission.

| Patient Residence Code (PRC) | Patient Residence Code Description | Pharmacy Service Type (PST) | Pharmacy Service Type Description |
|---|---|---|---|
| 00 | Not Specified | 01 | Community/Retail Pharmacy services |
| 01 | Home | 02 | Compounding Pharmacy services |
| | | 03 | Home Infusion Therapy services |
| 03 | Nursing Facility/Long Term Care | 04 | Institutional Pharmacy services |
| 04 | Assisted Living Facility | 05 | LTC Pharmacy services |
| 06 | Group Home | 06 | Mail Order Pharmacy services |
| 09 | Intermediate Care/Mentally Retarded | 07 | Managed Care Organization Pharmacy services |
| 11 | Hospice | 08 | Specialty Care Pharmacy services |
| | | 99 | Other |

OptumRx requires that all claims are submitted to the POS system with a Patient Residence Code (PRC– D.0 field 384-4X) and Pharmacy Service Type (PST – D.0 field 147-U7). This is also a standard requirement of the National Council for

OPTUMRx®

Prescription Drug Programs (NCPDP). Because both PRC and PST information is reported to the Centers for Medicare & Medicaid Services (CMS) through the Prescription Drug Event (PDE), it is very important that accurate and appropriate information is submitted on every claim. Failure to submit the correct PRC or PST code on a Claim (i.e. not in accordance with CMS requirements and NCPDP standards) may result in audit, recoupment of Claim or termination of Agreement.

If your pharmacy is contracted for more than one service, please ensure claims are submitted with the appropriate PRC and PST codes for the services provided. For example, if your pharmacy is contracted for providing Long Term Care pharmacy services, the appropriate PST is 05 (LTC Pharmacy services) and PRC 03 (Nursing Facility/Long Term Care). PRC 01 (Home) would not be an accurate code to use when providing Long Term Care pharmacy services.

**Note**: Claims submitted without an appropriate PRC or PST code may be rejected with the following.

| | |
|---|---|
| U7 = Missing/Invalid Pharmacy Service Type | 4X = Missing/Invalid Patient Residence |
| 4y = Patient Residence Value Not Supported | 4Z = Place of Service Not Supported By Plan |
| 50 = Non-Matched Pharmacy Nbr | |

Examples of Common Combinations of Patient Residence Code (PRC) and Pharmacy Service Type (PST)

| Where does the Patient reside or live? | What type of service is being provided to Patient? | |
|---|---|---|
| Patient resides at Home – **PRC 01** | *Valid PST codes* | **PST 01** – Pharmacy provides Community/Retail services<br>**PST 03** – Pharmacy provides Home Infusion Therapy services<br>**PST 07** – Pharmacy provides Managed Care Organization services |
| Patient resides in Nursing Facility/Long Term Care – **PRC 03** | *Valid PST code* | **PST 05** – Pharmacy provides Long Term Care services |
| Patient resides in Assisted Living Facility – **PRC 04** | *Valid PST codes* | **PST 01** – Pharmacy provides Community/Retail services<br>**PST 07** – Pharmacy provides Managed Care Organization services |
| Patient resides in Group Home – **PRC 06** | *Valid PST codes* | **PST 01** – Pharmacy provides Community/Retail services<br>**PST 07** – Pharmacy provides Managed Care Organization services |
| Patient resides in Intermediate Care/Mentally Retarded Facility – **PRC 09** | *Valid PST code* | **PST 05** – Pharmacy provides Long Term Care services |
| Patient resides in Hospice – **PRC 11** | *Valid PST code* | **PST 01** – Pharmacy provides Community/Retail services |

**Nebulizing Solutions for Medicare Members**

Nebulizing or inhalation solutions administered in a nebulizer for members residing in long term care (LTC) are determined to be a Medicare Part D benefit, otherwise these products are determined to be a Medicare Part B benefit. OptumRx has configured products to pay under the appropriate benefit based on a member's benefit coverage and PRC submitted on the claim. However, pharmacies may still see rejections for Part D Non-Formulary products, or to direct the claim to the Part B benefit for members who do not have Part B coverage under the specific prescription benefits for which the claim was submitted. Please follow rejected claim messaging to determine next steps to resolve the rejected claim.

Verify that the PRC submitted on the claim accurately reflects where the member resides. The following is a list of codes accepted by Medicare Part D plans:

| Patient Residence Code (PRC) | Patient Residence |
|---|---|
| 00 | Not Specified |
| 01 | Home |
| 03* | Nursing Facility |
| 04** | Assisted Living Facility |
| 06 | Group Home |
| 09* | Intermediate Care Facility |
| 11 | Hospice |

\* Acceptable PRCs for a long term care facility are "03" and "09" for all Medicare Part D plans.
\*\* Some plans also consider PRC "04" as long-term care for claim processing rules.

If the PRC is correct, please verify that the appropriate member ID card is being submitted for the benefit in which the nebulizing solution should be covered. Note: If a member changes Patient Residence Codes, the coverage and cost-sharing of these drugs may change.

**Prescription Origin Code Claim Submission**

Network Pharmacy Providers must correctly submit the Prescription Origin Code in conformance with the NCPDP and Administrator requirements.

Please submit one of the following data elements within Prescription Origin Code (419-DJ):

1 = Written       2 = Telephone   3 = Electronic   4 = Facsimile (Fax)       5 = Transfer

Claims submitted for a Prescription missing one (1) of these values will reject with the following NCPDP Reject Code 33 — "RX ORIGIN CODE CANNOT BE "0" ON NEW CLM".

If rejection occurs, please resubmit the Claim with the appropriate value.

 To reduce processing errors, please confirm the information on Member's ID card prior to submitting Claims via the POS System.

**Pharmacy Processing Information and Notices**

As a reminder, all Claims, including Medicare Part D, must be submitted using the Bank Identification Number (BIN), Processor Control Number (PCN) and Submitted Group (Group) that appears on the Member's ID card.

**Dispense as Written (DAW) Codes**

Administrator supports the NCPDP standard DAW codes. To ensure accurate reimbursement, always include the correct DAW code when you submit a Claim.
Claims submitted to Administrator with DAW codes of three through six (3 thru 6) or eight through nine (8 thru 9) will be adjudicated similarly to a DAW 0. If necessary, contact your software vendor for needed alterations to your pharmacy system.

**DAW 0 — No Product Selection Indicated**

- This is the field default value which is appropriately used for Prescriptions for single source brand, co-branded/ co- licensed or generic Drug Products.
- For a multi-source Brand Name Drug with available Generic Drug(s), DAW 0 is not appropriate and may result in a reject.

**DAW 1 — Substitution Not Allowed by Prescriber**

- This value is used when the Prescriber indicates, in a manner specified by prevailing law, that the product is medically necessary to be dispensed as written. DAW 1 is based on Prescriber instruction and not Drug Product classification.

- Network Pharmacy Providers must document "DAW 1" on the original Prescription specifying the Prescriber's request to dispense the Brand Name Drug.

**DAW 2 — Substitution Allowed-Patient Requested Product Dispensed**

- This value is used when the Prescriber has indicated, in a manner specified by prevailing law, that generic substitution is permitted and the Member requests the Brand Name Drug.
- This situation can occur when the Prescriber writes the Prescription using either the Brand Name Drug or Generic Drug and the Drug Product is available from multiple sources.

**DAW 3 — Substitution Allowed-Pharmacist Selected Product Dispensed**

- This value is used when the Prescriber has indicated, in a manner specified by prevailing law, that generic substitution is permitted and the Network Pharmacy Provider determines that the Brand Name Drug should be dispensed.
- This can occur when the Prescriber writes the Prescription using either the Brand Name Drug or Generic Drug and the Drug Product is available from multiple sources.

**DAW 4 — Substitution Allowed-Generic Drug Not in Stock**
- This value is used when the Prescriber has indicated, in a manner specified by prevailing law, that Generic Drug substitution is permitted and the Brand Name Drug is dispensed since a currently marketed Generic Drug is not stocked in the Pharmacy.
- This situation exists due to the buying habits of the Network Pharmacy Provider, not because of the unavailability of the Generic Drug in the marketplace.

**DAW 5 — Substitution Allowed-Brand Drug Dispensed as a Generic**
- This value is used when the Prescriber has indicated, in a manner specified by prevailing law, that Generic Drug substitution is permitted and the Network Pharmacy Provider is utilizing the Brand Name Drug as the Generic Drug entity.

**DAW 6 — Override**

- This value is used by various Claim processors in very specific instances as defined by the Claim processor and/or its Client(s).

**DAW 7 — Substitution Not Allowed-Brand Drug Mandated by Law**

- This value is used when the Prescriber has indicated, in a manner specified by prevailing law, that Generic Drug substitution is permitted but prevailing law or regulation prohibits the substitution of a Brand Name Drug even though Generic Drug versions of the Drug Product may be available in the marketplace.

**DAW 8 — Substitution Allowed-Generic Drug Not Available in Marketplace**

- This value is used when the Prescriber has indicated, in a manner specified by prevailing law, that Generic Drug substitution is permitted and the Brand Name Drug is dispensed since the Generic Drug is not currently manufactured, distributed, or is temporarily unavailable.

**DAW 9 — Substitution Allowed By Prescriber but Plan Requests Brand. Patient's Plan Requested Brand Product to Be Dispensed.**

- This value is used when the Prescriber has indicated, that Generic Drug substitution is permitted, but the Benefit Plan's formulary requests the Brand Name Drug to be dispensed.
- This situation can occur when the Prescriber writes the Prescription using either the Brand Name Drug or Generic Drug and the Drug Product is available from multiple sources.
- Medicaid program formulary rules require the brand product be dispensed. There are special considerations when applying this code for the Medicaid patients. Medicaid programs often place the multi-source brand product on the formulary and do not cover the generic alternative regardless of the prescriber's designation of substitution allowed. Pharmacy should follow the instructions below when processing claims in this scenario.
    1. For the initial fill, pharmacies are likely unaware of Medicaid formulary details and that the branded product is required. The pharmacy would likely dispense the generic equivalent and submit a claim for the generic equivalent with DAW Code 0 (No Product Selection Indicated).
    2. Since the Medicaid program has identified the brand product as the preferred drug, the claim submitted with DAW Code 0 may be rejected with Reject Code (511-FB) 606 (Brand Drug/Specific Labeler Code Required). Additional information will be supplied in the Response Claim Segment regarding the preferred product in the Preferred Product ID (553-AR).
    3. Upon receiving Reject Code 606, the pharmacy shall resubmit the claim with the preferred brand drug and DAW Code 9 (Substitution Allowed by Prescriber but Plan Requests Brand).



Most Members have a choice between a Brand Name Drug and Generic Drugs. However, in some programs the Member will pay the difference between the cost of the Brand Name Drug and the available Generic Drug. Accordingly, correct DAW submissions indicate if a penalty is applicable.

**Claims That Require a Diagnosis**
For claims that require or will adjudicate with a diagnosis (dx) submission you will receive a prompt in the POS System requiring you to verify diagnosis information. This requirement is to make sure the diagnosis matches the FDA-approved use or a use supported by the current published evidence. Here's how to verify diagnosis information:
1. Check for a diagnosis on the prescription or contact the prescriber if no diagnosis is listed.
    o The Administrator has notified Prescribers of this diagnosis match requirement.
2. Then verify all diagnosis information submitted via the POS System and document verification in your system.
    o This information is subject to audit.
3. Enter the ICD-10 code by including the clinical segment (NCPDP segment 13) on the submitted Claim.
    o If necessary, please contact your software vendor to make sure the fields indicated are transmitted on the claims, then populate the fields within this segment as follows:

| Field | Field name | OptumRx values supported |
|-------|------------|--------------------------|
| 111-AM | Segment identification | 13= clinical segment |
| 491-VE | Diagnosis code count | Required when diagnosis code is used |
| 492-WE | Diagnosis code qualifier | Required when diagnosis used; 01=ICD10 |
| 424-DO | Diagnosis code | Required when diagnosis is needed for designated Drug Product |



1. If a diagnosis is missing or excluded from the submitted Claim, you will receive one of the following response messages:
    o NCPDP Reject Code 39 — Missing Invalid Diagnosis code
    o NCPDP Reject Code 80 — Submitted Diagnoses Excluded for Product code

2. If a valid diagnosis is not available, please ask the Prescriber and/or Member to request prior authorization per their usual process.
3. The Administrator will approve emergency supplies of these Drug Products according to the following rules when Drug Product therapy needs to begin immediately and prior authorization or diagnosis information is not available.
   a. Issue up to a 30 day supply or less
   b. Only fill one Prescription per generic product identifier for diagnosis overrides
   c. When submitting an emergency supply, please submit the following:
      i. "Prior Authorization Type code" (Field 461-EU) = '8'
      ii. "Prior Authorization Number Submitted" (Field 462-EV) ='DX'
      iii. "Day Supply" in the Claim segment of the billing transaction (Field 405-D5) = 'N' ; N ≤30

**Subrogation and Coordination of Benefits (COB)**
Benefit Plans are subject to subrogation and COB rules:
1. Subrogation — To the extent permitted under applicable law and the applicable Benefit Plan, the Administrator reserves the right to recover benefits paid for a Member's Covered Prescription Services when a third (3rd) party causes the Member's injury or illness.
2. COB — Is administered according to the Member's Benefit Plan and in accordance with applicable statutes and regulations. Administrator is able to process secondary Claims electronically.
3. Coordination of Benefits (COB) Other Coverage Code (OCC) Details – The following COB OCC codes are allowed:
   • 0 – Not Specified; Submit when member does not specify other coverage.
   • 1 – No Other Coverage; This code is used when no other coverage is available.
   • 2 – Other Coverage Exists; Payment Approved. OCC 2 is used when any positive amount of money is approved from another payer. Submit the amount approved from the primary payer.
   • 3 – Other Coverage Exists; Claim Rejected. OCC 3 is used when the beneficiary has other coverage and the claim was rejected as not covered.
   • 4 – Other Coverage Exists; No Payment Approved. OCC 4 is used when a patient's other coverage is active and there was no payment amount approved from the other insurer (i.e., the beneficiary has not met their deductible obligation, the total cost of the claim is less than the patient's cost share requirement).

**Note**: OCC code value 8 – Claim Billing for Patient Financial Responsibility Only is not allowed.



It is prudent for the Network Pharmacy Provider to verify with Members to ensure they do not have alternative primary or secondary insurers. Please be sure to refer to the online transaction response, when applicable, to facilitate COB processing.

**Retroactive Eligibility Changes**
Eligibility under a Benefit Plan may change retroactively if:

Benefit Plan Sponsor or Administrator receives information that an individual is no longer a Member;
   • Member's policy/benefit contract has been terminated;
   • Member decides not to purchase continuation coverage;
   • Eligibility information received by Administrator is later updated; or
   • As determined by CMS, with respect to Medicaid, MA-PD, PDP or HIX

If a Network Pharmacy Provider has submitted Claim (s) that are affected by a retroactive eligibility change, a claim adjustment may be necessary.

**Payer Sheets**
The Administrator D.0 Payer sheets related to Medicare Part D, Commercial and Medicaid are available on the health care professional's portal via the following:
   • OptumRx List 1 RxBINs: professionals.optumrx.com > Resources > Payer sheets
   • OptumRx List 2 RxBINs: professionals.optumrx.com > Resources > Payer sheets
   • OptumRx List 3 RxBINs: For the Payer Sheets, click here.

**OPTUMRx®**

## B. Formulary

In some programs, Members have a choice between brand and generic Drug Products; however the Member pays the difference between the cost of the brand and the available generic drug. Formularies vary by Benefit Plan and change regularly; the Administrator suggests the use of the Benefit Plan's website or any of the commercially available tools to facilitate formulary management when speaking with Prescribers and Members.

## C. Submitting Compounded Drug Claims

Administrator may require Network Pharmacy Providers to complete additional credentialing to be allowed to process Claims for Compounded Drugs. Administrator may solicit a third party vendor, such as Focus Script or Personal Med, to assist in the credentialing process. Network Pharmacy Providers will be required to meet all of the credentialing standards established by Administrator and/or the third party vendor to include, but not limited to: PCAB accreditation, continuous quality improvement process inclusive of validation testing for stability and sterility, an ethics management compliance review to include business operations, compliance with Anti-Kickback and Stark law, federal/state pharmacy law, defined allowable sales and marketing conduct, a defined compounding code of conduct and provider manual, and an onsite credentialing review. Network Pharmacy Providers must maintain compliance with credentialing requirements and standards of practice set forth by Administrator or the third party vendor. Failure to maintain compliance with the requirements and standards may result in administrative action up to and including the termination of the Agreement. Evidence of unsafe compounding practices may be reported to the State Board of Pharmacy, Food and Drug Administration (FDA) or applicable regulatory agency.

**Compounded Drug Claim Guidelines:**

- Network Pharmacy Provider shall not engage in practices deemed as price rolling. Price rolling is defined as the practice of submitting Claims such that the Network Pharmacy Provider obtains the highest reimbursement possible by circumventing the standard Prior Authorization (PA) process. For example, the Network Pharmacy Provider submits a Compounded Drug Claim and receives a rejection; the Network Pharmacy Provider shall proceed with obtaining a PA. The acts of resubmitting a Claim multiple times with the same quantity and different Usual and Customary (U&C) until a paid Claim is received or upon multiple submissions the quantity is changed to receive a paid Claim, shall be deemed as price rolling.

- During the course of submission of a Compounded Drug Claim, Network Pharmacy Provider may not attempt to obtain higher reimbursement than what was originally submitted as the Network Pharmacy Provider's Average Wholesale Price (AWP) cost of the ingredients and the U&C. Submission should be for the correct prescribed amount with corresponding accurate quantities and days' supply calculations. In the event a Network Pharmacy Provider receives a paid Claim, it should not attempt to reverse the Claim and obtain higher reimbursements by replacing ingredients (unless Prescriber authorization or new Prescription with different ingredient(s) has been obtained), increasing ingredient costs or dispensing fees or increasing quantities and days' supply calculations.

- Network Pharmacy Provider shall not attempt to circumvent the PA process by either (i) altering the days' supply and maintaining the same quantity or (ii) reducing the quantity and the day supply to receive a paid Claim (i.e. such practices are deemed as fee-splitting and is not permitted). For the latter, reducing the quantity of the Prescription and the day supply is permitted if such change does not cause the Member to incur an increased copayment amount over the life of the Prescription.

- Network Pharmacy Provider shall not submit a Compounded Drug Claim that is an equivalent alternative to a commercially available Drug Product.

- For each ingredient in which Network Pharmacy Provider uses tablets or capsules in a compounded medication, (weight/weight compounds in which the weight of the tablet displaces the weight of the final product not applicable to other compounds such as weight/volume), Pharmacy must document the total weight of the tablets or capsules prior to adding them to the compound.

- Compounds containing Medicare Part B ingredients should be submitted to a Part B carrier.

---

**Note**: Reconstituted preparations (e.g. powdered antibiotics mixed with water prior to dispensing) are not considered Compounded Drugs.

- Network Pharmacy Provider shall not submit a Claim for a Compounded Drug for a single NDC pre-made compound or compound kit. These Drug Products should not be submitted with a compound code.

- All Claims for Compounded Drugs must be submitted via the POS System using the compounding code indicator of "2" in field NCPDP D.0 406-D6 with each ingredient cost submitted by the particular quantity of the NDC and with the applicable Level of Effort (LOE) code in field 474-8E of the NCPDP D.0 format describing the amount of time/work required to produce the Compounded Drug.

Compounded Drug Claims may be subject to quantity limits, dollar thresholds or Prior Authorization (PA) restrictions, or the exception process as defined in the applicable Benefit Plan or Plan Specifications. In addition, Administrator may require Network Pharmacy Providers to complete additional credentialing to be allowed to process Compounded Drug Claims. Administrator may partner with a third-party vendor, such as Focus Script and PersonalMed, to assist in the Compounded Drug credentialing process. Network Pharmacy Provider will be required to meet all of the credentialing standards established by Administrator and/or the third- party vendor to include, but not limited to the requirements set forth in Section 'Pharmacy network participation requirements' in this PM. When required by the Client or Benefit Plan Sponsor, Network Pharmacy Providers must maintain compliance with compound credentialing requirements and standards of practice set forth by Administrator or the third-party vendor. Failure to maintain compliance with the requirements and standards may result in administrative action up to and including the termination of the Agreement.

| Code | Compounded Drug Description | Examples of Compounded Drugs |
|------|----------------------------|------------------------------|
| 11 | Compounded Drug do NOT contain an Active Pharmaceutical Bulk Powder Ingredient or Excipient | Magic Mouthwash, combinations of manufactured dermatological creams/ointments |
| 12 | Compounded Drug CONTAINING at least 1 Active Pharmaceutical Bulk Powder Ingredient | Simple suspensions, dermatological preparations |
| 13 | Compounded Drug requiring pH adjustment for stability, use of liposomal bases, troches, rapid dissolve tablets, suppositories, capsules (any route of administration) | Lansoprazole suspensions, omeprazole suspensions, pain creams in liposomal bases, troches, rapid dissolve tablets, suppositories, capsules (oral, nasal, etc.) |
| 14 | Compounded Drug CONTAINING Hazardous/Controlled | Compounded Drug hormone (any dosage form), topical pain creams containing controlled substances, chemotherapy |
| 15 | Sterile Compounded Drug - must be compounded in a <797> compliant environment and are dispensed as sterile finished preparation | Any sterile Compounded Drug |

The Network Pharmacy Provider is responsible for Compounded Drugs with approved ingredients only. Ingredients need to be within accepted standards strength, quantity and purity. In addition, it must have the appropriate labeling, as well as packaging in accordance with good compounding practices, official standards and scientific information.

All federal legend Drug Products and raw or bulk chemicals submitted in the Compounded Drug Claim fields must be:
- Approved by the Food and Drug Administration (FDA) for safety and effectiveness;
- Purchased from a FDA-registered wholesaler with distribution locations within the United States and point of origin from a FDA-registered manufacturer facility;
- Available only by Prescription;
- Used and sold in the United States; and
- Used for a medically accepted indication to treat a covered condition, illness or injury.

OPTUMRx®

- Medically- accepted indication not only refers to the indication but also the route of administration of the compound.

**Raw or Bulk Chemical Powders**
Many Benefit Plan Sponsors exclude raw or bulk chemicals from their Benefit Plans, including Medicare Part D Benefit Plan. Do not substitute raw or bulk chemical powders in Compounded Drug Claims for manufactured Drug Products when not covered by the Benefit Plan. Always submit the NDC of the Drug Product or raw or bulk chemical component actually dispensed in the Compounded Drug.

**Submitting Multi-Ingredient Compounded Prescriptions Under Version D.0**
- Applies to all BIN numbers

- Single-ingredient compound billing will not be accepted as a Compounded Drug (submit a compounding code indicator of "1" in NCPDP D.0 field 406-D6)

- Each individual ingredient should be represented by the NDC of the product(s) used and dispensed, including:
  - The total quantity of each specific ingredient
  - The cost of each individual ingredient with basis of cost determination
  - Up to twenty-five (25) ingredients may be entered for each Compounded Drug Claim

- Appropriate fields in the compound segment (see applicable payer sheet for additional information) must be completed.

- Submit the NDC number in the Claim segment as "0" (zero) and the Product/Service Identification qualifier should be submitted as "00" (two zero's).
  - Use the correct NCPDP compound segment to identify each individual ingredient.

- Submit a compound code of 2 (two) in field 406-D6 in accordance with National Council for Prescription Drug Programs (NCPDP) standards as defined in the Administrator payer sheets for Version D.0.

- Submit the quantity dispensed as the total metric quantity of the finished Compounded Drug, including:

  - Sum of all individual ingredient costs as the Network Pharmacy Provider's "Ingredient Cost Submitted" for the Compounded Drug Claim
  - Submit the Network Pharmacy Provider's U&C for the Compounded Drug Claim

- The final cost (calculated total cost/ingredient cost submitted) should be no greater than the combined AWP cost of all ingredients and the U&C.

- Compounded Drugs that are Covered Prescription Services shall be reimbursed in accordance with a Network Pharmacy Provider's submitted Claim information subject to any contractual, Benefit Plan or Plan Specifications. The submitted Claim information that may be included in the determination of the Prescription Drug Compensation may include, but are not limited to: the final calculated allowable ingredient cost based on the combined price of the individual Compounded Drug ingredients and quantities in the Compounded Drug, subject to any contractual, Benefit Plan or Plan Specification provisions, in addition to the total ingredient cost or U&C pricing submitted by the Network Pharmacy Provider.

**Compliance**
Members should be charged the applicable Cost-Sharing Amount indicated on the approved Claim only. The following actions, including but not limited to, may result in termination from the network:

- Waiving the applicable Member Cost-Sharing Amount
- Charging the Member more in Cost-Sharing Amount than provided by the POS System, including charging for non- covered ingredients

- Pharmacies cannot collect the Part B cost share when a Member is enrolled in an MAPD plan AND has qualifying Medicaid coverage.
- Refusing to dispense a Covered Prescription Service, including Compounded Drugs, because of dispute over the reimbursement
- Claim splitting or price rolling by submitting Compounded Drug Claims multiple times by changing the day supply/quantity/U&C in order to circumvent PAs, or quantity limits, or dollar amount thresholds, or Benefit Plan limits, to obtain multiple dispensing fees or higher reimbursement

**Compounded Drug Claims General Exclusions**
- Reconstitution of an oral antibiotic or similar product
- Raw bulk chemicals from a non-FDA registered manufacturer facility and wholesaler with locations within the US
- Charges for ancillary supplies, flavoring/sweeteners, equipment depreciation and/or labor are not eligible for reimbursement
- Ingredients with missing or invalid NDC numbers are not eligible for reimbursement
- Mixing of water or saline solution to another Federal Legend Drug
- Compounded Drugs for office use by medical providers and not compounded for individual Members

**Re-packaged/Re-imported Ingredients**
Compounded Drug Claims are subject to audit and to full recovery, including but not limited, for the following reasons:
1. Include as a component of the Compounded Drug a NDC for a repackaged Drug Product.
2. Drug Product imported or reimported into the United States, including bulk powders utilized in Compounded Drugs where part of the final Compounded Drug dispensed is composed of an imported component.

**Compensation for Compounded Drug Claims**
When covered by the Benefit Plan Sponsor, Compounded Drugs containing raw ingredients packaged as bulk chemicals where an equivalent federal-legend Drug Product is available in the marketplace, the maximum reimbursement for the bulk chemical powders will be the lesser of the Network Pharmacy Provider's Prescription Drug Compensation for each approved ingredient for the NDC utilized or that of the Network Pharmacy Provider's Prescription Drug Contracted Rate for each approved ingredient based on the pricing of the equivalent federal-legend Drug Product. All raw or bulk chemicals must be from FDA-registered chemical manufacturer facilities and wholesalers with distribution locations in the United States.

 Although required at this time, submitting the LOE code may not result in any change in reimbursement on the Compounded Drug Claim.

The following apply to OptumRx BINs:

| 610084 | 610094 | 610097 | 610127 | 610279 | 610494 | 610613 |
|--------|--------|--------|--------|--------|--------|--------|

**Commercial claims (OptumRx BINs Only)**
Prescription Drug Compensation for Compounded Drugs dispensed to Members that are Covered Prescription Services will be at the pharmacy's contracted Prescription Drug Contracted Rate for each approved ingredient submitted for the applicable network associated with the Claim submission, plus a Compounded Drug dispensing fee. This fee is subject to change by Administrator and may differ by Benefit Plan.

**Medicaid claims (OptumRx BINs Only)**
Unless otherwise specified below, Prescription Drug Compensation for Compounded Drugs dispensed to Medicaid Members that are Medicaid Covered Prescription Services will be at the Network Pharmacy Provider's agreed upon Prescription Drug Contracted Rate for each approved ingredient submitted for the applicable network associated with the Claim submission, plus a Compounded Drug dispensing fee. This dispensing fee is subject to change by the State or by Administrator in the absence of State requirements and may differ by the State or by Benefit Plan.

**Medicare Part D claims (OptumRx BINs Only)**
The Prescription Drug Compensation for Compounded Drugs dispensed to Medicare Part D Members that are Medicare Part D Covered Prescription Services will be at the Network Pharmacy Provider's agreed upon Prescription Drug Contracted Rate for each approved ingredient submitted for the applicable network associated with the Claim submission, plus a Compounded Drug dispensing fee. This fee is subject to change by Administrator.

**Processing a Compounded Drug Claims with Non-covered Ingredients**
In the event a non-covered ingredient (such as bulk powders, invalid NDC's, plan exclusions, etc.) is submitted in the Compounded Drug Claim, the Claim will reject and the POS System response will inform the Network Pharmacy Provider which ingredients were rejected and the Compounded Drug Claim may be resubmitted with a Submission Clarification code of "08" (i.e. zero-eight). The resubmitted Compounded Drug Claim will adjudicate and reimbursement will exclude the non-covered ingredients. Network Pharmacy Providers may not charge the Member more than the Cost-Sharing Amount provided by the POS System, including for non-covered ingredients.

## D. Vaccine and Immunization Administration

**Commercial**
When your pharmacy administers vaccines listed in the annual flu season communication for eligible commercial plan Members, reimbursement is based on an all-inclusive fee which encompasses the administration fee, ingredient cost and dispensing fee.

- UnitedHealthcare contracts for select vaccines and immunizations; not all Clients participate in the Administrator Vaccine Program.

**Medicaid (UnitedHealthcare Community Plans)**
- **Processing requirements when you provide and administer the vaccine** - When your pharmacy provides and also administers the vaccine, please populate the NCPDP field 438-E3 (Incentive amount submitted) field to submit for the $10 administration fee and populate field 439-E4 (Reason for service code) with "MA."

- **Administration fee-only claims** – If the vaccine was obtained through special program such as Vaccines for Children, you may submit a Claim for just the administration fee by submitting the Claim as usual, including the administration fee and changing your U&C amount to $0.01. You will be reimbursed $10.01.
- **Medicare Part D** – In order to be reimbursed the contracted administration fee of $20 for Part D eligible vaccine products, the Network Pharmacy Provider must (i) submit the contracted fee in the incentive fee section of the Claim and (ii) submit a DUR/ PPS Code Counter of "1" and Profession Service Code of Medication Administration (MA).
- **Vaccine Day Supply Submissions** – Pharmacies should submit vaccines with a 1-day supply to align with the NCPDP recommendation and to ensure appropriate cost-sharing is applied to the vaccine claim.



   To participate in Administrator Vaccine and Immunization programs, please email provider.relations@optum.com.

## E. Pharmacy Payment

Administrator, acting on behalf of applicable Client or Benefit Plan Sponsor, will process the Clean Claim for each Covered Prescription Service dispensed to applicable Members. Administrator will reimburse pharmacy for each Clean Claim no later than thirty (30) calendar days after Administrator's receipt of the Clean Claim, or a lesser time if required by applicable law or regulation, and contingent upon Client or Benefit Plan Sponsor funding.

**Processing and Pricing; Successful Adjudication of a Claim**
The acceptance of a successfully adjudicated Claim constitutes Network Pharmacy Provider's (i) acknowledgment of its participation in the applicable network and (ii) acceptance of all corresponding terms and conditions, including the rates and reimbursements of Claims, for such network. In the event of a conflict between the PM, Agreement, addendum, Compensation Exhibit, fee schedule, POS System transaction response reimbursement or any other pricing arrangement, the POS System transaction response reimbursement shall govern, unless an error in overpayment occurs.

OPTUMRx

Claims submitted by Network Pharmacy Provider for Members using an Administrator network or Client network via the POS System for retail prescription benefit management or Claim processing are reimbursed at the lesser of the following: the Benefit Plan or network AWP discount or other referenced based pricing plus applicable dispensing fee; MAC (when applicable for Covered Prescription Services); Network Pharmacy Provider's Submitted Cost Amount; Network Pharmacy Provider's U&C which would be given under the same circumstances if the Member did not possess prescription benefit coverage; or the submitted ingredient cost. Network Pharmacy Provider payments must be reconciled by Network Pharmacy Provider (e.g. if Network Pharmacy Provider receives a payment from Administrator with incorrect NPI, NCPDP number, name, address, Prescriptions processed by Network Pharmacy Provider or other key identifiers, Network Pharmacy Provider must report the discrepancy via telephone and in writing, such as electronic or otherwise), to Administrator within fourteen (14) days upon receipt. See Section II for contact information.

Determination of payment accuracy will occur by Administrator within fourteen (14) days. In the event any payment has been sent to a Network Pharmacy Provider in error, Network Pharmacy Provider is subject to immediate offsets from future payments or is required to immediately reimburse Administrator via a bank-drawn check or electronic fund transfer as directed by Administrator. Knowledge or lack thereof, of overpayment provides no rights to the receiver (i.e. Network Pharmacy Provider), all payments must be returned immediately as described above and interest at the greater rate of 1.5% per month of the total balance or required by law. Knowledge by Network Pharmacy Provider of extended (greater than 30 days) overpayment may be subject to network termination, penalties, including, but not limited to court costs, collection agents, travel and attorney's fees as required to recover the funds. If the Network Pharmacy Provider is disputing the reimbursement, please see MAC appeals contact information provided in Section II of this PM.

**Payments**
Administrator typically administers multiple payment cycles within compliance of federal and/or state regulations. Administrator reserves the right to make payment directly to a Network Pharmacy Provider at its sole discretion.

Network Pharmacy Provider is subject to penalties or sanctions in the event it is determined by Administrator during communications between Network Pharmacy Provider and an existing Client or a potential Client: (i) Network Pharmacy Provider disclosed confidential information to a Client or a potential Client or (ii) disrupted an Administrator relationship with its existing Client or with a potential client. Penalties shall be invoked in amounts at a minimum of $5,000 per incident/per day; may be subject to additional actions taken by Administrator, including and up to termination from participation, as well as withdrawal and/or the holding of funds as deemed necessary by Administrator.

If Network Pharmacy Provider is affiliated with a third party contracting or purchasing group, the Network Pharmacy Provider is subject to all terms/conditions of the written Agreement between Administrator and the entity. Communication should also be directed through the third party contracting entity or purchasing group.

**Payment Rules under Medicare and Medicaid Programs**
In accordance with requirements as set forth in 42 C.F.R §423.520(a)-§423.520(h) Network Pharmacy Provider Claims will be paid as follows:

**Clean claims**
- For Medicare Part D Plan Sponsor Clean Claims will be paid within fourteen (14) days after the date of receipt for electronic Claims and within thirty (30) days after receipt for paper Claims.

- Unless a particular state Medicaid agency requires a shorter time period, Medicaid claims will be paid by

- Administrator within thirty (30) days of the Pharmacy's submission.

**Claims**
- If the Claim is determined not to be a Clean Claim, Administrator will notify the submitting Network Pharmacy Provider. This notification will specify all defects or improprieties in the Claim and will list all additional information necessary for the proper processing, as well as payment of the Claim, if applicable.

- Administrator will not provide notice of a new deficiency that could have been identified in the original Claim submission.

- Medicare Supplier Number — Administrator encourages Network Pharmacy Provider to obtain and maintain (for each Network Pharmacy Provider location) a Medicare Part B supplier number pursuant to 42 CFR § 424.57.

- Network Pharmacy Provider agrees to inform Administrator of the Medicare Part B supplier number assigned to each Network Pharmacy Providers location for record-keeping purposes and Client Pharmacy Network directories.

- Effective January 1, 2016 and to the extent required by code 42 CFR § 423.505(i)(3)(vii), Administrator will disclose all individual updated Drug Product prices to the applicable Network Pharmacy Provider in advance of the use of such prices for reimbursement of applicable Claims if the source for any Prescription Drug Product pricing standard is not publicly available.

**Payment of Interest**
A Claim submitted to Administrator for payment not paid within the established timeframe (i.e. thirty (30) days for electronic Claims or thirty (30) days for paper Claims will receive interest payments where required by law, except: (i) where a state requires a shorter timeframe, in which case, state requirements prevail or (ii) is contested by Administrator and determined to be a non-Clean Claim).

Interest on late Claims is calculated/ paid as stated by CMS and state regulations, as applicable. For further information, refer to your state's Clean Claim regulations or the current CMS guidelines.

**Electronic Remittance Advice (ERA) 835 and Electronic Fund Transfer (EFT)**
Network Pharmacy Providers have the option to participate in the ERA 835 and EFT. ERA provides improved analysis, reporting and a cost-effective alternative to the traditional "hard copy" or paper copy remittance advice. EFT provides improved timing of payments, payment tracking and a cost-effective alternative to the traditional "hard copy" or paper check.

 Enrollment in EFT requires the Network Pharmacy Providers to be enrolled to receive an ERA.
In the event of an ERA 835 reposted file which was issued without error and in a timely manner, the Network Pharmacy Provider will be charged $75 per reposting transaction.

Once you are enrolled to receive an ERA or EFT, please see Pharmacy network contracting department contact information provided in Section II of this PM, if you have questions about a late or missing ERA or EFT.
Network Pharmacy Providers that receive paper remittance may also contact OptumRx for claim detail when a negative balance is incurred.

The new EFT/ERA process is applicable for all OptumRx List 1 and List 2 RxBINs. Please note, the payment cycles and EFT/ERA files may differ by the respective BIN numbers.
For additional information and enrollment instructions, access the OptumRx Healthcare Professionals website at professionals.optumrx.com.

## F. Member/Insured Appeal Rights

Administrator has established mechanisms to ensure all Members and Prescribers have equal access to, and can fully participate in, the appeals process. The Member or the Member's appointed/authorized representative and/or Prescriber can initiate an appeal. Members should refer to the denial letter for information regarding their appeal rights.
Member complaints or grievances are a means of continually improving the quality of our services. Grievances requested as directed above will be handled in a timely manner.

1. A health care provider may initiate an appeal of a health carrier's or its agent's claim determination:
   a. Within 90 calendar days of receipt of the health carrier's or agent's determination that is the basis of the appeal; or
   b. Within 90 calendar days of a health carrier's or its agent's missed due date for the claim determination, including at the provider's option, a claim that has been pended.

OPTUMRx

2. A provider shall initiate an appeal by submitting to the health carrier or its agent a complete Claim Payment Appeal Form, which shall include all substantiating documentation required by the health carrier or its agent. The carrier or its agent shall not reject an appeal based on the provider's failure to notify his or her patient of the appeal. The application form and instructions, which require the applicant to submit the name and contact information, the patient's name and the claim number with a description of the reason for appeal, are available for download on the Department's website at www.dobi.nj.gov. A health carrier or its agent may make available the application form and instructions on its website to allow for electronic submission of applications.

3. The health carrier or its agent shall conduct a review of the internal appeal and notify the health care provider of its determination within 30 calendar days of receipt of the application for internal appeal. The internal review shall be conducted by employees of the health carrier or its agent who shall be personnel other than those responsible for claims payment on a day-to-day basis and shall be provided at no cost to the provider. If the carrier or its agent fails to notify the provider of its determination within 30 calendar days of receipt of the application, the provider may initiate an arbitration proceeding in accordance with N.J.A.C. 11:22-1.13(c).

4. The health carrier or its agent shall communicate the results of the internal review in a written decision to the provider, which shall include:
   a. The names, titles, and qualifying credentials of the person or persons participating in the internal review;
   b. A statement of the provider's grievance;
   c. The decision of the reviewer(s), together with a detailed explanation of the basis for such decision;
   d. A description of the substantiating documentation, which supports the decision;
   e. If the payment decision is adverse to the health care provider in any respect, a description of the method to obtain an external review of the decision by arbitration pursuant to N.J.A.C. 11:22-1.13; and
   f. If the decision favors the health care provider in any respect, the health carrier or its agent shall be required to pay within 30 calendar days of the date of issuance of the health carrier or its agent's determination of the internal appeal, the amount due as determined by in the internal appeal, if applicable, with accrued interest at the rate of 12 percent per year calculated from the date of receipt of the internal appeal by the health carrier or its agent at its designated address.

## G. Utilization Management

**Utilization Management Requirements for Select Drugs**

Some Covered Prescription Services may have additional requirements or limits that help ensure safe and effective use. Requirements and limits may include:

- **Prior authorization (PA)** – Select Drug Products may have potential for inappropriate or unsafe use. Therefore, Benefit Plan Sponsor approval is required to ensure that the Drug Product will be used for indications for which it has been shown to be safe and effective. Drug Products subject to PA may require confirmation of diagnosis or submission of laboratory and other supporting information.

- **Step therapy (ST)** – Step therapy promotes the use of one or more alternatives which are safe and cost-effective prior to receiving approval for the requested Drug Product. The recommended alternatives are considered preferred or first-line Drug Products that are consistent with standard medical care and evidence-based literature. Once members have tried the alternatives without success, the requested Drug Product requiring ST may be approved for coverage.

- **Quantity limits (QL)** – QL ensure safe Drug Product use by preventing excessive dosage amounts or extended periods of therapy without clinical justification. They limit the amount of Drug Product a Member can receive by identifying a maximum quantity that can be dispensed over a specific period of time or per Prescription. They may also be used to promote dose optimization which encourages Members to use the most appropriate strength based on their dosing regimen. Certain Drug Products may be approved for quantities above the limited amount, if medical necessity can be substantiated.

This PA review process applies to the applicable additional requirements or limits: PA, ST and QL.

PA review. A Member, Member's appointed/authorized representative and/or a Prescriber may submit a request to initiate the PA review process. If Prior Authorization of a Drug Product is required, the Network Pharmacy Provider must make good faith efforts to contact the Prescriber. Coverage determinations made through the PA review process will be based on Benefit Plan's approved criteria, clinical guidelines approved by the National Pharmacy & Therapeutics Committee (NP &TC) or other professionally recognized standards of practice. If a Member's Drug Product has a PA, ST or QL restriction, the Member or Member's appointed/authorized representative should contact Administrator customer service number located on the back of the Member's ID card. In addition, the Prescriber may contact our PA Department to start the prior authorization process by providing relevant, patient-specific clinical information to be reviewed by a licensed Pharmacist or medical director.

Prescribers can also submit a PA request via fax, mail or online via professionals.optumrx.com or by creating an online account via CoverMyMeds at covermymeds.com.

### Prior Authorization (PA) Process Key Steps
- The Member's Prescriber or Member's appointed/authorized representative can submit a PA request.
- A pharmacy technician enters the information into our PA system and performs the initial request review.
- If the request falls outside the established guidelines, a Pharmacist reviews the request and contacts the prescriber if additional information is required.
- If required by state law, the request will be reviewed by a medical director before issuing the final decision.
- Additionally, where required by law, the Prescriber is offered the opportunity for a peer-to-peer consultation prior to the issuance of an adverse medical necessity determination.

Once the request is approved or denied, our PA system will automatically generate a written correspondence to both the Member and Prescriber.

The Administrator complies with all State and Federal regulations for PA turnaround time. Our typical turnaround times are as follows:
- Non-urgent cases have a turnaround time of fifteen (15) days for commercial Benefit Plans from the receipt of request to review the case or seventy-two (72) hours for Medicare Benefit Plans from receipt of request or prescriber's supporting statement if applicable.
- Urgent cases have a turnaround time of seventy-two (72) hours for commercial Benefit Plans, from receipt of request to review the case or twenty-four (24) hours for Medicare Benefit Plans from receipt of request or prescriber's supporting statement if applicable.

- Washington — For commercial fully insured and ASO non-ERISA Claims, if a Prior Authorization (PA) number is required to be transmitted on a Claim, Administrator will provide the authorization number to the Network Pharmacy Provider. The PA number will be communicated to Network Pharmacy Provider after approval of a PA request and or the authorized Covered Prescription Service.
-

### Additional Information
Our PA department is staffed with licensed pharmacists and pharmacy technicians. They also have access to a physician reviewer when required. After PA requests are reviewed, determinations are rendered in accordance with State and Federal regulations, independent body accreditation standards, such as National Committee for Quality Assurance (NCQA), or Employee Retirement Income Security Act (ERISA), and the clinical guidelines approved by our national Pharmacy and Therapeutic (P&T) committee. The Prescriber and Member or Member's appointed/ authorized representative will be notified of the final decision within the required time frame according to State and Federal regulations.

### Maximum Dollar Edits (Max)
Some Benefit Plans may elect to implement a high cost dollar limit (i.e. amounts vary by Benefit Plan). The ceiling amount for high cost dollar limits may vary by Benefit Plan. If the Claim rejects (Reject Code 76 or 78) for this reason, please contact the Pharmacy Help Desk to determine if the Member's Benefit Plan will allow for an override.
Do not 'split' the Prescription into multiple Claims.

OPTUMRx

# H. Concurrent Drug Utilization Review (cDUR)

In order to detect and address clinical quality and safety issues, certain Concurrent Drug Utilization Reviews (cDURs), or clinical edits, are applied at the time the Prescription is dispensed. Concurrent screenings are for such things as duplicate therapies, age or gender-related contraindications, overutilization or underutilization, drug-drug interactions, incorrect drug dosage or duration of drug therapy, drug-allergy contraindications, and clinical Abuse or misuse.

System thresholds/criteria and accompanying pharmacy messaging are developed and set by Medi-Span® and are validated and implemented by Administrator. Clinical edits can present as messages, Soft or Hard Rejects. Dispensing Pharmacists should exercise their clinical knowledge and expertise in reviewing and overriding warning messages if deemed medically appropriate.

**Override Codes for Pharmacy**

Certain Benefit Plans allows overrides for clinical edits. Administrator also utilizes NCPDP defined DUR/Pharmacy Payment Service (PPS) Coding (Conflict, Intervention and Outcomes Codes) and Submission Clarification Codes. The following reject edits allow Network Pharmacy Providers to be able to review and override certain DUR rejections/interactions by identifying and entering the appropriate conflict, intervention and outcome codes for each component.

The use of each submission clarification code for the purpose of overriding the rejection is based on Benefit Plan. Therefore if the benefit does not allow Vacation override, for example, submission clarification code 03 (corresponding to vacation supply) will not override the rejection. Likewise, if the Benefit Plan does not cover lost Prescription, submission clarification code 04 (corresponding to lost Prescription) will not override the rejection. Some Benefit Plans require calling Pharmacy Help Desk for overrides (e.g. Medicare Part D Benefit Plans).

Reason code Therapeutic Duplication (TD), requires the pharmacy to review the flagged medications and resolve any duplication in the system.

This TD is a safety edit in the pharmacy system that looks at the member's current medication and compares them to the drug being processed. It flags a patient's request to fill a medication within that same class of medication already filled within the last 30 days. The flag requires research to determine why the patient is attempting to fill another medication in the same class so quickly.

When the pharmacy system flags a medication for TD, it produces a soft reject. The following steps explain how you review an override for a soft reject.

1. Review the patient profile to identify why the system identified the member with a therapeutic duplication. There may be claims from other pharmacies that resulted in the soft reject.
2. Consult with the member to confirm current medications.
3. If the member is unsure or insists they should be taking both medications or if you have additional questions, ask the prescriber to confirm.
4. If you do not recommend the prescription, do not fill it. Ask the member to contact the prescriber. Do not submit a claim for the prescription.
5. If you approve the prescription fill, override the rejection. Identify and enter the appropriate Reason, Professional and Result code for each field.

Select the appropriate professional and Results Code from the following list.

| Professional Codes | Professional Code Description | Result Codes | Result Code Description |
|---|---|---|---|
| M0 | Prescriber consulted | 1A | Filled as is, False Positive |
| P0 | Patient consulted | 1G | Filled, Prescriber approval |
| PE | Patient education/instruction | 3A | Recommendation Accepted |
| TH | Therapeutic product interchange | 3C | Discontinued drug |

|  |  | 3D | Regimen changed |
|---|---|---|---|
|  |  | 3E | Therapy changed |
| R0 | Pharmacist Consulted | 1B | Filled prescription as is |

| Edit name; reject | Description of edits | Action; DUR/PPS coding and submission clarification |
|---|---|---|
| Morphine Equivalent Dose Limit Screening (MMELIMIT): Reject Code 76 or 88 | Effective January 1, 2017, CMS will require plan sponsors to limit the daily cumulative dose of opioid Drug Products a Member may obtain at Point-of-Sale (POS). The daily limit is referred to as the Morphine Milligram Equivalent (MME) limit. Depending on the plan, there may be multiple MME limits with varying response levels (Soft or Hard Reject). | • If the Soft Reject MME limit is exceeded based on submitted Claims, the MMELIMIT edit produces the following message:<br><br>• MME XXXXX exceeded; Total MME YYYYYMG TOO/R, ENTER PPS CODE OR CALL HELPDESK"<br><br>• If the Hard Reject MME limit is exceeded based on submitted Claims, the MMELIMIT edit produces the following message:<br><br>• MME XXXXX exceeded; Total MME YYYYYMG TO ACQUIRE MED PA, CALL PA or HELPDESK"<br><br>• If the Soft Reject fires the Pharmacist can override the edit using appropriate DUR/PPS Reason, Professional and Result codes. Consultation with and approval from the Prescriber is required prior to using the PPS codes.<br><br>For the MME edit, the below code combination can be<br><br>used: Drug Conflict Code —<br>• Reason for service code ("conflict code") = HD for High Dose Alert<br><br>DUR Intervention Code —<br>• Professional service code ("intervention code") = M0 for Prescriber Consulted<br><br>DUR Outcome Code —<br>• Result of service code ("outcome code") = 1G for Filled, Prescriber Approval |

| Drug-Drug Interaction (DDI); Drug Therapy Monitoring System (DTMS) Screening: Reject Code 88 | Checks Member's Prescription history to detect possible adverse interactions between submitted drug and others being taken by the Member. | Pharmacists review the patient profile to identify why the reject has occurred, consult with the prescriber, determine if the drug should be dispensed and if appropriate, override the rejection with the following DUR/PPS coding: |
|---|---|---|
| | | Drug Conflict Code — |
| | | • Reason for service code ("conflict code") |
| | | = DD for drug-drug Interaction |
| | | |
| | | DUR Intervention Code — |
| | | • Professional service code ("intervention code") |
| | | = M0 for prescriber consulted |
| | | = R0 for pharmacist consulted (commercial only) or |
| | | = P0 for patient consulted (commercial only) |
| | | |
| | | DUR Outcome Code — |
| | | • Result of service code ("outcome code") |
| | | = 1G for filled, with prescriber approval |
| | | = 1B for filled Prescription as is |
| Dosing Screening (DOSECHEK): Reject Code 88 | Compares dosage of submitted drug with the maximum recommended dosage age to detect possible conflict. | Pharmacists review the patient profile to identify why the reject has occurred, consult with the prescriber, determine if the drug should be dispensed and if appropriate, override the rejection with the following DUR/PPS coding: |
| | | |
| | | Drug Conflict Code — |
| | | • Reason for service code ("conflict code") |
| | | = HD for high dose alert |
| | | |
| | | DUR Intervention Code — |
| | | • Professional service code ("intervention code") |
| | | = M0 for prescriber consulted |
| | | = R0 for pharmacist consulted (commercial only) or |
| | | = P0 for patient consulted (commercial only) |
| | | |
| | | DUR Outcome Code — |
| | | • Result of service code ("outcome code") |
| | | = 1G for filled, with prescriber approval |
| | | = 1B for filled Prescription as is |
| Refill Too Soon: Reject Code 79 | Checks Member's Prescription history to detect possible duplicate | Pharmacists review the patient profile to identify why the reject has occurred, consult with the prescriber, determine |

OPTUMRx®

| | Prescriptions. | if the drug should be dispensed and if appropriate, override the rejection with the following submission clarification codes (420-DK)**:<br><br>• 03 Vacation supply — The pharmacist is indicating that the cardholder has requested a vacation supply of medicine.<br><br>• 04 Lost Prescription — The pharmacist is indicating that the cardholder has requested a replacement of medication that has been lost<br><br>• 05 Therapy change — The pharmacist is indicating that the physician has determined that a change in therapy was required: either that the medication was used faster than expected, or a different dosage form is needed, etc. |
|---|---|---|

# I.  Retrospective Drug Utilization Review (rDUR) / Clinical Programs

The Retrospective Drug Utilization Review (rDUR)/Clinical Programs use detailed data review and analysis to identify potential problems, implement appropriate interventions, and evaluate the impact of the interventions. Clinical programs can yield measurable results, including reduction in emergency room visits, unnecessary and inappropriate Drug Product use, and overall costs. The programs focus on pre-catastrophic populations with high-cost and high- impact conditions that have the greatest potential for improvement via Member and/or Prescriber interventions. Specific program objectives include optimizing the use of certain therapeutic agents to improve health outcomes, reducing the risk for Drug Product-related adverse events, and promoting the use of the most cost-effective Drug Products.

  Clinical program examples include, but are not limited to, the following:

**rDUR- Gaps in Care**
The rDUR — Gaps in Care program drives quality of care by closing Drug Product gaps for Members with select chronic diseases. Using evidence-based medicine, the program identifies and intervenes on Members who are not on recommended therapies for their disease states. Opportunities for Network Pharmacy Provider interventions are identified to help close therapy gaps in the management (e.g. asthma, diabetes and cardiovascular disease). The program also incorporates quality measures supported by CMS, Healthcare Effectiveness Data and Information Set (HEDIS), and Pharmacy Quality Alliance (PQA).

**rDUR - Safety Management**
The rDUR Safety Management program identifies and intervenes on Members with potential Drug Product safety concerns which may not be addressed at point-of-sale. Opportunities for Network Pharmacy Provider interventions are identified to ensure appropriate Drug Product utilization and decrease drug spend. Targeted areas of concern include drug-drug and drug- disease interactions, therapeutic duplication, and drug-age.

**Opioid Risk Management Program**
OptumRx Opioid Risk Management is a program to improve the quality of patient care by reducing potentially inappropriate usage of opioids. OptumRx program includes prevention and education along with adjudication edits designed to minimize early exposure (limitations to initial therapy) and reducing inappropriate supply (edits to prevent an excess beyond standards of care). OptumRx Opioid Risk Management replaces the current OptumRx Controlled Drug Management program for direct business, which is being discontinued.

**Medicare Part D Overutilization Program**
The Medicare Part D Overutilization program addresses potential overutilization of opioids Medicare Part D in Prescription drug Benefit Plans through improved drug utilization controls and Member-level case management. Members identified as receiving a relatively high dose of opioid Drug Products for a long period of time and receiving these opioid Drug Products from multiple Prescribers and Network Pharmacy Providers will have a case manager assigned to conduct Prescriber

outreach to confirm if the current dosage of opioids is medically necessary and safe. Based on the results of this retrospective review, a Member-level POS System safety edit may be implemented limiting the use of opioids Members receiving an opioid restriction will be notified at least thirty (30) days in advance of the effective date of the restriction to provide time for a coverage determination to be processed.

## Medicare Part D Drug Management Program
The Drug Management Program (DMP) identifies members who are using high doses of opioids that are prescribed by multiple prescribers and/or filled at multiple pharmacies. These members are potentially at risk for abuse or misuse of opioids and their case will be reviewed by an assigned clinical pharmacist. If needed, the pharmacist will outreach to the prescribers to verify medical necessity of the current opioid usage or obtain agreement to place the member in a medication management plan to help them better manage their opioid usage. This plan can take the form of various restrictive edits ranging from drug level restrictions to prescriber and pharmacy lock-ins. Members will receive two notifications if they will be placed on a medication management plan. The first letter will sent at least 30 days before the restriction starts and a second letter will sent on the day that the restriction starts. DMP is a CMS compliance and safety program and complies with all standards and requirements as set forth by CMS in their official published guidance documents. It also is the successor to older iterations of similar programs such as Level 3 and Opioid Overutilization Program.

## Medication Adherence Program
Adherence is defined as taking a drug product as prescribed by a healthcare professional. As compared to non- adherent members, adherent members have a lower likelihood of hospitalization, emergency room visits and condition- specific healthcare costs. The OptumRx® Medication Adherence program uses a data-driven approach to identify members who need help taking medications as prescribed across multiple drug classes — including those to treat diabetes, hypertension, high cholesterol, HIV/AIDS, mental health, as well as respiratory conditions.  The program offers a continuum of care and full service capabilities. It uses machine learning and artificial intelligence to target higher risk members, monitors behaviors for improved adherence, offers expert consultations and engages individuals in an optimal way, based on their preferences and preferred channel of communications. Member outreach includes:

- New to Therapy Letter: Educating members on new medications and their medical conditions, including the importance of medication adherence.
- Primary Medication Non-Adherence: Multichannel outreach is used to send providers mailings and faxes, alerting them of members who did not start their new therapy, for support and assistance.
- Refill Reminders: Interactive IVR reminding members to refill their medications, typically two (2) days after late to fill with a 10 day follow up as needed. Members have option to be transferred to their last dispensing pharmacy to refill.
- Low adherence.
  - Educational letters to members about the importance of being adherent with tips on how to remember to take their medication.
  - Multichannel outreach, sending providers mailings and faxes alerting them of member non-adherence.
  - Interactive IVR with barrier survey and tips to address barriers to following their medication regimens. This also offers members the option to connect with a live OptumRx pharmacist for phone consultations. The IVR collects barrier information which will be reported back to the client on a quarterly and/or monthly basis.
- Encouragement messages via IVR outreach to members with highest risk of becoming non-adherent with their medication regimen. Member risk is determined by machine learning predictive analytics focused on the top 10 factors for medication non-adherence as related to each individual member in the program.

## Diabetes Management Program
The OptumRx diabetes program is designed to help members control blood sugar, A1c levels, disease progression and comorbidities. The OptumRx Diabetes Management program provides targeted guidance and services designed to prevent costly and clinically dangerous complications. The program consists of fully integrated management strategies that bring together data, insight and clinical skills from a broad range of sources, including pharmacy, medical, ancillary care, and lab results. Using machine learning and artificial intelligence, member risk levels are identified to tailor outreach and support.

- Lower-risk diabetic members are offered basic diabetes education to improve their understanding of the disease. We monitor these members daily, and intervene at crucial points in their care to help them stay adherent to their medications.
- High-risk members are offered more comprehensive and personalized care, connecting them with certified diabetes educators for more hands-on clinical expertise and support.

**Orphan Drug Program**

The Orphan Drug Program focuses on orphan drugs and diseases with the greatest opportunity for clinical intervention and cost savings. One-on-one coaching is led by OptumRx clinical pharmacists with explicit training and expertise in orphan drugs and diseases. Each OptumRx clinical pharmacist will also communicate with the provider to ensure all gaps in care are closed and there are no drug-to-drug interactions that will cause negative outcomes for the member.

- Members receive a comprehensive medication review, which includes an in-depth review of complete medication history and validates the benefit of taking the orphan drug.
- Pharmacist and member establish a detailed medication action plan which identifies therapy goals and timelines, helps deliver outcomes and adverse event management.
- More than 200+ proprietary rules focused on orphan drugs deliver personalized alerts for clinical concerns and medication contraindications such as drug-drug and drug-disease interactions and non-adherence. These data-driven interventions help optimize dosing, confirm drug safety and effectiveness and determine whether an orphan drug should be discontinued and/or alternative options should be used.

**Cost Management Program**

The Cost Management program is designed to promote the use of clinically appropriate lower-cost Generic Drugs. The program targets newly available and existing Generic Drugs in select therapeutic classes.
Examples of targeted Drug Product classes include, but are not limited to, the following: angiotensin receptor blockers (ARBs), bisphosphonates, nasal steroids, and proton pump inhibitors. Members identified through Claims data, receive letters regarding the availability of Generic Drugs, the safety and efficacy of Generic Drugs and cost savings associated with the use of Generic Drugs.

## J. Maximum allowable cost (MAC) pricing, review and appeals

To assure the MAC list accurately reflects market pricing and the availability of Generic Drugs, Administrator utilizes multiple sources to determine MAC pricing. The sources include de-identified market pricing benchmark data such as AWP and WAC, wholesaler information on market availability and pharmacy information from inquiries. A synthesis of these and other sources helps create a market based MAC price for Generic Drugs on the MAC list. These sources are also monitored and updated at least every seven (7) calendar days to help manage market pricing fluctuations on the MAC list. Administrator's MAC lists are also regularly reviewed at least every seven (7) calendar days and updated accordingly. Administrator reserves the right to update its MAC pricing methodology and to use alternative, reputable sources at its discretion. Upon written request, as well as to the extent required by law, Administrator will make available the current and applicable MAC price information to Network Pharmacy Provider. Such MAC price lists constitute confidential information.

To comply with applicable state laws, Administrator has implemented an appeals process to allow a participating network pharmacy to dispute applicable and particular MAC pricing of a Covered Prescription Service Drug Product (i.e. MAC Appeal). This process also includes a timely review and investigation to resolve MAC disputes. For a MAC Appeal, pharmacy must obtain, fully complete and submit the MAC Appeal form ("MAC Form") to Administrator within thirty (30) calendar days from the date of service submitted on the Claim, as well as adhere to state-specific requirements. For pharmacies contracted with a PSAO, MAC appeals may be submitted to the PSAO for processing.

Administrator shall investigate and resolve the appeal within thirty (30) business days after the fully completed form is received. All MAC appeal review determinations on any individual claim from a pharmacy are final and will not be reviewed again. This section shall be considered a part of the Agreement by and between Administrator and Network Pharmacy Provider (including all amendments, addenda or Compensation Exhibits) to the extent the Network Pharmacy Provider provides Covered Prescription Services to Members in applicable states. The terms of this section shall be considered general information regarding MAC. Network Pharmacy Provider agrees and understands to the extent any state-specific law, rule or regulation differs or contradicts the terms set forth herein, Administrator shall follow the state-

specific law, rule or regulation. Network Pharmacy Provider is subject to any MAC list(s) associated with the network(s) in which Network Pharmacy Provider participates.

MAC appeal requests will be reviewed to determine the appropriateness of pricing utilized by Administrator for reimbursement. Administrator will utilize all available information to deduce the appropriateness of reimbursement.

Participating pharmacies may be required to submit their actual acquisition cost (including any rebates) for each item being reviewed. Unless specifically required, failure to submit the actual acquisition cost (including rebates) will not result in Administrator rejecting Claims for review, but could diminish the accuracy of review and therefore the likelihood of a successful and complete review.

Please access the MAC Appeal Submission Guide for instructions on processing appeals at the following link: https://professionals.optumrx.com/resources/manuals-guides/appeals-submission-guide.html

**MAC State-Specific**
To the extent your Network Pharmacy Provider is located in a state requiring different time periods to submit or resolve MAC Appeals than noted above, please see the Appendix G.

Administrator follows the state requirement where your pharmacy is located. In addition, if your pharmacy is located in one of the states listed in the Appendix G the respective provision supplements or replaces that aspect of the MAC Appeal process. Not all state requirements apply to all Claims or all lines of business (e.g. Commercial, Medicare, Medicaid and ERISA exempt Benefit Plans).

# K. Resubmitting a claim

All Claims submitted via the POS System will result in a response Transaction message (e.g. Paid or Rejected). In the event that Network Pharmacy Provider has submitted a Claim via the POS System and Network Pharmacy Provider does not receive any Claim response Transaction message via the POS System within a reasonable amount of time, Network Pharmacy Provider should verify the accuracy of the submitted Claim and resubmit the Claim to Administrator via the POS System.

# L. Transmission fees

Notwithstanding anything to the contrary in this Manual or the Agreement, transmission fees which may vary in amount will be incurred, subject to applicable regulatory requirements, by the Network Pharmacy Provider per online Transaction. Fees are assessed to support Network Pharmacy Provider payment, as well as reconciliation, Help Desk service, education regarding network compliance, transactional and billing processes, among other initiatives. However, excessive or disruptive process inquiries, including, but not limited to non-contracted pharmacy status, duplicate payment and remittance requests, excessive Member/Network Pharmacy Provider grievances, third-party biller intervention, incomplete or inaccurate credentialing submissions, contract non-compliance and/or failure of the Network Pharmacy Provider to submit Claims through the Administrator designated claim processor POS System, are subject to higher transmission fees. Should a Claim be submitted by a third-party or other means separate from the Network Pharmacy Provider itself, the Claim may be subject to non-payment.

# M. Pharmaceutical manufacturers' cost- share amount coupons

Network Pharmacy Provider is responsible for ensuring pharmaceutical manufacturer copayment cards or coupons (i.e., "coupons") are not utilized for Claims under the Medicare Part D, other federally-funded health programs, and any commercial or Medicaid Client Benefit Plan[s] that prohibits use of coupons to offset all or a portion of a Member's Cost-Sharing Amount.

Network Pharmacy Providers must include operational practices to require validation of each customer/Member that presents a copayment card coupon to assure that use of a coupon is not prohibited by the health program and/or Benefit Plan. Network Pharmacy Providers accepting coupons in lieu of collecting the full cost-share amount in violation of the

health program and/or Benefit Plan may be subject to audit, recovery and other administrative actions, up to and including termination from all Administrator's Pharmacy Networks.

## N. Tax on Covered Prescription Services

Certain state or local jurisdictions may impose a tax on Covered Prescription Services. This tax obligation shall apply to, and be payable by, the Network Pharmacy Provider unless the law expressly requires the Administrator or its health plan client reimburse or pay the tax on behalf of the Network Pharmacy Provider. In the event the law applies the tax on the Administrator or its health plan client, and the Network Pharmacy Provider timely seeks reimbursement that includes that tax, the Network Pharmacy Provider must enter the accurate tax amount in the appropriate field on the Claim submission.

## O. Disputed claims

In the event a Network Pharmacy Provider seeks to dispute a Claim due to alleged error, miscalculation, discrepancy or non-compliance to terms specified in the Agreement or otherwise questions the accuracy of any Claim, the Network Pharmacy Provider must notify Administrator within one-hundred and twenty (120) days of the date of fill in writing. Written outreach must include Pharmacy NCPCP number, Eligible Person ID number, Prescription number, date of fill and details such as why an adjustment is needed (e.g. wrong NDC submitted, wrong quantity submitted, etc.) Should the Network Pharmacy Provider fail to contact Administrator within the required response time, Network Pharmacy Provider deems the accuracy of processing and payment of Claims, as set forth in that cycle. Overpayments made to the Network Pharmacy Provider are not applicable.

 Notifications may be emailed to: provider.relations@optum.com (OptumRx List 1 and List 2 RxBINs)

## P. Days Supply and Quantity

Network Pharmacy Provider may only submit Claims to Administrator for Drug Products properly labeled and dispensed in accordance with the Prescription order for the Drug Product.

**Dispensing Limitations**
Any claim submitted to Administrator exceeding Benefit Plan limitation for the days supply or quantity billed will reject with messaging indicative of actual plan limits such as: MAXIMUM DAYS SUPPLY- thirty-four (34) or QUANTITY LIMIT -100. Resubmitted Claims must include the accurate days supply and quantity. If a claim submitted has a quantity representative of the smallest commercially available package size or represents a single course of therapy (e.g. Seasonique® as a ninety-one (91) days supply) and rejects as stated, the Network Pharmacy Provider must request an override through the Pharmacy Help Desk and resubmit the Claim utilizing the appropriate quantity and the accurate days supply.

If an override is not available and the Network Pharmacy Provider is not able to submit a claim for the accurate days supply, the Network Pharmacy Provider must document what the actual days supply is for the claim in the system, and calculate refill intervals based on the actual days supply and not the submitted days supply to prevent early refills and potential waste.

Network Pharmacy Provider must clarify ambiguous dosage instructions regarding use prior to dispensing a Prescription. If a prescription contains ambiguous directions (e.g. no directions — Use as Directed (prn)) Network Pharmacy Provider must obtain more detailed directions so the days supply can be calculated and the dosing scheduled submitted correctly. The directions may be obtained by direct communication with the Prescriber.
Documentation of such directions must be on the original Prescription.

**Days Supply**
Network Pharmacy Provider is responsible for entering the correct days supply of prescriptions for all claim submissions. The supply should accurately reflect the prescribed directions and quantity billed. Audits routinely identify discrepancies in days supply errors. Treatment therapy should be included in determination of days supply. The following are examples of appropriate days supply submission:

OPTUMRx®

- One (1) patch weekly is four (4) patches for a twenty-eight (28) days supply.
- Two (2) tablets twice weekly is sixteen (16) tablets for a twenty-eight (28) days supply.
- A thirty (30) days supply is no longer standard; some programs permit extended days supplies. Always transmit the accurate day's supply and allow the on-line system to communicate the allowable days supply.
- Vaccines should be submitted with a quantity that corresponds to the unit of measure and not the package size. The days supply submitted for all vaccines should be 1-day supply.

**Quantity**

Network Pharmacy Providers must enter a quantity dispensed that is consistent with the prescribed directions for use and billed days supply. The quantity dispensed must reflect the exact metric decimal quantity, without rounding. If the quantity to be dispensed is uncertain, Network Pharmacy Provider must contact the Prescriber to determine the appropriate amount to dispense and document said amount on the original, hard-copy Prescription.

Network Pharmacy Provider should review Claim submission to be sure the quantity is accurate based on the specificity of the Drug Product and Prescriber instructions.

Additionally, Network Pharmacy Provider should adhere to the following:

- Network Pharmacy Provider shall not owe the Member a portion of the Prescription to be picked up at a later date and must only submit Claims what was actually dispensed (unless product expiration – such as reconstituted antibiotics used in prophylaxis);

- Network Pharmacy Provider shall use commercially reasonable efforts to ensure (i): the in-person fill time (ready for pickup) be no longer than forty (40) minutes, and (ii) a Prescription phoned in by a Prescriber is filled within ninety (90) minutes.

- If the minimum quantity as represented by the manufacturer's smallest available unit-of-use causes a rejection, with notation of a maximum days supply, and an override is not available, it is allowable to resubmit with the communicated days supply which represents the plan maximum.

- Claims submitted to Administrator in accordance with a Client Benefit Plan to allow limited dispensing of a non-covered Drug Product (e.g. three (3) days supply approved for a drug requiring a PA) may be dispensed with the smallest commercially available package size and submitted using the allowable days supply.

- Network Pharmacy Provider shall, in accordance with 42 CFR § 423.132, when dispensing a covered Medicare Part D Drug Product, inform the Medicare Part D beneficiary at the POS of the lowest-priced, generically equivalent version of that covered Medicare Part D Drug Product, if one exists for the beneficiary's Prescription.

Any subsequent changes in the original dispensing limitations (e.g. increase in quantity) or refill authorizations approved by the Prescriber must be documented on the original hard copy Prescription or in a readily retrievable electronic format acceptable by the State Board of Pharmacy in which Network Pharmacy Provider is located.

Refer to Section FWA for detailed information regarding standards and requirements for all Prescription records.

## Q. Collection of Members Cost-Sharing Amount

Network Pharmacy Provider must charge the Member the Cost-Sharing Amount indicated in the online response and only this amount. Waiving the amount associated with the Member Cost-Sharing is strictly prohibited, unless required by law (e.g. Qualified Medicare Beneficiary or other Qualifying Medicaid coverage) and is considered a material breach of the Agreement.

Network Pharmacy Provider reimbursement pricing information, as well as prices paid to Network Pharmacy Provider for individual Claims under this Agreement are confidential and proprietary Administrator information and may not be disclosed on Member receipts or insurance profiles. The Network Pharmacy Provider may print U&C price and Member pay amount on the receipts, as well as the insurance profiles.

OPTUMRx®

Network Pharmacy Provider agrees with the exception of (i) Cost-Sharing Amounts (ii) reasonable returned check costs and (iii) reasonable collection costs directly related to subparts (i) or (ii). Network Pharmacy Provider shall not in any event, including, without limitation, non-funding by Administrator or non-payment by a Client, insolvency of Administrator or a Client, or breach of this Agreement, bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, hold responsible, or otherwise have any recourse against any Member, or any other person (other than the applicable Client) acting on behalf of any Member, or attempt to do any of the foregoing for any Prescription provided to any Member pursuant to the Agreement. This section shall survive expiration or termination of the Agreement.

In accordance with U.S. Department of Health & Human Service, Health Resource Services Administration ("HRSA") rules and requirements, Network Pharmacy Providers owned by or contracted with a 340(b) Participating Entity may discount or waive the Cost-Sharing Amounts owed by Members for reasons of genuine financial need.

In these situations, CMS rules and the Agreement allow 340(b) Participating Pharmacies to do the following:
- After submitting the claims for Part D Covered Prescription Services for Medicare Part D Members via the POS System, 340(b) Participating Pharmacies may adjust, discount or waive the Cost-Sharing Amount provided by the on-line POS System response per the guidance on genuine financial need as described by HRSA.

## R. Claim Reversals

Claims can be reversed up to thirty (30) calendar days after the submission date (or as specified by the plan); however when necessary, Claims should be reversed within fourteen (14) calendar days, as soon as reasonably practical or as specified by a particular governing requirement to assure Prescriptions with inaccurate information or those not dispensed to Members are credited in a timely fashion. All Prescriptions not received by a Member within fourteen (14) calendar days from original submission must be reversed.

Network Pharmacy Providers are responsible for ensuring all Covered Prescription Services are utilized by the Member (e.g. if a Drug Product is provided to a LTC Facility or Prescriber's office, the Network Pharmacy Provider must maintain an agreement that any unused Drug Product is returned to the Network Pharmacy Provider, in accordance with law, and/or Claims are reversed).

## S. Prohibition on Repackaging and Reimportation

Network Pharmacy Provider shall not submit and Administrator is not responsible for payment for (i) Claims for Covered Prescription Services using a NDC for a repackaged drug or (ii) Claims for Covered Prescription Services filled using drugs imported or reimported into the United States (U.S.).

## T. Use of Third Parties

Administrator may contract with third parties for Claims processing, eligibility, other duties or obligations Administrator is required to perform under the Agreement.

## U. 340(B) Program

To the extent Network Pharmacy Provider, during the term or any renewal term of the Agreement, is owned, operated or contracted with an eligible 340B Participating Entity to purchase outpatient Drug Products from drug manufacturers or wholesalers at reduced prices for use by eligible Members under the Public Health Service Act, Section 340(B) program, Network Pharmacy Provider shall immediately provide Administrator with written notice of such eligibility. The parties acknowledge/agree Administrator shall be entitled to modify the rates, fees, as well as other reimbursements offered to Network Pharmacy Provider hereunder in accordance with the PM and/or Agreement to the extent Network Pharmacy Provider becomes eligible to purchase Drug Products under the Public Health Service Act, Section 340(B) program. Failure of Network Pharmacy Provider to notify Administrator of its 340(B) eligibility as stated above shall constitute a material breach of the Agreement.

## V. Hospice

Beneficiaries in hospice may receive a PA rejection for analgesics, antianxiety, antiemetics and laxatives to determine if the Claim should be covered under the hospice benefit, Medicare Part D benefit or fall under the beneficiary's liability. Rejected Claims return codes A3, 75, 569 and include a custom message with the phone number to begin the A3 Rejection Override review process.

Network Pharmacy Providers should work with hospice providers or Prescribers to obtain written documentation of Drug Products medically necessary, but unrelated to the terminal illness or related conditions. This written documentation should then be sent to the Benefit Plan Sponsor (or Administrator, if review has been delegated) for A3 Rejection Override review. If the Prescriber determines the Drug Product is covered under the hospice benefit, the Network Pharmacy Provider should submit the Claim to the hospice provider identified by the Prescriber. If the Prescriber is unable to make the determination, the Network Pharmacy Provider should provide the standardized pharmacy notice and advise the beneficiary or Prescriber to contact the Medicare Part D Sponsor at the telephone number in the secondary message to initiate the coverage determination request. Network Pharmacy Providers may also initiate an A3 Rejection override for Members who are no longer in hospice by submitting written documentation to the Benefit Plan Sponsor (or Administrator, if review has been delegated).

## W. Dispensing Physicians

Dispensing physician's office should be limited to dispensing medications within the scope of their practice, dispensing must be limited to prescribers' own patients and there is no delivery or mailing of the medications. Patients must have the option to fill the prescription at a pharmacy of choice. Procedural requirements such as record keeping, copayment collection, medication labeling, storage requirements, purchasing, security and personal supervision will be the same as a retail pharmacy.

## X. Medication Synchronization

Medication Synchronization allows Members to refill all of their Prescriptions on the same day, eliminating the need for multiple trips to the Pharmacy each month. Prescriptions are filled for less than the normal prescribed day supply in order to align the refill date across multiple prescriptions, allowing all refills on the same day and time period.
State requirements vary on the Drug Products which can be included in the synchronization, as well as the types of plans which must comply with the regulations.
Network Pharmacy Providers may use Submission Clarification Codes (SCC) 47 or 48 to override the 'Refill Too Soon' rejection (i.e. Code 79) and/or 'DUR/DUPRX' rejection (i.e. Code 88) on Drug Products which qualify for synchronization.
- SCC 47 — Shortened Days' Supply Fill: Used to request an override to plan limitations when a shortened day supply is being dispensed.
- SCC 48 — Fill Subsequent to a Shortened Days' Supply Fill: Used to request an override to plan limitations when a fill subsequent to a shortened days' supply is dispensed.

Only Drug Products qualifying for synchronization and plans which have set-up this functionality will process using the SCC 47 and 48 codes. Exclusions may include Drug Products for acute therapy, unbreakable packages and controlled substances.

## Y. Submission of the Pharmacy's Cash Price as the U&C Price

Network Pharmacy Providers are required to submit all Claims via the POS System to Claims Processor for the cash price charged Members for all Covered Prescription Services dispensed to members as the Usual & Customary (U&C) price and to collect the applicable Cost-Sharing Amounts. The U&C, or cash, price is the amount charged to the general public at the time of dispensing for the same Drug Product including all applicable customer discounts, such as advertised or sale prices, special customer, senior citizen, frequent shopper, price matching, coupons or other discounts, a cash paying customer pays Network Pharmacy Provider for Drug Products, devices, products and/or supplies, including those which are offered by Network Pharmacy Providers without cost (e.g. a U&C of $0 should be submitted).

# Z. Contraceptive Services Only (CSO)

The Affordable Care Act (ACA) generally requires all non-evergreen health plans and health insurance issuers to cover certain preventive health services without cost-sharing when rendered in-network. This requirement includes a $0 cost-share coverage of at least one form of birth control in each of the FDA-approved female contraceptive methods shown in the Contraception section of the latest HRSA-supported Women's Preventive Services Guidelines (not all of which are relevant to a pharmacy benefit).

However, exemptions and accommodations are available to "Employer Class members" (as defined in a June 5, 2019 permanent nationwide injunction) that object to providing the mandated contraceptive coverage based on sincerely held religious beliefs.

| | |
|---|---|
| **For an Employer Class member who claims the religious exemption,** neither the employer nor the issuer/TPA provides coverage for some or all contraceptives to which the employer objects. | **For an Employer Class member who claims the now-optional accommodation** for some or all contraceptives, the objectionable coverage is: (a) excluded under the employer's standard benefit; and (b) covered under a separate CSO benefit by the issuer/TPA who agrees to contract with that employer. The employer must either: (a) provide the required notice of its religious objection to the issuer/TPA via this EBSA Form 700; or (b) notify HHS of its objection via this Model Notice to Secretary of HHS – HHS would then have to authorize the issuer/TPA to provide a separate CSO benefit to the employer's members. The employer does not contract, arrange, pay, or refer for the separate CSO benefit. |

- Members that have this CSO benefit, will have a CSO ID card, which contains the CSO carrier ID of EXMORX and BIN/PCN/Group: 610011/IRX/EXMORX. Contraceptives not covered under the CSO formulary will reject with code 70.
- A member has the right to appeal a denial for a contraceptive prescribed for birth control purposes through the OptumRx standard appeal process. Under a plan subject to the ACA's EHB requirements, a member has the right to request an exception review for coverage of clinically appropriate non-formulary contraceptives.

# VI.   BIN Information



As of the date of publication of this PM, the following is a list of BIN numbers administered by Administrator.
It is an all-inclusive list as of 2/1/2019 and is subject to change at any time. Please see Pharmacy help desk service contact information provided in Section II of this PM.

## A. OptumRx List 1: Prescription Bank Identification Numbers (RxBINs)

| 010876 |        | 016580 | 017366 | 017472 |
|--------|--------|--------|--------|--------|
| 600428 | 610084 | 610094 | 610097 | 610127 |
| 610279 | 610494 | 610613 | 016580 | 112233 |
| 017472 | 610613 | 610094 | 860917 |        |
| 017366 | 610084 | 610127 |        |        |

**OptumRx List 1 Payer Sheets**
The Administrator D.0 Payer sheets Related to Medicare Part D, Commercial and Medicaid are available on the health care professional's portal via professionals.optumrx.com > Resources > Payer sheets.

## B. OptumRx List 2: Prescription Bank Identification Numbers (RxBINs)

| 001553 | 003452 | 003650 | 004469 | 004519 |
|--------|--------|--------|--------|--------|
| 005757 | 005947 | 006524 | 007887 | 008878 |
| 009117 | 009951 | 010553 | 011149 | 011297 |
| 011321 | 011677 | 011792 | 011867 | 012163 |
| 012295 | 012502 | 012882 | 012924 | 013170 |
| 013907 | 014582 | 014681 | 014872 | 015383 |
| 015558 | 015756 | 015764 | 015789 | 015814 |
| 015962 | 016093 | 016143 | 017010 | 017911 |
| 018240 | 018643 | 600428 | 600471 | 601577 |
| 601683 | 603017 | 603286 | 610011 | 610014 |
| 610106 | 610118 | 610140 | 610170 | 610171 |
| 610182 | 610212 | 610527 | 610548 | 610550 |
| 610560 | 610593 | 610619 | 610621 | 610622 |
| 610623 | 610648 | 610652 | 610675 | 800010 |
| 610679 | 610704 |        |        |        |

**OptumRx List 2 Payer Sheets**
The following elements from the Member ID card must be submitted for successful Claims adjudication:
- Member identification number
- Person Code (when printed on card)
- RxGRP (when printed on card)
- BIN/Processor Control Number

*010876 For additional payer-specific required data elements for the above RxBINs, please refer to the applicable legacy Payer Specifications via professionals.optumrx.com > Resources > Payer sheets.*

*For Administrator D.0 Payer sheets Related to Medicare Part D, Commercial and Medicaid, click here.*

## C. OptumRx List 3: Prescription Bank Identification Numbers (RxBINs)

Please see OptumRx List 3: Prescription bank identification numbers (RxBINs) provided in the Workers' compensation and auto no-fault section of this PM.

## D. OptumRx Guide: Assists in Identifying the Appropriate BIN/PCN to Submit Claims

This is not a comprehensive list of BIN/PCN combinations and may change at any time. Please check the Member's ID card.

| Client name | Bin | PCN |
| --- | --- | --- |
| AARP MedicareComplete Essential (HMO); AARP MedicareComplete Choice Essential (PPO); AARP MedicareComplete Plus Essential (HMO-POS); | 610494 | 9999 |
| AARP MedicareRx Plans insured through UnitedHealthcare: AARP MedicareRx Preferred PDP; AARP MedicareRx Saver Plus PDP; AARP Welfare Plan | 610097 | 9999 |
| Acclaim (MME) | 601683 | * |
| Advocate Health Care | 610494 | 9999 |
| American Health Care | 014872; 018240; 610118 | * |
| Appalachian Regional Healthcare Systems | 610127 | 01960000 |
| Arizona Health Care Cost Containment System (AHCCCS) | 001553 | AZM |
| Atlantic Prescription Services | 610704 | * |
| Avia | 610550 | * |
| Blue Cross Blue Shield of Arizona | 603017 | * |
| CalPERS | 610097 | 9999 |
| Calvos | 003650 | 64 |
| Capital District YMCA | 610011 | NMHC |
| CareOregon | 610011 | CORMCARE; IRX |
| City of Milwaukee | 610097 | 9999 |
| Community and State (C&S) MMP of Ohio - Medicaid | 610494 | 9999 |
| Community and State (C&S) MMP of Ohio - Medicare | 610097 | 8500 |
| COMMUNITY HEALTH | 610613 | 2417 |
| Department of Veterans Affairs | 610593 | VA |
| Equian | 010553 | ALS; HT |
| Client name | Bin | PCN |
| FLEXSCRIPTS | 017472 | FLEXRX |
| Florida Health Care | 610593 | SXC; SXCFLH |
| Florida Share of Cost | 610494 | 2222 |
| Fred's Inc. | 610011 | FREDSIRX |
| GARDA | 610011 | NMHC |
| General Electric (GE) Care Clinics | 610494 | 9999; Grp: GECRX |

| | | |
|---|---|---|
| Health Alliance Plan of Michigan | 610011 | HAPAHL; HAPCOMM; HAPMEDD; HAPQAOFF; HAPQCOFF; HAPQHP1ON; HAPQHP4ON |
| Healthcare Solutions Inc. | 010876 | * |
| Healthesystems | 012874 | * |
| Helios/Tmesys processing with Envoy | 002538 | Envoy account number |
| IBC - Independence Blue Cross | 015814 | 06080000; 06090000; 06430000; 06440000 |
| | 610011 | CTRXMEDD |
| Kroger Prescription Plan | 012882 | KPP |
| LDI Integrated Pharmacy Service | 800010 | * |
| Innoviant Commercial | 610127 | 02330000; COSF; GASF; MASF; NCCSI; NCSF; NWSF; OHSF; SCCSI; SCSF |
| Various Clients | 017366; 017472; 610084; 610127; 610613 | * |
| | 610097 | *; 8500 |
| | 610494 | *; 2222; 9999 |
| Restat Client | 011149; 016093; 600471; 610171 | * |
| Maryland Medicaid | 610084 | RXSOLPRD |
| MaxCare Rx (PPOK) | 610170 | * |
| MedalistRx | 016580 | * |
| Medliance LLC | 610593 | BEI; MDL; MDLCOB; NC; OCRMDLPDMMDL |
| Milwaukee County | 610097 | 9999 |
| Client name | Bin | PCN |
| MPSERS | 610011 | CTRXMEDD |
| Multiple Clients | 003650 | Varies |
| Nevada Medicaid - HPES | 001553 | NVM |
| Nugget Markets | 610011 | NMHC |
| NYC Transit Authority | 610127 | 02330000 |
| Ohio Bureau of Workers Compensation | 610593 | OHBWC |

| OmedaRx | 610212 | *; 02300000; 02310000; 02320000; 02330000 |
|---|---|---|
| OmedaRx | 610622 | *; 02070000; 03000000; 03010000 |
| OmedaRx | 610623 | *; 02100000; 02110000; 02120000 |
| OmedaRx | 610648 | * |
| Other | 003452; 004469; 005757; 006524; 007887; 009117; 011297; 011321; 011677; 011792; 011867; 012163; 012295; 012502; 012924; 013907; 014582; 014681; 015383; 015558; 015764; 015789; 016143; 603286; 610014; 610140; 610182; 610560; 610619; 610652; 610675; 610679 | * |
| | 005947 | *; CLAIMCR |
| | 610011 | IRX |
| | 610097 | 9999 |
| | 610127 | 01960000; 02330000 |
| | 610494 | 5555; 9999 |
| | 610527 | *; VL |
| | 610593 | *; SXC |
| Oxford | 610279 | 9999 |
| Client name | Bin | PCN |
| PartnersRx Coupons | 610494 | 3333 |
| PBM Plus, Inc. | 610106 | * |
| Pennsylvania Public School Employees' Retirement System | 610097 | 9999 |
| Pharmastar, LLC. | 610593 | PRSMEDD |

| | | |
|---|---|---|
| Physicians Health Choice Basic (HMO); Physicians Health Choice Select (HMO SNP) | 610494 | 9999 |
| | 610097 | 9999 |
| Preferred Care Partners/The Villages | 610097; | 9999 |
| | 610494 | 9999 |
| Presbyterian | 610593 | PHPCC |
| ProAct | 017366 | 9999 |
| Publix Super Markets Inc | 005947 | CLAIMCR; PUBLIX |
| Ramsell Holding Corp (PMDC) | 004519 | * |
| Raytheon COB | 610127 | 04000001; 04000002; 04000004 |
| Rx Relief | 015756 | RELIEF; RXRELIEF |
| | 017911 | * |
| ScripNet | 610621 | * |
| SeniorScript | 013170 | * |
| SERV-U | 610548 | * |
| Sierra Medical Advantage Prescription Drug MAPD – Health Plan of Nevada | 610097 | 9999 |
| Simply Healthcare | 015789 | SIMPLY |
| SRPS (aka Helios) | 005567 | TPS |
| SRPS previously Third Party Solutions/TPS (aka Helios) | 005567 | TPS |
| State Health Plan of North Carolina (SHPNC) | 610097 | 9999 |
| State of Arkansas | 601577 | 0038 |
| State of Georgia Medicaid | 001553 | GAM |
| State of Indiana Medicaid | 001553 | INM |
| Steuben Area Schools | 610527 | VL |
| TeamStar Medicare Part D | 610097 | 9999 |
| Tennessee Health Management | 610127 | 01960000 |
| Transit Employees Health and Welfare Plan | 610097 | 9999 |
| Trust Plus | 009951 | * |
| TMESYS - (aka Helios); Helios formerly PMSI (aka Helios); | 004261 | CAL |
| U.S. Federal Claims | 004261 | FED |
| U.S. Postal Service | 004261 | USP |
| Client name | Bin | PCN |
| U.S. Virgin Islands Senior Citizens Affairs Pharmaceutical | 610097 | 9999 |
| UFCW | 003650 | 64 |
| UFCW of New Mexico | 601577 | 0038 |
| Union Pacific Railroad Employees Health Systems | 610011 | UE7316; NMHC; UPREHS |
| UnitedHealthcare | 610279 | *; 9999 |

| | | |
|---|---|---|
| UnitedHealthcare Insurance Company: Maryland (POS, EPO, PPO); UnitedHealthcare of the Mid-Atlantic: Maryland (HMO); MAMSI Life and Health Insurance Company: Maryland (EPO, POS); Optimum Choice, Inc.: Maryland (HMO) | 610279 | 9999 |
| UnitedHealthcare Employer and Individual – Contraceptive Services Only | 610279 | CONTRAC |
| UnitedHealthcare Medicare Complete (HMO) in New Jersey | 610097 | 8500 |
| UnitedHealthcare Community Plan of: Kansas; Louisiana; Michigan; Texas; UnitedHealthcare Community Plan Coordination of Long-Term Services (CoLTS); UnitedHealthcare Medicare Complete Essential (HMO); UnitedHealthcare MedicareDirect Essential (PFFS); Non-Part D Plans (MA and Retiree Drug Subsidy [RDS] only); UnitedHealthcare | 610494 | 9999 |
| UnitedHealthcare Community Plan of Ohio; Ohio Medicaid | 610494 | 4141 |
| "UnitedHealthcare Connected for MyCare Ohio (Medicare-Medicaid Plan)" | 610097 | 8500 |
| UnitedHealthcare Dual Complete (DH, DH-POS, DP, RDP); | 610097 | 9999; |
| UnitedHealthcare Dual Complete (HMO SNP) including, but not limited to, New York; Michigan; Wisconsin; Tennessee; UnitedHealthcare Nursing Home Plan ( IH, IH- POS, IP); UnitedHealthcare Senior Care Options in Arizona | 610097 | 9999 |
| UnitedHealthcare Medicaid Supplemental Plan | 610494 | 2222 |
| UnitedHealthcare MedicareRx for Group PDP | 610097 | 9999; |
| UnitedHealthcare Senior Care Options in Massachusetts | 610097 | 8500 |
| Walgreen Company | 018643 | PRACTIVES; WAGACTIVES |
| Welldyne | 008878; 015962 | * |
| World Trade Center | 004261 | WTC |
| Zenith, CA only | 004261 | ZEN |
| UnitedHealthcare Community Plan of Arizona | 610494 | 4100 |
| UnitedHealthcare Community Plan of California | 610494 | 4444 |
| UnitedHealthcare Community Plan of Florida | 610494 | 4300/4444/9999 |
| UnitedHealthcare Community Plan of Hawaii | 610494 | 4500 |
| UnitedHealthcare Community Plan of Kansas | 610494 | 9999 |
| UnitedHealthcare Community Plan of Iowa | 610494 | 4444 |
| UnitedHealthcare Community Plan of Louisiana | 610494 | 4040/4444/9999 |
| UnitedHealthcare Community Plan of Massachusetts | 610494 | 9999 |
| UnitedHealthcare Community Plan of Maryland | 610494 | RXSOLPRD |
| UnitedHealthcare Community Plan of Michigan | 610494 | 4242 |
| UnitedHealthcare Community Plan of Mississippi (CAN) | 610494 | 4646 |
| UnitedHealthcare Community Plan of Mississippi (CHIP) | 610494 | 4747 |
| UnitedHealthcare Community Plan of Nebraska | 610494 | 4444 |
| UnitedHealthcare Community Plan of New York | 610494 | 4800 |

| UnitedHealthcare Community Plan of Ohio | 610494 | 4141 |
| UnitedHealthcare Community Plan of Pennsylvania | 610494 | 4200 |
| UnitedHealthcare Community Plan of Rhode Island | 610494 | 4201 |
| UnitedHealthcare Community Plan of Texas | 610494 | 4400 |
| UnitedHealthcare Community Plan of Virginia | 610494 | 4900 |
| UnitedHealthcare Community Plan of Washington | 610494 | 4600 |
| UnitedHealthcare Community Plan of New Jersey | 610494 | 4343 |



# VII.  Medicare Product Information and Guidelines

OPTUMRx®

## A. Excluded Drugs

As of the date of the printing of this PM, certain types of Drug Products or categories of Drug Products are not normally covered by MA-PD Benefit Plans. These Drug Products are not considered Medicare Part D Drug Products and may be referred to as "exclusions" or "non-Part D Drug Products."
The following are Drug Product classes or categories of Drug Products excluded from Part D coverage with examples of Drug Products within each class.

- Prescription vitamins and mineral products, with the exception of Formulary prenatal vitamins and fluoride preparations.
  - Examples: Ascorbic Acid, Folic Acid, Vitamin B

- Agents when used for anorexia, weight loss, or weight gain; even if used for non-cosmetic purpose (i.e. morbid obesity).
  - Examples: Meridia, Phentermine

- Agents when used to promote fertility.
  - Examples: Clomiphene Citrate, Follistim, Gonal-F

- Agents when used for cosmetic purposes or hair growth.
  - Examples: Botox Cosmetic, Hydroquinone, Lustra, Propecia, Renova

- Agents when used for the symptomatic relief of cough and colds.
  - Examples: Benzonatate, Tessalon

- Nonprescription or over-the-counter (OTC) drugs (with the exception of Insulin and associated medical supplies).
  - Examples: Aspirin, Sudafed, Tylenol

- Less-Than-Effective Medicaid Drug Efficacy Study Implementation (DESI) Drug Products.
  - Examples: Anucort HC, Tigan Suppositories

- Agents when used for the treatment of sexual or erectile dysfunction. Examples: Viagra, Cialis, Levitra and Caverject

- Covered outpatient Drug Products for which the manufacturer seeks to require that associated tests or monitoring services be purchased exclusively from the manufacturer as a condition of sale.

- End-Stage Renal Disease (ESRD) agents furnished to ESRD patients on dialysis.
  - Examples: Iron, Calcitriol, Doxercalciferol

- Agents without New Drug Application (NDA) or Abbreviated New Drug Application (ANDA) with the FDA.

- Any brand agent for which the manufacturer has not agreed to participate in the 50% gap discount program (i.e. labeler code agreement).

- Drug Products related to terminal illness furnished to Hospice patients.
  - Examples: analgesics, anti-anxiety drugs (anxiolytics), antiemetics and laxatives

- Compounded Drugs that contain at least one ingredient covered under Medicare Part B.

- Bulk ingredients/powders used in Compounded Drugs.

- Self-administered oral anti-cancer agents with the same active ingredients and indications as chemotherapy agents administered as incident to a Prescriber's professional service.



o   Examples: Temodar, Xeloda

Many of the Benefit Plans the Administrator support may cover Medicare Part D-excluded Drug Products through additional separate coverage.

For more information, please contact customer service at the phone number provided on the back of the Member's ID card.

## B. Medicare Part A/B/D Coordination of Benefits (COB)

Some Drug Products may be billed to either the Medicare Part A (if a Member is an inpatient), Part B or Part D benefit, depending on the intended use and other factors. Drug Products may be covered in one (1) of three (3) ways:
- Under Medicare Part A if Member is an inpatient or has elected Hospice; or
- Under Medicare Part B; or
- Under MA-PD Benefit Plan in conjunction with Medicare Part D.

Drug Products will never be covered through Medicare Parts A/B and the Medicare Part D PDP at the same time. Online messaging (e.g. "COVERED UNDER PART B, BILL MEDICARE") is provided at the point of service. When it is not clear which coverage applies, the prior authorization process should be initiated in order to determine the appropriate coverage.

Coverage determination is required when Members with a MA-PD use insulin administered in a pump. When submitting an insulin Claim for a Medicare Advantage Member, you will receive the following message: "Part B if pump, call 1-800-711-4555." To ensure Claims are paid under the correct benefit, please notify the Prescriber and Medicare Advantage Member the review is required to determine coverage when insulin is administered in a pump.

**Insulin administered in a pump:**
Claims for Medicare Advantage Members, who use a pump to administer their insulin, should pay under the Medicare Part B benefit. Please see Prior authorization (PA) service contact information provided in Section II of this PM and ask Prescriber to initiate a coverage determination. The Medicare Advantage Member may also initiate a coverage determination by calling the customer service number on the back of the Member ID card.

**Insulin self-administered without a pump:**
Medicare Advantage Members who do not use a pump to administer their insulin do not need to a request a coverage determination. Their Claim will automatically pay appropriately under their Medicare Part D benefit.
MA-PD Plan Claim responses will have benefit stage qualifier values that have been approved through the NCPDP External Code List (ECL) process. These qualifier values will allow pharmacies to identify Medicare MA-PD Plans that offer additional benefits besides Part D covered Drug Products:

- The Medicare Advantage (MA) portion of the MA-PD Plan = Benefit Stage Qualifier (393-MV) value of "50" (Not paid under Part D, paid under Part C benefit (for MA-PD Plan). Value "51" – Not paid under Part D paid under Part C benefit (for MA-PD plan). Beneficiary is a Qualified Medicare Beneficiary - pharmacy should not attempt to collect cost-share, but instead should attempt to bill COB to Medicaid coverage.
- Employer Group Waiver Plans (EGWPs) and supplement plans where Part D and non-Part D supplemental benefits are co-administered = Benefit Stage Qualifier (393-MV) value of "60" (Not paid under Part D, paid as or under a supplemental benefit only).
- Part D Drug Product not paid by Part D Benefit Plan, paid as or under a co-administered benefit only = BSQ (393-MV) value of "61".
- Non-Part D / Non-qualified Drug Product not paid by Part D Benefit Plan, paid as or under a co-administered benefit only = BSQ (393-MV) value of "62"
- Negotiated Price Non-Formulary Part D Drug Product = Benefit Stage Qualifier (393-MV) value of "70" (Part D Drug Product not paid by Part D Benefit Plan, paid by the beneficiary under Benefit Plan negotiated pricing).
- Negotiated Price Non-Part D Drug Product = Benefit Stage Qualifier (393-MV) value of "80" (Non-Part D Drug Product not paid by Part D Benefit Plan, paid by the beneficiary under Benefit Plan negotiated pricing).
- Enhanced or OTC drug not applicable to the Part D Drug Product spend, but is covered by the Part D Benefit Plan = BSQ (393-MV) value of "90".

- These benefit stage qualifiers are not applicable to standalone MA Benefit Plans and PDP Benefit Plans, these plans will have separate 4Rx since they may be sold independently (a beneficiary can choose to use a MA product from one Medicare sponsor and a PDP product from another Medicare sponsor).

## C. Medicare Part D Clean Claim Determination

All claims submitted by Pharmacies for Medicare Part D Drug Products are submitted by Medicare Part D Sponsor to CMS as Prescription Drug Events (PDE). In the event that CMS rejects or retro-actively denies a PDE because the PDE is not consistent with CMS instructions, guidance, regulations or applicable law, the underlying Claim may be deemed not a Clean Claim and such Claim may be reversed by Administrator on behalf of Medicare Part D Sponsor. In addition, if a Medicare Part D Sponsor's PDE is not accepted by CMS due to any fault by a Network Pharmacy Provider, Administrator shall have the right to recoupment from the Network Pharmacy Provider.

For example, including the following but not limited to, per section 1927(k)(2) of the Social Security Act and 21 USC 535, to be covered under Medicare Part D, Drug Products must be dispensed only upon a Prescription of a health care provider who has the authority to prescribe Drug Products. Accordingly, PDE records submitted to CMS by a Medicare Part D Sponsor that were derived from Prescriptions by an unauthorized individual are non-Clean Claims for payment and may be rejected or reversed by Administrator on behalf of Medicare Part D Sponsor in accordance with CMS instructions, guidance, regulations, or applicable law.

## D. Medicare Part D Coverage Determination

Coverage determinations are requests to provide coverage for Drug Products under the Part D benefit. Exception requests are a specific type of coverage determination to waive coverage restrictions or limits applied through PA, step-therapy, quantity limits and Medicare Part A/B/Part D COB. The Member, Member's appointed/authorized representative, Prescriber or other authorized Prescriber may request a covered determination.

If the Medicare Part D Sponsor approves a coverage determination exception request, the approval is valid for the remainder of the plan year, unless clinically inappropriate or unnecessary, so long as the Prescriber continues to prescribe the Drug Product and it continues to be clinically appropriate and necessary, safe and effective for treating the Member's condition. If the exception request results in an adverse coverage determination, a Member, Member's appointed/authorized representative, Prescriber or other authorized Prescriber may appeal the decision by calling the Customer Service number listed on his or her Member ID card or may follow the appeals process as provided in the coverage determination notice of denial.

## E. Permissible prescriber identifiers for Medicare Part D claims

For Medicare Part D and Medicaid Claims:

- Network Pharmacy Providers should submit a Prescriber NPI on all Part D and Medicaid Claim submissions. Claim submissions without a Prescriber ID will result in a Claim rejection with code 'EZ — Missing/Invalid Prescriber ID.
- Organizational NPIs should not be submitted.
- NPI should be submitted using an individual NPI that is valid on the Date of Service (DOS) for the Claim. Claims submitted without a valid individual Prescriber NPI will reject with NCPDP Reject Code 619 — Prescriber Type 1 NPI Required, or 56 — "NPI EXISTS. PRESCRIBER ID INVALID/NOT ALLOWED" and the corresponding NPI number may be provided for use when resubmitting the Claim.
- Prescribers with a current exclusion list sanction (i.e. Office of Inspector General's (OIG) — U.S. Department of Health & Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE), as well as General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS)) will be rejected.
- Prescriptions written for controlled substances: Administrator will reject Claims where the Prescriber being submitted on the Claim does not have the authority to write for the schedule Drug Product being prescribed.
- SCCS rejection codes.



Additionally, it is critical that you enter the correct Prescriber DEA and NPI numbers because Administrator sends correspondence (such as the Clinical Programs described in Section I below) to providers based on pharmacy Claims. Providing incorrect provider information can lead to privacy incidents and endanger Member safety.

## F. Coverage Determination Timeframes

**Standard Coverage Determination**
Provided within seventy-two (72) hours of receipt of the request or for an exceptions request, 72 hours after receipt of the Prescriber supporting statement. If the Medicare Part D Sponsor has not provided an answer within 72 hours after receiving a request, or, for an exceptions request, 72 hours after receipt of the Prescriber's supporting statement, the request will be automatically forwarded to an independent organization called an Independent Review Entity (IRE) for review.

**Expedited Coverage Determination**
Provided no later than twenty-four (24) hours of receipt of the request, or, for an exceptions request, 24 hours after receipt of the Prescriber's supporting statement. If the Medicare Part D Sponsor has not provided an answer within 24 hours after receiving a request, or, for an exceptions request, 24 hours after receipt of the Prescriber's supporting statement, the request will be automatically forwarded to an independent organization called an Independent Review Entity (IRE) for review.

## G. Submit all Claims; Claims Adjustments

Network Pharmacy Providers shall at all times submit Part D Covered Prescription Services to Medicare Drug Plan Members via the POS System to Claims Processor and furnish Part D Covered Prescription Drugs in a manner that permits the Part D Sponsor to comply with Medicare laws and regulations. Failure to submit all Part D Covered Prescription Services may impact Part D Sponsor's STAR ratings as well as individual Medicare Drug Plan Member's benefit calculations. Medicare Part D Claim adjustments:

- Network Pharmacy Providers will be unable to reverse Medicare Part D Claims that have been reprocessed internally by Administrator. This is necessary because Claim adjustments have been made and if a financial adjustment was owed to the Member or LTC pharmacy, then a reimbursement process has already been initiated. Pharmacies attempting to submit reversal requests on Claims that have been reprocessed by Administrator will receive a NCPDP Rejection stating — "CLAIM NOT ELIGIBLE FOR REVERSAL. CONTACT HELP DESK FOR ASSISTANCE".
- If there is a need to resubmit Claims due to incorrect Medicare Part D Low Income Subsidy (LIS) level, please contact customer service.
- In the Medicare Prescription Drug Benefit Manual, Chapter 14, CMS has acknowledged the use of free or discounted drug programs and indicated claims must be submitted by Network Pharmacy Providers to allow for accurate reporting of Medicare Drug Plan and Member paid amounts.  Please review section Submission of Pharmacy's Cash Price as the U&C Price within this Provider Manual for additional information.  Please ensure that claims for $0 prescription drug costs are submitted, unless the Member specifically requests that the claim not be processed using his/her prescription drug benefit.

As permitted by the Centers for Medicare & Medicaid Services (CMS), Network Pharmacy Provider does not collect Member Cost-Sharing due to the presumption of Medicaid entitlement due to institutional status of the Member. Network Pharmacy Provider certifies that as a condition for reimbursement from Administrator for claims in which the Medicare Part D Cost-Sharing has been reduced or waived:

- Long Term care (LTC) is defined as patient residence codes 03-Nursing Facility/LTC and 09-Intermediate Care facility/Mentally Disabled ONLY.
- Network Pharmacy Provider has not and will not collect Cost-Sharing Amounts from the Member (or any other party who paid on the Member's behalf); or Network Pharmacy Provider has otherwise waived the same Cost-Sharing Amounts for the Member (or any other party who paid on the Member's behalf);

- In the event that the Network Pharmacy Provider did collect a cost sharing amount from the member and also received reimbursement from OptumRx (ORx), the Network Pharmacy Provider is expected to reimburse the member or their representative within 45 days of receiving refund.
- Network Pharmacy Provider is in fact carrying a debt for the amounts incorrectly charged to Members;
- The amounts reimbursed are appropriate, owed and payable in accordance with applicable federal and state requirements;
- Network Pharmacy Provider shall retain the appropriate documentation/records to establish these certifications, including for purposes of an audit.

# H. Coverage Limitations

A Drug Product is Medicare Part D if it is used for a medically accepted indication as defined in the Medicare regulations and implementing guidance. This definition includes prescribed uses supported by a citation included, or approved for inclusion, in one (1) of the following four (4) compendia:

- American Hospital Formulary Service Drug Information
- DRUGDEX Information System
- National Comprehensive Cancer Network(NCCN)
- United States Pharmacopeia and The National Formulary (USP-NF)

Based on this regulatory definition, indications supported in peer reviewed medical literature are not "medically accepted" if they are not yet included, or approved for inclusion, in one of the compendia. Therefore, the use of a Drug Product for such indications would not meet the definition of a Medicare Part D Drug Product and the Drug Product would not be a Covered Prescription Service under the Benefit Plan, even if the Member's Prescriber states that the Drug Product is medically necessary.

The following additional coverage limitations may apply:

- Early refills for lost, stolen or destroyed Drug Products are not covered except during a declared "National Emergency."
- Early refills for vacation supplies may be limited to a one (1) time fill of up to thirty-one (31) days per calendar year according to Benefit Plan.
- Drug Products will not be covered if prescribed by Prescribers that are excluded from Medicare program participation (unless they have an approved waiver on file with the OIG. These occurrences are very rare).
- A Member may refill most Prescriptions when a minimum of seventy-five percent (75%) of the quantity is consumed based on the number of days supplied. This minimum quantity consumed amount is seventy percent (70%) for eye drops.

# I.  Medication Therapy Management (MTM)

Consistent with the Medicare Modernization Act (MMA) requirements for MTM, the Benefit Plan provides MTM for eligible plan Members at no additional cost to the Members. This program is designed to ensure that Members get the most medically appropriate, safe and cost effective Drug Products. It focuses on improving Drug Product use and reducing adverse Drug Product events.

**MTM Eligibility**
CMS requires that MTM be offered to Members who have multiple chronic diseases, take multiple chronic/ maintenance Medicare Part D covered Drug Products, and are likely to incur annual costs of $4,255 for covered Medicare Part D Drug Products. Each plan is to define the number and type of chronic diseases and number of Medicare Part D Drug Products to include in the MTM.

The criteria are as follows:
1. Member must have two (2) to three (3) chronic diseases being the maximum number the Administrator may require. The following are examples of chronic diseases:
   a. Hypertension

b. Chronic heart failure
c. Diabetes
d. Dyslipidemia
e. Osteoporosis or Rheumatoid arthritis (targeted disease is plan specific)
2. Member must take multiple chronic Medicare Part D covered Drug Products.
3. Member must be identified as likely to incur annual costs of $4,255 for Medicare Part D covered Drug Products.
The Benefit Plan identifies and invites Medicare Part D Members who meet the criteria to take part in the MTM.

**Scope of MTM Services**
The scope of the MTM services is determined by each Medicare Part D Benefit Plan. In selecting MTM services, Administrator complies with all CMS regulations and also considers the potential impact of each service on maximizing therapeutic outcomes. Therefore, the selected services exemplify the best practices stated in the MMA and can potentially impact clinical outcomes. The MTM includes, but is not limited to:
• Providing patient and prescriber education.
• Performing an annual comprehensive medication review (CMR) which consists of an interactive, person-to-person consultation with a Pharmacist or qualified provider.
• Providing an individualized written summary with action plan and recommendations.
• Performing quarterly targeted Drug Product reviews on an ongoing basis.

**MTM Enrollment Process**
The MTM Program is offered at no cost to qualifying Medicare Part D Members. Members who do not want to participate may opt out of the entire MTM program or any of its components. Administrator reviews the available medical and pharmacy Claims data to determine MTM eligibility. In the absence of medical Claims data, a Drug Product proxy tool may be used for verification of diagnosis.

**MTM Reimbursement for Network Pharmacy Providers**
As of the date of the publication of this PM, Administrator is solely responsible for designing, developing and implementing MTM related clinical services on behalf of its Clients and Benefit Plan Sponsors. Network Pharmacy Providers are reimbursed for completion of case work through the OptumRx MedMonitor(TM) portal.

## J. Medicare Part D Transition Policy

Under certain circumstances, we are required to cover a temporary supply of a drug that is not on the Benefit Plan's Formulary or is subject to Benefit Plan requirements or restrictions to avoid a gap in therapy.
The Member may be eligible to receive a temporary transition supply of the Drug Product.   A transition fill is allowed for at least thirty (30) days or plan's month supply (whichever is greater) at any time during the first ninety (90) days of Membership for new members or the first (90) days of the calendar year for existing members unless the Prescription is for an unbreakable package. If the prescription is for an unbreakable package, please refer to the Unbreakable Packages section.  The prescription may be filled at a network pharmacy.

The Medicare Part D Sponsor provides notice to its Members and their Prescriber(s) who receive a transitional supply of a Drug Product. This notice is sent by U.S. mail within three (3) business days of the temporary fill. It includes:
• An explanation of the temporary nature of the transitional supply.
• Instructions for working with the Benefit Plan Sponsor and the Prescriber to identify appropriate Formulary alternatives.
• An explanation of the Member's right to request an exception.
• A description of the procedures for requesting an exception.
Network Pharmacy Providers receive an electronic notice of a temporary transition fill via the POS System. If the exception is approved, the Member will be able to obtain the Drug Product for a specified period of time.

After the initial temporary transition supply of at least thirty (30) days or plan's month supply (whichever is greater) the Benefit Plan Sponsor may not continue to pay for these Drug Products under the transition policy. The Member should discuss appropriate alternative therapies on the Formulary with the Prescriber. If there are no alternatives, the Member and Prescriber may request a PA.

OPTUMRx

There may be unplanned transitions such as hospital discharges or level-of-care changes. If the Member is prescribed a Drug Product that is not on the Formulary or the ability to get a Drug Product is limited, the Member may request a level-of-care transition supply of at least thirty (30) days or plan's month supply (whichever is greater) (unless the Prescription is written for fewer days) for each level of care change to allow time to discuss alternative treatments with his or her Prescriber or to pursue a PA.

## K. Medicare Part D Transitioning LTC Facility Residents

If the member is a resident of an LTC facility, the Medicare Part D Sponsor will also cover a temporary transition supply. A transition fill is allowed for at least thirty-one (31) days or the plan's month supply (whichever is greater) at any time during the first ninety (90) days of Membership in the Member's Medicare Part D Plan unless the Prescription is for an unbreakable package. If the Prescription is for an unbreakable package, please refer to the Unbreakable Packages section.

If the Member needs a Drug Product that is not on the Formulary or the Member's ability to get the Drug Product is limited, but the individual has been a Member of the Plan for more than ninety (90) days, the Plan may cover at least thirty-one (31) days or plan's month supply (whichever is greater) unless the Prescription was written for fewer days or the Prescription is for an unbreakable package. If the Prescription is for an unbreakable package, please refer to the Unbreakable Packages section. The plan may also allow an extension of the transition period while the Member pursues a PA.

There may be unplanned transitions such as hospital discharges or level-of-care changes. If the Member is prescribed a Drug Product that is not on the Formulary or the ability to get a Drug Product is limited, the Member or you as their pharmacy may request a level-of-care transition supply of at least thirty-one (31) days or plan's month supply (whichever is greater) (unless the Prescription is written for fewer days) for each level of care change to allow time to discuss alternative treatments with his or her Prescriber or to pursue a PA. Contact the OptumRx pharmacy helpdesk for a level-of-care transition supply override if the member is being discharged with the prescribed Drug Product.

## L. Unbreakable Packages

Drug Products in "unbreakable packages" must be dispensed in their original container/package and cannot be opened or broken. Please submit these Claims with a day supply consistent with the dosing instructions on the Prescription. Claims for Drug Products in unbreakable packages will:
- NOT be rejected if the days' supply exceeds contractual plan limitations.
- May be rejected if the submitted days' supply is inconsistent for dosing instructions.

If a Claim may be submitted with fewer packages or a smaller package size, the Claim may reject with "7X – Day's Supply > Plan Limitation." The Claim messaging will advise of next steps to process the Claim:
1. Use the smallest package size (the Claim can be filled using a smaller unbreakable package).
   - Please resubmit Claim using this Drug Product in a smaller package size.
2. Submit fewer unbreakable packages.
   - Please adjust the quantity or days supply to accurately account for dosing instructions.

Transition eligible Drug Products in unbreakable packages can be dispensed in excess of the limitations described in Sections "Medicare Part D transition policy" and "Medicare Part D transitioning LTC facility residents". If the Member is eligible for a full or partial transition supply, messaging may state "For CMS Transition, resubmit with remaining day supply of [#] or less." Resubmit the Claim with the smallest package size or fewest unbreakable packages that provides at least the transition day supply remaining.

## M. LTC Facility Information to be Provided Upon Termination

When a Network Pharmacy Provider no longer participates in the Administrator Pharmacy Network, including, but not limited to, a voluntary or involuntary termination, Network Pharmacy Provider shall comply with the Benefit Plan Sponsors transition of care policies and procedures. Within five (5) business days of the termination notice and upon request

OPTUMRx

thereafter, Network Pharmacy Provider shall provide to Administrator a list of LTC facilities to which Network Pharmacy Provider provides services for Members receiving Part D benefits through the Medicare Part D Sponsor. The list shall contain i) Pharmacy Information, including Pharmacy Name, Pharmacy NCPDP #, Pharmacy Address, LTC Facility Name, LTC Facility Address and LTC Facility Phone Number and ii) a Member list by Facility, including each Member's Name, ID# and DOB.

## N. Short-Cycle-Dispensing (SCD) Processing for LTC

CMS issued a final rule that calls for the dispensing of Brand Name Drugs in fourteen (14) days or less increments to Medicare Part D Members residing in LTC facilities.

LTC Pharmacies may bill a short cycle claim for greater than a 14 day supply. However, you must dispense a short cycle prescription with a 14 day supply or less.

The ruling seeks to reduce Waste by minimizing unused Drug Products for the Medicare Part D program. Solid oral dosage Brand Name Drug is the only formulations affected by this ruling. Antibiotics in all forms, prepackaged Drug Products and liquid Drug Product formulations are exempt.

Member Cost-Sharing Amounts will be prorated based on the day supply.

 For example, if the Member has a $30 copay for a 30-day supply, the Member will pay $14 for a fourteen (14) day supply.

 When submitting Claims that are subject to the short-cycle regulations, providers must ensure that all of the following fields are submitted:

| NCPDP field name | NCPDP field ID | Appropriate value for SCD claims |
|---|---|---|
| Patient residence | 384-4X | 03 |
| Submission clarification code | 354-NX | See below |
| Special packaging indicator | 429-DT | See below |

**Valid Submission Clarification Code and Special Packaging Indicator Combinations**

| NCPDP field name | NCPDP field ID (SCC2) | Appropriate value for SCD claims | Outcome |
|---|---|---|---|
| 14 | 22-29 | 1-8 | Processed |
| 14 | 33-35 | 1-8 | Processed |
| 15 | 22-29 | 1-8 | Processed |
| 15 | 33-35 | 1-8 | Processed |
| 16 | | 1-8 | Processed |
| 16 | 18 | 1-8 | Processed |
| 16 | 22-29 | 1-8 | Processed |
| 16 | 32 | 2-8 | Processed |
| 16 | 33-35 | 1-8 | Processed |
| 17 | 22-29 | 1-8 | Processed |
| 17 | 32 | 2-8 | Processed |
| 17 | 33-35 | 1-8 | Processed |
| 18 | 16 | 1 | Processed |

| | | | |
|---|---|---|---|
| 18 | 22 | 1-8 | Processed |
| 18 | 23-35 | 1-8 | Processed |
| 22 | | 1-8 | Processed |
| 22 | 18 | 1-8 | Processed |
| 23 | | 1-8 | Processed |
| 23 | 18 | 1-8 | Processed |
| 24 | | 1-8 | Processed |
| 24 | 18 | 1-8 | Processed |
| 25 | | 1-8 | Processed |
| 25 | 18 | 1-8 | Processed |
| 26 | | 1-8 | Processed |
| 26 | 18 | 1-8 | Processed |
| 27 | | 1-8 | Processed |
| 27 | 18 | 1-8 | Processed |
| 28 | | 1-8 | Processed |
| 28 | 18 | 1-8 | Processed |
| 29 | | 1-8 | Processed |
| 29 | 18 | 1-8 | Processed |
| 30 | | 6-8 | Processed |
| 30 | 18 | 6-8 | Processed |
| 31 | | 6-8 | Processed |
| 31 | 18 | 6-8 | Processed |
| 32 | | 2-8 | Processed |
| 32 | 18 | 2-8 | Processed |
| 33 | | 1-8 | Processed |
| 33 | 18 | 1-8 | Processed |
| 34 | | 1-8 | Processed |
| 34 | 18 | 1-8 | Processed |
| 35 | | 1-8 | Processed |
| 35 | 18 | 1-8 | Processed |

Claims submitted with an invalid clarification code and special package indicator combination will be rejected with one of the following codes:

- 597 — LTC dispensing type does not support packaging type
- 613 — The packaging methodology or dispensing frequency is missing or inappropriate for LTC short-cycle The following fields must be completed on the Claim submission form:
- Patient qualification — patient residence
- Claim qualification — submission clarification code, special packaging type

The combination of values for these Claim qualifications are defined by CMS and the National Council for Prescription Drug Programs (NCPDP) and are not user-definable. If an NCPDP defined combination is not submitted correctly by the pharmacy, the Claim will be rejected with the 613 code.

If the LTC has submitted the Claim according to the above guidelines and receives a 597 code, then the LTC may resubmit the Claim with Submission Clarification Code 21 and SPI 1 or 3 to bypass the edit.

## O. Daily Cost Share (DCS)

Network Pharmacy Providers will be responsible for costs associated with erroneously submitted Claims. Incorrect and erroneously submitted Claims are non-Clean Claims.

In response to CMS requirement pursuant to 42 CFR section 423.153(b)(4)(i), Medicare Part D Sponsors must apply a DCS rate when certain Prescriptions are dispensed by a Network Pharmacy Provider for less than a one (1) month supply. As a result, Medicare Part D Sponsors will be able to apply a lower, prorated Cost-Sharing Amount when the Prescription is dispensed, which may:
- Lower costs to Members for trial fills for less than one (1) month supply.
- Facilitate synchronization of Prescriptions through reduced Cost-Sharing.
- Reduce instances of unused Covered Prescription Services.

DCS requirement applies to the first fills/refill sync and any fill of less than one (1) month, unless the Drug Product is exempt for any of the following:
- Antibiotics and Drug Products dispensed in their original container as indicated in the FDA prescribing information.
- Drug Products dispensed in their original packaging to help Members with compliance.

The following submitted clarification codes may be used to override 'Refill Too Soon' rejections to synchronize fills related to DCS:
- 47: Overrides Refill Too Soon for prorated Claims.
- 48: Overrides the next Claim after the prorated Claim with a shortened supply to less days because of the prior Claim.

## P. Medicare Part D Sixty (60) Day Negative Formulary Change Notice

Notice of Negative Formulary changes will be available online and disseminated periodically through Faxblast Communication to Network Pharmacy Providers sixty (60) days prior to the removal or adverse change in the preferred or tiered Cost-Sharing status of a Medicare Part D drug. In certain cases for FDA market withdrawals, the notice may or may not be retrospective. The posting will include:
- The name of the affected covered Medicare Part D Drug Product.
- Information on whether the covered Medicare Part D Drug Product is being removed from the Formulary, or adversely changing its preferred or tiered Cost-Sharing status.
- The reason why the covered Medicare Part D Drug Product is being removed from the Formulary, or changing its preferred or tiered Cost-Sharing status.
- Alternative Drug Product in the same therapeutic category, class or Cost-Sharing tier, and the expected
- Cost-Sharing for that Drug Product; the means by which Members may obtain an updated coverage determination or an exception to a coverage determination.

Affected Members will also be notified in the Explanation of Benefits (EOB) about a Formulary change sixty (60) days before it takes effect.

## Q. Medicare Part D Annual Notice of Change for Continuing Members

Each fall, Members receive an Annual Notice of Change (ANOC) packet from their Medicare Part D Sponsor. Packet materials identify changes in the benefit for the coming year. Changes explained in the packet become effective January 1 and will apply through December 31 of the upcoming plan year.

A Member may notice that a Formulary Drug Product he or she is currently taking is either not on the upcoming year's Formulary, Cost-Sharing has changed, or coverage is limited in the upcoming year.

If the Member is unable to transition to another product prior to the new benefit year, the Member will be entitled to a one (1) time transition fill during the first ninety (90) days of the new benefit year.

## R. Best Available Evidence (BAE)

**All Pharmacy Types EXCLUDING LTC Providers**
If a member questions their Cost-Sharing Amount, or states they qualify for federal subsidy or "extra help," they must have valid supporting documentation in order to receive the lower Cost-Sharing Amount. Any of the following documents are acceptable and meet the criteria as Best Available Evidence (BAE) to support a Member's qualification for federal subsidy:

- A copy of the beneficiary's Medicaid card that includes the beneficiary's name and eligibility date status during a month which occurred after June 30 of the previous calendar year;
- A copy of a State document that confirms active Medicaid status during a month which occurred after June 30 of the previous calendar year;
- A printed document from the State electronic enrollment file showing Medicaid status during a month which occurred after June 30 of the previous calendar year;
- A screen print from the State's Medicaid systems showing Medicaid status during a month which occurred after June 30 of the previous calendar year;
- Other documentation provided by the State or CMS showing Medicaid status during a month which occurred after June 30 of the previous calendar year;
- A copy of the Social Security Administration (SSA) award letter for those individuals who are not deemed eligible, but who apply for and are found to be Low Income Subsidy ("LIS") eligible.



To correct a Member's subsidy level utilizing BAE, please secure one (1) of the above documents from the Member and contact Customer Service at the phone number provided on the back of the Member's ID card.

- Provided the documentation received meets the BAE criteria, the Member's Cost-Sharing Amounts will be adjusted within forty-eight (48) to seventy-two (72) hours of receipt of BAE documentation.
- Reprocess the Prescription(s) to capture the lower copayment amount.
- If you have any questions on BAE, please contact Customer Service at the phone number provided on the back of the Member's ID card.

**LTC Providers ONLY**
If a Member questions their Cost-Sharing Amount, or states that they qualify for the institutional status zero (0) Cost-Sharing, they must have valid documentation supporting this position in order to receive the zero (0) copayment amount. Any of the following documents are acceptable and meet the criteria as Best Available Evidence (BAE) supporting a Member's institutional status and qualification for zero (0) Cost-Sharing:

- A remittance from the facility showing Medicaid payment for a full calendar month for the beneficiary during a month after June 30 of the previous calendar year;
- A copy of the state document that confirms Medicaid payment for a full calendar month for the beneficiary during a month after June 30 of the previous calendar year;
- A screen print from the State's Medicaid systems showing the beneficiary's institutional status for at least a full calendar month stay for Medicaid payment purposes during a month after June 30 of the previous calendar year.

To correct a Member's subsidy level utilizing BAE, please secure one (1) of the above documents from the Member and contact Customer Service at the phone number provided on the back of the Member's ID card.



- Provided that the documentation received meets the BAE criteria, the Member's copayment will be adjusted within forty-eight (48) to seventy-two (72) hours of receipt of BAE documentation.
- Reprocess the Prescription(s) to capture the lower copayment amount.
- If you have any questions on BAE, please contact Customer Service at the phone number provided on the back of the ID card.

## S. Part D Mail Order, Home Delivery or Other Automatic Delivery Program

**Initial/New Prescriptions**

CMS guidance states that Network Pharmacy Providers who are contracted to offer Mail order, home delivery or other automatic delivery programs are required to obtain Member or Member's appointed/authorized representative consent prior to delivery if the Prescription was electronically transmitted (i.e. by fax or electronic Prescription) directly to the Pharmacy and if the Member has not had previous Mail order, home delivery or automatic shipment experience with that Pharmacy. If the Member has experience using Mail order or other automatic delivery programs at the Pharmacy, they do not need to establish additional consent.

Any paper Prescription submitted by the Member or Member's appointed/authorized representative to the Pharmacy means the Member is electing to have the Prescription order(s) filled at the Pharmacy, so separate consent is not required. In other words, the act of submitting or Mailing a Prescription by the Member or Member's appointed/ authorized representative demonstrates consent.

Network Pharmacy Providers are required to maintain documentation showing the Member or Member's appointed/authorized representative consent to fill the Prescription or a history of previous Mail order, home delivery or automatic shipment experience with the Pharmacy. This documentation should be made available to the Administrator or Medicare Part D Sponsor upon request.

Be aware that when dispensing Part B covered drugs or supplies to Medicare Advantage Plan Members who have Full Medicaid, also known as Traditional Medicaid (including SLMB+), but where the Member is not located in the same state as the Pharmacy, that the Part B copay cannot be collected from the Member if they have qualifying Medicaid coverage for the service. This is the case even if the Pharmacy cannot or is not contracted with the Member's residing state Medicaid.

**Refill Prescriptions**

CMS guidance states that Network Pharmacy Providers who are contracted to offer Mail Order or home delivery programs need to obtain Member consent prior to shipping Prescriptions when the Member or Member's appointed/ authorized representative did not initiate the request (e.g. Prescriptions faxed by the Prescriber, electronic Prescriptions or refills prompted by auto-fill systems). The Pharmacy does not need to obtain consent to deliver a Prescription or refill which was prompted by the Member.

Network Pharmacy Providers are required to maintain documentation showing the Member or Member's appointed/ authorized representative consent to fill the Prescription or a history of previous Mail Order or home delivery experience with the Pharmacy. This documentation should be made available to the Administrator or Medicare Part D Sponsor upon request.

# T. Medicare Part B Cost Sharing for Dual Eligibles/Prohibition of Balance Billing

Medicare Advantage Plans - also known as MAPD or Part C - are Medicare approved insurance plans administered by private companies. They take the place of and combine original Medicare benefits Parts A (hospital), B (medical), and D (prescription drug). Dual Eligibles are Medicare beneficiaries who are also eligible for some level of Medicaid assistance. Most State Medicaid programs have a legal obligation to pay Medicare cost-sharing (deductible, copay or coinsurance) for these individuals.

Balance billing is the practice in which Medicare Providers seek to bill a QMB (Qualified Medicare Beneficiary) for Medicare cost-sharing (also known as a copay). As a reminder, CMS strictly prohibits contracted Medicare Physicians, Network Pharmacy Providers, including those servicing beneficiaries enrolled in a Medicare Advantage Plan (i.e. MAO, MAPD/Part C or Managed Care), from balance billing these members. When the beneficiary has QMB, the Medicare cost-share must be submitted to Medicaid and the reimbursement amount accepted as payment in full - even if the approved amount is $0.00. If Medicaid imposes a Medicaid copay after processing the Medicare cost share, the pharmacy may collect this amount from the member. Inability to submit a claim (whether it is systemic or because the Network Pharmacy Provider is not contracted with Medicaid) – is not a valid reason to collect the Medicare cost-share amount from the beneficiary. Some Medicaid programs do not allow electronic secondary billing when the claim is processed through the Medicare Advantage Plan. An electronic rejection usually means another billing method is required like a paper claim or submission through a Medicaid billing portal. Contact Medicaid to determine how to appropriately bill the Medicare cost-

share amount when the member is enrolled in a Medicare Advantage Plan and has QMB. Network Pharmacy Providers who bill QMB Members for any remaining Medicare cost-share balance may be penalized (as established in Section 1902(n)(3)(C) of the Social Security Act) and/or terminated from the pharmacy network.

Most Medicaid agencies will cover all or a portion of the Medicare cost-share for Full Medicaid individuals as well, even if they do not have QMB. The pharmacy should verify and coordinate Medicaid benefits appropriately. OptumRx requires that Network Pharmacy Providers bill Medicaid for members who have any qualifying Medicaid coverage for the Medicare cost-share.

CMS language: cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNMattersArticles/downloads/se1128.pdf

## U. Medicaid Dual Status Codes and Medicare Cost Share Coverage

- **QMB Only (Qualified Medicare Beneficiary)/Medicaid Status Code 01**: Must bill Medicaid for the Medicare copay, no exceptions. CMS strictly prohibits Balance Billing.
- **QMB Plus (Qualified Medicare Beneficiary plus Full Medicaid)/Medicaid Status Code 02**: Must bill Medicaid for the Medicare copay, no exceptions. CMS strictly prohibits Balance Billing.
- **SLMB Only (Specified Low Income Medicare Beneficiary)/ Medicaid Status Code 03**: Medicare copay not covered.
- S**LMB+ (Specified Low Income Medicare Beneficiary plus Full Medicaid)/Medicaid Status Code 04**: Conditional – verify Medicaid DME benefits and bill Medicaid for the Medicare copay when covered.
- **QDWI (Qualified Disabled and Working Individuals)/Medicaid Status Code 05**: Medicare copay not covered.
- **QI (Qualified Individuals)/Medicaid Status Code 06**: Medicare copay not covered.
- **Full Medicaid Benefit Dual Eligible/Medicaid Status Code 08**: Conditional – verify DME benefits and bill Medicaid when covered.

Reference document: https://www.medicaid.gov/medicaid/ltss/downloads/integrating-care/cost-sharing-chart.pdf

As a reminder, network providers shall comply with all state and federal laws and regulations.

## V. Claim Notification – Dual Eligible Members and Part B Drugs

OptumRx allows some Medicare Part B covered drugs or diabetic supplies to be submitted to the claims processing system under the Medicare Part D BIN/PCN. This will allow the pharmacy to identify Medicare Part B claims and Dual Eligible Members who have coverage for the Medicare Part B copay.

- Benefit Stage Qualifier field (BSQ) will be populated with value 51 on the pricing segment response (D.0 Field #393-MV) when a UnitedHealthcare Medicare Advantage Member receives a Medicare Part B covered service and the Centers for Medicare & Medicaid Services (CMS) has notified the plan that QMB (Qualified Medicare Beneficiary) or Full Medicaid coverage exists.
    - When BSQ value 51 is present, the pharmacy must refrain from collecting the copay from the Member - otherwise known as "Balance Billing."
    - An additional alert may be provided via local claims messaging stating: "Part B claim; If BSQ=51, bill Medicaid for copay. Balance Billing prohibited."
- If a member indicates they have QMB or Full Medicaid coverage, but BSQ value is not 51, the pharmacy should contact the member's State Medicaid or the number on the back of the member's UnitedHealthcare ID card to verify status.
- The pharmacy should bill Medicaid for the remaining Medicare Part B copay or balance. If Medicaid imposes a Medicaid copay after they process the Medicare Part B secondary claim, the pharmacy may collect this amount from the Member.
- Medicaid is always the payer of last resort and should never be billed as primary to circumvent coordination of benefits with the Medicare Advantage Plan.

## W. Medicare Supplier Number

Administrator encourages Network Pharmacy Provider to obtain and maintain for each Pharmacy a Medicare Part B supplier number pursuant to 42 CFR § 424.57. Network Pharmacy Provider agrees to inform Administrator of the Medicare Part B supplier number assigned to those Pharmacies which have obtained such supplier numbers from CMS for record-keeping-purposes and to identify those Pharmacies as having Medicare Part B supplier numbers in the pharmacy network directories maintained by or on behalf of Administrator's Clients.

## X. Medicare Notice of Patient's Rights

Network Pharmacy Provider must comply with all CMS regulations regarding the provision of written notices to Medicare Members. To demonstrate compliance, Network Pharmacy Provider must:
Demonstrate and provide documentation to detail the process by which each Member receives the communication entitled Notice of Patient Rights (CMS document 10147) during each rejection (rejection type 569); Display the sign in the Network Pharmacy Provider waiting area or distributing to a new Member does NOT meet the requirement;
If a Member is not physically present at the time the rejection has occurred, the Member must be notified of the Claim rejection and the Medicare Notice of Rights is available to them at the Pharmacy or can be mailed to the Member; Active work on a rejection, such as working with the Prescriber for Drug Product change or coverage such as a PA, NOT remove the requirement to provide the notice. The Member should still be supplied the notice with information on any actions the Network Pharmacy Provider is taking.

## Y. Compliance

All Medicare Advantage Organizations (MAO), Medicare Part D Sponsors, MMP and Medicaid Managed Care Organizations are required to have a compliance plan which meets regulatory requirements (42 CFR Parts 422 and 423). It must be reasonably designed, implemented and enforced to be effective in preventing, as well as detecting non-compliance with regulatory requirements. This includes program-specific (e.g. Medicare Part D) requirements, as well as preventing/detecting potential criminal/fraudulent conduct. Administrator has a compliance plan in place which aligns with Federal Sentencing Guidelines and supports the monitoring/detection of FWA within federal programs.

Administrator, our Client MAOs, Medicare Part D Sponsors, MMP and Medicaid Managed Care Organization Compliance Plans include the following recommended elements around which our program has been built:

A. **Written policies and procedures**: Standards of conduct to assist employees, independent contractors and agents complying with applicable laws, including Medicare and Medicaid.
B. **Compliance officer/compliance committee**: Designation of a compliance officer and compliance committee.
C. **Education and training**: Education and training programs for appropriate Network Pharmacy Provider employees which include among other things, HIPAA training provided by a validated and reputable vendor, the Network Pharmacy Provider's standards of conduct and ethical/compliance expectations.
D. **Effective lines of communication**: A process to report violations of the standard of conduct.
E. **Monitoring and auditing**: A system to monitor and audit activities within the Network Pharmacy Provider for compliance with applicable laws.
F. **Enforcement and discipline**: A system to respond to allegations of violations of the standard of conduct and procedures to enforce appropriate disciplinary action against employees, independent contractors and agents who have violated the standards of conduct. In addition, the Network Pharmacy Provider must have a system to monitor whether employees, independent contractors and agents have been sanctioned by the Medicare or Medicaid Programs upon hire (at least monthly). Network Pharmacy Providers should be aware Administrator and/or Benefit Plan Sponsors shall not pay for drugs prescribed by a health care provider or provided by a Network Pharmacy Provider excluded by the Office of Inspector General's (OIG) — U.S. Department of Health & Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE), General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS), state Medicaid exclusion lists or any other regulatory authority that has an exclusion list pursuant to 42 CFR §1001.1901.
   a. Pharmacies must check these lists upon hire and at least monthly to ensure employees working with Medicare business have not been excluded from Federal program participation.

      i. OIG: oig.hhs.gov/exclusions/index.asp
      ii. GSA: sam.gov/index.html
      iii. Contact applicable State Medicaid Agency websites for exclusion information.

G. **Responding to detected offenses and developing corrective action initiatives**: A system to investigate allegations of noncompliant behavior by employees, independent contractors, or agents. Network Pharmacy Provider should initiate an investigation immediately, but no more than two (2) weeks from the date a potential compliance or fraud matter has been reported or identified. If, upon investigation, the Network Pharmacy Provider believes a potential misconduct has occurred, the Network Pharmacy Provider is required to report the alleged activity to the Administrator without fear of retaliation. Administrator has a strict non-retaliation policy which protects those reporting any adverse action as a result of a good faith report. Please see Pharmacy network contracting department contact information provided in Section II of this PM. In addition, the Network Pharmacy Provider may report this information to the National Benefit Integrity Medicare Drug Integrity Contractor (NBI MEDIC) at 1-877-7SAFERX (1-877-772-3379).

## Pharmacy Marketing Activity

Pharmacy provider marketing activity: CMS has issued instruction, included in the Medicare Marketing Guidelines Manual, on provider marketing activities. CMS is concerned with a Network Pharmacy Provider's marketing activities, because a Network Pharmacy Provider may not be fully aware of all Benefit Plans and Cost-Sharing Amounts. This could lead to the perception a Network Pharmacy Provider is acting as an agent of the Benefit Plan Sponsor instead of as the Member's Network Pharmacy Provider and cause confusion for the Member. Since Network Pharmacy Provider may face conflicting incentives when acting as a Benefit Plan Sponsor representative, they are not permitted to specifically market to any Benefit Plan.

To the extent that a Network Pharmacy Provider can assist a beneficiary in an objective assessment of his/her needs and potential options to meet those needs, they may do so. Therefore, a pharmacy may engage in discussions with beneficiaries, should a beneficiary seek advice. However, a pharmacy must remain neutral when assisting with enrollment decisions and may **NOT**:

- Offer sales/appointment forms.
- Prepare, accept or submit Medicare enrollment applications.
- Make phone calls, direct, urge or attempt to persuade beneficiaries to enroll in a specific plan based on financial or any other interests of the provider.
- Mail marketing materials on behalf of Benefit Plan Sponsors.
- Offer anything of value to induce plan enrollees to select them as their provider.
- Offer inducements to persuade beneficiaries to enroll in a particular plan or organization.
- Conduct health screening as a marketing activity.
- Accept compensation directly or indirectly from the plan for beneficiary enrollment activities.
- Distribute materials/applications within a consultation area.

Network Pharmacy Providers **MAY**:

- Provide the names of Benefit Plan Sponsors with which they contract and/or participate.
- Provide information and assistance in applying for Low Income Subsidy (LIS).
- Make available and/or distribute plan marketing materials in common areas when provided to the Network Pharmacy Provider.
- Refer their patients to other sources of information, such as:
  - Centers for Medicare and Medicaid Services (CMS) Website at cms.hhs.gov or 800-MEDICARE (800-633-2273)
  - State-Health Insurance Assistance Programs (SHIPs) plan marketing representatives
  - State Medicaid Office
  - Local Social Security Office
  - CMS website at cms.hhs.gov or 1-800-MEDICARE (1-800-633-42273)
    - Share information with patients from CMS website, including the
    - Medicare and You Handbook or Medicare Options Compare (from medicare.gov);or
    - Other documents that were written by or previously approved by CMS

OPTUMRx®

**CMS Complaints Tracking Module (CTM)**

CMS communicates complaints from beneficiaries and providers via CTM to the Medicare Part D Sponsor. CMS expects these complaints to be promptly acknowledged, investigated and resolved in accordance with applicable regulations/guidelines.

If a CTM regarding Network Pharmacy Provider is received, the Administrator will notify the individual Network Pharmacy Provider identified in the complaint. Network Pharmacy Providers are expected to provide an initial response to the complaint within twenty-four (24) hours and work to resolve completely within seven (7) calendar days. Failure to be compliant could result in corrective action and/or termination of the Agreement as warranted.

## Z. DUR Medicare Part D Therapeutic Dose Limits Edits

The Administrator Therapeutic Dose Limits (THERDOSE) screening within the concurrent DUR program applies safety edits which minimize the risk of medication overutilization. The rules monitor for total daily medication use above the FDA approved maximum dosing across multiple claims at the ingredient level. Currently, the Administrator standard includes Soft or Hard Rejects, depending on the Member's plan, when a Member exceeds the acetaminophen maximum daily dose and returns messaging only for several other therapeutic categories. Administrator may also reject oral diabetes products (i.e. single ingredient and multiple ingredients) which exceeds the FDA approved maximum dosing in order to align with CMS' Patient Safety Monitoring program for these Drug Products. Pharmacies can override the Soft Reject where clinically appropriate to expedite successful adjudication of THERDOSE rejections (e.g. DUR Reject Code 76 or 88) at POS (point-of-sale).

**DUR/PPS Codes (Reason, Professional and Result Codes)**

Pharmacists should use their professional judgment to review and override a THERDOSE Soft Reject. The Pharmacist will need to identify and enter the appropriate DUR/PPS Reason, Professional, as well as the Result codes for each component. This information is then collected and used to respond to CMS' Acetaminophen Overutilization Monitoring Program cases and will also be used to review CMS Diabetes Medication Dosage Patient Safety Reports. If a Pharmacist receives this specific type of error (DUR Reject Code 88), the following steps should be followed.

1. Review the Member profile to identify why the Member is filling greater than the FDA approved maximum dose.
2. Consult with the appropriate Prescriber and/or the Member as needed.
3. Based on your clinical judgment, determine if the Drug Product should be dispensed.
4. Determined appropriate, override the rejection by identifying and entering the appropriate Reason, Professional, and Result code for each component.
   a. Reason code below should auto-populate; if not, then use the Reason Code below of HD (High Dose Alert).
   b. Select the appropriate Professional and Result codes from the list provided below.
5. Each component is only allowed to have one code.

**The pharmacist will need to identify and enter the appropriate DUR/PPS Reason, Professional, and Result codes for each component. Appropriate code options are provided in the following lists 1 and 2.**

1. Reason for Service Code: HD High Dose Alert
2. Professional Code Values and Result Code Values

| Professional Codes | Description | Result Codes | Description |
|---|---|---|---|
| M0 | Prescriber Consulted | 1A | Filled As Is, False Positv |
| M0 | Prescriber Consulted | 1B | Filled Prescription As Is |
| M0 | Prescriber Consulted | 1C | Filled, Different Dose |
| M0 | Prescriber Consulted | 1D | Filled, Different Directions |
| M0 | Prescriber Consulted | 1F | Filled, Different Quantity |
| M0 | Prescriber Consulted | 2A | Prescription Not Filled |
| M0 | Prescriber Consulted | 3C | Discontinued Drug |

OPTUMRx

| M0 | Prescriber Consulted | 3D | Regimen Changed |
|---|---|---|---|
| M0 | Prescriber Consulted | 3E | Therapy Changed |
| P0 | Patient Consulted | 1A | Filled As Is, False Positv |
| P0 | Patient Consulted | 3K | Instructions Understood |
| R0 | Pharmacist Consulted Othr | 1A | Filled As Is, False Positv |
| R0 | Pharmacist Consulted Othr | 1B | Filled Prescription As Is |
| R0 | Pharmacist Consulted Othr | 1C | Filled, Different Dose |
| R0 | Pharmacist Consulted Othr | 1D | Filled, Different Directns |
| R0 | Pharmacist Consulted Othr | 1F | Filled, Different Quantity |
| R0 | Pharmacist Consulted Othr | 2A | Prescription Not Filled |
| R0 | Pharmacist Consulted Othr | 3C | Discontinued Drug |
| R0 | Pharmacist Consulted Othr | 3D | Regimen Changed |
| R0 | Pharmacist Consulted Othr | 3E | Therapy Changed |

The following example illustrates the use of the DUR/PPS codes related to a THERDOSE edit reject:
- A Member presents a Prescription for hydrocodone/APAP (10/325mg) with a quantity = 100 and day supply = 10.
- The pharmacist attempts to process the claim and receives a 'DUR Reject 88' (THERDOSE).
- The pharmacist reviews the patient profile and discovers the member recently filled an oxycodone/APAP (5/325mg) Prescription with quantity = 60 and day supply = 15.
- The overlap of the 2 Prescriptions caused the THERDOSE edit to be triggered.
- The pharmacist consults with the prescriber and determines that the oxycodone/APAP product is being discontinued.
- The pharmacist then enters the appropriate Reason, Professional, and Result codes and then re-submits the claim.
- In this scenario, an appropriate combination would be as follows:
  - HD (High Dose Alert)
  - M0 (Prescriber Consulted)
  - 3C (Discontinued Drug)
- The entering of the above codes resolves the DUR Reject 88 for THERDOSE.

## AA.   DUR Medicare Part D Morphine Milligram Equivalent (MME) Limits Edits

The Administrator Morphine Milligram Equivalent Limits (MMELIMIT) screening within the concurrent DUR program applies edits which minimize the risk of Prescription overutilization. The rules monitor for cumulative total daily opioid Prescriptions used above the plan's established daily MME limit across multiple Claims. Currently the Administrator standard includes Soft or Hard Rejects when a Member exceeds the plan's established daily MME limit. The MME value is calculated based on the number of opioid Drug Products prescribed over a period of time which includes incoming Claims and Claim history. Opioid ingredient conversion factors used in the POS MME calculations are approved for use by the Centers for Medicare & Medicaid Services (CMS) and are taken from publications by the Centers for Disease Control and Prevention (CDC) at http://cdc.gov. For plans which allow Soft Rejects, Pharmacies can override the Soft Reject when clinically appropriate to expedite successful adjudication of MMELIMIT rejections (e.g. DUR Reject Code 76 or 88) at POS.

## BB.   Medicare Advantage Benefit Plans (MA)

For claims submitted for Medicare Part B Covered Prescription Services for the respective Benefit Plan Sponsor's MA or MA-PD Benefit Plans, Network Pharmacy Provider shall refer to the POS System response for the applicable Benefit Plan as payment in full. The POS System transaction response pricing per Claim prevails, unless overpayment is made to the Network Pharmacy Provider.

## CC.  Medicare-D Drug Management Program Member Pharmacy Lock-In Edit

The Medicare Part D Drug Management Program focuses on appropriate use of member opioids and frequently abused medications and now allows pharmacy lock-in edits per CMS as part of a medication management plan for patient safety and better coordination of care between providers. Network Pharmacy Providers that are contracted with Administrator will participate in the pharmacy lock-in component of the Drug Management Program (DMP), which applies to the Network Pharmacy.

The Administrator reserves the right to add, delete, or modify the policies associated with the lock-in program. Network Pharmacy Providers shall be deemed participating in all components associated with the Drug Management Program pharmacy lock-in limitation and may not terminate or refuse participation. The Administrator will notify Network Pharmacy Providers when a member will be locked in for coverage of their opioid and frequently abused medications in writing thirty (30) days before the edit takes effect. Pharmacies that are not in-network but have been selected to be the designated pharmacy in a lock-in will receive notification in writing and will need to send back a response form confirming acceptance of the member pharmacy lock-in edit.

A prescriber lock-in can be implemented under more than one prescriber, (i.e. two prescribers within the same practice or one prescriber for opioids and one prescriber for benzodiazepines). However, the Administrator cannot implement a prescriber lock-in without obtaining an agreement from the prescriber(s) first during the course of case management. Prescribers will be notified of their member's prescriber lock-in via receiving a copy of the Member Initial Notice, which will contain a cover letter addressed to the prescriber to provide a summary of the case management decision and directing them to review the copy of the letter sent to the member.



# VIII.   Compliance; Fraud, Waste and Abuse (FWA); General Training; Audits

## A. Network Pharmacy Provider FWA and General Compliance Training

A Network Pharmacy Provider is required to report any suspected or potential FWA to the Administrator. Administrator has a strict non-retaliation policy which protects those reporting any adverse action as a result of a good faith report. Administrator actively investigates and refers, as appropriate, any FWA activity by Network Pharmacy Providers, associates, Members, vendors, contractors and/or other business entities.

Network Pharmacy Provider should initiate an investigation immediately, but no more than two (2) weeks from the date a potential compliance or fraud matter has been reported or identified. If, upon investigation, the Network Pharmacy Provider believes a potential misconduct has occurred, the Network Pharmacy Provider is required to report the alleged activity to the Administrator without fear of retaliation.

Reports should be submitted to the Pharmacy Network Contracting department.  Please see Section II of this PM for contact information. In addition, the Network Pharmacy Provider may also report this information to the following:



- National Benefit Integrity Medicare Drug Integrity Contractor (NBI MEDIC)
- 1-877-7SAFERX (1-877-772-3379)

A Network Pharmacy Provider involved in providing services for Medicare Part D/Medicaid Members is responsible for implementing a program to control FWA and to facilitate compliance in the delivery of Covered Prescription Services through the Medicare/Medicaid benefits.



If Network Pharmacy Providers suspect any fraud and/or abuse by a Member or Managed Care Organization (MCO), the Network Pharmacy Provider must report this to the Administrator (OptumRx) and the applicable federal/state agency.

In addition to the reporting requirements above, Network Pharmacy Providers must cooperate and assist any federal/ state agency charged with the duty of identifying, investigating, sanctioning or prosecuting suspected FWA. Network Pharmacy Providers must provide original and/or copies of any and all information as requested by any such federal/ state agency, allow access to premises, as well as provide records to any federal/state government unit or investigating agency, upon request (i.e. free-of-charge).

**Common FWA Schemes to Avoid**
Network Pharmacy Providers should be aware there are common FWA schemes perpetrated by Prescribers and Members.



The following is a list of FWA types which could be perpetrated by Prescribers. This is included for educational purposes only and is not an all-inclusive list:

- Illegal remuneration schemes: Prescriber or Member is offered, paid, solicited or receives unlawful remuneration to induce or reward them for inappropriate behavior. Some examples of an illegal remuneration scheme include when a Prescriber receives something of value for writing Prescriptions for medically inappropriate or unnecessary drugs/ products or to induce the Prescriber to prescribe certain Drug Products rather than others, when a Network Pharmacy Provider waives a Member's Cost-Sharing Amount to encourage their patronage, etc.
- Script mills: Provider writes Prescriptions for Drug Products or Compounded Drugs that are not medically necessary, often in mass quantities, and often for patients that are not his or hers.
- Inappropriate relationships with health care provider: Potentially inappropriate relationships between pharmaceutical manufacturers and Prescribers, such as "switching" arrangements to induce a Prescriber to switch the prescribed drug from a competing product; incentives offered to Prescriber to prescribe medically unnecessary drugs; consulting and advisory payments, payments for business courtesies and other gratuities, educational and research funding; improper entertainment or incentives offered by sales agents.
- Illegal usage of free samples: Providing free samples to Prescribers knowing and expecting those Prescribers to bill federal health care programs for the samples.



The following is a list of types of FWA which could be perpetrated by members. This is included for educational purposes only and is not an all-inclusive list:

- **Overutilization and drug-seeking members**: Member seeks, obtains and uses a Drug Product even though the risk of harm exceeds the benefit.

OPTUMRx®

- **Altered and forged Prescriptions**: Member alters the quantity and/or strength on a valid Prescription or illegally creates Prescriptions using stolen or forged Prescription pads.
- **Pharmacy hopping and doctor shopping**: Members visit numerous doctors to obtain Prescriptions for Prescription drugs and/or controlled substances and visit numerous pharmacies to facilitate the filling of excessive quantities of Prescription drugs.
- **Prescription diversion and inappropriate use**: Members obtain Covered Prescription Services from a Network Pharmacy Provider and give or sell these as Drug Products to someone else. This can also include the inappropriate consumption or distribution of a Member's Covered Prescription Services by a caregiver or anyone else.
- **Resale of drugs on black market**: Member falsely reports loss or theft of drugs or feigns illness to obtain drugs for resale on the black market.
- **Misrepresentation of status**: Member misrepresents personal information, such as identity, eligibility or medical condition in order to illegally receive benefits including Medicare and Medicaid.
- **Theft of prescriber identifiers**: Member steals DEA number, Prescription pad, or e-prescriber authentication (login) information for creating fabricated Prescriptions.

The following is a list of types of FWA that could be perpetrated by a Network Pharmacy Provider and may result in audits, as well as sanctions including termination of participation in Administrator networks. This is included for educational purposes only and is not an all-inclusive list:

- Billing for a Brand Name Drug and dispensing a Generic Drug
- Billing for an NDC other than what was dispensed
- Overbilling of quantity prescribed
- Billing multiple payers for the same Prescription
- Inappropriate billing of Compounded Drugs
- Submitting a dummy DEA/NPI or Invalid DEA/NPI number to obtain a paid response
- Billing for a Brand Name Drug with Dispense as Written per the Prescriber (DAW 1) when a Prescriber has not specified "Do Not Substitute" on the Prescription or other inappropriate use of DAW codes
- Billing for larger pack sizes of Drug Products supplied in unbreakable packages when one smaller pack size will meet the directions of the Prescriber and remain within the Benefit Plan's maximum days' supply
- Billing for more fills or refills than were authorized
- Splitting Prescriptions into multiple Claims to obtain multiple dispensing fees or undermine a PA or quantity limit, etc.
- Billing for invalid Prescriptions due to lack of a legal Prescriber, forgery, or false or fictitious documents
- Dilution of Drug Product provided to Member/consumer
- Acquisitions of Prescription drugs on black market and black market sales
- Collusion with Prescriber, wholesaler or others and kickback schemes
- Pill shorting to Members/consumer: Dispensing less than quantity billed
- Selling the same Drug Product twice: Recycling pills.
- LTC Network Pharmacy Provider billing for unused Covered Prescription Services and not applying credit to Member
- Inappropriate, inaccurate or incomplete record-keeping practices related to billed Prescriptions
- Prospective billing
- Phantom Claim billing: Claims for Covered Prescription Services not provided
- Dispensing expired or adulterated Prescription Drug Products
- Forging or altering Prescriptions
- Refilling Prescriptions erroneously
- TrOOP manipulation

**Cultural Competency with Abuse, Neglect and Exploitation Training**
Network Pharmacy Providers are to be knowledgeable about cultural differences of our members, so as to promote the delivery of services in a manner which accounts for the diverse Member population which is completely free of bias including, but not limited to, those with limited English proficiency, diverse cultural/ethnic backgrounds and mental and physical disabilities. Additionally, providers must cultivate an environment free from discrimination based on gender, sexual orientation and/or gender identity. Network Pharmacy Providers should be aware of any indications related to

abuse, neglect, national origin, exploitation and report any concerns to the appropriate state agency when warranted. Training on these topics is provided at the following link: https://professionals.optumrx.com/resources/fwa-compliance/fwa-training-step2.html.

## B. Pharmacy audits (Audits)

**Audit Policy Statement**

All Claims submitted to Administrator are subject to audit. The Administrator's Pharmacy Audit Program helps to ensure Claims are submitted and dispensed in accordance with Administrator guidelines, and that Network Pharmacy Providers comply with those guidelines as well as the terms/conditions for participation in the applicable network.

The audit program also helps to protect against FWA.

Administrator or its authorized agent, governmental agencies or their representatives, (hereafter referred to as "Auditor"), shall have the right to audit Network Pharmacy Provider during normal business hours, typically with reasonable notice of fourteen (14) days to examine/audit the books, records, signature logs, files, equipment and their respective facilities of all Network Pharmacy Provider transactions which relate to any aspect of the performance of the Agreement including the transactions contemplated under the PM or Plan Specifications, as well as requirements set forth by Law. If Auditors are denied access to requested audit documents, 100% of the amount previously paid for the Claim(s) in issue becomes due immediately. Audits will be conducted in accordance with applicable laws and state regulatory guidelines.

Network Pharmacy Provider shall cooperate with Auditors and promptly provide access to all information or documents deemed necessary by Auditors. Auditors may reproduce any record at its own expense; however, the original records will not be removed from Network Pharmacy Provider's facilities. Auditor may report audit findings to Administrator's Clients, appropriate governmental entities, regulatory agencies and professional review and audit organizations.

The parties agree all audits will be conducted in accordance with applicable laws and any additional required language to be included in the Agreement or PM by such applicable laws shall be deemed included for the term of the Agreement and a period of five (5) years thereafter or in accordance with applicable law.

In addition and subject to applicable law and regulatory requirements, audit procedures may be temporarily modified by Administrator in the event the normal audit process is impacted due to a state of emergency, including but not limited to an epidemic or pandemic.

**Audit Purpose**

The purpose of the Administrator policy is:
1. To validate the Accuracy of paid Claims, contractual compliance, regulatory compliance and/orvarious aspects of Drug Product inventories, presence of required signage and/or documentation;
2. To observe and photograph overall facility operations and conditions; presence of required signage and/or any tiems requiring documentation;
3. To monitor for, detect/prevent FWA activities and/or transaction submission errors in the billing of Covered Prescription Services.

Audits may take the form of a phone call, on-site visit, internal Claims review (desktop audit), Client-directed/ regulatory investigative and/or compliance reviews. Audits generally contain a large number of transactions; include a comprehensive review of Prescriptions, as well as their supporting documentation, proofs of delivery, credentialing, licensure review, confirmation work and facility/ compliance reviews.

Audits may take the form of a phone call, onsite visit, internal Claims review (desktop audit), Client-directed/ regulatory investigative and/or compliance reviews. The Network Pharmacy Provider will provide Administrator, Auditors, or its designee, during normal business hours, access to examine, audit, scan and copy any and all records deemed by Administrator or Auditor as necessary to determine compliance with the terms of the Agreement and the PM. These audits are necessary for Clients or Benefit Plan Sponsors to comply with State and Federal requirements and Plan Specifications. Any discrepant Claims found during an audit will require reimbursement to Administrator.

Audit recoveries will be deducted from future remittances to Network Pharmacy Provider. Should insufficient funds be available to offset such recoveries, Network Pharmacy Provider will be responsible to submit payment within fifteen (15) calendar days of demand for payment.

Administrator routinely monitors and audits the online POS System Claims data. In order to conduct these audits, Administrator may contact Network Pharmacy Providers by telephone, mail, fax and/or e-mail. Network Pharmacy Providers are required to provide records as requested.

**Procedures for Audit Compliance**

In general, the Administrator will provide the Network Pharmacy Provider no less than two (2) weeks advance written notification of an in-depth audit involving Claims review. However, if Administrator suspects that the Network Pharmacy Provider has engaged in fraudulent activity, Administrator or Auditor may conduct an on-site audit without advance notice. Should the Network Pharmacy Provider refuse to allow Administrator or Auditor access to the pharmacy facilities, Administrator reserves the right to recover the full amount paid or due to the Network Pharmacy Provider for any Claims subject to the audit and may terminate the Network Pharmacy Provider for cause. Administrator or its designee shall have the right, with or without notice, at reasonable times, to conduct a brief compliance check and a standard inventory shelf check.

As a Network Pharmacy Provider, you are required to maintain Prescription records (including copies of Prescriptions and signature logs) in accordance with the Agreement, including the PM, and with applicable state and federal regulations. Administrator may request such records from the Network Pharmacy Provider pursuant to a Client, Benefit Plan Sponsor, Government Authority or regulatory audit or inquiry. Network Pharmacy Provider is required to assist Administrator with the retrieval of such records in a timely manner to allow Administrator to meet the deadlines as set forth by the Client, Benefit Plan Sponsor, Government Authority or regulatory agency.

- Network Pharmacy Provider will be contacted within seven (7) calendar days prior to onsite audit with written or oral confirmation of date and an approximate time.
- Network Pharmacy Provider may not refuse a prescheduled on-site audit at the time of Auditor arrival. Auditor reserves the right to request copies or take digital images (i.e. scanned/photo) of aforementioned documents. A denial of this request will be determined to be denial of access, which is a breach of the audit provisions of the Agreement. The Network Pharmacy Provider may be subject to immediate suspension or termination for non-compliance.
- Network Pharmacy Provider must be adequately staffed to assist in the audit and answer any questions, retrieve information required and facilitate an effective on-site audit.
- Auditors will attempt to minimize any disruption of business processes while onsite.
- Network Pharmacy Provider will provide Auditors a safe work space with a sufficient work surface that is well-lit and clutter-free, with access to an electrical outlet and within the confines of the Pharmacy. Work area can be located away from the busiest areas of the dispensing department; however, Network Pharmacy Provider must provide easy access to the required documents outlined in the audit notice.
- Auditor must be given full access to facilities used to support dispensing of Covered Prescription Services billed to Administrator, including, but not limited to, refrigeration unit used to store Drug Products, compounding area, Drug Product storage area, etc. and Network Pharmacy Provider staff will accompany Auditor at all times.
- Auditors must be given full access to the books, records, files, lists, signature logs and documentation associated with any and all transactions related to Administrator Claims submitted by the Network Pharmacy Provider. Auditor reserves the right to request copies or take digital images (i.e. scanned/photo) of aforementioned documents. A denial of this request will be determined to be denial of access.
- Auditors must witness the physical extraction of original records and items of facility reviews from the Network Pharmacy Provider Archives (e.g., Network Pharmacy Provider records need to be pulled by Network Pharmacy Provider in view of the auditor). A denial of this request will be determined to be a denial of access.
- Auditor reserves the right to request copies/scanned images of original purchase invoices for Drug Products associated with the submitted Claims. Alternatively, a summary statement of purchases by NDC for the date range requested may be required to be requested of distributors by the Network Pharmacy Provider and be provided directly to Administrator by the distributor. Upon request, Auditor must be provided copies of drug pedigree documentation where applicable and copies of the front and back of all cancelled checks or other proof of payment as deemed acceptable at the Administrator's sole discretion, to support purchases. Also upon request,

Auditor must be provided a comprehensive drug utilization report which includes all payers for NDCs requested (PHI redacted). A denial of this request will be determined to be denial of access.

- Auditor reserves the right to extend the original desk audit or onsite audit. A denial of this request will be determined to be denial of access.
- Access to Records and Audits. During the term of the Agreement and for a period of five (5) years thereafter, unless specifically restricted to a period of time less than five (5) years under state law, Administrator or its designee shall have the right, upon reasonable notice and at reasonable times, to access, inspect, review, audit (including on-site and desktop audits) and make copies of the Records ("Administrator Audit"). In addition to the foregoing, Network Pharmacy Provider shall honor and accommodate all audit requests by Government Authority ("Governmental Audit"). Network Pharmacy Provider shall pay all costs incurred by Network Pharmacy Provider in connection with its provision of information for purposes of a Governmental Audit. The audit period shall, however, be ten (10) years in the case of Medicare Part D records.
- Network Pharmacy Provider must retain an Original Document of Record in its archives as required under State and Federal Law and for a period of no less than five (5) years from the date of the applicable transaction, and ten (10) years in the case of Medicare Part D records.
- Network Pharmacy Provider must provide a copy of any compound recipe worksheets identifying ingredients used in a Compounded Drug. Provider must submit all ingredients included in each compound and may only submit the NDC associated with the actual ingredients filled/dispensed.
- Each document as listed above is to be filed as an original document in the archives of the Network Pharmacy Provider, to be retrieved for inspection at the request for audit by Auditor.
- An original or digital image of the signature log will be accepted as audit evidence for receipt of goods.
- Network Pharmacy Provider will receive written disclosure of initial/preliminary audit findings subsequent to the field work for any in-depth audit.
- The Network Pharmacy Provider (or their pharmacy locations) will be given the opportunity to dispute any audit findings by filing an appeal within thirty (30) calendar days, or as indicated by state law, from the receipt date of the initial/ preliminary audit results letter. Such documentation must be sent via certified mail or other method that evidences tracking such as FedEx, etc., to the attention of the Administrator Network Audit Manager, or as otherwise instructed in the initial/ preliminary audit results letter. Upon extenuating circumstances, a request for an extension may be granted at the sole discretion of Administrator. Receipt of such an extension request must be received in writing within the required thirty (30) calendar days appeal time frame or as otherwise instructed in the initial/preliminary audit results letter. Failure to submit appeals by the time frame allowed will subject any applicable discrepancy to recoupment as indicated in the initial/preliminary audit results letter.
- Post-audit documentation must consist of original hard copies of Prescriptions, as approved by Administrator, or Authorized Prescriber Statements. Verbal orders and annotations obtained and documented prior to dispensing are accepted at the time of the initial records request but not after the initial records request.
- Final audit findings will be provided after the dispute period has lapsed, in accordance with any applicable state law, and with consideration of any dispute that was filed timely. Audit findings will indicate where a full or partial recoupment is necessary, or indicate that a finding is educational only. The Network Pharmacy Provider will receive a chargeback against future remittances until paid-in-full for any discrepancies found during the audit. Payments to Administrator are only necessary if the Network Pharmacy Provider is no longer operating.
- Agreement in effect, or if insufficient payment activity is available to offset the chargebacks within a reasonable time period.
- Administrator at its sole discretion may elect to notify a PSAO of any significant audit findings, if the pharmacy in question is affiliated with a PSAO.
- Administrator shall have the right, with or without notice, at reasonable times, to perform a facility review to inspect the Pharmacy location for compliance. Request for copies or digital images (i.e. scanned/photo) of documents pertaining to the review may be requested. Pharmacy agrees to cooperate with Administrator during the on-site audit and acknowledges non-cooperation with such on-site audit may result in denial or termination of network participation.
- Facility reviews may include review, as well as documentation of all applicable licensures, proof of identification of employees, compliance with all federal/state regulatory requirements, proof of compliance with return to stock policy, which must be fourteen (14) calendar days or fewer from the date Claims are submitted to Administrator, various other reviews and inquiries to assure that overall quality assurance measures are implemented.
- Facility reviews may require proof of compliance in providing the Medicare Prescription Drug Coverage and Your Rights notice to all Medicare Members when a Prescription cannot be covered ("filled") under Medicare Part D ("Part D") benefit in the POS System and the coverage determination results in a 569 reject response.

OPTUMRx

- Purchases of Covered Prescription Service or Services for any Claims submitted to Administrator must be made from a source that is both NABP Drug Distributor Accreditation (formally known as VAWD) and licensed as drug wholesaler, as regulated by state and federal entities. This requirement includes the purchase of non-legend items (e.g. OTC, supplies); therefore, purchases for these products must be made from a source that is qualified to obtain a drug wholesale license based on their product mix. Non-legend items such as diabetic testing supplies for which Covered Prescription Services are rendered are subject to the requirement to be purchased from a source that is both an NABP Drug Distributor Accreditation and licensed as a prescription drug wholesaler. Network Pharmacy Provider must be able to document the source is authorized to include federal/state licensure, oversight by regulatory agencies to include the Food and Drug Administration (FDA), DEA and ability to obtain DSCSA – compliant transaction history, information and statement as requested for Drug Products. Network Pharmacy Provider must promptly comply with any requests to produce such documentation. Any inter-pharmacy transfers or purchases made through intermediary third parties or marketplaces must be accurately and completely documented in a manner consistent with federal/state laws, as well as industry standards and further documentation may be required to validate the purchases. Any inter-pharmacy transfers or purchases made through intermediary third parties or marketplaces for the purpose of increasing or replenishing stock, and not made to fulfill a specific patient need for an identified patient, are subject to the requirement to obtain transaction history, transaction information, and a transaction statement for the product.
- A Network Pharmacy Provider may transfer inventory to alleviate a temporary shortage or for the sale, transfer, merger or consolidation of all or part of the business of a pharmacy from or with another pharmacy, whether accomplished as a purchase and sale of stock or business assets. The transfer or purchase of covered legend and non-legend products or medical supplies from another licensed pharmacy must be verified and documented as originating from a NABP Drug Distributor Accreditation and licensed drug wholesaler, to include DSCSA – compliant transaction history, information and statement.
- On the day the Drug Products or medical supplies are transferred, a complete inventory must be taken which documents the drug name, dosage form, strength, NDC, lot number, quantity and date transferred. Additionally, documents must indicate the supplier or manufacturer's name, address and registration number. All records involved in the transfer must be maintained and accessible for five (5) years.

**Documentation and Submission Expectations**

Network Pharmacy Provider shall maintain adequate Prescription, as well as financial records relating to the provision of Covered Prescription Services to our Members, including but not limited to: Network Pharmacy Provider books/ databases, daily Prescription logs, patient profiles, Prescription hardcopies, Prescriber information, signature/delivery logs, refill information, wholesaler/manufacturer/distributor/all other purchase invoices, business records such as FWA training logs, LEIE/EPLS verifications, availability of notices such as the CMS10147 and other federal/state required documents, policies, including other such documentation necessary for all Covered Prescription Services provided. Network Pharmacy Provider shall also maintain all policies and procedures related to maintenance of such records. Network Pharmacy Provider shall maintain/retain all records described herein for a no less than five (5) years from the date of the applicable transaction or as required by law and ten (10) years in the case of Medicare Part D records.

The information provided below is intended to clarify documentation expectations related to particular items to help Network Pharmacy Providers avoid problems and be prepared for an audit.

**Prescription Records**

All Prescription documentation, regardless of the way it has been created, generated, or transmitted shall contain the following:

- Full name of the Member for whom the Prescription was written and the address of the Member along with a date of birth;
- Full name and address, telephone number and any other required identifiers of the Prescriber;
- Name, strength, dosage form and quantity of the medication prescribed;
- Specific dosing directions, if a Prescription contains ambiguous directions the Provider must clarify these directions and note the conversation to clarify;
- Substitution instructions where applicable, or substitution requested by Member clearly noted;
- Refill instructions;
- Miscellaneous or other informational notes as required by applicable laws or regulations; and

- Complete documentation of items, quantities to be dispensed and directions for use for diabetic supplies, as well as insulin.

Network Pharmacy Providers are required to validate the authenticity, integrity, security and confidentiality of prescriptions transmitted to the pharmacy. The NCPDP's Electronic Signature Guidance white paper provides clarification to prescribers, pharmacies and third party auditors on the best practices to validate electronic signatures associated with electronic prescriptions. Network Pharmacy Providers are expected to adhere to the NCPDP Electronic Signature Guidance unless otherwise specified in applicable state laws and regulations.

Based on the NCPDP guidelines, digitized signatures are considered similar in methodology to a rubber-stamp signature and thus are not considered valid electronic signatures. The following data elements should be present on an electronic prescription as authentication of electronic signatures for auditing purposes:
- Transaction Identifier
- Prescriber Identifier(s)
- Written Date
- Designated Agent (if applicable)

Prescription records must be updated yearly, or such shorter period required by applicable law. If applicable law does not specify a time period, Administrator requires that Prescription hard copies be updated yearly. Update must also include the assignment of a new Prescription number.

Administrator recommends that Network Pharmacy Provider document as much information as possible on the Prescription itself, outlining any unusual circumstances that occurred while dispensing the Covered Prescription Service. Such notes may eliminate a question from the Auditor or help resolve a discrepancy.

The hard copy (original and any updates) of the Prescription, including telephone Prescriptions, must contain all data elements required by state pharmacy laws in which Network Pharmacy Provider is located and all Prescriber instructions — including Product Selection Code instructions — that support the Network Pharmacy Provider's Claim transmission. Prescriptions in which the drug strength, formulation, quantity or days supply are changed, require either a written individualized, annotated authorization on the prescription or a new hard copy prescription to be issued. Pre-printed or pre-populated prescriptions with check boxed selections will not be considered as a valid documentation. When the Prescriber writes "as directed", a verification of the exact directions or, at a minimum, the maximum (up to) dose of medication taken per day must be documented on the hard copy or electronically and be viewable upon request. Only Prescriptions generated by the Prescriber are accepted as post audit documentation for "as directed" Prescriptions at the Administrator's sole discretion.

If less or more medication (if permitted) is given than ordered by the Prescriber, the reason for this must be documented. Any increase in the amount of Drug Product over the original prescribing order must be documented for Prescriber authorization.

**Wholesaler, Manufacturer and Distributor Invoices**
Wholesaler, manufacturer, and distributor invoices and other purchase invoices and documents must be accessible, maintained for a minimum of five (5) years or as required by law or regulation and ten (10) years in the case of Medicare Part D records to substantiate that the Drug Products dispensed were purchased from an authorized source regulated by the federal/state entities and NABP Drug Distributor Accreditation, to include valid licensure in the state the covered prescription service or services dispensed. Purchases for any Clean Claims submitted to Administrator must be made from a source that is licensed as a drug wholesaler, as regulated by federal/state entities. This requirement includes the purchase of non-legend items (e.g. over-the-counter supplies). Network Pharmacy Provider must be able to document the source is authorized to include state or federal licensure, oversight by regulatory agencies to include the Food and Drug Administration (FDA) and DEA and ability to obtain pedigree information for Drug Products. Network Pharmacy Provider must promptly comply with any requests to produce such documentation. If Network Pharmacy Provider fails to promptly provide such requested documents or the wholesaler is not NABP Drug Distributor Accreditation and/or is not licensed as a drug wholesaler, Administrator may immediately offset 100% of the amount for any of the paid claims in question and impose additional fines or penalties. Network Pharmacy Provider shall remain responsible for the validation a wholesaler, from which they are provided covered prescription service or services, has valid pedigree. Network Pharmacy Provider shall maintain adequate records to further validate purchases from wholesalers to include canceled check information

available for Audit. Adequate records are proof of purchases which indicate price, drug name, dosage form, strength, NDC, lot number and quantity.

Network Pharmacy Provider may not enter into a captive pharmacy arrangement, whereby the pharmacy enters into agreement for the marketing and dispensing of Drug Products specifically for a manufacturer without disclosure to Administrator, as well as written permission by Administrator.

**Signature Log — Hard Copy or Electronic**
Network Pharmacy Provider shall require the signature of the member or the member's appointed/authorized representative on a permanent record before dispensing any Prescription. All logs must be maintained for all Claims submitted on-line via the POS System to Administrator.

At each Network Pharmacy Provider location, Network Pharmacy Provider shall maintain a hard copy or, if pre- approved by Administrator, an electronic or manual signature log which contains the following: the Prescription number; the date the Drug Product is received by the Member; and the signature of each Member who receives a Drug Product or the signature of his/her designee, and the authorization to release information to a third party program.

Network Pharmacy Provider must obtain a legible written signature or electronic capture that corresponds to a matched printed name or another authorized person to confirm receipt of the Prescription product. Capture of non-signature data elements to document receipt of the Covered Prescription Service (e.g. electronic delivery notice or point-of-sale information) must be only upon express permission of Administrator. Proper verification of the person picking up the Covered Prescription Service is essential to ensure the deterrence of potential fraud and abuse.

Network Pharmacy Provider is authorized to utilize pharmacy employees under a W-2 status to deliver, at no additional cost to the member, covered prescription services to members within a 100 mile radius of the pharmacy's physical location. In unique and/or limited single events, Administrator reserves the right to grant a waiver to deliver beyond the designated limits for covered prescription services delivery.
- If delivered to a home or business address, Network Pharmacy Provider must obtain the signature of the Member or his/her designee at the time of delivery.
- If patient is sent monthly billing statements, Network Pharmacy Provider may insert a form listing the dates of fill and Prescription numbers; the eligible Member or Member's appointed/authorized representative should be instructed to sign and return the form with his/her payment.
- Provider using mail services must include information to document tracking of shipment, confirmation of delivery, or other proof of delivery.

These Prescription signature logs must be in date order where appropriate and readily accessible.

**Insulin and Diabetic Supplies**
When submitting a claim, Network Pharmacy Provider may only submit the NDC associated with the actual insulin or diabetic supply filled and dispensed with a prescription. Provider may not submit DME products that are for non-retail use. Diabetic insulin and supplies must be calculated to accurately submit the days' supply. The submitted days' supply and quantity must accurately reflect the prescribed directions and quantity, taking into consideration manufacturer recommendations regarding storage and handling. Directions notated as needed or as directed require a documented interaction with the Prescriber or Member identified on the Prescription.

If Prescriber indicates as directed or as directed as per sliding scale, Network Pharmacy Provider must obtain the dosage range, note it on the Prescription hard copy, the prescription label and calculate the day supply by using the maximum (up to) daily dosage. The directions may be obtained by direct communications with either the Member or Prescriber.

**Inhalers and Inhalation Products**
When submitting a claim, enter the quantity to be dispensed exactly as written by the Prescriber on the Prescription form. Dispensing limitations vary widely among Benefit Plans. Depending on the Member's medical condition, it may be necessary to dispense more than one inhaler. If Benefit Plan design allows and the Prescriber writes accordingly, the Member may obtain more than one inhaler per Prescription.

**Ophthalmic Products**
Eye drops should be calculated using 15-20 drops per mL, unless a more specific drop per mL or uses/package exists. Prescriptions with defined length of therapy may use that period for days' supply when smallest package size available in the market for therapy is used (e.g. 5ml ophthalmic with acute therapy of 5 days).

| GTTS/Day | 2.5ml | 5ml | 10ml | 15ml |
|----------|-------|-----|------|------|
| One | 37-50 | 75-100 | 150-200 | 225-300 |
| Two | 18-25 | 37-50 | 75-100 | 112-150 |
| Three | 12-16 | 25-33 | 50-67 | 75-100 |
| Four | 9-12 | 18-25 | 37-50 | 56-75 |

**Note**: If the minimum quantity as represented by the manufacturer's smallest available unit-of-use causes a rejection, with notation of a maximum days supply, it is allowable to resubmit with the communicated days supply which represents the plan maximum.


**Desktop and Telephone Audits**
Administrator conducts desktop audits and investigational audits to verify the accuracy and validity of Claim submissions. Network Pharmacy Providers are typically contacted via telephone, fax, email or mail and asked to provide photocopies of specific documents and records related to Claims paid to Network Pharmacy Provider by Administrator during a specified period. Requested documentation may include, but is not limited to, original Prescriptions, signature logs, computer records, and invoices showing purchase or receipt of dispensed medications. Administrator will identify any discrepancies found in the documentation and will advise Provider of such via post audit reports.

Administrator monitors claims data for potential billing errors and reasonable claim submissions on a daily basis. If a potential discrepancy is found, an Auditor will contact the Network Pharmacy Provider, typically via telephone, to inquire about, validate, and help resolve any discrepancy. Unless supporting documentation is required, most of these discrepancies can be validated with minimal correspondence and resolved through Claim reversal and resubmission by Network Pharmacy Provider. Provider is required to correct the claims through resubmission if requested by Auditor.
- Network Pharmacy Provider is required to answer reasonable telephone, fax, email or mail inquiries by an Auditor or a designee, as determined solely by Administrator, to validate a Member being billed, Prescription directions, Compounded Drug ingredients, quantities being dispensed, etc.
- All in-depth desktop audits will be directed by written correspondence.
- Where billing agents are utilized by a Network Pharmacy Provider, Administrator may coordinate audits with the billing agent, but Network Pharmacy Provider remains responsible for all billing outcomes, verification and validation.
- Network audits may be performed by Administrator staff, or by an agent authorized solely by Administrator.
- In cases where the desktop audit is related to a Member complaint, Network Pharmacy Provider shall respond to desktop audit requests within three (3) business days.


**Prescription Validation Reviews**
Administrator conducts limited scope prescription validation reviews for quality assurance purposes ("PVRs"), which are distinct from and are not considered audits. PVRs are utilized to verify the accuracy and validity of prescription claim submissions. Claims are monitored on a daily basis for appropriateness and potential billing errors and selected for review prior to payment. Network Pharmacy Providers are typically contacted via fax or email and asked to provide photocopies of specific documents and records related to its claims submitted to Administrator. Requests for records are made for single claims. Network Pharmacy Provider will generally receive seven (7) business days, unless otherwise indicated on the request for records, to provide the necessary documentation needed to satisfy the review. Network Pharmacy Provider is required to answer reasonable fax or email inquiries from Administrator to validate a member being billed, prescription directions, compounded drug ingredients, quantities being dispensed, etc.


**Investigative Reviews**
Administrator conducts investigational reviews to verify the accuracy/validity of Claim submissions, as well as verification of Drug Product and supply purchases. Investigative reviews may be performed as on-site or desktop audits, and

OPTUMRx®

encompass all requirements listed in Section B. Pharmacy Audits (Audits) of this manual. Requested documentation may include, but is not limited to, original Prescriptions, signature logs, computer records, distributor year-to-date summaries or invoices of each wholesaler/distributor supporting all Drug Products, including DME purchases and returns. Network Pharmacy Provider will receive fourteen (14) calendar days, unless another time is dictated by federal/state guidelines or law, to provide the necessary documentation needed to satisfy the review.

Administrator will identify any discrepancies found in the documentation and will advise Network Pharmacy Provider of such via a post-review report.

Network Pharmacy Provider will receive no less than a ten (10) business day appeal timeframe to submit any additional documentation needed to refute the findings.

Note: All distributor purchase summaries or invoices of each wholesaler/distributor must come directly from the wholesaler/distributor. Summaries or invoices received from the Network Pharmacy Provider will not be accepted.

**Post-Audit Reporting**
Network Pharmacy Provider may receive a post-audit report if specific Claims require additional documentation. Additional documentation is typically required within a thirty (30) calendar-day period to contest any findings identified, unless another time is dictated by federal/state guidelines or Law. At the completion of the audit, Network Pharmacy Provider may also receive a final audit report with the Claims identified as discrepant and due for recovery. All documentation must be received no later than thirty (30) calendar days from the date of the discrepancy report. Beyond that date, the audit will be considered final.

**Miscellaneous Audit Information**
In situations where cumulative errors rise to the level of negligence or FWA, as determined solely by Administrator, Administrator reserves the right to extrapolate audit sample exceptions against the entire population under audit, subject to applicable law or Government Authority.

The following is a partial list of audit violations which could be perpetrated by a Network Pharmacy Provider resulting in Claims being recovered in total and no reimbursement will be forthcoming for what was actually dispensed. In addition, and where cumulative errors rise to the level of negligence or potential FWA, as determined solely by Administrator, legal or other action may be taken against the Network Pharmacy Provider, including immediate termination of the Agreement:

- Billing for a Brand Name Drugs and dispensing Generic Drugs
- Billing of an NDC for other than what was dispensed
- Overbilling of quantity prescribed
- Inappropriate billing of Compound Drugs
- Claims for Covered Prescription Services that include as a component of the Compound Drug a NDC for a repackaged drug; or
- Drugs imported or reimported into the United States, including bulk powders utilized in Compound Drugs where part of the final Compound Drug dispensed is composed of an imported component are subject to full recovery
- Undocumented substitution
- Non-covered item billed as covered
- Duplicate Claim billed
- Billing for more Drug Products than dispensed (pill shorting)
- Submitting Claims for Drug Products not rendered and/or prescribed
- Submission of dummy DEA/NPI or Invalid DEA/NPI numbers to obtain a paid response
- Billing Claims for more fills or refills than were authorized or illegal refill of a schedule II narcotic Prescription Covered Prescription Services filled after their legal time limit
- Billing for invalid Prescriptions due to lack of a legal Prescriber, forgery, or false or fictitious documents
- Covered Prescription Services filled incorrectly based on original order
- Refills too soon that were paid due to a prior days' supply violation
- Inability to locate the original Prescription (missing)
- Covered Prescription Services lacking sufficient proof of delivery to Member
- Covered Prescription Services where a Member denies receiving Drug Products billed

- Covered Prescription Services where Prescriber denies prescribing Drug Products billed
- Covered Prescription Services returned to stock but not reversed
- Prescriptions missing date written, or filled before date authorized
- Prescriptions missing Prescriber signature
- Prescription missing any other required information by federal/state government or is otherwise not a legal Prescription
- LTC Network Pharmacy Provider billing for unused Drug Products and not applying credit to Member
- Drug Product to be billed under Medicare Part A or Part B versus under Part D
- Inappropriate, inaccurate or incomplete record-keeping practices related to billed Prescriptions
- As-directed/UD SIGS: Network Pharmacy Provider must submit an accurate day's supply based on Prescriber's directions for use. In cases where directions are not specific, such as "Use as Directed", "UD", etc., Network Pharmacy Provider must obtain clarification from the Prescriber as to the specific directions on which to base the correct days' supply submitted for the quantity billed. Specific directions must be noted on the Prescription hard copy or in Network Pharmacy Provider's electronic records system
- Use of coupons when prohibited by Benefit Plan including, but is not necessarily limited to, programs funded by the federal government (e.g. Medicare, Retiree Drug Subsidy (RDS) plans and Medicare Part D)
- Inappropriate billing of prescriptions that were intended to be reversed (e.g. test claims, patient did not want prescription).
- Inappropriate billing of prescriptions that may impact a patient's safety (e.g. over the maximum recommended dosing per the manufacturer package insert without consultation with the prescriber).

The following is a partial list of audit violations which could be perpetrated by a Network Pharmacy Provider where Claims will be recovered for a partial reclaim of the Covered Prescription Services or recovered in total if a pattern of Abuse is evident. In addition, legal or other action may be taken against the Network Pharmacy Provider, including termination of the Agreement:

- Overbilling of quantity in relation to days' supply that exceeds plan maximums, or not in conformance with that prescribed.
- Billing for larger pack sizes when one smaller pack size will meet the directions of the Prescriber and remain within the Benefit Plan's maximum days' supply
- Prescription splitting or changing the days supply to obtain multiple dispensing fees or undermine Prior Authorization or quantity limits, etc.
- Billing multiple lower strengths when one higher strength Drug Product is prescribed.
- Billing for a brand name Drug with DAW 1 when a Prescriber has not specified "Do Not Substitute" on the prescription, or other inappropriate use of DAW codes.
- Again, the above is only a partial listing of sample audit violations. For a more complete list with expanded descriptions, please see the Appendix E.

Administrator reserves the right to assess a penalty equal to the entire amount of the Claim (including copayment) for each violation, in addition to the Covered Prescription Services value or difference in billing being recovered.

Material repetition or pattern of practice of any given category of audit violation or the material combination of different categories of violations discovered during an audit may subject Network Pharmacy Provider to further disciplinary action potentially including termination from Administrator Network(s).

Instances of alleged FWA discovered during audit shall subject Network Pharmacy Provider to immediate termination.

Withheld amounts due to audit findings that are not documented within three (3) months are subject to refunding to Clients without further appeal.

Subject to applicable Law, Administrator at its sole discretion may suspend Claims payments to Network Pharmacy Provider for an indefinite period of time on behalf of any or all Benefit Plan Sponsors, including but not limited to when at the request of any Government Authority, direction by subpoena, non-response to an audit request, pending the outcome of an Audit and/or reasonable belief Network Pharmacy Provider is engaged in fraudulent or illegal activity.

OPTUMRx

**Prescription Origin Code Claim Submission**

Administrator routinely performs audits of Claims for Covered Prescription Services submitted by Network Pharmacy Providers. Discrepancies found during an audit may be subject to recoupments depending on the nature of the findings. This information is intended to educate Administrator Network Pharmacy Providers on how to correctly submit Prescription Origin Code in conformance with the NCPDP and Administrator requirements.

Please submit one of the following data elements within Prescription Origin Code (419-DJ):
1 = Written
2 = Telephone
3 = Electronic
4 = Facsimile (Fax)

Claims submitted for a Prescription missing one (1) of these values will reject with the following NCPDP Rejection Code 33 — "RX ORIGIN CODE CANNOT BE "0" ON NEW CLM".

If rejection occurs, please resubmit the Claim with the appropriate value.

**Pharmacy Audit Review Committee (PARC)**

Administrator maintains an ongoing Pharmacy Audit Program to ensure Network Pharmacy Providers are in compliance with their Pharmacy Services Agreement. Administrator has established PARC, an internal hearing process that is independent of the particular individual Auditor who conducted the audit, allowing an audited Network Pharmacy Provider to submit a request for reconsideration of an unfavorable final audit determination involving only non-FWA findings. The PARC process is not applicable or available to Network Pharmacy Providers going through or that have completed the termination and appeal process, disciplined or otherwise the subject of an investigation for other reasons associated with suspected fraud, waste or abuse, including prescriber denials, member denials, or inventory shortages.

Network Pharmacy Provider must respond to the initial audit request and exhaust any and all appeal options to qualify for a PARC review. Please be aware, the PARC process is not a vehicle for submission of new materials for inclusion in the audit review; however, is designed to provide a re-determination of previously submitted documentation during the standard audit process. New materials submitted to the PARC will not be reviewed by the Committee.

Pharmacies that disagree with Administrator's final audit findings and are eligible for a PARC review are given a one-time opportunity to respond to final audit findings by submitting a written request for reconsideration within thirty (30) calendar days from the date of the final audit report.

Requests for reconsideration are submitted to and reviewed by the PARC, which is comprised of pharmacists and other professionals from within Administrator but otherwise not involved in the audit being reviewed.

Administrator has the right to assess reasonable fines, penalties and fees to cover unexpected costs. These actions may include the imposition of fines or penalties due to repeated audits, probation, termination from the network and corrective action plans. Administrator may begin offset of audit finding amounts against any future payments due to Network Pharmacy Provider and impose certain fines or penalties prior to the outcome of the PARC process.

If a Network Pharmacy Provider is not in agreement with Administrator's final audit findings not related to FWA findings and would like to request a review by the PARC, please contact Administrator at PARC@optum.com to request a copy of the PARC Audit Review Request Form and instructions.

**LTC Providers**

Administrator reserves the right to audit a LTC Network Pharmacy Provider's books, records, Prescription files, and signature logs for the purpose of verifying Claims submission information. LTC Network Pharmacy Providers are required to have a signed Prescriber's order available for audit. These orders may be in the form of a standard prescription or copies of signed Prescriber's orders from a medical chart.

Documentation of a valid prescription order shall be comprised of a signed Prescriber's order and a medication administration record (MAR) for a time period that supports the audited dates of service. All signed Prescriber's orders must be supplemented by a MAR to help ensure members are receiving the appropriate therapy and not therapy that has

been discontinued or changed since the last Prescriber's order. This is in line with CMS requirements for long term care facilities and the NABP Model Act regarding chart orders. Network Pharmacy Providers are expected to adhere to these requirements for what constitutes a valid prescription order unless otherwise specified in applicable state laws and regulations. Record retention is important, and timely retrieval of these documents shall be in compliance with audit requirements.

LTC Network Pharmacy Providers are not required to have a signature from the member as proof of receipt. However, LTC Network Pharmacy Providers must have delivery logs, manifests or other Administrator approved proof of delivery of Covered Prescription Services to facilities readily available during an audit.

Abuse of the Short Cycle Dispensing regulations as defined by CMS and implemented on 1/1/2013, will be subject to audit and recovery of overpayments resulting from abuse and any attempt to achieve multiple dispensing fees based on days' supply manipulation. Administrator may also audit to find attempts to gain more than two (2) dispensing fees in a one (1) month period.

LTC Network Providers must dispense drugs and report information as required by 42 CFR §423.154. Administrator shall reimburse LTC Network Pharmacy Providers in accordance with 42 CFR §423.154.

## C. Data Accuracy

Entry of the Prescriber and Member information is paramount in being able to identify true occurrences of fraudulent and abusive practices, as well as reduction in waste associated with payment of Claims for excluded Prescribers.
For additional information regarding data accuracy, see Processing Claims section. Network Pharmacy Provider agrees to follow all federal and state requirements, including Medicare and Medicaid rules, accurate submissions and temporary supply rules which are mandated by many of these programs. In addition, Network Pharmacy Provider will facilitate when professionally capable or provide a valid reason for their inability to participate in a state Medicaid Benefit Plan's Lock–In program for its membership.

## D. OIG/GSA/Preclusion List Validations

Network Pharmacy Provider must have a policy and procedure for checking the Office of Inspector General's (OIG) — U.S. Department of Health & Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE) or General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS) to confirm Network Pharmacy Provider does not employ or contract with any individual or entity which is excluded from participation in federal programs. LEIE and EPLS verifications must be conducted at least monthly and upon initial hire or contracting. If Network Pharmacy Provider discovers an individual or entity responsible for the provision of pharmacy services is on the LEIE or EPLS as excluded, Network Pharmacy Provider must report this issue and all the Claims associated with the excluded individual or entity to Administrator Provider Relations at: provider.relations@optum.com.

In addition, Network Pharmacy Provider hereby verifies and certifies the Network Pharmacy Provider has not been excluded from participation in federal health care programs by checking its status in Federal programs exclusion lists maintained by the Office of Inspector General's (OIG) — U.S. Department of Health & Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE) or General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS).

This information is available at the following sites:

- Office of Inspector General's (OIG) — U.S. Department of Health & Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE) — oig.hhs.gov/exclusions/index.asp
- Centers for Medicare & Medicaid (CMS) – Preclusion List- Please be aware that Medicare Advantage and Part D Plan sponsors are prohibited from paying claims for entities included in the Medicare Preclusion List. Notifications will be issued to impacted entities if we determine the prescriber or other entity is on the Preclusion List and claims will not be paid.
- General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EP LS) — sam.gov/portal/SAM/#1

You are required to report any suspected or potential FWA.

 To report an incident, please contact the Pharmacy Network Relations Department at 1-800-613-3591 or via email to pharmacyprograms@optum.com.

Client(s) or Benefit Plan Sponsors, FDR entities (including Network Pharmacy Providers) should initiate an inquiry immediately, but no more than two (2) weeks from the date a potential fraud matter is identified. If, upon investigation, the Network Pharmacy Provider believes potential misconduct has occurred, the Network Pharmacy Provider may also report the alleged activity to any of the following:

- Customer service number identified on the back of a Member's ID card
- National Benefit Integrity Medicare Drug Integrity Contractor (NBI MEDIC) — 1-877-7SAFERX (1-877-772-3379)

# IX.   Pharmacy Network Participation Requirements



## A. Network Pharmacy Provider Participation

Administrator appreciates your participation in its pharmacy network and your role in delivering quality pharmacy Covered Prescription Services to our Members. As a Network Pharmacy Provider, you are responsible for monitoring and complying with all changes to the PM. Failure to adhere to any of the provisions, as well as the terms of the Agreement, which includes this PM and all other applicable documents, will be viewed as a breach of the Agreement.
Network Pharmacy Provider agrees to abide by the terms of the PM, comply, participate with Administrator and/or its Client's to research, as well as resolve network related issues (i.e. Claim reversal/resubmission requests, Member's complaints, grievances and/or appeals).

Network Pharmacy Provider shall maintain adequate inventory of prescription Drug Products and supplies.
In the event of any request pertaining to network participation, service inquiries or any additional concerns which may relate to Covered Prescription Services for our Members, Network Pharmacy Provider must respond to expedited requests within three (3) business days and routine requests within ten (10) business days of receipt or as required by law/regulation. An expedited request is defined as any inquiry impacting the Member's ability to obtain their Covered Prescription Services and/ or inquires involved in assessing quality of care, investigating a Members' grievances or complaints.

Network Pharmacy Provider shall provide Administrator with any report(s), data or other information which Administrator may reasonably request in a format, via a medium, and at a frequency reasonably determined by Administrator or Administrator's Clients or as otherwise required by applicable laws and regulations. Network Pharmacy Provider shall be responsible for the integrity and accuracy of all data furnished or transmitted by Network Pharmacy Provider to Administrator or Claims Processor, and shall correct all errors in such data within ten (10) business days of being made aware thereof. To the extent such reports, data or other information is required for compliance with applicable laws and regulations, including but not limited to Medicare Laws and Regulations, Network Pharmacy Provider shall certify as to the accuracy and validity of such report, data or other information prior to submission to Administrator. If Network Pharmacy Provider fails to timely comply with providing Administrator with any reports, data or other information required by applicable laws or by any Government Authority, Network Pharmacy Provider shall reimburse Administrator for any penalty, fine, etc. incurred by Administrator or Administrator's Clients.

**Note**: Network Pharmacy Provider's participation in an Administrator or Client network shall not guarantee participation in all networks. Administrator reserves the right to limit Network Pharmacy Provider's (and any of its pharmacies) participation in a network in its sole discretion.

Network Pharmacy Provider understands Administrator is relying on its participation in applicable networks and as such shall not be allowed to opt-out of any networks without the written consent of Administrator, unless the ability to opt-out is otherwise required by applicable law.

A Network Pharmacy Provider shall be required to adhere to all requirements set forth in Risk Evaluation and Mitigation Strategies (REMS) programs defined by the Food and Drug Administration (FDA). Network Pharmacy Provider shall maintain appropriate documentation as to provide evidence the requirements of a REMS program were satisfied during the dispensing of any Drug Products associated with program.

## B. Prohibited activities by Network Pharmacy Provider and Associated Penalties

Network Pharmacy Provider is subject to penalties or sanctions in the event it is determined by Administrator during communications between Network Pharmacy Provider and an existing client or a potential Client: (i) Network Pharmacy Provider disclosed confidential information to a Client or a potential Client or (ii) disrupted an Administrator relationship with its existing client or with a potential client. Penalties shall be invoked in amounts at a minimum of $5,000 per incident/per day, may be subject to additional actions taken by Administrator, including, as well as up to termination from participation, withdrawal and/or the holding of funds as deemed necessary by Administrator.

### Non-Solicitation
Any violation of this non-solicitation section shall be deemed a material breach and Administrator shall have the right to terminate the Agreement with respect to Network Pharmacy Provider or any of its individual locations or impose penalties

as Administrator deems appropriate to address such violations, in addition to any other rights Administrator has in the Agreement, at law or in equity.

Network Pharmacy Provider will refrain from advising or soliciting any Members with plans utilizing Administrator for any reason, including, but not limited to improving compensation.
Network Pharmacy Provider will refrain from advising, counseling or soliciting any plans to terminate its relationship with Administrator for any reason, including, but not limited to improving compensation level or the termination of this Agreement.

Network Pharmacy Provider may not obtain its patients via cold-calling or unsolicited methods of obtaining a Member's billing information or to make offers of contacting the Member's Prescriber. All submission of Claims for a fill or refill of a Drug Product by Network Pharmacy Provider must be initiated in accordance with a Member's knowledge and authorization.

Network Pharmacy Provider shall not solicit, as a matter of routine business practice: a member for mail delivery or deliver any Covered Prescription Services to a member by mail (e.g. UPS, USPS, Fed-Ex), directly or indirectly utilize any unmanned or manned aerial vehicle, machine or device, including drones and/or any autonomous vehicles and/or third-party rideshare or delivery services including Uber, Lyft, Doordash, Grubhub, except upon the advance written approval of Administrator, which approval may be refused at Administrator's sole discretion.

**Non-Compliance**
Network Pharmacy Provider must provide Covered Prescription Services related to a covered item to all Members of all Benefit Plan Sponsors in compliance with the PM and as set forth within the Agreement. Non-compliance may include, but is not limited to, the disclosure of confidential information or data, submitting an incorrect DAW code, submitting an inaccurate U&C price, submitting incorrect Claim submission data, submitting an incorrect NDC number, the collection of a patient pay amount that differs from the amount specified in the Claims response, failure to dispense an emergency supply of a covered item to a Member as required by law, failure to dispense covered Drug Product based on reimbursement received and the refusal to accept an identification card for a Member.

Should the Network Pharmacy Provider be deemed noncompliant, certain remediation actions may apply, including, but not limited to a corrective action, probation, termination of the Agreement and any other available recourse.
Should the Network Pharmacy Provider's actions or inactions result in any fees, interest penalties, damages, withholds, judgments, financial obligations or other charges imposed upon Administrator, such shall be paid in full by Network Pharmacy Provider within the time period specified by Administrator.

For each network requirement for which the Network Pharmacy Provider is deemed noncompliant, Administrator in its sole discretion may assess against Network Pharmacy Provider up to a $100 administration fee per occurrence. Administrator reserves the right to offset against any amounts owed to Network Pharmacy Provider and any such amounts owing to Administrator for discrepant Claims or other charges for non-compliance or audit-related costs.

**Termination and Appeal Process**
Except for non- renewal of the Agreement at the end of a term thereof, Network Pharmacy Providers terminated in accordance with the Agreement or PM will be provided a written notice describing the reason(s) for such termination and an opportunity to request a hearing to appeal such termination.

Network Pharmacy Providers terminated from participation may apply for reinstatement after five (5) years from the date of such termination. Such reinstatement is at Administrator's sole discretion.

Termination of Network Pharmacy Providers participation in the Agreement for any reason pursuant shall not affect the rights and obligations of the parties arising out of any transactions occurring prior to the effective date of such termination.

After the effective date of Network Pharmacy Providers termination of participation in the Agreement in its entirety, Network Pharmacy Provider shall make an accounting of all monies due hereunder to Administrator or any Client and shall pay such amount due to Administrator, including payment for any non-Clean Claims or outstanding balances from reversed, but not reprocessed Claims.

OPTUMRx®

Network Pharmacy Provider acknowledges the right of Administrator or Administrator's Clients to inform Client's Members of Network Pharmacy Provider's termination, suspension, limitation, exclusion or revocation and agrees to cooperate with Administrator and/or Administrator's Clients with transferring any Prescriptions to a Network Pharmacy Provider.

**Delegation and Off-Shoring**
Network Pharmacy Provider shall not delegate or offshore any service, activity or other obligation required of it under the Agreement, as amended, (including the provision of Covered Prescription Services by Network Pharmacy Provides to Plan Members), to an Affiliate or third party, without the prior written consent of Administrator (which consent shall not be deemed to create any liability for Administrator whatsoever unless otherwise required by applicable law), and when necessary, all applicable Clients, as determined in the sole and absolute discretion of each of them, as may be communicated by Administrator. No consent may be obtained until Administrator has received a fully executed copy of each agreement between Network Pharmacy Provider and a delegate that relates to the proposed delegation. Any such agreement must provide that it will terminate (i) completely if Administrator revokes an agreement on the delegation or (ii) as to an affected Client if the Client revokes the delegation. Any such delegation, if consented to (an "Approved Delegation"), shall be performed by the delegate in accordance with the Clients' respective contractual obligations and in accordance with Network Pharmacy Provider's contractual obligations hereunder. Network Pharmacy Provider agrees that any agreements of Network Pharmacy Provider with respect to an Approved Delegation shall be in writing, signed by the parties to be bound thereby and in compliance with all applicable laws and regulations. In the event that a delegate of Network Pharmacy Provider fails or is unable (for any reason whatsoever) to perform in a satisfactory manner any services, activities or other obligations which have been sub-delegated pursuant to an Approved Delegation, then Administrator or any affected Client shall have the right to suspend, revoke or terminate such Approved Delegation effective upon the date set forth in a written notice furnished to Network Pharmacy Provider and Network Pharmacy Provider shall continue to be responsible to perform such duties and obligations of the Agreement. Additionally, an affected Client shall have the right to institute corrective action plans or seek other remedies or curative measures respecting the unsatisfactory Approved Delegation consistent with applicable laws and regulations. Any attempted sub-delegation by Network Pharmacy Provider which is not an Approved Delegation shall be null and void and of no force or effect.

# C. Credentialing and Quality Management

All Network Pharmacy Providers must comply with credentialing and quality management initiatives required by Administrator. Network Pharmacy Provider agrees to provide Administrator with documentation and other information which may be needed in connection with such initiatives.

Administrator is partnering with NCPDP as the aggregator of credentialing and 42 CFR 455 required data for participation in Administrator's provider networks. All Network Pharmacy Providers are required to update/maintain both Part 1 and Part 2 of their pharmacy profile online with NCPDP, in addition to their demographic and service information.

Administrator may require, at its sole discretion, pharmacies applying to participate in Administrator's provider networks to complete and maintain both Part 1 and Part 2 of their pharmacy profile online with NCPDP in lieu of Administrator's proprietary Credentialing Application. This information includes, but is not limited to, the social security numbers (SSN) and dates of birth of all applicable persons per Part 2 of the pharmacy's profile online with NCPDP.

Administrator may deny or terminate Network Pharmacy Providers from participation in any or all networks for failure to complete, maintain or provide accurate information with NCPDP, including Part 2 of the pharmacy's online profile.

Administrator has the right to reasonably determine, in its sole discretion, whether or not Network Pharmacy Provider meets/maintains the appropriate credentialing, as well as quality management standards to serve as a Network Pharmacy Provider for Administrator, its Clients and Benefit Plan Sponsors.

Administrator abides by applicable state guideline requirements for credentialing and re-credentialing completion time. Administrator may request copies of all documents required for the credentialing of a Network Pharmacy Provider at any time. Appropriate documents must be provided within forty-eight (48) hours of request.

- Network Pharmacy Provider and each pharmacy location covered under the Agreement, as well as this PM, must meet all standards of operation as described in federal/state law.
- Network Pharmacy Provider must at all times maintain in good standing with all federal, state, as well as local licenses and/or permits as required by applicable law. Network Pharmacy Provider must furnish copies of said licenses and/or permits upon initial enrollment as a Network Pharmacy Provider with Administrator and subsequent requests by Administrator. Network Pharmacy Provider may be required to maintain an unrestricted DEA registration for all controlled substances as determined by Administrator. Failure to maintain the appropriate licenses and/or permits will result in immediate termination as a Network Pharmacy Provider.
- Network Pharmacy Provider must notify Administrator in writing if:
  - Network Pharmacy Provider's license/permit is in jeopardy of being suspended or revoked.
  - Network Pharmacy Provider receives notice of any proceedings which may lead to disciplinary action.
  - Any disciplinary action is taken against Network Pharmacy Provider or any of its personnel, including but not limited to, action taken by a Board of Pharmacy, OIG, GSA, law enforcement or other regulatory body;
  - There is a subpoena of records related to Covered Prescription Services or Network Pharmacy Provider's business conduct; or
  - There is a seizure by law enforcement of Network Pharmacy Provider's Prescription records, computer systems, financial records, accounts or real property.
- Re-credentialing is completed every three years.

**Note**: Network Pharmacy Provider must provide notice to Administrator within seven (7) days of the occurrence or earlier per the Agreement and include information regarding the agency conducting the investigation, if applicable. Failure to timely and properly notify Administrator may result in immediate termination of the Agreement or suspension as a participating Network Pharmacy Provider pharmacy location. Administrator may, in its sole discretion immediately suspend, pending further investigation, the participation status (which may include temporary payment withholding or Claims adjudication suspension) of Network Pharmacy Provider if Administrator has reason to believe Network Pharmacy Provider has engaging in or is engaging in, any behavior which:

1. Appears to pose a significant risk to the health, welfare, or safety of Members or the general public;
2. Implies a failure to maintain proper licensure and related requirements for licensure; or
3. Otherwise reflects negatively upon the Network Pharmacy Provider's ability to fulfill the requirements of the Agreement.

**Independent Pharmacy Credentialing**
In order to become an independent Network Pharmacy Provider, Pharmacy must submit a credentialing application, complete a Disclosure of Ownership and Control Interest Statement form, complete a Credentialing and Re-Credentialing Application Fee form, meet the Administrator credentialing requirements and be able to comply with the requirements of the Agreement and PM. All Network Pharmacy Providers shall be credentialed pursuant to the Administrator credentialing policy prior to submitting any Claims for Covered Prescription Services.

Network Pharmacy Provider shall be responsible for paying the Credentialing and Re-Credentialing Fee upon initial application to contract with Administrator and upon full re-credentialing, when applicable. Each of the Credentialing/ Re-Credentialing Fees are subject to change by Administrator. Network Pharmacy Provider agrees any applicable Credentialing/Re-Credentialing Fee may be deducted and recouped from any Prescription Drug Compensation due to Network Pharmacy Provider hereunder.

To reach the Credentialing department, please contact the Administrator at:

Pharmacy Network Credentialing Department
2300 Main Street
(MS: CA134)
Irvine, CA 92614
Telephone: 1-877-633-4701 / Fax: 1-877-593-5368 / Email address: pharmacycredentialing@optum.com

**Mail Delivery Pharmacy Additional Credentialing Requirements**
Any pharmacy requesting mail order pharmacy network access must execute the Mail Order Pharmacy Network Agreement, pass Mail Order Pharmacy Credentialing, be licensed in all states the pharmacy Mails into and agrees to the terms and conditions of the Mail Order Pharmacy Agreement. At a minimum, pharmacy must be accredited with NABP

Digital Pharmacy Accreditation, formerly known as VIPPS and accredited by URAC, formerly known as Utilization Review Accreditation Commission or Accreditation Commission for Health Care (ACHC) for the applicable accreditation.

Additional information regarding these organizations and criteria for certification may be found at the following websites:
- **NABP ADP:** https://nabp.pharmacy/programs/digital-pharmacy/
- URAC: urac.org
- ACHC: achc.org

## Specialty Credentialing

Some Client's and Benefit Plan Sponsors may adopt a Specialty Credentialing Program for Network Pharmacy Providers participating in a Retail Pharmacy network. Network Pharmacy Provider must supply acceptable reference documentation to meet Administrator's Specialty Pharmacy Network requirements. If Network Pharmacy Provider wishes to participate in the routine dispensing of Specialty Drug Products, Network Pharmacy Provider should request credentialing materials from Administrator. Administrator may prohibit Network Pharmacy Providers who have not satisfied all of the requirements of the Specialty Credentialing process. Obtaining Specialty Credentialing may not grant access by Network Pharmacy Provider to dispense Specialty Drug Products for all Clients or Benefit Plan Sponsors.

 To obtain information on Specialty Credentialing, please contact: specialty.credentialing@optum.com.

## Compound Credentialing

Compound Credentialing Administrator requires Network Pharmacy Providers to meet additional credentialing requirements prior to being allowed to process Compounded Drug Claims. Administrator will accept credentialing from a third-party entity which is subject to change at Administrator's sole discretion. Network Pharmacy Providers will be required to meet and maintain all of the credentialing standards established by Administrator and/or the third-party credentialing entity (i.e. PCAB or NABP's compound accreditation). Network Pharmacy Providers will also be required to meet an ethics management compliance review, which includes, but is not limited to, a review of business operations, sales/marketing conduct, and compounding code of conduct, an on-site facility review and compliance with applicable laws such as Anti-Kickback, Stark law, as well as federal/state pharmacy practices requirements.

Network Pharmacy Providers must maintain compliance with all credentialing requirements and standards of practice set forth by Administrator or the third-party vendor. Failure to maintain compliance with the requirements and standards may result in administrative action up to and including the termination of the Agreement. All Network Pharmacy Providers, including those credentialed, must meet abide by Section Compounding pharmacy participation in retail networks.

 To obtain information on Compound Credentialing, please contact: nccp.credentialing@optum.com

## PSAO Credentialing Requirements

If you are a PSAO or a pharmacy contracted with a PSAO for participation in Administrator's networks: A PSAO must certify pharmacies affiliated with the PSAO meet the Administrator's requirements, including the presence of an ongoing policy to ensure the pharmacies meet these requirements and abide by the Agreement, as well as the PM.

 Failure to meet these duties and obligations may result in termination of such PSAO Agreement or a Network Pharmacy Provider.

- PSAO shall require all affiliated Network Pharmacy Providers to update, maintain and complete pharmacy's NCPDP online profile, including Part 2.
- PSAO maintains a credentialing program for itself and each of the member pharmacies.
- PSAO and Network Pharmacy Provider agree Administrator, as well as Administrator's Clients have the right to monitor and oversee PSAO's credentialing program.
- Accordingly, upon reasonable advance notice, PSAO and Network Pharmacy Provider will provide Administrator, as well as Administrator's Clients with on-site access to all records maintained by PSAO relating to the credentialing of each Network Pharmacy Provider, including all Pharmacists which provide Covered Prescription Services to Members or, at Administrator's election, PSAO shall provide Administrator with copies of such records

OPTUMRx®

(e.g. then- current credentialing policies and procedures) and/or certifications of PSAO's compliance with these requirements.

- PSAO and Pharmacy acknowledges Administrator or Administrator's Clients may independently verify licenses, insurance coverage, any debarment or disciplinary action related to all Network Pharmacy Providers and Pharmacists who provide Covered Prescription Services to Members.

- Upon request, PSAO shall submit credentialing information specified in the credentialing requirements document or the Agreement, to Administrator within five (5) days following the execution of the Agreement so Administrator, as well as Administrator's s Clients may determine whether Administrator and Network Pharmacy Provider have met Administrator's credentialing requirements.

- PSAO shall maintain a compliance monitoring program pursuant to which the PSAO, on no less frequently than an annual basis, verifies the Network Pharmacy Provider DEA licenses, insurance coverage, government program exclusions, debarment, including any disciplinary action related to all Network Pharmacy Providers, pharmacy owners, as well as personnel utilized by PSAO and Network Pharmacy Provider to provide Covered Prescription Services to Members. PSAO agrees to provide updated information relating to such matters to Administrator upon change.

- PSAO shall ensure to the best of PSAO's knowledge, any PSAO Pharmacy (including PSAO Pharmacies currently in the network and new PSAO Pharmacies included in the network) location, pharmacy, pharmacist, subcontractor, or other personnel furnishing (or which will furnish) Covered Prescription Services to Members have been or will be (i) listed as debarred, excluded, or otherwise ineligible for participation in federal health care programs or (ii) convicted of a criminal felony. If at any time PSAO becomes aware of any violation of this representation and warranty, PSAO shall notify Administrator immediately in writing and shall prevent such personnel or pharmacy location from providing Covered Prescription Services to Members by requesting an immediate termination of such pharmacy location by Administrator.

- If PSAO or Network Pharmacy Provider itself becomes debarred, excluded or otherwise ineligible or if PSAO or Pharmacy has not taken the actions required of it in the preceding sentence, the Administrator may immediately terminate the Agreement upon written notice to PSAO without liability to Administrator or Administrator's Clients or take such other corrective or remedial actions as Administrator reasonably believes is appropriate.

**Minimum Credentialing Requirements for Pharmacies Participating Through a PSAO**

- Network Pharmacy Provider is duly licensed in the applicable state of residence
- Network Pharmacy Provider has a DEA License (unless exception granted by Administrator)
- Network Pharmacy Provider maintains minimum liability insurance of $1,000,000 per occurrence /$3,000,000 aggregate (self-insurance not allowed for Pharmacies contracted through a PSAO)
- Owners of Network Pharmacy Provider or Network Pharmacy Provider are prohibited from participating in state and federal programs when found on either the Office of Inspector General's (OIG) — U.S. Department of Health & Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE), as well as the General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS)
- Network Pharmacy Provider has no sanctions or limitations that would prohibit Network Pharmacy Provider from performing in accordance with the terms and conditions of the Agreement
- Network Pharmacy Provider meets the terms and conditions for participation in the applicable Agreement
- Pharmacist-in-Charge has all appropriate state and federal licenses
- Pharmacist-in-Charge and any Pharmacist or other personnel are prohibited from participating in federal/state programs when found on either the Office of Inspector General's (OIG) — U.S. Department of Health & Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE), as well as the General Services Administration(GSA)
    - System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS)
- Pharmacist-in-Charge maintains minimum insurance levels specified by state
- Pharmacist-in-Charge has no restrictions, limitations or sanctions within the most recent three-years

**Additional Credentialing Requirements for HI Pharmacies Participating Through a PSAO**

PSAOs contracted with Administrator for the Medicare Part D Home Infusion (MPD HI) Pharmacy Network are required to ensure each Network Pharmacy Provider associated with the MPD HI Pharmacy Network provides Infusion Therapy services and meet the definition of HI Pharmacy defined in this PM, as well as applicable CMS regulations.

CMS requires Medicare Part D Sponsors to validate the HI Pharmacy provides most Infusion Therapy Covered Prescription Services including the following requirements:

- Deliver Infusion Therapy Drug Products in a form which can be easily administered in a clinically appropriate fashion;
- Provide Infusion Therapy Part D Drug Products for both short-term acute care and long-term chronic care therapies;
- Ensure the professional services and ancillary supplies necessary for the provision of Infusion Therapy are in place before dispensing Infusion Therapy Drug Products, consistent with the quality assurance requirement for Medicare Part D Sponsors described in 42 CFR 423.153(c);
- Provide Infusion Therapy Covered Prescription Services within twenty-four (24) hours of discharge from an acute setting, unless the next required dose, as prescribed, is required to be administered later than twenty-four (24) hours after discharge; and
- HI Pharmacy has a "clean room" and "hood" capable of compounding sterile Drug Products. In addition, Administrator encourages PSAOs to require each HI Pharmacy to:
- Ensure NCPDP dispenser type code indicates HI Pharmacy
- Update National Plan and Provider Enrollment System (NPPES) taxonomy code indicating HI Pharmacy —
- https://nppes.cms.hhs.gov
- Obtain accreditation for providing Infusion Therapy services by an applicable accreditation organization

**Chain Pharmacies**

In order for Chain Network Pharmacy Providers to participate, the Chain headquarters must submit a credentialing application, meet the Administrator credentialing requirements as specified in the credentialing application and be able to comply with the requirements of the Agreement, as well as Administrator PM. All Network Pharmacy Providers shall be licensed pursuant to the Administrator credentialing policy prior to submitting any Claims.

Administrator maintains the right to independently verify the credentials of any Network Pharmacy Provider, Network Pharmacy Provider Owner or Pharmacist, including requesting credentialing documentation directly from individual Network Pharmacy Providers, as well as performing on-site visits to establish the credentials of any Network Pharmacy Provider, Pharmacist or Owner of a Network Pharmacy Provider.

**Additional State and Plan Requirements**

All Network Pharmacy Providers contracting to participate may be subject to additional credentialing requirements to participate in particular plans or networks, including Medicaid and Medicare Benefit Plans. Administrator reserves the right to require additional credentialing information from a pharmacy, as applicable, in order for pharmacy to participate in such Benefit Plan.

In addition to credentialing, federal regulations apply to Network Pharmacy Providers, individuals or entities which have been excluded from federal program participation as evidenced by listing in the Office of Inspector General's (OIG) — U.S. Department of Health & Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE) or General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS).
Network Pharmacy Providers must check these lists upon hire and at least monthly to ensure employees working with Medicare and Medicaid Benefit Plans have not been excluded from federal program participation.

Network Pharmacy Provider staff can check these lists by using the following:

- Office of Inspector Generals (OIG) — U.S. Department of Health & Human Services (HHS) ~ List of Excluded Individuals/Entities (LEIE) —oig.hhs.gov/exclusions/index.asp
- Centers for Medicare & Medicaid (CMS) – Preclusion List- Please be aware that Medicare Advantage and Part D Plan sponsors are prohibited from paying claims for entities included in the Medicare Preclusion List. Notifications will be issued to impacted entities if we determine the prescriber or other entity is on the Preclusion List and claims will not be paid.
- General Services Administration (GSA) — System for Award Management (SAM) ~ Excluded Parties Listing System (EPLS) — sam.gov/portal/SAM/#1

**Enhanced Credentialing**

Administrator or its designee, at Administrator's sole discretion, may perform an in-depth level of credentialing of pharmacies, including on-site visits (i.e. enhanced credentialing) prior to or after contracting and participation in some or

all of Administrator's networks, including Medicare Part D, as well as Medicaid networks. Successful completion of enhanced credentialing may be a prerequisite in select CMS designated and surrounding areas. Enhanced credentialing applies to both directly and in-directly contracted pharmacy locations. Network Pharmacy Provider, their PSAO, if applicable, agree to cooperate with Administrator or its designee with the enhanced credentialing process and acknowledge non-cooperation with such enhanced credentialing process, or failure to pass enhanced credentialing may result in denial, exclusion or termination of network participation for a minimum of one (1) year.

As a Network Pharmacy Provider you are required to provide, when requested by Administrator, a complete dispensing history for period of time requested, which may include a period prior to being a contracted provider. Dispensing information shall include all prescription transactions, regardless if billed directly to the Administrator. The provided report shall not include any Protected Health Information (PHI) of Members or any financial or payments made to the Provider. Administrator may require, at its sole discretion, affiliated Network Pharmacy Providers undergoing enhanced credentialing to complete all of their credentialing information with NCPDP in lieu of Administrator's proprietary Credentialing Application. This information includes, but is not limited to, the social security numbers (SSN) and dates- of-birth of all applicable persons per the NCPDP credentialing format.

**Onsite visit**
Administrator or its designee shall have the right, with or without notice, at reasonable times, to access, inspect, and review on-site the facilities, licenses and credentialing documents/records of Network Pharmacy Providers and pharmacy locations applying to participate in any of Administrator's Benefit Plans, as well as make copies of the licenses credentialing documents/records etc. maintained by pharmacy. Pharmacy agrees to cooperate with Administrator or its designee with the on-site visit and acknowledges non-cooperation with an on-site visit may result in denial or termination of network participation.

**Quality Related Events**
If as a result of a Member complaint, Prescriber response, audit or call center discussion, Administrator identifies a potential quality related event (e.g. medication misfill) and/or quality of service complaint and confirms with Network Pharmacy Provider the occurrence of such dispensing error or service issue. Network Pharmacy Provider will (i) review the information with the Member (ii) document the event/issue based on Network Pharmacy Provider's internal policies and (iii) report the error/service issue to any appropriate regulatory agency (e.g. Institute of Safe Medical Practices (ISMP)/FDA Medwatch). For paid Claims determined to have a quality related event, Administrator reserves the right to reverse the Claim or retract Claim payment.

**Recall Notices / Expired Medications**
In response to all recall notices, the Network Pharmacy Provider maintains the responsibility to monitor recall releases, remove any impacted Drug Product stock from the shelves in a timely manner, notify any Members whom have received Drug Product and document actions taken. Additionally, Network Pharmacy Provider must maintain and document a process to ensure all expired Drug Products are removed from shelf stock routinely.

**Storage of Refrigerated Medication**
Network Pharmacy Provider shall adhere to the following requirement; The refrigerator and freezer are dedicated for the storage of medication items only and shall not be used for the storage of anything else (i.e. food & beverages in open or closed containers as well as any other non-medication items)
Network Pharmacy Provider shall maintain and document a temperature log, electronically or written, of the medication refrigerator and freezer checked at least once per day.

**Pharmacy Temperature and Storage Conditions**
Network Pharmacy Providers shall take appropriate measures to ensure compliance with the following guideline set forth by the USDA regarding medication's therapeutic integrity; "all prescription drugs shall be stored at appropriate temperatures and under appropriate conditions in accordance with requirements, if any, in the labeling of such drugs, or with requirements in the current edition of an official compendium, such as the United States Pharmacopoeia/National Formulary (USP/NF). If no storage requirements are established for a prescription drug, the drug may be held at 'controlled' room temperature, as defined in an official compendium, to help ensure that its identity, strength, quality, and purity are not adversely affected.

**Operation Standards**
- Minimum hours of operation - Network Pharmacy Provider to be open for a minimum of 20 hours per week in order to adequately serve the needs of the OptumRx patients.
- Pharmacy personnel identification (Name tags) - The staff of all Network Pharmacy Providers are required to display on their person- their name and title while on duty.

# D. Pharmacies Contracted Directly with PSAOs

PSAOs are required to perform routine updates of the information regarding their Pharmacy locations in the NCPDP database. This ensures all pharmacies attached to the PSAO are credentialed, contracted and NCPDP maintains complete/accurate information. Administrator relies on the information in the NCPDP database and PSAO attests the information in the NCPDP database is accurate. Actively removing an association of a non-contracted pharmacy from your PSAO does not meet the credentialing requirements set forth by Administrator. PSAOs must remove such non-contracted pharmacy from affiliation in the NCPDP database. PSAO is also responsible for ensuring the integrity of any data and reconciling such information with NCPDP as required. Upon request, Network Pharmacy Provider is required to respond to Administrator within ten (10) business days of a request for documentation necessary to support claims processing or audits by Administrator or Benefit Plan Sponsor (or on behalf of Client or plan) and within thirty (30) days of receipt of Pharmacy Contact Verification forms or the Pharmacy Credentialing Request Form. Network Pharmacy Provider must submit accurate and complete documentation to Administrator within these time periods. PSAOs are further required to share all relevant information upon request from Administrator.

PSAOs shall provide Administrator with up to thirty (30) days prior Notice to adding new Pharmacy locations to their Agreement as Network Pharmacy Providers to provide Covered Prescription Services to Members, which any such new credenialed Pharmacy location shall satisfy and comply with all terms and conditions of this Agreement and subject to Administrator's sole and absolute discretion on approval.

Administrator and Benefit Plan Sponsor, at the sole and absolute discretion of each, may immediately limit or exclude any pharmacy location's participation as a Network Pharmacy Provider for applicable Benefit Plans, including from participation as a Network Pharmacy Provider under the terms and conditions of the Agreement.

Generally across all Benefit Plans, pharmacy locations may be excluded from participation as a Network Pharmacy Provider contracted indirectly with Administrator through a PSAO for the following, including but not limited to, reasons:
- Pharmacy location is a Mail Order Pharmacy or provides Covered Prescription Services to Members by Mailing
- Pharmacy location has been contracted independently with Administrator as a 340Bprovider
- Network Pharmacy Provider has been identified as distributing 340B Drug Products on behalf of a 340B Participating Entity through either a contract or ownership
- Pharmacy location does not maintain a valid DEA License or had its DEA license revoked
- Pharmacy network is state-specific
- Pharmacy network requires Medicaid ID number for participation
- Pharmacy is a compounding pharmacy or a qualified compounding pharmacy

The above Pharmacy locations may contract directly with Administrator as an independent Network Pharmacy Provider. Such Pharmacy locations may email provider.relations@optum.com to request contract.
Administrator shall notify PSAO as soon as reasonably practicable of Benefit Plan Sponsor's or Administrator's decision to disapprove a Pharmacy location for inclusion as a Network Pharmacy Provider in the Agreement or any Benefit Plan or a decision to suspend, revoke or terminate a Pharmacy location from participation in Administrator's or any Benefit Plan or network.

# E. Confidentiality and Proprietary Rights

Network Pharmacy Providers agree to keep confidential and proprietary the following:

- Terms of the Agreement and documentation related to the performance of the Agreement, including, and without limitation, the Drug Product Formulary and MAC list;

- Methods of doing business, including the operations of the National Pharmacy & Therapeutics Committee and Administrator utilization review and quality assurance procedures and programs; and
- Any and all symbols, logos, trademarks, trade names, Marks, patents, inventions, copyrights, copyrightable material, trade secrets, personnel information, operating manuals, memoranda, work marketing programs, plans and strategies, operating Agreements, financial information and strategies, and computer software and other computer- related materials developed or used in Administrator business.
- To the extent a switch operator is accessing proprietary and/or confidential information of OptumRx or our clients, including utilization management criteria, Network Providers must restrict them from making any commercial use of this data.

## F. Medicaid; Federal/State Medicare-Medicaid enrollee (MME) Regulatory Requirements

Particular states and CMS also have certain HIX and Medicaid, as well as MME regulatory requirements, including specific provisions to be included in all Client and Benefit Plan Sponsor subcontractor Agreements. For further information, please see the Appendix F. Pursuant to the terms of the Agreement, Network Pharmacy Provider shall comply with all applicable requirements in each applicable state, as determined solely by Administrator.

### State-specific Medicaid Program Participation Required

Network Pharmacy Providers wishing to participate in Medicaid pharmacy networks and dispense Covered Prescription Services to eligible Medicaid beneficiaries are required to have met the enrollment requirements of the applicable state's Medicaid program, as well as have obtained a Medicaid Identification Number in that state. To avoid potential disruption in payment for states requiring Medicaid Identification Numbers, Network Pharmacy Providers must update their pharmacy's profile on the NCPDP website to list their Medicaid identification numbers for each applicable state.

As directed by clients, Administrator may reject claims from Prescribers and/or Pharmacies who have not met the enrollment requirements of the applicable state. Prescriber claims may reject with the NCPDP Rejection Code 889 - Prescriber Not Enrolled in State Medicaid Program. Pharmacy claims may reject with the NCPDP Rejection Code 890 - Pharmacy Not Enrolled in State Medicaid Program.

### Medicaid COB

Medicaid is the payer of last resort. If another insurer or program has the responsibility to pay for costs incurred by a Medicaid-eligible individual, that entity is generally required to pay all or part of the cost of the Claim prior to Medicaid making any payment. This is known as Third Party Liability (TPL). Third parties may be liable to pay for services which include, but are not limited to: private health insurance, Medicare, employer-sponsored health insurance, workers' compensation, long-term care (LTC) insurance, as well as other state and federal programs.

Third party payers are not responsible for reimbursing Medicaid for any services that are not covered under the Medicaid State plan. States identify other sources of health coverage when an individual applies for medical assistance, and this information is updated when a Medicaid enrollee's eligibility is renewed.

### State Sanctioned Providers

State regulations prohibit the Administrator from paying Claims for Drug Products written by Providers who have been excluded from participation in Medicaid programs. As directed by clients, Administrator will reject claims from Providers who have been excluded from Medicaid program. Prescriber claims will reject with the NCPDP Rejection Code A1 accompanied by the message "Prescriber Not Covered — State Sanction" to identify those Prescribers associated with a state-level sanction.

Pharmacy claims will reject with the NCPDP Rejection Code 559 accompanied by the message "ID Submitted is associated with a Sanctioned Pharmacy" to identify those Pharmacies associated with a state- level sanction.

### Medicaid Drug Management Program Member Pharmacy Lockin Edit

Federal laws require Medicaid agencies to implement utilization control programs that allow Medicaid plans to temporarily restrict the pharmacy(ies) and/or prescriber(s) from which a beneficiary may obtain drugs only when that beneficiary has

obtained drugs at a frequency or amount that is not medically necessary. These Medicaid drug restriction programs, also called "lock-ins," usually focus on opioids and other frequently abused medications.

A Provider Restriction Edit is triggered for members who are locked into designated providers. If a member is locked into a certain pharmacy or prescriber for specific drugs, claims may be rejected with two reject codes: M2 "Recipient Locked In" and 70 "Prod/Service Not Covered", and with one of the following messages "Member Pharmacy Override Exclusion" or "Member Prescriber Override Exclusion" respectively. If a pharmacy has a claim rejected with reject code M2 and/or 70, the pharmacist should advise the member to contact their health plan at the number on the back of their ID card. The health plan will provide the member with the details of why the prescription was rejected and how the member can resolve the issue.

The plan reserves the right to add, delete, or modify their policies associated with the lock-in program to comply with state-specific regulatory requirements.

### Terminated NDCs Due to Pharma Manufacturers Not Renewing Their Medicaid Drug Rebates Agreements

In 2018, CMS made changes to the National Drug Rebate Agreement (NDRA) and mandated that manufacturers must sign the updated agreement to continue their participation in the Medicaid Drug Rebate Program no later than September 30, 2018.

Effective October 1, 2018, CMS terminated the existing rebate agreement(s) for manufacturers that did not sign the updated NDRA by September 30. According to the Health and Human Services (HHS) guidance, claims for NDCs where the labeler has no NDRA in place will not be funded by the state Medicaid agencies, and may be denied at the point of sale.

Effective October 1, 2018, Medicaid plans may remove certain NDCs from the formulary for which the corresponding manufacturers failed to update their Medicaid NDRA.

With that, Medicaid plans may be rejecting previously paid NDCs from such manufacturers with the NCPDP rejection codes "AC" ("Product Not Covered Non-Participating Manufacturer") or "70" ("Product/Service not Covered").

If such rejections are received, OptumRx would like to remind pharmacists and technicians that you should:
- Process the claim using an alternate approved NDC, and/or
- Work with the prescriber to obtain a new prescription for an alternative approved product if necessary, and;
- Advise members that their medications may have a different appearance.

Please work with Medicaid members and /or providers to transition to an approved NDC to ensure continued adherence. If further assistance is needed, please call the Pharmacy Call Center at the telephone number shown on the member's ID card. This applies to both Medicaid Managed Care and Fee for Service (FFS) Plans.

## G. Retail and Mail Network Agreements

Network Pharmacy Providers in the retail network, without specific other arrangements (e.g. Specialty Credentialing and Compound Credentialing) shall maintain a breadth of acute and maintenance medications as to service routine Retail Pharmacy customers. This requires retail Network Pharmacy Providers to maintain a variety of Drug Products as to service customers with a broad scope of therapeutic needs. Network Pharmacy Providers in the retail network or on a retail Agreement shall not solicit Members for mail delivery or deliver any Covered Prescription Services to Members by Mailing, except upon the advance written approval of Administrator or for limited single events (e.g. Member traveling), which approval may be refused in Administrator's sole discretion.

The purpose of the retail network is to provide Covered Prescription Services to Members at point of sale. Therefore, mailing of any Covered Prescription Service whether by a pharmacy, an affiliated or unaffiliated entity on behalf of a pharmacy or by a representative or authorized agent of the Member is prohibited.

Additionally, Pharmacy shall not (directly or through a third-party, including telemarketers) obtain Members and/or obtain prescriptions for members via: (i) cold-calling; (ii) obtaining a Member's primary care provider or billing information without

the knowledge and authorization from the member (iii) contacting or offering to contact a prescriber on a Member's behalf without the Member's express knowledge and authorization for each specific claim. Pharmacy shall not engage in misleading or deceptive practices, including initiatives to obtain a prescription from a prescriber not expressly requested by the Member or by suggesting to a Member that his/her prescriber wants the Member to receive the medication without the prescriber's express knowledge and authorization.

Administrator provides limited authorization to Network Pharmacy Providers participating in the Network Compound Credentialing Program (NCCP) to Mail covered Compounded Drugs to Members in those states in which they are licensed and/or authorized to do so; at no cost to the Member unless the Member has specifically requested expedited service, which the Member agrees to pay. NCCP Network Pharmacy Providers are not authorized to Mail covered non-Compounded Drugs unless expressly authorized to Mail such Covered Prescription Services to Members by Administrator. Additionally, it is prohibited to mail any Covered Prescription Drugs to members for those Clients who have opted out and do not participate in the NCCP.

Network Pharmacy Provider Mailing Covered Prescription Services must comply with all applicable state licensing laws for the states that the pharmacy is Mailing Covered Prescription Services into and participate in Administrator's Mail Order Pharmacy Network pursuant to a Mail Order Pharmacy Agreement.

Mail Order Pharmacies do not qualify for participation in the Administrator Retail Pharmacy network as a Retail Pharmacy. Network Pharmacy Provider locations that deliver covered Drug Products via Mailing, advertise Mailing or home delivery, must apply for a separate independent Mail Order Pharmacy Agreement. Mail Order Pharmacies must meet the following minimum qualifications for consideration in the network:

- Agree to the terms and conditions of the Mail Order Pharmacy Agreement
- Meet all credentialing requirements
- Maintain in good standing NABP Digital Pharmacy Accreditation
- Maintain in good standing URAC Accreditation for Mail Order Pharmacies
- Licensed in the state the Mail Order Pharmacy is domiciled as well as meets all applicable state licensing requirements for any state that prescriptions are mailed.

Meeting the above requirements does not guarantee participation in Network Pharmacy Provider network.

## H. Compounding pharmacy participation in retail networks

Prohibited activities by retail pharmacies and compounding pharmacies
The following actions may result in termination of your Network Pharmacy Provider's Agreement and include, but not limited to:

- Undisclosed ownership or partial ownership in a pharmacy by Prescriber or other Prescriber of Prescription Drug Products
- Compensation, both monetary or in-kind, either paid to or received from, any health care provider for referrals for prescribing a particular Compounded Drug or to a particular pharmacy
- Use of Form 1099 contractors to market pharmacy or particular Compounded Drug
- Submitting Compounded Drug Claims with ingredients manufactured or distributed from a non-FDA registered manufacturing facility and/or wholesaler not FDA registered or with no distribution locations within the USA
- Submitting Compounded Drug Claims with ingredients that include as a component of the a NDC for a repackaged drug or a drug imported from another country without FDA approval
- Delivering Covered Prescription Services, including Compounded Drugs, by Mailing, unless specifically permitted to do so within the Agreement, Plan Specifications, amendment or in writing
- Advertising for obtaining Compounded Drugs delivered by Mailing, unless specifically permitted to do so within the Agreement, Plan Specifications, amendment or in writing
- Compounded Drug Claims with active ingredients which are not being used for a documentable medically accepted indication or for which the Prescriber is unable to provide adequate documentation for the basis of use
- Submitting a Claim for a Compounded Drug when a manufactured Drug Product with an identical or similar formulation is available on the market
- Submitting prescribed ingredients of multi-ingredient Compounded Drugs as single-ingredient Claims

- Submitting prescribed individual ingredients of a Compounded Drug on separate Claims/directing Prescriber's to write Prescriptions for individual ingredients and requiring the Member to reconstitute the individual ingredients into a Compounded Drug
- Submitting a NDC that is not the NDC for the raw, bulk chemical, or Drug Product ingredient used in the Compounded Drug
- Splitting the days' supply or quantity of the Compounded Drug Claims to less than a thirty (30) day supply to circumvent Prior Authorization, dollar amount thresholds, quantity or Benefit Plan limits
- Splitting the days' supply or quantity of the Compounded Drug Claims to less than a thirty (30) day supply in order to gain additional reimbursement or Member Cost-Sharing Amounts
- Refusing to dispense the Compounded Drug Prescription because of dispute over reimbursement
- Charging the Member more than the Cost-Sharing Amounts provided by the POS System, including charging for non- covered ingredients
- Waiving Member Cost-Sharing Amounts provided by the POS System
- Not using the NDC of the lowest cost AWP available on the market in the Compounded Drug
- Registration solely as a 503B, unless credentialed by OptumRx (Please see Compound credentialing section)
- Violating any Federal, State, or Local law regarding compounding, marketing, or dispensing Compounded Drug Prescriptions
- Acting as a central fill pharmacy for a pharmacy not contracted with Administrator
- Dispensing Compounded Drugs to a Member for the first time without verifying Prescriber or other Prescriber/ Member relationship
- Dispensing Compounded Drugs without literature on file that supports the clinical/therapeutic value of the compound ingredients
- Dispensing or distributing Compounded Drugs which are not based on valid prescriptions for individually-identified members or are otherwise on pre-populated or templated prescriptions. Such pre-populated prescriptions may also not include options for substitute products without individualized prescriber authorization or annotation.

## I.  Provide timely notice of demographic changes

Network Pharmacy Provider understands Administrator relies on the information about its Network Pharmacy Providers, as well as each Pharmacy location provided by NCPDP and directly to Administrator, therefore, Network Pharmacy Provider:

- Agrees to update in a timely manner all information in the NCPDP database whenever necessary as to ensure the information in the database is accurate as Administrator updates Network Pharmacy Provider profiles and may be displayed to Members via on-line or paper directories.
- Unless otherwise specified, notifies Administrator in writing within ten (10) business days of any changes in documentation and other information (e.g. Agreement, credentialing applications) provided to Administrator in connection with enrolling as a Network Pharmacy Provider and in any credentialing or quality management initiatives.
- Immediately notifies Administrator and NCPDP of any sale, transfer or ownership or closure of the Network Pharmacy Provider and information documenting the availability, as well as contact information for continued retrieval on all Prescription documentation in accordance with contractual, as well as regulatory (e.g. Medicare Part D) requirements related to records retention. All relative notifications must be sent to pharmacyprograms@optum.com.
- Information includes, but is not limited to, changes in name, address, telephone number, fax number, email address, services, NPI, NCPDP, licensure information (e.g. DEA registration, state license), tax identification (ID) changes Medicaid ID, provider affiliation, ownership information, provider dispensing type.

It is the responsibility of Chain and/or PSAO organizations to ensure the affiliated pharmacies associated with any applicable NCPDP Affiliation Code are effectively maintained, accurate and updated timely with NCPDP in responses to changes in affiliated pharmacies.

 **Network Pharmacy Providers shall notify NCPDP of any updated information as soon as possible.**

## J. Involuntary Disenrollment by Benefit Plan Sponsor

Network Pharmacy Providers shall cooperate with Administrator and its Clients in gathering and/or providing information on Members for which the Benefit Plan Sponsor is seeking involuntary disenrollment for conduct considered abusive and disruptive to the point where service is disrupted for the Member or other Members. If Network Pharmacy Providers encounters abusive and disruptive Members, please see Pharmacy help desk service contact information provided in Section II of this PM.

As a Network Pharmacy Provider, Administrator encourages that you keep notes and any documentation concerning abusive and disruptive contact as you may be asked to provide this information at the time you report abusive and disruptive Members.

## K. National Plan and Provider Enrollment System (NPPES) Updates

Network Pharmacy Providers are strongly encouraged to update their information, including all taxonomy codes, on the National Plan and Provider Enrollment System (NPPES) at the following location: https://nppes.cms.hhs.gov
The information on NPPES, including your pharmacy's taxonomy information, may be used for network and contract validation by Administrator, Clients and CMS.

## L. Termination

Administrator may immediately terminate or suspend the Agreement or any applicable Addendum or Amendment (in whole or in part with respect to an applicable Client, network and/or Network Pharmacy Provider location) pursuant to business needs, Client-specific network design, for, in the opinion of Administrator, actions detrimental to the provider network(s) or for cause, regardless of the network in which the Network Pharmacy Provider participates for reasons including, but not limited to:

- Rejecting Members at the point of sale for a non-clinical reason, including to improve reimbursement;
- Implementing any systematic or other block of a Client's Benefits Plan(s);
- Attempts to steer or redirect Members to other coverage (including other discount card plans);
- Loss of required licensure by a Network Pharmacy Provider or individual location;
- Administrator reasonably believes that Network Pharmacy Provider or Pharmacist is or has been engaged in fraudulent activity of federal/state law;
- Network Pharmacy Provider's insurance required hereunder being canceled, lapsed, terminated or otherwise suspended without replacement coverage;
- Network Pharmacy Provider solicits or attempts to solicit or steer any client of Administrator to terminate its relationship with Administrator or to enter into a direct agreement with Network Pharmacy Provider;
- Network Pharmacy Provider engages in conduct or communication(s), including, but not limited to, contact with any third party, including any Client, Plan and/or a Client or Plan's Member, which disparages Administrator;
- Any attempt by Network Pharmacy Provider to institute an automated reversal process;
- Any attempt by Network Pharmacy Provider to circumvent any security measure that is part of the POS System;
- Network Pharmacy Provider or Pharmacist provides substandard, inferior, contaminated or adulterated Drug Product(s) to any Member;
- Network Pharmacy Provider engages in Mail fulfillment in violation of the Agreement without Administrator's written authorization;
- Administrator determines in its sole and absolute discretion that Network Pharmacy Provider or Pharmacist has violated Administrator's policies and procedures, including without limitation those included in this PM in the provision of Covered Prescription Services;
- Governmental Authority directs Administrator to terminate its relationship with Network Pharmacy Provider;
- Network Pharmacy Provider is otherwise non-compliant with the PM;
- Network Pharmacy Provider violates any law or regulation relevant to performance under the Agreement and with the Network Pharmacy Provider's operations in general;
- Network Pharmacy Provider exceeds the scope of any license to use Administrator's or any Client's intellectual property;
- Network Pharmacy Provider misuses Administrator's or any Client's trade secrets.

In addition to the reasons for immediate termination or suspension set forth above and in the Agreement, Administer may terminate or suspend Network Pharmacy Providers in accordance with state law notice requirements where applicable, from the network for reasons, which include, but are not limited to:

- Failure to meet and maintain credentialing requirements;
- Breach of any of the terms set forth in the Agreement, PM, Addendum and other Administrator documents;
- Any act in violation of any federal/state/local law, regulation or rule or any attempt to circumvent any security measure that is part of the Administrator system;
- Fraudulent Claim submission activity detected;
- Members charged amounts greater than the Benefit Plan Cost-Sharing Amount;
- Members are refused services as required by Agreement;
- Network Pharmacy Provider or any of its employees or subcontractors being listed on the OIG, GSA and Preclusion exclusion lists or is sanctioned under or expelled from participation in the Medicare, Medicaid or other government programs;
- Suspension or revocation of Network Pharmacy Provider's, Network Pharmacy Provider's or pharmacist's license or permit necessary to perform services under the Agreement;
- Network Pharmacy Provider or Pharmacist violates any federal/state law regarding the compounding, sale, dispensation, storage, packaging or use of any Drug Product, device, products or supplies dispensed to Members;
- Any current or future affiliation with a pharmacy that was terminated under any of the above-listed FWA scenarios (e.g. affiliation includes, but is not limited to, any ownership or controlling interest in any percentage; holding of the physical real estate of the pharmacy location; a consultant relationship; employment of current and/or prior employees; immediate relatives such as spouses, children, parents or siblings; or otherwise in any manner obscuring ownership and/or affiliation links between the pharmacies).

In the event the Network Pharmacy Provider breaches any provision(s) of the Agreement or PM or the Agreement is terminated pursuant to the terms herein, to the fullest extent permitted by applicable law, Administrator shall be entitled to withhold payment, impose penalties and other measures as it deems fit, including penalties to address lost profits.

- Furthermore, in the event the Network Pharmacy Provider breaches any provision(s) of the Agreement, in addition to termination rights, Administrator shall have the right to:
- Suspend any and all obligations of Administrator under and in connection with the Agreement.
- Administrator suspension may include cancellation of checks, payment suspension of future cycle checks or restriction of claims submission. Administrator's ultimate remedies under this section include immediate termination of the Agreement.
- Impose reasonable handling, investigation and/or improper use fees and/or offset against any amounts owed to Network Pharmacy Provider under the Agreement (including amounts that are paid to Administrator on behalf of a plan sponsor) or under any other agreement between Administrator and Network Pharmacy Provider.

The Agreement may be terminated by Administrator upon prior notice with respect to any or all Network Pharmacy Provider's locations, according to the terms of the Agreement between the applicable parties or PM as applicable or such longer or shorter period of time as required by applicable Plan, Client or law. For the sake of clarity, in the event a particular Plan, Client or law requires a shorter or longer notice period, the Agreement will not terminate for that particular Plan, Client or law until the conclusion of that Plan's, Client's or law's notice period.

Notwithstanding anything to the contrary, at any time during the term of the Agreement, Administrator shall have the exclusive right to create any custom networks, which may exclude Network Pharmacy Provider or any of its individual locations, in its sole discretion. The termination of the Agreement as to any particular Pharmacy shall not prevent the subsequent termination of the Agreement as to any other Network Pharmacy Provider or of the Agreement in its entirety. The Network Provider Evaluation Committee (NPEC) will determine the extent to which a breach has occurred. NPEC will make a determination in regards to participation status or the need for further review and recommendations. Final determination will be made by the NPEC and may result in administrative action up to and including the termination of the Agreement or pharmacy network. All such occurrences will be placed in the Network Pharmacy Provider's credential file. Network Pharmacy Providers that have received notice of disciplinary action may request an informal Appeal Hearing at which the representatives of the pharmacy may present documentation and relevant information in support of their position. The appeal panel hears the appeal and reviews additional documentation presented to evaluate the original decision to terminate.

Network Pharmacy Providers, Members or Prescribers suspected of FWA will be reported to the Benefit Plan Sponsor by Administrator for the appropriate reporting to authorities such as the NBI MEDIC, U.S. District Attorney's Office or Office of Inspector General the appropriate State Board of Pharmacy, and/or State Department of Insurance. In FWA cases involving Medicare Part D Sponsors, Administrator will promptly report such instances to the NBI MEDIC.

## M. Alternative Dispute Resolution

Other than with respect to issues giving rise to immediate termination hereof or non-renewal hereof, the parties will work in good faith as set forth below to resolve any and all issues and/or disputes between them (hereinafter referred to as a "Dispute") including, but not limited to all questions of arbitration, the existence, validity, scope, interpretation or termination of the Agreement, PM or any term thereof prior to the inception of any litigation or arbitration.

In the event a Dispute arises, the party asserting the Dispute shall provide written notice to the other party identifying the nature and scope of the Dispute to the other party sufficient for a reasonable person to be apprised thereof. If the parties are unable to resolve the Dispute within thirty (30) days after such notice is provided, then either party may request in writing a meeting or telephone conference to resolve the Dispute. At any such meeting or telephone conference, both parties shall have presented its President, Vice President, Chief Financial Officer or Chief Officer. Either party may commence a Dispute Resolution in accordance with the rest of this section (or litigation if both parties waive arbitration) only if a representative of the party seeking to commence such litigation or arbitration certifies in writing that one of the following is true: (i) the Dispute was not resolved after faithfully following the procedures set forth above in this section or (ii) the other Party to the dispute did not fully comply with the procedures set forth above in this section.

If the party asserting the Dispute has satisfied the requirements of this section thereof, it shall thereafter be submitted to binding arbitration before a panel of three (3) arbitrators in accordance with the Commercial Dispute Procedures of the American Arbitration Association, as they may be amended from time-to-time (adr.org). All arbitrators must have at least ten (10) years of legal experience in the area of healthcare law.

Any arbitration proceeding under this Agreement shall be conducted in Los Angeles County or Orange County, California. Unless otherwise agreed to in writing by the parties, the party wishing to pursue the Dispute must initiate the arbitration within one (1) year after the date on which notice of the Dispute was given or shall be deemed to have waived its right to pursue the Dispute in any forum.

The arbitrators may construe or interpret, but shall not vary or ignore the terms of this Agreement and shall be bound by controlling law. The arbitrator(s) will decide if any inconsistency exists between the rules of the applicable arbitral forum and the arbitration provisions contained herein. If such inconsistency exists, the arbitration provisions contained herein will control and supersede such rules.

Each party hereby consents to a documentary hearing for all arbitration Claims, by submitting the dispute to the arbitrator(s) by written briefs and affidavits, along with relevant documents; however arbitration claims will be submitted by way of an oral hearing, if any party requests an oral hearing within forty (40) days after service of the Claim and the party remits the appropriate deposit for fees, as well as the arbitrator compensation within ten (10) days of making the request. Discovery permitted in any arbitration proceeding commenced hereunder is limited as follows:

No later than forty (40) days after the filing and service of a Claim for arbitration, the parties will exchange detailed statements setting forth the facts supporting the Claim(s) and all defenses to be raised during the arbitration and a list of all exhibits, as well as witnesses. In the event any party requests an oral hearing, no later than twenty-one (21) days prior to the oral hearing, the parties will exchange a final list of all exhibits, as well as all witnesses, including any designation of any expert witness(es) together with a summary of their testimony; a copy of all documents to be introduced at the hearing.

Notwithstanding the foregoing, in the event of the designation of any expert witness(es), the following will occur:

(i) all information and documents relied upon by the expert witness(es) will be delivered to the opposing party; (ii) the opposing party will be permitted to depose the expert witness(es); (iii) the opposing party will be permitted to designate

rebuttal expert witness(es); and (iv) the arbitration hearing will be continued to the earliest possible date that enables the foregoing limited discovery to be accomplished.

The arbitrators will have no authority to award punitive, exemplary, indirect, special damages or any other damages not measured by the prevailing party's actual damages and may not, in any event, make any ruling, finding or award that does not conform to the terms and conditions of the agreement.

The parties expressly intend that any dispute relating to the business relationship between them be resolved on an individual basis so that no other dispute with any third party(ies) may be consolidated or joined with the Dispute. The parties agree that any arbitration ruling by an arbitrator allowing class action arbitration or requiring consolidated arbitration involving any third party(ies) would be contrary to their intent and would require immediate judicial review of such ruling.

If the Dispute pertains to a matter which is generally administered by certain Administrator procedures, such as a quality improvement plan, the policies and procedures set forth in that plan must be fully exhausted by Administrator before Administrator may invoke any right to arbitration under this section.

The decision of the arbitrator(s) on the points in Dispute will be binding and judgment on the award may be entered in any court having jurisdiction thereof. The parties acknowledge that because this Agreement affects interstate commerce the Federal Arbitration Act applies.

In the event that any portion of this section or any part of this Agreement is deemed to be unlawful, invalid or unenforceable, such unlawfulness, invalidity or unenforceability shall not serve to invalidate any other part of this section or this Agreement. In the event any court determines this arbitration proceeding is not binding or otherwise allows litigation involving a dispute to proceed, the parties hereby waive any and all right to trial by jury in or with respect to such litigation, and such litigation would instead proceed with the judge as the finder off act.

For purposes of clarity, only the arbitration provisions in this section shall apply to any Network Pharmacy Provider terminations or other determinations made as to a Network Pharmacy Provider's status as a participating Network Pharmacy Provider in the Administrator network, pursuant to the NPEC review process as stated in the PM. The laws of the State of California and the laws of the United States (U.S.) applicable therein will govern as to the interpretation, validity and effect of the Agreement, the PM and any addendums.

This section shall survive any termination of the Agreement.

## N. Confidentiality

Network Pharmacy Provider acknowledges as a result of the Agreement, PM and POS System, Network Pharmacy Provider and its employees, as well as agents may have access to Administrator's Proprietary Information, Client's Proprietary Information and Members' Confidential Information. The parties shall comply with all Laws applicable to the confidentiality, use, disclosure and maintenance of Members' personal information ("Confidential Information"). Except as required by law, Network Pharmacy Provider, on behalf of itself and its officers, employees, contractors and other representatives ("Representative(s)"), also agrees to treat as confidential and proprietary, and to take reasonable precautions and care to prevent unauthorized use and/or disclosure of the terms of this Agreement, as well as any other information relating to Administrator's business operations/services obtained in the performance of this Agreement and not part of the public domain ("Proprietary Information").

Proprietary Information shall include Administrator's pricing, programs, services, business practices, databases, software, layouts, designs, formats, processes, applications, systems, technology, files, compilations, exhibits, publications, protocols, information pertaining to Clients, Benefit Plans and formularies. All Proprietary Information remains the exclusive property of Administrator. Network Pharmacy Provider agrees to maintain the confidential nature of such Confidential Information and Proprietary Information and not to disclose such Confidential or Proprietary Information without the express written consent of Administrator.

Network Pharmacy Provider shall only use Confidential or Proprietary Information in connection with the performance of this Agreement or any related Addendum Amendment, Exhibit or Schedule and shall not use the Confidential or

Proprietary Information for any other purpose. Nothing in this section shall prohibit Administrator from discussing reimbursement or payment issues with a Client of Benefit Plan Sponsor.

If Network Pharmacy Provider or its Representative receives a demand or request to disclose any confidential or proprietary information pursuant to the terms of a court order, subpoena, interrogatory or other legal process, such confidential or proprietary information may be disclosed to the extent required; provided (i) Network Pharmacy Provider promptly notifies Administrator of the existence, terms and circumstances surrounding such demand or request prior to the disclosure of any confidential or proprietary information and provides Administrator with a copy thereof (ii) Network Pharmacy Provider assists Administrator's efforts to obtain, if and to the extent available, whatever protective order or other relief that Administrator desires to be obtained with respect to such demand or request and (iii) such Confidential or Proprietary Information is not disclosed more than three (3) days prior to the last date it may be disclosed without violating such court order, subpoena, interrogatory or other legal process, as such date may be modified by any order or other relief obtained.

Upon termination of this Agreement, Administrator may request the return of its proprietary information in Network Pharmacy Provider's control or possession or if such return is not feasible, Network Pharmacy Provider shall destroy such proprietary information and provide certification of such destruction. Network Pharmacy Provider further agrees that it shall be responsible for any breach of this section by its Representatives. Network Pharmacy Provider agrees that monetary damages would be difficult to ascertain in the event of any breach of this Section and that monetary damages alone would not suffice to compensate Administrator or Client for such breach.

Network Pharmacy Provider agrees that in the event of a violation of this Section, without limiting any other rights and remedies, an injunction may be brought against Network Pharmacy Provider for breach or threatened breach of this Section, without the requirement to post bond. Network Pharmacy Provider submits itself to the jurisdiction of and agrees venue for purposes of damages of such injunctive relief are proper, in any federal/state court located in California; Network Pharmacy Provider shall reimburse Administrator for all of its costs and expenses (including, without limitation, reasonable attorneys' fees) incurred by Administrator in connection with an actual or threatened violation of this section. This section shall survive expiration or termination of the Agreement and this PM.

## O. Information Management

Network Pharmacy Provider understands Administrator relies on the information in the NCPDP database regarding its pharmacy location(s) and attests that the information in the NCPDP database is accurate. Network Pharmacy Provider further agrees to update the information in the NCPDP database as necessary so as to ensure compliance with this section. Network Pharmacy Provider further understands that Administrator updates its files through weekly file feeds received from NCPDP or other nationally recognized provider data vendor, as determined by Administrator. Administrator updates and maintains all pertinent provider information including, but not limited to, demographics, NPI, licensure, Medicaid ID, provider affiliation, ownership, and provider dispenser type via these provider data feeds. Network Pharmacy Provider is required to make any system updates, including updating any relevant Network Pharmacy Provider information, through the Administrator provider data vendor.

To the extent Network Pharmacy Provider is owned, operated or controlled by or affiliated with a pharmacy benefit management business entity, Network Pharmacy Provider represents and warrants it has a firewall in place to protect any/all information received due to the receipt of an Agreement and protects from disclosure outside of the performance of its obligations under this agreement any information received that is proprietary with only those participants who are on a need to know basis to carry out such agreement provisions. Any intentional disclosure shall result in immediate termination and legal action as necessary.

## P. Insurance

Network Pharmacy Provider must at all times hold policies for general and professional liability insurance, including malpractice, in amounts necessary to ensure that Network Pharmacy Provider and any of its personnel are insured against any Claim(s) for damages arising from the provision of Covered Prescription Services; such policies must have coverage, at a minimum, in the amount of one million dollars ($1,000,000.00) per person and three million dollars ($3,000,000.00) in aggregate, unless otherwise agreed to by Administrator or such greater amount required by law.

Network Pharmacy Provider must furnish copies of said policies upon enrolling as a Network Pharmacy Provider with Administrator and as requested by Administrator thereafter. Failure to maintain the minimum coverage may result in immediate termination as a Network Pharmacy Provider. Network Pharmacy Provider must notify Administrator immediately in writing if its insurance is canceled, lapsed or otherwise terminated. Failure to immediately notify Administrator in writing of any such termination of insurance coverage may result in immediate termination as a Network Pharmacy Provider. The requirements in this section apply to the extent permissible under applicable law.

## Q. Rural Pharmacy

Upon request, a Network Pharmacy Provider may be eligible for rural Prescription Drug Compensation, if applicable, for a Benefit Plan or network, if Network Pharmacy Provider is physically located more than fifteen (15) miles from another pharmacy's location, per the address on the NCPDP DataQ, irrespective of city, county and state lines. At its sole discretion, Administrator may make reasonable exceptions and may revoke rural Prescription Drug Compensation at any time in the event the Network Pharmacy Provider no longer qualifies to receive rural Prescription Drug Compensation. If granted the rural Prescription Drug Compensation, the Network Pharmacy Provider must notify Administrator within fifteen (15) business days if their qualification changes.

## R. Member and Client Hold Harmless

Network Pharmacy Provider shall not pursue payment for services or other additional fees from any other source. Network Pharmacy Provider agrees it is prohibited from contacting Administrator Clients and Members for disputed issues between Network Pharmacy Provider and Client or Administrator. Network Pharmacy Provider agrees it is prohibited from directing the Member or a Member's Claims to a plan or Client other than the Administrator plan presented by the Member. Violation of such prohibitions is considered a breach of Agreement and subsequently subject to penalties or sanctions as determined by Administrator.

## S. Submission of Clean Claims via the POS system for 340B Drug Products

For all applicable 340B Drug Products, Network Pharmacy Providers must identify claims as follows:
In the field 420-DK (Submission Clarification Code), a value of 20 indicates the Network Pharmacy Provider has determined the drug products submitted to administrator was purchased pursuant to rights available under Section 340B of the Public Health Act of 1992 including sub-ceiling purchases authorized by Section 340B (a) (10) and those made through the Prime Vendor Program (Section 340B (a) (8)).

This field must be populated for all 340B claims regardless of whether the 340B unit cost is submitted with the claim.

**Note**: Some states mandate submission of the Section 340B unit cost by submission of the Cost Basis (423-DN) field with the value 08 together with submission of value 20 in the 420-DK (Submission Clarification Code) field. In states with this requirement, 340B claims submitted only with SCC 20 and without the Cost Basis (423-DN) value 08 may be rejected by the plan.

In a situation when the Network Pharmacy Provider also submits the Section 340B unit cost, the two following fields must be populated on a claim, in addition to the Submission Clarification Code:
1. The Cost Basis (423-DN) field with the associated value Ø8 (which is new with D.0).
2. A Section 340B medication unit cost in Ingredient Cost Submitted (4Ø9-D9).

To assist in the identification of 340B claims and increase compliance with duplicate discount avoidance, pharmacies are requested to confirm / report their Physical Location 340B status to NCPDP. This status can be added or updated within the Services tab of your NCPDP profile.

The 340B Drug Pricing Program requires drug manufacturers to provide covered out-patient Drug Products to certain eligible health care entities, known as covered entities, at or below statutorily defined discount prices (i.e. 340B Ceiling Prices). The purpose of the 340B Program is to lower the cost of acquiring covered outpatient Drug Products for selected health care providers, so they can stretch their resources to serve more Members or improve services. As a condition of

continued participation in the Medicaid program, drug manufacturers must sign an agreement with the Secretary of HHS stating their product sales to the covered entities will be at or below the Ceiling Prices mandated by Section 340B. Failure to sell covered drugs at these prices could result in a manufacturer being prohibited from receiving payments for its products from the Medicaid program.

A pharmacy may not know at point-of-sale if a claim qualifies as a 340B claim. At the point the pharmacy is notified or discovers that the claim qualifies as a 340B claim, the original claim must be reversed and the claim resubmitted as a 340B claim with the correct Submission Clarification Code value of 20.

If the claim has not been corrected to include the correct Submission Clarification Code value, the pharmacy and the eligible entity are at risk for duplicate discounts. Failure to comply may be recognized as a potential breach of contract and may lead to further administrative and/or corrective action including and up to termination from the network.

# X.   Worker's Compensation and Auto No-Fault



**OPTUM**Rx®

# A. Tmesys

1. **OptumRx List 3: Prescription Bank Identification Numbers (Rx BINs)**
   Tmesys provides nationwide online claims submission, approval and processing for workers' compensation claims as well as certain automobile (PIP) claims in select state. The BIN number is 004261 (Envoy users, BIN is 002538) the PCN is CAL. For the Payer Sheets, click here.

2. **Contact Information**
   Administrator strives to ensure that pharmacies receive prompt and courteous attention when questions arise. For assistance in processing a Claim or questions concerning Administrator pharmacy programs, please contact the Administrator at the telephone number identified on the Member's identification (ID) card or contact the Administrator as indicated below. For additional contact information, please see Contact information provided in Section II of this PM.
   Note: With the growth of OptumRx, information may be specific to a legacy BIN/PCN at this time. Please refer to the BIN/PCN information to determine which specific contact information to use.
   A. Pharmacy help desk service contact information
      - Telephone: 1-800-964-2531
      - Email: HelpDesk3@optum.com

   B. Prior authorization (PA) service contact information
      - Telephone: 1-800-964-2531
      - Email address: HelpDesk3@optum.com

   C. Pharmacy network contracting department contact information
      - Telephone: 1-855-264-8815
      - Fax: 1-866-576-1656
      - Email address: Gma.PMSITmesysNetwork@optum.com

   D. MAC appeals contact information
      - Telephone: 1-855-264-8815
      - Fax: 1-866-576-1656
      - Email address: macresolution@helioscomp.com

   E. Pharmacy Communications (Faxblast)
      - Telephone: 1-855-264-8815
      - Fax: 866-576-1656
      - Email address: Gma.PMSITmesysNetwork@optum.com

3. **Sample Member Identification (ID) Cards**
   Below is a sample of a Member ID card representing a one of our Benefit Plan Sponsors. This is a sampling only and is not an all-inclusive list. Member ID cards may be added, deleted or amended at any time. For further information/ examples, please see the Sample Member identification (ID) cards provided in Section III of this PM.

   Sample Tmesys Member ID Cards and Sample Healthcare Solutions Member ID Cards.



4. **Processing Claims**

Online processing window to submit an electronic Workers' Compensation Claims to be governed by state law.

a) **Billing of Claims**

All service Claims must be submitted to Administrator on the POS system using a current version of a NCPDP Claim billing record. All Claims shall be submitted at the time of service, or if online service is interrupted, immediately after resumption of online service. Rejected Claims may be resubmitted up to sixty (60) calendar days after the original date- of-service, unless state laws require more prompt submissions. Covered Prescription Services billed to payor and not received by Member within thirty (30) calendar days of billing shall be credited to payor by submitting a NCPDP Claim reversal record to Administrator. In no event will Network Pharmacy Provider submit a reversed Claim over thirty (30) calendar days.

b) **Payment of Claims**

Payment of eligible claims will be made by the entity which has the financial responsibility for the benefit provided to the Covered Person ("Plan"). Administrator is not the Plan. Administrator is responsible for obtaining eligibility from Plan and not under any circumstance shall Administrator have any financial responsibility, obligation or liability to the Pharmacy for the payment of services provided to the Covered Person except to the extent that Administrator has received any such payments. Payment may be made directly to Pharmacy by Plan or Plan designee involving Administrator. If Pharmacy submits a non-electronic, paper or out of network bill to Plan, Pharmacy acknowledges Plan may forward claim to Administrator and Pharmacy agrees to accept the Network rate set forth in its Agreement, from either Plan or Administrator.

If Pharmacy assigns claim to a third party or permits a third party to act as its collection agent, Pharmacy and Administrator agree that payment shall be paid to Pharmacy or its agent at the terms, conditions, and rates set forth in this Agreement. Payment and remittance of eligible claims will be made within 30 days of the date of the twice-monthly processing cycle. Pharmacy shall accept as payment in full the reimbursement established in this Agreement.

In no event shall Pharmacy collect from a Covered Person for a covered prescription an amount not represented as a co-payment, co-insurance, deductible or additional charge in the NCPDP paid claim response. If Pharmacy's usual and customary charge for a service is less than the co-payment, Pharmacy shall not collect from the Covered Person more than the usual and customary charge.

Administrator shall notify Pharmacy immediately upon the failure of any financially responsible entity to fail to pay any Pharmacy billing on the date the payment is due. Pharmacy may in Pharmacy's sole discretion immediately cease to provide service to the entity, entities, or the Administrator.

c) **Delegation**

Network Pharmacy Provider shall not delegate any service, activity or other obligation required of it under the Agreement, as amended, (including the provision of Covered Prescription Services by Network Pharmacy Provides to Plan Members), to an Affiliate or third party, without the prior written consent of Administrator (which consent shall not be deemed to create any liability for Administrator whatsoever unless otherwise required by applicable law), and when necessary, all applicable Clients, as determined

in the sole and absolute discretion of each of them, as may be communicated by Administrator. No consent may be obtained until Administrator has received a fully executed copy of each agreement between Network Pharmacy Provider and a delegate that relates to the proposed delegation. Any such agreement must provide that it will terminate (i) completely if Administrator revokes an agreement on the delegation or (ii) as to an affected Client if the Client revokes the delegation. Any such delegation, if consented to (an "Approved Delegation"), shall be performed by the delegate in accordance with the Clients' respective contractual obligations and in accordance with Network Pharmacy Provider's contractual obligations hereunder. Network Pharmacy Provider agrees that any agreements of Network Pharmacy Provider with respect to an Approved Delegation shall be in writing, signed by the parties to be bound thereby and in compliance with all applicable laws and regulations. In the event that a delegate of Network Pharmacy Provider fails or is unable (for any reason whatsoever) to perform in a satisfactory manner any services, activities or other obligations which have been sub-delegated pursuant to an Approved Delegation, then Administrator or any affected Client shall have the right to suspend, revoke or terminate such Approved Delegation effective upon the date set forth in a written notice furnished to Network Pharmacy Provider and Network Pharmacy Provider shall continue to be responsible to perform such duties and obligations of the Agreement. Additionally, an affected Client shall have the right to institute corrective action plans or seek other remedies or curative measures respecting the unsatisfactory Approved Delegation consistent with applicable laws and regulations. Any attempted sub-delegation by Network Pharmacy Provider which is not an Approved Delegation shall be null and void and of no force or effect.

## 5.  Worker's Compensation (WC) or Auto No-Fault

WC and Auto Member eligibility must be verified via the POS System or upon Administrator's prior approval/direction, sent via an alternative method. Possession of a WC or Auto Member identification card is for identification purposes only and does not guarantee eligibility or payment will be made for Covered Prescription Services dispensed. However, if the person's eligibility as a WC or Auto Member is confirmed via the POS System, Clean Claims for Covered Prescription Services will be reimbursed to Network Pharmacy Provider.

[Kentucky Worker's Compensation Attachment to Member Pharmacy Agreement Notification](#)

All applicable conditions of the provider are incorporated by reference into Section IX: Workers Compensation and Auto No Fault, unless specifically excluded, contradicted by a term in this section, or not applicable by a reasonable interpretation of the manual. More specifically the following sections specifically included for accreditation purposes:

- Section VII. Compliance; Fraud, Waste and Abuse (FWA); General Training; Audits
- Section VIII. Pharmacy Network Participation Requirements

## 6.  Reimbursement for worker's compensation (WC) or auto no-fault

Unless expressly permitted by applicable state law and via the POS System, Network Pharmacy Provider shall hold harmless and not collect any Cost-Share for Covered Prescription Services directly from the WC & Auto Member.

For each Clean Claim for a Covered Prescription Service, the Benefit Plan or Administrator shall pay Network Pharmacy Provider the lower of:
- Pharmacy's Usual and Customary price;
- State worker's compensation fee schedule; or
- Prescription Drug Contracted Rate.

Subject to the U.S. Department of Labor, OWCP fee schedule and for other federal programs, Administrator shall reimburse Network Pharmacy Provider pursuant to Section 4.1 of the Agreement for Compounded Drug Covered Prescription Services.

## 7.  Payment for worker's compensation (WC) or auto Member Clean Claims

Payment may be made directly to Network Pharmacy Provider by Administrator on behalf of the Benefit Plan or its designee. Electronic payment and remittance for eligible Covered Prescription Services will be made within thirty

(30) days from the date of the twice-monthly processing cycle. Network Pharmacy Provider shall accept as payment in full the reimbursement established in the Agreement and this PM.

**8. Requirement to submit Claims for all lines of businesses**

Network Pharmacy Providers shall submit all Claims for Drug Products and shall dispense Covered Prescription Services to eligible Members for those Clients offering Benefit Plans, such as, but not limited to: workers compensation insurance; no-fault auto insurance; hospice and Cash Discount Card programs in accordance with the terms and conditions of the applicable Agreement.

**a) Payment to Pharmacy**

For each Claim for service which is eligible for payment, Plan or Administrator shall pay Network Pharmacy Provider the lower of: (1) Network Pharmacy Provider's U&C price; (2) state worker's compensation fee schedule; or (3) the agreed upon price from the applicable Agreement. The agreed upon price from the applicable Agreement will be expressed as a percentage of average wholesale price for the Drug Product dispensed plus a dispensing fee. The average wholesale price will be based on the price in the Administrator's price file which is updated weekly based upon information provided to Administrator by Medi-Span, Redbook or another agreed upon pricing source.

**b) Taxes**

Pharmacy shall be responsible for and shall pay all sales, goods and services, use, excise, value added and other taxes, tariffs, duties or assessments, including interest and penalties, levied or imposed at any time by any governmental authority arising from or related to any transactions under this Agreement, other than any taxes based on the net income of Administrator.

- If Administrator is required to collect any of the foregoing taxes, tariffs, duties or assessments, Administrator shall add same to any invoices and Pharmacy shall immediately pay the same to Administrator.
- If Pharmacy is required under any applicable law to deduct from the amounts to be paid to Administrator pursuant to this Agreement any amount on account of withholding taxes or other taxes or levies of any kind, Pharmacy shall pay such additional amounts so that the net amounts received by Administrator are the amounts specified herein.

## B. Healthesystems

**1. OptumRx List 3: Prescription Bank Identification Numbers (Rx BINs)**

Healthesystems (BIN 012874) provides nationwide online claims submission, approval and processing for workers' compensation claims as well as certain automobile (PIP) claims in select states. The BIN number is 012874. There is no PCN.

**2. Contact Information**

Administrator strives to ensure pharmacies receive prompt and courteous attention when questions arise. For assistance in processing a claim or questions concerning Administrator pharmacy programs, please contact the Administrator at the telephone number identified on the Member's identification (ID) card or contact the Administrator as indicated below. For additional contact information, please see Contact information provided in Section II of this PM.

Note: With the growth of OptumRx, information may be specific to a legacy BIN/PCN at this time. Please refer to the BIN/PCN information to determine which specific contact information to use.

**a)** Pharmacy help desk service contact information
- Telephone: 1-800-758-5779
- Email address: support@healthesystems.com

**b)** Prior Authorization (PA) contact information
- Telephone: 1-800-758-5779
- Email address: support@healthesystems.com

OPTUMRx®

**3. Sample Member Identification (ID) Cards**

Below is a sample of a Member ID card representing a one of our Benefit Plan Sponsors. This is a sampling only and is not an all-inclusive list. Member ID cards may be added, deleted or amended at any time.

**Sample Healthesystems Member ID Card:**



**4. Processing Claims**

Processing window to submit an electronic or paper Workers' Compensation Claims to be governed by state law.

**a) Billing of Claims**

All service Claims must be submitted to Administrator on the POS system using a current version of a NCPDP Claim billing record. All Claims shall be submitted at the time of service, or if online service is interrupted, immediately after resumption of online service. Rejected Claims may be resubmitted up to sixty (60) calendar days after the original date- of-service, unless state laws require more prompt submissions. Covered Prescription Services billed to payor and not received by Member within thirty (30) calendar days of billing shall be credited to payor by submitting a NCPDP Claim reversal record to Administrator. In no event will Network Pharmacy Provider submit a reversed Claim over thirty (30) calendar days.

**b) Payment of Claims**

Payment of eligible claims will be made by the entity which has the financial responsibility for the benefit provided to the Covered Person ("Plan"). Administrator is not the Plan. Administrator is responsible for obtaining eligibility from Plan and not under any circumstance shall Administrator have any financial responsibility, obligation or liability to the Pharmacy for the payment of services provided to the Covered Person except to the extent that Administrator has received any such payments. Payment may be made directly to Pharmacy by Plan or Plan designee involving Administrator. If Pharmacy submits a non-electronic, paper or out of network bill to Plan, Pharmacy acknowledges Plan may forward claim to Administrator and Pharmacy agrees to accept the Network rate set forth in its Agreement, from either Plan or Administrator.

If Pharmacy assigns claim to a third party or permits a third party to act as its collection agent, Pharmacy and Administrator agree that payment shall be paid to Pharmacy or its agent at the terms, conditions, and rates set forth in this Agreement. Payment and remittance of eligible claims will be made within 45 days of adjudication of the claim. Pharmacy or third party shall accept as payment in full the reimbursement established in this Agreement.

In no event shall Pharmacy collect from a Covered Person for a covered prescription an amount not represented as a co-payment, coinsurance, deductible or additional charge in the NCPDP paid claim response. If Pharmacy's usual and customary charge for a service is less than the co-payment, Pharmacy shall not collect from the Covered Person more than the usual and customary charge.
Administrator shall notify Pharmacy immediately upon the failure of any financially responsible entity to fail to pay any Pharmacy billing on the date the payment is due. Pharmacy may in Pharmacy's sole discretion immediately cease to provide service to the entity, entities, or the Administrator.

**c) Delegation**

---

Network Pharmacy Provider shall not delegate any service, activity or other obligation required of it under the Agreement, as amended, (including the provision of Covered Prescription Services by Network Pharmacy Provides to Plan Members), to an Affiliate or third party, without the prior written consent of Administrator (which consent shall not be deemed to create any liability for Administrator whatsoever unless otherwise required by applicable law), and when necessary, all applicable Clients, as determined in the sole and absolute discretion of each of them, as may be communicated by Administrator. No consent may be obtained until Administrator has received a fully executed copy of each agreement between Network Pharmacy Provider and a delegate that relates to the proposed delegation. Any such agreement must provide that it will terminate (i) completely if Administrator revokes an agreement on the delegation or (ii) as to an affected Client if the Client revokes the delegation. Any such delegation, if consented to (an "Approved Delegation"), shall be performed by the delegate in accordance with the Clients' respective contractual obligations and in accordance with Network Pharmacy Provider's contractual obligations hereunder.

Network Pharmacy Provider agrees that any agreements of Network Pharmacy Provider with respect to an Approved Delegation shall be in writing, signed by the parties to be bound thereby and in compliance with all applicable laws and regulations. In the event that a delegate of Network Pharmacy Provider fails or is unable (for any reason whatsoever) to perform in a satisfactory manner any services, activities or other obligations which have been sub-delegated pursuant to an Approved Delegation, then Administrator or any affected Client shall have the right to suspend, revoke or terminate such Approved Delegation effective upon the date set forth in a written notice furnished to Network Pharmacy Provider and Network Pharmacy Provider shall continue to be responsible to perform such duties and obligations of the Agreement.

Additionally, an affected Client shall have the right to institute corrective action plans or seek other remedies or curative measures respecting the unsatisfactory Approved Delegation consistent with applicable laws and regulations. Any attempted sub-delegation by Network Pharmacy Provider which is not an Approved Delegation shall be null and void and of no force or effect.

## 5. Worker's Compensation (WC) or Auto No-Fault

WC and Auto Member eligibility must be verified via the POS System or upon Administrator's prior approval/direction, sent via an alternative method. Possession of a WC or Auto Member identification card is for identification purposes only and does not guarantee eligibility or payment will be made for Covered Prescription Services dispensed. However, if the person's eligibility as a WC or Auto Member is confirmed via the POS System, Clean Claims for Covered Prescription Services will be reimbursed to Network Pharmacy Provider.

**Kentucky Worker's Compensation Attachment to Member Pharmacy Agreement Notification**
All applicable conditions of the provider are incorporated by reference into Section IX: Workers Compensation and Auto No Fault, unless specifically excluded, contradicted by a term in this section, or not applicable by a reasonable interpretation of the manual. More specifically the following sections specifically included for accreditation purposes:
- Section VII. Compliance; Fraud, Waste and Abuse (FWA); General Training; Audits
- Section VIII. Pharmacy Network Participation Requirements

## 6. Reimbursement for worker's compensation (WC) or auto no-fault

Unless expressly permitted by applicable state law and via the POS System, Network Pharmacy Provider shall hold harmless and not collect any Cost-Share for Covered Prescription Services directly from the WC & Auto Member.

For each Clean Claim for a Covered Prescription Service, the Benefit Plan or Administrator shall pay Network Pharmacy Provider the lower of:
- Pharmacy's Usual and Customary price;
- State worker's compensation fee schedule; or
- Prescription Drug Contracted Rate

Subject to the U.S. Department of Labor, OWCP fee schedule and for other federal programs, Administrator, when the claim is adjudicated as payable, shall reimburse Network Pharmacy Provider pursuant to Section 4.1 of the Agreement for Compounded Drug Covered Prescription Services.

**7. Payment for worker's compensation (WC) or auto Member Clean Claims**

Payment may be made directly to Network Pharmacy Provider by Administrator on behalf of the Benefit Plan or its designee. Electronic payment and remittance for eligible Covered Prescription Services will be made within thirty (30) days from the date of the twice-monthly processing cycle. Network Pharmacy Provider shall accept as payment in full the reimbursement established in the Agreement and this PM.

**8. Requirement to submit Claims for all lines of businesses**

Network Pharmacy Providers shall submit all Claims for Drug Products and shall dispense Covered Prescription Services to eligible Members for those Clients offering Benefit Plans, such as, but not limited to: workers compensation insurance; no-fault auto insurance; hospice and Cash Discount Card programs in accordance with the terms and conditions of the applicable Agreement.

**a) Payment to Pharmacy**

For each Claim for service which is eligible for payment, Plan or Administrator shall pay Network Pharmacy Provider the lower of: (1) Network Pharmacy Provider's U&C price; (2) state worker's compensation fee schedule; or (3) the agreed upon price from the applicable Agreement. The agreed upon price from the applicable Agreement will be expressed as a percentage of average wholesale price for the Drug Product dispensed plus a dispensing fee. The average wholesale price will be based on the price in the Administrator's price file which is updated weekly based upon information provided to Administrator by Medi-Span, Redbook or another agreed upon pricing source.

**b) Taxes**

Pharmacy shall be responsible for and shall pay all sales, goods and services, use, excise, value added and other taxes, tariffs, duties or assessments, including interest and penalties, levied or imposed at any time by any governmental authority arising from or related to any transactions under this Agreement, other than any taxes based on the net income of Administrator.

- If Administrator is required to collect any of the foregoing taxes, tariffs, duties or assessments, Administrator shall add same to any invoices and Pharmacy shall immediately pay the same to Administrator.
- If Pharmacy is required under any applicable law to deduct from the amounts to be paid to Administrator pursuant to this Agreement any amount on account of withholding taxes or other taxes or levies of any kind, Pharmacy shall pay such additional amounts so that the net amounts received by Administrator are the amounts specified herein.

# XI.  Appendix





## Appendix A

**Independent Pharmacy Credentialing Application**

Only complete documents will be accepted.

**For Independent Pharmacies**
For example only — Independent pharmacies (Non-PSAOs affiliation)
Note: Subject to change without notice at any time.



## Appendix B

**Independent Pharmacy Credentialing and Re-credentialing Application Fee**



Only complete documents will be accepted.

**For Independent Pharmacies**
For example only — Independent pharmacies (Non-PSAOs affiliation)
Note: Subject to change without notice at any time.

---



## Appendix C

**Affiliation Credentialing Application**

   Only complete documents will be accepted.

For Chain Pharmacies / PSAOs
Example only — Chain pharmacies/PSAOs (Non-independent affiliation)
Note: Subject to change without notice at any time.



# Appendix D

**National Council for the Prescription Drug Programs (NCPDP) Submission Clarification Code**

| 420-DK — Submission Clarification Code | | | |
|---|---|---|---|
| **Definition of Field** | **Field Format** | **Standard / Version Formats** | **Field Limitations** |
| Code indicating the pharmacist is clarifying the submission. | 9(2) | T, P, A | |

**Values**

| Code | Description |
|---|---|
| 1 | Not specified, default |
| 2 | No override |
| 3 | Other override |
| 4 | Lost Prescription — Cardholder has requested replacement of a Drug Product that has become lost. |

| 5 | Therapy change — Prescriber has determined that a change in therapy was required; either that the Drug Product was used faster than expected, or a different dosage form is needed, |
|---|---|
| 6 | Starter dose — Previous Drug Product was a starter dose and now an additional Drug Product is needed to continue treatment. |
| 7 | Medically necessary — Drug Product has been determined by the Prescriber to be medically |
| 8 | Process Compounded Drug for approved ingredients |
| 9 | Encounters |
| 10 | Meets plan limitations — In-compliance with the program's policies and rules that are specific to the particular product being billed. |
| 11 | Certification on file — Guarantee's a copy of the paper certification, signed and dated by the Prescriber, is on file at the supplier's office. |
| 12 | DME replacement — Certification for a DME item replacing a previously purchased DME item. |
| 13 | Payer-recognized emergency/disaster assistance request — Override is needed based on an emergency/ disaster situation recognized by the payer. |
| 14 | LTC leave of absence — Cardholder requires a short-fill of a Prescription due to a leave of absence from LTC facility. |
| 15 | LTC replacement Drug Product — Drug Products have been contaminated during administration in a LTC setting. |
| 16 | LTC emergency box (kit) or automated dispensing machine — Replacement supply for doses previously dispensed to the patient after hours. |
| 17 | LTC emergency supply remainder — Remainder of the Drug Product originally begun from an Emergency Kit. |
| 18 | LTC patient admit/readmit — New dispensing of a Drug Product due to the patient's admission or readmission status. |
| 19 | Remainder billed to a subsequent payer when Medicare Part A no longer applies. |
| 20 | 340B indicates that prior to providing service, the Network Pharmacy Provider has determined the Drug Product being billed is purchased pursuant rights available under Section 340B of the Public Health Act of 1992 including sub-ceiling purchases authorized by Section 340B (a)(10) and those made through the Prime Vendor Program (Section 340B(a)(8)). |
| 21 | LTC dispensing: 14 days or less not applicable |
| 22 | LTC dispensing: 7 days |
| 23 | LTC dispensing: 4 days |
| 24 | LTC dispensing: 3 days |
| 25 | LTC dispensing: 2 days |
| 26 | LTC dispensing: 1 day |
| 27 | LTC dispensing: 4-3 days |
| 28 | LTC dispensing: 2-2-3 days |

| 29 | LTC dispensing: daily and 3-day weekend |
|---|---|
| 30 | LTC dispensing: Per shift dispensing |
| 31 | LTC dispensing: Per med pass dispensing |
| 32 | LTC dispensing: PRN on demand |
| 33 | LTC dispensing: 7 day or less cycle not otherwise represented |
| 34 | LTC dispensing: 14 days dispensing |
| 35 | LTC dispensing: 8-14 day dispensing method not listed above |
| 36 | LTC dispensing: dispensed outside short cycle |
| 42 | Prescriber ID Submitted is valid and prescribing requirements have been validated |
| 43 | Prescriber's DEA is active with DEA Authorized Prescriptive Right |
| 44 | For prescriber ID submitted, associated prescriber DEA recently licensed or re-activated |
| 45 | Prescriber's DEA is a valid Hospital DEA with Suffix and has prescriptive authority for this drug DEA Schedule |
| 46 | Prescriber's DEA has prescriptive authority for this drug DEA Schedule |
| 47 | Shortened Days Supply Fill — Used to request an override to plan limitations when a shortened day supply is being dispensed. |
| 48 | Fill Subsequent to a Shortened Days Supply Fill — Used to request an override to plan limitations when a fill subsequent to a shortened days supply is dispensed. |
| 49 | Prescriber does not currently have an active Type 1 NPI |
| 52 | Prescriber's state license with prescriptive authority has been validated |
| 55 | Prescriber Enrollment in State Medicaid Program has been validated |
| 56 | Pharmacy Enrollment in State Medicaid Program has been validated |
| 57 | Discharge Medication |
| 58 | Nominal Price |
| 59 | Federal Supply Schedule |
| 00 | Other |

# Appendix E

### Audit Violations and Discrepancy Descriptions*

| NCPDP DATA | ORx Code Description | NCPDP Description | ORx Audit Discrepancy |
|---|---|---|---|
| 1A-1 | Recalculate Compound | Corrected Billing: Incorrect Billing Adjustment | Recoupment of only over charged portion |
| 1A-2 | Recalculate Compound | Corrected Billing: Incorrect Billing Adjustment | Full recoupment if pattern of abuse evident. |
| 1A | Recalculate Compound | Corrected Billing: Incorrect Billing Adjustment | Recoupment of only overcharged portion. |
| 1B | Recalculate Compound | Compound: Invalid use of the Compound Code. | Reverse & rebill as non-compound |
| 1C | Recalculate Compound | Compound: Excessive ingredient cost per product submitted. | Recoupment of only over charged portion. |
| 1D | Recalculate Compound | Compound: Incorrect ingredient product submitted. | Recoupment of only over charged portion. |
| 1E | Recalculate Compound | Compound: Incorrect ingredient quantity submitted on one or more ingredients. | Recoupment of only over charged portion. |
| 1F | Recalculate Compound | Compound: Ingredient quantities do not equal quantity billed. | Recoupment of only over charged portion. |
| 4R | Invalid Rx | Prescription filled before date authorized. | Full recoupment if date of service before written date. |
| 1G | Invalid Rx | Compound Prescription Work: Compounded Prescription please provide compound worksheet with pricing. | Full Recoupment. |
| 1H | Invalid Rx | Incorrect date written /issue date submitted | Educational only. |
| 1J | Invalid Rx | No Date on Rx | Charge back for initial dispensing and refills. |
| 1K | DAW | Incorrect use of DAW code | Partial Recoupment: reverse and rebill claim with manual cost override at the generic cost (for the brand NDC) |
| 1L | Mis-filled | Undocumented substitution | Full Recoupment |
| 1M | Other | Billed brand and dispensed generic | Partial Recoupment: reverse and rebill claim to generic |
| 4U | Days Supply | Overbilled quantity | No recoupment for initial fill or refills that occur at >75% (>50% for LTC) |

OPTUMRx®

| 1N | Days Supply | Incorrect Days Supply: Submitted days supply on claim is incorrect. | Educational |
|----|-------------|-----------------------------------------------------------------------|-------------|
| 3K | Days Supply | Exceeds drug program dispensing limits. | Partial recoupment |
| 1P | Invalid Rx | Missing / Invalid Prescriber Documentation ("PC", "CM", "P1- P4" - Use Discrepancy Message to detail) | Full Recoupment |
| 1Q | Invalid Rx | Missing / Invalid Patient Documentation ("PP" or "LG" - Use Discrepancy Message to detail) | Full Recoupment |
| 1R | Wrong Drug | Different Drug Billed than written on order | Full Recoupment |
| 1S | Wrong Drug | Different drug billed than dispensed | Full Recoupment |
| 1T | Other | Incorrect Submission: Used Small Size NDC # for Larger Stock Size Dispensed | |
| 2B | No Signature Log | Missing signature for proof of delivery | Full Recoupment |
| 2C | No Signature Log | Incorrect date, Prescription or signature on proof of delivery (Signature Log) | Full Recoupment |
| 2H | Other | Other - must include additional information about the discrepancy must be reported in field 526-FQ (Additional Message Information) | Description in Discrepancy Description Column |
| 2J | Wrong Member | Different Patient Name on Prescription | Full Recoupment |
| 2L | Other | Possible clinical issue with gender/age/drug. No documentation to denote clinical appropriateness was validated – must include information about discrepancy in field 526-FQ (additional Message Field) – None. | Full Recoupment |

OPTUMRx®

| 2M-1 | Invalid DEA | Submitted Prescriber Identification is incorrect on Claim (Dummy DEA) | Full Recoupment if dummy DEA for CII through CV only |
|------|-------------|------------------------------------------------------------------------|-------------------------------------------------------|
| 2M | Wrong Doctor | Submitted Prescriber Identification is incorrect on claim. | Educational |
| 2N | Invalid Rx | Doctor signature missing on Rx. | Full Recoupment |
| 2P | Invalid Rx | No Prescriber on Prescription order | Full Recoupment |
| 2R | Invalid Rx | Veterinary Prescriber inappropriate for Prescription | Full Recoupment |
| 2T | Quantity | Quantity dispensed inconsistent with prescriber directions (titrated therapies) | Take back only overcharged portion |
| 2U | Invalid Rx | Rx quantity is not complete, no quantity on Rx | Full Recoupment |
| 2V-1 | Quantity | Undocumented Quantity Altered | 1) Altered = Full Recoupment |
| 2V-2 | Quantity | Undocumented Quantity Changed | Educational Only: RPh needs to document physician approval to dispense greater quantity than originally prescribed & proportional reduction of refills. |
| 2W-1 | Quantity | Billed Quantity is different than quantity prescribed | 1) If quantity is in excess of total prescribed quantity including refills, Recoupment of over charged portion |
| 2W-2 | Quantity | Billed Quantity is different than quantity prescribed | 3) Full recoupment if pattern of abuse evident |
| 2X | Quantity | Invalid quantity billed for single package item. | Full Recoupment |
| 2Y | Quantity | No documentation for dispensing a quantity less than prescribed. | None; educational for pharmacy only |
| 2Z | Refill Too Soon | Refill too Soon | Full Recoupment |
| 3A | Unauthorized Refill | Unauthorized/Undocumented Refill of Prescription | Full Recoupment |
| 3D | Missing Prescription | Prescription Hardcopy Not Found | Full Recoupment |
| 3E | Return to Stock | Prescription returned to stock but not reversed. | Full Recoupment |

| 3F | Other | Rx does not meet all 3 of the CMS tamper-resistant Prescription requirements (MEDICAID) | Full Recoupment |
|----|-------|------|------|
| 3G | Invalid Rx | Prescription expired at time of dispensing. | Full Recoupment |
| 3H | Mis-filled | Directions on Prescription different from computer record | Full Recoupment |
| 3J | Invalid Rx | Prescription lacks specific, calculable directions (use as directed or missing directions) | Full Recoupment |
| 3P | Invalid Rx | Missing/Invalid LTC Medication Administration Record (MAR). | Full Recoupment |
| 3N | Invalid Rx | No DEA # on Controlled Rx as required by Code of Federal Regulations | Full Recoupment |
| 3R | Invalid Rx | Missing/Invalid LTC Refill Request Form. | Full Recoupment |
| 3S | Invalid Rx | Missing/Invalid LTC Patient Attestation Letter (letter indicating patient received and consumed the medication) | Full Recoupment |
| 3X | Invalid Rx | Missing/Invalid Prescription Label. | Full Recoupment |
| 4B | Invalid DEA | Prescriber ID not valid | Full Recoupment for dummy DEA (CII through CV only) |
| 4J | Invalid Rx | No strength designated on Prescription with more than one strength available. | Full Recoupment |
| 4N | Invalid Rx | Prescriber does not have prescribing authority for medication dispensed. | Full Recoupment |
| 4P | Unauthorized Refill | Refills exceed number allowed for controlled substances. | Full Recoupment |
| 4T | Invalid Rx | Missing Prescription transfer information. | Full Recoupment |
| 4K | Other | Incorrect Prescription Origin Code | Educational |

**\*Audit violations and discrepancy descriptions may differ where cumulative errors rise to a level associated with suspected fraud or abuse as determined solely by Administrator.**

# Appendix F

**Medicaid; CHIP; Federal/State Medicare-Medicaid (MME) enrollees Regulatory and Client-Contractual Program Requirements**

The following state-specific or program-specific appendices set forth certain regulatory or contractual requirements that Network Pharmacy Providers shall comply with, as applicable.

Click the appropriate bolded link(s) to access currently active state-specific regulatory or contractual requirements:

1. Alabama (AL)
   a. Medicaid Regulatory Requirements
2. Alaska (AK)
   a. Medicaid Regulatory Requirements
3. Arizona (AZ)
   a. Acute Medicaid and Chip Downstream Provider (UHC)
   b. Children's Rehabilitative Services (CRS) State Downstream Provider (UHC)
   c. Long-term-care (LTC) Downstream Provider (UHC)
   d. Medicaid Division of Developmentally Disabled Downstream Provider (UHC)
   e. Pharmacy Services Provided to Community Partnership of Southern Arizona
4. Arkansas (AR)
   a. Medicaid Regulatory Requirements
5. California (CA)
   a. Medicaid Downstream Provider (UHC)
   b. State Specific Guidelines for Schedule II drugs – Proration of Copay
   c. Medi-Cal Program Regulatory Requirements
6. Colorado (CO)
   a. Medicaid Regulatory Requirements
7. Connecticut (CT)
   a. Medicaid Regulatory Requirements
8. Delaware (DE)
   a. State Downstream Provider (UHC)
9. Florida (FL)
   a. Healthy Kids Downstream Provider (UHC)
   b. Long-term-care (LTC) Medicaid Downstream Provider (UHC)
   c. Acute/ITN
   d. Pharmacist to provide Medicaid recipients with the HSA notice/pamphlet when coverage is rejected due to the drug not being on the PDL: Non-preferred drug; Contact provider for change to preferred drug or to obtain prior authorization. Give Medicaid pamphlet if not corrected.
   e. Pharmacy Benefit Manager Contract Requirements
10. Georgia (GA)
    a. Medicaid Regulatory Requirements
11. Hawaii (HI)
    a. State Downstream Provider (UHC)
12. Idaho (ID)
    a. Medicaid Regulatory Requirements
13. Illinois (IL)
    a. Medicaid Regulatory Requirements
14. Indiana (IN)
    a. Medicaid Regulatory Requirements
15. Iowa (IA)
    a. State Downstream Provider (UHC)
16. Kansas (KS)
    a. Medicaid and CHIP Downstream Provider (UHC)
17. Kentucky (KY)
    a. Medicaid Regulatory Requirements

OPTUMRx®

18. Louisiana (LA)
    a.  Medicaid and CHIP Downstream Provider (UHC)
19. Maine (ME)
    a.  Medicaid Regulatory Requirements
20. Maryland (MD)
    a.  Medicaid Downstream Provider (UHC)
    b.  Medicaid Addendum
21. Massachusetts (MA)
    a.  Government Downstream Provider (UHC)
    b.  MME Regulatory Rider
22. Michigan (MI)
    a.  State Downstream Provider (UHC)
23. Minnesota (MN)
    a.  Medicaid Regulatory Requirements
24. Mississippi (MS)
    a.  MississippiCAN Medicaid Downstream Provider (UHC)
    b.  MississippiCHIP Downstream Provider (UHC)
25. Missouri (MO)
    a.  Medicaid and CHIP Downstream Provider (UHC)
26. Montana (MT)
    a.  Medicaid Regulatory Requirements
27. Nebraska (NE)
    a.  State Downstream Provider (UHC)
28. Nevada (NV)
    a.  Medicaid Regulatory Requirements
29. New Hampshire (NH)
    a.  Medicaid Regulatory Requirements
30. New Jersey (NJ)
    a.  Medicaid, Family Care and Medicaid Long Term Support Services Downstream Provider/Subcontractor
        (UHC)
31. New Mexico (NM)
    a.  Centennial Care Downstream Provider (UHC)
32. New York (NY)
    a.  Medicaid, Family Health Plus and Child Health Plus Downstream Provider (UHC)
33. North Carolina (NC)
    a.  North Carolina State Program Regulatory Requirements Appendix Downstream Provider
34. North Dakota (ND)
    a.  Medicaid Regulatory Requirements
35. Ohio (OH)
    a.  State Downstream Provider (UHC)
    b.  Medicaid Regulatory Addendum (Catamaran)
36. Oklahoma (OK)
    a.  Medicaid Regulatory Requirements
37. Oregon (OR)
    a.  Medicaid Regulatory Requirements
38. Pennsylvania (PA)
    a.  Government Downstream Provider (UHC)
39. Puerto Rico
40. Rhode Island (RI)
    a.  Medicaid Downstream Provider (UHC)
41. South Carolina (SC)
    a.  Medicaid Regulatory Requirements
    b.  South Carolina State Program Regulatory Requirements Appendix Downstream Provider
42. South Dakota (SD)
    a.  Medicaid Regulatory Requirements
43. Tennessee (TN)

    a.   Tenncare Downstream Provider (UHC)
    b.   Tenncare Medicaid Regulatory Requirements
    c.   Tenncare Pharmacy Provider Manual
44. Texas (TX)
    a.   Medicaid and CHIP Downstream Provider (UHC)
    b.   TX pharmacy provider manual for UnitedHealthcare Community Plans STAR, STAR+PLUS, STAR Kids and CHIP products
45. Utah (UT)
    a.   Medicaid Regulatory Requirements
46. Vermont (VT)
    a.   Medicaid Regulatory Requirements
47. Virginia (VA)
    a.   State Downstream Provider (UHC)
48. Washington (WA)
    a.   State Downstream Provider (UHC)
49. Washington DC
50. West Virginia (WV)
    a.   Medicaid Regulatory Requirements
51. Wisconsin (WI)
    a.   Medicaid Regulatory Requirements
52. Wyoming (WY)
    a.   Medicaid Regulatory Requirements

# Appendix G

### MAC State-Specific Requirements

For MAC appeal information, please see MAC appeals contact information provided in Section II of this PM.

**Alaska** – For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator and must include their acquisition cost from two sources as outlined in the MAC Appeal Submission Guidelines. Administrator will investigate and resolve the MAC Appeal within ten (10) calendar days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC to the lowest acquisition cost submitted by the Provider effective on the day of resolution of the MAC Appeal, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. Subsequently, Administrator will update MAC reimbursement to the latest applicable referenced acquisition cost effective the date of service plus one calendar day. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal, identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator and provide the name of the referenced national or regional pharmaceutical wholesaler.

**Arkansas** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within thirty (30) business days following the applicable fill date on the Claim. Administrator will investigate and resolve the MAC Appeal within thirty (30) business days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC to at least the appealing provider's submitted acquisition cost, will provide the Network Pharmacy Provider the NDC the change is based on, will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. Network Pharmacy Provider is required to submit their acquisition cost in order for Administrator to review and grant an Appeal adjustment to at least their acquisition cost. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal, identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator and provide the name of the referenced national or regional pharmaceutical wholesaler operating in the state. If the NDC provided by Administrator is not available below the appealing Network Pharmacy Provider's acquisition cost from the pharmaceutical wholesaler from whom the Network Pharmacy Provider purchases the majority of prescription drugs for resale, then upon receipt of notification, Administrator will review the appeal and update the MAC to at least the appealing provider's submitted acquisition cost and will permit the Network Pharmacy Provider to reverse and rebill each claim affected by the inability to procure the drug at a cost that is equal to or less than the previously challenged MAC.  It is the Network Pharmacy Provider's responsibility to notify Administrator of affected claims.  Following receipt of such information Administrator will review for applicability and determination.  Administrator reserves the right to request supporting documentation, and all drug acquisition cost and related information submitted to Administrator is subject to audit and validation.

**California** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within fourteen (14) business days following receipt of payment for the Claim upon which the appeal is based on. Administrator will investigate and resolve the MAC Appeal within seven (7) business days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC, will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network no later than one (1) calendar day following the resolution of the MAC Appeal. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Colorado** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within twenty-one (21) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within twenty-one (21) calendar days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the

MAC effective no later than one (1) calendar day following the resolution of the MAC Appeal. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Delaware** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within ten (10) calendar days following the applicable fill date on the Claim, if the reimbursement for the Drug Product is less than the net amount that the Network Pharmacy Provider paid to the supplier of the Drug Product. Administrator will investigate and resolve the MAC Appeal within ten (10) calendar days after the completed MAC Form is received by Administrator.

If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will adjust the MAC for the drug as of the date of the original claim for payment without requiring the appealing Network Pharmacy Provider to reverse and rebill the claims, provide reimbursement for the claim and any subsequent and similar claims under similarly applicable contracts with Administrator: a) for the original claim, in the first remittance to the pharmacy after the date the appeal was determined; and b) for subsequent and similar claims under similarly applicable contracts, in the second remittance to the pharmacy after the date the appeal was determined. In addition, Administrator will for a similarly situated Network Pharmacy Provider contracted in the State: a) adjust the MAC for the drug as of the date the appeal was determined; and b) provide notice to the Network Pharmacy Provider or pharmacy's contracted agent that an appeal has been upheld and without filing a separate appeal, the Network Pharmacy Provider or the pharmacy's contracted agent may request a reversal and reprocessing of a similar claim as outlined in the OptumRx MAC Reverse and Reprocess Request Submission Guidelines available on the OptumRx Provider Portal at https://professionals.optumrx.com/landing/delaware.html.

If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC, will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network from the date of the approved appeal. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product priced at or below the MAC price determined by Administrator from a national or regional wholesaler operating in the state.

**Georgia** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within fourteen (14) calendar days following the reimbursement of the initial Claim. Administrator will investigate and resolve the MAC Appeal within fourteen (14) calendar days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC, will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Hawaii** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within fourteen (14) business days following receipt of payment for the Claim upon which the appeal is based on. Administrator will investigate and resolve the MAC Appeal within fourteen (14) business days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC no later than one (1) calendar day following the resolution of the MAC Appeal and will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator. Iowa — If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC and will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question.

**Idaho** – For a MAC appeal, the Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within thirty (30) calendar days following the reimbursement of the claim.'

**Illinois** – For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within fourteen (14) calendar days from the date of the initial claim submission. Administrator will investigate and resolve the MAC Appeal within fourteen (14) calendar days after the completed MAC Form is received by Administrator.

If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC effective on the day of resolution of the MAC Appeal, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal, identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator and provide the name of the referenced national or regional pharmaceutical wholesaler.

**Iowa** — If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC and will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question.

**Kansas** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within ten (10) business days following the applicable fill date on the Claim. Administrator will investigate and resolve the MAC Appeal within ten (10) business days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC effective no later than one (1) business day following the resolution of the MAC Appeal, will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product that is generally available for purchase by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator from a national or regional wholesalers operating in the state and when applicable, may be substituted lawfully.

**Kentucky** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within sixty (60) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within ten (10) calendar days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC and will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal, identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator and provide the name of the referenced national or regional pharmaceutical wholesaler operating in the state. Administrator will publish a weekly update to MAC List information online at https://professionals.optumrx.com/landing/kentucky.html. Updates will be posted by end of day Fridays and will reflect prices in effect and/or updated during the previous Thursday through Wednesday, seven day period.

**Louisiana** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within fifteen (15) business days following the applicable fill date on the Claim. Administrator will investigate and resolve the MAC Appeal within fifteen (15) business days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC and will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal, identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator and provide the name of the referenced national or regional pharmaceutical wholesaler operating in the state.

OPTUMRx

**Maine** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within fourteen (14) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within fourteen (14) calendar days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC, and will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator from a national or regional wholesaler.

**Maryland** — For a MAC Appeal and Cost Pricing, Network Pharmacy Provider may access OptumRx website at https://professionals.optumrx.com/resources/manuals-guides/appeals-submission-guide.html to obtain information about the appeal process.  A Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within twenty-one (21) calendar days from the date of the initial adjudicated claim. Administrator will investigate, resolve the MAC and Cost Pricing Appeal and contact the Network Pharmacy Provider within twenty-one (21) calendar days after the completed MAC Form is received by Administrator.

If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will adjust the MAC for the drug as of the date of the original claim for payment without requiring the appealing Network Pharmacy Provider to reverse and rebill the claims, provide reimbursement for the claim and any subsequent and similar claims under similarly applicable contracts with Administrator: a) for the original claim, in the first remittance to the pharmacy after the date the appeal was determined;  and b) for subsequent and similar claims under similarly applicable contracts, in the second remittance to the pharmacy after the date the appeal was determined.  In addition, Administrator will for a similarly situated Network Pharmacy Provider contracted in the State: a) adjust the MAC for the drug as of the date the appeal was determined; and b) provide notice to the Network Pharmacy Provider or pharmacy's contracted agent that an appeal has been upheld and without filing a separate appeal, the Network Pharmacy Provider or the pharmacy's contracted agent may reverse and rebill a similar claim.

If the Cost Pricing Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will adjust the reimbursement for the drug on the original appealed claim for payment without requiring the appealing Network Pharmacy Provider to reverse and rebill the claim.  In addition, Administrator will provide notice to the appealing pharmacy  or pharmacy's contracted agent that an appeal has been upheld.

If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC or Cost Pricing Appeal, identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator or Cost Price and provide the name of the referenced national or regional pharmaceutical wholesaler operating in the state and the mathematical calculation used to determine the MAC or Cost Price. If the Network Pharmacy Provider has any additional questions about the MAC Appeal Process, please contact the MAC Appeal Department as noted on the website or click this link to view more details.

To ensure the MAC list accurately reflects market pricing and the availability of Generic Drugs, Administrator utilizes multiple sources to determine MAC pricing. The sources are the market pricing benchmark data of AWP and WAC from Medi-span®; Cardinal Health™ and McKesson wholesaler information on pricing and market availability, CMS' NADAC survey of retail acquisition cost, Predictive Acquisition Cost® industry analytics, and from pharmacy inquiries and manufactures.

**Michigan** — Administrator will investigate and resolve the MAC Appeal within ten (10) business days after the completed MAC Form is received by Administrator. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal, and identify three NDCs if there are three or more, and all NDCs if there are fewer than three, of a drug that is available from a Michigan licensed wholesaler. Applicable to Managed Medicaid only.

**Minnesota** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within fifteen (15) business days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within seven (7) business days after the completed MAC Form is received by Administrator.

If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC effective no later than one (1) business day following the resolution of the MAC Appeal, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Missouri** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within fourteen (14) calendar days following the reimbursement of the initial Claim.
Administrator will investigate and resolve the MAC Appeal within fourteen (14) calendar days after the completed.
MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC effective no later than one (1) calendar day following the resolution of the MAC Appeal, will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Montana** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within ten (10) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within ten (10) calendar days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC effective on the day of resolution of the MAC Appeal and will permit the challenging Network Pharmacy Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator from a national or regional wholesaler operating in the state.

**New Hampshire** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within thirty (30) business days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within thirty (30) business days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC no later than thirty (30) business days following the resolution of the MAC Appeal and will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**New Jersey** — For a Provider Reimbursement Dispute, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within fourteen (14) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within fourteen (14) calendar days after the completed MAC Form is received by Administrator. If the MAC Provider Reimbursement Dispute is resolved in favor of the Network Pharmacy Provider, Administrator will update the price no later than the day of resolution of the MAC Appeal and will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network.

If the non MAC Provider Reimbursement Dispute is resolved in favor of the Network Pharmacy Provider, Administrator will adjust the reimbursement for the drug on the original appealed claim for payment without requiring the appealing Network Pharmacy Provider to reverse and rebill the claim.

If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal, identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator and provide the name of the referenced national or regional pharmaceutical wholesaler operating in the state. Appeal resolution responses will be sent to the dispensing provider as well as their PSAO, if any.

To ensure the MAC list accurately reflects market pricing and the availability of Generic Drugs, Administrator utilizes multiple sources to determine MAC pricing. The sources are the market pricing benchmark data of AWP and WAC from Medi-span®; Cardinal Health™ and McKesson wholesaler information on pricing and market availability, CMS' NADAC survey of retail acquisition cost, Predictive Acquisition Cost® industry analytics, and from pharmacy inquiries and manufactures.

**New Mexico** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within twenty-one (21) business days following receipt of payment for the claim upon which the appeal is based on. Administrator will investigate and resolve the MAC Appeal within fourteen (14) business days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC effective on the day of resolution of the MAC Appeal, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal, identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator and provide the name of the referenced national or regional pharmaceutical wholesaler. If Administrator fails to respond within fourteen (14) business days after receipt of completed MAC appeal submission, Administrator will grant the appeal to the Pharmacy if a Provider Acquisition Cost was submitted at time of appeal. Otherwise, the appeal will be reviewed following the standard process. Provider is required to submit their acquisition cost in order for Administrator to grant an Appeal adjustment to their acquisition cost should the fourteen (14) business day resolution period be exceeded. MAC Appeal resolution responses will be sent to the dispensing provider as well as their PSAO, if any.

**New York** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within thirty (30) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within seven (7) business days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC no later than the day of resolution of the MAC Appeal and will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Therapeutically Equivalent Drug Product that is available for purchase by Network Pharmacy Providers within the state from wholesalers registered pursuant to subdivision four of section sixty-eight hundred eight of the education law at a price at or below the MAC price determined by completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC effective on the day of resolution of the MAC Appeal, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network.

**Ohio** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within twenty-one (21) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within twenty-one (21) calendar days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC effective no later than one (1) calendar day following the resolution of the MAC Appeal, will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal, identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator and provide the name of the referenced national or regional pharmaceutical wholesaler.

**Oklahoma** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within ten (10) business days following receipt of payment for the Claim upon which the appeal is based on. Administrator will investigate and resolve the MAC Appeal within ten (10) business days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC, will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator

shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product that is generally available for purchase by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator and provide the name of the referenced national or regional pharmaceutical wholesaler.

**Oregon** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within thirty (30) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within seven (7) business days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC, will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Pennsylvania** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within fourteen (14) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC appeal within fourteen (14) calendar days after the completed MAC Form is received by Administrator. If the MAC appeal is resolved in favor of the Network Pharmacy Provider, Administrator will change the MAC and will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, and will make the MAC change applicable to all similarly situated Network Pharmacy Providers from the date of the approved appeal. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider.

**Rhode Island** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within fifteen (15) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within fifteen (15) calendar days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC effective no later than one (1) calendar day following the resolution of the MAC Appeal. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**South Carolina** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within ten (10) calendar days following the applicable fill date on the Claim if the reimbursement for the Drug Product is less than the net amount that the Network Pharmacy Provider paid to the supplier of the Drug Product. Administrator will investigate and resolve the MAC Appeal within ten (10) calendar days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC effective on the day of resolution of the MAC Appeal, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator from a national or regional wholesaler operating in the state.

**Tennessee** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC  Form to Administrator within seven (7) business days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within seven (7) business days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC and will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network no later than three (3) business days following the resolution of the MAC Appeal. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product that is generally available for purchase by Network Pharmacy Providers within the state at a price at or below the MAC price determined by Administrator from a national or regional wholesaler.

**Texas (Medicaid)** — Administrator will investigate and resolve the MAC Appeal within fifteen (15) calendar days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC effective on the day of resolution of the MAC Appeal, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal.

**Texas (Commercial)** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within ten (10) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within ten (10) calendar days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC no later than one (1) calendar day following the resolution of the MAC Appeal., will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product that is generally available for purchase by Network Pharmacy Provider within the state at a price at or below the MAC price determined by Administrator from a national or regional wholesaler.

**Utah** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within twenty-one (21) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within fourteen (14) business days after the completed MAC Form is received by Administrator. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Vermont** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within ten (10) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within ten (10) calendar days after the completed MAC Form is received by Administrator.

**Virginia** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within fourteen (14) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within fourteen (14) calendar days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC no later than five (5) calendar days following the resolution of the MAC Appeal. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Washington** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within thirty (30) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within thirty (30) calendar days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC no later than one (1) calendar day following the resolution of the MAC Appeal, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product that has been purchased by a Network Pharmacy Provider within the state at a price at or below the MAC price determined by Administrator. Qualifying Network Pharmacy Providers may be eligible to file brief adjudicative proceedings following a denial from Administrator. Any such request must be timely made with the Washington Office of Insurance Commissioner. **If an appeal concerns a non-MAC reimbursed Claim based on applicable contracted rates, you will need to submit your appeal to the Provider Relations Department at: provider.relations@optum.com**

**Wisconsin** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within twenty-one (21) calendar days from the date of the initial Claim submission. Administrator will investigate and resolve the MAC Appeal within twenty-one (21) calendar days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC no later than one (1) calendar day following the resolution of the MAC Appeal. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider at a price at or below the MAC price determined by Administrator.

**Wyoming** — For a MAC Appeal, Network Pharmacy Provider must obtain, fully complete and submit the MAC Form to Administrator within ten (10) business days following the applicable fill date on the Claim. Administrator will investigate and resolve the MAC Appeal within ten (10) business days after the completed MAC Form is received by Administrator. If the MAC Appeal is resolved in favor of the Network Pharmacy Provider, Administrator will update the MAC no later than one (1) calendar day following the resolution of the MAC Appeal, will permit the challenging Network Pharmacy Provider to reverse/rebill the Claim in question, as well as make the adjustment applicable to all similarly situated Network Pharmacy Providers in this state within the network. If Administrator upholds the MAC Pricing of the particular Covered Prescription Service Drug Product at issue, Administrator shall provide Network Pharmacy Provider the reason for the denial of the MAC Appeal and identify the NDC of a Drug Product which may be purchased by Network Pharmacy Provider within the state at a price at or below the MAC price determined by Administrator from a national or regional wholesalers.

# Appendix H

**Client-Specific Information**

Arizona Health Care Cost Containment System (AHCCCS)
The Contractor, its contracted Pharmacy Benefit Manager (PBM), and the PBM's Pharmacy Network shall comply with the following:

1. Under the AHCCCS program, pharmacies shall not charge patients the cash price for a prescription other than an applicable copayment when the medication is federally and state reimbursable and the prescription is ordered by an AHCCCS Registered Prescribing Clinician.
2. Pharmacies shall not split bill the cost of a prescription claim to the Contractor's PBM for a patient under the AHCCCS Program. The Contractor's PBM's Pharmacy Network shall not allow a patient under the AHCCCS Program to pay cash for a partial prescription quantity for a federally and state reimbursable medication when the ordered drug is written by an AHCCCS Registered Prescribing Clinician.
3. Pharmacies are prohibited from auto-filling prescription medications.
4. Pharmacies shall not submit prescription claims to the contracted PBM for claims adjudication requesting reimbursement in excess of the Usual & Customary (U&C) price charged to the general public.
   a. The sum of charges for the submitted ingredient cost plus the dispensing fee shall not exceed a pharmacy's U&C Price for the same prescription.
   b. The U&C submitted ingredient cost shall be the lowest amount accepted from any member of the general public who participates in the pharmacy provider's savings or discount programs including programs that require the member to enroll or pay a fee to join the program.
5. Pharmacies that purchase drugs at a nominal Price outside of 340B or the Federal Supply Schedule shall bill their Actual Acquisition Cost of the drug to AHCCCS and the Contractor's PBM and PBM network pharmacies, at the discretion of the pharmacy, may deliver or mail prescription medications to an AHCCCS member or to an AHCCCS registered provider's office for a specific AHCCCS member.

**Delaware Medicaid Clean Claim Payment**
Administrator will reimburse Network Pharmacy Provider for each Clean Claim no later than thirty (30) days after Administrator's receipt of the Clean Claim, and contingent upon Benefit Plan Sponsor funding.

**Delaware Medicaid 340B Participating Pharmacies**
Network Pharmacy Providers must not:

A. Dispense340B Drug Pricing Program Drug Products to Delaware Medicaid Members
B. Reconcile invoices with 340B Participating Entities for such Drug Products dispensed to Delaware Medicaid Members, or
C. Submit Claims to Administrator for 340B Drug Pricing Program Drug Products as Covered Prescription Services

   Note: Claims submitted with a clarification code of 20 will be rejected.

This Delaware Medicaid requirement is intended to prevent duplication of manufacturer discounts, which is prohibited under Federal law 42 USC 256b (a)(5)(A)(i). Such Claims for Delaware Medicaid Members submitted to Administrator shall not be considered Clean Claims or Covered Prescription Services and are subject to audit and recovery.

**Kancare Medicaid Program**
Requires the disclosure of ownership of all Network Pharmacy Providers, including the disclosure of the:
- Names and addresses of all owners, Pharmacist-in-Charge/Pharmacy Managers; and
- Nine (9) digit Social Security Numbers for all owners, Pharmacist-in-Charge/Pharmacy Managers

**Louisiana Bayou Health Medicaid Program**
Requires the Network Pharmacy Provider directory on its website for public access to reflect the following data elements for all pharmacies participating in the Louisiana Bayou Health Medicaid Plan administered by Administrator:
- Telephone numbers for each pharmacy location

OPTUMRx®

- Any non-English languages spoken
- Hours of operation, including pharmacy locations that are open 24-hours
- Identification of pharmacy locations that provide vaccine and/or delivery services

In order to meet this state requirement to make this information available to Louisiana Bayou Health plan Members, Administrator is requiring that these data elements be updated for each of your pharmacy locations in the NCPDP database.

NCPDP database updates and edits can be made by accessing ncpdponline.org.

All Prescriptions filled for Louisiana Bayou Health Members and submitted to Administrator that are not picked up within fourteen (14) calendar days must be reversed via the POS System, as well as returned to stock.

 Requires a $0.10 per Claim pharmacy "provider" fee which must be submitted in NCPDP field 481-HA (flat sales tax submitted) on all Claims. NCPDP determined this field is appropriate even though this is a fee, not a tax. The response amount of the "provider" fee will be reflected in NCPDP field 558-AW (flat sales tax paid).

Federal regulations require Medicaid to verify that Members receive the services for which Medicaid has provided reimbursement. Medicaid periodically samples Members to verify that they did receive the Prescriptions that were billed by pharmacies. Louisiana Medicaid conducts random reviews of paid Claims to verify proof of services and may require documentation of Prescription receipt. These reviews are in addition to any audit performed by Administrator pursuant to the Agreement.

**Louisiana Fee-for-Service (FFS) Medicaid 340B Billing Policy**
The Louisiana Department of Health (LDH) FFS Pharmacy Program has updated their 340B billing policy at point-of-sale (POS). Providers who are designated as a "Covered Entity," and have opted to "Carve-In" (all drugs dispensed to Medicaid patients and purchased under the 340B Drug Pricing Program) should review the following guidelines in the letter (located at the link below).

https://www.lamedicaid.com/provweb1/Pharmacy/FFS_340B_Billing_Updated_signed_7-29-19.pdf

**TennCare**
The TennCare Pharmacy Manual supersedes the OptumRx Provider Manual. The TennCare Pharmacy Manual is located at this link: https://learn.optumrx.com/content/dam/orx-rxmicros/pharmacy-manual/OptumRxTNM_Provider%20Manual_OptumRx_110619.pdf.

**YourCare Health Plan – New York Client and State Specific Prescription Pad Serial Number Requirements**
In pursuant to the New York State guidelines, pharmacy providers processing claims for YourCare Health Plan members [in the state of New York] must include the prescription (Rx) pad serial number. The Rx pad serial number is referenced on the actual Rx.

The table below shows which prescription (Rx) pad serial numbers are allowed for each origin code. Please ensure your pharmacy includes the correct serial numbers for the corresponding origin code. This will avoid unnecessary rejections to the patient's claims.

| Origin Code | Corresponding Serial | Description |
|---|---|---|
| 1 | Unique ONYSRx # | Written - Prescriptions prescribed in NY will be on Official New York Prescription forms with a designated serial number to use. |
| 1 | ZZZZZZZZ | Written - Prescriptions prescribed from out-of-state providers or by prescribers within a federal institution (e.g. US Department of Veteran Affairs) or Indian Reservation. |
| 2 | 99999999 | Telephone - Prescriptions obtained via oral instructions or interactive voice response using a telephone. |
| 2 | SSSSSSSS | Telephone - Fiscal orders obtained via oral instructions using a telephone. * |
| 3 | EEEEEEEE | Electronic - Prescriptions obtained via SCRIPT or HL7 standard transactions, or electronically within closed systems. ** |

OPTUMRx

| 4 | Unique ONYSRx # | Facsimile - ONYSRx Prescriptions obtained via fax machine transmission. |
|---|---|---|
| 4 | SSSSSSSS | Facsimile - Fiscal Orders not on a ONYSRx obtained via fax machine transmission. * |
| 4 | NNNNNNNN | Facsimile - Prescriptions obtained via fax machine transmission for nursing home patients (excluding controlled substances) in accordance with written procedures approved by the medical or other authorized board of the facility. |
| 5 | TTTTTTTT | Pharmacy - this value is used to cover any situation where a new Rx number needs to be created from an existing valid prescription such as transitional transfers, intro-chain transfers, file buys, software upgrades/migration, and any reason necessary to give it a new number. *** |
| 5 | 99999999 | Pharmacy - this value is appropriate for "Pharmacy dispensing" when applicable such as non-patient specific order, BTC (behind the counter), Plan B, established protocols, etc. |
| 5 | DDDDDDDD | Pharmacy - this value is used to cover prescriptions dispensed as Medically Necessary during a Declared State of Emergency (excluding controlled substances). |

To view an online version, visit: https://www.health.ny.gov/health_care/medicaid/program/update/2018/2018-09.htm#serialno

**REMINDERS**
A designated unique ONYSRx number for written prescriptions prescribed by the New York in-state providers must be included.
If a prescription is received from an out-of-state provider or via telephone, confirm the correct default Rx serial pad number.
- Origin Code = 1, enter: ZZZZZZZZ (out of state)
- Origin Code = 2, enter: 99999999 (telephonic)
- Origin Code = 3, enter: EEEEEEEE (electronic)
- Origin Code = 5:
  - When new Rx number needs to be created from an existing valid prescription, enter: TTTTTTTT
  - For Pharmacy Dispensing, enter: 99999999
  - For prescriptions dispensed as Medically Necessary during a Declared State of Emergency, enter: DDDDDDDD

This notice only applies to YourCare Health Plan.

**UnitedHealthcare**

Pharmacy Help Desk Service Contact Information

 Hours of Operation: 24 hours a day, 7 days a week, 365 days a year

For Member information regarding Benefit Plan exclusions, disease therapy management (DTM) programs or other customer service issues, please contact the Administrator using one of the following:
UnitedHealthcare Medicare Advantage Prescription Drug Plan (MA-PD):
- Telephone: 1-877-889-6510
- Telephone Device for the Hearing Impaired (TDHI): 1-866-394-7218
- If the pharmacy is part of OptumRx's Medicare Advantage pharmacy networks they may be contracted for Part D and B services.
  - If the pharmacy is part of OptumRx's Medicare Advantage pharmacy networks, they are contracted for both Part D and B services. OptumRx allows some Part B covered drugs or supplies to be submitted through their claims processing system and these will adjudicate under the Part B benefit. The pharmacy should refer to sections B. Medicare Part A/B/D coordination of benefits (COB) and V. Claim Notification - Dual Eligible Members and Part B Drugs for Part B claims questions.
  - When a Member has qualifying Medicaid coverage (reference Medicaid Qualifying Coverage grid below), the Part B cost share must be billed to Medicaid. Some Medicaid programs do not allow electronic secondary billing or automatic crossover when the claim is processed through the Medicare Advantage Plan.

OPTUMRx®

- o Contact Medicaid to ask how to appropriately bill the Medicare Cost-Sharing Amount when the member is enrolled in a Medicare Advantage Plan and has qualifying Medicaid coverage.

UnitedHealthcare Medicare Prescription Drug Plan (PDP):
- Telephone: 1-877-889-6481
- Telephone Device for the Hearing Impaired (TDHI): 1-866-394-7218

UnitedHealthcare Community Plan (Medicaid Programs):
- Telephone: 1-888-306-3243
- Telephone (Community and State): 1-877-305-8952
- Telephone (Louisiana Bayou Health): 1-866-328-3108
- Telephone (Medicare-Medicaid Plans (MMP) Plans): 1-877-889-6510
- Telephone Device for the Hearing Impaired (TDHI): 1-866-394-7218 or1-877-305-8952

UnitedHealthcare Community & State (C&S) — (Medicaid PA):
- Telephone: 1-800-310-6826
- Telephone Device for the Hearing Impaired (TDHI): 1-877-449-6611
- Fax: 1-866-940-7328

UnitedHealthcare Employer & Individual:
- Telephone: 1-888-290-5416
- Telephone: 1-800-788-7871 (OptumRx Carve-Out)
- Telephone Device for the Hearing Impaired (TDHI): 1-800-498-5428

**UnitedHealthcare Direct Member Reimbursement Contact Information**

| Carrier | UHCACIS0 | | UHCPRIM01 | UHCUHCI01 |
|---|---|---|---|---|
| Platform | ACIS | | PRIME | ACIS |
| Alt ID | Non-standard | Standard | Standard | Standard |
| Submitted group | UH+7 digit policy# | UHealth1 | UHC | UHealth1 |
| BIN | 610279 | 610279 | 610279 | 610279 |
| PCN | 9999 | 9999 | 9999 | 9999 |
| DMR mailing address | P.O. Box 650540 Dallas, TX 75265-0540 | P.O. Box 650540 Dallas, TX 75265-0540 | P.O. Box 650540 Dallas, TX 75265-0540 | P.O. Box 650540 Dallas, TX 75265-0540 |

 Changes to this year's Medicare Part D Formulary, for the following Benefit Plans, will be posted on the websites listed below.

**Note**: This list is not all-inclusive, but a sample only.

| Plan | Website |
|---|---|
| AARP MedicareComplete AARP MedicareRx Enhanced AARP MedicareRx Preferred | https://aarpmedicareplans.com/medicare-education.html |
| Erickson Advantage | ericksonadvantage.com |
| IBT (International Brotherhood of Teamsters) | teamstarpartd.com |
| Golden State Medicare Health Plan | goldenstatemhp.com |
| PSERS (Pennsylvania Public School Educators' Retirement System) | hopbenefits.com |
| Sierra MAPD Plan | sierrahealthandlife.com |

OPTUMRx

| UnitedHealthcare Community Plan | uhccommunityplan.com |
|---|---|
| Symphonix Health Plan | symphonixhealth.com |

**Troubleshoot Member ID Cards**

For instances when a Member does not have an ID card, please see the following.

| Situation: Member does not have an ID card | Step 1 | Step 2 | Step 3 | Step 4 |
|---|---|---|---|---|
| Person is at the pharmacy and has no proof of coverage but states they are currently enrolled.<br><br>Member may present generic marketing materials that were provided with the inquiry kits. | 1) E1 transaction initiated to determine eligibility; this is done by the Pharmacist<br><br>(a) Eligibility validated; Pharmacist processes Prescription<br>(b) Eligibility not validated or Pharmacist unable to access E1, move to step 2<br>Note: An E1 transaction can be initiated with the Member's Social Security Number (SSN) or Member's ID. | Pharmacist contacts the Pharmacy Help Desk using the contact information provided in Section II of this PM.<br><br>(a) Pharmacy Help Desk validates eligibility and Claim is processed.<br><br>(b) Unable to validate eligibility, move to step 3. | Pharmacy Help Desk directs pharmacy to refer Member to applicable call center number located on Member ID card. | 1) Call center confirms eligibility; Member eligibility entered real- time into system; Member advises Pharmacist to fill Prescription.<br>2) Unable to confirm eligibility or eligibility has been denied; person pays retail for Drug Product; fourteen (14) day window to allow for online processing at pharmacy when eligibility issue resolved or person to submit a paper Claim for reimbursement.<br><br>3) Person unwilling to pay retail, prescription not filled. |
| Person is at the pharmacy and has an acknowledgement or confirmation letter with an enrollee number and states that they are enrolled. | 1) E1 transaction initiated to determine eligibility or pharmacist attempts to process Claim online; this is done by the Pharmacist.<br><br>(a) Eligibility validated; pharmacist processes prescription online<br><br>(b) Eligibility not validated or Pharmacist unable to access E1, move to step 2 | Pharmacist contacts the Pharmacy Help Desk using the contact information provided in Section II of this PM.<br><br>(a) Pharmacy Help Desk validates eligibility and claim is processed<br><br>(b) Unable to validate eligibility, move to step 3 | Pharmacy Help Desk directs pharmacy to refer member to applicable call center number located on Member ID card. | 1) Call center confirms eligibility; Member eligibility entered real-time into system; pharmacist fills prescription.<br><br>2) Unable to confirm eligibility, eligibility pending, eligibility has been denied, or a disenrollment was processed; person pays retail for Drug Product fourteen (14) day window to allow for online processing at pharmacy when eligibility issue resolved or person to submit a paper claim for reimbursement. |

| | | | | 3) Person unwilling to pay retail, prescription not filled. |
|---|---|---|---|---|
| | | | | |

**UnitedHealthcare Sample Member ID Cards**





**Local Pick-Up Program**

If the Network Pharmacy Provider participates in the local pick-up program, Network Pharmacy Provider will be responsible for Drug Product fulfillment to eligible Members under Prescription benefit plans to be identified by Administrator. Drug Product fulfillment is the dispensing of Prescriptions to eligible Members, including, but not limited to, the following specific activities: receiving bulk shipment of Prescriptions (excluding refrigerated items) already filled, labeled and packaged by one of the participating Network Pharmacy Providers; signing and returning to Administrator the packing slip confirming receipt of the order; storing the Prescription orders in a designated location; handing Prescription orders to eligible Members or Member's appointed/authorized representatives who pick them up at the dispensing Network Pharmacy Provider; offering to counsel eligible Members about the Prescription orders being dispensed and having a licensed Pharmacist providing counseling to those who accept the offer to counsel; and maintaining any records required by law in connection with its services. This process may not be available in all states or for all Clients and may vary state-by-state in accordance with applicable state laws.

# Appendix I

**Commercial Requirements**

Additional state-specific exhibits set forth certain requirements that Network Pharmacy Providers shall comply with, as applicable.

**Colorado State Fully Insured and Non-ERISA ASO Business**

- Neither the carrier nor Network Pharmacy Provider are prohibited from expressing disagreement with a medical decision, medical policy, or medical practice of the other. In addition, retaliatory action is prohibited for such decision or practice.
- Carrier may not take an adverse action against a Network Pharmacy Provider because the Network Pharmacy Provider, acting in good faith:
  - Communicates with a public official or other person concerning public policy issues related to health care items or services;
  - Files a complaint, makes a report, or comments to an appropriate governmental body regarding actions, policies, or practices of the carrier the Network Pharmacy Provider believes might negatively affect the quality of, or access to, patient care;
  - Provides testimony, evidence, opinion, or any other public activity in any forum concerning a violation or possible violation of any provision of this section;
  - Reports what the Network Pharmacy Provider believes to be a violation of law to an appropriate authority; or
  - Participates in any investigation into a violation or possible violation of any provision of this section.

**Tennessee State Commercial Fully-Insured**
- Any material changes to the OptumRx Provider Manual will not take effect until 60 days following notification.

**Washington State Commercial Fully-Insured**
- In every Network Pharmacy Provider agreement, every issuer will state that an issuer will authorize an emergency fill by the dispensing Pharmacist and approve the Claim payment. An emergency fill is only applicable when:
  - The dispensing Network Pharmacy Provider cannot reach the issuer's Prior Authorization department by phone, as it is outside of that department's business hours; or
  - An issuer is available to respond to phone calls from a dispensing Network Pharmacy Provider regarding a covered benefit, but the issuer cannot reach the Prescriber for full consultation.
- Network Pharmacy Providers and issuers are not required to comply with these contract provisions if the failure to comply is occasioned by any act of God, bankruptcy, act of a governmental authority responding to an act of God or other emergency, or the result of a strike, lockout, or other labor dispute.

Click the appropriate addendum link(s) to access state-specific regulatory requirements listed below.
1. Colorado (CO) Regulatory Addendum
2. Maryland (MD) Regulatory Addendum
3. Massachusetts (MA) UHC Regulatory Addendum



1-877-633-4701 | **optum.com/optumrx**

2300 Main Street, Irvine, CA 92614

OptumRx is a pharmacy care services company helping clients and more than 65 million members achieve better health outcomes and lower overall costs through innovative prescription drug benefits services, including network claims processing, clinical programs, formulary management and specialty pharmacy care. OptumRx is part of Optum®, a leading information and technology-enabled health services business dedicated to making the health system work better for everyone. For more information, visit **optum.com/optumrx**.

All Optum trademarks and logos are owned by Optum, Inc. All other trademarks are the property of their respective owners.

©2020 Optum, Inc. All rights reserved. ORX5979A_170616

Exhibit "C"



# Provider Manual 2013

**Formulary**

Formularies vary by plan and  can change regularly. Catamaran suggests the use of the plan's website or any of the commercially available tools (ex. Epocrates) to facilitate easier formulary management when speaking with prescribers.

**Compounds**

All Catamaran plans require multi-ingredient compound claims submission. Please use the following guidelines when submitting compounds:

- One of the ingredients must be a legend drug product,

- Compound indicator field must indicate that the claim is a compounded prescription,

- Appropriate fields in the compound segment (see payer sheet for additional information) must be completed,

- Reimbursement is the lower of submitted cost, Usual and Customary price, or AWP. Other reimbursement pricing methods may be used. Submission of compounds are subject to increased audit and may incur additional costs should they be misrepresented,

- Reimbursement for reasonable waste only includes associated volumes necessary in compounding the prescription which are not used within additional compound preparation.


Note:  Reconstituted preparations, such as powdered antibiotics that are mixed with water prior to dispensing, reconstituted topical preparations, or compound kits are not considered compounded prescriptions.

**Tax**

Tax is calculated based on the applicable state or local law governing tax on prescription drugs. In order to be reimbursed for payment of tax, the Provider must enter the tax amount in the appropriate tax field.

**Coordination of Benefits**

Coordination of Benefits (COB) is handled on a plan-specific basis. The Provider is obligated to facilitate COB processing as a network participant.  It is prudent for the Provider to verify with members to ensure they do not have alternative primary or secondary insurers. Please be sure to refer to the online transaction response to facilitate COB processing.

**Processing, Pricing, Updates, Payments**

Claims submitted by Provider for plans utilizing a Catamaran national network, plan, other network, or via electronic claims submission point-of-service adjudication system for retail prescription benefit management or prescription processing are reimbursed for prescription drugs at the lesser of the plan or network Average Wholesale Price (AWP) discount or other referenced based pricing; plus or minus a discount or maximum allowable cost(MAC)

(when applicable for prescription drug products); the Provider's submitted gross amount due, the Provider's Usual and Customary price (U&C) that would be given under the same circumstances if the member did not possess prescription benefit coverage; or submitted ingredient cost, and the applicable plan or network dispensing fee including taxes if applicable. AWP, and brand or generic medication classification, is determined by Catamaran in all cases. Catamaran shall utilize client or plan parameters, Medi-Span or other national source, and internal processes as a reference but not as the sole determinant of price. WAC-referenced based pricing may be implemented should AWP become obsolete , if plan requires or market conditions warrant such pricing methodology. Other nationally recognized referenced based price sources may also be implemented as market conditions warrant or under the circumstances where AWP becomes obsolete. All network reimbursement includes, but is not limited to, retail commercial, Medicare Part D (this includes Medicare Part D Long Term, Indian Health Services, Indian Tribal Organization, and Home Infusion), medicaid, 340B, hospice care, prescription benefit program for injured employees / workers compensation programs, automobile accidents, consumer driven health plans, discount cards, over-the-counter products or other plan-defined custom networks, as applicable. In the event of a conflict between the Provider Agreement and the Provider Manual, the Provider Manual shall prevail. Except in cases of an explicit request by a Medicare beneficiary to not utilize their coverage,

Providers are required to submit all claims via on-line adjudication where a member presents a prescription drug card with the aforementioned RxBINs; this includes, but is not limited to, all Provider or otherwise discount programs that are established as the Providers Usual and Customary price (even if the price is zero). The network and associated rates in the Provider Agreement may or may not be utilized by Catamaran clients. The Provider Agreement is not an entitlement, nor does it warrant access. Catamaran client membership may utilize alternative networks or reimbursement as determined by Catamaran. Upon successful adjudication of a claim, Provider has deemed to accept reimbursement terms conditions, and rates, and network participation with Catamaran. In the event of a conflict between the Provider Manual, Provider Agreement, Addendums, Fee Schedules, on-line adjudicated price or, any other pricing arrangement, the on-line adjudicated price shall govern, unless an error in overpayment occurs.

MAC means the maximum allowable cost for pharmaceutical products. The MAC(Maximum Allowable Cost) is developed by Catamaran and may be amended at any time at its sole discretion.

Catamaran typically administers two billing cycles per month, with cycle-ending dates on the 15th and the last day of each month. For Medicare Part D claims, or for any other more restrictive state program which requires prompt payment, Catamaran administers four billing cycles per month, with cycle-ending dates on the 7th, 15th, 23rd, and the last day of each month, with payment being issued six days following the last day of each cycle. Unless otherwise stated, Catamaran is the Payer to the Provider. Provider shall not pursue payment for services or other additional fees from any other source.

Provider agrees that they are prohibited from contacting Catamaran clients and its members (Catamaran client/plan) for disputed issues between Provider and client or Catamaran, including but not limited to processing issues, reimbursement or payment issues without written consent by an authorized Catamaran representative. Provider agrees that they are prohibited from directing the member or a member's claims to a plan other than the Catamaran plan presented by the member, and violation of such is considered a breach of contract, and subsequently subject to penalties or sanctions up to and including termination,as determined by Catamaran. Provider is subject to penalties or

sanctions up to and including termination in the event it is determined by Catamaran that communications between Provider and client disclosed confidential information or disrupted Catamaran relationship with its client. Penalties shall be invoked in amounts at a minimum of $5,000 per incident/per day, and may be subject to additional actions taken by Catamaran, including and up to termination from participation, and withdrawal and/or the holding of funds as deemed necessary by Catamaran. Updates to the Provider Manual are made available periodically to Provider. All Communications, Updates, and Notices are available through the Catamaran Provider Web Portal (www.informedRx.com/pharmacies), or sent via U.S. mail, electronic mail, facsimile, or courier. It is the Provider's responsibility to check for updates.

### Claim System

The electronic claim processing system is generally available 24 hours per day, 7 days per week, with the exception of regularly scheduled downtime, which generally occurs at non-peak hours in order to minimize the impact to our network Providers. All claims must be submitted via the online adjudication system. Variant transmission fees will be incurred by the Provider per on-line transaction. The transmission fees are assessed to support network Provider payment and reconciliation, help desk support, as well as but not limited to Provider network compliance, transactional, and billing education or other initiatives. However, excessive or disruptive process inquiries, including but not limited to non-contracted Provider status, duplicate payment and remittance requests, excessive member/Provider grievances, third party biller intervention, incomplete or inaccurate credentialing submissions, contract compliance and/or failure of the Provider to submit claims through the Catamaran designated adjudication on-line adjudication process are subject to higher transmission fees. Should a claim be submitted by a third party or other means separate from the Provider itself, the claim may be subject to non-payment. Catamaran reserves the right to make payment directly to Provider at its sole discretion.

### Local Pick Up Program

If Provider participates in the Catamaran local pick-up program, Provider shall be responsible for product fulfillment to eligible members under prescription benefit plans to be identified by Catamaran. Product fulfillment means the dispensing of prescriptions to eligible members, including, but not limited to, the following specific activities: receiving bulk shipment of prescriptions (excluding refrigerated items) already filled, labeled and packaged by one of Catamaran's Providers, signing and returning to Catamaran the packing slip confirming receipt of the order, storing the prescription orders in a designated location, handing prescription orders to eligible members or their authorized representatives who pick them up at the dispensing Provider, offering to counsel eligible members about the prescription orders being dispensed and having a licensed pharmacist providing counseling to those who accept the offer to counsel, and maintaining any records required by law in connection with its services. This process may not be available in all states and may vary by state in accordance with applicable state laws.

### Provider Audit

Catamaran, or its client, authorized agent, governmental agencies or their representatives,, hereafter referred to as Catamaran auditors, reserves the right to audit a Provider's compliance with the agreements in effect. Catamaran has the right to inspect all records of the Provider relating to this agreement. The Provider shall maintain adequate prescription and financial records relating to the provision of pharmaceutical services to our

- Prescriptions in which the dosage/quantity is changed require either written documentation on the prescription or a new hard copy prescription to be issued.

- In cases of the prescriber writing "As Directed", documentation as to the exact directions or, at a minimum, the maximum ("up to") dose of medication taken per day must be documented on the hard copy or electronically and be viewable upon request.  If undocumented at the time of the audit, the entire claim is marked as discrepant until proper documentation is provided.  Only prescriptions generated by the prescriber are accepted as post audit documentation for as directed prescriptions.

- If less or more medication (if permitted) is given than ordered by the prescriber, the reason for this must be documented. Any increase in the amount of medication over the original prescribing order must be documented for prescriber authorization.

## Signature Log

- Provider shall require the signature of the member or the member's representative on a permanent record before dispensing any prescription.

- At each Provider location, Provider shall maintain a hard copy or (pre-approved by Catamaran) electronic signature log which contains the following: the prescription number; the date the medication is received by the member; and the signature of each member who receives a medication or the signature of his/her designee.

- A log in date order must be maintained for all claims submitted on-line to Catamaran.

- Signature logs must be maintained for ten years or longer—corresponding to the state and/or federal regulations and law, which Provider is located for retaining prescription hard copies. The logs must be available for inspection and audit by a Catamaran auditor.

## Dispensing Limitations

- Enter the quantity to be dispensed exactly as written on the prescription form.

- A 30-day supply is no longer standard; some programs permit extended days supplies. Always transmit the accurate days supply and allow the on-line system to communicate the allowable days supply.

- Note subsequent changes or refill authorizations approved by the prescriber on the hard copy, or in a readily retrievable electronic format, acceptable by the State Board of Pharmacy in which Provider is located.

## U&C

- Usual and Customary (U&C) charge means the usual and customary price charged by the Provider to the general public at the time of dispensing, including any advertised or sale prices, discounts, coupons or other deductions.

## Product Selection Codes (PSC)

- When an auditor cites a prescription for a missing or incorrect PSC code, follow-up documentation is not permitted.

- A transmitted PSC 1 code must be supported on the prescription hard copy (original and update).